IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND, PIRELLI ARMSTRONG
RETIREE MEDICAL BENEFITS TRUST,
TEAMSTERS HEALTH & WELFARE FUND
OF PHILADELPHIA AND VICINITY, and
PHILADELPHIA FEDERATION OF
TEACHERS HEALTH AND WELFARE FUND,

               Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri
corporation, and MCKESSON CORPORATION,
a Delaware corporation,

               Defendants.

Case No. 1:05-CV-11148-PBS

**DEFENDANT MCKESSON CORPORATION'S**
**<u>CORRECTED</u> MOTION FOR LEAVE TO REPLY TO PLAINTIFFS' OPPOSITION**
**TO MCKESSON'S MOTION TO DISMISS COMPLAINT**

       Defendant McKesson Corporation ("McKesson") hereby moves the Court for leave to file a reply to Plaintiffs' Memorandum in Opposition to Defendant McKesson Corporation's Motion to Dismiss Complaint ("Opposition"). A copy of the proposed reply is attached hereto. McKesson requires a reply to respond to the new factual allegations and legal errors raised in plaintiffs' Opposition and to address plaintiffs' characterizations of the complaint's inadequate allegations.

       McKesson files this corrected motion to clarify the terms under which plaintiffs have assented to McKesson's motion for leave to file a reply. Plaintiffs assent to the filing of McKesson's motion subject to McKesson's assent to plaintiffs' filing of a surreply of equal length within seven days.

Dated:  November 10, 2005

Respectfully submitted,
McKesson Corporation
By its attorneys:


  /s/ Lori A. Schechter_____

Joan M. Griffin, BBO # 549522          Melvin R. Goldman (*pro hac vice*)
Michael P. Twohig, BBO # 648079       Lori A. Schechter (*pro hac vice*)
Perkins Smith & Cohen LLP             Tiffany Cheung (*pro hac vice*)
One Beacon Street, 30th Floor         Morrison & Foerster LLP
Boston, MA 02108                      425 Market Street
tel. 617-854-4000                     San Francisco, CA 94105-2482
fax 617-854-4040                      tel. 415-268-7000
                                      fax 415-268-7522


## RULE 7.1 CERTIFICATION

Counsel certifies that the parties have conferred and that Plaintiffs assent to this motion subject to McKesson's assent to plaintiffs' filing of a surreply of equal length within seven days.

/s/ Tiffany Cheung_____
Tiffany Cheung


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on November 10, 2005.

/s/ Lori A. Schechter_____
Lori A. Schechter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND, PIRELLI ARMSTRONG
RETIREE MEDICAL BENEFITS TRUST,
TEAMSTERS HEALTH & WELFARE FUND
OF PHILADELPHIA AND VICINITY, and
PHILADELPHIA FEDERATION OF
TEACHERS HEALTH AND WELFARE FUND,

              Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri
corporation, and MCKESSON CORPORATION,
a Delaware corporation,

              Defendants.

Case No. 1:05-CV-11148-PBS

**DEFENDANT MCKESSON CORPORATION'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MCKESSON'S MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT THE
      RICO CLAIM SHOULD BE DISMISSED. ............................................................ 2

      A.    Plaintiffs Fail to Establish that McKesson and FDB
            Shared a "Common Purpose," a Necessary Element
            of a RICO Enterprise.................................................................................... 2

            1.    Plaintiffs' "Hub and Spoke" Distinction Is
                  Irrelevant and In Error. ...................................................................... 2

            2.    Plaintiffs Allege Nothing More Than a Common
                  Profit Motive....................................................................................... 3

      B.    Plaintiffs Also Fail to Plead that McKesson
            Knowingly Participated with FDB in a Scheme to
            Defraud......................................................................................................... 4

II.   PLAINTIFFS' STATE LAW CLAIMS MUST BE
      DISMISSED............................................................................................................. 7

      A.    Under the Governing Choice of Law Principles,
            California's Consumer Protection Statutes Do Not
            Apply Here.................................................................................................... 7

      B.    Plaintiffs' Section 17500 Claim Must Also Be
            Dismissed Because Plaintiffs Have Alleged No Public
            Misrepresentations Made by McKesson. ...................................................... 8

      C.    Plaintiffs Have Failed to Plead a Viable Civil
            Conspiracy Claim......................................................................................... 9

III.  DISMISSAL OF PLAINTIFFS' COMPLAINT SHOULD
      BE WITH PREJUDICE. ......................................................................................... 9

