UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
NEW ENGLAND CARPENTERS              )
HEALTH BENEFITS FUND, PIRELLI       )
ARMSTRONG RETIREE                   )
MEDICAL BENEFITS TRUST;             )
TEAMSTERS HEALTH & WELFARE          )
FUND OF PHILADELPHIA AND            )
VICINITY; and PHILADELPHIA          )
FEDERATION OF TEACHERS HEALTH       )
AND WELFARE FUND,                   )
                                    )
            Plaintiffs,             )
                                    )
v.                                  )
                                    )
FIRST DATABANK, INC., a Missouri    )   Civil Action No. 1:05-CV-11148-PBS
Corporation; and McKESSON           )
CORPORATION, a Delaware Corporation,)
                                    )
            Defendants.             )
_____ )


**PLAINTIFFS' SURREPLY MEMORANDUM IN OPPOSITION TO DEFENDANT
McKESSON CORPORATION'S MOTION TO DISMISS COMPLAINT**

1821.10 0004 MTN.DOC

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 3

    A.    Plaintiffs Properly Allege the Common Purpose of Defendants' RICO Enterprise ............................................................................. 3

        1.    Making profits via illegal activity is a sufficient common purpose ................................................................................................ 3

        2.    Plaintiffs plainly allege that the enterprise's purpose was profit making through illegal activity ................................................... 5

        3.    Plaintiffs also allege that both participants knew of their own and each others' fraudulent activity ................................................... 5

    B.    McKesson's Challenges to Plaintiffs' State-Law Claims Fail ............................... 7

        1.    Plaintiffs plead a claim for violation of California's § 17200 .................... 7

        2.    Plaintiffs' civil-conspiracy claim is neither dependent on improperly pled claims or duplicative ................................................... 9

    C.    Any Dismissal Order Should Allow Plaintiffs to Amend Their Complaint ......... 10

III. CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abels v. Farmers Commodities Corp.*,
    259 F.3d 910 (8th Cir. 2001) ............................................................................................ 1, 3

*Bell v. Blue Cross of California*,
    131 Cal. App. 4th 211, 31 Cal. Rptr. 3d 688 (2005) ......................................................... 9

*Blakemore v. Superior Ct.*,
    129 Cal. App. 4th 36, 27 Cal. Rptr. 3d 877 (2005) ........................................................ 8, 9

*Bonilla v. Volvo Car Corp.*,
    150 F.3d 62 (1st Cir. 1998) (Reply at 6) ........................................................................... 6

*Committee on Children's Television, Inc. v. General Foods Corp.*,
    35 Cal. 3d 197, 673 P.2d 660 (1983) ................................................................................. 8

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325, 74 Cal. Rptr. 2d 55 (1998) ............................................................. 8

*Garrett v. Tandy Corp.*,
    295 F.3d 94 (1st Cir. 2002) ................................................................................................ 6

*McCann v. Lucky Money, Inc.*,
    129 Cal. App. 4th 1382, 29 Cal. Rptr. 3d 437 (2005) ....................................................... 8

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass. 2005) .......................................................................................... 8

*RD Mgmt. Corp. v. Samuels*,
    2003 U.S. Dist. Lexis 9013 (S.D.N.Y. May 28, 2003) ...................................................... 5

*Sturge v. Bilbeisi*,
    1992 U.S. Dist. Lexis 17365 (S.D. Fla. Sept. 10, 1992) .................................................... 5

*United States v. Cooper*,
    91 F. Supp. 2d 60 (D.D.C. 2000) ....................................................................................... 5

*United States v. Cunningham*,
    1996 U.S. Dist. Lexis 22335 (D.D.C. Jan. 18, 1996) ........................................................ 5

*United States v. Flynn*,
    852 F.2d 1045 (8th Cir. 1988) ....................................................................................... 3, 4

*United States v. Ianniello*,
    808 F.2d 184 (2d Cir. 1986) .............................................................................................. 3

- iii -

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir. 1989) .................................................................................................3

*United States v. Leisure*,
    844 F.2d 1347 (8th Cir. 1988) ............................................................................................3, 4

*United States v. London*,
    66 F.3d 1227 (1st Cir. 1995) ............................................................................................. 1, 3

*United States v. Perholtz*,
    842 F.2d 343 (D.C. Cir. 1988) ............................................................................................4, 5

*United States v. Richardson*,
    167 F.3d 621 (D.C. Cir. 1999) ................................................................................................4

