IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND, PIRELLI ARMSTRONG
RETIREE MEDICAL BENEFITS TRUST,
TEAMSTERS HEALTH & WELFARE FUND
OF PHILADELPHIA AND VICINITY, and
PHILADELPHIA FEDERATION OF
TEACHERS HEALTH AND WELFARE FUND,

Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri
corporation, and MCKESSON CORPORATION,
a Delaware corporation,

Defendants.

Case No. 1:05-CV-11148-PBS

**DEFENDANT MCKESSON CORPORATION'S
STATEMENT OF ISSUES FOR THE FEBRUARY 9, 2006
STATUS CONFERENCE**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

I.      THE UNCERTAINTY OF A SETTLEMENT WITH FDB
        SHOULD NOT CREATE TWO SCHEDULING TRACKS
        IN THIS CASE. ........................................................................................................2

        A.      The Two Defendants in the Case Are Currently
                Proceeding on Different Tracks. .....................................................................2

        B.      The Uncertainty of a Settlement with FDB Should Be
                Resolved So a Single Schedule Can Be Set In this
                Case. ................................................................................................................3

II.     THE CASE MANAGEMENT SCHEDULE SHOULD
        ACCOUNT FOR PLAINTIFFS' ANTICIPATED
        CALIFORNIA ACTION. .........................................................................................6

        A.      Plaintiffs Intend to File a Related Case in a California
                Federal Court. ..................................................................................................6

        B.      The Case Management Schedule Should Not be
                Established Before the Court and the Parties Can
                Assess the Impact of Plaintiffs' New California
                Action on This Case. ........................................................................................6

III.    PLAINTIFFS SHOULD BE ALLOWED A BRIEF
        PERIOD OF TIME TO RESOLVE THE
        UNCERTAINTIES THEY HAVE CREATED BEFORE
        ANY SCHEDULING CONFERENCE IS HELD. ....................................................7

CONCLUSION ......................................................................................................................9

## INTRODUCTION

Plaintiffs' Complaint alleges that defendant McKesson Corporation ("McKesson") conspired with defendant First Databank ("FDB") to artificially raise the average wholesale prices published by FDB for over a thousand brand name prescription drugs in violation of RICO and various state laws. Despite plaintiffs' claims of common plan and purpose for the two defendants, plaintiffs have prompted the defendants to proceed on different schedules in this case. McKesson moved to dismiss the Complaint in October, participated in a hearing on its motion in November, and filed its Answer to the Complaint in December of 2005. FDB, on the other hand, has received repeated extensions of time from plaintiffs to respond to the Complaint, and to date, has not yet responded.

At the November 30, 2005 hearing before the Court, plaintiffs informed the Court (and McKesson) that plaintiffs were engaged in negotiations with FDB for a class settlement, and that they expected those negotiations to reach fruition within 30 days. To date, over 60 days later, no proposed settlement agreement has been filed with the Court. Nevertheless, plaintiffs have proposed a schedule to McKesson that would require discovery to commence this month, class discovery to be completed in time for a class motion to be filed on March 31, and briefing on the class motion to be completed by May — all without regard to the status of FDB in this case. At the November 30 hearing, this Court advised the parties that a scheduling conference could not be set until it is determined which "parties are still left in the case." (Ex. A, Hearing Tr. 33:20-22, Nov. 30, 2005.) Accordingly, McKesson declined to adopt plaintiffs' proposal to set a schedule without resolution of FDB's status, despite plaintiffs' assurances that FDB could simply "catch up" if no settlement is reached.

At the November 30 hearing, plaintiffs also stated their intent to imminently file a new, similar action in federal court in California. No such case, however, has been filed yet. Plaintiffs' California case could replace this case entirely, change the list of plaintiffs or defendants, alter the scope of the claims, or raise the issue of coordination between this case and the case filed in California. A scheduling order should be established after the Court and the parties can examine how this new case will affect the management and scope of this case. Thus, there are two things that need to be resolved to have a meaningful scheduling conference and scheduling order: 1) FDB's status as a party in this case; and 2) the scope of any new action filed by plaintiffs.

The uncertainties that plaintiffs have created should not require undue delay in this case. To the contrary, McKesson proposes that the Court set a short deadline of a few weeks for plaintiffs to present any settlement to the Court it has reached, to file its California action, if any, and to inform the Court of its intentions with respect to that action. In the interim few weeks, the parties can engage in a Rule 26(f) conference to discuss the anticipated scope of discovery and other Rule 26 issues. A scheduling conference can be set shortly after the Court's deadline, and the parties and the Court can set a schedule for this case with adequate consideration given for the impact that a proposed settlement and new lawsuit will have on case management issues.[1]

I.      **THE UNCERTAINTY OF A SETTLEMENT WITH FDB SHOULD NOT CREATE TWO SCHEDULING TRACKS IN THIS CASE.**

     A.      **The Two Defendants in the Case Are Currently Proceeding on Different Tracks.**

Two defendants, FDB and McKesson, have been named in this action; the pleadings are resolved with respect to McKesson, but FDB has yet to respond to the Complaint. On October

---

[1] McKesson's proposed schedule for proceeding without undue delay is set forth in section III below, and in the Proposed Case Management Order attached hereto as Exhibit E.

