IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND, PIRELLI ARMSTRONG
RETIREE MEDICAL BENEFITS TRUST,
TEAMSTERS HEALTH & WELFARE FUND
OF PHILADELPHIA AND VICINITY, and
PHILADELPHIA FEDERATION OF
TEACHERS HEALTH AND WELFARE FUND,

                 Plaintiffs,                   Case No. 1:05-CV-11148-PBS

v.

FIRST DATABANK, INC., a Missouri
corporation, and MCKESSON CORPORATION,
a Delaware corporation,

                 Defendants.

**DEFENDANT MCKESSON CORPORATION'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..............................................................................................ii

INTRODUCTION.......................................................................................................... 1

LOCAL RULE 37.1 DISCOVERY CONFERENCE ........................................................ 3

ARGUMENT ............................................................................................................... 4

I.      PLAINTIFFS SHOULD PRODUCE ADDITIONAL
        DOCUMENTS FROM THE MDL. ....................................................................... 4

        A.    Plaintiffs Should Produce the Documents Produced in
               the MDL by the Manufacturers, Retailers, and TPPs
               or Consultants of TPPs.................................................................... 4

               1.    Plaintiffs' Relevancy Objection Fails. .................................. 4

               2.    Plaintiffs' Burden and Overbreadth Objections
                    Fail. ........................................................................................ 7

               3.    Plaintiffs' Time Frame Objection Fails................................. 7

        B.    Plaintiffs Should Produce the Transcripts of the
               Depositions Taken of MDL Defendants. ....................................... 8

II.     PLAINTIFFS SHOULD PRODUCE DOCUMENTS
        CONCERNING PAYMENTS MADE BY PARTICIPANTS
        IN THE TPP HEALTH PLANS. ......................................................................... 10

III.    PLAINTIFFS SHOULD PRODUCE DOCUMENTS
        CONCERNING ANY PROPOSED SETTLEMENT
        BETWEEN ANY PLAINTIFF AND FDB......................................................... 12

CONCLUSION ........................................................................................................... 13

APPENDIX REGARDING EACH DISPUTED REQUEST
        PURSUANT TO LOCAL RULE 37.1................................................................. 14

## TABLE OF AUTHORITIES

### CASES

*Autotech Techs, Ltd. P'ship v. AutomationDirect.Com, Inc.*,
  No. 05 C 5488, 2006 U.S. Dist. LEXIS 29074 (N.D. Ill. May 11, 2006) ................................ 11

*Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*,
  201 F.R.D. 33 (D. Mass. 2001) ..................................................................................... 7

*Carley Capital Group v. Deloitte & Touche, LLP*,
  No. 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11595 (N.D. Ga. June 30, 1999) ................ 9

*Deford v. Schmid Prods. Co.*,
  120 F.R.D. 648 (D. Md. 1987) ...................................................................................... 9

*EEOC v. Electro-Term, Inc.*,
  167 F.R.D. 344 (D. Mass. 1996) .................................................................................... 8

*Glaxo v. Geneva*,
  No. 94-1921 (NHP), 1994 U.S. Dist. LEXIS 21302 (D.N.J. Nov. 4, 1994) ............................ 9

*In re CFS-Related Securities Fraud Litigation*,
  No. 99-CV- 825-K(J), 2003 U.S. Dist. LEXIS 15230 (N.D. Okla. July 31, 2003) ................. 13

*In re Pharmaceutical Industry Average Wholesale Price Litigation*,
  MDL 1456, No. 01-12257-PBS (D. Mass. 2001) ........................................................... 1

*Kessel v. Cook County*,
  No. 00 C 3980, 2002 U.S. Dist. LEXIS 4185 (N.D. Ill. Mar. 13, 2002) ........................... 11, 12

*Klein v. AIG Trading Group, Inc.*,
  228 F.R.D. 418 (D. Conn. 2005) ................................................................................ 7, 10

*Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*,
  181 F.R.D. 229 (W.D.N.Y. 1998) ............................................................................. 6, 10, 11

*MCI Commc'ns Corp. v. Am. Telephone & Telegraph Co.*,
  No. 74 C 633, 1978 U.S. Dist. LEXIS 15062 (N.D. Ill. Oct. 8, 1978) ...................................... 9

*Maine v. United States DOI*,
  298 F.3d 60 (1st Cir. 2002) ........................................................................................ 13

*Melea Ltd. v. Comm'r of Internal Revenue*,
  118 T.C. 218, 2002 U.S. Tax Ct. LEXIS 14 (U.S. Tax Ct. Mar. 22, 2002) ............................... 6

*Ramirez v. Nabil's, Inc.*,
   No. 94-2396-GTV, 1995 U.S. Dist. LEXIS 15444 (D. Kan. Oct. 5, 1995) ............................. 13

*Securities & Exchange Comm'n v. Downe*,
   No. 92 Civ. 4092 (PKL), 1994 U.S. Dist. LEXIS 708 (S.D.N.Y. Jan. 27, 1994) ..................... 13

