UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, | C.A. No. 1:05-CV-11148-PBS |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT MCKESSON'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ........................................................................................................1

II.    STATEMENT OF FACTS .........................................................................................2

      A.     McKesson Is Obtaining a Full And Comprehensive Set of Relevant Documents Pertaining to the Alleged Misconduct From Its Co-Defendant and Co-Conspirator, FDB ...................................................................................................................2

      B.     Meanwhile, McKesson Seeks to Mire Plaintiffs in a Fishing Expedition to Search the Entire *AWP* Document Production in Their Possession For Any Relevant Documents ........................................................................................................4

III.   ARGUMENT ...............................................................................................................5

      A.     The Court Should Not Order Plaintiffs to Do the Impossible, the Futile and the Irrelevant – Search Their Entire *AWP* Production Set ...........................................5

            1.     Plaintiffs agreed to allow McKesson to conduct its own search ................5

            2.     McKesson's request is unduly burdensome.................................................9

      B.     Communications Between Counsel For Plaintiffs and For FDB Regarding the Possibility of Settlement Are Not Discoverable ...................................................10

            1.     Absent a final, consummated settlement, settlement negotiations are not discoverable ............................................................................................11

            2.     Most courts protect the confidentiality of the settlement negotiations ......12

      C.     McKesson's Request For Documents Concerning Any Payments by Any Third-Party-Payor Participant Dating Back 11 Years Before the Class Period Is Improper.............................................................................................................15

IV.    CONCLUSION..........................................................................................................18

001821-13 118392 V1

# TABLE OF AUTHORITIES

## CASES

**PAGE**

*Allen Cty. v. Reilly Indus.*,
197 F.R.D. 352 (N.D. Ohio 2000) ...........................................................................12, 13

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)........................................................................................................16

*Bell v. Woodward Governor Co.*,
2005 U.S. Dist. Lexis 27051 (N.D. Ill. Nov. 9, 2005)....................................................16

*Bottaro v. Hatton Assocs.*,
96 F.R.D. 158 (E.D.N.Y. 1982).....................................................................................14

*Butta-Brinkman v. Final Collection Agencies Int'l, Ltd.*,
164 F.R.D. 475 (N.D. Ill. 1995).....................................................................................14

*In re CFS-Related Secs. Fraud Litig.*,
2003 U.S. Dist. Lexis 15230 (N.D. Okla. July 31, 2003)...............................................11

*Clark v. Universal Builders, Inc.*,
501 F.2d 324 (7th Cir. 1974) .........................................................................................16

*Cook v. Yellow Freight Sys.*,
132 F.R.D. 548 (E.D. Cal 1990) ...............................................................................12, 13

*Davenport v. Ind. Masonic Home Found., Inc.*,
2003 U.S. Dist. Lexis 6350 (S.D. Ind. Mar. 27, 2003) ..................................................14

*Fidelity Fed. Sav. & Loan Ass'n v. Felicetti*,
148 F.R.D. 532 (E.D. Pa. 1993)......................................................................................14

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
332 F.3d 976 (6th Cir. 2003) .....................................................................................12, 13

*Grant Thornton v. Syracuse Sav. Bank*,
961 F.2d 1042 (2d Cir. 1992).........................................................................................14

*Grove Fresh Distribs., Inc. v. John Labatt Ltd.*,
888 F. Supp. 1427 (N.D. Ill. 1995) ................................................................................12

*Grupo Condumex, S.A. de C.V. v. SPX Corp.*,
331 F. Supp. 2d 623 (N.D. Ohio 2004)......................................................................13, 14

*Guenther v. Sedco, Inc.*,
    1998 U.S. Dist. Lexis 19901 (S.D.N.Y. Dec. 21, 1998)...........................................16, 17

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    1998 U.S. Dist. Lexis 6749 (S.D.N.Y. May 11, 1998).....................................................17

*Lesal Interiors, Inc. v. Resolution Trust Corp.*,
    153 F.R.D. 552 (D.N.J. 1994)........................................................................................14

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*,
    834 F.2d 677 (7th Cir. 1987) .........................................................................................14

*Morse/Diesel, Inc. v. Trinity Indus.*,
    142 F.R.D. 80 (S.D.N.Y. 1992) .....................................................................................14

*Olin Corp. v. Insurance Co. of N. Am.*,
    603 F. Supp. 445 (S.D.N.Y. 1985)................................................................................13

*On the House Syndication, Inc. v. Federal Express Corp.*,
    203 F.R.D. 452 (S.D. Cal. 2001) ...................................................................................16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).......................................................................................................16

