UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, | C.A. No. 1:05-CV-11148-PBS |

Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,

Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF A MOTION FOR A
DETERMINATION OF APPLICABLE STATE LAW**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND RELIEF REQUESTED ...................................................................1

II.   ARGUMENT .....................................................................................................................1

    A.    The Allegations of this Case are Substantially Different From *AWP*
          and Require a Different Analysis of the Applicable Law ........................................1

    B.    California Laws Apply Because They Best Effectuate the Fifty States'
          Interest in Protecting Their Residents From Deceptive Practices ...........................3

    C.    This Court Must Take Into Account California's Express Interest in
          Policing Misconduct Within Its Borders.................................................................5

    D.    No Conflict Exists With the Laws of Other States if California Law
          is Applied ...............................................................................................................7

III.  CONCLUSION .................................................................................................................9

001821-13  119420 V1

## I.   INTRODUCTION AND RELIEF REQUESTED

Plaintiffs allege violations of Cal. Civ. Code § 1750, *et seq*., Cal. Bus. & Prof. Code §§ 17200 *et seq.* and 17500 *et seq*., and common law conspiracy and negligent misrepresentation claims under California law.  Last year Defendant McKesson Corporation ("McKesson") moved to dismiss, arguing that California law does not apply.  The Court deferred ruling on the controlling state law until Plaintiffs presented their motion to certify the Class.[1]  Plaintiffs, who concurrently move to certify the Class, now move for a ruling that California law applies to the Class as a whole.

As set forth below, under Massachusetts choice of law analysis, California law applies because California has a superior interest in policing the misconduct of California businesses occurring within its borders over the interest of Plaintiffs' and Class members' states of residence in providing a remedy for the harm that Defendants inflicted on their residents.  Moreover, because California has some of the most protective laws in the country, the application of its laws best effectuate the fifty states' interest in protecting their residents from deceptive practices.

## II.   ARGUMENT

**A.   The Allegations of this Case are Substantially Different From *AWP* and Require a Different Analysis of the Applicable Law**

McKesson will likely argue by analogy with this Court's prior ruling in *AWP* that Plaintiffs' California claims do not apply to the Class.  Although superficially similar, the choice of law issue in this case is substantially different from that facing the Court on plaintiffs' motion for class certification in *AWP*.  There the Court declined to certify a national class based on the

---

[1] Court's Order (December 1, 2005), Dkt. No. 27.

consumer protection laws of the nine states[2] in which the 42 defendant pharmaceutical manufacturers had their principal places of business, noting that under Restatement § 148, comment g "the most significant factor [in a false representation action] is where the plaintiff acted in reliance on a defendant's representation." *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 81-82 (D. Mass. 2005). The Court concluded "that the home state of the consumer has a more significant relationship to the alleged fraud than the place of business of the defendant . . . since state consumer protection statutes are designed to protect consumers rather than to regulate corporate conduct." *Id.* at 83.

Defendants will no doubt argue that Plaintiffs' states of residence determine the law to be applied in this case as well. But the misconduct alleged in *AWP* did not occur exclusively in the drug manufacturers' states of residence, but also in the transmission of defendants' false representations to First Data. Here, even a mechanical application of the RESTATEMENT (2D) CONFLICT OF LAWS § 148(2) factors does not compel application of the law of the Plaintiffs' states of residence. Three points of contact refer to Defendants' state of residence: California is the place of Defendants' principal places of business, the place where they made the false representations and the location of First Data's AWP data.[3] That Plaintiffs received these representations and acted in reliance on them in their respective home states does not defeat California's interest in the application of its laws to Defendants' misconduct.[4] On a purely numerical basis the contacts are split equally between Defendants' state of residence and Plaintiffs', but § 145 advises that the contacts are not to be evaluated equally, and it is California, the location of Defendants' misconduct, "that will usually be given the greatest weight in

---

[2] The principal places of business of the defendant pharmaceutical manufacturers in *AWP* were California; Illinois; Missouri; New York; New Jersey; Nevada; North Carolina; Pennsylvania; and Washington.

[3] *See* § 148(2)(c); (d) and (e).

