IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST, TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY, and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND,<br><br>        Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and MCKESSON CORPORATION, a Delaware corporation,<br><br>        Defendants. | Case No. 1:05-CV-11148-PBS |

**DEFENDANT MCKESSON CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii
INTRODUCTION .......................................................................................................................1
ARGUMENT ...............................................................................................................................2
I.    PLAINTIFFS CANNOT JUSTIFY THEIR SEVEN-MONTH REFUSAL TO PERMIT INSPECTION OF THE MDL DISCOVERY RECORD ..................................2
II.   PLAINTIFFS HAVE WITHDRAWN THEIR CLAIMS ON BEHALF OF CONSUMERS, MOOTING THAT PART OF THE MOTION TO COMPEL .................7
III.  DOCUMENTS CONCERNING SETTLEMENT NEGOTIATIONS WITH FDB ARE PROPER SUBJECTS OF DISCOVERY AND SHOULD BE PRODUCED ..........8
CONCLUSION .........................................................................................................................10

i

## TABLE OF AUTHORITIES

### CASES

*Allen County v. Reilly Indus.*,
    197 F.R.D. 352 (N.D. Ohio 2000) ............................................................................. 9

*Atchison Casting Corp. v. Marsh, Inc.*,
    216 F.R.D. 225 (D. Mass. 2003) .......................................................................... 8, 9

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*,
    No. 93 Civ. 5298 (LMN), 1996 U.S. Dist. LEXIS 1790 (S.D.N.Y. Feb. 20, 1996) ................. 9

*Bennett v. La Pere*,
    112 F.R.D. 136 (D.R.I. 1986) ............................................................................... 9

*Bottaro v. Hatton Assocs.*,
    96 F.R.D. 158 (E.D.N.Y. 1982) ............................................................................ 9

*Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*,
    201 F.R.D. 33 (D. Mass. 2001) ............................................................................. 6

*City of Wichita v. Aero Holdings, Inc.*,
    192 F.R.D. 300 (D. Kan. 2000) ............................................................................. 8

*Collister Alley Music v. Warner Bros. Records*,
    No. 96 Civ. 1762, 1997 U.S. Dist. LEXIS 5246 (S.D.N.Y. Apr. 22, 1997) ..................... 9, 10

*Cook v. Yellow Freight Sys., Inc.*,
    132 F.R.D. 548 (E.D. Cal. 1990) ........................................................................... 8

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ............................................................................ 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass. 2005) ............................................................................. 5

*In re Subpoena Duces Tecum*,
    439 F.3d 740 (D.C. Cir. 2006) ............................................................................. 9

*Newman & Assocs. v. J.K. Harris & Co., LLC*,
    No. 04 Civ. 9264 (RJH), 2005 U.S. Dist. LEXIS 38123 (S.D.N.Y. Dec. 15, 2005) ............... 9

*Republic Gear Co. v. Borg-Warner Corp.*,
    381 F.2d 551 ................................................................................................. 6

*SEC v. Downe*,
   No. 92 Civ. 4092 (PKL), 1994 U.S. Dist. LEXIS 708 (S.D.N.Y. Jan. 237, 1994) ..................... 9

*White v. Kenneth Warren & Son, Ltd.*,
   203 F.R.D. 364 (N.D. Ill. 2001) ........................................................................................ 8

**RULES**

Model Rules of Prof'l Conduct R. 1.6(a) & cmt. 3 (2002) ............................................... 6

**INTRODUCTION**

Plaintiffs admit that they have been reviewing documents produced in the related AWP MDL litigation for the last *six years* to cull materials supporting their claims. (Opp. 9.) Beginning last December, McKesson (which is not a party to the MDL) made the first of five written requests to review the MDL discovery record, so that McKesson could conduct its own search for evidence probative of *its defenses* to plaintiffs' claims. Plaintiffs flatly refused each time. Indeed, as recently as July 11 (the day before plaintiffs filed their opposition brief), plaintiffs' lead counsel refused again to allow McKesson to inspect the MDL record. (Schechter Decl. Ex. 9.)

