UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST, TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY, and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND,<br><br>                         Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and MCKESSON CORPORATION, a Delaware corporation,<br><br>                         Defendants. | Case No. 1:05-CV-11148-PBS |

## REBUTTAL DECLARATION OF LORI SCHECHTER IN SUPPORT OF MCKESSON CORPORATION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

I, Lori A. Schechter, declare as follows:

1.      I am a partner at the law firm of Morrison & Foerster and one of the attorneys of record for McKesson Corporation ("McKesson") in this action.  I am familiar with the discovery and motion practice in this case.  I submit this rebuttal declaration to address various factual assertions raised in plaintiffs' opposition brief.

**McKesson's Requests for MDL Documents**

2.      On several occasions, McKesson's counsel has requested plaintiffs to make available to it the discovery produced in the related class action pending in *In re Pharmaceutical Average Wholesale Price Litigation*, MDL 1456, No. 01-12257-PBS (D. Mass.) ("MDL").  Plaintiffs have never complied.  Attached as exhibits to this declaration are true and correct copies of the following communications between McKesson's counsel and plaintiffs' counsel regarding McKesson's requests for the MDL record:

Exhibit 1              Letter from L. Schechter to S. Berman, dated December 22, 2005

| Exhibit 2 | Letter from L. Schechter to S. Berman, dated February 20, 2006 |
| Exhibit 3 | Letter from S. Berman to L. Schechter, dated March 2, 2006 |
| Exhibit 4 | Request No. 1 of McKesson's First Request for Production of Documents to Plaintiffs, dated March 10, 2006 |
| Exhibit 5 | Letter from M. Goldman to S. Berman, dated March 16, 2006 |
| Exhibit 6 | Letter from S. Berman to M. Goldman, dated March 17, 2006 |
| Exhibit 7 | Letter from L. Schechter to S. Berman dated March 27, 2006 |
| Exhibit 8 | Letter from S. Berman to L. Schechter dated March 28, 2006 |

**Communications Between the Parties After McKesson's Motion to Compel Was Filed**

3.      On July 5, 2006, plaintiffs' counsel sent a letter to me via e-mail, conditionally accepting McKesson's long-standing request that McKesson be permitted to review the MDL discovery record for discoverable material.  (Declaration of Steve Berman in Support of Plaintiffs' Memorandum in Opposition to Defendant McKesson's Motion to Compel Production of Documents, Ex. 3) ("Berman Decl.").  As indicated on my out-of-office return e-mail, I was out of the office on vacation when this letter arrived and did not return to the office until July 10, 2006.  I responded to plaintiffs' letter on July 11, 2006, accepting the opportunity to inspect the MDL record, but not under the conditions imposed by plaintiffs.  (Berman Decl. Ex. 4.)

4.      Through an exchange of follow-up e-mails, the parties were unable to agree on terms for McKesson's access to the MDL discovery record, and on July 11, the day before plaintiffs' opposition brief was filed, plaintiffs stated that their offer to allow inspection was "withdrawn." Attached as Exhibit 9 is a true and correct copy of the e-mail exchange between plaintiffs' counsel and McKesson's counsel on July 11, 2006 regarding these matters.

**Discovery Requests to Defendant First DataBank**

5.      Earlier this year, Defendant First DataBank ("FDB") informally provided McKesson with the documents it had previously produced in the MDL.

6.      On June 6, 2006, McKesson formally served FDB with document requests seeking additional documents, including documents covering the time period after FDB's MDL production.

7.    On July 12, 2006, plaintiffs served document requests on FDB that are nearly identical to the requests McKesson served on FDB.  Attached as Exhibit 10 is a true and correct copy of Plaintiffs' First Request for Documents to First DataBank, dated July 12, 2006.

**My Role as Counsel for Purdue Pharma L.P.**

8.    I am an attorney of record for Purdue Pharma L.P. ("Purdue"), a defendant to only one proceeding in the MDL, the Consolidated New York County case brought by various New York Counties and the City of New York.  This case is at the pleading stage, and motions to dismiss brought by Purdue and other defendants are currently pending.  This Court previously granted Purdue's motion to dismiss a substantially similar complaint brought by the New York County of Suffolk.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, No. 1456, Civ.A. 01-12257-PBS, 2004 WL 2387125, at **2-3 (D. Mass. Oct. 26, 2004) and Memorandum and Order at 3, April 8, 2005.

9.    Purdue is not a defendant in the MDL class action or in any of the MDL actions brought by state attorneys general.  Purdue has not participated in the MDL discovery that has occurred over the past four years and does not currently have access to the discovery produced in the MDL class action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of July, 2006, in San Francisco, California.


By:  /s/ Lori A. Schechter
Lori A. Schechter


**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 17, 2006.

/s/ Paul Flum
Paul Flum

# Exhibit 1

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

December 22, 2005

Writer's Direct Contact
415/268-6355
LSchechter@mofo.com

By Fax and Mail

Steve W. Berman
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:    *New England Carpenters Health Benefit Fund, et al. v. First DataBank, et al.,*
       No. 1:05-CV-11148-PBS

Dear Steve:

We have received plaintiffs' proposed case management order. As I mentioned in my voice mail message to you of December 20, I'd like to set a time to discuss scheduling issues with you. We should also discuss what process the parties will follow in raising these scheduling issues with the Court should our meet and confer efforts prove unsuccessful. Here are some of the scheduling issues we should discuss, and a proposed schedule for you to consider.

## A.    Potential First DataBank Settlement

At the hearing on November 30, you advised that plaintiffs are engaged in discussions with defendant First DataBank ("FDB") to settle on a class-wide basis, (Nov. 30, 2005, Hearing Tr. 34:2-4), and that we would know "in 30 days" whether a settlement has been reached. (Hearing Tr. 33:10-12.) Obviously, we need to know whether FDB is in our case in order to proceed in an efficient manner, avoiding duplication and unnecessary expense. For example, if FDB does not participate in discovery while it engages in settlement negotiations, most of the discovery will have to be retaken to afford FDB an opportunity to participate. Class discovery is a good example. Both McKesson and FDB will want to depose plaintiffs on class issues, but this cannot commence until it is determined whether FDB is in the case. Likewise, third party discovery necessary for the class motion (e.g., from PBMs, manufacturers, and other industry participants) should not go forward until it is determined whether FDB is in the case. And certainly the briefing on class certification, which plaintiffs' proposed schedule seeks to accomplish in short order, cannot go forward until FDB's status is resolved.

sf-2051413

MORRISON | FOERSTER

Steve W. Berman
December 22, 2005
Page Two

The Court at the November 30 hearing likewise recognized the obstacles to proceeding when we have this uncertainty. As the Court stated, "I can't do a scheduling conference" until it is determined "whichever parties are still left in the case." (Hearing Tr. 33:20-22.) Based upon your estimate, we should know whether a settlement has been reached by the end of December, and can then have a more meaningful discussion about scheduling.

**B.    Plaintiffs' New Lawsuit**

At the November 30 hearing, you also advised that plaintiffs intended "to file [another] case in California" and seek to transfer the California action to the District of Massachusetts as a related case. Hearing Tr. 37:19-38:6. As we understand it, no new case has been filed yet in California. It would be inefficient to move forward with this case before the California action is filed, and your request for transfer is made and granted. At this point we don't know when your new case will be filed, or if your new case will involve new plaintiffs or new claims or anything else that might affect the scheduling of this case. It seems prudent to set a date by which this new case will be filed so that scheduling in this case can take into account the import of the California case.

**C.    Proposed Schedule**

We need to resolve the FDB settlement issue and the new California lawsuit issue described in sections "A" and "B" above before setting a definitive schedule in this case. But we believe much can be done in the meantime. Here's our proposal.

1. <u>Answer</u>. McKesson shall file its answer on or before December 29, 2005.

