# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, and DISTRICT 37 HEALTH AND SECURITY FUND, | C.A. No. 1:05-CV-11148-PBS |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE TO CLASS**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................. 1

      A    Standards for Preliminary Approval of Class Settlements ................................... 1

      B    The Proposed Class Settlement Warrants Preliminary Approval ......................... 3

      C    This Court Should Grant Provisional Class Certification for Settlement
           Purposes Only .................................................................................................... 5

      D    Provisional Certification of a Settlement Class Is Distinct from Plaintiffs'
           Motion to Certify a Litigation Class Against McKesson ..................................... 7

      E    McKesson Lacks Standing to Object to the Proposed Class Settlement ............. 10

      F    The Court's Exercise of Continuing Jurisdiction as Contemplated By the
           Proposed Settlement Agreement Effectively Is Limited in Time and Is
           Otherwise Proper ............................................................................................... 13

III.  CONCLUSION ......................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) ..........................................6, 8, 9

Armstrong v. Board of School Directors of City of Milwaukee, 616 F.2d 305 (7th
    Cir. 1980) ...................................................................................................................2

In re Austrian & German Bank Holocaust Litigation, 80 F. Supp. 2d 164
    (S.D.N.Y. 2000), aff'd sub nom. D'Amato v. Deutsche Bank, 236 F.3d 78 (2d
    Cir. 2001) .............................................................................................................2, 4

In re Beef Industrial Antitrust Litigation, 607 F.2d 167 (5th Cir. 1979) ....................10, 11

Bussie v. Allmerica Finance Corp., 50 F. Supp. 2d 59 (D. Mass. 1999)...................2, 3, 15

City Partnership Co. v. Atlantic Acquisition Ltd. Partnership, 100 F.3d 1041 (1st
    Cir. 1996) ...................................................................................................................4

In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products
    Liability Litigation, Nos. 1203, 99-20593, 2000 WL. 1222042 (E.D. Pa. Aug.
    28, 2000) .............................................................................................................6, 10

Grispino v. New Eng. Mutual Life Insurance Co., 358 F.3d 16 (1st Cir. 2004) ..............15

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) .................................................8

In re Integra Realty Resources, Inc., 262 F.3d 1089 (10th Cir. 2001).........................10, 11

In re Inter-Op Hip Prosthesis Liability Litigation, 204 F.R.D. 330 (N.D. Ohio
    2001) .........................................................................................................................2

Lorenzo v. Brands, No. Civ.A. 02-CV-474B, 2006 WL. 2855009 (D.N.H. Oct. 2,
    2006) .......................................................................................................................15

In re Lupron Marketing & Sales Practices Litigation, 228 F.R.D. 75 (D. Mass.
    2005) ................................................................................................................3, 8, 9

In re Lupron Marketing & Sales Practices Litigation, 345 F. Supp. 2d 135 (D.
    Mass. 2004).............................................................................................................2, 9

In re Monumental Life Ins. Co., 365 F.3d 408, 411 n.1 (5th Cir. 2004) ...........................5

Morgan v. Walter, 758 F. Supp. 597 (D. Idaho 1991).......................................3, 10, 11, 12

In re NASDAQ Market-Makers Antitrust Litigation, 176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................................................2

Officers for Justice v. Civil Serv. Commission of City & County of San Francisco, 688 F.2d 615 (9th Cir. 1982) ....................................................................................2, 3

In re Phenylpropanolamine (PPA) Products Liability Litigation, 227 F.R.D. 553 (W.D. Wash. 2004) ............................................................................................6, 9, 10

In re Prudential Insurance Co. America Sales Practice Litigation, 148 F.3d 283 (3d Cir. 1998)................................................................................................................8

In re Sch. Asbestos Litigation, 921 F.2d 1330 (3d Cir. 1990)..........................................10

In re Serzone Prod. Liability Litigation, 231 F.R.D. 221 (S.D. W.Va. 2005) ..............6, 10

Waller v. Finance Corp. of America, 828 F.2d 579 (9th Cir. 1987)............................11, 12

## MISCELLANEOUS

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11:41 (4th ed. 2006) ......................................................................................................................2

*MCL* § 21.633 ........................................................................................................3, 7

