UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, <br><br>　　　　　　　　　　　Plaintiffs, <br><br>　　v. <br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, <br><br>　　　　　　　　　　　Defendants. | C.A. No. 1:05-CV-11148-PBS |

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE TO CLASS**

**TABLE OF CONTENTS**

|      |       |                                                                                                                                                                                 | Page |
|------|-------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   |       | INTRODUCTION                                                                                                                                                                    | 1    |
| II.  |       | ARGUMENT                                                                                                                                                                        | 2    |
|      | A     | Nothing in Fed. R. Civ. P. 23(b)(3) Precludes Certification in Connection with the Proposed Settlement with FDB                                                                  | 2    |
|      |       | 1. Class Members Will Receive Valuable Consideration for the Release of their Monetary Claims Under the Proposed Settlement                                                     | 4    |
|      |       | 2. Monetary Claims Can Be Released as Part of a Broad Settlement Without Monetary Consideration                                                                                  | 5    |
|      |       | 3. No Significant Conflict Exists Between "Past" and "Future" Class Members                                                                                                      | 7    |
|      | B     | Alternatively, Class Members' Injunctive and Monetary Claims Should Be Certified, Settled, and Released Under Rule 23(b)(2) With Notice and Opt-Out Rights                       | 8    |
| III. |       | CONCLUSION                                                                                                                                                                      | 9    |

**I.      INTRODUCTION**

The Court's Order of November 14, 2006 (the "Order") indicates a need to supplement the record in connection with the proposed resolution with First DataBank, Inc. ("FDB"). We interpret the issue to relate to the legal question, under the facts of the proposed settlement as presented the Court through prior submissions, regarding certification of a proposed settlement class under Rule 23(b)(3) where the settlement does not provide for a lump sum of cash to be distributed to class members. Plaintiffs submit this memorandum of law to supplement the record and in further support of the joint motion by Plaintiffs and FDB for preliminary approval of the proposed class settlement, certification of a settlement class, and approval of notice to the class (the "Joint Motion") under Rule 23(b)(3), which among other things, would release class members' claims for money damages in exchange for valuable prospective injunctive relief.

Proposed class members, including those with present claims for money damages, will derive substantial benefit from the proposed settlement, which, *inter alia*, requires FDB to roll back the markup factor between the published Wholesale Acquisition Cost ("WAC") and the Blue Book Average Wholesale Price ("BBAWP") for an extensive list of prescription pharmaceuticals. For most class members, the future savings that will likely result from the rollback provisions of the proposed settlement will to exceed the value of their present damages claims that they could ever recovery ratably from FDB. While there is a possibility here that a small fraction of class members will have past damages but a limited need to purchase prescription pharmaceuticals in the future, these class members' interests will be adequately protected by the mandatory notice and opt-out rights provided under Rule 23(b)(3). Alternatively, as discussed below, this Court can certify a settlement class pursuant to Rule

1

23(b)(2) that releases all monetary claims of the class members by providing for notice and opt-out rights to protect the interests of such class members.

## II. ARGUMENT

### A   Nothing in Fed. R. Civ. P. 23(b)(3) Precludes Certification in Connection with the Proposed Settlement with FDB

There is nothing in the terms of Rule 23(b)(3) that prevent certification of the proposed settlement with FDB under that provision merely because the bargained-for-relief of the settlement does not include the establishment of a settlement fund for class members. Rather, to determine which subdivision of Rule 23(b) is applicable, this Court should look to the claims asserted and relief sought in the pleadings. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620-23 (1997).[1] The putative Class does, in fact, "seek" money damages as well as injunctive relief. *See* Second Amended Complaint (Proposed) (Docket #147). That the Class is willing to release their claims for monetary relief as part of the consideration for much more valuable injunctive relief does not –by the provisions of the Rule – preclude certification of a 23(b)(3) settlement class here.

Indeed, a proposed non-opt-out 23(b)(1) class settlement that would have released monetary claims in exchange for non-monetary relief was not approved by the District Court of Nevada, which held that the lawsuit was one "for damages as to which 23(b)(3) certification is appropriate and indeed necessary." *Clarke v. Advanced Private Networks, Inc.*, 173 F.R.D. 521

---

[1] To be sure, the existence and terms of the settlement are "relevant" and, for purposes of the predominance requirement, can tilt the balance in favor of common issues. *See* Memorandum of Law in Further Support of the Joint Motion filed November 1, 2006 (Docket # 152)

2

(D. Nev. 1997). In *Clarke*, the court denied a proposed class settlement that would have released claims for money damages in exchange for non-monetary relief on the sole ground that the proposed 23(b)(1) settlement class afforded no opt-out right to absent class members. *See id.* at 522. Notwithstanding the proposed release of monetary claims, the court held that the suit was one "as to which 23(b)(3) certification is appropriate and indeed necessary." *Id.* In contrast to *Clarke*, the parties here have jointly requested 23(b)(3) certification and have provided for notice and opt-out rights to protect the interest of absent class members.

