UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>                  Plaintiffs,<br><br>           v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                  Defendants. | C.A. No. 1:05-CV-11148-PBS |

**PLAINTIFFS' PROPOSED TRIAL PLAN FOR TRIAL OF CLASS CLAIMS AGAINST McKESSON ASSERTED IN THE SECOND AMENDED COMPLAINT**

## PLAINTIFFS' PROPOSED TRIAL PLAN
## FOR THE MCKESSON WAC/AWP MARKUP LITIGATION

Plaintiffs propose to try this matter on a classwide basis in two phases.

In Phase I of the trial, Plaintiffs will prove the elements of their causes of action ***using evidence that is common to all Class members***. Liability will be demonstrated using documents, data, testimony from Defendants and expert testimony. Expert testimony and data from Plaintiffs and Class members will also be used to demonstrate classwide injury.

After aggregate damages are awarded, the damages suffered by each Class member on an individual claims basis will be subject to allocation. The format of the allocation proceeding will differ slightly between the classes. Consumer Class members will only need to present documentary evidence establishing (i) co-payments made for Marked Up Drugs and (ii) that their plan paid based on AWP. This latter showing will be made by information obtained directly from TPPs. The Third-Party Payor Class members will present claims data demonstrating AWP-based reimbursements made for Marked Up Drugs. For all Classes, Plaintiffs propose that a Special Master evaluate the individual damage claims and submit a report and recommendation to the Court.

Plaintiffs' trial plan is well-grounded in class action jurisprudence. Indeed, it is very common for courts to have follow-on proceedings regarding allocation or even individual damage claims. *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), *cert. denied*, 543 U.S. 1051 (2005); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003); *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538 (E.D. Va. 2000); 3 CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, § 9:53 at 429-30 (4th ed. 2002) (collecting cases); 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1781

(2d ed. 1986); *see also* Fed. R. Civ. P. 23(c)(4) ("When appropriate . . . an action may be brought or maintained as a class action with respect to particular issues[.]").

Set forth below is an evidentiary outline demonstrating how this case will be tried as a class action.

## PHASE I:
## PROVING LIABILITY WITH COMMON EVIDENCE

In Phase I, the jury will be charged with determining whether Plaintiffs have proved the required elements of RICO set forth below (and, by definition, violations of California statutory and common law). As to damages, the jury will be asked to (i) find that Defendants' actions proximately caused Plaintiffs' and Class members' injury, and (ii) assess the amount of aggregate class damage, thereby allowing for proof of claims in the allocation phase. Dr. Hartman's Declaration establishes and provides a foundation for how this can be accomplished at trial. Hartman Decl., ¶¶ 18-22.

**A.    Proving The Required RICO Elements Using Evidence Common To All Class Members**

   **1.    Conduct of an Enterprise**

Through the following common evidence, Plaintiffs will demonstrate in Phase I that (i) the enterprise during the Class Period constituted an ongoing and continuous business organization separate and apart from the activity in which it engaged, (ii) the participants shared a common purpose, and (iii) Defendants participated, directly or indirectly, in the enterprises' affairs. The common evidence that each Class member will utilize includes the following:

   a.    Evidence that AWPs published by First Data are used as a benchmark for negotiating payments by third-party payors who are Class members for the drugs at issue. This evidence will come from a sampling of Plaintiffs and Class

3

      members as well as PBM form contracts.

b.    Evidence that Defendants engaged in a course of conduct that improperly inflated the WAC-to-AWP markup and the ultimate AWPs used by Plaintiffs and Class members as the basis for reimbursement. This evidence will come from documents from Defendants' files showing the implementation of the scheme.

c.    Evidence that Defendants' conduct artificially inflated the published AWPs for the drugs that are the subject of this complaint. This evidence will come from Defendants' files.

**2.    Pattern of Racketeering Activity**

Through the following common evidence, Plaintiffs will demonstrate that Defendants (i) knowingly devised or participated in a scheme to defraud, (ii) obtained money or property by means of false or fraudulent pretenses, representations and promises, and (iii) used the mails or interstate wire facilities in carrying out the scheme:

a.    Defendants' communications about the scheme and its implementation;

b.    Defendants' documents and testimony, including documents and testimony evidencing Defendants' recognition of AWP as an industry-wide reimbursement benchmark, and documents evidencing that Defendants implemented the scheme; and

c.    Dr. Hartman and other expert testimony demonstrating that Defendants inflated AWPs to the extent of the WAC-AWP markup.

