IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST, TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME-HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>          Plaintiffs,<br><br>   v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>          Defendants. | C.A. No. 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**DEFENDANT MCKESSON CORPORATION'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION FOR A
DETERMINATION OF APPLICABLE STATE LAW**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II. ARGUMENT .............................................................................................................. 2

    A.  Under Massachusetts Choice of Law Principles, The Laws of The Home States of The Class Members Govern Plaintiffs' Claims ........................................ 2

    B.  None of Plaintiffs' Alternative Analyses Lead to the Application of California Law ............................................................................................................ 5

    C.  An Actual Conflict Exists Between the Various States' Consumer Protection Laws ....................................................................................................... 8

III. CONCLUSION ........................................................................................................ 11

**I.     INTRODUCTION**

In the related AWP MDL, where classes of third-party payors ("TPPs") and consumers sued over fraudulently inflated AWPs, this Court held that a class member's "home state" is the state that "has a more significant relationship" to fraud claims "than the place of business of the defendant . . . ." *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 230 F.R.D. 61, 83 (D. Mass. 2005) ("*Pharm. III*"). Although plaintiffs in the MDL argued that defendants' resident states should control because the alleged misrepresentations were made there, this Court found that the most significant factor for choice of law purposes in a fraud case is the place of plaintiff's reliance. That ruling is equally applicable here, where classes of TPPs and consumers likewise seek to invoke state consumer protection law to address their claims of fraudulently inflated AWPs. Indeed, plaintiffs here readily concede that they "received the representations and acted in reliance on them in their respective home states." (Pls.' Mem. in Support of Mot. for Determination of Applicable State Law, at 2) ("Pl. Br."). The decision for this Court to follow its prior ruling is therefore an easy one.[1]

The only distinction plaintiffs make between the AWP MDL and this case is the fact that *both* defendants in this case have their principal place of business in California, rather than in nine states, as was the case with the defendants in the MDL. Plaintiffs thus argue that California has a strong interest in policing corporate conduct within its borders, and that the individual states have "no interest" in applying their laws. This, however, is no distinction at all. After extensive briefing and argument, this Court rejected plaintiffs' contention that where a defendant resides and allegedly commits the fraudulent conduct overrides the plaintiffs' places of reliance. Whether one state or nine is rejected based on this legal principle is immaterial. Moreover, this

---

[1] Acknowledging their uphill battle on this issue, plaintiffs informed the Court in 2005 that they would file a copy-cat suit in California federal court (where California choice of law rules would apply) to improve their chances of applying California law to their nationwide claims. Hr'g Tr. 37-38, Nov. 30, 2005. Plaintiffs' law-shopping effort failed, however, because the California suit was dismissed at the pleading stage. *District Council 37 Health & Security Plan, et al. v. McKesson Corp.*, Case No. C6-00718 SBA, Order Granting McKesson's Motion to Dismiss (N.D. Cal. May 11, 2006).

Court, in harmony with numerous others, expressly found that the primary purpose of the states' consumer protection laws is to protect the residents of those states, not to police corporate conduct.

Without a factual distinction from the MDL case, plaintiffs try to invoke alternative analyses for resolving the choice of law question. Thus, plaintiffs cite to Restatement sections applicable to torts, cases decided under California choice of law rules, and other Restatement provisions that plaintiffs contend lead to the invocation of California law. None is availing because they are either inapplicable to a fraud case under Massachusetts choice of law rules, or they confirm that the choice of law analysis performed in the MDL is correct.

Plaintiffs last-ditch effort is to assert that there is no conflict between California and all other states' laws anyway, so California's interests should override the choice of law analysis this Court performed in the MDL. (Pl. Br. at 7-8). This argument is likewise without merit. Under the appropriate choice of law analysis, California's interests do not trump those of the consumers' home states, and in any event, there are attributes of California law that belie plaintiffs' characterization of it as "the most protective."

The choice of law question presented by this case is precisely the same question this Court already answered in the MDL. The same answer applies here: California law is not controlling.

