IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST, TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY, PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, DISTRICT COUNCIL 37 HEALTH & SECURITY PLAN, MAUREEN COWIE, JUNE SWAN, and BERNARD GORTER, | Case No. 1:05-CV-11148-PBS |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation, and MCKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**DEFENDANT MCKESSON CORPORATION'S RESPONSE TO
PLAINTIFFS' PROPOSED TRIAL PLAN**

# INTRODUCTION

Plaintiffs have not proposed a workable trial plan. The bare outline they have sketched fails to account for myriad complexities that will be encountered in both phases. These complexities make adjudication of the claims wholly unmanageable in a class format. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (upholding denial of class certification where "there was no manageable trial plan adequate to deal with individualized issues and variances in state law"). As the First Circuit has recognized, "class action machinery is expensive and in our view a court has the power to test disputed premises early on if and when the class action would be proper on one premise but not another." *Tardiff v. Knox County*, 365 F.3d 1, 4-5 (1st Cir. 2004). Even a cursory test of the premises underlying plaintiffs' trial plan shows that the plan does not provide a suitable roadmap to render verdicts on either liability or damages.

## I. PLAINTIFFS' PROPOSED PHASE I TRIAL IGNORES CRITICAL ISSUES OF LIABILITY.

### A. The "Aggregate" Approach To Liability Fails To Address Issues Of Causation Unique To Each Class Member.

The proposal to determine class-wide liability and "aggregate damages" in Phase I is the lynchpin of plaintiffs' trial plan. But as shown in McKesson's Opposition to Class Certification, plaintiffs' class-wide impact approach is inappropriate here. Even if the conspiracy had transpired as alleged, the proposed formula does not account for the numerous and individualized ways impact of the alleged increase in AWPs could be defeated, leaving a particular class member with no impact at all. Contrary to the evidence, plaintiffs' class-wide impact argument wrongly assumes that no other pricing terms, besides AWPs, changed during the 3½ year class period. It further assumes that all TPPs behaved monolithically throughout, and that no TPP knew of the rising AWPs, adopted measures to counteract those effects, or changed its contractual terms to counteract those effects. (Opp'n at 4-7.)[1] Because the proposed formula

---

[1] The Response to Plaintiffs' Proposed Trial Plan uses the same abbreviations used in McKesson's Opposition to Class Certification.

1

fails to account for any of these factors, it will not yield a meaningful assessment of defendants' liability.

### B.  Additional Liability Issues Will Turn On Fifty Separate Bodies Of State Law.

Plaintiffs' proposal for adjudicating uniform liability in Phase I rests on the premise that California law will govern both classes' claims. (Trial Plan at 3, 5-6.) But this Court held in the MDL that under Massachusetts choice of law rules, the laws of each class member's "home state" govern the state law claims. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005) ("*Pharm III*"). Plaintiffs accordingly offer the fallback position that there is no need to draw distinctions among state laws, because if they successfully prove their RICO claim, defendants' liability under the consumer protection and civil conspiracy claims of all the states will follow as a matter of course. (Trial Plan at 5.) To the contrary, liability under state law will turn on several critical issues that vary among the fifty states, such as different statutes of limitation, different standards of reliance and causation, and whether or not corporations are granted standing under the various states' consumer protection statutes.[2]

The trial plan does not provide any roadmap for how such fundamental variations in state law will be taken into account. In their class motion, plaintiffs recognize the possibility that such distinctions will be necessary, suggesting that "the Court may certify subclasses of claims based on state laws with essentially the same requirements." (Pl. Br. at 16 n.27, 19.) Yet plaintiffs have completely failed to satisfy, in either their trial plan or class motion, their burden to

---

[2] The consumer protection laws of many states have statutes of limitation that would cut off part of the class period for both classes. Connecticut, for example, requires that suit be brought within three years "from the date of the act or omission complained of." *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 476 (Conn. 1988). While some states toll the period until a plaintiff has had a reasonable opportunity to discover the tortious act, others do not. *See, e.g.*, *A.J.'s Auto. Sales v. Freet*, 725 N.E.2d 955, 965 (Ind. Ct. App. 2000) (holding that the two-year "statutory period commences to run at the occurrence of the deceptive act" rather than the date of discovery). The same complications would arise for the civil conspiracy claims. *See, e.g.*, *Stevenson v. Koutzarov*, 795 S.W.2d 313, 318 (Tex. App. 1990) ("A person must bring suit for [civil conspiracy] not later than two years after the day the cause of action accrues.").

  As for the standing of corporations, plaintiffs' failure to account for states that disallow corporate plaintiffs was fatal to certification of a TPP class in the MDL. *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 231-32 (D. Mass. 2006). Ten months after that ruling, plaintiffs inexplicably reasserted the identical flawed grouping in this case. Second Amended Complaint ("SAC") ¶ 227 (incorrectly alleging that 35 jurisdictions (the same ones offered in the MDL) permit suits by corporations).

