IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; MAUREEN COWIE; JUNE SWAN; and BERNARD GORTER, | Case No. 1:05-CV-11148-PBS |
| Plaintiffs, | Judge Patti B. Saris |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation, and MCKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**DEFENDANT MCKESSON CORPORATION'S RESPONSE TO
PLAINTIFFS' MOTION TO COMPEL MCKESSON TO MAKE ITS 30(b)(6)
WITNESS AVAILABLE AND PRODUCE IMS DATA**

**INTRODUCTION**

Plaintiffs' motion seeks to compel two items of discovery that McKesson agreed to provide before the motion was ever filed, and has since produced.

Plaintiffs have moved to compel a Rule 30(b)(6) deposition of a corporate representative on a single topic — "the identity of the custodians of record of the documents produced by McKesson in this litigation." (Declaration of Barbara Mahoney in Support of Plaintiffs' Motion to Compel McKesson to Make its 30(b)(6) Witness Available and Produce IMS Data ("Mahoney Decl."), Ex G.) That exact information appears in a document source log that McKesson has already produced to plaintiffs.

Plaintiffs have also moved to compel production of proprietary prescription drug sales data that McKesson purchases from IMS Health, Inc. McKesson agreed months ago to produce these documents subject only to IMS's consent (as required by McKesson's contract with IMS). That consent has now been obtained, and McKesson has already begun production of these materials.

This is a motion that should never have been brought, and that appears to be designed solely for harassment. Plaintiffs' motion to compel should be denied. Moreover, because the motion was brought without substantial justification, McKesson should be awarded the reasonable costs of preparing its opposition pursuant to Federal Rule of Civil Procedure 37.

**I.    THERE IS NO JUSTIFICATION FOR SEEKING A RULE 30(b)(6) DEPOSITION REGARDING THE SAME INFORMATION APPEARING IN MCKESSON'S DOCUMENT SOURCE LOG.**

Plaintiffs' motion to compel a Rule 30(b)(6) deposition should be denied for the following reasons.

**First,** as discussed in the accompanying Declaration of Tiffany Cheung, McKesson committed to produce a source log containing the information sought by plaintiffs' Rule 30(b)(6) deposition notice well before this motion was ever filed and has since produced that source log. (Declaration of Tiffany Cheung in Support of Defendant McKesson Corporation's Response to Plaintiffs' Motion to Compel McKesson to Make its Witness Available and Produce IMS Data

1

("Cheung Decl."), ¶¶ 5, 8, Ex. 3.)  This motion to compel is now doubly unnecessary, since the information plaintiffs seek to obtain is "unreasonably cumulative or duplicative" of the source log they now possess.  Fed. R. Civ. P. 26(b)(2)(C)(i).

McKesson first offered to engage in a voluntary, mutual exchange of document source logs on June 22, 2006.  (Cheung Decl. ¶ 2, Ex. 1.)  Plaintiffs refused, and then dropped the matter.  (Mahoney Decl. Exs. B & D.)  Plaintiffs contacted McKesson six months later — on January 5, 2007 — to ask for dates for a Rule 30(b)(6) deposition regarding "the identity of the custodians of record of the documents produced by McKesson in this litigation" — the same information that McKesson had offered to provide through an exchange of source logs.  (*Id.* Ex. A.)  McKesson responded the same day, renewing its offer to exchange source logs.  (*Id.* Ex. C.)  Plaintiffs again refused, but offered to "forego our deposition request" if McKesson was "willing to provide this information freely."  (*Id.*)  McKesson accepted plaintiffs' offer on January 11, and thereafter committed to provide a source log containing the information identified in plaintiffs' deposition notice by January 31 (notwithstanding plaintiffs' refusal to reciprocate).  (*Id.* Exs. E & H.)[1]  Plaintiffs unaccountably reneged on their offer and, on January 15, served a notice of a Rule 30(b)(6) deposition to take place on January 26.  (*Id.* Ex. G.)[2]  McKesson objected on January 19, and plaintiffs filed this motion four days later — on January 23.  McKesson provided plaintiffs with a source log, as promised, on January 31. (Cheung Decl. ¶ 8, Ex. 3.)

