UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>            Plaintiffs,<br><br>   v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>            Defendants. | Civil Action: 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**MEMORANDUM IN SUPPORT OF MCKESSON CORPORATION'S MOTION TO COMPEL INTERROGATORY RESPONSES**

**INTRODUCTION**

Defendant McKesson Corporation seeks an order compelling plaintiffs to identify the witnesses that they rely on to support six of the complaint's key factual allegations. Plaintiffs acknowledge that McKesson is entitled to discovery of that information, but refuse to provide the requested information until "an appropriate time." The appropriate time for plaintiffs to identify their witnesses is now. This case was filed in June 2005 and has been in active discovery for close to a year. Now, with only three months remaining before the close of fact discovery, it is imperative that McKesson learn the identities of the witnesses who plaintiffs will rely on to support their fundamental allegations, so that McKesson has sufficient time to take discovery of those witnesses before the discovery deadline passes.

**THE DISPUTED INTERROGATORIES**

On November 30, 2006 McKesson served plaintiffs with a First Set of Interrogatories consisting of seven questions. (Declaration of Paul Flum in Support of McKesson Corporation's Motion to Compel Interrogatory Responses ("Flum Decl.") Ex. A.) One interrogatory, which plaintiffs have answered, sought clarification of the proposed class. (Flum Decl. ¶ 8.) The remaining interrogatories are narrowly focused to elicit the basis for six fundamental factual assertions made in the complaint.[1] For example, because plaintiffs' conspiracy theory turns on whether McKesson knew what its co-defendant First DataBank was doing with regard to AWP calculations, it asked plaintiffs to identify the witnesses who could support the allegation that "McKesson was aware of . . . [alleged false] representations" by "First Data . . . as to the meaning of AWP and how it was derived . . . ." (Flum Decl. Ex. A.) Similarly, because the complaint revolves around drug pricing data published by First Databank, McKesson asked plaintiffs to identify the witnesses to support the complaint's assertion that "virtually every participant in the pharmaceutical distribution chain . . . used and relied upon the accuracy of data from First Data's [price databases]." (*Id.*) Plaintiffs gave an identical response to each of these

---

[1] As required by Local Rule 37.1(b), the full text of each disputed interrogatory and response thereto is attached as an appendix to this memorandum.

1

six interrogatories: they made a series of boilerplate objections, then pledged to "identify the documents and witnesses on which they rely to support their assertion at an appropriate time." (Flum Decl. Ex. B).

McKesson convened a telephonic discovery conference with plaintiffs' counsel on February 15, 2007. (Flum Decl. ¶ 5.) In an effort to resolve the disagreement, McKesson offered to defer plaintiffs' identification of supporting documents until the close of discovery, but explained that it needed to learn the identities of the witnesses while sufficient time remained to take any necessary discovery. (*Id.*) Plaintiffs' counsel agreed to consider the request, but later amended their responses only to clarify the class definition, still insisting that they would only reveal their witnesses "at an appropriate time." (Flum Decl. ¶¶ 6-8.)

The Court should not permit responding parties to unilaterally choose the "appropriate time" to respond to discovery. That time is now. McKesson cannot afford to be sandbagged by having key witnesses disclosed only after it becomes too late to take discovery of them.

I. **THERE IS NO LEGITIMATE BASIS FOR PLAINTIFFS TO FURTHER DELAY IDENTIFYING THEIR WITNESSES.**

Plaintiffs have not offered any legitimate basis for further delaying the disclosure of their witnesses. Their response to each of the disputed interrogatories is identical:[2]

> Plaintiffs object to this interrogatory as it is premature, overly broad and unduly burdensome, including to the extent that it seeks identification of each and every document and witness supporting Plaintiffs' allegation, particularly at this stage of the litigation when discovery is ongoing. Plaintiffs further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine. Subject to and without waiver of the foregoing general and specific objections, Plaintiffs will identify the documents and witnesses on which they rely to support their assertion at an appropriate time.

(Flum Decl. Ex. E.)

---

[2] In addition to their "Specific Objections" that are identical for every interrogatory, plaintiffs prefaced their responses with fifteen "General Objections" that have no relation to any particular aspect of the case or the information requested, and should thus be disregarded. *See, e.g.*, *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 666-67 (D. Kan. 2004) (describing "general objections" as "worthless for anything beyond delay of the discovery . . . where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery.") (internal citations omitted).

