UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>                                    Plaintiffs,<br><br>            v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                                    Defendants. | C.A. No. 1:05-CV-11148-PBS |

**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL**

I, Steve W. Berman, hereby declare that:

1.      I am a partner of Hagens Berman Sobol Shapiro LLP ("HBSS"), resident in its

Seattle, Washington, office, and I am one of counsel for the plaintiffs in the above-captioned

matter.  I submit this declaration in support of Plaintiffs' Motion to Compel.

2.      McKesson's failure to make its witness available to disclose its custodians of

record is consistent with its pattern of tactical evasion. Plaintiffs served McKesson with its First

Requests for Production on March 3, 2006, attached to my declaration as Exhibit 1.  However,

McKesson did not begin to produce any documents until late May.  At a discovery conference

McKesson represented to Plaintiffs that its delay was due to the fact that it had over a dozen

- 1 -

attorneys working on its response.  After months of waiting, the first installment Plaintiffs

received consisted of a small collection of documents, consisting solely of litigation materials,

which did not appear to have been produced as kept in the ordinary course of business.

3.      By letter I informed McKesson's attorney, Lori Schechter, of the deficiencies of

its production and asked that she provide us with a specific plan for a timely and meaningful

production of McKesson documents.  Specifically, I asked "(1) which custodians are producing,

(2) what types of documents are being produced, and (3) when."  *See* Exhibit 2.  When Ms.

Schechter did not respond to my request, I reiterated my request by e-mail on June 3 to

McKesson attorney, Tiffany Cheung, who also declined to respond to this simple request.  *See*

Exhibit 3.

4.      On or about June 5, McKesson produced additional documents on a CD

containing images (*i.e.*, PDFs).  Again the documents appeared to be randomly grouped, not as

kept in the ordinary course of business.  *See* Exhibit 4 (my June 7, 2006 letter to Tiffany

Cheung).  I wrote to Ms. Cheung, asking her to make the documents available for our inspection

in hard copy.  On June 9, Ms. Cheung confirmed our suspicion that McKesson's attorneys had

not produced documents as kept in the ordinary course of business and stated that they were

"currently reorganizing the documents by custodian," but Ms. Cheung did not identify the names

of its custodians.  *See* Exhibit 5.

5.      On June 20 and 21 a team of Plaintiffs' attorneys reviewed the documents

McKesson had produced at its attorneys' offices in San Francisco.  Although they asked the

paralegal for McKesson, Kate Bobovski, to identify the custodians in order to understand the

order in which the documents were produced, Ms. Bobovski declined to respond.  I wrote again

to Ms. Cheung, asking her to please provide the list of custodians within seven days.  *See*

Exhibit 6.  It was not until Ms. Cheung's June 22 response (Cheung Declaration, Exhibit 1) that McKesson set the condition that it would only provide its list if Plaintiffs also provided a list of custodians.  We declined McKesson's conditional offer and later requested that McKesson make available a 30(b)(6) designee knowledgeable about the sources of its production of documents.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of March 2007.


                                                              /s/ Steve W. Berman
                                                           STEVE W. BERMAN

001821-13  155947 V1

## CERTIFICATE OF SERVICE

I, Steve W. Berman, hereby certify that a true and correct copy of the above document was served on the attorney of record for each party via the Court's electronic filing system this 16th day of March, 2007.

By_____/s/ Steve W. Berman_____
    Steve W. Berman
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    (206) 623-7292

001821-13  155947 V1

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CARPENTERS )
HEALTH BENEFITS FUND; PIRELLI )
ARMSTRONG RETIREE )
MEDICAL BENEFITS TRUST; )
TEAMSTERS HEALTH & WELFARE )
FUND OF PHILADELPHIA AND )
VICINITY; and PHILADELPHIA )
FEDERATION OF TEACHERS HEALTH )
AND WELFARE FUND, )
)            Civil Action No. 1:05-CV-11148-PBS
       Plaintiffs, )
)
v. )
)
FIRST DATABANK, INC., a Missouri )
Corporation; and McKESSON )
CORPORATION, a Delaware Corporation, )
)
       Defendants. )
)

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO McKESSON

### I.    INTRODUCTION

1.    "Document(s)" is used in the broadest possible sense and means without

limitation, any written, printed, typed, photostated, photographed, recorded or otherwise

reproduced or stored communication or representation, whether comprised of letters, words,

numbers, data, pictures, sounds or symbols, or any combination thereof. This definition includes

copies or duplicates of documents contemporaneously or subsequently created which have any

- 1 -

non-conforming notes or other markings. Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.

