UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; MAUREEN COWIE; JUNE SWAN; and BERNARD GORTER,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and MCKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | Case No. 1:05-CV-11148-PBS |

## DECLARATION OF SHAWN F. BARGER

1. I, SHAWN F. BARGER, serve as Director of Clinical Pharmacy Management for AvMed Health Plans (hereinafter "AvMed").

2. I understand that plaintiffs claim that McKesson Corporation (hereinafter "McKesson") and First DataBank, Inc. (hereinafter "First DataBank"), beginning in 2002, agreed to increase the WAC-AWP ratio from 20% to 25% on hundreds of brand name drugs. I further understand that plaintiffs claim that this increase did not reflect any change in manufacturers' or wholesalers' prices for the drugs.

3. Neither I, nor to my knowledge anyone else at AvMed, was aware of the existence of any such agreement between McKesson and First DataBank before this lawsuit was filed.

4. My company's pharmacy contracts use AWP-based formulas to determine the amounts we pay for prescription drugs prescribed to persons for whom we provide coverage. We understand AWP to be related to the actual prices at which the drugs are sold to pharmacies. I believed that when AWP increased or decreased for a drug, the change reflected a corresponding change in its actual wholesale price. If we had learned that the increases in AWP from 120% to 125% of WAC were arbitrary and unrelated to manufacturers' or wholesalers' price increases, I believe my company would have taken steps as promptly as practicable to mitigate the increased amounts we would have had to pay to pharmacies accordingly.

5. Even if we had learned that the increase from 20% to 25% was arbitrary and unrelated to manufacturers' or wholesalers' price increases, due to the number and long-term nature of our pharmacy contracts, for at least some period of time thereafter, we would have paid an inflated amount even if we had been able to negotiate a price adjustment at a later point.

6. As a result of the increase in the AWP, my company paid more for these drugs than we would have had the increase not been implemented. To my knowledge, we never obtained a dollar for dollar adjustment of the 20% to 25% increase.

Signed under penalty of perjury:

*/s/ Shawn F. Barger*
Shawn F. Barger
Director, Clinical Pharmacy Management
AvMed Health Plans

3-15-07

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 19, 2007.

                                                    /s/ Steve W. Berman
                                                Steve W. Berman