UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, and DISTRICT 37 HEALTH AND SECURITY FUND,<br><br>    Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>    Defendants. | CIVIL ACTION: 1:05-CV-11148-PBS |

**DECLARATION OF JAMES W. BUCKLEY, DIRECTOR OF THE NEW ENGLAND CARPENTERS HEALTH BENEFIT FUND, IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, James W. Buckley, declare under penalty of perjury under the laws of the United States of America that:

1. I am currently the Director of the New England Carpenters Health Benefit Fund, located at 360 Fordham Road, Willmington, MA. ("Carpenters"). I have been the Administrator for Carpenters since 1985. In that capacity I am responsible for administering the benefit programs provided by Carptenters to its participating members.

2. Carpenters is a Taft-Hartley health and welfare plan that provides health and welfare benefits to members of every local carptenters union in the states of Massachusetts (with

the exception of one local union), New Hampshire, Maine and Vermont, as well as their dependants. Among the benefits provided by Carpenters to its members and their dependants are medical, dental and vision care. Carpenters provides a prescription drug benefit to its members as part of medical coverage. Carpenters provides benefits to approximately 9,000 members in the four New England states mentioned above.

4. I am aware of the allegations in this case and have been deposed as a representative of Carpenters on various issues related to this litigation.

5. I understand that Plaintiffs claim that McKesson and First Data Bank ("FDB"), beginning in 2002, conspired to artificially increase the WAC-AWP ratio from 20% to 25% on hundreds of brand name drugs. I further understand that this increase did not reflect any change in the actual price of the drugs but was done solely to benefit McKesson and FDB.

6. Neither I, nor to my knowledge anyone else at Carpenters, was aware of the conspiracy to artificially increase the WAC-AWP ratio until shortly before the filing of this lawsuit.

7. While we were aware of an increase in the overall expenditures for prescription drugs by Carpenters, we were unaware of an increase in the WAC-AWP ratio in 2002. No one at Carpenters had access to the FDB database that reflects FDB's published AWPs. No one at Carpenters had access to AWP and/or WAC information on a drug-by-drug basis for the drugs that are included in Carpenter's prescription drug benefit.

8. If Carpenters had known that the increase it observed in the overall expenditures for prescription drugs was due, at least in part, to the increase in the WAC-AWP ratio, *i.e.*, the scheme, Carpenters would have demanded that our reimbursement for pharmaceuticals provided to members of the Union be reduced accordingly. Any negotiation with PBMs would have

started by eliminating the increase in reimbursement by Carpenters that resulted from the scheme.

9. Because Carpenters was unaware of the scheme, it was not in a position to "protect" itself from the increase in reimbursement that resulted from the scheme. Carpenters prescription drug benefit was administerd by Adanced PCS, or some prior corporate entity related to Advanced PCS, from 1990 until April of 2004. The contract between Carpenters and Advanced PCS that was in place at the time of the increase in the WAC-AWP ratio described above provided for a reimbursement by Carpenters to Advanced PCS of AWP minus 15% for brand named drugs purchased at retail. That contract became effective in April of 2001 and had an initial term of three years.

10. At the conclusion of that contract in April 2004, Carpenters entered into an arrangement with Medco Health Solutions, Inc ("Medco"). Under that arrangment Carpenters provided reimbursement to Medco at AWP minus 15.5% for named brand drugs at retail.

11. If we had known about the scheme we would have tried to negotiate deeper discounts to eliminate any increase in reimbursements that resulted from the the scheme. The scheme, if revealed, would not have been "factored in," we would have attempted to completely remove the impact of the scheme from the equation and any discounts sought after the effects of the scheme were eliminated would have been a reaction to true increases in prices caused by inflation and other factors independent of the scheme.

12. Even if the scheme were known to me or others at Carpenters at the time of the increase, our ability to eliminate its impact on Carpenters reimbursements would have been limited for a period of years as a result of the fact that our contract with Advanced PCS did not terminate until April 2004.

3

11. As a result of the increase in the AWP by virtue of the scheme, Carpenters paid more for the drugs at issue than we would have had the scheme not been implemented. The financial inpact of escalating drug costs, due in part to the scheme, have resulted in increased costs to Carpenters in the form of higher reimbursements for the prescription drugs at issue.

Signed under the pains and penalties of perjury this 16 day of March, 2007.

James W. Buckley

4

001821-13 157960 V1

MAR.16.2007 10:18    978-657-9973    CARPENTERS COMBINED FUNDS    #7402 P.006/006

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 19, 2007.

                                                        /s/ Steve W. Berman
                                                       Steve W. Berman