UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, and DISTRICT 37 HEALTH AND SECURITY FUND,<br><br>                    Plaintiffs,<br><br>    v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                    Defendants. | CIVIL ACTION: 1:05-CV-11148-PBS |

**DECLARATION OF ROSARIA ESPERON, ADMINISTRATOR OF THE HEALTH AND SECURITY PLAN OF DISTRICT COUNSEL 37, IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, Rosaria Esperon, declare under penalty of perjury under the laws of the United States of America that:

1.    I am currently the Administrator for the Health and Security Plan of District Counsel 37, located at 125 Barclay Street, New York, NY. ("DC 37"). I have been the Administrator for DC 37 since 2002.

2.    DC 37 is a non-ERISA welfare plan that provides health and welther benefits to the members of District Counsel 37 (the "Union"). The Union represents over 120,000 New York City employees and is the largest public-employee labor union in New York City. Many of

1

the Union's members, including hospital aids, school crossing guards, school lunch room workers and clerical assistants are among New York City's lowest paid employees, with salaries averaging approximately $30,000 per year.

3.      DC 37 provides prescription drug benefits to nearly 350,000 covered beneficiaries, including members, their covered spouses and dependants and retirees. DC 37 beneficiaries reside in every state in the United States and Puerto Rico.

4.      I am aware of the allegations in this case and have been deposed as a representative of DC 37 on various issues related to this litigation.

5.      I understand that Plaintiffs claim that McKesson and First Data Bank ("FDB"), beginning in 2002, conspired to artificially increase the WAC-AWP ratio from 20% to 25% on hundreds of brand name drugs. I further understand that this increase did not reflect any change in the actual price of the drugs but was done solely to benefit McKesson and FDB.

6.      Neither I, nor to my knowledge anyone else at DC 37, was aware of the conspiracy to artificially increase the WAC-AWP ratio until the late summer or early fall of 2005.

7.      While we were aware of an increase in the overall expenditures for prescription drugs by DC 37, we were unaware of an increase in the WAC-AWP ratio in 2002. No one at DC 37 had access to the FDB database that reflects FDB's published AWPs. No one at DC 37 has access to AWP and/or WAC information on a drug-by-drug basis for the drugs that are included in DC 37's prescription drug benefit.

8.      If DC 37 had known that the increase it observed in the overall expenditures for prescription drugs was due, at least in part, to the increase in the WAC-AWP ratio, *i.e.*, the scheme, DC 37 would have demanded that our reimbursement for pharmaceuticals provided to

001821-13  157759 V1

members of the Union be reduced accordingly. Any negotiation with our PBM would have started by eliminating the resulting increase in reimbursement by DC 37 that resulted from the scheme.

9.    Because DC 37 was unaware of the scheme, it was not in a position to "protect" itself from the increase in reimbursement that resulted from the scheme. Prior to April 12, 2002, DC 37's PBM was National Prescription Administration, Inc. ("NPA"). Under DC 37s contract with NPA in place in 2002, DC 37 reimbursed NPA at an annual computed average rate of AWP minus 16% for named brand drugs at retail. NPA used Redbook as the source of AWP in its contracts. In April, 2002, NPA was acquired by Express Scripts, Inc. ("ESI") and ESI assumed the NPA contract with DC 37. At a meeting in late 2002 or early 2003 between myself and representatives of ESI, ESI stated that they used FDB as the source of AWP. ESI also indicated that they would be providing a deeper discount off of AWP than DC 37 received under its arrangement with NPI. During this meeting ESI indicated that the discounts it would be providing DC 37 for named brand drugs at retail was at or near AWP minus 20%. ESI never indicated that the AWP it would be providing discounts off of was inflated as a result of the scheme described above. It is unclear to me whether ESI ever provided the promised 20% discount off of AWP on these drugs. In a later agreement between DC 37 and ESI, covering the period of January 1, 2004 through June 30, 2006, ESI contracted to provide DC 37 with a discount of 15% off of AWP for brand named and generic drugs at retail.

10.    If we had known about the scheme we would have negotiated deeper discounts to eliminate any increase in reimbursements that resulted from the the scheme. The scheme, if revealed, would not have been "factored in," it would have been completely removed from the equation and any discounts sought after the effects of the scheme were eliminated would have

3

been a reaction to true increases in prices caused by inflation and other factors independent of the scheme. Because the scheme was unknown to us we did not have the opportunity to eliminate its effects on DC 37's reimbursements.

11.    As a result of the increase in the AWP by virtue of the scheme, DC 37 paid more for the drugs at issue than we would have had the scheme not been implemented. The financial impact of escalating drug costs, due in part to the scheme, have resulted in increased costs to our members in the form of higher co-payments, including co-payments charged to those who can least afford it – the 50,000 retiree members who live on fixed incomes.

Signed under the pains and penalties of perjury this ___15th___ day of March, 2007.

_____
(Rosaria Esperon)

001821-13 157759 V1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 19, 2007.


_____/s/ Steve W. Berman_____
Steve W. Berman