UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri Corporation; and McKESSON CORPORATION, a Delaware Corporation,<br><br>　　　　　　　　Defendants. | Case No. 05-cv -11148<br><br>Judge Patti B. Saris |

**DECLARATION OF EARL SEYMOUR SUPPORT OF PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

I, Earl Seymour, pursuant to 28 U.S.C. § 1746, on oath, depose and state as follows:

1. I am Chairman of the Board of Trustees for Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("the Trust"). I submit this Declaration in support of Plaintiffs' Reply Brief in Support of Their Motion for Class Certification.

2. The Trust is a voluntary employee benefits association maintained pursuant to the federal Employee Retirement Security Act, 29 U.S.C. §§ 1132, *et seq.*, and to the settlement of an action brought in the 1990s by many Pirelli retirees against Pirelli Armstrong Tire Corporation in the United States District Court for the Middle

District of Tennessee (Case No. 3:94-0573) to ensure the provision of health and medical benefits to eligible participants and beneficiaries.

3. The Trust's members are former Pirelli Armstrong Tire Corporation workers who retired from that company prior to November 1, 1994. Currently, approximately 2,000 lives are covered by the Trust.

4. Until approached by counsel regarding the possibility of filing this lawsuit, the Trust had no knowledge that, in approximately 2001-2002, Defendants McKesson Corporation ("McKesson") and First DataBank, Inc. ("FDB") conspired to increase the WAC to AWP mark-up on brand prescription drugs 1.20 to 1.25 (hereinafter "the Scheme"). We likewise did not know that the WAC to AWP mark-up had been increased on so many drugs.

5. Because we did not know about the Scheme, or about the increased mark-ups, neither we nor our third-party administrator, Southern Benefit Administrators, Inc. ("Southern Benefit"), discussed the increased mark-ups with our PBM at the time, Caremark. Nor did we (or Southern Benefit on our behalf) attempt to negotiate a greater discount off AWP for our reimbursement for prescription drugs.

6. Our contract with Caremark dated May 1, 2001 provided for most claims to be reimbursed at AWP-14% plus a $2.00 dispensing fee. That agreement was effective until the Board recently approved the Trust's new agreement, which provides for brand drugs to be reimbursed at AWP – 15.5% plus a $1.85 dispensing fee.

7. Had the Trust known about the Scheme or about the increase in mark-ups, we would have acted to eliminate the entire increase.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 3-12-07          *[signature]*
                        Earl Seymour

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 19, 2007.

                                                /s/ Steve W. Berman
                                          Steve W. Berman