

**HAGENS BERMAN
SOBOL SHAPIRO LLP**

THOMAS M. SOBOL
DIRECT • (617) 482-3700
TOM@HBSSLAW.COM

April 13, 2007

**VIA OVERNIGHT MAIL**

William L. Brauch
Special Assistant Attorney General
Director-Consumer Protection Division
Office of the Iowa Attorney General
1305 East Walnut Street
Des Moines, IA 50319

Brent D. Stratton
Deputy Chief, Public Interest Division
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago, IL 60601

Michael J. Vanslow
Deputy Attorney General
Office of the Minnesota Attorney General
Suite 900, 445 Minnesota Street
St. Paul, MN 55101

Cynthia R. Hirsch
Assistant Attorney General
Director of Consumer Protection
Wisconsin Department of Justice
17 West Main Street
P. O. Box 7857
Madison, WI 53707-7857

Clyde "Ed" Sniffen, Jr
Senior Assistant Attorney General
Commercial and Fair Business Section
Department of Law
1031 West 4th Avenue #200
Anchorage, AK 99501

Jane E. Hochberg
Deputy Attorney General
Office of the Idaho Attorney General
P. O. Box 83720
Boise, ID 83720-0010

Paula J. Holbrook
Assistant Attorney General
Office of the Kentucky Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601

    Re:    <u>New England Carpenters Health Benefits Fund, et al v. First DataBank, Inc., et al</u>
               Civil Action No. 05-CV-11148
               *Information Regarding the Proposed First Databank Settlement*

ATTORNEYS AT LAW        SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 617.482.3700    F 617.482.3003
ONE MAIN STREET • FOURTH FLOOR • CAMBRIDGE MASSACHUSETTS 02142
www.hbsslaw.com

April 13, 2007
Page 2

Dear Attorney General Representatives of Iowa, Alaska, Illinois, Idaho, Minnesota, Kentucky and Wisconsin:

The purpose of this letter is to provide you with information in connection with the above-referenced matter. This letter also seeks to answer the issues raised in your letter dated January 23, 2007 but filed with the Clerk's office months later on April 9, 2007, under cover of letter head by the former Attorney General for the State of Wisconsin. Because none of the signatories to the letter has approached us seeking information and a discussion regarding the points raised, we think it is appropriate to provide you with the information so that any disagreements are at least not based on a misunderstanding of the settlement.

First, the case encaptioned, *New England Carpenters Health Benefits Fund, et al v. First DataBank, Inc.*, is a putative class case on behalf of private third party payors only, not on behalf of any public payors. Third party payors are specifically defined to exclude all state or local governmental claims based on purchases made pursuant to legislative enactment. Thus, the proposed First Databank settlement, along with the release envisioned by that settlement, only discharges claims of private third party payors, not the claims of states. In fact, we may be seeking to clarify that point in upcoming filings with the Court.

We note that this issue was recently addressed by the office of the Attorney General for the State of Tennessee. Representatives of that office contacted us, and in a recent telephone conversation we clarified for them that the proposed settlement does not affect state claims.[1] We agreed to follow up with that office by way of a written communication, and we have done so. A copy is attached.

Second, the proposed settlement does not "sanction the publishing of a fictitious price...." The settlement does not sanction, condone, or otherwise approve any future conduct of First Databank and therefore it cannot pre-approve any future conduct. Instead, in substance the settlement requires First Databank (i) to "roll back" the mark-up factor that was implemented back in 2002, and (ii) discontinue publishing the AWP at a designated point in the future subject to certain conditions. Indeed, the settlement, by requiring these changes, moves things forward toward a published price that would be an authentic representation of what it is labeled to be. Again, any other current of future practices are not affected.

Third, the settlement does not require State Attorneys General to make a decision whether to sue or not sue. The proposed settlement applies only to the rights of private parties, not State Attorneys General. To be sure, there is a termination provision in the settlement agreement which permits First Databank the right to terminate the agreement under circumstances where it appears that First Databank may be sued by states for the same misconduct, again establishing that this settlement does not discharge these claims. However,

---

[1] Our understanding is that the signatories to your April 9, 2007 filing were invited to be on that phone call but did not in fact participate.

April 13, 2007
Page 3

each separate state, and any group of states, remain free to take any of the actions they would ordinarily take and may do so in whatever short or long period of time they wish to do so.

