UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>                          Plaintiffs,<br><br>      v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                          Defendants. | C.A. No. 1:05-CV-11148-PBS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR A 60-DAY EXTENSION OF DISCOVERY DEADLINE**

**I.    INTRODUCTION**

The Court should deny McKesson's motion to extend the discovery period until July 31; McKesson has not demonstrated good cause to justify a departure from the Court's scheduling order, as required by Federal Rule of Civil Procedure 16(b) and Local Rule 16.1(G). The Court has already changed the scheduling in this case on six prior occasions. Last November, when the parties jointly moved to set the current deadline, McKesson represented to the Court that it could complete discovery by June 1. None of the excuses McKesson now offers, e.g., the complexity of the lawsuit, the size of the pharmaceutical industry or the potential difficulty obtaining discovery from third parties, were new or unforeseeable last November. If McKesson is behind

schedule on its own discovery plan, it is a matter of its own doing, and the Court should not award McKesson's lack of diligence or foresight with a two-month extension.

## II.     ARGUMENT

### A.    Good Cause Is Required to Amend the Schedule

Federal Rule of Civil Procedure 16(b) states that "schedul[ing orders] shall not be modified except on a showing of good cause."  The lynchpin of this analysis is whether the party seeking the modification has been diligent:

> A scheduling order should not be modified except upon a showing of "good cause" and "by leave of the district judge", Fed.R.Civ.P. 16(b), "supported by affidavits, other evidentiary materials, or references to pertinent portions of the record."  Local Rule 16.1(G).  This District Court has stated that
>
>> the good cause test requires that the deadline in the scheduling order may not reasonably be met, despite the diligence of the party seeking the extension. The requirements of good cause are more liberal than a "manifest injustice" or a "substantial hardship" test. "Nonetheless, this does not mean that scheduling orders will be modified simply upon request.  In the absence of some showing of why an extension is warranted, the scheduling order will control."

*Cabana v. Forcier*, 200 F.R.D. 9, 15 (D. Mass. 2001) (quoting *Tele-Connections, Inc. v. Perception Technology Corp.*, 1990 U.S. Dist. Lexis 15507, 1990 WL 180707, at *1 (D. Mass. Nov. 5, 1990) (quoting 6A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (1990)).

> Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quotations and citations omitted) (emphasis added). The "good cause" standard "preserves the integrity and effectiveness of Rule 16(b) scheduling orders." *O'Connell v. Hyatt Hotels*, 357 F.3d 152, 155 (1st Cir. 2004). "In an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation." *Id.* (quoting *Tower Ventures, Inc. v. Westfield,* 296 F.3d 43, 45 (1st Cir. 2002)). For Rule 16(b) to operate effectively, litigants cannot be permitted to treat a scheduling order as a "frivolous piece of paper idly entered." *Id.* (quoting Johnson, 975 F.2d at 610).

**B.    The Court Has Adjusted the Schedule Six Times**

The Court has already agreed to adjust its scheduling order on six prior occasions.[1] The Court moved the discovery deadline from January 31, 2007 to June 1, 2007 in response to a joint motion when it became evident that the modified schedule no longer reflected the Court's original intention, e.g., when the deadline for filing summary judgment preceded the Court's hearing on class certification. In addition, it adjusted the class certification briefing schedule in response to joint motions brought on May 31, 2006 and September 19 and granted McKesson's two independent motions to modify the briefing schedule, filed on November 6, 2006 and April 2, 2007, as well as the Plaintiffs' motion for a three-week extension to file their reply brief.

**C.    Good Cause Does Not Exist to Extend the Discovery Deadline**

In each prior instance, the parties—responding to unforeseen circumstances—had good cause to modify the Court's prior orders. Not so here.

---

[1] This number does not take into account the several times the Court has agreed to postpone mediation, which has little bearing on the discovery deadline.

### 1.     McKesson delayed review of the *AWP* materials

McKesson claims that it was prejudiced by Plaintiffs' initial refusal to provide it with *AWP* materials because it only has "months to review" the materials. Yet, on November 29, 2006, six weeks after the parties' dispute about the production of *AWP* materials was resolved, McKesson moved jointly with Plaintiffs to set the current discovery deadline. Clearly the insight that McKesson would only have "months" to review the *AWP* materials was as evident to McKesson in November as it is now. McKesson does not explain why it represented to the Court that it would be able to complete discovery within the June 1 deadline if it had concerns that it would not be able to review the *AWP* materials by that time. Nor does McKesson explain why it failed to request the materials directly from the *AWP* defendants after the Court modified the protective order in *AWP* to allow production to McKesson. Had McKesson not spent the next six months locking horns with Plaintiffs over the *AWP* production, it might have had well over a year to review *AWP* materials.