CONCLUSION ................................................................................................................. 10

i

# TABLE OF AUTHORITIES

## CASES

*Aetna Casualty Sur. Co. v. P&B Autobody*,
  43 F.3d 1546 (1st Cir. 1994) .......................................................................................... 9

*Bonilla v. Volvo Car Corp.*,
  150 F.3d 62 (1st Cir. 1998) ............................................................................................ 6

*Clothesrigger, Inc. v. GTE Corp.*,
  236 Cal. Rptr. 605 (Ct. App. 1987) ............................................................................... 7

*Emery v. Visa Int'l Serv. Ass'n*,
  116 Cal. Rptr. 2d 25 (Ct. App. 2002) ............................................................................ 8

*Copperbeech P'ship, Ltd. v. Seegel, Lipshutz & Wilchins, P.C.*,
  No. 020489A, 2004 WL 1431052 (Mass. Super. Ct. May 5, 2004) .............................. 9

*Grant v. John Hancock Mut. Life Ins. Co.*,
  183 F. Supp. 2d 344 (D. Mass. 2002) ........................................................................... 9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  263 F. Supp. 2d 172 (D. Mass. 2003) ........................................................................... 3

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  307 F. Supp. 2d 196 (D. Mass. 2004) .................................................................. 1, 2, 3, 6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005) ...................................................................................... 7

*Northeast Fed. Credit Union v. Neves*,
  837 F.2d 531 (1st Cir. 1988) ......................................................................................... 10

*Wershba v. Apple Computer*,
  110 Cal. Rptr. 2d 145 (Ct. App. 2001) .......................................................................... 7

## STATUTES

Cal. Bus. & Prof. Code
  § 17203.......................................................................................................................... 8
  § 17204.......................................................................................................................... 8
  § 17500.......................................................................................................................... 8

**INTRODUCTION**

This Court's decision in *Pharm. II*[1] compels dismissal of plaintiffs' RICO claim for the failure to meet the "common purpose" requirement of the statute. There, as here, plaintiffs' allegations that FDB sought to enhance its profits by scheming to raise AWPs does not meet the common purpose test. In fact, the present complaint presents an even stronger basis for dismissal than *Pharm. II* since here plaintiffs actually allege that defendants were acting at "cross-purposes": FDB thought raising AWPs would increase its business while McKesson believed that raising AWPs would likely lead to the discontinued use of AWPs altogether.

Another reason to dismiss plaintiffs' RICO claim is plaintiffs' failure to plead that McKesson knowingly participated in the alleged scheme to artificially inflate AWP through FDB's fraudulent reliance only on McKesson's prices. Since plaintiffs have great difficulty in even describing the alleged scheme, it is hardly surprising that they fail to allege McKesson's knowledge of it.

Turning to the state law claims, plaintiffs fail to show that California law applies. While California courts have determined that under *California* choice of law rules, *California* has an interest in applying California law to nationwide claims against a California company regarding conduct emanating from California, the analysis by a federal court in Massachusetts applying Massachusetts choice of law rules is necessarily different. This Court has already performed the applicable analysis in the MDL Class Case, and that analysis shows that California claims do not apply to non-California plaintiffs. Finally, the civil conspiracy claim fails because of the same pleading infirmities shown for plaintiffs' other claims, and because it "adds nothing" to the allegations of the underlying claims. Given the extensive discovery McKesson and FDB have

---

[1] *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 203-05 (D. Mass. 2004) ("*Pharm. II*").

1

already produced to plaintiffs, and the insufficiency of plaintiffs' suggested amendments,

dismissal of plaintiffs' claims against McKesson with prejudice is warranted.

## ARGUMENT

**I.     PLAINTIFFS' OPPOSITION CONFIRMS THAT THE RICO CLAIM SHOULD BE DISMISSED.**

### A.     Plaintiffs Fail to Establish that McKesson and FDB Shared a "Common Purpose," a Necessary Element of a RICO Enterprise.

To plead the RICO requirement of a "common purpose," it is not sufficient that plaintiffs

allege that both defendants joined in the alleged scheme but for different purposes.  Thus, if

plaintiffs allege that McKesson's purpose was to inflate AWPs by 5% while FDB's purpose was

to obtain more profit, plaintiffs have not alleged the "common purpose" required by RICO.

*Pharm. II*, 307 F. Supp. 2d at 203-05.  Yet "common purpose" is precisely what plaintiffs'

complaint fails to plead here, just as was true of their complaint dismissed in *Pharm. II*.