*Watson v. Deaconess Waltham Hospital*,
    298 F.3d 102 (1st Cir. 2002) ....................................................................................................6

## MISCELLANEOUS

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................................................8

Cal. Bus. & Prof. Code § 17500 ........................................................................................... 2, 8, 9

*Restatement (Second) Conflict of Laws* § 148 (1971) ..................................................................7

I.   **INTRODUCTION**

McKesson still insists that the McKesson/FDB enterprise's goal of reaping profits from corrupting the national standard that pharmacies use to obtain reimbursement cannot suffice as a RICO enterprise common purpose. Yet profit making from illegal activity (*i.e.*, manipulating and inflating published AWPs) can satisfy the common-purpose element of a RICO enterprise.[1] Plaintiffs here plead that McKesson and FDB knowingly and jointly engaged in fraudulent activity to make money, which sufficiently pleads an enterprise's common purpose. *See infra* at 3-5.

Plaintiffs also plainly allege that McKesson and FDB obtained these profits via coordinated fraudulent activity – McKesson fabricated AWPs, it was the only source of AWP information FDB had and FDB published them knowing full well they were baseless. But McKesson argues that Plaintiffs do not sufficiently plead that FDB and McKesson knew their conduct was fraudulent. For support, McKesson twists the applicable pleading standards beyond recognition, requiring Plaintiffs at this stage to "negate" hypothetical "facts" that appear nowhere in the Complaint. It is Plaintiffs, not the defendants, who are entitled to all reasonable inferences from their allegations, and the Court can reasonably infer defendants' knowledge from their intimate involvement in generating and publishing fraudulent AWPs. Plaintiffs do not have to "negate" other inferences – especially McKesson's baseless ones. *See infra* at 5-7.

McKesson also resorts (again) to mischaracterizing the Complaint, stating that Plaintiffs alleged FDB continued to survey other wholesalers after the scheme began. But Plaintiffs nowhere allege or contend that FDB continued its pricing surveys – indeed, they consistently

---

[1] *See, e.g., United States v. London*, 66 F.3d 1227, 1230 (1st Cir. 1995); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 919 (8th Cir. 2001).

allege and contend precisely the opposite, that when the scheme commenced FDB "by agreement with McKesson, limited its purported "surveys" to McKesson and did not "survey" other wholesalers. ¶ 115. *See infra* at 7.

McKesson's challenges to Plaintiffs' state-law claims fare no better. California's Unfair Competition Laws ("UCL") apply here under Massachusetts' choice-of-law rules because the most pertinent misrepresentations all emanated from one state, California, and consumer reliance is not even an element of the UCL claims. And as to whether McKesson can avoid liability under Plaintiffs' UCL § 17500 claim because, it contends, it didn't issue any misrepresentations directly to the public, McKesson ignores that the statute expressly makes it unlawful to "cause to be made or disseminated" any untrue statement to the public, which is precisely McKesson's role in the fraudulent scheme. *See infra* at 7-9.

Lastly, McKesson claims that Plaintiffs' civil-conspiracy claim should be dismissed because it merely duplicates other claims and thus "adds nothing" to the Complaint. But McKesson again ignores inconvenient facts. Plaintiffs assert Counts IV and V of the Complaint only against FDB. The civil-conspiracy claim (Count VI) asserted against McKesson creates a basis to hold McKesson accountable for these claims, plainly "adding something" to the underlying claims. *See infra* at 9-10.

For all these reasons, the Court should deny McKesson's motion to dismiss.

## II.     ARGUMENT

### A.    Plaintiffs Properly Allege the Common Purpose of Defendants' RICO Enterprise

#### 1.    Making profits via illegal activity is a sufficient common purpose

McKesson insists that "reaping a profit" cannot suffice as a RICO enterprise's common purpose even where the enterprise derives its profits from illegal activity. Then, as its sole authority, McKesson mischaracterizes this Court's *Pharm. II* decision.

Obtaining profits via illegal activity plainly can satisfy the common-purpose element of a RICO enterprise. *See United States v. London*, 66 F.3d 1227 (1st Cir. 1995). In *London*, the criminal RICO defendant operated a bar and a check-cashing service. 66 F.3d at 1230. The alleged RICO enterprise was an association-in-fact between these two businesses. *Id.* at 1243. The government charged that London conducted the enterprise's affairs through a pattern of racketeering activity that included illegal bookmaking and extortion. *Id.* at 1230. In affirming London's RICO conviction the First Circuit stated that "[t]he jury could have found that there was a common or shared purpose animating both the enterprise and London: ***doing commerce with (and thereby profiting from) bookmakers engaged in illegal gambling***." *Id.* at 1244 (emphasis added).