19, 2005, McKesson filed a motion to dismiss plaintiffs' Complaint. On November 30, 2005, McKesson appeared before the Court for the hearing on this motion. On December 29, 2005, McKesson filed an answer to the Complaint.

At the November 30, 2005 hearing, plaintiffs advised the Court that they are engaged in discussions with FDB to settle on a class-wide basis, and that plaintiffs would know "in 30 days" whether a settlement has been reached. (Ex. A, Hearing Tr. 33:10-34:4.) On December 22, 2005, plaintiffs did not notify the Court that they had settled with FDB, but instead, filed a stipulation to extend FDB's deadline to respond to the Complaint until January 16, 2006. FDB did not file a response by January 16. On January 25, 2006, plaintiffs filed another stipulation extending FDB's deadline to February 6, 2006. Now, over 60 days since the November 30, 2005 hearing, plaintiffs have still not notified the Court that they have settled with FDB, and FDB has not responded to plaintiffs' Complaint. Nevertheless, McKesson engaged in a meet and confer with plaintiffs' counsel regarding a schedule for the next steps in this case. (*See* Ex. B, Letter from S. Berman to McKesson's counsel dated Dec. 7, 2005; Ex. C, Letter from L. Schechter to S. Berman dated Dec. 22, 2005; Ex. D, Letter from S. Berman to L. Schechter dated Jan. 6, 2006.) McKesson and plaintiffs did not agree on a schedule and requested the Court to set this status conference.

### B. The Uncertainty of a Settlement with FDB Should Be Resolved So a Single Schedule Can Be Set In this Case.

In the meet and confer process regarding scheduling, plaintiffs suggested that McKesson and the plaintiffs should commence discovery on February 8, 2006, without FDB, and that class discovery should be completed in time for plaintiffs to file their class motion by March 31, 2006. Plaintiffs proposed that the class motion be fully briefed by May 31, 2006. (*See* Ex. B, Dec. 7, 2005 Letter.) McKesson, on the other hand, proposed: 1) a schedule that would allow time for

plaintiffs to resolve the uncertainties they raised; 2) a scheduling conference to shortly follow, after the parties and the Court became fully informed about the relevant issues; and 3) a number of initial proceedings that could take place while plaintiffs were resolving the open issues. (*See* Ex. C, Dec. 22, 2005 Letter.)  Plaintiffs rejected McKesson's basic proposal.  (*See* Ex. D, Jan. 6, 2006 Letter.)

Putting aside the unreasonably short period of time plaintiffs propose to complete class discovery and address the class issue, it makes no sense to proceed toward the class motion while FDB's status as a party remains uncertain.  Commencing discovery with just McKesson and the plaintiffs will result in duplication of efforts and inefficiencies if a settlement with FDB fails to materialize.  Discovery disputes and objections may need to be revisited when FDB attempts to catch up and asserts its own positions on discovery.  Scope and relevance issues, for example, should not be decided with respect to McKesson, and then revisited with respect to FDB.  Even document discovery from third parties will be problematic if third parties are subject to repeated requests from two defendants that are not litigating in tandem.

Similarly, if depositions proceed, they will need to be retaken if FDB does not settle. This would include both party depositions, such as the plaintiffs whose depositions will be necessary to resolve class issues, as well as the numerous third parties that have information relevant to class issues.  In the MDL class case, for example, the Court considered issues involving PBMs, manufacturers, third-party payors, and other entities in reaching its conclusion that individual issues predominate with respect to a class involving self-administered drugs.  The same issues will need to be addressed here because plaintiffs seek to certify a similar class.  If plaintiffs do not settle with FDB, it will not be feasible for FDB to simply "play catch- up" as

plaintiffs suggested to McKesson in the meet and confer process. (*See* Ex. D, Jan. 6, 2006 Letter.)

Even if FDB settles, discovery of FDB would still be required in order to address the claims plaintiffs made. Thus, facilitating FDB's involvement in the meet and confer process at the outset of the case would be the most efficient way to proceed. Moreover, a settlement with FDB may raise other issues that the Court will want to take into account before setting the scheduling for this case. For example, the settlement may present issues that overlap with the issues to be addressed by any class motion plaintiffs' seek to file in the litigation. The discovery necessary to resolve the class issue, whether for a settlement class or a litigation class may also overlap, and thus coordinating such discovery might be appropriate. Confirmatory discovery necessary for the settlement may also present overlapping issues with the litigation issues that remain in the case, including both class and merits issues, that could be addressed in a coordinated fashion. It remains unclear how any proposed settlement will affect this case, and indeed, as the Court has already suggested, "it's highly unlikely I'm even going to allow a class in this form." (Ex. A, Hearing Tr. 15:23-16:10.). Without knowing the terms of any class settlement plaintiffs and FDB may propose, it will be difficult to plan an efficient case management schedule.