*Vollert v. Summa Corp.*,
   389 F. Supp. 1348 (D. Haw. 1975) ......................................................................................... 11

*Wilson v. New York City Housing Authority*,
   No. 96 Civ 1765, 1996 U.S. Dist. LEXIS 13709 (S.D.N.Y. Sept. 16, 1996) .......................... 10

## STATUTES AND RULES

Fed. R. Civ. P.
   34(a) ......................................................................................................................................... 7
   26(b)(5) ................................................................................................................................... 13


Fed. R. Evid.
   408 .......................................................................................................................................... 12

## INTRODUCTION

Defendant McKesson Corporation brings this motion to compel plaintiffs to produce for McKesson's review portions of the discovery record in a related MDL class action — *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, No. 01-12257-PBS (D. Mass. 2001) (the "MDL"). The MDL was brought by a group of third party payors ("TPPs"), including three of the named plaintiffs in this case, who alleged, among other things, that pharmaceutical manufacturers conspired with First DataBank ("FDB"), a publisher of pharmaceutical data, to raise the average wholesale prices ("AWPs") for certain brand name prescription drugs. The parties to the MDL have been pursuing discovery for three years and have developed a robust record to which McKesson, as a non-party, does not have access.

Plaintiffs filed this case last summer, largely paralleling claims they asserted in the MDL. Like the MDL, the complaint here alleges a conspiracy to raise published AWPs for a list of prescription drugs that overlaps with those at issue in the MDL. But unlike the MDL, this case alleges a conspiracy between FDB and McKesson (a drug wholesaler), rather than FDB and the drug manufacturers.

Plaintiffs acknowledge that portions of the MDL record are directly relevant to their claims here, and have served initial disclosures stating that they intend to rely on MDL discovery in this case. But when McKesson asked plaintiffs to make the MDL record available for review, plaintiffs erected a stone wall. First, plaintiffs asserted that the MDL record was subject to a protective order that limited its use to the MDL. That objection was resolved months ago by a series of orders extending the permissible use of documents produced in the MDL to this case.[1]

---

[1] This Court entered a modified protective order permitting such use in this case and in the MDL on March 28 and April 14, 2006, respectively. The Court also entered a separate protective order in this case on April 11, 2006, governing the use of confidential information generally.

Plaintiffs also objected that it would be unduly burdensome for them either to make the MDL record available for McKesson to review or to search the complete MDL record themselves for documents and testimony relevant to this action. Instead, plaintiffs have told McKesson to recreate the MDL discovery record piecemeal, by subpoenaing its various components from other MDL participants and third parties, even though the entire MDL record is already in plaintiffs' possession, custody, or control.

After protracted meet and confer exchanges and a Rule 37.1 discovery conference, plaintiffs finally agreed to produce certain categories of responsive documents located in the named plaintiffs' files and in discrete portions of the MDL record. But plaintiffs continued to refuse to search other portions of the MDL record for responsive documents or to produce the MDL record for McKesson to search itself. In particular, plaintiffs agreed to produce documents from the named plaintiffs' files and from the MDL productions by any publisher, PBM, or other wholesaler. Plaintiffs arbitrarily refused to produce most MDL deposition transcripts, and refused to search the MDL productions of the manufacturers, retailers, and TPPs or TPP consultants for responsive documents, despite their stated intention to rely on their own selections of documents from these MDL files.

Discovery should not be limited to those hand-picked portions of the MDL record that plaintiffs have identified as supporting their claims. Plaintiffs should be ordered to search the full MDL record for responsive material, or to permit McKesson to review that record itself. McKesson brings this motion to compel plaintiffs to produce for inspection the following portions of the MDL record for McKesson's review: (1) the MDL document productions by prescription drug manufacturers, TPPs or consultants for TPPs, or retailers; and (2) transcripts of

certain depositions taken in the MDL.[2]  McKesson also seeks to compel production of two

additional discrete categories of documents: documents evidencing payments for subject drugs

by individual consumers who are alleged to be members of the plaintiff class, and

communications between plaintiffs and defendant FDB about ongoing settlement discussions.

McKesson has been seeking access to the MDL discovery record since December.

Plaintiffs have frustrated that access at every turn.  McKesson accordingly seeks an order

precluding plaintiffs from using any documents from the MDL that are responsive to

McKesson's First Request for Production of Documents and that plaintiffs have to date refused

to produce.

## LOCAL RULE 37.1 DISCOVERY CONFERENCE

In March 2006, McKesson served document requests seeking discovery concerning the

AWPs that were allegedly inflated, plaintiffs' understanding of such AWPs, and the

reimbursement system through which plaintiffs made alleged overpayments.  Plaintiffs served

written responses to McKesson's first set of document requests on April 10, 2006, asserting

objections to nearly every request.  On May 11, 2006, McKesson's counsel wrote to plaintiffs'

counsel to request a discovery conference pursuant to Local Rule 37.1.  (Declaration of Tiffany

Cheung in Support of McKesson Corporation's Motion to Compel Production of Documents,

Ex. 4) ("Cheung Decl.").