*Ramirez v. Nabil's, Inc.*,
    1995 U.S. Dist. Lexis 15444 (D. Kan. Oct. 5, 1995).......................................................11

*SEC v. Downe*,
    1994 U.S. Dist. Lexis 708 (S.D.N.Y. Jan. 27, 1994).......................................................11

*Teachers Ret. Sys. v. ACLN Ltd.*,
    2004 U.S. Dist. Lexis 25927 (S.D.N.Y. 2004) ...............................................................16

*Transamerican Refining Corp. v. Dravo Corp.*,
    139 F.R.D. 619 (S.D. Tex. 1991)...................................................................................17

*United States v. Trucking Employers, Inc*,
    72 F.R.D. 101 (D.D.C. 1976).........................................................................................17

## MISCELLANEOUS

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON
    CLASS ACTIONS § 16.03 (4th ed. 2002) ........................................................................16

8 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE
    AND PROCEDURE, § 2171 (2d ed. 1994) ..........................................................................16

MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.232 (1995) ......................................................17

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.41 (2004) ......................................................17

001821-13  118392 V1

## I.    INTRODUCTION

At issue here are the tens of millions of pages produced by the 19 defendants and countless third parties in the massive *AWP* consolidated class-action litigation also before this Court.  Defendant McKesson insists that the Court order Plaintiffs to review these materials for any relevant documents that Plaintiffs have not already produced.  This request is unduly burdensome and horribly wasteful in terms of time, money and resources – not a concern apparently to a $2 billion a year entity like McKesson that has assigned its Morrison Foerster lawyers to the case.  Plaintiffs have already produced relevant documents from this set; the remainder of the documents relate to *AWP* claims that are unrelated to this litigation.  McKesson nonetheless would require Plaintiffs to re-review the millions of pages of documents on the slim chance that some additional relevant documents might exist.  Moreover, McKesson's co-defendant and co-conspirator, First Databank ("FDB") has produced a comprehensive set of documents highly probative of all aspects of the alleged misconduct.  These, together with McKesson's own documents and the documents plaintiffs have produced, comprise the full universe of pertinent documents evidencing the misconduct.  Nothing from the unused warehouses of material sin the *AWP* litigation can add to it.  For these and other reasons (such as that McKesson's counsel, Lori Schechter of Morrison Foerster, also represents an *AWP* defendant, and thus has equal access to the *AWP* document production), McKesson's document requests are unduly burdensome and its motion to compel should be denied.  *See infra* at 9-10.

But Plaintiffs have sought a means to resolve this dispute.  McKesson offers that it will search for itself the *AWP* documents in Plaintiffs' possession.  See McKesson Br. at 3 n.2.  Plaintiffs accept.  The parties failed to agree due to their disagreement on conditions to this compromise, but the Court can order McKesson to run its own search of the *AWP* documents and determine for itself which of the parties' conditions have merit.  *See infra* at 5-9.

- 1 -

McKesson also asks the Court to order Plaintiffs to produce any documents relating to a possible *future* settlement with FDB, citing authorities that completed settlements can provide evidence of witness bias. But absent a final, consummated settlement (which does not exist here), settlement negotiations are not discoverable. And in any event, most courts protect the confidentiality of all settlement negotiations, whether under a settlement privilege or by imposing a heightened burden on the moving party to prove a particularized need. McKesson makes no such showing here. *See infra* at 10-15.

Finally, McKesson's request for documents from Plaintiffs concerning any payments by any third-party-payor participant dating back 11 years before the alleged misconduct is improper. McKesson does not even try to argue that documents predating the alleged misconduct are relevant. Second, to the extent the request seeks documents from absent class members, regardless of the time frame, it should denied because discovery from such class members is disfavored and requires a strong showing of need. McKesson again makes no such showing here. *See infra* at 15-17. For these reasons, McKesson's motion to compel should be denied.

## II.    STATEMENT OF FACTS

**A.    McKesson Is Obtaining a Full And Comprehensive Set of Relevant Documents Pertaining to the Alleged Misconduct From Its Co-Defendant and Co-Conspirator, FDB**

First Databank, McKesson's co-conspirator and co-defendant, just confirmed itself as the single most important source of documents at the heart of this litigation (aside from McKesson itself). Earlier this year, FDB voluntarily produced to "McKesson a complete electronic set of the documents, data and prior testimony which FDB had produced in [*AWP*]. This production included tens of thousands of pages of responsive documents, 10 years worth of historical pricing data for all relevant drugs, and 16 transcripts from depositions taken of FDB representatives on similar topics." Declaration of Steve W. Berman ("Berman Decl."), Ex.1 at

3, (First Databank Inc.'s Responses and Objections to McKesson Corporation's First Request for Production of Documents). FDB also stated it had "already produced … copies of its historical *BlueBook* publication (1990 to 1996); copies of all of its historical *NDDF* Documentation Manual (1998-2004); internal memoranda; screenshots from FDB's website; volumes of other publications; and hundreds of pages of deposition testimony directly responsive to this Request." *Id*. at 5 (Response to Request No. 4).