[4] These considerations reflect § 148(2)(a); (b) and (c).

determining" the law which should apply to unfair competition claims based, as here, on false

advertising.[5]   Additionally, California courts have allowed certification of a national class under

similar circumstances, recognizing that California has a strong interest in policing misconduct

within its own borders to maintain the integrity of its marketplace and encourage investment in

the State.  On the other hand, Class members' states of residence have **_no interest_** in limiting

their residents' right of recovery, or in limiting the liability of corporations residing outside their

borders.  These differences require a different approach to certification in this case.

**B.      California Laws Apply Because They Best Effectuate the Fifty States' Interest in Protecting Their Residents From Deceptive Practices**

The parties agree that Massachusetts law applies to the choice of law issue.  Courts in

Massachusetts

> take a flexible interest-based approach to conflict of laws issues
> and will consider a wide variety of factors in choosing the
> applicable law.  These factors include those listed in the
> Restatement (Second) Conflict of Laws:  (1) the needs of the
> interstate and international system, (2) the policies of the forum,
> (3)  the policies of other interested jurisdictions, (4) the protection
> of justified expectations, (5) the basic policies underlying the
> particular field of law, (6) certainty, predictability and uniformity
> of result, and (7) ease of applicability.  They also include factors
> proposed by conflict of laws commentators:  (1) predictability,
> (2) maintaining interstate and international order, (3) simplifying
> the judicial task, (4) advancing the interests of the forum, and
> (5) applying the better legal rule.  The SJC [Massachusetts
> Supreme Judicial Court] has indicated that it "feels free . . . to

---

[5] RESTATEMENT (2D) OF CONFLICT OF LAWS § 145, comment f (emphasis added); *see also Value Ptnrs. S.A. v. Bain & Co.*, 245 F. Supp. 2d 269, 277 (D. Mass. 2003) (declining to apply Massachusetts unfair competition statutes to conduct involving Massachusetts corporations conducting business in Brazil, reasoning that "Brazil has a more direct interest in regulating the behavior of foreign companies within Brazil . . . .  The choice of Brazilian law in this case would also favor uniformity and predictability, as all foreign companies committing tortious acts within a given country should be held to the same standards."); *Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.*, 753 F. Supp. 1566, 1570-1571 (S.D. Fla. 1990) (finding Massachusetts law applies to unfair competition claim because the defendant was a Massachusetts corporation and most of the alleged misconduct occurred there); *Fleet Mgmt. Sys., Inc. v. Archer-Daniels-Midland Co.*, 627 F. Supp. 550, 562 (C.D. Ill. 1986) (rejecting Massachusetts law and applying Illinois unfair competition law where defendant had its principal residence in Illinois and the alleged misconduct occurred there).

- 3 -

> borrow from any of the various lists to help focus . . . attention on
> the considerations particularly relevant to the case . . . ."

*Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 30 (1st Cir. 1997) (citations omitted)

(quoting *Bushkin Assocs., Inc. v. Raytheon Co*., 473 N.E.2d 662, 670 (Mass. 1985)).

Massachusetts courts do not apply conflict of laws principles mechanically, but rather evaluate

each case according to the facts.  *Computer Sys. of Am., Inc. v. International Bus. Machines,*

*Corp.*, 795 F.2d 1086, 1091-92 (1st Cir. 1986).

The leading case is *Bushkin*, in which the plaintiff filed his breach of contract action in

Massachusetts to avoid the statute of frauds problem he would have encountered had he brought

the same action in New York.  473 N.E.2d at 670.  The federal district court certified the choice

of law question to the Massachusetts Court of Appeals, which held that the plaintiff could not

avoid the law of New York, nor benefit from alleged "forum shopping."  *Id.* at 666.  The

Massachusetts Supreme Judicial Court reversed the Court of Appeals.  It held that Massachusetts

courts should consider "a variety of factors" and not simply choose "the State with the greatest

'interest' in the particular issue" at hand.  *Id.* at 668.  *Bushkin* determined that both states had an

interest in the transaction, but concluded that Massachusetts law should apply because it was best

able to effectuate both states' policy of protecting the right of contract:

> We begin by noting that the laws of both Massachusetts and New
> York favor the enforcement of contracts. . . .  Where relevant
> contacts and considerations are balanced, or nearly so, we are
> inclined to resolve the choice by choosing that law "which would
> carry out and validate the transaction . . . in preference to a law that
> would tend to defeat it . . . ."  *Boston Safe Deposit & Trust Co. v.*
> *Paris*, 15 Mass. App. Ct. 686, 691 (1983).  In this case, the law
> that will validate the agreement, if indeed there was an agreement,
> is that of Massachusetts.