Having no valid basis for blocking the legitimate discovery sought by McKesson, plaintiffs now change course 180º. After seven months of saying "no," plaintiffs' opposition brief states that plaintiffs "accept" McKesson's request to inspect the documents produced in the MDL. (Opp. 1.) Plaintiffs' opposition also does not oppose, or even address, McKesson's motion to compel production of the deposition transcripts of representatives of the drug manufacturer defendants in the MDL. And, after steadfastly refusing to confirm whether consumers are part of the class, and filing an opposition brief that misrepresents the scope and nature of McKesson's request for production of participant claim data, plaintiffs have now revised the proposed class definition to drop their claims on behalf of consumers.

McKesson has been severely prejudiced by plaintiffs' abusive discovery tactics, which should not be countenanced by this Court. McKesson has incurred the unnecessary expense of preparing a motion to compel discovery, which plaintiffs have chosen, at the eleventh hour, not to oppose. Worse, plaintiffs' failure to provide timely access to the MDL record has materially impaired McKesson's ability to prepare its defenses and respond to plaintiffs' motion for class certification. Recognizing as much, plaintiffs' opposition brief seeks to excuse their

1

intransigence by mischaracterizing the relevance of the MDL discovery record to this case, as well as McKesson's efforts to obtain access to that record. McKesson submits this reply to set the record straight, and to renew its request that plaintiffs should be precluded from using any documents from the MDL discovery record that plaintiffs refused to produce through the date this motion was filed. This reply also responds briefly to plaintiffs' arguments regarding the only item of discovery still in dispute — McKesson's request for production of documents relating to plaintiffs' settlement negotiations with co-defendant FDB.

## ARGUMENT

**I.    PLAINTIFFS CANNOT JUSTIFY THEIR SEVEN-MONTH REFUSAL TO PERMIT INSPECTION OF THE MDL DISCOVERY RECORD.**

After refusing to provide access to the MDL record for seven months, and capitulating only after McKesson filed this motion, plaintiffs falsely assert that the delay is McKesson's fault for attempting to "mire plaintiffs in a fishing expedition to search the entire AWP document production." (Opp. 4.) That claim is flatly contradicted by the parties' dealings in this case.

First of all, McKesson has never insisted that plaintiffs conduct a "scorched earth" search of the MDL record. To the contrary, McKesson has always offered to review the full MDL production itself, provided that plaintiffs provided access to that discovery. Plaintiffs' insinuation that McKesson offered for the first time in a footnote to its motion to compel to search the MDL record itself (Opp. 6 & n.1) should be rejected for what it is — an outright fabrication. McKesson first requested access to the MDL discovery record in a letter dated December 22, 2005.[1] McKesson sent follow-up letters renewing its access request on

---

[1] Schechter Decl. Ex. 1 at 3 (proposing that "discovery taken in the MDL case [be] provided to us from plaintiffs").

2

February 20, 2006,[2] March 16, 2006,[3] and March 27, 2006.[4] McKesson also served a formal Rule 34 request for inspection and copying of the MDL discovery record on March 10, 2006.[5] Plaintiffs rejected each of these requests. (Schechter Decl. ¶ 2.)

Second, plaintiffs argue from both sides of their mouths when they assert that the MDL discovery record is unlikely to contain evidence probative of McKesson's defenses. This Court need look no farther than plaintiffs' brief to confirm that McKesson's request for access to the MDL discovery record is reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs concede that they have conducted a "six-year review" of the MDL discovery record to gather evidence relevant to their claims in this case. (Opp. 9.) Plaintiffs would not have done so if the MDL record was irrelevant. To the contrary, the MDL consolidated class action complaint that framed the bulk of the MDL discovery alleges, among other things, that prescription drug manufacturers conspired with FDB and other publishers to raise AWPs for a long list of self-administered, brand name drugs that overlaps the drugs at issue in this case.[6] (Cheung Decl. Ex. 1 ¶¶ 1-21; 133-41, 168-78, 541, 595-603, 619-46 & App. A.) Exhaustive discovery was conducted in the MDL directed to the roles of retailers, PBMs, TPPs, and manufacturers in the

---

[2] *Id.* Ex. 2 at 2 (requesting that "plaintiffs' assent to McKesson's access to [MDL] discovery" "because, among other reasons, plaintiffs indicated that they intend to rely on that discovery in this case").