2. <u>Resolution of FDB settlement and new lawsuit issues.</u> Plaintiffs shall have until January 16, 2006 to inform McKesson whether a class-wide settlement with FDB has been reached, and to file a new, related lawsuit in California. January 16 is also the date to which you recently gave FDB an extension for filing a response to the Complaint.

3. <u>Initial Disclosures</u>. Plaintiffs and McKesson shall have until February 17, 2006 to make their initial disclosures pursuant to Rule 26. To the extent FDB has not settled with plaintiffs, a date for FDB's initial disclosures can be set at the Scheduling Conference with the Court, described in paragraph 5 below.

4. <u>Motion for Class Certification</u>. Plaintiffs may file a motion for class certification at any time, but the briefing schedule and the cut-off date for class discovery should be set at the Scheduling Conference when we will all know whether FDB is in the case, and whether a California suit will be related in some way to this case. While the specifics of the briefing schedule and cut off dates cannot be determined now, we can say that we believe plaintiffs' proposed schedule suggests an insufficient time for class discovery. Given the length of time

MORRISON | FOERSTER

Steve W. Berman
December 22, 2005
Page Three

it took to prepare for the class motion in the MDL case, and the overlapping nature of the class issues in this case, we believe a longer time period for class discovery will be necessary than the few months plaintiffs have allotted. McKesson may be able to shorten the time period to the extent the discovery taken in the MDL case is provided to us from plaintiffs, and such discovery can obviate the need for McKesson to duplicate it in this case. We should therefore discuss the availability of that discovery to us in this case. At the time we address the briefing schedule, we will also want to build in a date for a surreply in addition to the opposition and reply contemplated in plaintiffs' proposal.

5. <u>Scheduling Conference.</u> The parties should meet and confer to determine a date in February for a Scheduling Conference with the Court. By that date, we will all know whether plaintiffs and FDB intend to submit a class-wide settlement to the class, or whether FDB will be proceeding with McKesson with the litigation. We will also know whether or not plaintiffs have filed a new lawsuit. At this Scheduling Conference, dates can be set for class discovery, and the briefing of a class motion, any proceedings necessary for a settlement between FDB and plaintiffs, or alternatively, dates by which FDB will respond to the complaint and make initial disclosures. To the extent FDB files a motion in response to the Complaint, we can set the motion for the same date as the Scheduling Conference.

6. <u>Process for Handling Any Disputes Regarding Scheduling.</u> To the extent we cannot agree on these scheduling issues, we can jointly request a conference with the Court. Based upon the conference date, we can set a date for the simultaneous filing of briefs in support of our respective schedule proposals, as well as simultaneous responses to each other's proposal.

Please let me know when you are available to discuss these issues.

Sincerely,

Lori A. Schechter

cc: Thomas M. Sobol
    Joan Griffin

sf-2051413

# Exhibit 2

**MORRISON** | **FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

February 20, 2006

Writer's Direct Contact
415/268-6355
LSchechter@mofo.com

By Fax and Mail

Steve W. Berman
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:   *New England Carpenters Health Benefit Fund, et al. v. First DataBank, et al.,*
      No. 1:05-CV-11148-PBS

Dear Steve:

We have received your February 10, 2006 letter regarding the preservation and production of electronic documents. We address the issues you raise, as well as others that must be resolved for discovery in this case.

First, with respect to the preservation of documents, McKesson is aware of its obligations in this regard and will fulfill them. We assume that plaintiffs will likewise comply with their obligations to preserve all potentially relevant information, including hard copy and electronic documents.

Second, we understand that you have requested McKesson to produce electronic documents in native format, with metadata preserved. Production in native format, however, carries a risk of potential spoliation of such documents, whether inadvertent or purposeful, as the content and metadata of native files can be easily modified. Furthermore, the difficulties associated with redacting and bates-labeling native files counsel against producing documents in native format. At this early stage, outside the context of served discovery requests, it is difficult to predict the appropriate electronic format in which all documents should be produced. McKesson's electronic information is maintained in a variety of formats, and the relevant documents may not be reasonably usable in the same format. We anticipate, however, that McKesson should be able to produce most of the relevant electronic documents in .tiff format and expect that plaintiffs will be able to produce in this format as well.

sf-2081816

MORRISON | FOERSTER

Steve W. Berman
February 20, 2006
Page Two

Third, as was discussed with the Court at the last status conference, McKesson must be given access to the discovery produced in *In re Pharmaceutical Average Wholesale Price Litigation*, MDL No. 1456, Civ. No. 01-CV-12257-PBS ("MDL litigation") because, among other reasons, plaintiffs indicated that they intend to rely on that discovery in this case. We therefore seek plaintiffs' assent to McKesson's access to this discovery, and plaintiffs' agreement to make such discovery available to us, in electronic format where possible, as expeditiously as possible. We would like to file an assented-to motion with the Court for such access within the next week. We will inform the Court that McKesson will agree to be bound by the terms of the protective order issued in the MDL litigation, subject to a provision permitting the use of the MDL discovery in this case. Given the expected volume of that discovery, we request that plaintiffs provide us with an index of the MDL materials so that we can efficiently assess the extensive discovery that has been available to plaintiffs and prioritize what we need. Because plaintiffs currently have full access to these materials and McKesson does not, depositions should not commence in our case until we have access to this discovery, unless, of course, we mutually agree upon exceptions.

Fourth, the Court did not adopt either side's proposal for the exchange of Initial Disclosures. We therefore propose that the parties serve their Rule 26 Initial Disclosures by March 15, 2006. Please confirm that plaintiffs will serve theirs by that date.

Finally, we should set a time to discuss a discovery plan that will ensure that both sides have the discovery they need in time for the class certification briefing schedule set by the Court. Please let me know when you are available to discuss these issues.

Sincerely,

Lori A. Schechter

cc: Thomas M. Sobol
    Joan Griffin

# Exhibit 3



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

March 2, 2006

**_Via E-mail_**

Ms. Lori Schechter
Morrison & Foerster
425 Market Street
San Francisco, CA  94105-2482

      Re:    _New England Carpenters Health Benefit Fund, et al.  v. First Databank, et al._, No. 1:05-cv-11148- PBS

Dear Lori:

      This is in response to your letter of February 20, 2006.  We will not address the first two paragraphs as we do not agree with your statements regarding native, format, _etc._

      As for point 3, we have no objection to your obtaining MDL discovery.  However, you should do so from defendants.  Much, if not most of the MDL discovery is not relevant to the issues in this case, that are much more narrowly focused both as to subject matter and time frame.  The MDL discovery goes back to 1991, covers some drugs not at issue in this case, or does not cover drugs at issue and most often pertains to different issues.  We do not see it as relevant except for information regarding the historical AWP-WAC spread and the 2001-2004 change in that practice.  However, if defendants will produce this to you, we have no objection.

      Addressing other points in your letter, plaintiffs do not have "an index" nor is there an "electronic database."  For the most part, electronic material was provided as it pertains to defendants' invoice databases from which ASPs can be calculated.  Again this is highly proprietary from the MDL defendants' perspective and largely irrelevant.  Again, we suggest you take this up with defendants if you want this material.

      As for third party discovery, much of it plaintiffs did not order or copy.  Again, we suggest you query defendants.

Ms. Lori Schechter
March 2, 2006
Page 2


Initial Disclosures on March 15, 2006 are fine.

We do not understand your suggestion that we meet regarding a "discovery schedule." We proposed one, you rejected any discussion of schedule until FDB settlement issues were resolved, the Court rejected your proposed approach and has set a date for class proceedings. Each side is free to pursue discovery. What else is there to discuss? If you have something specific in mind, please feel free to raise it.