*Manual for Complex Litigation (Fourth)* § 21.632 (West 2004).......................................1

*Newberg* § 11:41 ..............................................................................................................4

## I.    INTRODUCTION

Plaintiffs and First DataBank, Inc. ("FDB") jointly submit this memorandum of law in further support of the joint motion by Plaintiffs and FDB (collectively the "settling parties") for preliminary approval of the proposed class settlement, certification of a settlement class, and approval of notice to the class (the "Joint Motion"). FDB denies the claims made against it by plaintiffs, but wishes to settle in order to avoid the cost, expense and risk of litigation. As shown below, the proposed settlement satisfies both the procedural and substantive requirements courts look to in determining whether to preliminarily approve a proposed settlement and to conditionally certify a settlement class and give notice to the proposed class members.

In addition, non-settling Defendant McKesson Corporation ("McKesson"), as a non-party to the proposed class settlement, would not be legally prejudiced in any demonstrated way and lacks standing to object either procedurally or substantively to the joint motion. Moreover, McKesson does not cite to any case where a court took the action under like circumstances that it urges this Court to take here. Therefore such objections are not well taken and should be dismissed by this Court. For these reasons, and those discussed below, the settling parties respectfully request that this Court grant the Joint Motion and allow notice of the proposed settlement to be issued to the proposed class.

## II.    ARGUMENT

### A    Standards for Preliminary Approval of Class Settlements

The preliminary approval of a proposed class action settlement is the first step in a two-step process. *See Manual for Complex Litigation (Fourth)* § 21.632 (West 2004) ("*MCL*"). At the preliminary approval stage, courts make an initial evaluation of the fairness of the settlement terms. Where the proposed settlement "appears to be the product of serious, informed, non-

collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). A proposed settlement is presumed to be fair and reasonable when it is the result of arm's-length negotiations by experienced counsel. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11:41 (4th ed. 2006).[1]

Contrary to McKesson's arguments (McK. Br. at 10), class certification issues need not be finally determined at the preliminary approval stage. Instead, courts routinely grant provisional class certification, "for settlement purposes only," pending final approval of the settlement. *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 139 (D. Mass. 2004) ("*Lupron I*"); *accord Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 66-67 (D. Mass. 1999).

Typically, courts analyze and apply the prerequisites to class certification less stringently at the preliminary approval stage than at the final approval stage. *See, e.g.*, *Lupron I*, 345 F. Supp.2d at 138-39 (single-paragraph analysis of Rule 23 factors). This is because of "the substantial judicial processes that remain to test the assumptions and representations upon which the parties' motions are premised" after notice and opt-out rights are afforded and a fairness hearing is held. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001). Relatedly, the preliminary approval stage "is not to be turned into a trial or rehearsal for

---

[1]     *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 180 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *Armstrong v. Bd. of School Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."); *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (the fairness of a proposed settlement should not be judged by a "hypothetical or speculative measure of what might have been achieved by the negotiators").

*(cont'd)*

trial on the merits [because] it is the uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce[s] consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Once preliminary approval is granted, the second step in the settlement process ensues: class members are provided notice of the proposed settlement and of a fairness hearing at which objecting class members (if any) and the settling parties may be heard. *See MCL* § 21.633. Thereafter, the parties must seek final approval of the settlement and permanent certification of the settlement class. *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 77-78 (D. Mass. 2005) ("*Lupron II*"); *Bussie*, 50 F. Supp. 2d at 69. At that time, the court engages in a "rigorous analysis" of the prerequisites to class certification, while bearing in mind that "the law favors class action settlements." *Lupron II*, 228 F.R.D. at 88.[2]

**B      The Proposed Class Settlement Warrants Preliminary Approval**

The proposed settlement, if approved by the Court, will require FDB to: (1) adjust the markup factor between the published Wholesale Acquisition Cost ("WAC") and the BBAWP for certain pharmaceuticals 60 days after the Effective Date of the Settlement or 270 days after the Preliminary Approval of the Settlement by the Court, whichever date is later; (2) discontinue publishing the BBAWP data field for any pharmaceutical no later than 2 years after the Effective Date of the Settlement unless other conditions are met; (3) establish a data room for materials pertaining to AWP issues and provide other cooperation; and (4) pay certain notice costs, and up