Furthermore, Rule 23(b)(3) has been used often by courts to certify and approve settlements utilizing "fluid recovery" or other alternative means of distributing the bargained-for-relief of the settlement in exchange for a release of past monetary claims of the Class.[2] *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (settlement that dispensed with requirement of individualized proof of class members' claims was "well-designed and effective"), *aff'd*, 267 F.3d 743 (7th Cir. 2001); *In re Cuisinart Food Processor Antitrust Litig.*, MDL No. 447, 1983 WL 153, at *7 (D. Conn. Oct. 24, 1983) (approving prospective discounts and citing cases where "courts have approved settlements which give class members a benefit in a form other than cash recovery;" and noting that "counsel for . . . plaintiffs and defendants agree that a settlement which would provide a cash award is not possible in this case;"); *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 11 (N.D. Ohio 1982) (approving settlement with prospective discounts of $20 million where "defendants simply could not and would not raise anything approaching $20,000,000 in cash to settle these cases"). *Cf. State of N.Y. v. Nintendo of America, Inc.*, 775 F. Supp. 676, 681-82 (S.D.N.Y. 1991) (court

---

[2] The term "fluid recovery" includes settlements where the distribution of damages occurs prospectively through price or rate reductions through the market rather than by cash to individual plaintiffs. *See, e.g., Bebchick v. Public*
*(cont'd)*

approved distribution of settlement relief by means of a voucher for prospective discount because, *inter alia*, cost of a reimbursement scheme nearly equal relief).

       **1.**       **Class Members Will Receive Valuable Consideration for the Release of their Monetary Claims Under the Proposed Settlement**

The proposed rollback provisions of the proposed settlement will permit class members to purchase pharmaceutical drugs at significantly lower prices. *See* Affidavit of Raymond S. Hartman (Docket #157). As such, the rollback confers a benefit similar to other approved class settlements that utilize a means of distributing a prospective benefit to the class other than the creation of a settlement fund from which to seek individual cash payments. *See, e.g., In re Cuisinart Food Processor Antitrust Litig.*, 1983 WL 153, at *7.

Class settlements utilizing alternative vehicles for distributing the settlement relief to the class take into account many of the practical hurdles that the plaintiffs face in this litigation, including that the identity of class members is difficult to ascertain, the value of individual damages is minimal, and that FDB does not have the financial wherewithal to provide an equivalent value in cash. Moreover, courts approving class settlements utilizing fluid or prospective recoveries recognize that many class members will not avail themselves of the prospective relief, and will therefore not derive a benefit from the settlement. *See, e.g., Cusack v. Bank United of Texas FSB*, 159 F.3d 1040, 1041 (7th Cir. 1998) ("The credits have a potential maximum value to the class exceeding $29,000,000. If not used in their entirety, as they almost certainly will not be, their value is less, but still not negligible."). Nevertheless, "the fact that some objectors would have preferred cash cannot be determinative of the issue whether the settlement before the court is reasonable." *In re Cuisinart Food Processor Antitrust Litig.*, 1983

---

*Utilities Commission*, 318 F.2d 187 (D.C. Cir. 1963). *See also Newberg on Class Actions* 10:17 (4th ed. 2002) (defining a cy pres distribution as "a distribution for the indirect prospective benefit of the class").

WL 153, at *7.  *See also Williams v. GE Capital Auto Lease*, 1995 WL 765266, at *9 (N.D. Ill. 1995) (rejecting class members' objection and approving class settlement using certificates for prospective discounts on either new automobile leases or early termination of current leases by class members in the future).

In the present case, the range of prescription pharmaceutical drugs affected by the proposed rollback is so large that the cost savings will inevitably benefit a much larger percentage of the class than the other typical discount settlements, which apply only to a particular manufacturer's products.  Further, the proposed rollback would deliver those savings without the need for a time-consuming and costly claim process or for the class members to take any affirmative steps in the litigation.  Moreover, the notice and opt-out rights provided will protect those class members who believe that the settlement value of their damages claims exceeds the future savings provided by the proposed rollback and the value of the other relief provided for in the proposed settlement.