**3.    Proximate Cause of Injury**

Plaintiffs will demonstrate proximate cause through, *inter alia*:

a.    Documents and testimony from Defendants showing that the injury to Class members in the form of the payment of higher prices was foreseeable and an

4

    intended consequence of AWP inflation. Plaintiffs will offer McKesson's own documents admitting to the impact on the Class and the benefit of the scheme to McKesson's clients;

 b. Expert testimony regarding the ubiquity of AWP as a reimbursement benchmark;

 c. Examples of private payer contracts utilizing AWP as a benchmark;

 d. PBM testimony that most contracts base reimbursement on AWP;

 e. Dr. Hartman testimony demonstrating that (i) Defendants implemented an across-the-board increase in the WAC-AWP markup, (ii) Plaintiffs and Class members reimbursed pharmacies at a reimbursement rate based on the inflated AWPs (*i.e.*, a demonstration of class injury), and (iii) what payment levels would have been absent the conspiracy;

 f. Dr. Hartman analysis and testimony establishing the aggregate amount of class damage, or Dr. Hartman presenting an inflation figure per drug, leaving to the damage phase proof of the amount of damages for each Class member; and

 g. The jury would return a verdict that would establish inflation per drug. Any Class member who paid an inflated amount is damaged, thus the verdict decides the issue for the class.

**B. Proving The Elements Of State Unfair And Deceptive Trade Practices Acts and Conspiracy Using Evidence Common To All Class Members**

"Mail and wire fraud, the predicate acts underlying Plaintiffs' RICO claims, are by definition unfair and deceptive acts. If Plaintiffs are able to prove any one or more of their RICO claims, their ability to satisfy the elements of a consumer protection act claim under any of the referenced statutes will follow almost as a matter of course." *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 181 (D. Mass. 2003).

Nonetheless, under California law reliance is not an element, and Plaintiffs need only prove a capacity to deceive and unfair practices. Those elements are capable of proof using common evidence including:

a.  Defendants' own documents evidencing that they agreed to the 20-25% mark up of the WAC-AWP Spread;

b.  An expert analysis of the spreads pre- and post-conspiracy;

c.  Use of AWPs by TPPs and consumers to the extent they make a co-pay based on AWP; and

d.  Evidence from Class members indicating a lack of knowledge of the markup.

**PHASE II:**
**INDIVIDUALIZED ALLOCATION OF AGGREGATE DAMAGES**

Fed. R. Civ. P. 53 authorizes the Court to appoint a Special Master "to perform an accounting or resolve a difficult computation of damages" with the consent of the parties or where issues are to be decided by the Court without a jury. Indeed, Special Masters are frequently employed for this purpose in class actions. *See, e.g., Chisolm*, 194 F.R.D. at 553; ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS, § 9:55 at 438-41 (4th ed. 2002) (collecting cases); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004) (approving use of management tool such as a special master in second phase). In this phase, a Special Master will be charged with approving each individual Class member's proofs of claim and data provided by the Class members. The Special Master evaluates each proof of claim pursuant to a formulaic calculation provided by Plaintiffs' expert and that will have been approved by the jury.

A. **Consumer Class**

Notice to the Class is provided of the liability determination in Phase I.  Class members submit documentation showing amount of 20% co-pays made for Marked Up Drugs, and those payment are cross checked to make sure the Plan paid based on AWP.  The Special Master then rules on allocation amounts and makes recommendation to Court.

B. **Third-Party Payor Class**

Notice to Class is provided of the liability determination in Phase I.  Class members submit documentation of AWP-based reimbursement for Inflated Drugs.  The documentation will primarily consist of:  (i) contracts with PBMs and providers; and (ii) claims data showing each reimbursement made for Marked Up Drugs on the basis of AWP, along with the reimbursement amount.

Plaintiffs' accounting expert approves damage amount for each Class member to Special Master.  Defendants can submit evidence contradicting proofs but cannot dispute issues decided in Phase I.  The Special Master then decides the allocation and makes recommendation to Court.

DATED:  December 20, 2006                By  /s/ Steve W. Berman
                                                            Steve W. Berman
                                                            Sean R. Matt
                                                            Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol (BBO#471770)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003


Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

001821-13 145307 V1

## CERTIFICATE OF SERVICE

  I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on December 20, 2006.

                   <u>/s/ Steve W. Berman    </u>
                    Steve W. Berman

001821-13 145307 V1