## II.   ARGUMENT

### A.   Under Massachusetts Choice of Law Principles, The Laws of The Home States of The Class Members Govern Plaintiffs' Claims

In the MDL, this Court conducted a thorough analysis under Massachusetts' choice of law rules and applied it to essentially the same type of claim alleged here: consumers and TPPs alleging fraudulent inflation of AWPs. Thus, the Court followed a "functional approach," looked to the Restatement (Second) of Conflict of Laws ("Restatement"), and rejected a mechanical

2

counting of the number of contacts.[2]  Because plaintiffs asserted consumer protection claims based upon allegations of fraud and misrepresentations, Restatement § 148(2) applied.  *Pharm. III,* 230 F.R.D. at 82.  The Court relied upon three significant factors from Restatement Section 148(2) in determining that the law of each class member's home state applies:  "the place of action in reliance, the place where misrepresentations were received, and the place of plaintiff's domicile."  As the Court explained, the first of these factors — where the plaintiff acted in reliance on a defendant's representation — is the most significant.  *Id*. at 82-83.

The Court's choice of law analysis in the MDL is equally applicable here.  Plaintiffs concede, as they must, that they "received [the alleged] representations and acted in reliance on them in their respective home states" (Pl. Br. at 2), thus satisfying the first two, and the most significant, factors of section 148(2).  Moreover, the place of plaintiffs' domicile also calls for the application of the law of their home states.  The Restatement teaches that "[t]he plaintiffs' domicil[e] or residence . . . are contacts of substantial significance when the loss is pecuniary in nature" as in fraud and misrepresentation cases.  Restatement § 148 cmt. i.  "This is so because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship."  *Id.*  Consequently, "[t]he domicil[e], residence and place of business of the plaintiff are more important than similar contacts on the part of the defendant."  *Id; see also Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2005 U.S. Dist. LEXIS 8243, at *14 (N.D. Ill. Apr. 26, 2005) (noting that in consumer fraud action domicile of plaintiffs is clearly more important than the domicile of defendants).

Plaintiffs assert that the "choice of law issue in this case is substantially different" requiring a different analysis from that in *Pharm. III* (Pl. Br. at 1).  Yet the only basis for plaintiffs' assertion is the fact that both defendants reside in California and thus conducted the

---

[2] *Pharm. III*, 230 F.R.D. at 82 (citations omitted); *see also Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.*, 803 N.E.2d 750, 752 (Mass. App. Ct. 2004) ("The Massachusetts functional approach is explicitly guided by the Restatement"); *Daynard v. MRRM, P.A.*, 335 F. Supp. 2d 156, 161 (D. Mass. 2004) (noting that Massachusetts explicitly rejects a mechanical approach to choice of law analysis).

alleged fraud there. (Pl. Br. at 2). This Court already rejected this argument in the MDL, and it should likewise be rejected here. *Pharm. III*, 230 F.R.D. at 83. The fact that there is one state for defendants here as opposed to nine in the MDL does not alter the applicable choice of law principles that led to the selection of plaintiffs' home states over the states where the allegedly fraudulent conduct occurred.

Nor have plaintiffs added any further distinction by asserting that "First Data's AWP data" is a tangible thing located in California. (Pl. Br. at 2, citing Restatement § 148(2)(e) (one potential contact is "the place where a tangible thing which is the subject of the transaction between the parties was situated at the time")). To begin with, FDB's AWP data is not a tangible thing. It is an electronic database that can exist simultaneously on numerous computers, including the computers of TPP class members in their home states. *See Clark*, 2005 U.S. Dist. LEXIS 8243, at *16 (in consumer fraud case involving online sale of consumer credit report, court expressed doubt that a credit report saved on defendants' computer in California could be a tangible thing). More importantly, plaintiffs' claims stem from the use of the AWP as a benchmark price, not as a chattel that was bought or sold. Thus, the fact that data may reside at a defendant's principal place of business -- as well as everywhere else it was disseminated -- is not a compelling factor in this type of case.[3] To the contrary, as this Court made clear, the location where class members allegedly relied upon FDB's AWP data is what controls.

**B.    None of Plaintiffs' Alternative Analyses Lead to the Application of California Law**

In an effort to escape this Court's prior ruling, plaintiffs suggest alternative approaches to determine the controlling state law. Each is unavailing.

---

[3] *See* Restatement § 148 cmt i ("contact is of particular importance when the subject of the transaction is land."); *cf. Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 272 F. Supp. 2d 482, 507 (E.D. Penn. 2003) (considering location of pressure vessels in action brought by purchaser alleging defects in products); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 214-15 (E.D. Penn. 2000) (considering location of motor boats in action brought by purchasers alleging misrepresentations about fuel consumption and other performance criteria); *Tidemark Bank for Savs., F.S.B. v. Morris*, No. 91-13214-MA, 1993 U.S. Dist. LEXIS 15307, at *12-*13 (D. Mass. Oct. 21, 1993) (considering location of property in action based upon default on mortgage of property).