"demonstrate 'through an extensive analysis' that grouping is feasible." *Pharm. III* at 84.  This is the class proponents' burden, not the Court's.  *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 221 (E.D. Pa. 2000).  Nor have plaintiffs proposed class representatives for such subclasses or demonstrated that the subclasses themselves satisfy Rule 23's requirements.  *See In re Telectronics Pacing Sys.*, 168 F.R.D. 203, 221 (S.D. Ohio 1996).

Instead, plaintiffs have offered only three simplistic charts that do nothing more than identify a handful of differences among the various laws, and wholly ignore other essential elements of their claims.  (*See* Berman Decl. Exs. 51-53.)  The proposed classes cannot be certified absent suitable groupings.[3]  *Pharm III*, 230 F.R.D. at 86 ("Plaintiffs have not proposed feasible groupings of these statutes, as would be necessary to proceed.").

## II.  PLAINTIFFS' PROPOSED PHASE II IS LIKEWISE UNWORKABLE.

As the Court held in *Pharm III*, the prospect of holding 11,000 damages trials in Phase II precludes certification on manageability grounds.  230 F.R.D. at 95 ("Holding 11,000 individual damages trials in Part II is a management nightmare.").  Yet plaintiffs propose that same approach here.  While the trial plan suggests that Phase II would be as simple as having a "Special Master evaluate[] each proof of claim pursuant to a formulaic calculation" (Trial Plan at 6), that proposal overlooks McKesson's Seventh Amendment right to have a jury determine the amount of damages, if any, suffered by the claimants.  *See* U.S. Const. amend. VII; *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353-55 (1998).  As with many of the other obstacles to class certification in this case, this Court observed the identical problem in *Pharm III*: "[D]amage determinations would necessitate individual jury trials in which defendants can assert defenses . . . .  This would not be the simple administrative proceeding before a master suggested by plaintiffs."  230 F.R.D. at 95.

---

[3] Plaintiffs represent that "the precise grouping of states is a matter that is currently pending before the Court in *AWP*" (Pl. Br. at 19), but if that is true, McKesson (who is not a party to that proceeding) is not aware of such a filing.  *See* [Proposed] Consolidated Order Re: Motion for Class Certification Track 2 (Docket No. 3221, filed Oct. 16, 2006) (*Plaintiffs'* proposed order stating that "plaintiffs have not submitted an adequate analysis of the feasibility of a nationwide class of Third-Party Payors.").

Furthermore, while plaintiffs assert that individual damage calculations will be made "pursuant to a formulaic calculation provided by Plaintiffs' expert and that will have been approved by the jury" (Trial Plan at 6), their trial plan and certification papers overlook the fact that no such individual damage formula has yet been proposed. The trial plan states that "Dr. Hartman's Declaration establishes and provides a foundation for how this can be accomplished at trial," but the foundation he proposes is notable for what it omits. (Trial Plan at 3.) Besides a very rough and sweeping approximation of the countervailing effects of rebates, Dr. Hartman's declaration consists only of the obvious proposition that total damages equal the amount of inflation attributable to the alleged conspiracy multiplied by the number of pills prescribed over the class period. (Hartman Decl. ¶¶ 18-22.) Dr. Hartman's formula does not account for any of the multitude of mechanisms that TPPs used to counteract the impact of rising costs. (Opp'n at 11-16; Willig Expert Rep. ¶¶ 80-99.) Plaintiffs' failure to propose a workable formula suggests that no such "formulaic calculation" is possible. *See Kenett Corp. v. Massachusetts Furniture & Piano Movers Assoc'n*, 101 F.R.D. 313, 317 (D. Mass. 1984) ("[I]t is well established that a court may not certify a class where it finds that there are serious problems now appearing . . . merely on the assurance of counsel that some solution will be found.") (citation omitted).

## CONCLUSION

For these reasons, McKesson respectfully contends that the plaintiffs proposed trial plan is unworkable.

| |  |
|---|---|
| Respectfully submitted,<br><br>McKesson Corporation<br>By its attorneys:<br><br>/s/ Lori A. Schechter<br>Melvin R. Goldman (*pro hac vice*)<br>Lori A. Schechter (*pro hac vice*)<br>Paul Flum (*pro hac vice)*<br>Tiffany Cheung (*pro hac vice*)<br>Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>tel. 415-268-7000<br>fax 415-268-7522<br><br>John Kiernan<br>Nicole Johnson<br>Bonner Kiernan Trebach & Crociata<br>One Liberty Square<br>Boston, MA 02109<br>Telephone: (617) 426-3900<br>Facsimile: (617) 426-0380 |  |

Dated: January 24, 2007

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on January 24, 2007.

/s/ Lori A. Schechter
Lori A. Schechter

5