---

[1] McKesson's opposition to plaintiffs' class certification motion was due January 24.  McKesson accordingly agreed to provide the source log one week later — well within the time frame specified in plaintiffs' original request. (Mahoney Decl. Ex. A (requesting deposition dates "sometime the week of January 29th").)

[2] While plaintiffs' moving papers assert that a source log is insufficient and that they now require a deposition to ask "questions about McKesson's selection of the custodians of record and whether they are still employed by McKesson" (Memorandum in Support of Plaintiffs' Motion to Compel Appearance of McKesson 30(b)(6) Witness and Produce IMS Data, ("Mem.") at 6), neither of those topics is identified in the deposition notice. (Mahoney Decl. Ex. G.)  Nor would there be any legitimate basis for questioning McKesson about its counsel's choice of which custodians' files to search.  The identity of the custodians is already disclosed in the source log; the *reason* why counsel chose these sources is absolutely protected by the attorney-client privilege and the work product doctrine.  Indeed, plaintiffs objected on that very basis to producing named plaintiff District Counsel 37's in-house counsel, who supervised document collection, in response to a Rule 30(b)(6) deposition notice. (Cheung Decl. ¶ 4.)

**Second,** document source information is not the proper subject of a Rule 30(b)(6) deposition. Such information is more efficiently and reliably obtained through a production of source logs, as McKesson has done here despite plaintiffs' refusal to reciprocate. Absent agreement to exchange logs, document source information is properly the subject of an interrogatory, not the deposition of a corporate representative. *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2004 U.S. Dist. LEXIS 8990, at *9 (E.D. Pa. March 23, 2004) (holding that a Rule 30(b)(6) deposition was improper because interrogatories could yield the desired information more reliably, cost-effectively, and with less burden to the responding party).

While plaintiffs also assert that they are entitled to a deposition because McKesson asked plaintiffs' witnesses for document source information during their depositions, it was plaintiffs' own refusal to exchange source logs that necessitated deposition questions on that topic. Moreover, because plaintiffs' witnesses were unable to identify the source of many documents (Cheung Decl. ¶¶ 3-4), McKesson had no alternative but to serve an interrogatory seeking the source information that plaintiffs refused voluntarily to provide.

**Third,** besides being an unnecessary and improper use of Rule 30(b)(6), plaintiffs' deposition notice failed to comply with Case Management Order No. 1. CMO No. 1, which was entered on plaintiffs' emergency motion and over McKesson's opposition, provides that "[e]xclusive of the one-week consultation period, all parties shall provide *at least 14 days notice* of any scheduled deposition." (Emphasis added.) Ignoring that unambiguous requirement, which plaintiffs themselves drafted, plaintiffs provided only eleven days' notice of McKesson's Rule 30(b)(6) deposition. (*See* Mahoney Decl. Ex. G.) Rather than admit their mistake, plaintiffs now pretend that a January 5 email inquiring about McKesson's availability for a deposition later in the month constituted "notice." Plaintiffs are wrong.[3]

---

[3] The Federal Rules of Civil Procedure define a deposition "notice" as a document served on "every other party to the action," that "shall state the time and place for taking the deposition and the name and address of each person to be examined," and that "shall state in the notice the method by which the testimony shall be recorded." Fed. R. Civ. P. 30(b)(1)-(2). There is nothing in CMO No. 1 to suggest that the Court was departing from that definition, and plaintiffs' January 5 email complies with none of the requirements of Federal Rules. *Willming Reams Animation,*

## II. PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF IMS DATA IS SIMILARLY UNNECESSARY AND SHOULD BE DENIED.

As with the identities of McKesson's document custodians, plaintiffs knew at the time they filed this motion that the IMS data would be forthcoming shortly, and it was. (Cheung Decl. ¶ 12.)[4] Plaintiffs were aware from the outset that McKesson was contractually obligated to obtain IMS's written permission before producing any IMS data to third parties, and that IMS requires that the recipient, in this case plaintiffs and their counsel, sign a confidentiality agreement. (Cheung Decl ¶ 9.) Indeed, plaintiffs worked out the exact same arrangement when they previously sought IMS data from drug manufacturers in the AWP MDL, a related suit before this Court by the same plaintiffs and plaintiffs' counsel against drug manufacturers. (*Id.*) After discussing the issue with plaintiffs, McKesson promptly contacted IMS to request its consent, and followed up in response to plaintiffs' inquiries. (Cheung Decl. ¶¶ 10, 13-17.)[5]

Plaintiffs signed and returned the necessary confidentiality agreement on January 31. McKesson began producing the IMS data to plaintiffs the next day. (Cheung Decl. ¶ 19.) Like the deposition notice, this aspect of plaintiffs' motion was unnecessary from its inception and would have easily been resolved by the exercise of a few more days' patience instead of a rush to file a motion to compel.