2

None of plaintiffs' "specific" objections provides valid ground for refusing to identify their witnesses. First, it is not "premature" for McKesson to ask plaintiffs to identify the witnesses that will support key allegations of their case. Discovery has been ongoing for over a year, and only three months remain in the discovery period. Second, it is well settled that a conclusory assertion of "overbreadth" does not justify plaintiffs' refusal to produce discoverable information. *Klein v. AIG Trading Group, Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005). Plaintiffs' objection that the identification of witnesses is "unduly burdensome" likewise fails because it is unsupported by any explanation. *Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind. 1992). Finally, unexplained objections based on attorney-client and work-product privilege are similarly invalid. *In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299, 305 (S.D.N.Y. 1982).

Not stating any valid objections, plaintiffs are left with their insistence on withholding the identity of their witnesses until "an appropriate time." This insistence is apparently based on plaintiffs' belief that the disputed interrogatories are "contention interrogatories" and that plaintiffs are therefore "under no obligation to respond while fact discovery is ongoing."[3] (Flum Decl. Ex. E, General Objection No. 10.) But "[t]he general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response is required." 7 James Wm. Moore, *Moore's Federal Practice* § 33.02[2][b] (3d ed. 1997). Contention interrogatories are problematic only where they ask the other side to engage in complex applications of law to fact or to "engage in a wasteful, unproductive exercise . . . knowing that the responses at that stage will produce little useful information." *In re Convergent*

---

[3] Although it is plainly no basis for a proper objection, plaintiffs have also suggested that their refusal to reveal their witnesses is in retaliation for McKesson's earlier refusal to outline its arguments in opposition to class certification. (Flum Decl. ¶ 6; Ex. E, General Objection No. 10.) But there is a vast difference between McKesson's targeted requests that plaintiffs identify witnesses to specific allegations, and plaintiffs' requests in their First Set of Interrogatories that McKesson "[l]ist in detail all facts," and, "all documents and witnesses supporting such facts," "upon which You base Your claim, if any, that Plaintiffs are not able to satisfy . . . Federal Civil Procedure Rule 23(a)." Plaintiffs' slapdash queries are precisely the kind of contention interrogatories that courts have found improper. *See Bonilla v. Trebol Motors Corp.*, No. 92-1795 (JP), 1997 U.S. Dist. LEXIS 4370, at *215 (D.P.R. Mar. 27, 1997); *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 334-36 (N.D. Cal. 1985); *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83, 86-87 (D. Conn. 2005) (denying motion to compel responses to interrogatories "addressed to defendant's position that class certification . . . is not appropriate").

3

*Technologies Sec. Litig.*, 108 F.R.D. 328, 334-36 (N.D. Cal. 1985); *see also* 7 James Wm. Moore, *Moore's Federal Practice* § 33.02 (3d ed. 1997) (collecting cases).

None of those concerns is present here. McKesson is asking plaintiffs only to identify the witnesses able to support six key allegations, so that McKesson can obtain discovery from those individuals before the discovery window closes. Moreover, this is not an early stage of discovery; even if McKesson's targeted requests are properly characterized as "contention interrogatories," they are appropriate here because a substantial amount of discovery has already been completed. *See Bonilla v. Trebol Motors Corp.*, No. 92-1795 (JP), 1997 U.S. Dist. LEXIS 4370, at *215 (D.P.R. Mar. 27, 1997); *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. at 334-36.

## CONCLUSION

Because plaintiffs have not stated any valid objection to disclosing the witnesses that McKesson seeks, they should be ordered to promptly respond to the disputed interrogatories, with instructions that they amend and supplement their responses pursuant to Rule 26(e) as any additional witnesses are identified.

Respectfully submitted,

McKesson Corporation
By its attorneys:

| | |
|---|---|
| Melvin R. Goldman (*pro hac vice*) | John Kiernan |
| Lori A. Schechter (*pro hac vice*) | Nicole Johnson |
| Paul Flum (*pro hac vice*) | Bonner Kiernan Trebach & Crociata |
| Tiffany Cheung (*pro hac vice*) | One Liberty Square |
| Morrison & Foerster LLP | Boston, MA 02109 |
| 425 Market Street | Telephone: (617) 426-3900 |
| San Francisco, CA 94105-2482 | Facsimile: (617) 426-0380 |
| tel. 415-268-7000 | |
| fax 415-268-7522 | |

/s/ Paul Flum
Paul Flum

Dated: March 5, 2007

# APPENDIX OF EACH DISPUTED INTERROGATORY
## PURSUANT TO LOCAL RULE 37.1

### INTERROGATORIES

1. State the basis for your allegation in paragraph 92 of the SAC [Second Amended Complaint] that "beginning in or around 1998 and thereafter, virtually every participant in the pharmaceutical distribution chain who used electronic database systems used and relied upon the accuracy of data from First Data's NDDF and MDDF, including the published WAC and AWP price fields in undertaking reimbursement transactions for billions of dollars of pharmaceutical products."