2.      "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of Defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

3.      The term "Drug Company" refers to any of the companies that manufacturers a drug identified in Exhibit A to the Complaint.

4.     "You" or "Your" means McKesson Corp. and any of its subsidiaries, divisions, affiliates, officers, directors, employees or agents, including, but not limited to, attorneys and accountants.

5.     "Person" shall refer to natural persons, firms, joint owners, associations, companies, partnerships, joint ventures, corporations, trusts, estates, agencies, departments or bureaus (governmental or private), and any other form of business, governmental or juridical person or legal entity.

6.     "Concerning" means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, embodying or constituting.

7.     "Meeting" means any discussion between two or more persons either in person or telephonically.

8.     "Communication" and "communications" are used in a comprehensive sense, and shall mean and include every conceivable manner or means of disclosure, transfer or exchange of oral or written information (in the form of facts, ideas, inquiries or otherwise) between one or more persons or entities including, but not limited to, writings, documents, inter- and intra-office memoranda, correspondence, meetings, conferences, conversations, and/or agreements, whether face-to-face, by telephone, by mail, by telecopier, by telex, by computer or otherwise.

9.     "Private Payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to, health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit plans.

10.     "Provider" means any physician or entity that provides health care.

- 3 -

11.    "Private Payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to, health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit plans.

12.    "Provider" means any physician or entity that provides health care.

13.    "AWP" means average wholesale price.

14.    "WAC" means "wholesale acquisition cost" which is the actual selling price that a drug manufacturer charges to a wholesaler, before discounts.

15.    "MAC" means maximum allowable charge or maximum allowable cost.

16.    "Rebates" include access rebates for the placement of products on a formulary, rebates based upon the sales volumes for drugs, and market share rebates for garnering higher market share than established targets.

17.    "Publication" means a publication identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes the *First DataBank*, *Red Book*, *Blue Book*, and *Medispan*.

18.    "Government Investigation" refers to any ongoing or closed investigation or inquiry conducted by Congress, a committee or sub-committee of Congress (including but not limited to, the Consumer, Energy and/or Ways and Means Committees), the United States Department of Justice, the United States General Accounting Office, the Federal Trade Commission, the Office of the United States Inspector General, the United States Department of Health and Human Services, or any other federal, state or local governmental entity, and includes but is not limited to instances in which you have been served by such entities with Civil Investigative Demands, subpoenas, document requests or other requests.

-4-

19.    "Identified Drugs" are the drugs included in Exhibit A to the Complaint.

## II.    RULES OF CONSTRUCTION

1.    All/Each - The terms "all" and "each" shall be construed as meaning either all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2.    And/Or - The connectives "and" and "or" shall be construed either disjunctively and conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.    The use of the singular form of any word shall include the plural and vice versa.

4.    The masculine gender includes the feminine.

## III.    INSTRUCTIONS

1.    In producing documents and other materials, you must furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

2.    In producing documents, you must produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original (to the extent this is known).

3.    Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to identify any file number, file name, or any other file identification system utilized by the responding party, as well as the location and custodian of

- 5 -

such records. These requests include Plaintiffs' request to physically inspect any file drawer,

filing cabinet or any other storage device where documents responsive to these requests are

maintained at the time of the inspection of such documents.

      4.     Documents attached to each other should not be separated.

      5.     If any responsive document was, but is no longer in the possession or subject to

your control, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been

transferred, voluntarily or involuntarily, to others, or (iv) has been otherwise disposed of, and in

each instance explain the circumstances surrounding, and state the date or approximate date of,

such disposition.

      6.     In the event that you object to any document request on the grounds of privilege

or work product, a statement shall be provided as to each document which includes:

          a.    the name of the author of the document;

          b.    the name of the recipient of the document;

          c.    the names of the persons to whom copies were sent;

          d.    the job title of every individual named in (a), (b), and (c) above;

          e.    the date the document was created, sent, and received;

          f.    the location of the document;

          g.    the custodian of the document;

          h.    a brief description of the nature and subject matter of the document; and

          i.    a statement of the privilege asserted and each and every fact or basis upon

which a privilege is claimed or on which the document is otherwise withheld.