     Finally, an important process point should be identified. The negotiations for the proposed First Databank settlement date back to 2005 and spanned a period of over a year. During that time, representatives from several States Attorneys General attended meetings and teleconferences with private counsel, did the same directly with First Databank itself, and were periodically apprised of the developments regarding the proposed settlement both before and after its announcement. No obligation was placed on those State Attorneys General to be bound by the settlement one way or another, or approve of disapprove of it. It simply provided an opportunity for disclosure, meaningful discussion and understanding of the issues. We also note that that it is our understanding that your offices were invited to participate in a teleconference in order to discuss these issues prior to the filing of a position paper by your offices regarding the Settlement but chose not to participate. We believe that some if not all of these issues could have been clarified or addressed without your offices taking a purported stance that you "strongly oppose" a settlement on behalf of cash-paying consumers and prescription drug payors who had been overcharged for many of the most widely prescribed brand name drugs.

     We believe that the proposed First Databank settlement is beneficial to consumers , private payors, and will have the by-product of enormous savings to Medicaid programs through the roll-back with effectuates an effective 4% decrease in most of the widely used brand name prescription drugs. The potential savings here are important and it should be noted that First Databank itself is a comparatively tiny company that would not be able to pay any kind of substantial award which would have any meaningful result for all private payors.

     In any event, we hope that this letter answers your questions. To the extent that it does not or that other questions arise (which is admittedly predictable since this is a generally complicated area), please know that we are always available to discuss matters so as to avoid any misinformation or miscommunication with the Court regarding this important matter. I have spoken with some of you and anticipate we may have a call soon.

                                  Very truly yours,

                                  HAGENS BERMAN SOBOL SHAPIRO LLP

                                  Thomas M. Sobol, Esq.

TMS:HM
Enclosure

cc:     Honorable Patti B. Saris, USDJ
        Plaintiffs' Counsel



THOMAS M. SOBOL
DIRECT • (617) 482-3700
TOM@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

April 13, 2007

**BY OVERNIGHT MAIL**

John Smith, Assistant Attorney General
Tennessee Attorney General's Office
425 5th Avenue North
Nashville, TN 37243

      Re:    New England Carpenters Health Benefits Fund v. First DataBank, Inc.
               Civil Action No. 05-CV-11148-PBS (D. Mass.)

Dear Assistant Attorney General Smith:

      You have inquired concerning the settlement of our action against First DataBank, Inc. ("FDB"), and whether the release affects the State of Tennessee (the "State"). As explained below, although the State will be able to participate in the substantial benefits conferred by the settlement, the settlement will not impair the State's ability to seek further relief from FDB if it chooses.

      As you know, the settlement requires FDB to roll back the average wholesale price ("AWP") mark-up factor that was implemented back in 2002, effectuating an effective 4% decrease on the AWP for most of the widely used brand name prescription drugs. The settlement also requires FDB to discontinue publishing the AWP at a designated point in the future subject to certain conditions. As a result of these provisions, the settlement will provide significant benefits not only to consumers and private third-party payors, but also to the State's Medicaid program and at-risk healthcare plans covering employees of the State. The potential savings here are important and it should be noted that First Databank itself is a comparatively tiny company that would not be able to pay any kind of substantial award which would have any meaningful result for all private payors.

      Despite providing these benefits to the State, the settlement does not bind the State. With respect to Medicaid expenditures, the case is a putative class case on behalf of *private* payors. The class is specifically defined to exclude all state or local governmental claims based on purchases made pursuant to legislative enactment. To that end, upcoming filings with the Settlement Court will clarify that States are not part of the putative settlement class in any respect. . Thus, the proposed FDB settlement, along with the release envisioned by that settlement, discharges only claims of private third party payors, not the claims of States.

ATTORNEYS AT LAW           SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 617.482.3700    F 617.482.3003
ONE MAIN STREET · FOURTH FLOOR · CAMBRIDGE, MASSACHUSETTS 02142
www.hbsslaw.com

John Smith, Assistant Attorney General
Tennessee Attorney General's Office
April 13, 2007
Page 2

      As you may know, the negotiations for the proposed FDB settlement date back to 2005 and spanned a period of over a year. During that time, representatives from several state Attorneys General Offices attended meetings and teleconferences with private counsel, did the same directly with FDB itself, and were periodically apprised of the developments regarding the proposed settlement both before and after its announcement. Nonetheless, the proposed settlement does <u>not</u> require the States, including the State of Tennessee, to join the settlement or to do anything on any particular timetable.

      Please let me know if I can provide you with anything further.

                                      Very truly yours,

                                      Thomas M. Sobol

cc:     Plaintiffs' counsel