McKesson also hints darkly that Plaintiffs have not been diligent in their production of the *AWP* materials. On the contrary, since last October Plaintiffs have made the materials available for inspection and have promptly responded to any additional requests or queries about the *AWP* production.[2] And while Plaintiffs extended the invitation last October to allow McKesson to inspect the documents housed at Plaintiffs' counsel's respective offices, it was not until last month that McKesson visited counsel in Boston to review the hundreds of boxes of documents stored there.[3]

---

[2] Declaration of Steve W. Berman in support of Plaintiffs' Opposition to McKesson's motion to extend the discovery deadline, ¶ 2.
[3] *Id.*

001821-13 167049 V1

### 2. No new facts justify an extension

Similarly, while McKesson contends that the size of the class, the number of claims Plaintiffs raise and the size of the prescription drug industry all support an extension of the discovery cutoff, each of these factors was present last November, when McKesson advised the Court that it could complete discovery by June 1.

Nor do the changes in the class certification schedule support McKesson's request for additional time to conduct merits-based discovery after the certification hearing. Briefing on class certification began last July, but discovery has always been ongoing, and despite the many changes to the Court's scheduling order, it has never bifurcated discovery or otherwise recognized a distinction between class and merits discovery that would justify McKesson's request.

### 3. McKesson has delayed discovery

The Court should also not be expected to adjust its scheduling order to alleviate a crowded deposition schedule, whose condition McKesson contributed to by purposely delaying the depositions of several of its current or former employees until late April and May even though Plaintiffs originally requested these witnesses in early February and early March.[4] Each of these depositions could have been scheduled at least a month earlier, thereby freeing up available time for additional discovery in May.[5]

### 4. McKesson is only entitled to a few more depositions, which may be completed by June 1

Finally, the parties stipulated that they would not allow more than 20 depositions (exclusive of experts) per side without leave of Court. McKesson took 12 depositions last year

---

[4] *Id.*, ¶¶ 3 and 4; Exs. 1 and 2.
[5] *Id.*

and has noticed six more this year.  If it acts diligently, McKesson should be able to complete the depositions it noticed and up to two more by June 1.

### III.   CONCLUSION

Plaintiffs are prepared to complete their discovery on schedule and within the deposition limit.  Surely, with the substantial resources available to it as a Fortune 16 company, McKesson should, too.  For the foregoing reasons, the Court should deny McKesson's motion for an extension of the discovery deadline.

DATED:  April 26, 2007                     By        /s/ Steve W. Berman
                                              Steve W. Berman
                                              Nick Styant-Browne
                                              Barbara A. Mahoney
                                           Hagens Berman Sobol Shapiro LLP
                                           1301 Fifth Avenue, Suite 2900
                                           Seattle, WA  98101
                                           Telephone: (206) 623-7292
                                           Facsimile: (206) 623-0594

                                           Thomas M. Sobol (BBO#471770)
                                           Hagens Berman Sobol Shapiro LLP
                                           One Main Street, 4th Floor
                                           Cambridge, MA  02142
                                           Telephone: (617) 482-3700
                                           Facsimile: (617) 482-3003

                                           Jeffrey Kodroff
                                           John Macoretta
                                           Spector, Roseman & Kodroff, P.C.
                                           1818 Market Street, Suite 2500
                                           Philadelphia, PA  19103
                                           Telephone: (215) 496-0300
                                           Facsimile: (215) 496-6611

                                           Marc H. Edelson
                                           Hoffman & Associates
                                           45 West Court Street
                                           Doylestown, PA  18901
                                           Telephone: (215) 230-8043
                                           Facsimile: (215) 230-8735

        Kenneth A. Wexler
        Jennifer Fountain Connolly
        Wexler Toriseva Wallace LLP
        One North LaSalle Street, Suite 2000
        Chicago, IL  60602
        Telephone: (312) 346-2222
        Facsimile: (312) 346-0022

        George E. Barrett
        Edmund L. Carey, Jr.
        Barret, Johnston & Parsley
        217 Second Avenue, North
        Nashville, TN  37201
        Telephone: (615) 244-2202
        Facsimile: (615) 252-3798

**CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on April 26, 2007.

          /s/ Steve W. Berman
          Steve W. Berman