Plaintiffs' argument that *Pharm. II* is distinguishable is without merit.

#### 1.     Plaintiffs' "Hub and Spoke" Distinction Is Irrelevant and In Error.

Plaintiffs attempt to distinguish this Court's decision in *Pharm. II* on the grounds that

there the rejected manufacturer-FDB enterprise was a "hub and spoke" enterprise, whereas the

wholesaler-FDB enterprise alleged here is "linear."  (Opp'n at 3.)  Plaintiffs' argument is wrong

on two accounts.  First, this Court dismissed the alleged manufacturer-FDB enterprise in

*Pharm. II*, not because plaintiffs had alleged a "hub and spoke" enterprise, but specifically

because plaintiffs had failed to allege that the participants had a common purpose beyond a

desire to derive a profit.  *Pharm. II*, 307 F. Supp. 2d at 204.  In other words, it was lack of

"common purpose," not the type of conspiracy alleged, that led to the dismissal.

Second, plaintiffs' "hub and spoke" distinction erroneously confuses this Court's decision in *Pharm. II* with its earlier decision in *Pharm. I*.[2] While it is true that in *Pharm. I* this Court rejected the hub and spoke manufacturer-FDB enterprise alleged in the complaint there, *Pharm. II* examined a subsequently amended complaint that alleged a series of linear enterprises consisting of a manufacturer and a single AWP publisher, just like the linear enterprise plaintiffs claim to have alleged here. The RICO claim in that amended complaint is what was dismissed in *Pharm. II*. Accordingly, plaintiffs' distinction is not just irrelevant, it is in error as well.

### 2.    Plaintiffs Allege Nothing More Than a Common Profit Motive.

Plaintiffs also attempt to distinguish *Pharm. II* on the ground that here plaintiffs allege more than just a common profit motive by FDB. Again plaintiffs are wrong. Plaintiffs allege that FDB sought to "reduce its administrative costs by virtue of eliminating the costs associated with limited surveys and variation in spreads, which would otherwise have to be tracked in order to be 'accurate.'" (Comp. ¶ 125(a).) The MDL Class plaintiffs likewise alleged that publishers wanted to avoid "independently investigat[ing] the AWP at significant expense." *Pharm. II*, 307 F. Supp. 2d at 204. This Court found this purpose to be nothing more than a desire by the publishers to profit from their business. *Id*. This is also true with regard to plaintiffs' claim that FDB sought "to curry favor within McKesson" so that McKesson would utilize FDB "as the pricing source in its contracts with pharmaceutical companies" and others. (Opp'n at 5.) Here, again, the alleged motive for FDB is to profit from growing its business, not to inflate AWPs.

The only place in the complaint where arguably plaintiffs allege that FDB wanted to increase AWPs is paragraph 125(b), where plaintiffs assert that FDB's business depended on the

---

[2] *In re Pharm. Indus. Average Wholesale Price Litig*., 263 F. Supp. 2d 172, 183-84 (D. Mass. 2003) ("*Pharm. I*"). Contrary to plaintiffs' assertion (Opp'n at 3), McKesson's Opening Brief did not cite *Pharm. I*.

publication of higher AWPs.  (*See also id*. ¶ 152.)  Publishing AWPs — in particular, *higher*

AWPs — is alleged to be one of FDB's purposes in participating in the alleged scheme.[3]  Yet

elsewhere in their complaint, plaintiffs allege that McKesson saw only a short-term benefit from

higher AWPs, and believed that the effect of increasing AWPs may well "lead to the downfall of

the AWP pricing system altogether."  (Compl. ¶ 118.)  This would hardly result in more business

for FDB; to the contrary, it could end FDB's business altogether.  Accordingly, far from having a

"common purpose," plaintiffs' own pleading, at best, supports the position that McKesson and

FDB were actually operating at "cross-purposes," a proposition that plaintiffs fail even to address

in their Opposition.

> **B.    Plaintiffs Also Fail to Plead that McKesson Knowingly Participated with FDB in a Scheme to Defraud.**

To meet the mail or wire fraud predicate for a RICO violation, plaintiffs must allege that

McKesson "knowingly" participated in the claimed scheme to inflate AWPs.  (Opening Br.

at 11.)  Plaintiffs argue that this knowledge is alleged here because "it is obvious from the facts

alleged that the acts were committed knowingly."  (Opp'n at 9.)  What exactly the scheme is that

plaintiffs allege McKesson knowingly participated in has been, to say the least, a moving target.