Other authorities echo that profiting from illegal activity can suffice as an enterprise's common purpose. In *United States v. Ianniello*, 808 F.2d 184, 191-92 (2d Cir. 1986), for example, the Second Circuit found that an enterprise's common purpose "was to skim profits." *See also United States v. Indelicato*, 865 F.2d 1370, 1377 (2d Cir. 1989) (quoting *Ianniello*). The Eighth Circuit held in *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 919 (8th Cir. 2001), that "[t]he acts imputed to the defendants had a common purpose, namely, to earn profits from trades associated with HTA contracts." And in *United States v. Flynn*, 852 F.2d 1045,

1051-52 (8th Cir. 1988), the court summarized its earlier holdings that profiting from illegal acts constitutes a viable RICO enterprise common purpose. The court quoted *United States v. Leisure*, 844 F.2d 1347, 1363 (8th Cir. 1988), to this effect:

> The Leisure group acted out of a common purpose to dominate local labor unions, ***profit economically from this domination***, and murder opponents of their efforts to the extent necessary....
> [*Flynn*, 852 F.2d at 1051 (quoting *Leisure*; emphasis added).]

As *Flynn* noted, *Leisure* identified the enterprise's common purpose as "***to enrich its members financially***; to murder leaders and members of rival groups, organizations, and families ...." *Id.* at 1052 (quoting *Leisure*; emphasis added). Indeed, *Flynn* found that a RICO enterprise necessarily serves an economic purpose:

> Flynn also argues that the evidence failed to show that his activities promoted his economic interests in the enterprise. ***For purposes of RICO, an enterprise must be directed toward an economic goal***. *United States v. Anderson*, 626 F.2d 1358, 1372 (8th Cir. 1980), *cert. denied*, 450 U.S. 912, 67 L. Ed. 2d 336, 101 S. Ct. 1351 (1981). *See also United States v. Ivic*, 700 F.2d 51, 59-65 (2d Cir. 1983). The members of the Leisure enterprise directed their activities toward controlling St. Louis' labor unions. ***That goal served to promote an economic purpose***. [852 F.2d at 1052 (emphasis added).]

Other authorities, not surprisingly, are consistent that profit making through an illegal activity is a sufficient RICO enterprise common purpose. See, for example, *United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999) (common purpose established because "the government presented 'undeniable' evidence that [defendants'] common purpose was to 'obtain money or other property by robbery'"); *United States v. Perholtz*, 842 F.2d 343, 363 (D.C. Cir. 1988) ("[t]he indictment charges that the enterprise in this case was a group ... associated for the

- 4 -

common purpose of unjustly enriching themselves from the proceeds of government contracts and subcontracts").[2]

### 2. Plaintiffs plainly allege that the enterprise's purpose was profit making through illegal activity

McKesson mischaracterizes the Complaint to obscure Plaintiffs' allegations of the enterprise's illegal activity. As Plaintiffs already explained, the Complaint alleges that both participants created an enterprise and intended the enterprise to derive profits from fraudulent conduct. Pls.' Opp. at 4-5; ¶¶ 113-30. McKesson fabricated AWPs and pricing spreads to ingratiate itself with retailers and to increase profits for its own pharmacy business. ¶ 124. FDB published phony spreads and AWPs directly and completely under McKesson's direction, despite its contrary public representations that its spreads and AWPs were the product of diligent market analyses, to avoid the significant expense of compiling legitimate figures and to establish itself as the leading pharmaceutical pricing publisher. ¶ 125.