At the November 30, 2005 hearing, the Court recognized the obstacles to proceeding while FDB's status remains uncertain. As the Court stated, "I can't do a scheduling conference" until it is determined "whichever parties are still left in the case." (Ex. A, Hearing Tr. 33:20-22.) It therefore makes the most sense for the Court to set a deadline within which plaintiffs and FDB must submit their proposed settlement agreement to the Court. After this date, the parties and the

Court will be able to evaluate the impact of any proposed settlement on the management and scheduling of this case and set an appropriate schedule in light of the impact.

## II.     THE CASE MANAGEMENT SCHEDULE SHOULD ACCOUNT FOR PLAINTIFFS' ANTICIPATED CALIFORNIA ACTION.

### A.     Plaintiffs Intend to File a Related Case in a California Federal Court.

At the November 30, 3005 hearing, plaintiffs also advised that they "are going to file the case in California" and "have it transferred" to this Court in the hopes that this maneuver will ensure that "California law will apply to that case."  (Ex. A, Hearing Tr. 37:7-38:6.)  A second lawsuit may raise a host of issues, both substantively and procedural, that this Court will need to address.  Such issues include choice of law analysis, claim splitting, appropriateness of transfer, and potential coordination issues.  To McKesson's knowledge, plaintiffs have not yet filed their new case.  Therefore, it remains unclear how this new case will affect this case, whether the parties will be the same, whether the claims will be the same, whether the plaintiffs will be splitting their causes of action in two forums, and whether plaintiffs will seek to transfer the case or proceed in California alone.

### B.     The Case Management Schedule Should Not be Established Before the Court and the Parties Can Assess the Impact of Plaintiffs' New California Action on This Case.

It would be inefficient to set a case management schedule for this case before the scope of plaintiffs' new action is established.  The extent of overlap between the new action and this action with respect to the claims asserted, the parties named, and the forums involved will effect whether the cases should be treated in a related fashion, either in this Court, or across the two Courts.  *See* Manual for Complex Litigation, Fourth, § 11.455 at 89 (2004) ("In related cases pending before the same judge, it is best to coordinate discovery plans to avoid conflicts and duplication."); *see* Fed. R. Civ. Proc. 42(a) ("When actions involving a common question of law

or fact are pending before the court, . . . it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.")  *See also* Manual for Complex Litigation, Fourth, § 11.455 at 89 (2004) ("If the [related] cases are pending before different judges, the judges should attempt to coordinate the depositions of common witnesses and other common discovery.").  Plaintiffs have told us that their new California action will be "identical" to this action (*see* Ex. D, Jan. 6, 2006 Letter), but this generic characterization does not tell us whether the California action will supplant this case or whether it is appropriate for plaintiffs to proceed with the same claims against the same parties in two separate forums.  Moreover, if the new case will merely be a copy of this one, plaintiffs could have easily filed it long ago.

Any new case the plaintiffs file may also affect the analysis this Court performs for the class determination.  This analysis cannot be performed until plaintiffs file their suit, identify the state law or laws under which plaintiffs are proceeding, and issues regarding the ultimate forum for the case are resolved.

In sum, plaintiffs' anticipated California case could alter the scope of this case in a multitude of ways that currently remain unknown.  The Court should set a date by which any new California case will be filed so that the scheduling in this case can occur expeditiously while taking into account the import of the related California case.

III.    **PLAINTIFFS SHOULD BE ALLOWED A BRIEF PERIOD OF TIME TO RESOLVE THE UNCERTAINTIES THEY HAVE CREATED BEFORE ANY SCHEDULING CONFERENCE IS HELD.**

To accommodate the changes to the case forecasted by plaintiffs, McKesson proposes that the Court provide plaintiffs with a brief period of time to act on plaintiffs' representations regarding their settlement with FDB and their new case.  This short delay before proceeding with a scheduling conference will equip the Court and the parties with the information necessary to set an efficient case management schedule.  In the meantime, certain initial proceedings

unaffected by the uncertainty created by plaintiffs may move forward without wasting the resources of the Court or the parties.  McKesson therefore proposes the following schedule:

1.    <u>Deadline for resolution of FDB settlement and new lawsuit issues.</u>  Unless good cause is shown, plaintiffs must, by February 28, 2006: 1) inform the Court and McKesson whether a class-wide settlement with FDB has been reached, and if applicable, present the terms of the proposed settlement to the Court, and 2) file any new, related lawsuit in California and state their intention with respect to that suit.