On May 24, 2006, beginning at 8:00 a.m. PDT, the parties participated in an hour-long

telephone conference.  Steve Berman and Carrie Flexer participated on behalf of plaintiffs, and

Paul Flum and Tiffany Cheung participated on behalf of McKesson.  During this discovery

---

[2] While McKesson has moved, in the alternative, for an order compelling plaintiffs to search the
complete MDL discovery record for documents responsive to its requests, McKesson remains
willing to conduct that search itself, so long as plaintiffs provide access to the requested MDL
materials.

conference, the parties discussed all disputed document requests. (Cheung Decl. ¶ 5). As confirmed by subsequent correspondence, the parties reached agreement on Request Nos. 4, 5, 6, 18, 19, 20, 23, 27, 28, 29, 43, 45, 46, 48, 49, 51, and 64. The parties have reached an impasse, however, with respect to all or portions of Request Nos. 1, 7, 8, 10, 12, 14, 16, 17, 22, 26, 31-33, 38, 39, 41, 52, 53, 55, and 57. (Cheung Decl. Exs. 5, 6, 7, 8).

## ARGUMENT

## I.     PLAINTIFFS SHOULD PRODUCE ADDITIONAL DOCUMENTS FROM THE MDL.

### A.     Plaintiffs Should Produce the Documents Produced in the MDL by the Manufacturers, Retailers, and TPPs or Consultants of TPPs.

Request Nos. 7, 8, 10, 12, 14, 16, 22, 26, 31-33, 38, 39, 52, 53, 55, and 57 seek specific categories of discoverable information directed to AWP and to the reimbursement system through which the purported class members paid for drugs. During the discovery conference, plaintiffs agreed to produce documents responsive to these requests only to the extent they are located in the named plaintiffs' files, or in the MDL productions of publishers, PBMs, or other wholesalers. Plaintiffs arbitrarily refused to search files produced by other parties and third parties in the MDL, even though these documents are within plaintiffs' possession, custody, or control. Plaintiffs also refused to make these files available for McKesson to review itself, objecting on one or more of the following grounds: relevancy, burden, overbreadth, and time frame. All of plaintiffs' objections fail, and plaintiffs should be ordered to produce for inspection and copying documents produced in the MDL by pharmaceutical manufacturers, retailers, and TPPs or TPP consultants.

### 1.     Plaintiffs' Relevancy Objection Fails.

The MDL productions of the manufacturers, retailers, and TPPs or TPP consultants undoubtedly contain documents that are responsive to requests that are directly related to

plaintiffs' allegations in this case. Several of these requests expressly seek documents supporting plaintiffs' allegations regarding the historical application of 20% markups for some drug companies and 25% markups for others (Request No. 7), contracts between PBMs and plan sponsors and between PBMs and pharmacies (Request No. 8), and the "thousands of pharmaceutical contracts . . . based on AWP minus a discount" referred to in the Complaint (Request No. 10).

Other requests seek documents concerning AWPs and the "spread" between WACs and AWPs, which plaintiffs allege were "wrongfully" increased. (*See* Compl. ¶ 1.) Specifically, McKesson requests documents concerning AWPs published by FDB and other Publishers (Request Nos. 12, 14, 16), the accuracy of published AWPs (Request No. 32), the meaning or use of AWP (Request Nos. 33 and 57), and the WAC-AWP "spread" (Request Nos. 52, 53, and 55). These requests are relevant to key issues, including plaintiffs' allegations regarding FDB's representations about how it derived its published AWPs (Compl. ¶ 6), the industry's and TPPs' alleged reliance on the accuracy of FDB's AWPs (Compl. ¶¶ 97, 99), and the effect of increases in the WAC-AWP "spread" on the prices paid by the purported class members (Compl. ¶ 119).

The remaining requests seek documents concerning the reimbursement system through which plaintiffs made alleged overpayments for drugs. Plaintiffs allege that the wrongfully increased AWPs caused them to pay too much because their reimbursement rates are tied to AWP (Compl. ¶ 1). Thus, McKesson requested documents concerning reimbursement formulas and terms (Request Nos. 22, 38, 39), rebates or discounts paid to PBMs, which act on behalf of TPPs (Request No. 26), and plaintiffs' relationships with other entities involved in the reimbursement system (Request No. 31). These documents are reasonably calculated to lead to admissible evidence on plaintiffs' allegations regarding TPP contracts tied to FDB's AWP

(Compl. ¶ 13), the use of AWP as a benchmark for reimbursement by end payors (Compl. ¶¶ 34, 55-63), and the role of TPPs, PBMs, and other entities in setting reimbursement terms (Compl. ¶¶ 2, 56-57, 125(b)).