After receiving this document motherlode, and not to be deterred in its scorched-earth approach, McKesson followed up on June 6, 2006, with 49 formal document requests, to which FDB responded on July 11. *Id.* at 1-43. FDB objected that FDB ***already*** voluntarily produced the relevant documents to McKesson. *E.g.*, *id*. at 3-4, 5, 6, 7. But it also agreed to produce additional responsive documents. It will produce, for example, "all price-related documents (including letters, pricelists, e-mails, etc.) located in the hard-copy manufacturer pricing files that FDB maintains for any of the manufacturers of the subject drugs." *Id.* at 7. Indeed, for every one of McKesson's 49 requests, FDB agreed to produce additional relevant, responsive documents not previously produced. *See id*. at 3-41. A review of the requests and FDB's response shows that, just as would be expected in discovery exchanged between co-defendant conspirators, McKesson has or will soon obtain all documents relevant to the alleged misconduct. Among its 49 requests, McKesson sought, for example,

- "All documents reflecting communications to or from McKesson" [Request No. 1];

-  "All documents reflecting communications to and from any Wholesaler other than McKesson, including Amerisource Bergen and Cardinal" [Request No. 2];

- "All documents concerning surveys You conducted of Wholesalers" [Request No. 3];

- "All documents concerning the methodology used to determine Blue Book AWP" [Request No. 4];

- "All documents concerning your use of manufacturer Suggested Wholesale Price" [Request No. 5];

- "All documents reflecting communications to or form any Manufacturer Concerning WAC, AWP, SWP, the markup from WAC to AWP, the markup from WAC or SWP, the WAC-AWP spread, the WAC-SWP spread, or other pricing for any Subject Drug" [Request No. 6].

Berman Decl., Ex. 1 at 3-7. Plaintiffs invite the Court to review the remainder of McKesson's 49 requests and FDB's responses thereto to see for itself that the documents requested and produced between these co-defendants are a comprehensive set of relevant documents relating to the misconduct allegedly committed by the co-defendants.

**B.      Meanwhile, McKesson Seeks to Mire Plaintiffs in a Fishing Expedition to Search the Entire *AWP* Document Production in Their Possession For Any Relevant Documents**

Notwithstanding this comprehensive and readily available source of relevant documents, McKesson has demanded that Plaintiffs search the millions of pages of documents produced to them from various defendants and third parties in the separate *AWP* litigation.

As the Court knows, the *AWP* case has been embroiled in discovery since 2001 and is still ongoing. Indeed, two defendants (Amgen and Baxter) recently produced five million documents. Tens of millions of pages have been produced in total. Most of these documents are utterly irrelevant to this case. The *AWP* case involves largely physician-administered drugs, this case involves just brand-name drugs. The *AWP* case goes back to 1991, this case commences in 2001. Berman Decl. ¶ 3.

Despite the fact the vast bulk of *AWP* production is unquestionably irrelevant (by date and by type of drug, *i.e.*, physician-administered), McKesson has focused on forcing Plaintiffs to

- 4 -

review the millions of irrelevant pages in the vain hope something relevant might be there. Berman Decl. ¶ 4.

McKesson ignores that Plaintiffs have already agreed to produce what is really relevant from *AWP*: all of FDB's production, all of the wholesaler productions, all of the documents produced by PBMs, all of the documents used in expert testimony by any expert, all summary-judgment and class-certification materials, ***and*** access via the court reporter to all depositions and exhibits. The depositions and exhibits are the results of the *AWP* parties' culling of these millions of documents. McKesson has not yet examined the depositions and exhibits, nor has it received and examined the FDB documents, having waited almost a year to request them. Instead it stubbornly insists on focusing its efforts on plaintiffs' possession of discovery that is not relevant.