473 N.E.2d at 670-71.

- 4 -

Plaintiffs and the Class allege that Defendants McKesson and First Data, whose principal places of business are located in California and whose misconduct also occurred in that state, committed false advertising in violation of the unfair or deceptive trade practices, California Bus. & Prof. Code § 17500 *et seq*. and the California Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.  Although all states have an interest in protecting their residents against unfair, unlawful and deceptive practices, California law is generally recognized to provide equal or greater protection than comparable laws of other states.  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001).  Applying California law would serve the interests of all the states.

**C.    This Court Must Take Into Account California's Express Interest in Policing Misconduct Within Its Borders**

The Restatement provides:  "If the primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship."  § 145, comment c.  As recognized by this Court with the enactment of a punitive damages provision of the Massachusetts' unfair competition law, "[t]he Massachusetts legislature has arguably shown . . . a particular interest in policing the behavior of businesses domiciled within Massachusetts."  *Value Ptnrs. S.A. v. Bain & Co*., 245 F. Supp. 2d 269, 277 (D. Mass. 2003) (internal quotations omitted).  The California legislature's interest in policing misconduct via the Consumer Legal Remedies Act is also evident from its provision for punitive damages, Civ. Code, § 1780(a)(4).  Similarly California courts have recognized that the primary reason that the California legislature enacted the restitution provision of California's false advertising and unfair competition statutes, Cal. Bus. & Prof. Code §§ 17203 and 17535, was "to deter future violations . . . and to foreclose retention by the violator of its ill-gotten gains."  *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1136 (2001).

- 5 -

In the interest of deterring misconduct within its own borders, California has extended its protection to "out-of-state parties when they are harmed by wrongful conduct occurring in California." *Wershba*, 91 Cal. App. 4th at 243 (citation, internal quotations omitted); *see also id*. at 242 (noting that "Business and Professions Code section 17500 expressly applies to claims by out-of-state class members deceived by representations 'disseminated from' the state of California."). California's interest in the enforcement of its laws is therefore not limited to protecting its own residents, but also includes "an interest in deterring fraudulent conduct by businesses headquartered within its borders and protecting consumers from fraudulent misrepresentations emanating from California." *J. P. Morgan & Co., Inc. v. Superior Court*, 113 Cal. App. 4th 195, 221 (2003) (quotation, citation omitted). As explained by the California Supreme Court:

> California . . . has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices. California business depends on a national investment market to support our industry. The California remedy for market manipulation helps [advance this interest].

*Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1063-64 (1999) (affirming certification of a national class action pursuant to California Corporations Code § 25500, providing damages for state securities violations); *see also Clothesrigger, Inc. v. GTE Corp*., 191 Cal. App. 3d 605, 615 (1987) (reversing trial court order denying certification of a national class action, alleging fraud, negligent misrepresentation and unfair business practices, recognizing that "California may have an important interest in applying its law to punish and deter the alleged wrongful conduct" emanating from the state of California).[6]

---

[6] *See also Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co.*, 894 A.2d 1136, 1153 (N.J. Super. App. Div. 2006) (affirming certification of a "nationwide class of third-party payors who paid for Vioxx, in accordance with the drug's placement on their formularies, between May 1999 and 2004" under New Jersey law because "New Jersey has a strong interest in preventing deception by its corporations"; and concluding that "the

**D.    No Conflict Exists With the Laws of Other States if California Law is Applied**

"Although testing for a false conflict is not expressly part of the Restatement (Second) approach, it is implicitly part of the general principles found in § 6(2)." *Pearce v. E.F. Hutton Group, Inc.*, 664 F. Supp. 1490, 1496 (D.D.C. 1987).  A false conflict of laws exists, where the application of the law of one state is either "compatible" with the law of another state or where there is only one "state [that] is interested in the application of its law." *Engine Specialties, Inc. v. Bombardier, Ltd.*, 605 F.2d 1, 19 (1st Cir. 1979).  If a false conflict exists, the Court applies the law of the state whose policy would be advanced by the application of its law.  *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995).