[3] *Id.* Ex. 5 at 1 ("renew[ing] the request we made a month ago that you provide us with access to the discovery produced in the MDL immediately" in order to "level the playing field").

[4] *Id.* Ex. 7 at 1 (requesting "once more" that plaintiffs "make available now the MDL discovery record for inspection and copying").

[5] *Id.* Ex. 4, RFP No. 1 (requesting that plaintiffs permit inspection and copying of "[a]ll documents concerning the MDL Litigation, including, without limitation, all documents produced pursuant to discovery requests," "deposition transcripts," and "deposition exhibits").

[6] Self-administered drugs are purchased by consumers from retailers, such as pharmacies, and taken by consumers without the aid of a physician (*e.g.,* pills). Physician-administered drugs, by contrast, are sold and administered to patients by physicians (*e.g.,* injectables). Plaintiffs do not dispute that the parties to the MDL undertook extensive discovery regarding self-administered drugs, including many of the same drugs at issue in this case.

3

claims process for self-administered drugs.  Plaintiffs admit to having mined that discovery record (in apparent violation of the MDL protective order) to craft the allegations in their complaint.  (Cheung Decl. Ex. 2)  But the catalogue of what plaintiffs assert to be "the full universe of pertinent documents" (Opp. 1) conspicuously *omits* documents produced in the MDL by many sources of potentially crucial evidence, including prescription drug manufacturers, retailers, TPPs (other than the named plaintiffs in this case), and third parties involved in the prescription drug reimbursement system.  (Opp. 5.)  Having selectively culled the MDL discovery record for information that plaintiffs contend supports their claims in this case, plaintiffs should not be heard to object to granting McKesson the same opportunity to identify evidence rebutting plaintiffs' claims and supporting its defenses.

Third, plaintiffs' opposition asserts that, rather than seeking the MDL record from plaintiffs, McKesson should have been subpoenaing the documents from their original sources.  (Opp. 5.)  Plaintiffs' "hot potato" analogy misses the mark.  Having compiled potentially relevant evidence in the related litigation (to which McKesson is not a party) from hundreds of sources, plaintiffs have an *obligation* to make that record available in this case.  As discussed in our opening brief, far from denying discovery, other courts have ordered "the sharing of discovery in cases with common fact questions" on their own motion.  (Mem. 9, citing *MCI Commc'ns Corp. v. Am Tel. & Tel. Co.*, No. 74 C 633, 1978 U.S. Dist. LEXIS 15062, *8 (N.D. Ill. Oct. 8, 1978)).

Fourth, plaintiffs assert that McKesson has already obtained the "motherlode of pertinent documents" from FDB.  (Opp. 3, 7.)  But FDB is not a party to the MDL, and does not have and has not provided McKesson any part of the MDL production (except what it produced in the MDL from its own files).  (Schechter Decl. ¶ 5.)  Access to FDB's files therefore is not a

4

substitute for access to the full MDL record.[7]  In particular, much of the conduct challenged in the MDL allegedly occurred at the *manufacturer* level.  As Judge Saris noted in her class MDL certification decision: "The system of private reimbursement by TPPs is complex and its characteristics vary" depending on any number of factors that are not limited to the actions of publishers like FDB.  *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 71 (D. Mass. 2005).[8]  Indeed, evidence of interactions between participants at *all levels* of the prescription drug reimbursement system, *specifically including manufacturers, TPPs, and retailers,* was critical to Judge Saris's ruling denying certification in the MDL of a self-administered drug class that is nearly identical to the class plaintiffs seek to certify here.  An obvious source of evidence of these interactions are files produced by the manufacturers, retailers, and other TPPs in the MDL — sources that plaintiffs have refused to produce.