Sincerely,


*[sent via electronic delivery]*

Steve W. Berman

cc:    Plaintiffs' Counsel


001821-13 98138 V1

# Exhibit 4

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND,<br><br>                    Plaintiffs,<br><br>        v.<br><br>FIRSTDATABANK, INC., a Missouri Corporation, and MCKESSON CORPORATION, a Delaware Corporation,<br><br>                    Defendants. | Civil Action No. 05-CV-11148-PBS |

## MCKESSON'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO

## PLAINTIFFS

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure, McKesson Corporation ("McKesson") hereby requests that all Plaintiffs named in the

Class Action Complaint produce the Documents and things described below for examination,

inspection, and copying within 30 days of service of these Requests, in accordance with the

definitions and instructions that follow.

## DEFINITIONS

The terms used in these requests, whether or not capitalized, are defined as follows:

1.    "All documents" means every document and every non-identical copy known to

you and every such document or writing which you can locate or discovery by reasonably

diligent efforts, including, but not limited to, documents now in the possession, custody, or

control of Plaintiffs, their merged or acquired predecessors, their former and present directors, officers, counsel, agents, employees, and/or persons acting on their behalf.

2.      "ASP" or "Average Sales Price" means the average of the net sales prices that manufacturers calculate to reflect the price at which they are able to sell their products, net of all forms of discounts, rebates, purchasing allowances, and any other form of economic consideration."

3.      "Auditor" means any entity not a Third Party Administrator, Pharmacy Benefit Manager, Benefit Consultant or attorney that any Fund has engaged or retained to review any aspect of medical or prescription drugs coverage and/or services that any Fund provides to Participants and/or Beneficiaries.

4.      "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by several pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book") and Medi-Span's Master Drug Database ("Medi-span").

5.      The terms "Beneficiary" and "Participant" mean a person for whom any Fund provides health insurance or prescription drug coverage, including policyholders and dependants.

6.      "Benefit Consultant" means any person and/or entity that provides information, counsel and/or advice to any Fund regarding any hospital, medical or prescription drug benefit and/or service provided by any Fund to any Participant or Beneficiary.

7.       "Communication" as defined in Local Rule 26.5(c)(1), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

8. "Complaint" means the Class Action Complaint filed in connection with Civil Action No. 05-CV-11148-PBS in the United States District Court for the District of Massachusetts.

9. "Concerning" as defined in Local Rule 26.5(c)(7), means referring to, describing, evidencing, or constituting. A request for all documents "concerning" a subject extends to each document making a statement about, mentioning, referring to, discussing, analyzing, describing, reflecting, evidencing, identifying, relating to, regarding, summarizing, dealing with, consisting of, constituting, or in any way pertaining to the subject, in whole or in part.

10. "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, scanning, or other means or process.

11. "Document" means Electronic Data and all written, typed, printed, photocopied, photographed, or recorded matter of any kind, including but not limited to all originals, masters, drafts, and non-identical copies of any labels, packaging, invoices, advertisements, catalogs, letters, envelopes, forms, affidavits, correspondence, telegraphs, telecopies, telefaxes, paper communications, resolutions, minutes of meetings, signed statements, tabulations, charts, memoranda, checks, appointment books, records, proposals, memoranda or other transcripts (by mechanical device, by longhand or shorthand recording, tape recording, or by electronic or any other means), computer-generated information, computer software, information stored or recorded by electronic means (including by a computer, server, hard drive, compact disk, floppy disk, diskette, tape, record, cassette, video, electronic mail, and any other electronic recording or data compilation from which information can be obtained or translated), interoffice

communications, interoffice communications, all summaries of oral communications (telephonic or otherwise), microfiche, microfilm, lists, bulletins, calendars, circulars, desk pads, opinions, ledgers, minutes, agreements, journals, diaries, contracts, invoices, balance sheets, telephone messages or other messages, magazines, pamphlets, articles, notices, newspapers, studies, summaries, worksheets, telexes, cables, any matters defined in Federal Rule of Evidence 1001, and all other graphic materials, writings, and instruments, however produced or reproduced. A document includes all documents appended thereto.

12.     "Electronic Data" means all information of all kinds maintained by electronic data processing systems and includes all non-identical copies of such information. Electronic Data includes, but is not limited to, electronic spreadsheets, databases with all records and fields and structural information (including Lotus Notes Discussion Databases and other online dialogs), charts, graphs and outlines, arrays of information and all other information used or produced by any software. Further, Electronic Data includes any computer program (whether proprietary or commercial), programming notes or instructions, or any other software program or utility needed to access or use such Electronic Data as they are accessed or used by Plaintiffs in the usual course of business.

13.     "Fund" or "Funds" means any and/or all of the plaintiff health and welfare funds and trusts identified in the Class Action Complaint, including, without limitation, New England Carpenters Health Benefits Fund; Pirelli Armstrong Retiree Benefits Trust; Teamsters Health & Welfare Fund of Philadelphia and Vicinity; and Philadelphia Federation of Teachers Health and Welfare Fund, and any of their past or present trustees, officials, officers, fiduciaries, third-party administrators, representatives, agents, assigns, attorneys, employees, divisions, departments,

affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

14.    "Government Investigation" refers to any ongoing or closed investigation or inquiry conducted by Congress, a committee or sub-committee of Congress (including but not limited to, the Consumer, Energy and/or Ways and Means Committees), the United States Department of Justice, the United States General Accounting Office, the Federal Trade Commission, the Office of the United States Inspector General, the United States Department of Health and Human Services, or any other federal, state, or local governmental entity, and includes but is not limited to instances in which you have been served by such entities with Civil Investigative Demands, subpoenas, document requests, or other requests.

15.    "Independent Practice Association" means any organized group of Providers whose members provide health care to any Participant and/or Beneficiary.

16.    "Mail Order Pharmacy" means an entity that resells drugs including, without limitation, Subject Drugs, by mail to any Participant and/or Beneficiary.

17.    "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, Subject Drugs.

18.    "MDL Litigation" means the litigation bearing the caption, *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, pending in the United States District Court for the District of Massachusetts.

19.    "Meeting" means any discussion between two or more persons either in person, telephonically, or by video conference.

20.     "P&T" or "Pharmaceutical and Therapeutic" means any entity and/or committee responsible for making decisions regarding drugs to be included and/or excluded from a formulary.

21.     The terms "Participant" and "Beneficiary" mean a person for whom any Fund provides health insurance or prescription drug coverage, including policyholders and dependants.

22.     "Person" as defined in Local Rule 26.5(c)(6), means any natural person or any business, legal, or governmental entity or association.

23.     "Pharmacy Benefit Manager" or "PBM" means any entity that provides administrative services relating to prescription drug benefits offered by any Fund to any Participant and/or Beneficiary.

24.     "PMBT" means plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust.

25.     "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

26.     "Private Payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to, health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit plans.

27.     "Provider" means any entity and/or physician that provides hospital or medical care or prescription drugs to any Participant or Beneficiary.

28.     "Publication" means a publication identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes the First DataBank, Red Book, Blue Book, and Medi-span.

29.    "Publisher" or "Publishers" refers to any pharmaceutical price publishing service, including but not limited to the First DataBank, Red Book, Blue Book and Medi-Span publishing services.

30.    "Rebates" include access rebates for the placement of products on a formulary, rebates based upon the sales volumes for drugs, and market share rebates for garnering higher market share than established targets, and include rebates received by you or any PBM with whom you have a contractual relationship.

31.    "Relevant Time Period" means the period from January 1, 1997 to the date of production, inclusive.

32.    "Retailer" means any entity, including retail pharmacies, that resells drugs to consumers.

33.    "Subject Drugs" shall refer to the drugs listed in Appendix A, attached to the Complaint.

34.    "These Requests" means McKesson's First Request for Production of Documents to Plaintiffs as set forth herein.

35.    "Third Party Administrator" means any entity that provides administrative services to any Fund relating to any medical benefit provided to any Participant and/or Beneficiary.

36.    "This Litigation" means the litigation pending in the United States District Court for the District of Massachusetts bearing the docket number 1:05-CV-11148-PBS.