_____

[2] *See also Officers for Justice*, 688 F.2d at 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution . . . especially [] in complex class action litigation."); *Morgan v. Walter*, 758 F. Supp. 597, 599 (D. Idaho 1991) (recognizing "policy and duty of federal courts to facilitate settlement as early in the litigation as possible").

to certain amounts of administrative costs and attorneys fees as approved by the Court. This settlement does not involve the payment of money damages.[3]

These settlement terms meet the criteria discussed above and should be granted preliminary approval. First, FDB and Plaintiffs' counsel negotiated long and hard, and at arm's-length, to arrive at settlement terms that take into account certain unique facts and circumstances. For instance, FDB is a relatively small company that publishes both clinical and pricing data with respect to pharmaceuticals. In fact, pricing data is only a small part of its business. FDB has limited financial means (its estimated pre-tax profit for the entire company for this year is approximately $19 million[4]) when compared to the nature and amount of the damages claimed by the Plaintiffs. Putting aside the fact that FDB strenuously denies Plaintiffs' allegations of wrongdoing, it would be impossible for FDB even to consider a payment of any meaningful amount to the putative Class in settlement.[5] Rather, the proposed settlement provides substantial benefit to the Class as a whole and should be presumed to be fair and reasonable since it resulted from extensive and oftentimes quite difficult negotiations by experienced counsel beginning nearly one year ago. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement."); *see also Newberg* § 11:41; *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 180 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

---

[3] In addition, as part of the settlement, FDB has agreed to be part of any Court-ordered mediation process with other participants in an effort to develop a new pricing benchmark that is sustainable and reliable in the place of AWP.

[4] See Declaration of Thomas M. Sobol.

Second, the proposed settlement does not improperly grant preferential treatment to Class representatives or segments of the Class because it fashions relief that is attainable, prospective, applicable equally across the board, automatic in that no claims process is necessary, provides substantial benefit to the Class, and occurs at a point that is common to all Class members' claims – *i.e.*, FDB's publication of the BBAWP data field.  Thus, the proposed settlement is within the range of possible final approval following the fairness hearing.

### C     This Court Should Grant Provisional Class Certification for Settlement Purposes Only

As discussed above, provisional certification is routinely granted where the proposed settlement terms appear fair and reasonable.  *See* Section III.A, *supra*.  Moreover, the settling parties are confident that both the proposed settlement and the certification of a settlement class will ultimately be granted final approval by this Court.

Notwithstanding McKesson's attempt to defeat Federal Rule of Civil Procedure 23's predominance requirement to a 23(b)(3) litigation class by raising individual issues of causation and damages (McK. Br. at 4, 8), these issues are largely academic in this context.  The proposed settlement provides exclusively for prospective injunctive relief, rather than money damages. *See* Section III.B, *supra*.  Moreover, FDB's relatively limited financial means precludes, as a practical matter, any meaningful monetary payment to the putative Class, even if only done in settlement to resolve contested liability and avoid the cost, expense, and risk of litigation.  *See id.* As further described below, these considerations tilt the balance of predominance in favor of common issues for purposes of settlement.

_____

[5]  For those consumers who are members of the putative Class, individual claims may well be truly "negative value" claims where the claims 'would be uneconomical to litigate individually.'" *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 411 n.1 (5th Cir. 2004) (citation omitted).

McKesson contends that *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ("*Amchem*"), requires this Court to determine predominance in a vacuum, without regard to the proposed settlement. (McK. Br. at 12). However, *Amchem* makes clear both that "[s]ettlement is relevant to a class certification" and that, in the settlement context, predominance merely tests "whether proposed classes are sufficiently cohesive," and does not depend on "whether the case, if tried, would present intractable management problems." 521 U.S. at 619-20, 623.

Post-*Amchem* cases recognize that, while class members' desire to settle cannot supply the predominant common issue, the settlement terms can tilt the balance in favor of common issues that pre-exist the settlement.