### 2. Monetary Claims Can Be Released as Part of a Broad Settlement Without Monetary Consideration

It is not unusual for class action plaintiffs to release certain claims without separately-stated consideration as part of a broader settlement.  For example, in *In re General American Life Insurance Company Sales Practices Litigation ("In re General American")*, the Eighth Circuit held that a prior class action settlement of claims that related generally to "premium charges" barred a subsequent suit based on a more specific insurance practice known as "modal billing." 357 F.3d 800 (8th Cir. 2004).  The Eighth Circuit determined that the "modal billing" claims were properly released even though they were "never specifically at issue" in the prior class action, and rejected the argument that those claims were "given away for nothing." *Id.* at 804-05.

> It is simply not true that modal-billing claims were given away for nothing.  It is true that no separately-stated consideration was paid for those claims, but that is

5

> quite another thing. . . . The release of [modal billing claims] was one of a series of benefits conferred on the defendant by the class as part of the settlement. On the other side, defendant conferred benefits on the plaintiff class, including a monetary settlement, from which the plaintiff in this class has benefited, and a claims evaluation procedure that could produce additional relief. No part of the consideration on either side is keyed to any specific part of the consideration of the other. Each side gives up a number of things. This is the way settlements usually work.

*Id.* at 805. *See also TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("[A] court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.").

The same principles apply to class settlements -- like the one proposed here -- that release monetary claims in exchange for injunctive relief. For example, in *Mitchell v. Dutton*, the Sixth Circuit held that prison inmates' suit for money damages based on alleged racial discrimination was barred by a prior class action settlement that "in extinguishing all monetary claims, alternatively provided for broad injunctive relief . . . ." No. 87-5574, 1989 WL 933, *5 (6th Cir. Jan 3, 1989) 865 F.2d 1268 (6th Cir. 1989). *Cf. Bell Atlantic Corp v. Bolger*, 2 F.3d 1304, 1311-15 (3d Cir 1993) (in shareholder derivative action, court applied class action fairness considerations to approve a settlement that provided only non-monetary relief). Similarly, the First Circuit has noted the validity of a prior agreement in which "[prison] inmates agreed to drop their class action against prison officials and abandon their damage claims in exchange for the State's agreement to institute, and thereafter abide by [certain disciplinary procedures]." *Rodi v. Ventetuolo*, 941 F.2d 22, 27 (1st Cir. 1991). The package of consideration proposed here in settlement is valuable to the putative class and is in return for a complete release of claims.

### 3. No Significant Conflict Exists Between "Past" and "Future" Class Members

The Court has indicated its concern that the proposed settlement provides benefits to "future class members" at the expense of "past class members." Order, at 3. However, there is a nearly complete overlap between these categories of plaintiffs, in that consumers who have purchased prescription pharmaceutical drugs in the past will generally continue to do so in the future. Moreover, this is not a case like *Amchem*, where there were inherent conflicts between "currently-injured" plaintiffs who sought generous immediate payments and "exposure-only" plaintiffs who sought preservation of ample funds for the future. 521 U.S. at 626. Because the proposed settlement in this case provides prospective relief to all class members across the board on precisely the same basis, it is more closely analogous to *In re Agent Orange Prod. Liab. Litig.*, 996 F.2d 1425 (2d Cir. 1993). There, the supposed conflict between present and future class members was deemed "nonexistent" because plaintiffs whose injuries manifested after settlement approval were eligible for compensation from the same fund, and were thus treated the same as all other class members. *Id.* at 1435-36.

While there is a possibility here that some class members will have more significant past damages, but a limited need to purchase prescription pharmaceuticals in the future, these class members can simply opt out of the class and bring individual claims for money damages.

Consequently, there is no procedural or substantive basis precluding the ultimate certification and approval of the proposed settlement class with FDB under Rule 23(b)(3) as being fair, reasonable, and in the best interests of the class under all of the circumstances. Thus, for the reasons set forth above and in the prior submissions in support, this Court should grant preliminary approval of the proposed settlement, including under Rule 23(b)(3), in order that notice and an opportunity to opt-out can be provided to the putative settlement class at this time.