First, plaintiffs point to the general torts section of the Restatement, section 145, to support their argument that the "location of Defendants' misconduct" should be determinative of the choice of law issue. (Pl. Br. at 2-3). In consumer fraud cases, however, section 148 sets forth the relevant choice of law contacts. *Pharm. III*, 230 F.R.D. at 82.[4] It is only where the injury suffered is the "loss of customers or of trade" that the location of a defendant's misconduct takes on greater significance. Restatement § 145 cmt f.[5] Since the loss of customers or trade value is more likely to result in an unfair gain to defendants, rather than a pecuniary loss to plaintiffs, the place of injury does not play as important a role in these business tort cases as it does in consumer fraud cases. *Id.*

Even in business tort cases, however, the courts do not just mechanically apply the law of defendants' place of business. Instructive is *Value Partners S.A. v. Bain & Co.*, 245 F. Supp. 2d 269 (D. Mass. 2003), relied on by plaintiffs. (Pl. Br. at 3, n.5.) In *Value Partners* this Court considered whether to apply Massachusetts or Brazilian law to business tort claims brought against a Massachusetts company for theft of trade secrets and unfair business practices in hiring away employees of the Brazilian company. The Court rejected the notion that the law of the defendant's domicile should apply, despite Massachusetts' "particular interest in policing the behavior of businesses domiciled within Massachusetts." *Id.* at 278. (citation omitted). Thus, Brazil, just as the home states' of the class members here, had "a more direct interest in

---

[4] *See also Lyon*, 194 F.R.D. at 214 (Restatement § 148 provides relevant choice of law contacts for consumer protection claims); *Tidemark Bank for Savs.*, 1993 U.S. Dist LEXIS 15307, at *12-*13, *aff'd* 57 F.3d 1061 (1st Cir. 1995) (applying § 148(2) to misrepresentation claim); *Computer Systems Eng'g, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1368 (D. Mass. 1983), *aff'd*, 740 F.2d 50 (1st Cir. 1984) (applying § 148(2) to misrepresentation claims)

[5] Plaintiffs' cases plainly demonstrate the distinction between business torts and consumer fraud claims. *See, e.g.*, *Fleet Mgmt Sys. Inc. v. Archer-Daniels-Midland Co.*, 627 F. Supp. 550, 562 (C.D. Ill. 1986) (applying comment f to claims of unfair competition through misappropriation of plaintiff's proprietary computerized truck routing system, but nonetheless rejecting argument that locus of defendant's misconduct is controlling); *Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.*¸ 753 F. Supp. 1566, 1570 (S.D. Fla. 1990) (applying comment f in misappropriation of trade secrets case).

regulating the behavior of foreign companies" affecting its residents than Massachusetts did in policing the alleged misconduct of its corporations. *Id.* at 277.

Second, plaintiffs claim that the principles of Restatement § 6 dictate that California law applies. This argument is also without basis. Restatement § 6 considers the interests of the parties, the states involved, and the interstate system as a whole. This Court considered that section in the MDL, and nevertheless held that class members' home states' laws must control: "The conclusion that the home state of the consumer has a more significant relationship to the alleged fraud than the place of business of the defendant is in accordance with the principles of Restatement § 6, since state consumer protection statutes are designed to protect consumers rather than regulate corporate conduct." *Pharm. III*, 230 F.R.D. at 83 citing *Relafen*, 221 F.R.D. 260 at 277 ("the primary aim of . . . consumer protection laws generally . . . is compensating consumers, not policing corporate conduct."); *Lyon*, 194 F.R.D. at 216 ("[S]tate consumer protection acts are designed to protect the residents of the states in which the statutes are promulgated."); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70-71 (S.D.N.Y. 2002) (rejecting argument that interest of the defendants' home state of New Jersey in "holding its corporate citizens accountable is so substantial that it trumps all other factors"); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) ("Each Plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.").