## III. THE COURT SHOULD AWARD MCKESSON ITS EXPENSES IN OPPOSING THIS MOTION.

Plaintiffs have asked for sanctions. If sanctions are awarded to anyone, it should be McKesson.

---

*Inc. v. Regal Cinemas*, No. SA-00-CA-0843 NN, 2002 U.S Dist. Lexis 25899, at *2-*3 (W.D. Tex. Apr. 22, 2002) is not to the contrary, and merely addresses the "reasonable notice" requirement of Rule 30, not the explicit 14-day notice provisions of CMO No. 1.

[4] McKesson is producing this data despite its limited relevance. The IMS data provides sales information only by the name of the drug, not by a drug's various NDCs, which are the relevant descriptors in this litigation. Because the markups on different NDCs changed at different times, the IMS data will not "establish the volume of drugs affected by Defendants' illegal Scheme," as plaintiffs claim. (Mem. at 2.)

[5] Plaintiffs incorrectly assert that McKesson failed to finalize the agreements in a "couple of days," as purportedly promised. (Mem. at 5.) The parties' correspondence confirms that it was IMS (in response to McKesson's urging) that made that commitment. (Mahoney Decl. Ex. O.) While IMS missed its initial target date, IMS provided its consent shortly thereafter. (Cheung Decl. ¶¶ 18-19.)

4

"Fed. R. Civ. P. 37(a)(4)(A) provides for the mandatory shifting of costs, including attorney's fees, to the losing party on a motion to compel," unless the losing party was substantially justified in bringing the motion. *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001). A motion is only substantially justified where it is "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 12 (1st Cir. 2005) (citation omitted).

No reasonable person would find justification for filing a motion to compel McKesson to attend an improperly noticed deposition seeking document source information that McKesson had already committed to provide in a written log, or to compel production of IMS data that McKesson had already agreed to provide and was awaiting IMS's consent to produce. Plaintiffs' motion was filed to harass and intimidate, not to advance discovery, as underscored by plaintiffs' failure (contrary to both sides' prior practice) to seek a telephonic Local Rule 37.1 discovery conference before moving to compel the Rule 30(b)(6) deposition. *See Stornaiuolo v. New Hampshire Boat Builders, Inc.*, 113 F.R.D. 655, 658 (D. Mass. 1987) ("an opposition filed without compliance with [LR 37.1] can never be 'substantially justified' or outweighed by 'other circumstances which [would] make an award of expenses unjust.'"); *accord Midland-Ross Corp. v. Ztel, Inc.*, 113 F.R.D. 664, 666 (D. Mass. 1987).[6]

## CONCLUSION

Because plaintiffs' motion to compel was unnecessary when filed, it should be denied, and McKesson should be awarded its costs of opposing the motion.

---

[6] Tellingly, plaintiffs' moving papers omit the required certification of compliance with Local Rule 37.1.

5

Respectfully submitted,

McKesson Corporation
By its attorneys:

| | |
|---|---|
| Melvin R. Goldman (*pro hac vice*) | John Kiernan |
| Lori A. Schechter (*pro hac vice*) | Nicole Johnson |
| Paul Flum (*pro hac vice*) | Bonner Kiernan Trebach & Crociata |
| Tiffany Cheung (*pro hac vice*) | One Liberty Square |
| Morrison & Foerster LLP | Boston, MA 02109 |
| 425 Market Street | Telephone: (617) 426-3900 |
| San Francisco, CA 94105-2482 | Facsimile: (617) 426-0380 |
| tel. 415-268-7000 | |
| fax 415-268-7522 | |

/s/ Lori A. Schechter
Lori A. Schechter

Dated: February 6, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on February 6, 2007.

/s/ Lori A. Schechter
Lori A. Schechter