**Plaintiffs' Response**

Plaintiffs object to this interrogatory as it is premature, overly broad and unduly burdensome, including to the extent that it seeks identification of each and every document and witness supporting Plaintiffs' allegation, particularly at this stage of the litigation when discovery is ongoing. Plaintiffs further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine. Subject to and without waiver of the foregoing general and specific objections, Plaintiffs will identify the documents and witnesses on which they rely to support their assertion at an appropriate time.

2. State the basis for your allegation in paragraph 111 of the SAC that "McKesson knew . . . many of the AWPs, and the timing of the reported AWPs, provided by First Data's electronic files were often, albeit marginally, higher than other publications."

**Plaintiffs' Response**

Plaintiffs object to this interrogatory as it is premature, overly broad and unduly burdensome, including to the extent that it seeks identification of each and every document and witness supporting Plaintiffs' allegation, particularly at this stage of the litigation when discovery is ongoing. Plaintiffs further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine. Subject to and without waiver of the foregoing general and specific objections, Plaintiffs will identify the documents and witnesses on which they rely to support their assertion at an appropriate time.

3. State the basis for your allegation in paragraph 112 of the SAC that "[i]n and around 1999, national chains and retailers requested increased AWP spread for branded products, and some of them engaged in practices in order to ensure that the increased markups would occur."

**Plaintiffs' Response**

5

Plaintiffs object to this interrogatory as it is premature, overly broad and unduly burdensome, including to the extent that it seeks identification of each and every document and witness supporting Plaintiffs' allegation, particularly at this stage of the litigation when discovery is ongoing. Plaintiffs further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine. Subject to and without waiver of the foregoing general and specific objections, Plaintiffs will identify the documents and witnesses on which they rely to support their assertion at an appropriate time.

4. State the basis for your allegation in paragraph 138 of the SAC that "at some point in 2002-2003, certain manufacturers and wholesalers who were angry at the bump in the WAC–to–AWP spread, refused to provide First Data with pricing information."

**Plaintiffs' Response**

Plaintiffs object to this interrogatory as it is premature, overly broad and unduly burdensome, including to the extent that it seeks identification of each and every document and witness supporting Plaintiffs' allegation, particularly at this stage of the litigation when discovery is ongoing. Plaintiffs further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine. Subject to and without waiver of the foregoing general and specific objections, Plaintiffs will identify the documents and witnesses on which they rely to support their assertion at an appropriate time.

6. State the basis for your allegation in paragraph 186 of the SAC that "[t]he Enterprise had a hierarchical decision-making structure headed by McKesson."

**Plaintiffs' Response**

Plaintiffs object to this interrogatory as it is premature, overly broad and unduly burdensome, including to the extent that it seeks identification of each and every document and witness supporting Plaintiffs' allegation, particularly at this stage of the litigation when discovery is ongoing. Plaintiffs further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine. Subject to and without waiver of the foregoing general and specific objections, Plaintiffs will identify the documents and witnesses on which they rely to support their assertion at an appropriate time.

7. State the basis for your allegation in paragraph 199 of the SAC that "McKesson was aware of . . .[alleged false] representations" by "First Data . . . as to the meaning of AWP and how it was derived . . . ."

**Plaintiffs' Response**

Plaintiffs object to this interrogatory as it is premature, overly broad and unduly burdensome, including to the extent that it seeks identification of each and every document and

witness supporting Plaintiffs' allegation, particularly at this stage of the litigation when discovery is ongoing.  Plaintiffs further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine.  Subject to and without waiver of the foregoing general and specific objections, Plaintiffs will identify the documents and witnesses on which they rely to support their assertion at an appropriate time.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 5, 2007.

/s/ Paul Flum
Paul Flum