      7.     Notwithstanding the assertion of any objection to production, if a document

contains non-objectionable or non-privileged matter, please produce that document, redacting

- 6 -

that portion for which the objection is asserted, provided that the identification requested in

paragraphs (h) and (i) above are furnished.

## IV.    RELEVANT TIME PERIOD

Unless otherwise stated, these requests call for the production of all documents identified

in the requests that were generated and/or maintained during the period January 1, 1998 to the

date of production (the "Relevant Time Period"), or refer or relate to the Relevant Time Period.

## V.    DOCUMENTS TO BE PRODUCED

1.    All documents reflecting communications to First DataBank or any publisher

regarding AWP, or the WAC-AWP spread for any of the Identified Drugs.

2.    All documents reflecting communications with any retail pharmacy or pharmacy

chain regarding WAC-AWP spreads.

3.    Documents referring to the meaning of AWP or to its use in the pharmaceutical

marketplace.

4.    All documents reflecting McKesson's transmission of WACs or suggested AWPs

to any publisher.

5.    All documents discussing the WAC-AWP markup.

6.    All documents from manufacturers referring to the WAC-AWP spread.

7.    All documents referring to First DataBank or its pricing or publication services.

8.    Documents analyzing the impacts of higher WAC-AWP spreads on pharmacy

reimbursement.

9.    Document analyzing or discussing whether increasing the WAC-AWP spread

would help retail pharmacies or McKesson's clients.

- 7 -

10.    Documents relating to or referring to McKesson's use of First DataBank's AWPs in its business.

11.    Any documents relating to the allegations in ¶¶ 108-09 of the Complaint.

12.    Documents describing McKesson's business relationship with retail pharmacies.

13.    Documents referring to McKesson's business relationships with Rite Aid, Walgreens, Eckerd and CVS.

14.    Documents describing the nature of McKesson's Valu-Rite business.

15.    All documents concerning AWP, including but not limited to (i) documents related to Your use of AWP as a pricing term or pricing benchmark in any of Your contracts; (ii) documents discussing how You or others define AWP; (iii) documents discussing how AWP has been, or is currently, calculated; (iv) documents identifying the source that You use for determining AWPs; (v) all communications between you and a Defendant concerning AWP; (vi) all communications between you and a Publisher concerning AWP; and (vii) all communications between you and a Pharmacy Benefit Manager concerning AWP.

16.    All documents relating to Your role, or a Defendant's role, in the publication, appearance, or advertisement of the AWP of each Identified Drug in any Publication during the Relevant Time Period.

17.    All documents concerning any pricing survey conducted by any Publication. This request includes but is not limited to, any pricing data that You received or provided to a Publication.

18.    All documents concerning McKesson's pricing database, the database itself and any codes to that database.

- 8 -

19.   Documents reflecting any communications with any trade group, lobbying organization, or trade association, regarding AWPs, the spread between AWPs and WAC, and profit margins of pharmacies.

20.   All contracts between You and the five largest retail pharmacies.  "Five largest retail pharmacies" refers to the five pharmacies that represent Your largest retail pharmacy sales volume over the past three calendar years.

21.   All contracts between You and Pharmacy Benefit Managers Caremark, Medco, Express Scripts, and AdvancePCS.

22.   All documents produced by You, whether voluntarily or involuntary, in any Government Investigation or inquiry related to the use of AWP, Rebates or any other consideration provided to you by a Defendant.

23.   All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to, court hearings, legislative hearings, mediations or arbitrations, in which you were a party, regarding the use of AWP, Rebates or any other consideration provided to you by a Defendant.

24.   All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding the use of AWP, Rebates or any other consideration provided to you by a Defendant.

25.   All current and historical organizational charts for all of Your departments.

26.   All documents sufficient to identify Your policy or practice of document retention, destruction, disposal or preservation for each year during the Relevant Time Period.