Originally, plaintiffs maintained that the scheme to inflate AWPs was the following:

FDB represented that it surveyed all the national wholesalers to derive a weighted average of the

wholesalers' own prices for its published AWPs.  (Compl. ¶¶ 110, 111.)  In reality, FDB

allegedly stopped surveying wholesalers other than McKesson, thereby making McKesson's own

prices the AWPs that FDB published.  (*Id*. ¶ 115.)  Those AWPs automatically increased by 5%

when McKesson allegedly increased its own prices.  (*Id*. ¶¶ 8-10.)

---

[3]  Obviously, the same could have been said of FDB's purpose in the alleged manufacturer-FDB scheme to raise AWP prices that was dismissed in *Pharm. II.*

McKesson demonstrated that plaintiffs' own allegations undermined this alleged scheme because plaintiffs' timing allegations were in direct conflict. (Opening Br. at 11-12.) Specifically, plaintiffs allege that the scheme commenced in "late 2001 or early 2002," when McKesson raised its own markups from 20 to 25%, and FDB "limited its purported 'surveys' to McKesson and did not 'survey' other wholesalers." (Compl. ¶ 115.) The scheme allegedly resulted by early 2002 in a "dramatic" spike in the number of FDB's AWPs whose markups increased from 20 to 25%. (Compl. ¶ 10.) Yet inconsistent with this alleged scheme is plaintiffs' other allegations that FDB continued to receive pricing information from wholesalers in addition to McKesson through 2002-2003, at which point other wholesalers refused to participate. (*Id.* ¶ 125(c) ("At some point in 2002-2003, certain manufacturers and wholesalers refused to provide First Data with pricing information.").) Thus, the spike in FDB's AWP prices that occurred in early 2002 could not have been caused by the purported scheme.

Faced with this debilitating pleading conflict, plaintiffs, in their Opposition, have come up with a brand new scheme. Now they contend that FDB actually did continue to survey other wholesalers but chose to *ignore* the pricing information it received from them (Compl. ¶ 125(c); Opp'n at 7.)[4] The problem with plaintiffs' new-found theory in their Opposition is that it flies in the face of plaintiffs' own allegations that beginning in 2001 or 2002, FDB simply "did not 'survey' other wholesalers." (Compl. ¶ 115.) Moreover, if FDB was going to ignore the prices

---

[4] Significantly, plaintiffs fail to allege that during this period, wholesalers other than McKesson submitted markups to FDB that differed from McKesson's. In other words, plaintiffs fail to negate the fact that the increase in AWPs may have been the same if FDB had relied upon the prices of the other wholesalers they surveyed in addition to McKesson.

5

submitted to it by wholesalers, there was then no need for FDB to scheme with McKesson in the first place since FDB could simply have published higher prices on its own.[5]

In sum, the new allegations plaintiffs offer in their Opposition depict a scheme to defraud that is even more illogical and inconsistent than the scheme already alleged in the complaint.[6] Thus, it could hardly be obvious that McKesson knew about a scheme whose factual underpinnings have collapsed under the weight of plaintiffs' contradictory allegations and appear to still be evolving. Because the complaint conspicuously avoids alleging facts supporting McKesson's knowledge of FDB's alleged misrepresentations, plaintiffs' RICO claim fails for this additional reason.[7] *See Bonilla v. Volvo Car Corp*., 150 F.3d 62, 66 (1st Cir. 1998).

---

[5] Nor does labeling McKesson's markup "phony" or without "economic justification" show McKesson's "knowing participation" in the alleged scheme. (Opp'n at 4, 6, 7.) Plaintiffs' scheme to inflate AWPs does not depend upon McKesson's markups being "phony"; it depends only on FDB surveying no other wholesaler. Equally important, plaintiffs do not allege facts to show that McKesson's markup was anything other than its own lawfully chosen "price basis." (Compl. ¶¶ 101-02, 111.) Indeed, a number of drugs had the same 25% markup before the alleged scheme began. (*Id.* ¶¶ 38, 39.)

[6] Beyond all else, plaintiffs' allegations here also conflict with their allegations in the MDL Case. Here, plaintiffs claim McKesson caused FDB to inflate AWP prices, but in the MDL Case, plaintiffs claimed it was the manufacturers who did so. *Pharm. II*, 307 F. Supp. 2d at 203. More than that, in this case, plaintiffs say the manufacturers wanted FDB's AWP prices to be lower (*i.e.,* 20% rather than 25%) (Opp'n at 4), but in the MDL Case, plaintiffs say the manufacturers wanted the prices to be higher. *Pharm. II*, 307 F. Supp. 2d at 202.