### 3. Plaintiffs also allege that both participants knew of their own and each others' fraudulent activity

Plaintiffs' allegations plead that defendants knowingly participated in the enterprise's fraudulent activity. Pls.' Opp. at 9-10. McKesson fabricated bogus AWPs and knew that FDB published them without question, just as McKesson told it to do. ¶¶ 166-67, 115, 122, 162(c) & (d), 163, 153-54, 126, 129. FDB, while publicly misrepresenting its procedures for determining

---

[2] *See also RD Mgmt. Corp. v. Samuels*, 2003 U.S. Dist. Lexis 9013, at *18 (S.D.N.Y. May 28, 2003) ("the facts alleged in the complaint provide a reasonable inference that the individuals participating in the Samuels/RD Brokers Enterprise shared a common purpose, to enrich themselves at the expense of RD."); *United States v. Cooper*, 91 F. Supp. 2d 60, 68 (D.D.C. 2000) ("[A]n enterprise can be established through an informal group of people who come together for the common purpose of obtaining financial gain through criminal activity …. Clearly, the government's proffered evidence, if proved, demonstrates that Cooper and his confederates arranged and planned robberies with the common purpose of 'obtaining money or other property.'"; citation omitted); *United States v. Cunningham*, 1996 U.S. Dist. Lexis 22335, at *7 (D.D.C. Jan. 18, 1996) ("[f]irst, there was a palpable common purpose: namely, enrichment by robbery"); *Sturge v. Bilbeisi*, 1992 U.S. Dist. Lexis 17365, at *40-41 (S.D. Fla. Sept. 10, 1992) ("[t]he Complaint sufficiently alleges a group of persons and entities 'associated together … for a common purpose of engaging in a … course of conduct' to generate illicit profits with knowledge of the respective roles and the overall objective").

1821.10 0004 MTN.DOC

AWPs and spreads, also published McKesson's pricing figures without question and without the market investigation it was required to perform. ¶¶ 115, 122, 154, (c) & (d), 163. As argued previously and McKesson does not dispute, knowledge of the fraud is sufficiently pled if it is obvious from the facts alleged that the misdeeds were committed knowingly. Pls.' Opp. at 9 (citing *Corporacion Insular de Seguros v. Munoz*, 826 F. Supp. 599, 610 (D.P.R. 1993)).

McKesson responds by turning the applicable pleading standard on its head and by mischaracterizing the Complaint. Proclaiming that Plaintiffs "fail to negate" certain inferences (Reply at 5 n.4), McKesson disregards that Plaintiffs – not defendants – are entitled to all reasonable inferences at this stage. *See, e.g., Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 108 (1st Cir. 2002); *Garrett v. Tandy Corp.*, 295 F.3d 94, 105 (1st Cir. 2002).[3] Plaintiffs thus need not "negate" anything. They need only – as they do here – allege facts sufficient to create a reasonable inference of knowledge.[4]

McKesson then tries to force adverse inferences from the Complaint. Reply at 5. But it does not undermine the inference that defendants knew of each participant's role in the fraudulent scheme that FDB continued to receive some pricing information from other wholesalers after it began to rely exclusively on McKesson's phony figures. It is a reasonable inference that the scheme did not require FDB to turn away all pricing information offered by other sources. The scheme only required FDB not to use it. *Compare* ¶¶ 115, 122, 125(a), 127-29 *with* ¶ 132. The Court can reasonably infer that FDB's accepting proffered pricing

---

[3] Besides *Pharm. II*, the only authority McKesson cites regarding standards for pleading defendants' knowledge of illegal activity is *Bonilla v. Volvo Car Corp.*, 150 F.3d 62 (1st Cir. 1998) (Reply at 6), an appeal from denial of a motion for new trial, which, as such, says nothing about the pleading standards that apply here.

[4] McKesson does not explain – because it can't – why Plaintiffs should be required to "negate" the "fact" that the AWP increases "may have been the same" even had FDB determined AWPs in a manner consistent with its public representations (Reply at 5 n.4). First, the so-called "fact" is merely McKesson's speculation. Second, the Complaint contains NO allegation that might support the inference, reasonably or otherwise. And third, even if the Complaint could support such an inference, it is not Plaintiffs' burden under applicable pleading standards to negate it.

information from other sources extended the life of the scheme by lulling the industry to believe that FDB still based its AWPs and spread on a broad range of sources. McKesson also does not explain how it could fatally undercut the inference of knowledge that these other sources eventually discerned the scheme and stopped forwarding their pricing information.