2.    <u>Rule 26(f) Conference.</u>  By February 28, 2006, plaintiffs and McKesson shall participate in a Rule 26(f) conference to discuss, among other things, an efficient process for discovery, including the scope of the documents the parties require from each other, the time necessary for production, and the scope of discovery already produced in the MDL class case that may be relevant for this case.

3.    <u>Initial Disclosures.</u>  Plaintiffs and McKesson shall make their initial disclosures in accordance with the schedule set forth in Rule 26(a)(1) of the Federal Rules of Civil Procedure. To the extent FDB has not settled with plaintiffs, a date for FDB's initial disclosures can be set at the Scheduling Conference with the Court, described in paragraph 4 below.

4.    <u>Scheduling Conference.</u>  Approximately two weeks after February 28, 2006, or as soon thereafter as the Court is available, the Court shall hold a scheduling conference.  At this scheduling conference, the parties and the Court will be better informed about how any proposed settlement with FDB and any new California action will affect future proceedings in this case. The issues addressed at this scheduling conference may include class discovery, the briefing of a class motion, and any proceedings necessary for a settlement between FDB and plaintiffs, or alternatively, dates by which FDB will respond to the Complaint and make initial disclosures.

Additionally, any orders necessary to account for the impact of any new action may be addressed at the scheduling conference. The parties can submit proposed schedules 5 court days prior to the scheduling conference.

The schedule described above will ensure that the uncertainty plaintiffs have raised with respect to FDB's status and plaintiffs' new California action will be resolved expeditiously, and the parties will be prepared to proceed on an efficient and appropriate schedule shortly thereafter. Because the open issues raised by plaintiffs may be resolved imminently, a brief delay in setting a schedule is warranted as it will enhance the ability of the parties and the Court to engage in a productive scheduling conference.

## CONCLUSION

For each of the foregoing reasons, to promote efficiency and sound case management, this case should proceed under the preliminary schedule proposed by McKesson as set forth in section III above. A proposed order is attached to this Statement of Issues. (*See* Ex. E, Proposed Case Management Order No. 1.)

McKesson Corporation
By its attorneys:

Dated:  February 2, 2006

 /s/ Lori A. Schechter           

Joan M. Griffin, BBO # 549522          Melvin R. Goldman (*pro hac vice*)
Michael P. Twohig, BBO # 648079      Lori A. Schechter (*pro hac vice*)
Perkins Smith & Cohen LLP              Tiffany Cheung (*pro hac vice*)
One Beacon Street, 30th Floor         Morrison & Foerster LLP
Boston, MA 02108                    425 Market Street
tel. 617-854-4000                  San Francisco, CA 94105-2482
fax 617-854-4040                  tel. 415-268-7000
                                fax 415-268-7522

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on February 2, 2006.

/s/ Lori A. Schechter
Lori A. Schechter

# Exhibit A

Page 1

 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
 2

 3   NEW ENGLAND CARPENTERS HEALTH )
     BENEFITS FUND, et al,        )
 4                                )
                    Plaintiffs    )
 5                                )
                -VS-              ) CA No. 05-11148-PBS
 6                                ) Pages 1 - 44
     FIRST DATABANK, INC.,        )
 7   a Missouri Corporation;      )
     and McKESSON CORPORATION,    )
 8   a Delaware Corporation,      )
                                  )
 9                  Defendants    )
10
11

                        MOTION HEARING
12

              BEFORE THE HONORABLE PATTI B. SARIS
13                UNITED STATES DISTRICT JUDGE
14
15

                              United States District Court
16                            1 Courthouse Way, Courtroom 19
                              Boston, Massachusetts
17                            November 30, 2005, 10:05 a.m.
18
19
20
21
22

                        LEE A. MARZILLI
23              CERTIFIED REALTIME REPORTER
                United States District Court
24              1 Courthouse Way, Room 3205
                    Boston, MA  02210
25                   (617)345-6787

1    they lost on that, they were thrown out -- they weren't

2    thrown out, that claim was dismissed -- doesn't mean they can

3    come back and reverse positions and say, you know, "It really

4    wasn't the manufacturers who dictated these prices.  It was

5    really McKesson who dictated these prices to FDB."  I'm just

6    saying that at the very least, your Honor should be a bit

7    more skeptical, should be scrutinizing a little more

8    carefully this agreement allegation, and that's what I want

9    to start this proposition with.

10          THE COURT:  Okay, can we just jump to the next

11    issue, which is choice of law.  To some extent, I'm not sure

12    I should deal with that now, although I'm likely to follow

13    the same analysis I did in the other case with respect to

14    choice of law.  But why do I need to deal with that now?

15          MR. GOLDMAN:  In the AMCC, your Honor chose not to

16    deal with the state claims until you got -- I think at the

17    first, you said when you got the summary judgment, as I read

18    the --

19          THE COURT:  Yes, and unfortunately I had to deal

20    with it earlier.