Indeed, plaintiffs raised no "relevancy" objection in response to many of these requests (Responses to Request Nos. 7, 8, 10, 52, 53, 55, and 57).  (Cheung Decl. Ex. 3.)  As to the numerous other requests, plaintiffs tacitly conceded relevance when they agreed to produce responsive documents from the named plaintiffs' files or in the MDL documents produced by publishers, PBMs, or other wholesalers (Request Nos. 12, 22, 31-33, 38, and 39).  (*See* Cheung Decl. Ex. 5.)  But plaintiffs have arbitrarily refused to search other sources in the MDL record, and have said that McKesson should obtain the requested MDL documents from "the producing parties" (Cheung Decl. Ex. 6 at 1).  Plaintiffs' position would mean that McKesson would have to issue subpoenas to literally hundreds of parties and third parties that apparently produced documents in the MDL.  Plaintiffs cannot avoid their discovery obligations by attempting to shift the burden of producing discoverable documents onto McKesson and third parties.  *See Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 240 (W.D.N.Y. 1998).

Moreover, plaintiffs have produced documents in support of their claims that have been selectively culled from the very MDL sources that plaintiffs are now refusing to search in response to McKesson's requests.  McKesson is not required to accept plaintiffs' determination regarding what portions of the MDL record may be probative of the claims or defenses in this case.  Given the relevance of the MDL discovery, "it would be unjust to permit [plaintiffs] continued access to this type of information with no access to [McKesson]."  *Melea Ltd. v. Comm'r of Internal Revenue*, 118 T.C. 218, No. 7268-00, 2002 U.S. Tax Ct. LEXIS 14, at *18 (U.S. Tax Ct. Mar. 22, 2002).

### 2.    Plaintiffs' Burden and Overbreadth Objections Fail.

Plaintiffs' articulated basis for their burden objection is that it would be too burdensome for them to search for responsive documents in all the files in the MDL record.  (*See* Cheung Decl. Ex. 3.)  Plaintiffs have not explained the basis for their overbreadth objection.  It is well settled that a conclusory assertion of "overbreadth" does not justify plaintiffs' refusal to produce discoverable material.  *See Klein v. AIG Trading Group, Inc*., 228 F.R.D. 418, 422 (D. Conn. 2005).  As noted above, McKesson's requests are specifically directed to matters put at issue by the Complaint.  In any event, McKesson addressed these concerns by offering to assume the burden of this review if plaintiffs would agree to provide McKesson with access to the MDL productions.  Plaintiffs rejected that offer.

The Federal Rules of Civil Procedure oblige a party to make a diligent search for, and to produce, all non-privileged documents in its possession, custody or control that are responsive to the requests.  Fed. R. Civ. P. 34(a).  Discoverable documents under a party's control encompass documents that a party has the legal right to obtain, including documents that a party has the right to obtain from its attorneys.  *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.,* 201 F.R.D. 33, 38-39 (D. Mass. 2001).  Plaintiffs do not dispute that they have possession, custody, or control over the MDL document productions of the manufacturers, retailers, and TPPs or consultants of TPPs.  McKesson has agreed to search these sources for responsive documents, leaving for plaintiffs the purely mechanical task of assembling these portions of the MDL record for McKesson's review.  Plaintiffs cannot claim that it would be unduly burdensome to produce the MDL productions by these specified groups.

### 3.    Plaintiffs' Time Frame Objection Fails.

Plaintiffs also asserted a "time frame" objection to many of the requests.  The relevant time period in the MDL overlaps with the time period in this case.  If plaintiffs prefer, McKesson

does not object to plaintiffs removing pre-1998 materials from the MDL productions before making them available for McKesson's review.

**B.     Plaintiffs Should Produce the Transcripts of the Depositions Taken of MDL Defendants.**

Request No. 1 seeks all documents concerning the MDL.  Plaintiffs responded with boilerplate objections of "relevancy, time frame and overbreadth."  (Cheung Decl. Ex. 3.) During the discovery conference, plaintiffs agreed to produce certain portions of the MDL record, namely (1) the materials filed in connection with or supporting the class certification or summary judgment proceedings in the MDL; and (2) the MDL document productions by publishers, PBMs, and other wholesalers.  But counsel refused to produce deposition transcripts and exhibits other than the ones (mainly excerpts) that were used in connection with class certification or summary judgment proceedings.  Instead, plaintiffs directed McKesson to get these materials from the court reporter.  McKesson has since contacted the MDL court reporter and is the process of getting the deposition transcripts of the MDL plaintiffs and third party witnesses.  However, the court reporter is proposing charges that will total in excess of $100,000 for the transcripts of representatives of the manufacturer defendants in the MDL, which plaintiffs already have and could readily produce at no additional cost.  (*See* Cheung Decl. ¶¶ 7-8.) Plaintiffs' objections should be overruled and this Court should order production of the depositions of the manufacturer defendants in the MDL for the following reasons.

First, plaintiffs' relevancy objection fails.  At the discovery stage, relevancy is broadly construed such that "information is discoverable if there is any possibility that it might be relevant to the subject matter of the action."  *EEOC v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996).  A producing party cannot refuse to produce documents on the grounds of "relevancy" if the information sought "appears reasonably calculated to lead to the discovery of

admissible evidence." *Id*. at 347.  Specifically, the sharing of discovery materials from other

litigation is "particularly appropriate where multiple individual plaintiffs assert essentially the

same alleged wrongs . . . ."  *Deford v. Schmid Prods. Co*., 120 F.R.D. 648, 654 (D. Md. 1987).