## III.    ARGUMENT

### A.    The Court Should Not Order Plaintiffs to Do the Impossible, the Futile and the Irrelevant – Search Their Entire *AWP* Production Set

#### 1.    Plaintiffs agreed to allow McKesson to conduct its own search

McKesson has fashioned a curious game of "hot potato" where the fact that these tens of millions of documents came into Plaintiffs' possession from the *AWP* defendants would make Plaintiffs – not the original producing defendants – responsible for sifting through them at McKesson's request. Yet Plaintiffs' counsel simply cannot perform that search for McKesson. Nor should they. Plaintiffs are fully consumed with reviewing those documents for purposes of the looming trial in *AWP* and responding to multiple summary-judgment motions, and thus would be severely prejudiced if called to review those documents again for McKesson. Berman Decl. ¶ 3. Further, Plaintiffs already produced to McKesson the documents that they found to be relevant to the *AWP* litigation. Compounding this inequity, McKesson's counsel, Lori Schechter

at Morrison Foerster, is listed as counsel for an *AWP* defendant (Berman Decl. Ex. 6 and ¶ 6, and thus has access to the same universe of *AWP* documents as Plaintiffs did here (through their counsel). Further, these documents are unquestionably irrelevant.

Plaintiffs nonetheless recognize that the parties should not nuisance the Court with their finger pointing on this motion. Plaintiffs hence found something in McKesson's motion they could stomach in hope of resolving this motion. McKesson stated that as full satisfaction of its request for the *AWP* documents, if Plaintiffs provide access to the entire *AWP* production in Plaintiffs' possession, McKesson would perform its own search. *See* Br. at 3 n.2, 7.[1] On July 5, 2006, Plaintiffs wrote to McKesson that they would accept this compromise. Berman Decl., Ex. 3. Apparently due to counsel's vacation over the week including July 4th, McKesson did not timely respond. Rather, late in the day on July 11 Plaintiffs received McKesson's response, which piled on additional conditions to the compromise. Berman Decl., Ex. 4 and ¶ 8. The parties did not reach an agreement. Berman Decl. ¶ 9.

Plaintiffs asserted two conditions that follow directly from McKesson's refusal to narrow its requests, which they reassert here. Berman Decl. Ex. 3 at 1. First, Plaintiffs asked that McKesson cannot assert the time necessary to review the MDL production's enormous bulk as a pretext for delaying this litigation. McKesson rejected this condition. Berman Decl. Ex. 4. But Plaintiffs had warned McKesson from the outset about the volume of materials produced in the *AWP* litigation and the time required to review it, and that Plaintiffs' counsel would suffer huge prejudice if it had to devote the necessary resources to review those documents again for McKesson and thus would not do so given their marginal, if any, relevance. Plaintiffs advised McKesson to seek the documents from the various *AWP* producing parties, who were better

---

[1] McKesson incorrectly claims it previously extended this offer and that Plaintiffs rejected it.

- 6 -

resourced to review and produce their own documents for McKesson.  Berman Decl. ¶ 10.  And in fact, when McKesson did so request, its co-defendant here produced and continues to produce a motherlode of pertinent documents.  *See supra* at 2-4.  Yet McKesson to this day has refused to ask any manufacturers for documents.  Plaintiffs also informed McKesson that their document set did not reside in any one place.  It has instead been divided and disseminated to various law offices around the country for evaluation in the *AWP* litigation.

Plaintiffs thus properly asked McKesson to narrow its request to specific relevant documents – which McKesson refused to do – rather than requiring Plaintiffs bear the cost of McKesson's fishing expedition.  Now, having refused to narrow its request, and instead offering that it would itself accept the task of reviewing the millions of pages of documents, McKesson should not be heard to complain in the months ahead that its document review requires delaying the case schedule in this litigation, or that Plaintiffs have prejudiced McKesson's ability to prepare its defense.  The Court should instruct McKesson that the time it needs to perform its review will not be pertinent to any schedule modification.

Plaintiffs' second condition was that McKesson accept the costs of the production.  Given the enormity of the production and that most of the documents are irrelevant to this litigation, by refusing to narrow its request McKesson has concocted a monumental undertaking.  Plaintiffs are willing to waive their insistence that McKesson limit its request to relevant documents.  They asked in exchange that McKesson be responsible for all the production costs.  Berman Decl. Ex. 3.  McKesson accepted this condition.  Berman Decl. Ex. 4.[2]

---

[2] In addition to the usual cost of copying the documents selected by McKesson, Plaintiffs asked McKesson to accept the cost of providing proctors to monitor the integrity of the produced document set during its review. Berman Decl. Ex. 3.  McKesson declined.  Berman Decl. Ex. 4.  To facilitate resolution here, Plaintiffs do not reassert that condition.