California laws are compatible with the most protective state unfair competition and false advertising laws, thus the no conflict exists with the interests of states whose laws are equally liberal.  Additionally, California is the only state that has an express interest in policing misconduct which occurred solely within its borders.

The suggestion that the laws of states with more limited rights of recovery apply to this lawsuit also presents a false conflict because "upon examination . . . [of] terms or underlying policies" of those laws it is clear that they are "not intended to apply to a situation such as the one in issue." *Pearce v. E.F. Hutton Group*, 664 F. Supp. at 1496 (quoting E. SCOLES & P. HAY, CONFLICT OF LAWS at 17).  The interest of these states is strictly local and consists of either (i) protecting their courts from the burden of hearing such claims or (ii) protecting their residents from being harassed by such claims.  *See* RESTATEMENT (2D) CONFLICT OF LAWS § 145, comment c (describing purposes of rules denying or limiting liability).  Their interest only arises when plaintiffs attempt to bring claims in their courts or against their residents:

---

judge correctly rejected the contention that fifty statewide classes or a multitude of individual actions on the same issue involving thousands of third-party payors would be a superior method of adjudicating this claim.").

> The interest of a state in a tort rule limiting damages . . . is to protect defendants from excessive financial burdens or exaggerated claims. . . . This interest to avoid the imposition of excessive financial burdens on (defendants) . . . is also primarily *local*; that is, a state by enacting a limitation on damages is seeking *to protect its residents* from the imposition of these excessive financial burdens. . . . Since it is the plaintiffs and not the defendants who are the Mexican residents in this case, Mexico has no interest in applying its limitation of damages - Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by non-Mexican defendants.

*Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1159 (N.D. Cal. 2003) (ellipses in original, emphasis added) (quoting *Hurtado v. Superior Court*, 11 Cal. 3d 574, 579, 522 P.2d 666 (1974)).[7]

For the purpose of a conflict of laws analysis, a corporation is a resident of the state in which it has its primary place of business, Restatement (2d) Conflict of Laws § 145, comment e, which in both Defendants' case is California. Thus no state other than California has a valid interest in limiting Class members' right of recovery, and that state has declined to impose such limitations in favor of preserving its marketplace from deceptive practices.

Given California's express interest in the enforcement of its laws and in the absence of a conflict of law with the Class members' states of residence, this Court should certify the Class under California state law. However, in the event that the Court determines that California law does not apply to the national Class, Plaintiffs will proceed based on the laws to the various States as set forth in the First Amended Complaint in Alternate Courts VII-VIII.[8]

---

[7] *See also Williams v. Rawlings Truck Line, Inc.*, 357 F.2d 581, 586 (D.C. Cir. 1965) ("[T]his case presents a classic 'false conflicts' situation. Adoption of the New York doctrine of estoppel will further the interests of New York, but will not interfere with any of the articulated policies of the District of Columbia. On the other hand, application of the District's rule allowing proof of sale would impinge upon New York's interests, without furthering any of the recognizable policies of the District. As a false conflicts case, our decision becomes simple: we apply the estoppel rule of New York, the only jurisdiction with an interest in having its law applied to the issue of defining ownership of the vehicle.").

[8] The precise grouping of states is a matter that is currently pending before the Court in *AWP*. Plaintiffs request that they be allowed to amend their complaint consistent with the Court's ruling in that related matter.

- 8 -

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court rule that California law applies to

the Class as a whole.


DATED:  July 17, 2006                     By **/s/ Steve W. Berman**
                                                 Steve W. Berman
        Sean R. Matt
        Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol (BBO #471770)
Edward Notargiacomo (BBO #567363)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003


Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 17, 2006.


/s/ Steve W. Berman_____
Steve W. Berman

001821-13  119420 V1