Fifth, plaintiffs make the specious claim that McKesson already has access to the MDL discovery record because one of McKesson's attorneys represents another defendant, Purdue Pharma, in a case (not the MDL class case at issue here) that has been consolidated within the MDL.  (Opp. 5-6.)  Plaintiffs cite no authority for the proposition that a law firm's client has access to the files of every other client of the firm, nor could they.  The rules of professional conduct governing client confidences prohibit access by one client to another client's files.

---

[7] Even plaintiffs acknowledge that the prior production by FDB in the MDL was not exhaustive of the issues in this case.  On July 15, 2006, plaintiffs served document requests on FDB that mirror those served by McKesson.  (Schechter Decl. ¶ 7 & Ex. 10.)

[8] *See, e.g.*, *id.* at 69 ("The gravamen of the fraudulent scheme alleged in the [MDL class complaint] is that *defendant manufacturers send publishers their AWPs* (or their WACs), knowing that TPPs and government payors consider them indicators of prices to providers."); *id.* at 73-74 ("The contract between a PBM and a *pharmacy* network dictates the terms by which the PBM pays for drugs. . . .  In the brand-name context, a *pharmacy* contracts with a *manufacturer*, sometimes using a wholesaler as an intermediary (although this is less common for large pharmacy chains), for the purchase of drugs . . . ."); *id.* at 92 ("Plaintiffs' core contention is that each PBM enters into an agreement with *each manufacturer* to defraud TPPs and consumers.") (all emphasis added).

5

Model Rules of Prof'l Conduct R. 1.6(a) & comt. 3 (2002); *see also Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967. The named plaintiffs in this case have access to the MDL discovery record developed in the MDL class action because they are also *parties* to that case, *see, e.g., Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 38-39 (D. Mass. 2001), and not because they retained the same counsel in both cases, as they erroneously assert in their brief (Opp. 9 n.4). In any event, contrary to plaintiffs' unsupported assertion, Purdue has not participated in the MDL discovery and does not currently have access to the discovery record in the MDL class action. (Schechter Decl. ¶ 9.)[9]

Finally, plaintiffs assert they should not be precluded from using MDL documents not produced by them to date, now that they have belatedly agreed to make the full MDL record available for McKesson's review. This Court should not permit plaintiffs to profit from their abuse of the discovery process. Plaintiffs' opposition asserts that they have already produced what they characterize as the "*full universe of pertinent documents*" from the MDL discovery record. (*Id.* at 1; emphasis added.) The opposition goes on to define that universe as

> all of FDB's production, all of the wholesaler productions, all of the documents produced by PBMs, all of the documents used in expert testimony by any expert, all summary-judgment and class-certification materials, and access via the court reporter to all depositions and exhibits.

(Opp. 5.) Under these circumstances, it is entirely proper for this Court to order, as specifically requested in McKesson's moving papers (Motion at 2), that plaintiffs shall be precluded from using any documents from the MDL record that are responsive to McKesson's First Request for

---

[9] As plaintiffs should know, Purdue is not a party to the MDL class action that plaintiffs' counsel filed or to any of the MDL actions brought by state attorneys general. (Schechter Decl. ¶ 9.) Purdue is currently a defendant in only *one* proceeding in the MDL — the consolidated cases brought by various New York counties. (*Id.* ¶ 8.) The New York County cases are still at the pleading stage, with motions to dismiss pending. (*Id.*) Purdue's motion to dismiss a substantially similar complaint brought by Suffolk County was previously granted. (*Id.*)

6

Production of Documents that plaintiffs refused to produce through June 28, 2006 — the date that McKesson filed this motion.[10]

## II.  PLAINTIFFS HAVE WITHDRAWN THEIR CLAIMS ON BEHALF OF CONSUMERS, MOOTING THAT PART OF THE MOTION TO COMPEL.

Plaintiffs have led McKesson on a wild goose chase for participant claim data. Plaintiffs' original complaint alleged a class that included individual consumers who suffered damages due to alleged overpayments for prescription drugs. (Compl. ¶ 138.) Nevertheless, at the February 9, 2006 status conference, plaintiffs' counsel informed the Court that the alleged class included only third party payors. (Feb. 9, 2006 Hg. Tr. 13:18-14:1.) During the parties' May 24, 2006 discovery conference, McKesson asked plaintiffs to confirm whether or not the purported class included consumers. Plaintiffs' counsel responded that he didn't know and would check. (Cheung Decl. Ex. 5 at 6.) Plaintiffs' counsel ultimately took the position that they had not "decided if the class will include consumers." (*Id.* Ex. 8 at 3.)