37.    "WAC" or "Wholesale Acquisition Cost" means the actual selling price that a drug manufacturer charges to a wholesaler, before discounts.

38.    "Wholesaler" means any entity that purchases drugs from a Manufacturer and resells such drugs to any other entity.

39.    "You" or "Your" shall refer to any of the Funds, and any of their divisions, subsidiaries, trustees, officers, directors, managers, employees, or agents, including but not limited to, attorneys and accountants.

## INSTRUCTIONS

1.    Unless otherwise specifically stated, the requests below refer to the period from January 1, 1997, to the date of production, inclusive.

2.    These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the end of trial.

3.    The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

4.    "All" and "each" shall be construed as meaning either all or each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

5.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

6.    Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any term; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

7.    If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

8.    Provide the following information for each document withheld on the grounds of privilege:

    (a)    its date;

    (b)    its title;

    (c)    its author(s);

    (d)    its recipient(s);

    (e)    the specific privilege under which it is withheld;

    (f)    its general subject matter; and

    (g)    a description of it that you contend is adequate to support your contention that it is privileged.

9.      Any attachment to an allegedly privileged or immune Document shall be produced unless Plaintiff contends that the attachment is also privileged or immune.

10.     Notwithstanding the assertion of any objection to production, if a document contains non-objectionable or non-privileged matter, please produce that document, redacting that portion for which the objection is asserted, provided that the following information is provided:

(a)     its date;

(b)     its title;

(c)     its author(s);

(d)     its recipient(s);

(e)     the specific privilege under which it is withheld;

(f)     its general subject matter; and

(g)     a description of it that you contend is adequate to support your contention that it is privileged.

11.     To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state that part of each request to which you object and each ground for each objection. If there is any question as to the meaning of any part of these Requests, or an issue as to whether production of any Documents requested herein would impose an undue burden on any Plaintiff, counsel for McKesson should be contacted promptly to discuss these matters, and Plaintiffs should respond to the remainder of these Requests as written.

12.     Documents produced in response to these Requests should be provided in the same form in which they are kept in the usual course of business. This means that Electronic Data, as that term is defined herein, should be produced in electronic form.

13.     Plaintiffs may produce legible, complete, and exact copies of original documents responsive to these Requests, provided that the originals shall be made available for inspection upon request by counsel for any of the Defendants.

14.     These Requests cover all Documents in Plaintiffs' possession, custody, and control, both inside and outside the United States, including Documents in the possession of its officers, employees, agents, servants, representatives, trustees, attorneys, consultants, or other Persons directly or indirectly employed or retained by any Plaintiff, or anyone else acting on its behalf or otherwise subject to its control, and any merged, consolidated, or acquired predecessor or successor, subsidiary, division, or affiliate.

15.     If any Request cannot be responded to fully, Plaintiffs should provide as full a response as possible, state the reason for the inability to answer fully, and provide any information, knowledge, or belief that Plaintiffs have regarding the unanswered portion.

## DOCUMENTS TO BE PRODUCED

1.     All documents concerning the MDL Litigation, including, without limitation, all documents produced pursuant to discovery requests, deposition transcripts, deposition videos, deposition exhibits, non-public pleadings, and transcripts of hearings before a Judge or Magistrate.

2.     All indexes that tabulate or list all or any part of the items listed in Request No. 1.

3.     All communications between or among counsel regarding discovery in the MDL Litigation.

4. All documents concerning the billing for and payment for drugs referred to in paragraphs 19, 20, 21, and 22 of the Complaint.

5. All documents concerning each Plaintiff's reimbursement for Subject Drugs "on the basis of the published AWPs (minus a fixed percentage)" where the AWPs are published by First DataBank, referred to in paragraphs 19, 20, 21, and 22 of the Complaint.

6. All contracts between each plaintiff and any PBM concerning administration of plaintiff's drug program for its members, including all contracts between PMBT and ACS/Caremark or any other PBM, referred to in Paragraph 20 of the Complaint.

7. For the period beginning January 1, 1991, all documents that refer to a manufacturer (or division thereof) as a "20% markup" company or a "25% markup" company as described in Paragraph 39 of the Complaint.

8. All documents concerning brand name drug reimbursement for retail pharmacy ingredient costs contained in "contracts between PBMs and plan sponsors, and PBMs [and] pharmacies" referred to in Paragraph 57 of the Complaint.

9. All documents containing data from First DataBank or any other publisher concerning the Subject Drugs, AWP or manufacturer's suggested prices.

10. Each of the "thousands of pharmaceutical contracts . . . based on AWP minus a specified discount" referred to in Paragraph 63 of the Complaint.

11. For the period beginning January 1, 1991, all documents concerning the accuracy of published AWPs.

12. For the period beginning January 1, 1991, all documents concerning the publication of AWPs by Red Book, Blue Book, Medi-Span, or any other publisher (other than First DataBank).

13.     All documents concerning the merger of First DataBank and Medi-Span referred to in the Complaint.

14.     All documents concerning any representation or other statement by First DataBank concerning its business, including its publication of AWPs, information contained in its field information, how it derived information for its database, how it determined markups, its research of wholesalers, and its conduct of surveys.

15.     All documents from which the charts and graphics in Paragraphs 119, 120, 121, and 126 of the Complaint were prepared.

16.     For the period beginning January 1, 1991, all documents concerning complaints or other reactions by manufacturers to increases in AWPs published by First DataBank.

17.     All documents concerning any potential, prospective, or actual settlement between any Plaintiffs and First DataBank, including all communications between Plaintiffs' counsel and First DataBank or its counsel.

18.     All documents upon which your expert relied for each affidavit or declaration used to support certification of a class or classes in the MDL Litigation.

19.     All documents concerning proposed or actual changes made or to be made in reimbursement rates to retail pharmacies for any Subject Drugs, including when the AWP for such drugs was increased in First DataBank's publication.

20.     All documents concerning reimbursement of Plaintiffs by third parties for prescription drug expenditures made on behalf of Participants or Beneficiaries.

21.     All documents concerning the Medicare Modernization Act of 2003, or any like proposed federal legislation.

22.    All documents concerning discontinuation of AWP as a basis or means for reimbursement.

23.    All documents concerning damages you claim were sustained by You because of the alleged "5% scheme."

24.    All documents comparing AWPs published by First DataBank with AWPs published by other Publishers.

25.    All documents comparing AWPs published by First DataBank to manufacturer suggested wholesale prices.

26.    All documents concerning price offsets, discounts, rebates, or off-invoice incentive payments made by drug manufacturers to PBMs.

27.    For the period beginning January 1, 1991, all documents that describe the hospital, medical, or prescription drug benefits that You offer to Participants or Beneficiaries, including, without limitation, plan documents, summary plan descriptions, adoption agreements, and/or all amendments thereto, summaries of material modifications, riders, addenda, and co-payment schedules.

28.    For the period beginning January 1, 1991, all documents concerning consideration of potential changes to hospital, medical, or prescription drug benefits offered to Your Participants or Beneficiaries.

29.    For the period beginning January 1, 1991, all minutes or other summaries of any meetings or conferences held by You, Your trustees, management or directors or Your Pharmaceutical and Therapeutic Committee concerning drug benefits under either hospital/medical or prescription drug coverage You provide Beneficiaries or Participants.

30.      For the period beginning January 1, 1991, all documents concerning Your

contractual relationships with Third Party Administrators, PBMs, Mail Order Pharmacies,

Benefit Consultants, Auditors, Wholesalers, Manufacturers, Independent Practice Associations

or Providers, including, without limitation, master agreements, addenda, schedules, attachments,

requests for proposal, responses to requests for proposal, correspondence, all contracts between

You and PBMs Caremark, Medco, Express Scripts, and Advance PCS.

31.      For the period beginning January 1, 1991, all documents concerning the actual or

potential negotiation, renewal or replacement of contractual relationships with Third Party

Administrators, PBMs, Mail Order Pharmacies, Benefit Consultants, Auditors, Manufacturers or

Providers, including documents sufficient to identify all persons involved in such negotiation.