> [W]hen taking the settlement into consideration for purposes of determining class certification, individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate. For example, . . . individual issues relating to causation, injury and damage . . . disappear because the settlement's objective criteria provide for an objective scheme of compensation. The court notes that this is not the same as finding that the benefits of the settlement itself provide a common issue which satisfies the predominance requirement. Rather, the court finds that the common issues that preexisted this settlement-involving a common product, defendant and course of conduct-when considered in light of the proposed settlement, predominate over any individual issues between class members.

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, Nos. 1203, 99-20593, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000); *see also, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 563 (W.D. Wash. 2004) ("[B]ecause the [settlement] Matrix specifically addresses issues of product identification, causation, injury and damages, it effectively nullifies those issues which otherwise would be considered individual, allowing common issues to predominate."); *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 240 (S.D. W.Va. 2005) ("[I]ndividual issues of causation . . . abate

because the settlement's objective criteria provide for an objective scheme of compensation.").[6] Here too, the individual issues that would have to be decided if a litigation class were to be certified -- individual causation, reliance, and individual damages – are not present and do not have to be weighed as part of the predominance analysis against any common issues involving the defendant's conduct when courts consider a settlement class.

Therefore, it is submitted that the facts and circumstances that are germane to FDB, the nature and amount of the claims against it and the specific relief being afforded under the proposed settlement, are capable of consideration by the Court in determining whether to grant preliminary approval of the settlement and conditional class certification for settlement purposes as well as ultimate final approval and class certification.  Moreover, the Court can – and indeed must – do so without prejudice to any other party not subject to this motion and based solely upon the arguments and record properly before the Court in connection with this proposed settlement class certification motion.

### D     Provisional Certification of a Settlement Class Is Distinct from Plaintiffs' Motion to Certify a Litigation Class Against McKesson

 McKesson argues that certification of a settlement class must await the outcome of Plaintiffs' motion to certify a litigation class against McKesson.  In essence, McKesson contends that if the Court certifies a settlement class, it will later be *compelled* to grant Plaintiffs' motion to certify a litigation class regardless of the record before the Court when that motion is decided.

---

[6] *Accord MCL* § 21.132 ("Post-*Amchem* courts have emphasized that a settlement class must be cohesive. . . . [C]ounsel seeking certification of a settlement class must show that there are no actual conflicts among the anticipated claims of class members or must show that conflicts can be avoided or ameliorated by . . . providing a plan for distributing benefits based on objective criteria.  The court must determine whether the process for presenting claims and awarding relief to individual class members is manageable and takes account of differences among class members without creating conflicting interests.").

Neither *Amchem* nor any of the post-*Amchem* cases on which McKesson relies supports this analysis.

*Amchem* addressed a proposed settlement of asbestos claims by a class that included both "currently injured" plaintiffs, whose interest was in securing generous immediate payments, and "exposure-only" plaintiffs, whose interest was ensuring adequate funds for the future. 521 U.S. at 626. Because of the inherent conflict between these two categories of plaintiffs, the class was not cohesive and representation was not adequate, defeating class certification for settlement purposes. *See id.* at 627-28. The *Amchem* decision makes no reference to any separate motion to certify a litigation class, and in no way suggests that the pendency of any such motion would have any effect on the issue of whether to certify a settlement class.

Further, McKesson cites no post-*Amchem* cases denying certification of settlement classes involving the circumstances now before the Court and on the grounds McKesson now advances. Indeed, the post-*Amchem* settlement class cases McKesson does cite all *affirmed* certification. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023-24 (9th Cir. 1998) (affirming certification of a nationwide Rule 23(b)(3) settlement class for economic claims alleging defective minivan liftgate latches); *In re Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), (affirming certification of nationwide Rule 23(b)(3) settlement class for claims alleging deceptive insurance sales practices).

Moreover, McKesson's argument is flawed in two principal respects. First, all that is sought here is preliminary approval of the settlement and provisional certification of a settlement class. The provisional grant of class certification at this stage is not binding on the Court even for settlement purposes, let alone for litigation purposes. *See Lupron II*, 228 F.R.D. at 88 (engaging in "rigorous analysis" of prerequisites to class certification, despite having previously

granted provisional certification). Second, provisional class certification can be granted "for settlement purposes only." *Lupron I*, 345 F. Supp. 2d at 139. Such a ruling does not bind the Court or the parties to this motion – and certainly does not bind non-parties to the motion.