### B   Alternatively, Class Members' Injunctive and Monetary Claims Should Be Certified, Settled, and Released Under Rule 23(b)(2) With Notice and Opt-Out Rights

Alternatively, this Court can certify the proposed settlement class pursuant to Rule 23(b)(2) and also provide notice and opt-out rights pursuant to Rule 23(d)(2) to protect absent class members' interests with respect to the settlement and dismissal with prejudice of their claims for monetary relief as part of the proposed settlement. *See Callahan v. Commonwealth Land Title Ins. Co.*, Civ. A. No. 88-7656, 1990 WL 168273 (E.D. Pa. Oct. 29, 1990); *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549 (S.D. Ohio 1999).

In *Callahan v. Commonwealth Land Title Insurance Co.*, the district court certified a settlement class under both rule 23(b)(1)(A) and 23(b)(2) and approved a class settlement that abandoned monetary claims in favor of injunctive relief. The *Callahan* plaintiffs brought a class action alleging consumer protection and conspiracy claims stemming from a title insurer's allegedly excessive Notary Public fees. The putative class members sought both monetary *and* injunctive relief. However, the parties negotiated a proposed settlement providing only for injunctive relief, fees and costs. The court certified the settlement class under both Rule 23(b)(1)(A) and 23(b)(2), noting that plaintiffs had abandoned their claim for money damages. 1990 WL 168273, at *6. After certifying the class, the court examined the reasonableness of the settlement and stated that:

> In lieu of monetary damages, the settlements provide for injunctive relief. Although the potential aggregate liability facing the defendants is significant, equitable relief is more than appropriate given the risks inherent in proceeding to judgment and the minimal sum [notary fees] each class member stands to receive if successful. Moreover, the award of counsel fees provided for in the settlements is reasonable in that the abuses which the settlements are aimed to cure were exposed through the efforts of plaintiffs' counsel in advancing such a novel case. Given the uncertainty of the outcome of this litigation, the court finds the

8

>   equitable relief and provision for counsel fees and reimbursement of notice expenditures to be reasonable.

*Id*. at *15.

In *In re Cincinnati Radiation Litig.*, the court certified a settlement class of cancer patients who were allegedly exposed to radiation during research studies. The proposed settlement included both equitable and monetary components. The court determined that certification pursuant to Rule 23(b)(2) was appropriate with regard to the equitable relief, but that the monetary claims could not be certified and settled without providing a right to notice and opt out. *See id.* at 554-55. Rather than certifying a 23(b)(3) class, the court found that its provision of notice and opt-out rights pursuant rule 23(d)(2) adequately protected the absent class members, such that certification under 23(b)(2) was appropriate. *See id.* at 555. In the alternative, the Court can do the same here, providing adequate protection to absent class members through notice and opt-out rights and thereby permitting the release and dismissal with prejudice of Class members' claims for both injunctive and monetary damages as part of the overall settlement.

## III.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit that the Court should grant the joint motion for preliminary approval of the proposed class settlement and certification of the class under Rule 23(b)(3), or in the alternative provide for certification under Rule 23(b)(2) and notice and opt-out rights under Rules 23 (d)(2) and 23 (d)(5) to permit the settlement, release, and dismissal with prejudice of the monetary claims of the putative class as part of the overall settlement that has been proposed for approval.

Dated: November 22, 2006

Respectfully submitted,

        NEW ENGLAND CARPENTERS HEALTH
        BENEFITS FUND,
        PIRELLI ARMSTRONG RETIREE MEDICAL
        BENEFITS TRUST,
        TEAMSTERS HEALTH & WELFARE FUND OF
        PHILADELPHIA AND VICINITY,
        and PHILADELPHIA FEDERATION OF
        TEACHERS HEALTH AND WELFARE FUND,


        By  **/s/ Thomas M. Sobol**
        Thomas M. Sobol (BBO # 471770)
        Edward Notargiacomo (BBO #567636)
        Hagens Berman Sobol Shapiro LLP
        One Main Street, 4th Floor
        Cambridge, MA 02142
        Phone: 617-482-3700


        Steve W. Berman
        Sean R. Matt
        Barbara A. Mahoney
        Hagens Berman Sobol Shapiro LLP
        1301 Fifth Avenue, Suite 2900
        Seattle, WA 98101
        Telephone: (206) 623-7292
        Facsimile: (206) 623-0594

        Elizabeth Fegan
        Hagens Berman Sobol Shapiro LLP
        60 W. Randolph Street, Suite 200
        Chicago, IL 60601
        Telephone: (312) 762-9235
        Facsimile: (312) 762-9286

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Edelson & Associates, LLC
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

Case 1:05-cv-11148-PBS     Document 172     Filed 11/22/2006     Page 13 of 14

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on November 22, 2006.

                                                /s/ Thomas M. Sobol
                                                Thomas M. Sobol