While California undoubtedly has an interest in regulating conduct within its borders, as this Court cautioned in *Value Partners,* the location of the alleged misconduct "must not be overemphasized" because "[t]o some extent, every tort rule is designed both to deter other wrongdoers and to compensate the injured person," making it "difficult to tell which of these objectives is the more important." *Value Partners*, 245 F. Supp. 2d at 277, n.6 (quoting

6

Restatement § 145 cmt c.).[6] The class members' home states have a strong interest in applying their laws to claims that their citizens relied upon fraudulent representations *in those states.*

Third, plaintiffs seek to bolster their argument that California has a superior interest over the class members' home states based upon several cases in which the California courts have applied California consumer protection laws to a nationwide class when the defendants were based in California.[7] These cases, however, are inapposite because they apply *California* choice of law rules to determine if *California* has a sufficient interest in adjudicating the claims of a nationwide class that involve conduct emanating from California. In this case, it is Massachusetts choice of law that controls. (Pl. Br. at 3). Plaintiffs' citation to *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1063-64 (1999), is even more off point, as this case does not interpret California's consumer protection laws, conduct a choice-of-law analysis, or even relate to class certification.[8]

### C. An Actual Conflict Exists Between the Various States' Consumer Protection Laws

Plaintiffs' final argument is that there is no conflict in applying California law to all class members' state law claims because California laws are "compatible with the most protective state unfair competition and false advertising laws" in the nation. (Pl. Br. at 7.) This type of "false conflict" analysis was implicitly rejected by the Court in the MDL when it acknowledged what many courts have held: "[s]tate consumer-protection laws vary considerably, and courts

---

[6] *See also Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 6 (1st Cir. 2004) (law of consumer's home state, Maryland, applied to claims that insurance company engaged in unfair claims practices in Massachusetts, despite Massachusetts' interest in regulating insurance companies conducting business within its borders); *Clark*, 2005 U.S. Dist. LEXIS 8243, at *11-*12 (consumer fraud case rejecting application of California law, defendants' domicile, in favor of law of consumer's home state).

[7] *See* Pl. Br. at 6, citing *Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 242-243 (2001); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 615 (1987); *J.P. Morgan & Co., Inc. v. Super. Ct.*, 113 Cal. App. 4th 195, 221 (2003).

[8] Similarly inapposite is plaintiffs' reliance on a New Jersey state court case (Pl. Br. at 6, n.6), *Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co.*, 894 A.2d 1136, 1153 (N.J. Super. Ct. App. Div. 2006), applying New Jersey choice of law rules to a New Jersey corporation.

must respect these differences rather than apply one state's law to sales in other states with different rules." *Pharm. III*, 230 F.R.D. at 83 (quoting *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002)); *see also In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (finding it unnecessary to review each state's consumer protection laws, and relying on Seventh Circuit's conclusion that a conflict exists); *BMW of N. Am. v. Gore*, 517 U.S. 559, 569-70 (1996) (noting that states' consumer protection statutes "do not[] provide such protection in a uniform manner," resulting in "a patchwork of rules representing the diverse policy judgments of lawmakers in 50 States.").

Indeed, a few illustrative, but by no means exhaustive, examples demonstrate some of the aspects of California law that belie plaintiffs' characterization of it as uniquely protective. Contrary to plaintiffs' suggestion, California's unfair competition and false advertising statutes provide only for restitution and do not provide for damages, punitive damages, or attorneys' fees. Cal. Bus. & Prof. Code §§ 17203, 17536; *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) ("Plaintiffs may not receive damages, much less treble damages, or attorney fees"). Restitution under California's consumer protection laws has "specific limitations" and "means the return of money to those persons from whom it was taken . . . ." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 455 (2005). It does not allow a plaintiff to pursue wrongfully obtained profits, unless they were given to defendants by the plaintiff. *Id.* at 459-60. Other states, by contrast, vary significantly as to the available remedies, some even providing minimum damages, mandatory treble damages, and mandatory attorneys' fees.[9]

---

[9] *See, e.g.*, D.C. Code Ann. § 28-3905(k)(1)(A) (greater of $1500 per violation or treble damages); *Dist. Cablevision Ltd. P'shp*, 828 A.2d 714, 726, 728-29 (D.C. 2003) (punitive damages, *in addition* to treble damages, available for egregious conduct); Idaho Code Ann. § 48-608(1) (greater of actual damages or $1,000, punitive damages); *Id*. § 48-608(4) (mandatory attorneys' fees to prevailing plaintiff); N.J. Stat. Ann. § 56:8-19 (actual damages, mandatory treble damages, mandatory attorneys' fees to prevailing plaintiff); Conn. Gen. Stat. § 42-110g(a) & (d) (actual damages, punitive damages and reasonable attorneys' fees available).