DATED:  March 3, 2006                    By _____

                                        Thomas M. Sobol (BBO#471770)
                                        Hagens Berman Sobol Shapiro LLP
                                        One Main Street, 4th Floor
                                        Cambridge, MA  02142
                                        Telephone: (617) 482-3700
                                        Facsimile: (617) 482-3003

                                        Steve W. Berman
                                        Sean R. Matt
                                        Hagens Berman Sobol Shapiro LLP
                                        1301 Fifth Avenue, Suite 2900
                                        Seattle, WA  98101
                                        Telephone: (206) 623-7292
                                        Facsimile: (206) 623-0594

                                        Elizabeth Fegan
                                        Hagens Berman Sobol Shapiro LLP
                                        60 W. Randolph Street, Suite 200
                                        Chicago, IL  60601
                                        Telephone: (312) 762-9235
                                        Facsimile: (312) 762-9286

                                        Jeffrey Kodroff
                                        John Macoretta
                                        Spector, Roseman & Kodroff, P.C.
                                        1818 Market Street, Suite 2500
                                        Philadelphia, PA  19103
                                        Telephone: (215) 496-0300
                                        Facsimile: (215) 496-6611

                                        Marc H. Edelson
                                        Allan Hoffman
                                        Hoffman & Edelson
                                        45 West Court Street
                                        Doylestown, PA  18901
                                        Telephone: (215) 230-8043
                                        Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above-referenced document was served upon the attorney of record listed below by email and UPS Next Day Air.

Lori A. Schechter
Morrison & Foerster
425 Market Street
San Francisco, CA 94105-2482
415-268-7000
Fax: 415-268-7522
Email: lschechter@mofo.com

*Counsel for McKesson Corporation*

Steve W. Berman

- 12 -

# Exhibit 2



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

June 2, 2006

***Via E-Mail***

Ms. Lori A. Schechter
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

      Re:   *New England Carpenters Health Benefit Fund, et al.  v. First Databank, et al.*, No. 1:05-cv-11148- PBS

Dear Lori:

On several occasions you or others at your firm, in response to our inquiries, have indicated that you have 15-20 lawyers working diligently on responding to plaintiffs' Request for Production.

After months of waiting we received the first installment which was quite tiny and inadequate.

First, it does not appear the materials have been produced as kept in the "usual course of business." Second, and more importantly, it consists solely of litigation materials that are from the MDL or other AWP litigations. There are no non-litigation documents. This is a complete stonewall. We need to hear from you immediately with a specific plan for a timely and meaningful production of McKesson documents. We want to know (1) which custodians are producing, (2) what types of documents are being produced, and (3) when.

                                     Sincerely,

                                     HAGENS BERMAN SOBOL SHAPIRO LLP

                                     *[sent via electronic delivery]*

                                     Steve W. Berman

cc:   Plaintiffs' Counsel

# Exhibit 3

## Carrie Flexer

**From:** Steve Berman

**Sent:** Saturday, June 03, 2006 8:36 AM

**To:** Cheung, Tiffany

**Cc:** Schechter, Lori A.; Flum, Paul; Carrie Flexer

**Subject:** RE: New England Carpenters, et al. v. First DataBank, et al.

send everything fed ex and pls answer questions in my letter. i.e. why not in the ordinary course as kept, list of custodians being searched and timing of further production.

**From:** Cheung, Tiffany [mailto:TCheung@mofo.com]
**Sent:** Fri 6/2/2006 7:08 PM
**To:** Steve Berman
**Cc:** Schechter, Lori A.; Flum, Paul
**Subject:** New England Carpenters, et al. v. First DataBank, et al.

Dear Steve:

We currently have available for inspection or production electronic documents bates-labeled MCKAWP 0012928-0029962. These documents include the organizational charts we have located to date, which you requested during our telephone conference last week. We also have previously made available electronic documents bates-labeled MCKAWP 0007475-0012927, but your office requested that we hold onto these documents, as indicated in the e-mail correspondence below. Please let us know if you would like us to provide these documents to the vendor you previously identified to us.

As we have mentioned, our team of attorneys has worked diligently in reviewing McKesson's files and has had to review a significant number of documents in order to locate the almost 30,000 pages or databases of responsive material we have made available to you. We have been and will continue to produce all documents in the manner in which they were maintained and expect that plaintiffs will do the same when they ultimately produce all of the documents they agreed to produce to McKesson.