[7] Plaintiffs point to specific paragraphs of their complaint as alleging McKesson's knowing participation. (Opp'n at 9-10.) None do so. Several of the cited paragraphs do not even mention McKesson (Compl. ¶¶ 93-103, 102, 111). Other paragraphs allege only FDB's public statements (*Id.* ¶¶ 102, 111) or conclusory allegations regarding FDB's ceding of control (*id.* ¶ 162(d)), McKesson issuing instructions to "each Publisher" (*id.* ¶ 163), FDB's unlawful conduct done "by agreement with McKesson" (*id.* ¶ 115), and regular communications regarding McKesson's own markup (*id.*). Of course, none of these paragraphs could possibly address the scheme newly claimed in plaintiffs' Opposition.

## II.     PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED.

### A.     Under the Governing Choice of Law Principles, California's Consumer Protection Statutes Do Not Apply Here.

Plaintiffs' assertion that California law applies is meritless.  First, while plaintiffs admit that the most significant factor under the Massachusetts choice of law rules is "where the plaintiff acted in reliance on [the] defendant's representation" (Opp'n at 12), plaintiffs mistakenly conclude that each class member relied on the alleged fraud in California where FDB published false AWPs and where McKesson allegedly made representations to FDB about its prices.  (*Id.* at 13.)  This makes no sense.  Plaintiffs could not have relied on the alleged fraud until a drug was purchased and reimbursement was sought based on an AWP inflated by the 5% Scheme.  This Court reached this very same conclusion in the MDL Class Case, and concluded that the laws of plaintiffs' home states must therefore apply.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005) ("*Pharm. III*") (rejecting application of the law of a defendant's principal place of business to a nationwide class).

Second, plaintiffs claim California law governs because California courts have applied California laws to a nationwide class when the defendants were based in California.  (Opp'n at 14-15, citing *Wershba v. Apple Computer*, 110 Cal. Rptr. 2d 145, 151 (Ct. App. 2001); *Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr. 605, 613-16 (Ct. App. 1987).)  These cases are inapposite, however, because they apply *California* choice of law rules to determine if *California* has a sufficient interest in adjudicating the claims of a nationwide class that involve conduct emanating from California.  That inquiry is very different from the question this Court must answer:  whether a federal court sitting in Massachusetts and applying Massachusetts choice of law principles, should adjudicate the claims of a nationwide class under California laws.  The same question was asked in *Pharm. III*, and the answer is no.

Third, plaintiffs contend that with respect to plaintiffs' claim under California's section 17200, this Court should not focus on the place of plaintiffs' reliance because section 17200 "does not require proof of reliance."  (Opp'n at 15 (citing a 1996 decision).)  The California case law plaintiffs rely upon, however, is no longer applicable in light of recent amendments to the California statutes at issue.  The 2004 amendments to sections 17200 and 17500 require injury and reliance as a plaintiff must now show that she has "suffered injury in fact and ha[ve] lost money or property *as a result of* [the] unfair competition" that is challenged. Cal. Bus. & Prof. Code §§ 17203 & 17204 (emphasis added).

Plaintiffs fail to show that the analysis in *Pharm. III* does not apply, and indeed, they ultimately concede its application with respect to their civil conspiracy claim.  (Opp'n at 18.) Because none of the named plaintiffs are located in California, plaintiffs' claims under California Business and Professions Code sections 17200 and 17500 must be dismissed.

**B.      Plaintiffs' Section 17500 Claim Must Also Be Dismissed Because Plaintiffs Have Alleged No Public Misrepresentations Made by McKesson.**

Plaintiffs contend that they allege only primary liability against McKesson for fraudulent representations allegedly made by McKesson to FDB.  To establish liability under California Business & Professions section 17500, however, plaintiffs must allege that McKesson made actionable representations "before the public."  Cal. Bus. & Prof. Code §17500.  No such allegations are made.  Plaintiffs only recite allegations that McKesson "conceal[ed]" and "did not disclose" the alleged Scheme to the class.  (Opp'n at 15-16.)  This failure to disclose information, however, is not actionable under section 17500.  *See Emery v. Visa Int'l Serv. Ass'n*, 116 Cal. Rptr. 2d 25, 36 (Ct. App. 2002) (defendant not liable under section 17500 where it made no misrepresentations but failed to stop other entities from making misrepresentations).