Moreover, McKesson dissembles when it states that Plaintiffs "contend that FDB actually did continue to survey other wholesalers …" (Reply at 5), thereby repeating its prior mischaracterization that the Complaint alleges FDB "continued to survey wholesalers through 2002-2003" (Def. Opening Br. at 6, 13, *quoted in* Pls.' Opp. at 7). Plaintiffs nowhere allege or contend that FDB continued its pricing surveys – indeed, they allege the opposite. *See*, for example, ¶ 115. Plaintiffs instead state simply that FDB "began ignoring pricing information" and that such information nonetheless "may have continued to dribble in …." Pls.' Opp. at 7; *see also* ¶ 132.[5] There thus is no "debilitating pleading conflict" nor "brand new scheme." *Cf.*, Reply at 5.[6]

B.  **McKesson's Challenges to Plaintiffs' State-Law Claims Fail**

   1.  **Plaintiffs plead a claim for violation of California's § 17200**

When a defendant makes misrepresentations only in one state that then injure multiple plaintiffs in diverse locations, a key factor to determining the locus of the misconduct for choice-of-law purposes is where the misrepresentations were made. *Restatement (Second) Conflict of Laws* § 148, Comment h. *See* Pls.' Opp. at 14. McKesson's statements to FDB containing the sham AWP figures were the root causes of Plaintiffs' injuries and emanated solely from

---

[5] And if any amendment were necessary, Plaintiffs can plead that FDB received AWPs only from McKesson and not the other wholesalers.

[6] Plaintiffs allegations here also are not inconsistent with allegations in the broader claims in the MDL *Pharmaceutical Industry Average Wholesale Price Litigation*. First, Plaintiffs here do not allege that "manufacturers wanted FDB's AWP prices to be lower …." Reply at 6 n.6 (purporting to cite Pls.' Opp. at 4). This is another McKesson mischaracterization. Further, the *Pharmaceutical Industry* litigation concerns a long-running, wide-ranging scheme in which manufacturers controlled the pricing spread through misreporting of AWPs and/or WACs. The scheme here, by contrast, involved a discrete, short-term scheme between just two players. This smaller scheme does not undermine or negate the MDL action's scheme allegations.

McKesson's California headquarters. This distinguishes Plaintiffs' claims from *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005) ("*Pharm III*"), where various defendants issued misrepresentations from many different states, thereby diluting the weight in choice-of-law analysis assigned to the place of the misrepresentation.

McKesson also distorts the reason Plaintiffs previously cited California choice-of-law decisions. Plaintiffs did not claim that California law applies merely "because California courts have applied California laws to a nationwide class," as McKesson urges. *Cf.*, Reply at 7. Rather, as they explained previously, Massachusetts choice-of-law analysis encompasses *Restatement* § 6, which looks in part to the relevant policies of the competing states. Plaintiffs cited California authorities as evidence of California's interest in regulating the conduct of companies based there, even when the conduct has impact beyond the state's borders. *See* Pls.' Opp. at 14-15.

Next, the weight given the place-of-plaintiffs'-reliance factor is diminished here because reliance is not even an element of Plaintiffs' claim under California law. McKesson does not dispute Plaintiffs' authorities that reliance was not an element under California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*, before the 2004 amendments to §§ 17200 and 17500. Reply at 8. *See also Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332, 74 Cal. Rptr. 2d 55, 59 (1998); *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211, 673 P.2d 660, 668 (1983). McKesson claims instead the amendments altered that rule, even though they say nothing about reliance. But cases decided after the amendment have reiterated that §§ 17200 and 17500 do not require a showing of reliance. *See, e.g., McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1388, 29 Cal. Rptr. 3d 437, 441 (2005); *Blakemore v. Superior Ct.*, 129 Cal. App. 4th 36, 49, 27 Cal. Rptr. 3d 877, 887 (2005) ("a § 17200 violation

can be shown even without allegations of actual deception, reasonable reliance and damage"); *see also Bell v. Blue Cross of California*, 131 Cal. App. 4th 211, 221, 31 Cal. Rptr. 3d 688, 696 (2005) ("We likewise reject [Defendant]'s contention that [Plaintiff] has failed to state a cause of action under the UCL, where the issue is whether [Plaintiff]'s first amended complaint alleges that [Defendant] engaged in a business practice likely to deceive the reasonable person to whom the practice was directed, not whether there was actual deception.") (citations omitted).

Finally, McKesson's argument that the Court should dismiss Plaintiffs' § 17500 claim because McKesson did not issue any statement directly to Plaintiffs (Reply at 8) ignores the statute's plain language. As Plaintiffs quote in their Complaint, Bus. & Prof. Code § 17500 provides that "[i]t is unlawful for any … corporation … to make or disseminate *or cause to be made or disseminated* before the public … any statement … which is untrue or misleading …." ¶ 173 (emphasis added). Plaintiffs squarely allege that McKesson caused FDB to publish false AWPs and spread figures. *E.g.*, ¶¶ 115, 129, 162(c)-(d), 163. McKesson's paraphrase of § 17500 (Reply at 8) is thus incorrect, and Plaintiffs' allegations are sufficient to state a claim.