21          MR. GOLDMAN:  You had to deal with it earlier

22    because it comes up in the class certification.

23          THE COURT:  In the class cert, which I hadn't

24    focused on.  So assume for a minute I agree with you that

25    although California law does not have a reliance component in

1    it, I still need to go with the home state's consumers.  I'm

2    just not sure I should deal with this all right now because

3    at least as they've pleaded it, it's highly unlikely I'm even

4    going to allow a class in this form.  And so it may just be

5    these individual plaintiff plans, and I would just pick the

6    home states of those plans for their consumer business.  I

7    don't know why I need -- for me to get into this now and then

8    make them -- I could let them amend it to assert the consumer

9    product claims of the various states.  I'm just not sure why

10   I need to plunge into it now, although you may well be right.

11            MR. GOLDMAN:  If it weren't for Pharm III, I

12   suppose we wouldn't be doing that.  It's only because --

13            THE COURT:  I've lost track of my own opinions.  Is

14   it the big one, the class cert?

15            MR. GOLDMAN:  The class cert where you made your

16   decision on choice of law.  So in the AMCC, we didn't have

17   that situation.  Your Honor put the issue off until you got

18   to there.  And in (Inaudible) you actually decided on these

19   very same statutes that they didn't apply, that it seemed to

20   me that based upon Pharm III, it was appropriate in a motion

21   to dismiss to say they shouldn't be pled.

22            THE COURT:  And that's fair enough.  It's just I

23   would certainly let them amend it, cite the various statutes.

24            MR. GOLDMAN:  We thought they shouldn't be allowed

25   to amend, but we assume your Honor is going to allow them to

1    extensions.  We asked if they were being approved by the

2    Court, and apparently not.  We had originally wanted to have

3    both us and them come together in one hearing, but we could

4    not get any further extensions from the plaintiff.  We

5    understand they want to move the case along.

6              THE COURT:  Yes, you fly in from California,

7    right?

8              MR. GOLDMAN:  Yes, your Honor.

9              THE COURT:  So I hate to make you do that again.

10             MR. BERMAN:  Well, it may not have to be done.

11   We're going to know in 30 days whether we reach an agreement

12   or not.

13             THE COURT:  With whom?

14             MR. BERMAN:  With First Databank.

15             THE COURT:  So you're not on the verge of reaching

16   an agreement with them?

17             MR. BERMAN:  That's correct, so I'm not sure why we

18   have to come back in.  I mean, there's no --

19             THE COURT:  Well, if I deny the motion, I need to

20   come up with a scheduling conference, and I can't do a

21   scheduling conference until I've decided this, I mean,

22   whichever parties are still left in the case.

23             MR. SOBOL:  And before that, we'll know whether

24   there's a resolution with First Databank, your Honor.

25             MR. GOLDMAN:  On the other hand, your Honor, if you

1    do grant the motion, then that becomes moot.

2          THE COURT:  Right.  Well, let me ask you this:

3    Would you be settling with them on a nonclass basis?

4          MR. BERMAN:  No.  It would be a class.  And you've

5    mentioned a couple of times you foresee all kinds of problems

6    with this class.  This is a much different case.  I don't

7    want to preface the argument, but here there's no question

8    that AWP was used as the reimbursement benchmark.  And the

9    issue that you wrestled with in AWP was the knowledge of all

10   the payors.  There's no knowledge.  They don't have anything

11   to do with this price bump.  Their AWP just goes up.

12         THE COURT:  I will have to address the issue.  I

13   found the class cert thing took me six months to get

14   through.  I had a separate law clerk focus just on that.  I

15   found it an extremely difficult record, and if it looks

16   anything like that, it's a big deal, whether these people,

17   for example, these entities can represent consumers, which

18   state laws apply, which state laws don't apply.

19         Now, if you settle it, it's one thing, but it's a

20   big case, it's huge.  You involve 500 drugs, if in fact

21   they're represented by PPMs, how much of the PPMs -- I don't

22   know if any of these entity's health plans had PPMs, how

23   much --

24         MR. BERMAN:  They did.

25         THE COURT:  -- was negotiated, you know, on a

 1    damage basis.  It's just so big.  This is a pills case

 2    primarily, right?

 3              MR. BERMAN:  That's right.

 4              THE COURT:  So if you settle it, it's one thing.

 5    If not, it's a really complicated case, just like the other

 6    one.

 7              MR. BERMAN:  And I know we're going to get there.

 8    This is not just like the other one.  It's just a much

 9    simpler case.  We don't have 42 defendants.

10              THE COURT:  I hope you are right, but I will

11    certainly need a scheduling conference, and so as soon as I

12    resolve this motion, I will set one up.