The requested MDL deposition transcripts and exhibits meet this standard.  As in the

MDL, plaintiffs here purport to represent a class of TPPs and consumers and have alleged similar

RICO and state claims based on alleged AWP inflation for an overlapping list of subject drugs.

(*See* Cheung Decl. Ex. 1.)  Indeed, plaintiffs have identified many of the MDL defendants as

persons likely to have discoverable information in this action.  (*See* Cheung Decl. Ex. 2.)

Far from disputing relevance, plaintiffs have tacitly conceded that the MDL deposition

transcripts and exhibits are probative of key issues in this case.  Plaintiffs have asserted that the

MDL deposition transcripts and exhibits represent "what the [MDL] parties have distilled as

relevant," but have agreed to produce only a limited extract from that record.  (Cheung Decl.

Ex. 6 at 1.)  McKesson is entitled to more.  Courts routinely order production of transcripts and

other discovery from related litigation with overlapping issues.  *See, e.g*., *Carley Capital

Group v. Deloitte & Touche, LLP*, No. 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11595, at

*3 (N.D. Ga. June 30, 1999); *Glaxo v. Geneva*, No. 94-1921 (NHP), 1994 U.S. Dist. LEXIS

21302, at *3 (D.N.J. Nov. 4, 1994); *MCI Commc'ns Corp. v. Am. Telephone & Telegraph Co*.,

No. 74 C 633, 1978 U.S. Dist. LEXIS 15062, at *8 (N.D. Ill. Oct. 8, 1978) ("[W]e believe the

court should not only encourage the sharing of discovery in cases with common fact questions

but order it on its own motion even where the parties do not suggest it.").  The same result is

warranted here.  In light of plaintiffs' concession that at least portions of the MDL record support

their claims and that many of the MDL defendants possess discoverable information, the MDL

defendants' deposition transcripts are reasonably calculated to lead to the discovery of admissible evidence and thus relevant for discovery purposes.

Second, plaintiffs' time frame objection does not justify their refusal to produce deposition transcripts from the MDL. The parties have agreed that plaintiffs' production should cover the period from 1998 to the present. (Cheung Decl. Exs. 4-5.) Deposition discovery in the MDL overlaps this time period.

Third, plaintiffs' "overbreadth" objection lacks merit. A conclusory recitation of "breadth" or "overbreadth" does not excuse a party from responding to requests for discoverable documents. *See Klein,* 228 F.R.D. at 422. Nor can plaintiffs avoid their discovery obligations by directing McKesson to seek relevant documents from other sources. *Land Ocean Logistics,* 181 F.R.D. at 240 ("a requested party must provide relevant discovery regardless of whether it is already available to the requesting party").

Indeed, conspicuously absent from plaintiffs' objection to production of MDL depositions is any burden objection, and for good reason. There is no significant burden associated with making the deposition transcripts of the MDL defendants available to McKesson. Plaintiffs apparently maintain the transcripts in electronic format that can be easily searched and emailed. (*See* Cheung Decl. ¶ 8.) Certainly, any effort involved in gathering and producing these transcripts is minimal, and does not outweigh the likely probative value of these materials. *See Wilson v. New York City Housing Authority*, No. 96 Civ 1765, 1996 U.S. Dist. LEXIS 13709, at *6 (S.D.N.Y. Sept. 16, 1996).

## II.    PLAINTIFFS SHOULD PRODUCE DOCUMENTS CONCERNING PAYMENTS MADE BY PARTICIPANTS IN THE TPP HEALTH PLANS.

Request No. 41 seeks all documents concerning any payments for subject drugs made by any participant covered by any TPP, and any damages arising from such payments. Plaintiffs

have objected on grounds of "relevancy."  As alleged in the Complaint, the purported class

includes "consumers who made a pro rata co-payment" for any subject drug.  (Compl. ¶ 138.)

Request No. 41 thus seeks documents directly relevant to determining whether purported class

members suffered any injury and the extent of any such injury.  Payments by participants are

relevant to the claims as pled and should be produced, unless plaintiffs advise McKesson and the

Court that they will not seek to certify a class of consumers in this action.[3]

        During the meet and confer process, plaintiffs belatedly asserted the objections of

overbreadth and "patient confidentiality."  (Cheung Decl. Ex. 6 at 3.)  These objections do not

appear in plaintiffs' written responses and were only mentioned in a letter sent almost 90 days

after service of McKesson's requests.  Accordingly, these objections have been waived.  *See*

*Land Ocean Logistics*, 181 F.R.D. at 237 (finding that plaintiff waived its objections to

document requests where it failed to state objections within 30 days after service of the requests);

*see also Autotech Techs, Ltd. P'ship v. AutomationDirect.Com, Inc.*, No. 05 C 5488, 2006 U.S.