McKesson responded with new conditions of its own, which the Court should reject. McKesson demanded that Plaintiffs must provide a "written catalogue specifying by location the categories into which the documents have been organized the volume of documents maintained within each category, and the course of documents collected in each category." Berman Decl. Ex. 4. (emphasis omitted). Setting aside that McKesson demands far more than it has given Plaintiffs in response to Plaintiffs' document requests,[3] Plaintiffs can provide the following categories of information: which defendants produced documents and where those documents are located; the approximate volume of documents; and the format in which they exist (whether in hard copy or some digital format). To the extent McKesson would require Plaintiffs to identify "the categories into which the documents have been organized," Plaintiffs have organized the documents only by producing defendants. They can provide nothing more. Berman Decl. ¶ 12.

McKesson's second condition – which appeared nowhere in McKesson's brief – is unreasonable. McKesson demands that after it has reviewed the *AWP* documents, the parties must designate a universe of documents that they deem relevant, and that "Plaintiff will not use in this case any other documents from the MDL … [because] to do otherwise would create 'trial by ambush.'" *Id.* Nonsense. With McKesson having full and equal access to the *AWP* documents, those same documents present Plaintiffs no special "ambush" opportunity. Rather, the Court should hold McKesson to its stated position in its moving papers: without condition, "McKesson remains willing to conduct that search itself, so long as plaintiffs provide access to the requested MDL materials." Br. at 3 n.2. The parties will then be on equal footing with this

---

[3] McKesson's response to Plaintiffs' document requests has been a slow, disorganized rolling production, with the documents often jumbled into a meaningless order. To make some sense of the documents, Plaintiffs asked McKesson to identify the documents' respective sources and their custodians. McKesson has not done so to this date. Berman Decl. ¶ 11.

universe of documents.  There is no need to require the parties to restrict which documents they may use.

In short, by this brief Plaintiffs accept McKesson's request for relief in the form of obtaining access to the *AWP* production.  McKesson should be warned, however, that it will be responsible for its own intransigence.  By refusing to narrow its request or seeking the documents from the original producing parties, it has engineered a costly and time-consuming task, and it alone should bear the cost.

### 2.     McKesson's request is unduly burdensome

McKesson asks Plaintiffs to search the many millions of pages of documents they selected from the document productions of all 19 defendants in the *AWP* litigation, plus hundreds of third parties.  In response, Plaintiffs produced to McKesson the set of documents generated from their six-year review of the *AWP* documents for documents relevant and pertinent to the present litigation.  Plaintiffs also pointed out that McKesson's counsel, as counsel for defendant Purdue Pharma in *AWP*, already had access to the *AWP* documents.[4]

The parties have exchanged letters, email and other communications since mid-March 2006 regarding McKesson's request.  From the outset, Plaintiffs have agreed to produce documents from that vast production, but asked McKesson to narrow its request to relevant documents.  As this Court knows, the *AWP* action is far broader than this litigation, encompassing more defendants, a longer class period, and different conduct.  Hence most of the tens of millions of documents produced therein are without question irrelevant to this litigation. McKesson refused, and further, even accused Plaintiffs of stonewalling – an ironic accusation in

---

[4] Indeed, Plaintiffs have access to the *AWP* production because some of their counsel also represent *AWP* plaintiffs.

part because Plaintiffs have been far more responsive to McKesson's discovery requests than

McKesson has been to Plaintiffs' requests.  For many reasons, including that

    (i)      Plaintiffs have already produced their set of relevant documents from the *AWP* production,

    (ii)     McKesson demands that Plaintiffs re-review the massive *AWP* production merely for the possibility that there ***might*** exist some additional relevant material,

    (iii)    with McKesson's own documents and those that FDB has or is producing, McKesson already possesses a full set of documents relevant to the misconduct alleged in this case,

    (iv)    Plaintiffs merely possess copies of the *AWP* documents, while McKesson could easily request them from the originating *AWP* parties, which are far more familiar with the documents and better resourced to produce them,

    (v)     McKesson and Plaintiffs have (largely) agreed that McKesson itself can search the *AWP* documents (*see supra* at 5-9),

    (vi)    Plaintiffs are fully consumed with reviewing the *AWP* documents for the *AWP* litigation and have no resources to spare to re-reviewing them for McKesson,

    (vii)   McKesson, via its counsel's representation of an *AWP* defendant already has access to the same *AWP* documents as Plaintiffs, and

    (viii)  McKesson can obtain from the summary-judgment materials and deposition exhibits the work product of hundreds of lawyers who have culled through the *AWP* evidence.

Given the above, it would be unduly burdensome to require Plaintiffs to conduct the fishing

expedition into the *AWP* documents that McKesson demands.

**B.**    **Communications Between Counsel For Plaintiffs and For FDB Regarding the Possibility of Settlement Are Not Discoverable**

McKesson also asks Plaintiffs to produce "[a]ll documents concerning any potential,

prospective, or actual settlement" between Plaintiffs and FDB.  This sweeping request

encompasses "all communications between Plaintiffs' counsel and First Databank or its

counsel."  McKesson App. at 16 (reproducing Document Request No. 17).