On July 17, 2006 — *after* McKesson had moved to compel the production of documents concerning participants' payments, plaintiffs filed a motion for class certification that drops consumers from the purported class. For months, plaintiffs have been hiding the ball, leading McKesson to expend the resources to file this motion, only to learn that plaintiffs do not seek to represent a class of these consumers. Given that plaintiffs have withdrawn their consumer class allegations, McKesson likewise withdraws its request for documents concerning consumer payments. If plaintiffs reverse course and reassert a similar class of consumers, documents

---

[10] In a display of ultimate chutzpah, plaintiffs' counsel also assert that notwithstanding their unjustified refusal to make the MDL record available for McKesson's review, *McKesson* should not "be heard to complain in the months ahead that its document review requires delaying the case schedule in this litigation." (Opp. 7.) McKesson will work diligently to complete its review of the MDL discovery within the schedule established by the Court. But McKesson has been severely prejudiced by plaintiffs' abuse of the discovery process, and should not be prohibited from seeking a modification to the schedule in the future, should that become necessary.

7

concerning consumers' payments for subject drugs should be produced immediately.[11]

### III.  DOCUMENTS CONCERNING SETTLEMENT NEGOTIATIONS WITH FDB ARE PROPER SUBJECTS OF DISCOVERY AND SHOULD BE PRODUCED.

McKesson has moved to compel production of plaintiffs' settlement negotiations with FDB. Where, as here, the settlement negotiations involve a *party* and thus are likely to be probative of the issues of witness bias and collusion, discovery is proper under the general relevance standard established by Rule 26. *See, e.g.*, *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 367-68 (N.D. Ill. 2001). None of the arguments raised in plaintiffs' opposition justifies their refusal to provide this discovery.

First, plaintiffs argue that discovery of settlement-related documents is premature because the settlement with FDB is "incomplete." (Opp. 11-12). Plaintiffs have been engaged in settlement negotiations for the last year, and advised the Court in November 2005 and again in February 2006 that settlement was imminent. (Nov. 30, 2005 Hg. Tr. 32:5-33:24; Feb. 9, 2006 Hg. Tr. 3:22-5:7). Discovery of settlement-related documents is governed by the requirements of Rule 26 and does not require consummation of a settlement, especially where, as here, the settlement is likely to be concluded well before trial. The authorities cited by plaintiffs do not hold otherwise.[12] Nevertheless, if the Court decides that discovery of documents relating to

---

[11] If plaintiffs ultimately reassert the consumer class, plaintiffs' two bases for refusing to produce such documents are meritless. (Opp. 15.) First, plaintiffs argue that McKesson's request was overbroad, since it extended to 1991. Plaintiffs fail to advise the Court that during the parties' discovery conference, McKesson agreed to limit all of its requests to 1998 to the present — the same period covered by plaintiffs' requests to McKesson. (Cheung Decl. Ex. 5.) Second, McKesson has not sought any discovery from absent class members, as plaintiffs misleadingly claim. No discovery was ever propounded to absent class members. Rather, McKesson sought discovery of payment information from the *institutional plaintiffs* about both reimbursements and participant claims.

[12] *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990) rests on privacy and public policy grounds that are at odds with the liberal standards of Rule 26. *See City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300, 301-03 n.2 (D. Kan. 2000) (distinguishing *Cook* on this ground and ordering production of documents regarding settlement negotiations); *see also Atchison*

8

plaintiffs' settlement discussions with FDB is premature, the Court should order plaintiffs to preserve and immediately produce all settlement-related documents upon consummation of a settlement.