32.      For the period beginning January 1, 1991, all documents concerning AWPs for

drugs, including without limitation, all documents concerning the accuracy of published AWPs.

33.      For the period beginning January 1, 1991, all documents concerning any

definition or meaning of AWP or its use in the pharmaceutical marketplace.

34.      For the period beginning January 1, 1991, all documents concerning AWP, AMP,

WAC, ASP or any other drug pricing or reimbursement information, including without

limitation, documents concerning the WAC-AWP markup.

35.      For the period beginning January 1, 1991, all documents concerning Your

decision to rely on, reliance on, or use of drug pricing information published by any Publisher.

36.      For the period beginning January 1, 1991, all documents created by or received

from any Publisher, including but not limited to drug pricing information, and communications,

memoranda, contracts or agreements between You and any Publisher.

37.    For the period beginning January 1, 1991, all documents provided to, created by or received from CMS, United States Department of Health and Human Services, the Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal institution, agency, department, or office regarding the pricing of prescription drugs.

38.    For the period beginning January 1, 1991, all documents concerning any internal or external, formal or informal, assessments, studies, analyses, reviews, or audits regarding drug pricing or reimbursement amounts.

39.    For the period beginning January 1, 1991, all documents concerning the price of or reimbursement rate for any Subject Drug.

40.    For the period beginning January 1, 1991, all communications between You and any Third Party Administrator, Pharmaceutical Benefit Manager, Benefit Consultant, Auditor, Retailer, Mail Order Pharmacy, Independent Practice Association, Manufacturer, and/or Provider concerning Subject Drugs, including without limitation, communications concerning WAC-AWP spreads or ASP to AWP spreads.

41.    For the period beginning January 1, 1991, all documents concerning any Participant's or Beneficiary's payment for Subject Drugs, including, without limitation, any co-payments made by any Participant or Beneficiary, and any alleged damages arising from such purchases.

42.    For the period beginning January 1, 1991, all documents concerning any requests by You for information concerning the pricing or reimbursement for Subject Drugs.

43.     All documents concerning any relationships with insurers insofar as they cover Subject Drugs, including, without limitation, base medical contracts, contracts for facilities or contracts with Providers.

44.     All documents concerning any subrogation rights that You may have relating to damages incurred by any of Your Participants or Beneficiaries.

45.     Your annual reports, state and federal tax filings, documents filed with federal or state agencies, articles of incorporation, by-laws, and charters.

46.     Documents sufficient to identify all of your employees and to show Your organizational structure during the time period for which You claim damages in the Complaint.

47.     All communications with witnesses or potential witnesses in connection with this case, including, without limitation, expert witnesses and fact witnesses.

48.     All documents that support any claim asserted in the Complaint, as well as any other documents that You plan to offer in evidence in this case, to the extent not otherwise produced.

49.     All documents concerning the computation of damages for the claims set forth in the Complaint.

50.     All documents concerning any alleged misrepresentation or omission by any of the Defendants.

51.     All agreements, understandings, and fee or cost arrangements with Your counsel and/or with any other plaintiff or third party concerning this case.

52.     All documents concerning communications to First DataBank or any Publisher regarding AWP, the WAC-AWP spread, the impact of changes in the WAC-AWP spread on

WAC, or the impact of changes in the WAC-AWP spread on manufacturer or wholesaler discount schedules.

53.    All documents from manufacturers concerning the WAC-AWP spread, the impact of changes in the WAC-AWP spread on WAC, or the impact of changes in the WAC-AWP spread on manufacturer or wholesaler discount schedules.

54.    All documents concerning First DataBank or its pricing or publication services.

55.    All documents concerning the impacts of higher or lower WAC-AWP spreads on pharmacy reimbursement.

56.    All documents concerning whether increasing or decreasing the WAC-AWP spread would affect retail pharmacies.

57.    All documents concerning AWP, including but not limited to: (i) documents concerning Your use of AWP as a pricing term or pricing benchmark in any of Your contracts; (ii) documents discussing how You or others define AWP; (iii) documents discussing how AWP has been, or is currently, calculated; (iv) documents identifying the source that You use for determining AWPs; (v) all communications between you and a plaintiff concerning AWP; and (vii) all communications between You and a PBM concerning AWP.

58.    All documents concerning any pricing survey conducted by any Publication.

59.    All documents concerning each Plaintiff's pricing database, the database itself, and any codes to that database.

60.    Documents reflecting any communications with any trade group, lobbying organization, or trade association, regarding AWPs, the spread between AWP and WAC, and profit margins of pharmacies.

61.    All documents produced by You, whether voluntarily or involuntarily, in any Governmental Investigation or inquiry concerning the use of AWP.

62.    All documents concerning any legal proceeding (by country, court, caption, case number, etc.) including, but not limited to, court hearings, legislative hearings, mediations or arbitrations, in which You were a party, regarding the use of AWP.

63.    All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding the use of AWP.

64.    All current and historical organizational charts for all of Your departments.

65.    All documents sufficient to identify Your policy or practice of document retention, disposal, or preservation for each year during the Relevant Time Period.


Dated: March **10**, 2006

                                        By: _____
                                              Melvin R. Goldman

JOAN M. GRIFFIN                         MELVIN R. GOLDMAN
MICHAEL P. TWOHIG                       LORI A. SCHECHTER
PERKINS, SMITH & COHEN LLP              TIFFANY CHEUNG
One Beacon Street, 30th Floor           MORRISON & FOERSTER LLP
Boston, MA 02108                        425 Market Street
Telephone: 617.854.4000                 San Francisco, California  94105-2482
Facsimile: 617.854.4040                 Telephone: 415.268.7000
                                        Facsimile: 415.268.7522

                                        *Attorneys for Defendant*
                                        *MCKESSON CORPORATION*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party on March 10, 2006 by e-mail and Overnight Mail.

_____
Tiffany Cheung

# Exhibit 5

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

March 16, 2006

Writer's Direct Contact
415/268-7311

By E-Mail and U.S. Mail

Steve W. Berman
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:    *New England Carpenters Health Benefit Fund, et al. v. First DataBank, et al.*,
       No. 1:05-CV-11148-PBS

Dear Steve:

In light of the initial disclosures we received from plaintiffs yesterday, we are perplexed as to how plaintiffs can use discovery produced in the MDL to support their claims, in violation of the MDL protective order, yet cannot provide us with these documents. We therefore renew the request we made a month ago that you provide us with access to the discovery produced in the MDL immediately.

You have had access to and use of MDL documents for several years while we have yet to be provided these documents. It is time to level the playing field. To the extent you believe that the MDL protective order precludes this production, please immediately notify us of your intent to join in the motion for modification of the MDL protective order that we sent you last week.

Sincerely,

Melvin R. Goldman

cc: Joan Griffin

sf-2097532

# Exhibit 6



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

March 17, 2006

*Via E-Mail and U.S. Mail*

Mr. Melvin R. Goldman
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

Re:  New England Carpenters Health Benefit Fund, *et al.* v. First DataBank, *et al.*,
No. 1:05-CV-11148-PBS

Dear Mel:

We in turn are perplexed by your letter of March 3, 2006.  It completely ignores our telephone conversation in which plaintiffs agreed to allow access, subject to the manufacturers weighing in, to relevant MDL documents.  We asked you to identify the types of documents you wanted but indicated that wholesale access was unwarranted in our view.  For example, why would McKesson need access to 1991 documents, materials a decade before this case arises.  Why would McKesson need the manufacturers AWP marketing materials in same time frame?  This list of irrelevant documents could fill pages.