Also, motions to certify settlement and litigation classes involve different analyses that can produce different outcomes. Even *Amchem* recognized that "[s]ettlement is relevant to a class certification" and that "close inspection of the settlement . . . [is] altogether proper." 521 U.S. at 619, 620. Indeed, the factor of manageability need not be addressed in certifying a settlement class. *Amchem*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). Here, the Court is expected to take into account that a settlement agreement exists, and examine the agreement carefully to ensure that the settling parties' interests are adequately represented. Furthermore, despite the cautionary approach *Amchem* took in the case before it, "the law favors class action settlements." *Lupron II*, 228 F.R.D. at 88. Thus, taken in context and with recognition of the circumstances and facts present here, the Court can and should analyze the settlement class issues pertaining to FDB and the litigation class issues involving McKesson differently.

In fact, recognizing this distinction between settlement and litigation classes, courts have come to different results in the same case, even after *Amchem*. For example, in the multi-district litigation regarding PPA, Judge Barbara Rothstein denied repeated motions for certification of a litigation class in various cases, but later approved a class "for settlement purposes only" in the same case. *In re (PPA)*, 227 F.R.D. at 564, 567. Far from holding that the same outcome was required in both contexts, the court held that the prior denial of litigation classes was a factor that "weighs in favor of approving the Settlement." *Id.* at 563.

> [B]ecause this court has already declined to certify litigation classes . . ., the Class could not be maintained for trial. If the Settlement is not approved, each of these actions would have to be adjudicated on an individual basis.

*Id.* at 564.  Likewise, as discussed above, courts have explicitly held that individual issues of causation and damages that might preclude certification of a liability class did not preclude certification of a settlement class.  *See In re Diet Drugs*, 2000 WL 1222042, at *43; *In re Serzone*, 231 F.R.D. at 240.

In sum, the record presently before the Court is more than adequate to assess the settling parties' joint motion for preliminary approval of the proposed class settlement and for provisional certification of a settlement class.  McKesson will have ample opportunity to develop an adversarial record in opposing Plaintiffs' separate motion to certify a litigation class. McKesson's purported concerns that the present motion will somehow preordain the question of whether a litigation class can be certified are legally unfounded and do not permit McKesson to indirectly disrupt a proposed settlement and certification that, as a non-settling party, it lacks standing to contest directly.  If this Court grants the joint motion for preliminary approval of the proposed settlement class, McKesson nonetheless will be able to oppose the motion for a litigation class against it and to do so without any prejudice by any action of the Court in connection with the proposed settlement with FDB.

### E    McKesson Lacks Standing to Object to the Proposed Class Settlement

It is well settled that "[a]s a general rule, a non-settling defendant is not prejudiced by the settlement and therefore has no standing to contest the settlement."  *In re Sch. Asbestos Litig*., 921 F.2d 1330, 1332 (3d Cir. 1990) (citing *In re Beef Indus. Antitrust Litig*., 607 F.2d 167, 172 (5th Cir. 1979)); *see also In re Integra Realty Res., Inc*., 262 F.3d 1089, 1102 (10th Cir. 2001) ("Non-settling defendants generally have no standing to complain about a settlement, since they are not members of the settling class."); *Morgan v. Walter*, 758 F. Supp. 597, 599 (D. Idaho 1991) (the rule flows from "the policy and duty of federal courts to facilitate settlement as early in the litigation as possible").

To avoid this general rule, McKesson would have to demonstrate that it will suffer "formal legal prejudice as a result of the settlement." *Morgan*, 758 F. Supp. at 599. Formal legal prejudice includes: (1) losing or being stripped of a claim or cause of action, such as indemnity or contribution; (2) losing contractual rights; or (3) the imposition of duties or obligations. *Id.* at 600. However, formal legal prejudice does not include the prospect of subsequent litigation or of losing some tactical advantage. *Id.*; *see also In re Integra Realty Res., Inc.*, 262 F.3d at 1102-03 (same); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 580-84 (9th Cir. 1987) (same).

In addition, courts have held that a non-settling defendant lacks standing to object to the procedural aspects of preliminary approval of class settlements so as to challenge indirectly what they cannot challenge directly. *See In re Beef Indus. Antitrust Litig.*, 607 F.2d at 172 (non-settling defendant lacked standing to object to the settlement because it was not a member of the settlement class and lacked standing to challenge the adequacy of the procedure used, so as to challenge indirectly what it could not challenge directly).