8

In addition, California's consumer protection statutes were recently amended, and now grant standing for a private action only to a person who "has suffered injury in fact and has lost money or property as a result of" the unfair competition or false advertising. Cal. Bus. & Prof. Code §§ 17204, 17535. Thus, contrary to the pre-amendment cases cited by plaintiffs, California consumer protection laws now require a plaintiff to show actual injury, reliance, and causation. *See e.g.*, *Brown v. Bank of Am.*, No. 05-10713-PBS, 2006 U.S. Dist. Lexis 76418, at* 16-*17 (D. Mass. Oct. 17, 2006) (Saris, J.) (noting that "California's recently amended consumer protection statute," section 17200, requires a showing of "causation" and "injury in fact" to "prevent uninjured private persons from suing"); *see also Doe v. Texaco, Inc.*, No. C 06-02820 WHA, 2006 U.S. Dist. LEXIS 53930, at *9 (N.D. Cal. July 21, 2006) (concluding that "the 'as a result of' language in the statute means that, for a plaintiff to state a claim, he or she must allege that they *relied* upon the defendant's acts of unfair competition and, *as a result*, suffered injury in fact.").[10] In contrast, numerous other states do not require injury, causation and/or reliance.[11]

Similarly, California's CLRA has numerous restrictions that conflict with the consumer protection laws of some other states. For example, "[r]elief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003). Moreover, standing to sue under the CLRA is limited to natural persons who purchased the product "primarily for personal, family, or household purposes." Cal. Civ. Code § 1761(a), (d). TPPs are thus precluded from

---

[10] On November 1, 2006, the California Supreme Court granted review of a recent California appellate court decision interpreting Proposition 64. The questions presented to the Court are whether, in a class action brought under Business and Professional Code sections 17200 and 17500, (1) every member of the proposed class must have suffered "injury in fact," or is it sufficient that the class representative comply with that requirement; and (2) whether every member of the class must have actually relied on the alleged misrepresentations.

[11] *See, e.g.*, *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 176 (D. Conn 2000) ("Unlike a claim of fraud, [Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, *et seq.*,] does not require reliance or a claim that the misrepresentation became part of the basis of the bargain."); Del. Code Ann. tit. 6 § 2533(a) (persons "likely to be damaged" may bring action); D.C. Code Ann. § 28-3904 (merchant may violate act "whether or not any consumer is in fact misled, deceived or damaged thereby."); Minn. Stat. Ann. § 325D.45 (persons "likely to be damaged" may bring action under MUTPA).

bringing claims under the CLRA.  By contrast, other states allow "any person" to bring an action, including natural, corporate, or otherwise.  *See, e.g.*, N.J. Stat. Ann. § 56:8-19 (Consumer Fraud Act); Idaho Code Ann. § 48-608 (Consumer Protection Act); N.D. Cent. Code § 51-15-02 (Unlawful Sales or Advertising Practices).

Application of California's laws to the entire class would thus impugn the interests of the class members' home states to apply their consumer protection laws, which in many cases are more protective.  *Clark*, 2005 U.S. Dist. LEXIS 8243, at *16-*17 (rejecting argument that court should apply California consumer protection statute because it is presumably more beneficial to plaintiffs, finding that any California interest "does not override Illinois's more significant contacts to this case.").

### III.   CONCLUSION

There is simply no reason for the Court to deviate from its prior ruling.  The most significant contacts demonstrate that the class members' home states have the greatest interest in having their laws applied to plaintiffs' consumer fraud claims.  For all the foregoing reasons, McKesson respectfully requests that the Court find that the laws of the home states of the class members govern plaintiffs' state law claims.

January 24, 2007

                Respectfully submitted,

                By  /s/Lori A. Schechter
                  Lori A. Schechter

                MELVIN R. GOLDMAN (*pro hac vice*)
                LORI A. SCHECHTER (*pro hac vice*)
                PAUL FLUM (*pro hac vice*)
                TIFFANY CHEUNG (*pro hac vice*)
                MORRISON & FOERSTER LLP
                425 Market Street
                San Francisco, California  94105-2482
                Telephone: (415) 268-7000
                Facsimile: (415) 268-7522

                JOHN KIERNAN
                NICOLE JOHNSON

BONNER KIERNAN TREBACH & CROCIATA
One Liberty Square
Boston, MA 02109
Telephone: (617) 426-3900
Facsimile: (617) 426-0380

**CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on January 24, 2007.

        /s/Lori A. Schechter
        Lori A. Schechter