Sincerely,

Tiffany Cheung
Morrison & Foerster LLP
425 Market St.
San Francisco, CA 94105
(415) 268-6848
tcheung@mofo.com
www.mofo.com

-----Original Message-----
**From:** Carrie Flexer [mailto:Carrie@hbsslaw.com]
**Sent:** Tuesday, May 30, 2006 10:04 AM
**To:** Bobovski, Kate M.
**Subject:** RE: McKesson/FDB

Please hold.

6/5/2006

# Exhibit 4



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

June 7, 2006

**<u>Via E-Mail</u>**

Ms. Tiffany Cheung
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

      Re:    <u>New England Carpenters v. First Data Bank</u>

Dear Tiffany:

      We again write concerning McKesson's production of documents.  The latest production is not in accord with Fed. R. Civ. P. 34.  The documents are not produced as kept in the ordinary course and appear to be randomly grouped.  Further, these are not "electronic," but PDFs of documents.  Please stop making PDFs.  Rather we will inspect hard copy and select for copying what we wish to take.

      We will send a team down on June 20, 2006 to inspect all documents produced to date.

                Sincerely,

                HAGENS BERMAN SOBOL SHAPIRO LLP

                *[sent via electronic delivery]*

                Steve W. Berman

cc:    Plaintiffs' Counsel

ATTORNEYS AT LAW        SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO

T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE • SUITE 2900 • SEATTLE, WASHINGTON 98101
www.hagens-berman.com

001821-13  112557 V1

# Exhibit 5

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

June 9, 2006

By E-Mail

Writer's Direct Contact
415/268-6848
TCheung@mofo.com

Steve W. Berman
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:    *New England Carpenters Health Benefit Fund v. First DataBank*

Dear Steve:

I write in response to your June 7, 2006 letter regarding McKesson's document production.

We have just discovered errors in processing the documents that we produced on June 5, 2006, which caused documents from different custodians to be intermingled on the CDs. We apologize for any inconvenience these errors may have caused. We are currently reorganizing the documents by custodian, which is how they are kept in the usual course of business. A corrected set of these documents will be produced in hard copy format on June 20, as you requested, and will bear new production numbers. In the meantime, please return the two CDs that we produced on June 5 to minimize any confusion going forward.

As you instructed, we will stop producing documents in electronic form and will produce all documents in hard copy form from now on.

Finally, as you know, we have been producing documents on a rolling basis. Per your request, we will hold off on further rolling productions for now and will make available for inspection in our offices on June 20, 2006, copies of the non-privileged documents identified at that point as responsive to plaintiffs' Rule 34 demand. We will let you know after June 20 when future installments will be available for inspection. Please let me know who will be coming to our offices on June 20 and what time we should expect them so that we can make the necessary arrangements with building security and ensure that space will be available.

Sincerely,

Tiffany Cheung

sf-2143338

**MORRISON | FOERSTER**

Steve W. Berman
June 9, 2006
Page Two

cc: *Via E-mail* .   Melvin R. Goldman   Thomas M. Sobol   Timothy L. Miles
                     Lori A. Schechter    George E. Barrett   Jeffrey Kodroff
                     Paul Flum             Edmund L. Carey   John Macoretta
                     Joan Griffin          Gerald E. Martin   Kenneth A. Wexler
                     Elizabeth Fegan

sf-2143338

# Exhibit 6



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

June 22, 2006

*__Via E-mail__*

Tiffany Cheung
Morrison Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

     Re:    <u>First DataBank</u>

Dear Tiffany:

    Although we have previously asked Mckesson to provide Plaintiffs with a list of custodians (*see* my June 2 letter to Lori Schachter and my June 3 e-mail to you), it is my understanding from my collegue Barbara Mahoney that McKesson is still resisting on this issue and now asks that we make a formal request in writing.  As you well know, we already have.  We do so now again.  Please provide the list of custodians within 7 days or be subject to a motion to compel.  You have no basis for withholding this information.

          Sincerely,

          Steve W. Berman

SWB:CF

ATTORNEYS AT LAW                    SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE • SUITE 2900 • SEATTLE WASHINGTON 98101
www.hagens-berman.com

001821-13 114506 V1