8

C.    **Plaintiffs Have Failed to Plead a Viable Civil Conspiracy Claim.**

Under the choice of law analysis above, the applicable state laws for the named plaintiffs' civil conspiracy claims are their home states of Massachusetts, Pennsylvania, and Tennessee.[8] In all these states, the claim fails for two reasons. First, the claim is, by plaintiffs' own allegations, dependent upon the tortious acts alleged in the RICO and California claims. (Compl. ¶¶ 8, 113, 115, 122, 194.) Because those other claims must be dismissed, so too must the conspiracy claim. *See Aetna Casualty Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994).

Second, a civil conspiracy claim fails when it "adds nothing" to other claims that remain in the complaint. *See Grant v. John Hancock Mut. Life Ins. Co.*, 183 F. Supp. 2d 344, 362-63 (D. Mass. 2002). Contrary to plaintiffs' contentions (Opp'n at 19-20), *Grant* is applicable here. Although a summary judgment case, *Grant* stated that "*allegations* of conspiracy" that "add nothing" to the underlying claim are insufficient. *Id.* at 364 (emphasis added). Moreover, *Grant* itself rejected a duplicative civil conspiracy claim, like the one here, despite its citation to a case involving a different type of conspiracy. *Id.* at 363-64. Finally, plaintiffs argue that *Grant*'s holding would "effectively vitiate" all concerted action civil conspiracy claims, but the case they cite actually supports *Grant*. *Copperbeech P'ship, Ltd. v. Seegel, Lipshutz & Wilchins, P.C.*, No. 020489A, 2004 WL 1431052 (Mass. Super. Ct. May 5, 2004) (dismissing civil conspiracy claim because the conspiracy caused no damage beyond that caused by the underlying civil wrong).

III.    **DISMISSAL OF PLAINTIFFS' COMPLAINT SHOULD BE WITH PREJUDICE.**

Unlike a typical, newly filed case, plaintiffs have previously engaged in extensive discovery of FDB and McKesson as third parties in the MDL Class Case, including four

---

[8]  McKesson will focus on Massachusetts law as plaintiffs likewise cite to Massachusetts law and do not dispute that the elements of the civil conspiracy claim they allege do not materially differ among the laws of Massachusetts, Tennessee, and Pennsylvania.

depositions and thousands of pages of documents produced by McKesson, alone, subject to this

Court's Protective Order.[9]  Indeed, having had ample opportunity with "McKesson's own

internal documents" (Opp'n at 4) to uncover even one viable claim, the "additional discovery"

plaintiffs request (Opp'n at 12 n.9) will not improve their inconsistent scheme or cure their

various pleading deficiencies.

Moreover, plaintiffs have already proffered in their Opposition the additional allegations

they would include in an amended complaint.  McKesson has demonstrated that even if

plaintiffs' additional allegations were deemed pled, dismissal of the complaint would still be

required.  *See Northeast Fed. Credit Union v. Neves*, 837 F.2d 531, 536 (1st Cir. 1988) (denying

opportunity to amend where "the futility of the proposed amendment is apparent").  For these

reasons, plaintiffs' complaint should be dismissed with prejudice.

## CONCLUSION

For each of the foregoing reasons, the claims against McKesson should be dismissed with

prejudice.

|  |  |
|---|---|
|  | McKesson Corporation |
| Dated:  November 9, 2005 | By its attorneys: |
|  |  |
|  |   /s/ Lori A. Schechter                        |
|  |  |
| Joan M. Griffin, BBO # 549522 | Melvin R. Goldman (*pro hac vice*) |
| Michael P. Twohig, BBO # 648079 | Lori A. Schechter (*pro hac vice*) |
| Perkins Smith & Cohen LLP | Tiffany Cheung (*pro hac vice*) |
| One Beacon Street, 30th Floor | Morrison & Foerster LLP |
| Boston, MA 02108 | 425 Market Street |
| tel. 617-854-4000 | San Francisco, CA 94105-2482 |
| fax 617-854-4040 | tel. 415-268-7000 |
|  | fax 415-268-7522 |

---

[9]  The use of such discovery in this case appears to violate this Court's Protective Order
prohibiting (a) the use of "Confidential" discovery for any purpose other than the MDL case, and
(b) the disclosure of "Confidential" information in publicly filed documents.  (*See* Protective
Order, *In re Pharm. Indus. Average Wholesale Price Litig.*, ¶¶ 4, 6, 8 (Dec. 17, 2002).)

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on November 9, 2005.

/s/ Lori A. Schechter
Lori A. Schechter