 2. **Plaintiffs' civil-conspiracy claim is neither dependent on improperly pled claims or duplicative**

McKesson argues first that Plaintiffs' civil-conspiracy claim should be dismissed because it is dependent on the viability of these other claims. Reply at 9. This argument fails because, as shown, Plaintiffs have stated claims for violation of RICO and the California UCL.

McKesson argues next that the conspiracy claim should be dismissed because it merely duplicates Plaintiffs' underlying claims, "adding nothing" to them. But McKesson ignores that Plaintiffs do not allege Counts IV (California Legal Remedies Act) and V (Negligent Misrepresentation) against McKesson. *See* Pls.' Opp. at 20 n.18; ¶¶ 182, 187-90. At a minimum,

Plaintiffs' civil-conspiracy claim thus allows Plaintiffs to hold McKesson accountable for conspiring with FDB to have FDB violate these laws and common-law duties. The conspiracy claim therefore "adds something" to the Complaint, while McKesson's argument adds nothing to its motion.

C.   **Any Dismissal Order Should Allow Plaintiffs to Amend Their Complaint**

If the Court is inclined to rule that Plaintiffs have not sufficiently pled their claims, Plaintiffs reiterate that they should be allowed to amend their Complaint to correct any deficiencies. McKesson, however, urges that dismissal, if any, should be without leave to amend. Although no discovery has been exchanged in this litigation, McKesson contends that Plaintiffs have obtained everything they need to plead their claims from discovery in the separate MDL *Pharmaceutical Industry* class action. But as McKesson knows full well, the MDL action's focus is quite different. There is, for example, no allegation there of a conspiracy or association-in-fact enterprise between McKesson and FDB. Neither are there allegations of wire and mail fraud between these two defendants. Plaintiffs' investigation into the unique claims of this case is continuing and no discovery has been taken of either McKesson or FDB in the AWP litigation after plaintiffs learned of the FDB/McKesson conspiracy in that litigation. Plaintiffs should have an opportunity to correct any deficiencies the Court might identify. In *AWP I* the Court identified the deficiencies in the RICO allegations and as to some claim these were cured in *AWP II*. Hence, even apart from the discovery issue, Plaintiffs suggest that dismissal with prejudice, without affording an opportunity to cure, would be inappropriate.

III.   CONCLUSION

Defendants' motion to dismiss should be denied.

| | |
|---|---|
| DATED: November 16, 2005 | By  /s/ Steve W. Berman<br>Thomas M. Sobol (BBO#471770)<br>Hagens Berman Sobol Shapiro LLP<br>One Main Street, 4th Floor<br>Cambridge, MA 02142<br>Telephone: (617) 482-3700<br>Facsimile: (617) 482-3003<br><br>Steve W. Berman<br>Sean R. Matt<br>Hagens Berman Sobol Shapiro LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA 98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br><br>Elizabeth Fegan<br>Hagens Berman Sobol Shapiro LLP<br>60 W. Randolph Street, Suite 200<br>Chicago, IL 60601<br>Telephone: (312) 762-9235<br>Facsimile: (312) 762-9286<br><br>Jeffrey Kodroff<br>John Macoretta<br>Spector, Roseman & Kodroff, P.C.<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>Telephone: (215) 496-0300<br>Facsimile: (215) 496-6611<br><br>Marc H. Edelson<br>Allan Hoffman<br>Hoffman & Edelson<br>45 West Court Street<br>Doylestown, PA 18901<br>Telephone: (215) 230-8043<br>Facsimile: (215) 230-8735 |

<div style="margin-left: 40%;">

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone:  (615) 244-2202
Facsimile:  (615) 252-3798

</div>

- 12 -

## CERTIFICATE OF SERVICE

       I, Steve W. Berman, hereby certify that a true and correct copy of the above document was served on the attorney of record for each party via the Court's electronic filing system and First Class Mail this 16th day of November, 2005.

                                                                           /s/ Steve W. Berman
                                                                              Steve W. Berman

1821.10 0004 MTN.DOC