13              MR. BERMAN:  Okay.

14              THE COURT:  Now, the other thing I need to do is, I

15    haven't sat and gone through all of the drugs.  When I

16    finally did that in the class action, it occurred to me that

17    at various points various members of my extended family

18    and/or myself may have taken some of these most common drugs

19    on the market.  And so I will have to make sure I do this,

20    put a waiver in for any rights that either I or any of my

21    family members might have in these drugs.  There was an

22    allergy drug before it went over the counter.  I'm sure

23    someone in my family must have taken that.  And so I just

24    make sure I do that, all right?  I hereby waive on the record

25    any rights that either I or -- I think it goes up to uncles

1    blanket move for an extension of time agreed upon by the

2    parties, just to keep it on my radar screen, because

3    otherwise I lose track.  Normally we're supposed to have

4    these scheduling conferences to move things along, so that

5    would be very -- all right, so just one last thing on the

6    California point.

7                MR. BERMAN:  Well, on the California point, I don't

8    know if you want to defer or not, but let me just say this:

9    I think this is a different case.  You know, you have two

10   California corporations.  We debated whether we should file

11   this case in California because we wouldn't be having this

12   argument, and we didn't file it because we figured, quite

13   frankly, that you might be angry with us, because here we're

14   off in some other jurisdiction, you know, trying to get away

15   from your Honor's ruling.

16               THE COURT:  I think the reality is, it would have

17   ended up here anyway.  And anger would not be part of it.  I

18   think the reality is, someone would have moved --

19               MR. BERMAN:  And the point I want to make here,

20   your Honor, I think you should defer on the 17200 because we

21   are going to file the case in California.

22               THE COURT:  In the state courts?

23               MR. BERMAN:  In the Federal Court.  We're going to

24   have it transferred here because then we think it will be

25   clear that California law will apply to that case, and that

1   will make class certification, at least as to the choice of

2   law, quite easy, because the case law is clear that

3   California courts under 17200 certify nationwide cases.  I'm

4   in some of those cases.  I'm sure Mr. Goldman opposes that,

5   but that's the state of the law.  So we'd like to have that

6   kind of wind its way to you before we raise that issue again.

7               THE COURT:  Is that that unbelievably broad

8   statute?

9               MR. BERMAN:  Oh, it's that beautiful statute, yes.

10              MR. SOBOL:  Almost as broad as 93A now, your Honor.

11              THE COURT:  93A doesn't require --

12              MR. SOBOL:  No, nor does it require proof of actual

13  out-of-pocket damage either.  There's a new case out about

14  that too.

15              THE COURT:  On what level?

16              MR. SOBOL:  Supreme Judicial Court.

17              THE COURT:  And you don't have to prove damage?

18              MR. SOBOL:  That's correct, your Honor, the light

19  cigarette case.

20              THE COURT:  I'll go read it.

21              MR. BERMAN:  But we're not alleging that here.

22  We're going to show damage.

23              I don't know whether you want to talk about

24  conspiracy, your Honor.  There's one case we think is on

25  point, Massachusetts Labor Council Welfare V. Philip Morris.

1                C E R T I F I C A T E

2

3

   UNITED STATES DISTRICT COURT )

4  DISTRICT OF MASSACHUSETTS    ) ss.

   CITY OF BOSTON               )

5

6

7

8           I, Lee A. Marzilli, Official Federal Court

9  Reporter, do hereby certify that the foregoing transcript,

10 Pages 1 through 44 inclusive, was recorded by me

11 stenographically at the time and place aforesaid in Civil

12 Action No. 05-11148-PBS, New England Carpenters Health

13 Benefits Fund Vs. First Databank, Inc., et al, and thereafter

14 by me reduced to typewriting and is a true and accurate

15 record of the proceedings.

16           In witness whereof I have hereunto set my hand this

17 19th day of December, 2005.

18

19

20

21

22

23    _____

          LEE A. MARZILLI, CRR

24        OFFICIAL FEDERAL COURT REPORTER

25

# Exhibit B



HAGENS BERMAN
SOBOL SHAPIRO LLP

STEVE W. BERMAN
DIRECT · (206) 224-9320
STEVE@HBSSLAW.COM

December 7, 2005

*Via Facsimile*

Ms. Joan M. Griffin
Mr. Michael Twohig
Perkins Smith & Cohen LLP
One Beacon Street, 30th Floor
Boston, MA  02108

Mr. Melvin R. Goldman
Ms. Lori A. Schechter
Ms. Tiffany Cheung
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

Re:    *New England Carpenters Health Benefit Fund, et al. v. First Databank, Inc., et al.*
       No. 1:05-CV-11148-PBS

Dear Counsel:

Attached please find Plaintiffs' Proposed Case Management Order.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

Attachment

ATTORNEYS AT LAW                    SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE  SUITE 2900  SEATTLE  WASHINGTON  98101
www.hagens-berman.com

1831.10 0002 LTR.DOC

## McKESSON CMO

| | |
|---|---|
| Rule 26 Disclosures | 02/01/2006 |
| Parties Free To Serve Discovery | 02/08/2006 |
| Plaintiffs' Motion for Class Certification Due (with any Expert Report) | 03/31/2006 |
| Defendants' Response with Expert Report | 05/01/2006 |
| Plaintiffs' Reply with any Expert Report | 05/31/2006 |
| Close of Fact Discovery | 09/29/2006 |
| Plaintiffs' Expert Report | 10/16/2006 |
| Defendants' Expert Report | 11/17/2006 |
| Plaintiffs' Reply Expert Report | 12/15/2006 |

On the Class briefing, opening and responsive briefs, 25 pages, reply 15, expert reports limited to 25 pages, appendices to be reasonable.