Dist. LEXIS 29074, at *6 (N.D. Ill. May 11, 2006) (noting that Rule 34, governing document

requests, operates like Rule 33, where "untimely grounds for objection ordinarily are waived.")

        In any event, plaintiffs' untimely objections do not excuse them from producing

responsive documents.  Plaintiffs' conclusory and unsupported overbreadth objection fails for the

reasons discussed above.  Plaintiffs' confidentiality concerns likewise do not excuse production.

*See Vollert v. Summa Corp*., 389 F. Supp. 1348, 1351 (D. Haw. 1975) (stating that the

confidentiality of plaintiffs' financial information can be protected by limiting the disclosure of

the produced information instead of by prohibiting discovery); *Kessel v. Cook County*, No. 00 C

3980, 2002 U.S. Dist. LEXIS 4185, at *8 (N.D. Ill. Mar. 13, 2002) (ordering the production of

---

[3] In a letter written after the parties' discovery conference, plaintiffs' counsel stated that they had not decided whether to seek certification of a consumer class.  Cheung Decl. Ex. 8.

plaintiffs' medical records because "[t]he protections afforded under this [protective] order are sufficient" to protect plaintiffs' interests). Responsive, confidential material can be produced under the protective order entered in this case.

### III.  PLAINTIFFS SHOULD PRODUCE DOCUMENTS CONCERNING ANY PROPOSED SETTLEMENT BETWEEN ANY PLAINTIFF AND FDB.

Request No. 17 seeks documents concerning any settlement between plaintiffs and FDB, including settlement communications exchanged between these adverse parties. In response, plaintiffs assert conclusory "relevancy," "privilege," and "work product" objections, refuse to produce the requested documents, and refuse to provide any log identifying any allegedly privileged documents. Plaintiffs' objections should be overruled.

The documents requested are discoverable under the broad relevancy standard governing discovery. Plaintiffs allege that FDB and McKesson reached agreement on how to artificially inflate the WAC-AWP spread for hundreds of brand drugs. (Compl. ¶ 8) Thus, representatives of FDB are likely to be important witnesses in this case. FDB apparently has been engaged in settlement discussions with the plaintiffs for nearly a year, and has purported to appear specially for the purpose of stipulating to a series of extensions to respond to the Complaint.[4]

Documents concerning settlement communications between FDB and plaintiffs are reasonably calculated to lead to admissible evidence regarding any potential bias of the FDB witnesses arising from positions taken during the parties' settlement negotiations. *See* Fed. R. Evid. 408. For example, discussions may show that plaintiffs accepted a reduced settlement payment in return for FDB's cooperation in further litigation and "could be construed as 'buying' favorable testimony." *In re CFS-Related Securities Fraud Litigation*, No. 99-CV-825-K(J),

---

[4] The last extension expired on June 12, 2006. To date, no further stipulations for extensions of FDB's time to respond to the Complaint have been filed.

2003 U.S. Dist. LEXIS 15230, at *12 (N.D. Okla. July 31, 2003). McKesson has a right "to discover the details of the settlement and to evaluate the degree to which those details impact the credibility of each witness." *Id*. Because the requested settlement-related documents may lead to evidence that is probative of the credibility of FDB witnesses, they are a proper subject of discovery. *See Ramirez v. Nabil's, Inc*., No. 94-2396-GTV, 1995 U.S. Dist. LEXIS 15444, at *5-*6 (D. Kan. Oct. 5, 1995); *Securities & Exchange Comm'n v. Downe*, No. 92 Civ. 4092 (PKL), 1994 U.S. Dist. LEXIS 708, at *18-*19 (S.D.N.Y. Jan. 27, 1994).

Plaintiffs' privilege and work product objections likewise fail to the extent that the request seeks communications between plaintiffs and FDB or their respective counsel. Whatever claims of privilege may attach to internal documents regarding plaintiffs' settlement strategy do not extend to communications or drafts of settlement documents exchanged between plaintiffs and FDB, who are adversaries in this litigation.

Finally, to the extent that any documents responsive to Request No. 17 are legitimately subject to a claim of privilege or to the work product doctrine, plaintiffs should be ordered to provide a log that identifies each withheld document with particularity.[5] All non-privileged, responsive documents should be produced.

### CONCLUSION

As discussed above, plaintiffs' objections lack merit. Accordingly, plaintiffs should be ordered to provide McKesson with prompt access to: 1) the MDL productions of the

---

[5] To support the assertion of a privilege, a party must describe the nature of the documents withheld in a manner that "will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. Proc. 26(b)(5). To support a work product objection, a party must supply the court with information showing that the withheld material was prepared by or for a party in anticipation of or during litigation. *See Maine v. United States DOI*, 298 F.3d 60, 66 (1st Cir. 2002). Without such specificity, McKesson is denied the opportunity to meaningfully evaluate or challenge an assertion of privilege.

manufacturers, retail pharmacies, and TPPs or TPP consultants; 2) the deposition transcripts and exhibits for the MDL defendants' depositions; 3) documents concerning any payments made for subject drugs by any participant covered by any TPP; and 4) documents concerning any settlement between FDB and any plaintiff. Additionally, the Court should order that plaintiffs are precluded from using any documents from the MDL record that are responsive to McKesson's First Request for Production and that plaintiffs have refused to date to produce.