### 1.    Absent a final, consummated settlement, settlement negotiations are not discoverable

McKesson glosses over the fact that, unlike in its authorities, there is no settlement here. McKesson's three authorities thus are inapplicable because they each concerned production of documents relating to a completed, consummated settlement. *See In re CFS-Related Secs. Fraud Litig.*, 2003 U.S. Dist. Lexis 15230, at *9 (N.D. Okla. July 31, 2003) ("confidential settlement agreement"); *Ramirez v. Nabil's, Inc.*, 1995 U.S. Dist. Lexis 15444, at *1 (D. Kan. Oct. 5, 1995) ("settlement agreement"); *SEC v. Downe*, 1994 U.S. Dist. Lexis 708 (S.D.N.Y. Jan. 27, 1994). The courts reasoned that these settlements were relevant because their terms might reveal some evidence of bias by the settling defendants and their agents:

> The fact that [potential defendant] … has settled with the plaintiff in the action could color the testimony of the current and former employees with regard to the other named defendants. The actual amount of the settlement can impact witness credibility…. Counsel for the Defendants have a right to discover the details of the settlement and to evaluate the degree to which those details impact the credibility of each witness.

*CFS*, at *12-13. *See also Ramirez*, at *5-6 ("[t]he terms, as well as the fact of settlement, may affect their credibility as witnesses"); *SEC v. Downe*, at *18 (agreeing that requested settlement agreement "may lead to evidence that would establish Downe's bias, interest or prejudice").

Accordingly, McKesson's argument that all documents relating to any prospective settlement are relevant because that may indicate "potential bias of the FDB witnesses" (Br. at 12) is unsupported. McKesson cites no authority addressing the present situation where no settlement has been completed. Nor can McKesson explain how documents relating merely to a "potential [or] prospective … settlement" might indicate witness bias. Courts actually addressing the issue conclude that uncompleted settlement negotiations are irrelevant and need not be produced, even where the requesting party sought to justify the document request as

- 11 -

seeking evidence of witness bias.  *See, e.g., Cook v. Yellow Freight Sys.*, 132 F.R.D. 548, 555

(E.D. Cal 1990) ("the existence of unaccepted proposals alone do very little to establish bias");

*Allen Cty. v. Reilly Indus.*, 197 F.R.D. 352, 354 (N.D. Ohio 2000) (same, citing *Cook*).  As

matter of law, documents relating to an incomplete settlement are thus not relevant to the

question of witness bias.  The Court should deny McKesson's motion as to this document

request.

Moreover, McKesson's motion, although premature, will also be needless if Plaintiffs do

actually settle with FDB.  Because Plaintiffs are asserting class claims against FDB, any such

settlement will be public.  As required in class actions, any settlement will be submitted to the

Court for approval and its terms disseminated to all class members for inspection and an

opportunity to object or opt out.  Moreover, as a class settlement agreement requires Court

approval and dissemination to class members, it will be fully integrated, without separate

confidential terms.  Accordingly, should Plaintiffs and FDB agree to settle, McKesson will be

served with the settlement agreement and supporting documents.  McKesson will have no need

to move to compel.

## 2. Most courts protect the confidentiality of the settlement negotiations

Additionally, courts protect the confidentiality of the settlement process.  Settlement

serves an important role in expediting and improving the efficiency of the litigation process.

*E.g.*, *Grove Fresh Distribs., Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1441 (N.D. Ill. 1995).

The ability to negotiate and settle a case without trial fosters a more efficient, more cost-

effective, and significantly less-burdened judicial system.  *Goodyear Tire & Rubber Co. v.*

*Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003).

- 12 -

For settlement talks to be effective, parties must feel uninhibited in their communications. *Id.  Goodyear Tire* explained that the public policy of encouraging settlement requires rules protecting parties' confidence that their negotiation tactics will remain private:

> Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of "impeachment evidence," by some future third party. Parties must be able to abandon their adversarial tendencies to some degree.  They must be able to make hypothetical concessions, offer creative *quid pro quos*, and generally make statements that would otherwise belie their litigation efforts.  [*Id.*]

Accordingly, many courts recognize a federal privilege for settlement negotiations.  *Id*. at 983 ("any communications made in furtherance of settlement are privileged"); *Allen Cty. v. Reilly Indus.*, 197 F.R.D. at 353 (noting the "well-established privilege relating to settlement discussions"); *Cook*, 132 F.R.D. a 554 ("[t]here is a well-established privilege relating to settlement discussions that the court finds applicable to this particular motion"); *Olin Corp. v. Insurance Co. of N. Am.*, 603 F. Supp. 445, 449-50 (S.D.N.Y. 1985) (holding that "the settlement privilege prevented INA from obtaining discovery of an amendment to the Wausau policy concerning the extent to which Wausau would pay defense costs").  Indeed, "[w]ithout a privilege, parties would more often forego negotiations for the relative formality of trial.  Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost." *Goodyear Tire*, 332 F.3d at 980.  This privilege serves to except settlement discussions from discovery.  *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claims or defense …").