Second, plaintiffs argue that their settlement negotiation documents are protected from discovery by a so-called "settlement privilege." That assertion is incorrect. There is no "settlement privilege," as recognized in all circuits except the Sixth. *See, e.g.*, *In re Subpoena Duces Tecum*, 439 F.3d 740, 750 (D.C. Cir. 2006) (declining to recognize federal settlement privilege); *Newman & Assocs. v. J.K. Harris & Co., LLC*, No. 04 Civ. 9264 (RJH) (MHD), 2005 U.S. Dist. LEXIS 38123, *7 (S.D.N.Y. Dec. 15, 2005) (holding that "[t]here is no independent settlement privilege").

Finally, plaintiffs argue that a "heightened, particularized showing" is required to obtain production of settlement negotiation documents. Courts in this Circuit have "flatly reject[ed]" the heightened showing requirement. *Bennett v. La Pere*, 112 F.R.D. 136, 139 (D.R.I. 1986). *Bennett* specifically found that *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158 (E.D.N.Y. 1982), the first published case requiring such a heightened showing (and a case cited by the plaintiffs), "seems out of kilter with the spirit and philosophy of the Federal Rules." 112 F.R.D. at 139. *Bennett* is not alone in that view. Other courts likewise reject any requirement of a heightened showing for discovery of settlement-related documents. *See, e.g.*, *SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1994 U.S. Dist. LEXIS 708, *18-*19 (S.D.N.Y. Jan. 237, 1994); *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93 Civ. 5298 (LMN) (RLE), 1996 U.S. Dist. LEXIS 1790, *16-*17 (S.D.N.Y. Feb. 20, 1996); *Collister Alley Music v. Warner Bros. Records*,

---

*Casting Corp. v. Marsh, Inc.,* 216 F.R.D. 225, 226 (D. Mass. 2003) (information "contained in and related to confidential settlement agreements" is discoverable). *Allen County v. Reilly Indus.*, 197 F.R.D. 352 (N.D. Ohio 2000), the other case cited by the plaintiffs, simply adopts the reasoning of *Cook,* and is distinguishable for the same reasons.

9

No. 96 Civ. 1762, 1997 U.S. Dist. LEXIS 5246, *3 (S.D.N.Y. Apr. 22, 1997).

Moreover, all of the cases cited by plaintiffs to support their "heightened showing" argument are factually distinguishable.  None of them pertain to discovery in the context of a purported class action, like this one.  As plaintiffs acknowledge, any potential settlement between the class and FDB must be approved by the court.  (Opp. 12.)  As such, both the terms of the settlement and the underlying negotiations will be subject to judicial review and public scrutiny.  *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93-95 (D. Mass. 2005) (discussing course and conduct of settlement negotiations as part of Rule 23(e) inquiry).  Thus, the confidentiality concerns presented by the heightened showing cases are inapplicable.

## CONCLUSION

For all the foregoing reasons and for the reasons stated in our opening brief, this Court should grant McKesson's motion to compel.  Plaintiffs should be ordered to make available immediately for inspection and copying all document productions in the MDL not previously produced to McKesson and to provide McKesson with electronic copies of the depositions of the representatives of the manufacturer defendants in the MDL.  The Court should also enter an order precluding plaintiffs from using any documents from the MDL discovery record that plaintiffs refused to produce through June 28, 2006 — the date that McKesson filed this motion.

Dated:  July 17, 2006  

Joan M. Griffin, BBO # 549522  
Michael P. Twohig, BBO # 648079  
Burns & Levinson LLP  
125 Summer Street  
Boston, Massachusetts 02110  
tel. (617) 345-3000  
fax (617) 345-3299  

McKesson Corporation  
 /s/ Paul Flum_____  
Melvin R. Goldman (*pro hac vice*)  
Lori A. Schechter (*pro hac vice*)  
Paul Flum (*pro hac vice*)  
Tiffany Cheung (*pro hac vice*)  
Morrison & Foerster LLP  
425 Market Street  
San Francisco, CA 94105-2482  
tel. 415-268-7000  
fax 415-268-7522

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 17, 2006.