Again send us a properly tailored list.  Our initial disclosures identify a narrow group of documents we agree are relevant and should be produced.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

SWB:dld
cc:    FDB Counsel

# Exhibit 7

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

March 27, 2006

Writer's Direct Contact
415.268.6355
LSchechter@mofo.com

Via E-Mail and Mail

Steve W. Berman
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:    *New England Carpenters Health Benefit Fund, et al. v. First DataBank, et al.*
       No. 1:05-CV-11148-PBS

Dear Steve:

The purpose of this letter is to attempt once more to reach agreement with you over our access to MDL discovery.

To start with, we have never been clear why there is a problem in producing these materials for our inspection. My understanding is that there is no particular burden in doing so since much of the documents are stored electronically. Moreover, if there is a dollar cost associated with production we'd like to know since we likely could reach agreement over our paying those associated costs.

You make a good point that not all these materials may be relevant or lead to relevant discovery in our case. Rest assured, we have no plan to burden either of us with extraneous or non-relevant information. As things stand now, you are the one who would decide for us what is discoverable and only turn over those materials. Worse yet, you would be free to use in our case any of the MDL discovery as you see fit. I hope you will understand why that is not acceptable.

Given the deadline for completing class certification discovery, etc., we would like to propose two alternatives to break the current impasse over production.

Alternative 1.

You would make available now the MDL discovery for our inspection and copying. We will designate [copy] those portions which we deem discoverable. To the extent you disagree with our selection, that disagreement could be resolved through meet and confers and/or the

sf-2103308

MORRISON | FOERSTER

Steve W. Berman
March 27, 2006
Page Two

Magistrate Judge. You would also designate materials which you believe are discoverable subject to our objections, if any. The combination of your and our designation (as approved by the Court, if necessary,) would constitute what can be used as the MDL discovery in our case.

Alternative 2.

Obviously, Alternative 1 is what makes sense. But if you are unwilling, we ask that you promptly make available to us from the MDL discovery all information and materials (1) identified in plaintiffs' Initial Disclosures; (2) submitted to the Court or relied upon by any party respecting class certification in MDL, including all expert reports, all documents and deposition transcripts relied upon by the experts, all deposition transcripts of the experts and any other material supporting any party's briefing on class certification; (3) which you believe is relevant or may lead to relevant information in our case. All this would be without prejudice to our right to proceed to compel production pursuant to our current Document Request.

Please provide us with your response shortly.

Protective Order in Our Case

Finally, there is currently no protective order in our case governing the production and use of material that the parties consider confidential. McKesson is amenable to submitting a proposed Protective Order to the Court which is identical to the Order currently in existence in the MDL case. If you agree, we will create it and forward it to you for review before we submit it to the Court.

Sincerely yours,

Lori A. Schechter

sf-2103308

# Exhibit 8



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

March 28, 2006

**_Via E-Mail and U.S. Mail_**

Ms. Lori A. Schechter
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

Re:    *New England Carpenters Health Benefit Fund, et al. v. First Databank,*
       *et al.,* No. 1:05-cv-11148- PBS

Dear Lori:

This is in response to your letter of March 27, 2006.

Once again you return to McKesson's demand that we make available all MDL discovery. For a variety of reasons this is not practical. First, despite your statements, most of the material we received is in hard copy not in electronic format. That hard copy was cut into sub sets (according to the MDL issues) and there is no single place from which we can reproduce it. Second, much of it is irrelevant. Third, we are not the producing party and those parties may have legitimate interests in not turning over material they deem to be confidential, hence you should obtain this material from them. For example, manufacturers might object to marketing plans that have no bearing on this case being produced.

Your statement "we are the ones" in a position to decide what is discoverable is not accurate. You have the complaint and from it you can subpoena any party you deem fit to obtain discovery. Your client as a witness and party has knowledge of what is relevant. The notion that discovery can be fair only by obtaining millions of documents from defendants and over 100 third parties is not accurate.

We disclosed materials in our initial disclosures and we intend, subject to protective order issues, to disclose those or list of materials is far more fulsome than McKesson's. Let's not forget McKesson is the insider here with complete access to the facts of this case or opposed to the MDL. When are we going to review McKesson documents?

Ms. Lori A. Schechter
March 28, 2006
Page 2


As for the specifics of Alternate 2 all of that material is identified in the initial disclosures except class certification materials, some of which is not relevant and is based on financial or invoice information that is material the manufacturer might not want revealed. If we got over that issue then we see no problem.

Send us a draft protective order and we will respond.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP


Steve W. Berman

cc:    Plaintiffs' Counsel

# Exhibit 9

-----Original Message-----
**From:** Steve Berman [mailto:Steve@hbsslaw.com]
**Sent:** Tuesday, July 11, 2006 8:51 PM
**To:** Schechter, Lori A.; Carrie Flexer
**Cc:** Erin Flory
**Subject:** RE: McKesson letter

given your refusal to offer a reasonable extension, caused by your own delay in responding, without a condition you are not entitled to, our offer is withdrawn and we will;I oppose any access to the mdl record which is irrelevant

**From:** Schechter, Lori A. [mailto:LSchechter@mofo.com]
**Sent:** Tuesday, July 11, 2006 6:57 PM
**To:** Carrie Flexer
**Cc:** Steve Berman; Erin Flory
**Subject:** RE: McKesson letter

Carrie,
Our extension was contingent upon no opposition to a reply brief, which of course will not be necessary if we have fruitful further discussions. We look forward to receiving plaintiffs' response to our proposal in our letter of today.
Lori
-----Original Message-----
**From:** Carrie Flexer [mailto:Carrie@hbsslaw.com]
**Sent:** Tuesday, July 11, 2006 5:53 PM
**To:** Schechter, Lori A.
**Cc:** Steve Berman; Erin Flory
**Subject:** RE: McKesson letter

Lori,

At Steve's instruction, the extension is only to continue discussions. We reserve our rights to oppose your request for a reply brief.

Carrie Flexer
Paralegal to Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 5th Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

**From:** Schechter, Lori A. [mailto:LSchechter@mofo.com]
**Sent:** Tuesday, July 11, 2006 5:47 PM
**To:** Carrie Flexer
**Cc:** Steve Berman; Erin Flory

**Subject:** RE: McKesson letter

Carrie,
I was on vacation when Steve's letter of July 5 arrived, as was my colleague Tiffany Cheung.

We have no objection to an extension until Monday, July 17, for your opposition to the motion to compel so long as you do not oppose our request to file a reply brief one week after the filing of the opposition.

Regards,
Lori


Lori A. Schechter
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
(415) 268-6355: telephone
(415) 268-7522: fax

-----Original Message-----
**From:** Carrie Flexer [mailto:Carrie@hbsslaw.com]
**Sent:** Tuesday, July 11, 2006 5:39 PM
**To:** Schechter, Lori A.
**Cc:** Steve Berman; Erin Flory
**Subject:** FW: McKesson letter
**Importance:** High

Attached please find a letter from Steve W. Berman.

<<Schechter letter.pdf>>

Carrie Flexer
Paralegal to Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 5th Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

=====================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

=====================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

=====================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

# Exhibit 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

## TO FIRST DATABANK, INC.

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure, Plaintiffs hereby request that First DataBank, Inc. ("FDB") produce the Documents

and things described below for examination, inspection, and copying within 30 days of service of

these Requests, in accordance with the definitions and instructions that follow.

### DEFINITIONS

The terms used in these requests, whether or not capitalized, are defined as follows:

1.     "All documents" means every document and every non-identical copy known to

you and every such document or writing which you can locate or discover by reasonably diligent

efforts, including, but not limited to, documents now in the possession, custody, or control of

- 1 -



Plaintiffs, their merged or acquired predecessors, their former and present directors, officers, counsel, agents, employees, and/or persons acting on their behalf.

2.      "Alternative Benchmark Price" refers to the price for drugs published by FDB as an alternative benchmark to Blue Book AWP. According to First DataBank, it calculates the Alternative Benchmark Price by applying standardized mark-ups to the manufacturer's WAC or Direct Price.