McKesson has alleged merely that preliminary approval of the proposed class will prejudice its opposition to certification of Plaintiffs' pending litigation class against it. However, this Court has explicitly stated that its determination of the settling parties proposed settlement will be without prejudice to its determination of the certification of the litigation class against McKesson. Accordingly, the prejudice McKesson alleges is not "formal legal prejudice" but rather is a perceived tactical disadvantage resulting from preliminary approval of the proposed settlement. *See Morgan*, 758 F. Supp. at 600 (settlement would make it harder for non-settling defendant corporation to acquire permit to build dam); *see also In re Integra Realty Res., Inc.*, 262 F.3d at 1102-03 (non-settling defendants lacked standing to object that the settlement, which

allowed for the bankruptcy trustee to have immediate access to settlement payments, would allow the trustee to "generate a war chest of funds which will inevitably make it more difficult for the opt-out [defendants] to defend their cases" because "[a]t most, the [objectors] have alleged . . . a tactical disadvantage.  As such, they have not alleged legal prejudice."); *see also Waller*, 828 F.2d at 580-84 (non-settling defendant accounting firm lacked standing to object to settlement in which settling defendant corporation would (1) "cooperate" in the prosecution of actions against the defendant accounting firm; (2) share with the plaintiffs the proceeds of the unsettled actions; (3) assert claims against the accounting firm; and (4) not settle the respective suits without the prior approval of the other because the defendant accounting firm would not suffer any "formal legal prejudice" and therefore had no standing to object to the settlement as "[t]he settlement d[id] not cut off or in any way affect any of [the accounting firm's] claims; it only dispose[d] of the claims of the classes against [the settling corporation].").

The "prejudice" McKesson asserts does not rise to the level of "formal legal prejudice" and does not confer standing on a non-settling party to object to a proposed class settlement. Accordingly, McKesson's objections are not well taken and should not impede the legitimate interests of the settling parties and the Court.  *See Morgan*, 758 F. Supp. at 599 (standing requirement furthers "the policy and duty of federal courts to facilitate settlement as early in the litigation as possible").

Furthermore, even beyond its lack of standing, McKesson's various attempts to challenge the terms of the settlement agreement are without merit.  The proposed settlement class is not overly broad.  Rather, the proposed class seeks to resolve those claims, which arise from the allegations of improper conduct relating to FDB's publication of an allegedly inflated AWP data

field as set forth in Plaintiffs' complaint. Accordingly, there is no proper legal basis to deny preliminary approval of the proposed class based on its logical scope.

In addition, despite McKesson's claim to this Court that McKesson is merely concerned about the procedural process and is not attempting to thwart the proposed settlement between Plaintiffs and FDB, McKesson makes other, cursory objections to the merits of the proposed settlement, none of which have any merit, nor should they be considered by the Court. McKesson simply has no standing to object to the proposed settlement and its attempts to do so -- directly or indirectly -- should be rejected.

Moreover, even if McKesson were found to have standing to object to the proposed settlement, the Court should only hear such objections at the same time and in the same manner that it hears other objections – *i.e.*, at the fairness hearing. There simply is no justifiable reason to grant McKesson a place of primacy among potential objectors and permit it to object in the context of a preliminary approval hearing, which is not the purpose of the preliminary approval hearing. For these reasons, we urge the Court to deny McKesson's attempt to forestall preliminary approval and notice of the proposed class action settlement to the members of the proposed class.

**F     The Court's Exercise of Continuing Jurisdiction as Contemplated By the Proposed Settlement Agreement Effectively Is Limited in Time and Is Otherwise Proper**

Paragraph 17 of the Proposed Settlement Agreement provides that the Court would exercise continuing jurisdiction over the implementation and enforcement of the Settlement Agreement, if the settlement is approved. This would include jurisdiction to enforce the Final Order and Judgment issued by the Court, including the injunctive relief included therein. As set forth below, the exercise of continuing jurisdiction by the Court as set forth in the Proposed Settlement Agreement is effectively limited in time and is otherwise proper.