Alternatively, plaintiffs would agree to move for class certification after trial to allow the Court an opportunity to see how issues play out in a test case.

1821.16 0913 BSC.DOC

# Exhibit C

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

December 22, 2005

Writer's Direct Contact
415/268-6355
LSchechter@mofo.com

By Fax and Mail

Steve W. Berman
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:     *New England Carpenters Health Benefit Fund, et al. v. First DataBank, et al.,*
        No. 1:05-CV-11148-PBS

Dear Steve:

We have received plaintiffs' proposed case management order. As I mentioned in my voice mail message to you of December 20, I'd like to set a time to discuss scheduling issues with you. We should also discuss what process the parties will follow in raising these scheduling issues with the Court should our meet and confer efforts prove unsuccessful. Here are some of the scheduling issues we should discuss, and a proposed schedule for you to consider.

**A.     Potential First DataBank Settlement**

At the hearing on November 30, you advised that plaintiffs are engaged in discussions with defendant First DataBank ("FDB") to settle on a class-wide basis, (Nov. 30, 2005, Hearing Tr. 34:2-4), and that we would know "in 30 days" whether a settlement has been reached. (Hearing Tr. 33:10-12.) Obviously, we need to know whether FDB is in our case in order to proceed in an efficient manner, avoiding duplication and unnecessary expense. For example, if FDB does not participate in discovery while it engages in settlement negotiations, most of the discovery will have to be retaken to afford FDB an opportunity to participate. Class discovery is a good example. Both McKesson and FDB will want to depose plaintiffs on class issues, but this cannot commence until it is determined whether FDB is in the case. Likewise, third party discovery necessary for the class motion (e.g., from PBMs, manufacturers, and other industry participants) should not go forward until it is determined whether FDB is in the case. And certainly the briefing on class certification, which plaintiffs' proposed schedule seeks to accomplish in short order, cannot go forward until FDB's status is resolved.

sf-2051413

MORRISON | FOERSTER

Steve W. Berman
December 22, 2005
Page Two

The Court at the November 30 hearing likewise recognized the obstacles to proceeding when we have this uncertainty. As the Court stated, "I can't do a scheduling conference" until it is determined "whichever parties are still left in the case." (Hearing Tr. 33:20-22.) Based upon your estimate, we should know whether a settlement has been reached by the end of December, and can then have a more meaningful discussion about scheduling.

**B.     Plaintiffs' New Lawsuit**

At the November 30 hearing, you also advised that plaintiffs intended "to file [another] case in California" and seek to transfer the California action to the District of Massachusetts as a related case. Hearing Tr. 37:19-38:6. As we understand it, no new case has been filed yet in California. It would be inefficient to move forward with this case before the California action is filed, and your request for transfer is made and granted. At this point we don't know when your new case will be filed, or if your new case will involve new plaintiffs or new claims or anything else that might affect the scheduling of this case. It seems prudent to set a date by which this new case will be filed so that scheduling in this case can take into account the import of the California case.

**C.     Proposed Schedule**

We need to resolve the FDB settlement issue and the new California lawsuit issue described in sections "A" and "B" above before setting a definitive schedule in this case. But we believe much can be done in the meantime. Here's our proposal.

   1.   Answer. McKesson shall file its answer on or before December 29, 2005.

   2.   Resolution of FDB settlement and new lawsuit issues. Plaintiffs shall have until January 16, 2006 to inform McKesson whether a class-wide settlement with FDB has been reached, and to file a new, related lawsuit in California. January 16 is also the date to which you recently gave FDB an extension for filing a response to the Complaint.

   3.   Initial Disclosures. Plaintiffs and McKesson shall have until February 17, 2006 to make their initial disclosures pursuant to Rule 26. To the extent FDB has not settled with plaintiffs, a date for FDB's initial disclosures can be set at the Scheduling Conference with the Court, described in paragraph 5 below.