Dated: June 28, 2006                           McKesson Corporation

                                               _/s/ Paul Flum_____
Joan M. Griffin, BBO # 549522                  Melvin R. Goldman (*pro hac vice*)
Michael P. Twohig, BBO # 648079                Lori A. Schechter (*pro hac vice*)
Burns & Levinson LLP                           Paul Flum (*pro hac vice*)
125 Summer Street                              Tiffany Cheung (*pro hac vice*)
Boston, Massachusetts 02110                    Morrison & Foerster LLP
tel. (617) 345-3000                            425 Market Street
fax (617) 345-3299                             San Francisco, CA 94105-2482
                                               tel. 415-268-7000
                                               fax 415-268-7522


## APPENDIX REGARDING EACH DISPUTED REQUEST PURSUANT TO LOCAL RULE 37.1

### DOCUMENT REQUEST NO. 1:

All documents concerning the MDL Litigation, including, without limitation, all documents produced pursuant to discovery requests, deposition transcripts, deposition videos, deposition exhibits, non-public pleadings, and transcripts of hearings before a Judge or Magistrate.

### RESPONSE TO REQUEST NO. 1

Plaintiffs object based on: relevancy, time frame and overbreadth. The MDL action covers 15 years, this case 5. The MDL action covers some drugs not at issue in this case and issues not at issue in this case. Plaintiffs can and will produce a subject of relevant material: depositions and documents from FDB, McKesson, other wholesalers, and any other relevant categories identified by McKesson.

**McKesson's Position As to Request No. 1**: Plaintiffs' objections fail. Additional documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 7:**

For the period beginning January 1, 1991, all documents that refer to a manufacturer (or division thereof) as a "20% markup" company or a "25% markup" company as described in Paragraph 39 of the Complaint.

**RESPONSE TO REQUEST NO. 7:**

Plaintiffs object as to the time period.  Plaintiffs will produce any documents identified in the Complaint but otherwise object to the burden of searching through all MDL documents for such references.

**McKesson's Position As to Request No. 7**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 8:**

All documents concerning brand name drug reimbursement for retail pharmacy ingredient costs contained in "contracts between PBMs and plan sponsors, and PBMs [and] pharmacies" referred to in Paragraph 57 of the Complaint.

**RESPONSE TO REQUEST NO. 8:**

Plaintiffs will produce documents in their possession for the period 2000 to the present.

**McKesson's Position As to Request No. 8**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 10:**

Each of the "thousands of pharmaceutical contracts . . . based on AWP minus a specified discount" referred to in Paragraph 63 of the Complaint.

**RESPONSE TO REQUEST NO. 10:**

Plaintiffs will produce contracts during the relevant time period.

**McKesson's Position As to Request No. 10**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 12:**

For the period beginning January 1, 1991, all documents concerning the publication of AWPs by Red Book, Blue Book, Medi-Span, or any other publisher (other than First DataBank).

**RESPONSE TO REQUEST NO. 12:**

Plaintiffs object on the grounds of vagueness, overbreadth, time frame and relevancy.

**McKesson's Position As to Request No. 12**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 14:**

All documents concerning any representation or other statement by First DataBank
concerning its business, including its publication of AWPs, information contained in its field
information, how it derived information for its database, how it determined markups, its research
of wholesalers, and its conduct of surveys.

**RESPONSE TO REQUEST NO. 14:**

Responsive documents are available from First Data.  Plaintiffs will replicate portions of
the First Data production in the MDL Litigation that plaintiffs selected.  Plaintiffs object to any
burden beyond this.

**McKesson's Position As to Request No. 14**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 16:**

For the period beginning January 1, 1991, all documents concerning complaints or other
reactions by manufacturers to increases in AWPs published by First DataBank.

**RESPONSE TO REQUEST NO. 16:**

Documents referred to in the Complaint will be produced.

**McKesson's Position As to Request No. 16**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 17:**

All documents concerning any potential, prospective, or actual settlement between any
Plaintiff and First DataBank, including all communications between Plaintiffs' counsel and First
DataBank or its counsel.

**RESPONSE TO REQUEST NO. 17:**

Plaintiffs object on the grounds of work product, privilege, and relevancy.

**McKesson's Position As to Request No. 17**:  Plaintiffs' objections fail.  Responsive documents should be produced for the reasons discussed at pages 12-13 above.

**DOCUMENT REQUEST NO. 22:**

All documents concerning discontinuation of AWP as a basis or means for reimbursement.

**RESPONSE TO REQUEST NO. 22:**

Plaintiffs object on the grounds of relevancy and burden.