Notably, this privilege is carefully circumscribed, excluding documents that are exchanged during settlement negotiations but created for other purposes.  *See Grupo Condumex, S.A. de C.V. v. SPX Corp.*, 331 F. Supp. 2d 623, 629 (N.D. Ohio 2004).  Rather, privileged

- 13 -

documents must be of the sort of communications that the privilege was designed to protect: namely, those that are inherently unreliable because of the likelihood of puffery.  *Id.*

Other courts impose a heightened, particularized burden on the party seeking disclosure of negotiations or documents related to a settlement agreement.  *See, e.g., Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 562 (D.N.J. 1994) (applying heightened standard and refusing disclosure); *Fidelity Fed. Sav. & Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 1993) (applying heightened standard and imposing burden of proof on the party seeking the discovery); *Butta-Brinkman v. Final Collection Agencies Int'l, Ltd.*, 164 F.R.D. 475, 476-77 (N.D. Ill. 1995) (holding defendant not required to turn over confidential settlement agreements reached in other cases absent showing that plaintiff would be unable to obtain the relevant information through other discovery); *Davenport v. Ind. Masonic Home Found., Inc.*, 2003 U.S. Dist. Lexis 6350, at *5 (S.D. Ind. Mar. 27, 2003) (confidential settlement agreement not discoverable); *Morse/Diesel, Inc. v. Trinity Indus.*, 142 F.R.D. 80, 83 (S.D.N.Y. 1992); *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982).  Courts thus allow discovery relating to a settlement agreement in ongoing litigation only where the moving party lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.  *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987).  This rules is designed to prevent parties from learning their opponents' legal strategies through discovery. *Id.*; *Grant Thornton*, 961 F.2d at 1046.

McKesson makes no effort to meet a heightened burden to show the requested settlement-negotiation documents are relevant and likely to lead to discovery of admissible evidence.  Nor does it explain why Plaintiffs' settlement negotiations should not be privileged

- 14 -

from discovery.  McKesson's motion to compel documents responsive to Request No. 17 should

be denied.

**C.     McKesson's Request For Documents Concerning Any Payments by Any Third-Party-Payor Participant Dating Back 11 Years Before the Class Period Is Improper**

McKesson characterizes its Request No. 41 as seeking "all documents concerning any

payments for subject drugs made by any participant covered by any TPP, and any damages

arising from such payments."  Br. at 10.  McKesson does not mention, however, that while

Plaintiffs allege misconduct extending only back to January 1, 2002, McKesson's request also

demands documents dating back 11 additional years to January 1, 1991.[5]  Plaintiffs object that

any such payment information for purchases made during the 11-year period before the alleged

misconduct began is irrelevant.

McKesson does not explain or defend its request's excessive time frame.  It merely

asserts that it seeks documents relevant to class members' injuries and damages.  Br. at 11.

Plaintiffs do not contest the requested documents' relevancy to their purchases subject to

McKesson's misconduct.  They object only to producing documents relating to purchases

predating the misconduct by up to 11 years.  Plaintiffs incurred no injury during that time, so

McKesson's blithe assertion that the request "seeks documents directly relevant to determining

whether purported class members suffered any injury and the extent of any such injury" (*id*.) is

patently false.  McKesson has no response.

In addition, to the extent McKesson's document request seeks discovery from absent

class members (that is, from "any participant covered by any TPP," *id*. at 10), it is improper

regardless of the time frame.  Unlike the named plaintiffs, absent class members are not parties

who affirmatively chose to assume discovery obligations in this case.  Discovery directed to

---

[5] Plaintiffs will be filing a proposed amended complaint this week expanding the period to begin August 2001.