                                        /s/ Paul Flum
                                        Paul Flum

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND, PIRELLI ARMSTRONG
RETIREE MEDICAL BENEFITS TRUST,
TEAMSTERS HEALTH & WELFARE FUND
OF PHILADELPHIA AND VICINITY, and
PHILADELPHIA FEDERATION OF
TEACHERS HEALTH AND WELFARE FUND,

    Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri
corporation, and MCKESSON CORPORATION,
a Delaware corporation,

    Defendants.

Case No. 1:05-CV-11148-PBS

### [PROPOSED] ORDER GRANTING MCKESSON CORPORATION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

On June 28, 2006, defendant McKesson Corporation filed a motion to compel plaintiffs to produce documents responsive to its First Request for Production of Documents to Plaintiffs ("Document Requests"). McKesson's motion to compel seeks, among other things, an order requiring plaintiffs to produce for inspection and copying in this case certain documents produced during discovery in a related multidistrict action entitled *In re Pharmaceutical Average Wholesale Price Litigation*, MDL 1456, No. 01-12257-PBS (the "MDL"). McKesson's motion to compel also seeks an order requiring plaintiffs to produce (i) transcripts of the depositions of representatives of the manufacturer defendants in the MDL, and (ii) documents concerning settlement discussions between plaintiffs and defendant First DataBank, Inc. ("FDB") in this case.[1]

---

[1] McKesson also sought and plaintiffs opposed an order compelling production of documents concerning payments by participants in the plaintiff plans for the prescription drugs that are the subject of this action. Following the filing of their opposition to the motion to compel, plaintiffs filed a motion for class certification that dropped consumers from the definition of the purported class.
(Footnote continues on next page.)

1

McKesson has made the following showing in support of its motion:

- McKesson first requested that plaintiffs produce the MDL discovery record for inspection and copying on December 22, 2005, and renewed that request four times thereafter. Plaintiffs rejected McKesson's request each time.

- The issues raised in the MDL substantially overlap with the issues raised in this action.

- The MDL discovery record includes documents that are relevant to plaintiffs' claims and McKesson's defenses in this action.

- Production of the MDL discovery record for inspection and copying by McKesson imposes no undue burden on the plaintiffs.

- Evidence of settlement discussions between plaintiffs and FDB is not privileged and may be admissible to show the potential bias of FDB witnesses at trial.

Plaintiffs state in their opposition brief that they are now willing to produce the MDL discovery record for inspection and copying by McKesson. Plaintiffs do not oppose McKesson's motion for production of deposition transcripts. Plaintiffs do oppose McKesson's motion for production of documents concerning settlement negotiations with FDB.

Having considered the briefs and declarations submitted by the parties in support of and in opposition to the motion, good cause appearing therefore, the Court hereby ORDERS as follows:

---

(Footnote continued from previous page.)

McKesson thereafter advised the Court that it was withdrawing this portion of its motion as moot, without prejudice to its right to renew the motion should plaintiffs seek to certify a consumer class in the future.

1.     Upon reasonable notice by McKesson, plaintiffs shall make available for inspection by McKesson (and copying at McKesson's expense) all documents produced to plaintiffs in the MDL that plaintiffs have not previously produced to McKesson.

2.     Within seven days of the date of this Order, plaintiffs shall provide McKesson with a written catalogue listing by location of the MDL documents in their possession, the sources of these documents, the approximate volume of documents from each source at each location, and the available format of these documents.

3.     Within seven days of the date of this Order, plaintiffs shall produce to McKesson copies (in searchable electronic format where available) of the deposition transcripts and exhibits of the representatives of the manufacturer defendants in the MDL.

4.     Within ten days of the date of this Order, plaintiffs shall produce to McKesson or make available for copying all documents concerning settlement with FDB that are responsive to Request No. 17 of the Document Requests.

In addition to the foregoing, the Court finds that plaintiffs lacked substantial justification for their seven-month delay in agreeing to allow McKesson to inspect the MDL discovery record. Accordingly, IT IS FURTHER ORDERED, that plaintiffs may not use in this action any documents from the MDL discovery record that were not produced by plaintiffs to McKesson before June 28, 2006 — the date that McKesson filed its motion to compel.

Dated: _____, 2006

_____
Robert B. Collings
United States Magistrate Judge