3.      "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by several pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book") and Medi-Span's Master Drug Database ("Medi-span"). The term "AWP" includes the "Blue Book AWP" published by First DataBank, as defined below.

4.      "Benefit Consultant" means any person and/or entity that provides information, counsel and/or advice to any Fund regarding any hospital, medical or prescription drug benefit and/or service provided by any Fund to any Participant or Beneficiary.

5.      "Blue Book AWP" means the AWP published by First DataBank. According to First DataBank, the "Blue Book AWP" is intended to represent an average of wholesalers' catalog or list prices for a drug product to their customers, which First DataBank formerly determined through a survey of full-line national wholesalers.

6.      "Communication" as defined in Local Rule 26.5(c)(1), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

7.      "Concerning" as defined in Local Rule 26.5(c)(7), means referring to, describing, evidencing, or constituting. A request for all documents "concerning" a subject extends to each

document making a statement about, mentioning, referring to, discussing, analyzing, describing, reflecting, evidencing, identifying, relating to, regarding, summarizing, dealing with, consisting of, constituting, or in any way pertaining to the subject, in whole or in part.

8.      "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, scanning, or other means or process.

9.      "Document" means Electronic Data and all written, typed, printed, photocopied, photographed, or recorded matter of any kind, including but not limited to all originals, masters, drafts, and non-identical copies of any labels, packaging, invoices, advertisements, catalogs, letters, envelopes, forms, affidavits, correspondence, telegraphs, telecopies, telefaxes, paper communications, resolutions, minutes of meetings, signed statements, tabulations, charts, memoranda, checks, appointment books, records, proposals, memoranda or other transcripts (by mechanical device, by longhand or shorthand recording, tape recording, or by electronic or any other means), computer-generated information, computer software, information stored or recorded by electronic means (including by a computer, server, hard drive, compact disk, floppy disk, diskette, tape, record, cassette, video, electronic mail, and any other electronic recording or data compilation from which information can be obtained or translated), interoffice communications, interoffice communications, all summaries of oral communications (telephonic or otherwise), microfiche, microfilm, lists, bulletins, calendars, circulars, desk pads, opinions, ledgers, minutes, agreements, journals, diaries, contracts, invoices, balance sheets, telephone messages or other messages, magazines, pamphlets, articles, notices, newspapers, studies, summaries, worksheets, telexes, cables, any matters defined in Federal Rule of Evidence 1001,

and all other graphic materials, writings, and instruments, however produced or reproduced. A document includes all documents appended thereto.

10.    "Electronic Data" means all information of all kinds maintained by electronic data processing systems and includes all non-identical copies of such information. Electronic Data includes, but is not limited to, electronic spreadsheets, databases with all records and fields and structural information (including Lotus Notes Discussion Databases and other online dialogs), charts, graphs and outlines, arrays of information and all other information used or produced by any software. Further, Electronic Data includes any computer program (whether proprietary or commercial), programming notes or instructions, or any other software program or utility needed to access or use such Electronic Data as they are accessed or used by First Databank in the usual course of business.

11.    "Government Investigation" refers to any ongoing or closed investigation or inquiry conducted by Congress, a committee or sub-committee of Congress (including but not limited to, the Consumer, Energy and/or Ways and Means Committees), the United States Department of Justice, the United States General Accounting Office, the Federal Trade Commission, the Office of the United States Inspector General, the United States Department of Health and Human Services, or any other federal, state, or local governmental entity, and includes but is not limited to instances in which you have been served by such entities with Civil Investigative Demands, subpoenas, document requests, or other requests.

12.    "Mail Order Pharmacy" means an entity that resells drugs including, without limitation, Subject Drugs, by mail to any Participant and/or Beneficiary.

13.    "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, Subject Drugs.

- 4 -

14.    "Person" as defined in Local Rule 26.5(c)(6), means any natural person or any business, legal, or governmental entity or association.

15.    "Pharmacy Benefit Manager" or "PBM" means any entity that provides administrative services relating to prescription drug benefits offered by any Fund to any Participant and/or Beneficiary.

16.    "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

17.    "Private Payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to, health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit plans.

18.    "Provider" means any entity and/or physician that provides hospital or medical care or prescription drugs to any Participant or Beneficiary.

19.    "Publication" means a publication identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes the First DataBank, Red Book, Blue Book, and Medi-span.

20.    "Publisher" or "Publishers" refers to any pharmaceutical price publishing service, including but not limited to the First DataBank, Red Book, Blue Book and Medi-Span publishing services.

21.    "Relevant Time Period" means the period from January 1, 1997 to the date of production, inclusive.

22.    "Retailer" means any entity, including retail pharmacies, that resells drugs to consumers.

23.    "Subject Drugs" shall refer to the drugs listed in Appendix A, attached to the Complaint.

24.    "SWP" or "Suggested Wholesale Price" means the manufacturer's suggested price for a drug product from wholesalers to their customers.

25.    "These Requests" means Plaintiffs' First Request for Production of Documents to First DataBank as set forth herein.

26.    "Third Party Administrator" means any entity that provides administrative services to any Fund relating to any medical benefit provided to any Participant and/or Beneficiary.

27.    "This Litigation" means the litigation pending in the United States District Court for the District of Massachusetts bearing the docket number 1:05-CV-11148-PBS.

28.    "WAC" or "Wholesale Acquisition Cost" means the actual selling price that a drug manufacturer charges to a wholesaler, before discounts.

29.    "Wholesaler" means any entity that purchases drugs from a Manufacturer and resells such drugs to any other entity.

30.    "You" or "Your" shall refer to First DataBank, Inc. and includes any officer, director, employee, or any other person or entity which acts or purports to act for, or on behalf of, or for the benefit of First DataBank.

## INSTRUCTIONS

1    Unless otherwise specifically stated, the requests below refer to the period from January 1, 1997, to the date of production, inclusive.

2    These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing

production and supplementation of responses between the initial date for production set forth
above and the end of trial.

3       The singular form of a noun or pronoun shall include within its meaning the plural
form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include
within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of
any verb shall include within its meaning ail other tenses of the verb.

4       "All" and "each" shall be construed as meaning either all or each as necessary to
bring within the scope of the discovery request all responses that might otherwise be construed to
be outside its scope.

5       "And" and "or" shall be construed either disjunctively or conjunctively as
necessary to bring within the scope of the request any information that might otherwise be
construed to be outside its scope.

6       Each request for production of documents extends to all documents in the
possession, custody, or control of You or anyone acting on Your behalf. A document is to be
deemed in Your possession, custody, or control if it is in your physical custody, or if it is in the
physical custody of any other person and you (a) own such document in whole or in part;
(b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such
document on any term; (c) have an understanding, express or implied, that you may use, inspect,
examine, or copy such document on any terms; or (d) have, as a practical matter, been able to
use, inspect, examine, or copy such document when you sought to do so.

7       If production is requested of a document that is no longer in Your possession,
custody, or control, your response should state when the document was most recently in Your
possession, custody, or control, how the document was disposed of, and the identity of the

person, if any, presently in possession, custody, or control of such document. If the document

has been destroyed, state the reason for its destruction.

      8     Provide the following information for each document withheld on the grounds of

privilege:

        (a)     its date;

        (b)     its title;

        (c)     its author(s);

        (d)     its recipient(s);

        (e)     the specific privilege under which it is withheld;

        (f)     its general subject matter; and

        (g)     a description of it that you contend is adequate to support your contention

              that it is privileged.

      9     Any attachment to an allegedly privileged or immune Document shall be

produced unless You contend that the attachment is also privileged or immune.

      10     Notwithstanding the assertion of any objection to production, if a document

contains non-objectionable or non-privileged matter, please produce that document, redacting

that portion for which the objection is asserted, provided that the following information is

provided:

        (a)     its date;

        (b)     its title;

        (c)     its author(s);

        (d)     its recipient(s);

        (e)     the specific privilege under which it is withheld;

(f)     its general subject matter; and

(g)     a description of it that you contend is adequate to support your contention that it is privileged.