The Court's continuing jurisdiction, although not expressly limited in time by the terms of the Settlement Agreement, likely would be limited to a period of three years from the Effective Date of the Settlement Agreement, barring other related litigation.  In the event of final approval, the Court's continuing jurisdiction is necessary in connection with the injunction to be issued by the Court pertaining to: (1) the adjustment to the WAC to BBAWP mark-up within 60 days of the Effective Date or 270 days of preliminary approval, whichever is later; (2) the cessation of publishing the BBAWP data field within 2 years of the Effective Date; (3) the maintenance of the FDB Data Room and related discovery for a period of 3 years from the Effective Date; and (4) any Court-approved mediation process to facilitate discussions relating to the establishment of a sustainable industry benchmark for purposes of reimbursement.

In practical terms, this limits the Court's continuing jurisdiction – barring any related litigation – to a period of 3 years from the Effective Date because within that period it is contemplated that all matters in the proposed settlement agreement would be completed.  There are some exceptions, which are addressed below.

While no deadline is associated with the Court-approved mediation, it is contemplated that if such a mediation process were ordered, it would occur shortly after the Effective Date so as to provide a forum for interested parties to explore whether an alternative pricing benchmark could be developed in advance of any cessation of the publication of the AWP data field by anyone.  If this mediation were not to make progress, the Court is not compelled to continue it *ad infinitum* or to be involved with trying to fashion a compromise directly.

Likewise, while there is a deadline associated with the cessation of publishing the BBAWP data field, FDB is permitted to continue publishing it beyond 2 years after the Effective Date if a Publishing Competitor (as defined in the proposed settlement agreement) continues to

14

publish such an AWP data field. Therefore, it is possible that if FDB continued to publish AWP beyond 2 years after the Effective Date because of this Publishing Competitor exception and then FDB was no longer permitted to do so because the competitor ceased to publish an AWP data field, the Court's jurisdiction could be invoked to enforce the settlement if FDB failed to cease publication at that time. However, this seems unlikely since (1) FDB is committed to discontinuing publication of an AWP data field, and (2) it is anticipated that if this Settlement is approved, the forces within the market will provide an incentive to all publishers to move away from the publication of the AWP data field.

Furthermore, the retention of jurisdiction to implement and enforce the terms of the Proposed Settlement Agreement in this manner by the Court is in accord with the law and practice in the First Circuit. *See Grispino v. New Eng. Mut. Life Ins. Co.*, 358 F.3d 16, 18 (1st Cir. 2004) (district court had authority to retain jurisdiction over any post-settlement issues after class action settlement of claims for deceptive insurance sales practices); *Bussie*, 50 F. Supp. 2d at 81 (in 23(b)(3) class action settlement, district court retained jurisdiction as to all matters relating to Settlement Agreement and Final Order and Judgment including, without limitation, the Release and the permanent injunction); *Lorenzo v. Brands*, No. Civ.A. 02-CV-474B, 2006 WL 2855009, at *3 (D.N.H. Oct. 2, 2006) (same).

Consequently, it is submitted that the exercise of continuing jurisdiction by the Court as set forth in the Proposed Settlement Agreement is effectively limited in time and is otherwise proper.

**III.    CONCLUSION**

For all the foregoing reasons, FDB and Plaintiffs respectfully submit that the Court should grant the joint motion for preliminary approval of the proposed class settlement and certification of the class for settlement purposes only.

Dated: November 1, 2006

Respectfully submitted,

NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND,
PIRELLI ARMSTRONG RETIREE MEDICAL
BENEFITS  TRUST,
TEAMSTERS HEALTH & WELFARE FUND OF
PHILADELPHIA AND VICINITY,
PHILADELPHIA FEDERATION OF TEACHERS
HEALTH AND WELFARE FUND,  and
DISTRICT 37 HEALTH AND SECURITY FUND,

By  /s/ Thomas M. Sobol
Thomas M. Sobol (BBO # 471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Phone: 617-482-3700

Steve W. Berman
Sean R. Matt
Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson, Esq.
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA 18901
Telephone: 215-230-8043
Facsimile: 215-230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on November 1, 2006.

/s/ Thomas M. Sobol_____
Thomas M. Sobol