   4.   Motion for Class Certification. Plaintiffs may file a motion for class certification at any time, but the briefing schedule and the cut-off date for class discovery should be set at the Scheduling Conference when we will all know whether FDB is in the case, and whether a California suit will be related in some way to this case. While the specifics of the briefing schedule and cut off dates cannot be determined now, we can say that we believe plaintiffs' proposed schedule suggests an insufficient time for class discovery. Given the length of time

**MORRISON** | **FOERSTER**

Steve W. Berman
December 22, 2005
Page Three

it took to prepare for the class motion in the MDL case, and the overlapping nature of the class issues in this case, we believe a longer time period for class discovery will be necessary than the few months plaintiffs have allotted. McKesson may be able to shorten the time period to the extent the discovery taken in the MDL case is provided to us from plaintiffs, and such discovery can obviate the need for McKesson to duplicate it in this case. We should therefore discuss the availability of that discovery to us in this case. At the time we address the briefing schedule, we will also want to build in a date for a surreply in addition to the opposition and reply contemplated in plaintiffs' proposal.

5. <u>Scheduling Conference.</u>  The parties should meet and confer to determine a date in February for a Scheduling Conference with the Court. By that date, we will all know whether plaintiffs and FDB intend to submit a class-wide settlement to the class, or whether FDB will be proceeding with McKesson with the litigation. We will also know whether or not plaintiffs have filed a new lawsuit. At this Scheduling Conference, dates can be set for class discovery, and the briefing of a class motion, any proceedings necessary for a settlement between FDB and plaintiffs, or alternatively, dates by which FDB will respond to the complaint and make initial disclosures. To the extent FDB files a motion in response to the Complaint, we can set the motion for the same date as the Scheduling Conference.

6. <u>Process for Handling Any Disputes Regarding Scheduling.</u>  To the extent we cannot agree on these scheduling issues, we can jointly request a conference with the Court. Based upon the conference date, we can set a date for the simultaneous filing of briefs in support of our respective schedule proposals, as well as simultaneous responses to each other's proposal.

Please let me know when you are available to discuss these issues.

Sincerely,

Lori A. Schechter

cc:  Thomas M. Sobol
     Joan Griffin

# Exhibit D



**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

January 6, 2006

*Via Facsimile*

Ms. Lori A. Schecter
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA 94105

    Re:    <u>New England Carpenters Health Benefit Fund v. First DataBank, *et al.*</u>

Dear Lori:

    We address your case management concerns as follows:

    1.    <u>FDB settlement</u>. We are still in discussions with FDB. If they are not productive FDB will have to play catch-up but this should not prevent the initial disclosures and discovery to commence.

    2.    <u>New lawsuit</u>. The new lawsuit will be identical to the existing one and it should not impact the scope of discovery.

    3.    <u>Schedule</u>. There is no reason why initial disclosures and discovery should not proceed now. We do not agree to items C.2-4 of your letter.

    We suggest we obtain a date for a scheduling conference in February.

        Sincerely,

        HAGENS BERMAN SOBOL SHAPIRO LLP

        Steve W. Berman

SWB:dld
cc:    Plaintiffs' Counsel

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND, PIRELLI ARMSTRONG
RETIREE MEDICAL BENEFITS TRUST,
TEAMSTERS HEALTH & WELFARE FUND
OF PHILADELPHIA AND VICINITY, and
PHILADELPHIA FEDERATION OF
TEACHERS HEALTH AND WELFARE FUND,

      Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri
corporation, and MCKESSON CORPORATION,
a Delaware corporation,

      Defendants.

Case No. 1:05-CV-11148-PBS

## [PROPOSED] CASE MANAGEMENT ORDER NO. 1

WHEREAS, plaintiffs have indicated that they are involved in settlement discussions with Defendant First DataBank;

WHEREAS, plaintiffs have stated an intention to file a new, related action in California;

WHEREAS, judicial economy would be best served if these uncertainties were resolved before a scheduling conference is set;

IT IS HEREBY ORDERED as follows:

1.  Unless good cause is shown, plaintiffs must, by February 28, 2006: 1) inform the Court and McKesson whether a class-wide settlement with FDB has been reached, and if applicable, present the terms of the proposed settlement to the Court, and 2) file any new, related

lawsuit in California and file a notice with this Court stating their intention with respect to that suit.

2.      By February 28, 2006, plaintiffs and McKesson shall participate in a Rule 26(f) conference to discuss, among other things, an efficient process for discovery, including the scope of the documents the parties require from each other, the time necessary for production, and the scope of discovery already produced in the MDL class case that may be relevant for this case.

3.      Plaintiffs and McKesson shall make their initial disclosures in accordance with the schedule set forth in Rule 26(a)(1) of the Federal Rules of Civil Procedure.  To the extent FDB has not settled with plaintiffs, a date for FDB's initial disclosures will be set at the Scheduling Conference with the Court, described in paragraph 4 below.

4.      On _____, 2006, the Court shall hold a scheduling conference. The parties may file proposed schedules with the Court no later than 5 court days prior to the scheduling conference.

Dated:  February ___, 2006


_____
Patti B. Saris
United States District Judge