**McKesson's Position As to Request No. 22**:  Plaintiffs' objections fail.  Additional documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 26:**

All documents concerning price offsets, discounts, rebates, or off-invoice incentive payments made by drug manufacturers to PBMs.

**RESPONSE TO REQUEST NO. 26:**

Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

**McKesson's Position As to Request No. 26**:  Plaintiffs' objections fail.  Additional documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 31:**

For the period beginning January 1, 1991, all documents concerning the actual or potential negotiation, renewal or replacement of contractual relationships with Third Party Administrators, PBMs, Mail Order Pharmacies, Benefit Consultants, Auditors, Manufacturers or Providers, including documents sufficient to identify all persons involved in such negotiation.

**RESPONSE TO REQUEST NO. 31:**

Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

**McKesson's Position As to Request No. 31**:  Plaintiffs' objections fail.  Additional documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 32:**

For the period beginning January 1, 1991, all documents concerning AWPs for drugs, including without limitation, all documents concerning the accuracy of published AWPs.

**RESPONSE TO REQUEST NO. 32:**

Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

**McKesson's Position As to Request No. 32**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 33:**

For the period beginning January 1, 1991, all documents concerning any definition or meaning of AWP or its use in the pharmaceutical marketplace.

**RESPONSE TO REQUEST NO. 33:**

Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

**McKesson's Position As to Request No. 33**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 38:**

For the period beginning January 1, 1991, all documents concerning any internal or external, formal or informal, assessments, studies, analyses, reviews, or audits regarding drug pricing or reimbursement amounts.

**RESPONSE TO REQUEST NO. 38:**

Plaintiffs object to the time frame and relevancy of this Request.

**McKesson's Position As to Request No. 38**:  Plaintiffs' objections fail.  Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 39:**

For the period beginning January 1, 1991, all documents concerning the price of or reimbursement rate for any Subject Drug.

**RESPONSE TO REQUEST NO. 39:**

Plaintiffs object to the time frame and relevancy of this Request.

**McKesson's Position As to Request No. 39**: Plaintiffs' objections fail. Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 41:**

For the period beginning January 1, 1991, all documents concerning any Participant's or Beneficiary's payment for Subject Drugs, including, without limitation, any co-payments made by any Participant or Beneficiary, and any alleged damages arising from such purchases.

**RESPONSE TO REQUEST NO. 41:**

Plaintiffs object to the time frame and relevancy of this request.

**McKesson's Position As to Request No. 41**: Plaintiffs' objections fail. Responsive

documents should be produced for the reasons discussed at pages 10-12 above.

**DOCUMENT REQUEST NO. 52:**

All documents concerning communications to First DataBank or any Publisher regarding AWP, the WAC-AWP spread, the impact of changes in the WAC-AWP spread on WAC, or the impact of changes in the WAC-AWP spread on manufacturer or wholesaler discount schedules.

**RESPONSE TO REQUEST NO. 52:**

Plaintiffs object to Request Nos. 52-56 and 58 on the grounds they have been the subject of previous requests.

**McKesson's Position As to Request No. 52**: Plaintiffs' objections fail. Additional

documents should be produced for the reasons discussed at pages 4-10 above.

**DOCUMENT REQUEST NO. 53:**

All documents from manufacturers concerning the WAC-AWP spread, the impact of changes in the WAC-AWP spread on WAC, or the impact of changes in the WAC-AWP spread on manufacturer or wholesaler discount schedules.

**RESPONSE TO REQUEST NO. 53:**

Plaintiffs object to Request Nos. 52-56 and 58 on the grounds they have been the subject of numerous previous requests.

**McKesson's Position As to Request No. 53**:  Plaintiffs' objections fail.  Additional documents should be produced for the reasons discussed at pages 4-10 above.

## DOCUMENT REQUEST NO. 55:

All documents concerning the impacts of higher or lower WAC-AWP spreads on pharmacy reimbursement.

## RESPONSE TO REQUEST NO. 55:

Plaintiffs object to Request Nos. 52-56 and 58 on the grounds they have been the subject of numerous previous requests.

**McKesson's Position As to Request No. 55**:  Plaintiffs' objections fail.  Additional documents should be produced for the reasons discussed at pages 4-10 above.

## DOCUMENT REQUEST NO. 57:

All documents concerning AWP, including but not limited to: (i) documents concerning Your use of AWP as a pricing term or pricing benchmark in any of Your contracts; (ii) documents discussing how You or others define AWP; (iii) documents discussing how AWP has been, or is currently, calculated; (iv) documents identifying the source that You use for determining AWPs; (v) all communications between you and a plaintiff concerning AWP; and (vii) all communications between You and a PBM concerning AWP.

## RESPONSE TO REQUEST NO. 57:

Plaintiffs object to this Request on the grounds of time frame. Subject to that objection plaintiffs will produce relevant documents in their possession as opposed to that of MDL counsel.

**McKesson's Position As to Request No. 57**:  Plaintiffs' objections fail.  Additional documents should be produced for the reasons discussed at pages 4-10 above.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on June 28, 2006.

/s/ Paul Flum
Paul Flum