absent class members is thus disfavored and is not permitted absent a "strong showing" of necessity by the defendant. *See* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 16.03, at 137-38 (4th ed. 2002) (citations omitted) (absent class members discovery is *not* permitted '"as a matter of course'" … "[A]bsent a strong showing of necessity, discovery generally will be denied"); *Bell v. Woodward Governor Co.*, 2005 U.S. Dist. Lexis 27051, at *7 (N.D. Ill. Nov. 9, 2005) (strong showing required); *Teachers Ret. Sys. v. ACLN Ltd.*, 2004 U.S. Dist. Lexis 25927, at *30 (S.D.N.Y. 2004) ("courts are extremely reluctant to permit discovery of absent class members"; citing cases); *On the House Syndication, Inc. v. Federal Express Corp.*, 203 F.R.D. 452, 456 (S.D. Cal. 2001); *Guenther v. Sedco, Inc.*, 1998 U.S. Dist. Lexis 19901, at *15 (S.D.N.Y. Dec. 21, 1998) (strong showing required); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) (same); 8 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2171 (2d ed. 1994) ("[i]f discovery from absent class members is permitted at all, it should be sharply limited and allowed only on strong showing of justification"). As the Supreme Court reasons, under the intent of Fed. R. Civ. P. 23, absent class members are "passive beneficiaries" to litigation, and are entitled to sit back and await results without undue involvement or bother. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("[u]nlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection"). For this reason, the *Manual For Complex Litigation* recognizes that discovery of absent class members "should be permitted only to the extent necessary and should be carefully limited to ensure that it serves a legitimate purpose and is not used to harass either the class representatives or the class members." MANUAL FOR COMPLEX

LITIGATION, THIRD, § 30.232 at 231 (1995). *See also* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.41 (2004).

In weighing these factors, many courts have refused to permit ***any*** discovery of absent class members. *See*, *e.g.*, *Guenther*, 1998 U.S. Dist. Lexis 19901, at \*15 (refusing to allow depositions of 19 absent class members who submitted affidavits in support of a summary-judgment motion). And where courts even consider absent class-member discovery, it is not permitted unless (i) defendants demonstrate a clear need for the information for trial, (ii) the discovery is narrowly tailored to meet that purpose, and (iii) the discovery is not intended to, and will not, impose undue burden on absent class members. *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 1998 U.S. Dist. Lexis 6749, at \*7 (S.D.N.Y. May 11, 1998); *Transamerican Refining Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621 (S.D. Tex. 1991); *United States v. Trucking Employers, Inc*, 72 F.R.D. 101, 104 (D.D.C. 1976).

Because McKesson ignores the standard for document discovery of absent class members, it does not address the greater showing of necessity required for the obtaining discovery from absent class members. McKesson does not even attempt to show that the discovery it seeks is absolutely necessary at this stage, that it is narrowly tailored and will not unduly burden class members. Thus, to the extent the document request can be read to require disclosure from absent class members, it is improper.

In short, Plaintiffs do not object to producing responsive documents in their possession regarding their purchases during the period of misconduct from January 1, 2002, to March 15, 2005, when FDB disclosed that it had stopped surveying wholesalers. Plaintiffs object to producing documents relating to purchases made before that period and to the extent the request seeks documents from absent class members.

## IV.    CONCLUSION

For the reasons stated above, McKesson's motion to compel should be denied.

Additionally, Plaintiffs will provide McKesson access to their set of documents obtained from

defendants and third parties in the *AWP* litigation, but the Court should admonish McKesson that

its review of those documents will not provide grounds to delay this litigation and that

McKesson will bear the cost of that production.


DATED:  July 12, 2006                        By_____/s/ Steve W. Berman_____
                                                Steve W. Berman
                                                Sean R. Matt
                                                Barbara A. Mahoney
                                             Hagens Berman Sobol Shapiro LLP
                                             1301 Fifth Avenue, Suite 2900
                                             Seattle, WA  98101
                                             Telephone: (206) 623-7292
                                             Facsimile: (206) 623-0594

                                             Thomas M. Sobol (BBO#471770)
                                             Hagens Berman Sobol Shapiro LLP
                                             One Main Street, 4th Floor
                                             Cambridge, MA  02142
                                             Telephone: (617) 482-3700
                                             Facsimile: (617) 482-3003


                                             Elizabeth Fegan
                                             Hagens Berman Sobol Shapiro LLP
                                             60 W. Randolph Street, Suite 200
                                             Chicago, IL  60601
                                             Telephone: (312) 762-9235
                                             Facsimile: (312) 762-9286

                                             Jeffrey Kodroff
                                             John Macoretta
                                             Spector, Roseman & Kodroff, P.C.
                                             1818 Market Street, Suite 2500
                                             Philadelphia, PA  19103
                                             Telephone: (215) 496-0300
                                             Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

001821-13  118392 V1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 12, 2006.

/s/ Steve W. Berman
Steve W. Berman

001821-13  118392 V1