11      To the extent that You consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state that part of each request to which you object and each ground for each objection. If there is any question as to the meaning of any part of these Requests, or an issue as to whether production of any Documents requested herein would impose an undue burden on You, counsel for Plaintiffs should be contacted promptly to discuss these matters, and You should respond to the remainder of these Requests as written.

12      Documents produced in response to these Requests should be provided in the same form in which they are kept in the usual course of business. This means that Electronic Data, as that term is defined herein, should be produced in electronic form.

13      You may produce legible, complete, and exact copies of original documents responsive to these Requests, provided that the originals shall be made available for inspection upon request by Plaintiffs' counsel.

14      These Requests cover all Documents in Your possession, custody, and control, both inside and outside the United States, including Documents in the possession of its officers, employees, agents, servants, representatives, trustees, attorneys, consultants, or other Persons directly or indirectly employed or retained by any FDB, or anyone else acting on its behalf or otherwise subject to its control, and any merged, consolidated, or acquired predecessor or successor, subsidiary, division, or affiliate.

15    If any Request cannot be responded to fully, You should provide as full a response as possible, state the reason for the inability to answer fully, and provide any information, knowledge, or belief that You have regarding the unanswered portion.

## DOCUMENTS TO BE PRODUCED

1.    All documents reflecting communications to or from McKesson.

2.    All documents reflecting communications to or from any Wholesaler other than McKesson, including Amerisource Bergen and Cardinal.

3.    All documents concerning surveys You conducted of Wholesalers.

4.    All documents concerning the methodology used to determine Blue Book AWP.

5.    All documents concerning your use of manufacturer Suggested Wholesale Price.

6.    All documents reflecting communications to or from any Manufacturer concerning WAC, AWP, SWP, the markup from WAC to AWP, the markup from WAC to SWP, the WAC-AWP spread, the WAC-SWP spread, or other pricing for any Subject Drug.

7.    All documents concerning communications with any retail pharmacy or pharmacy chain regarding WAC, AWP, the markup from WAC to AWP, or WAC-AWP spreads.

8.    All documents reflecting FDB's transmission of WACs, AWPs, SWPs, the markup from WAC to AWP, or WAC-AWP spreads to any wholesaler.

9.    All documents reflecting the transmission of WACs, AWPs, the markup from WAC to AWP, or WAC-AWP spreads from any Wholesaler to FDB.

10.    All documents describing FDB's method for obtaining WACs, AWPs, the markup from WAC to AWP, or WAC-AWP spreads or its maintenance of any pricing database.

11.    All documents reflecting any survey conducted by You to obtain WACs, AWPs, the markup from WAC to AWP, or WAC-AWP spreads.

12.     All documents reflecting any change made by FDB in any pricing database or publication as the result of any survey of any Wholesaler.

13.     All documents concerning any requests by You for information concerning the pricing or reimbursement for Subject Drugs.

14.     All documents reflecting FDB's description or identification of any Manufacturer as having a suggested, proposed, or stated markup, including but not limited to, a 20% or a 25% markup or spread between WAC and AWP.

15.     All documents concerning FDB's use or publication of an AWP or SWP suggested by a Manufacturer.

16.     All documents reflecting any price changes or surveys implemented as a result of any merger between any Manufacturer with any other Manufacturer.

17.     All documents created or transmitted by FDB reflecting FDB's publication of WACs, AWPs, the markup from WAC to AWP, or WAC-AWP spreads in any website, newsletter, email update, bulletin, alert, or any other publication apart from its pricing database.

18.     All documents concerning the impacts of changes in WAC-AWP spreads on pharmacy reimbursement.

19.     All documents concerning the effect of an actual or potential increase or decrease in the WAC-AWP spread or published AWPs on retail pharmacies.

20.     All documents concerning whether increasing the WAC-AWP spread or published AWPs would increase profits for FDB or for any FDB customer.

21.     All documents describing FDB's contractual relationship with any Wholesaler.

22.     All documents concerning any pricing survey conducted by any Publication.

23.     All documents concerning FDB's pricing database, the database itself and any codes to that database.

24.     All documents concerning any communications with any trade group, lobbying organization, or trade association regarding AWPs, the spread between AWPs and WAC, or profit margins of any FDB customer.

25.     All documents concerning reimbursement by a Private Payor for Subject Drugs on the basis of the published AWPs, including AWPs published by First DataBank.

26.     All documents concerning the accuracy of published AWPs or the representations made by FDB regarding AWPs it published.

27.     All documents concerning the publication of AWPs by Red Book, Medi-Span, or any other Publisher (other than First DataBank).

28.     All documents concerning any effect that the merger of First DataBank and Medi-Span had on Your policies and procedures with respect to AWP.

29.     All documents concerning any representation or other statement by First DataBank concerning its business, including its publication of AWPs, how it derived pricing information for its database, how it determined markups, its research of wholesalers, and its conduct of surveys.

30.     All documents concerning complaints or other reactions by Manufacturers to AWPs published by First DataBank.

31.     All documents concerning reimbursement rates to retail pharmacies for any Subject Drugs.

32.     All documents concerning the Medicare Modernization Act of 2003, or any like proposed federal legislation.

33.     All documents concerning First DataBank's changes in 2005 to its policies and procedures related to the publication of AWP information and its addition of the new field of "Alternative Benchmark Price" to its database.

34.     All documents concerning the proposed or actual discontinuation of AWP as a basis or means for reimbursement.

35.     All documents comparing AWPs published by First DataBank with AWPs published by any other Publisher.

36.     All documents comparing AWPs published by First DataBank to manufacturer Suggested Wholesale Prices.

37.     All documents concerning any definition or meaning of AWP or concerning use of AWP in the pharmaceutical marketplace.

38.     All documents concerning any internal or external, formal or informal, assessments, studies, analyses, reviews, investigation, or audits regarding drug pricing, publication of AWPs, or reimbursement for drugs sold.

39.     All communications between You and any Third Party Administrator, Private Payor, Wholesaler, Pharmacy Benefit Manager, Benefit Consultant, Retailer, Mail Order Pharmacy, Manufacturer, or any other person concerning WAC-AWP spreads.

40.     Documents sufficient to identify all of Your employees and to show Your organizational structure.

41.     All current and historical organizational charts for all of Your departments.

42.     All documents You produced or made available for inspection, whether voluntarily or involuntarily, in any Governmental Investigation, inquiry, or litigation concerning AWP.

43.    All documents concerning any legal proceeding (by country, court, caption, case number, etc.) including, but not limited to, court hearings, legislative hearings, mediations or arbitrations, in which You were a party, regarding AWP.

44.    All affidavits, declarations, depositions, or other written statements, including drafts, provided by You regarding AWP.

45.    All documents sufficient to identify Your policy or practice of document retention, disposal, or preservation for each year during the Relevant Time Period.

46.    All documents reflecting the Blue Book AWP published by FDB, including the AWPs for the Subject Drugs.

47.    All documents concerning communications to or from a PBM, Benefit Consultant, or Private Payor regarding AWP.

48.    All documents since January 1, 2000 concerning Kay Morgan's employment.

49.    All documents provided to McKesson.

DATED:  July 12, 2006              By_____

Thomas M. Sobol (BBO#471770)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

- 14 -

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone:  (615) 244-2202
Facsimile:  (615) 252-3798

001821-13  118995 V1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above-referenced document was served upon the attorney of record listed below and UPS Next Day Air.

Robert J. Hawley
Office of General Counsel
The Hearst Company
959 Eighth Avenue
New York, NY  10019

*Counsel for First Databank*

Lori A. Schechter
Morrison & Foerster
425 Market Street
San Francisco, CA 94105-2482
415-268-7000
Fax: 415-268-7522
Email: lschechter@mofo.com

*Counsel for McKesson Corporation*

Steve W. Berman

- 16 -