UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER, | Civil Action: 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

                    Plaintiffs,

      v.

FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,

                    Defendants.

**UNOPPOSED MOTION OF DEFENDANT MCKESSON CORPORATION FOR LEAVE TO REPLY TO PLAINTIFFS' OPPOSITION TO MCKESSON'S MOTION FOR A 60-DAY EXTENSION OF THE NON-EXPERT DISCOVERY DEADLINE**

Defendant McKesson Corporation ("McKesson") hereby moves the Court for leave to file a reply to Plaintiffs' Opposition to Defendant's Motion for a 60-Day Extension of the Discovery Deadline. A copy of the proposed reply and the Declaration of Lori Schechter in support of this reply is submitted herewith as Exhibits A and B, respectively.

The 60-day extension McKesson requested is justified based on the current scheduling logjam in the last 21 business days in the discovery period. Nineteen depositions have been

noticed, and over a dozen third parties have not completed document productions in response to both parties' subpoenas. Additional follow up discovery will likely be necessary as new information is revealed in the pending discovery. Yet plaintiffs refuse to agree to this modest request. Instead, in their opposition, plaintiffs attempt to blame McKesson for the unnecessarily overloaded schedule. To the contrary, most of the delays and scheduling changes that justify a modest extension are of plaintiffs' own doing. The most recent example of plaintiffs' dilatory conduct came to light after McKesson filed its original motion. Less than two weeks ago, McKesson discovered that contrary to plaintiffs' previous representations, plaintiffs failed to produce over 500,000 pages of relevant documents produced in the AWP MDL by other drug wholesalers. This omission deprives McKesson of the opportunity to follow up on information revealed in these documents and to use this information in the upcoming depositions of these wholesalers.

McKesson therefore respectfully requests leave to file the attached reply to respond to plaintiffs' unfounded accusations against McKesson and to address material omissions in plaintiffs' recitation of the events causing the current scheduling backup.

Dated: May 3, 2007

McKesson Corporation
By its attorneys:

/s/ Lori A. Schechter

Melvin R. Goldman (*pro hac vice*)          John Kiernan
Lori A. Schechter (*pro hac vice*)          Nicole Johnson
Paul Flum (*pro hac vice*)          Bonner Kiernan Trebach & Crociata
Tiffany Cheung (*pro hac vice*)          One Liberty Square
Morrison & Foerster LLP          Boston, MA 02109
425 Market Street          Telephone: (617) 426-3900
San Francisco, CA 94105-2482          Facsimile: (617) 426-0380
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522


## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Lori Schechter, counsel of record for defendant McKesson Corporation, hereby certify that McKesson's counsel conferred with counsel for plaintiffs in an effort to resolve the dispute referred to in this motion, and that plaintiffs' counsel has indicated that plaintiffs will not oppose this motion if McKesson does not oppose any motion by plaintiffs to file a surreply in response to McKesson's reply.

/s/ Lori Schechter
Lori Schechter


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 3, 2007.

/s/ Lori Schechter
Lori Schechter

# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER, | Civil Action:  1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,

Defendants.

### MCKESSON CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR A 60-DAY EXTENSION OF TIME TO COMPLETE NON-EXPERT DISCOVERY

As discussed in McKesson's opening brief, nineteen depositions have already been noticed for the month of May, and over a dozen third parties have not completed document productions in response to the parties' subpoenas.  Depending on what those documents and depositions reveal, additional discovery is likely to be needed.  Without assigning blame to either side, the discovery still to be done cannot be shoe-horned into the limited time remaining. McKesson's motion for a modest 60-day extension of the discovery cutoff should be granted for that reason alone.

While plaintiffs oppose any extension of the discovery cutoff, they fail to explain how all remaining discovery can be completed by June 1.  Instead, they assert that no relief is warranted because the current discovery logjam is purportedly McKesson's fault.  While plaintiffs are correct that discovery is backed-up, plaintiffs are wrong in asserting that McKesson caused this problem.

Actually, the opposite is true.  Most of the delays and scheduling changes that justify a modest extension of the discovery cutoff are of plaintiffs' own doing.  While seeking and obtaining several extensions of the class certification schedule to accommodate their needs in other cases, plaintiffs have repeatedly stonewalled McKesson's efforts to pursue discovery from them.  From the beginning, plaintiffs have refused to provide McKesson with access to the MDL discovery record, complying only after McKesson successfully moved to compel.  Even at this late date — months after plaintiffs were ordered to provide all MDL discovery to McKesson — McKesson has discovered that plaintiffs failed to produce over 500,000 pages of MDL wholesaler documents that potentially go to the heart of the issues in this case.  McKesson will not be in a position to complete its discovery until these documents have been produced and plaintiffs have fully complied with other outstanding discovery obligations discussed below.

McKesson submits this reply to briefly summarize the reasons warranting a 60-day extension and to address the omissions in plaintiffs' recitation of the current status of discovery.

## I.   PLAINTIFFS' FINGER-POINTING ASIDE, THERE IS AMPLE JUSTIFICATION FOR A SHORT EXTENSION.

The depositions noticed by both sides have created an unnecessarily overloaded calendar.  Plaintiffs have noticed thirteen depositions and McKesson has noticed six depositions to be taken in May.  Dates for seven third-party depositions included in that total have yet to be confirmed.  (Schechter Decl. ¶ 3.)  Even assuming that all third parties agree to appear on the dates noticed (which is unlikely), several deposition days are currently double or triple tracked.  In addition, both sides are currently awaiting the production of documents from third parties, and follow-up depositions will likely be necessary (with additional time required to schedule them) once those

productions are complete.  (*Id.* ¶ 4.)  Plaintiffs' opposition does not explain how all of this remaining discovery can be completed in the 21 business days remaining in the discovery period.

In addition to the demands of an already full deposition calendar, McKesson is preparing its surreply in opposition to plaintiffs' motion for class certification and the parties will be participating in the class certification hearing on May 22 and a court-ordered mediation on May 23.  Unless the fact discovery cutoff is extended, the discovery necessary to adequately litigate the complex issues in this case cannot be completed, even if the parties continue to double and triple track depositions.

In response, plaintiffs argue that McKesson can complete its discovery within the current schedule because nearly all of the depositions allotted to McKesson have been noticed or taken. But McKesson has already advised plaintiffs and the Court that it intends to seek leave to take a limited number of additional depositions beyond its current allotment of twenty.  Indeed, McKesson filed a request for a case management conference concurrently with this motion to address the issue of deposition limits and the schedule for remaining pretrial activity in this case. (Request for a Case Management Conference, Dkt. No. 242.)

Plaintiffs' counsel have been steeped in prescription drug pricing litigation for years. They took over 100 depositions in the related AWP MDL, and may not need more depositions to flesh-out their claims in this case.  McKesson is in a different position.  McKesson is not a party to the MDL and did not participate in the MDL depositions.  As a relative newcomer facing serious RICO allegations, there is ample ground for McKesson's request for leave to conduct a modest number of additional depositions in this case, to be identified based on the discovery that is currently underway.[1]

---

[1] The parties initially stipulated that each side could take twenty depositions, without prejudice to their right to request more.  Leave to conduct a limited number of additional depositions is appropriate, among other reasons, because McKesson had to use seven depositions just to depose each named plaintiff.  That left McKesson only thirteen depositions to develop testimony from the scores of other players implicated in plaintiffs' claims, including other TPPs, benefits consultants, PBMs, pharmaceutical manufacturers, other wholesalers, and publishers.

## II.    PLAINTIFFS ARE RESPONSIBLE FOR MOST OF THE DELAYS IN THIS CASE.

### A.    Plaintiffs' Untimely Productions of MDL Materials and Other Discovery Have Obstructed McKesson's Ability To Complete Discovery.

Since the beginning of discovery, plaintiffs repeatedly obstructed McKesson's timely access to discovery produced in the AWP MDL.  The most recent example surfaced just two weeks ago, *after* this motion was filed, when McKesson determined from communications with wholesalers' counsel that plaintiffs' production of MDL documents omitted over 500,000 pages of documents that plaintiffs previously acknowledged are relevant to this action.  (Schechter Decl. Ex. 5.)  These wholesaler documents are directly relevant to key issues, including plaintiffs' allegation that First DataBank falsely claimed that it derived AWP from wholesaler surveys.  (SAC ¶ 8).

McKesson sought the production of all documents and testimony from the AWP MDL early in this case, to avoid unnecessary duplication of effort given the overlap of issues between these litigations.  (Schechter Decl. ¶ 5.)  Plaintiffs objected, and indicated that they would only produce limited relevant categories, including documents produced by other wholesalers (thereby necessitating a motion to compel as to the other relevant documents from the MDL).  (*Id.* ¶ 6, Ex. 1 at 2.)  In May 2006, plaintiffs made available documents produced in the MDL by Cardinal Health and AmerisourceBergen, two of the three national wholesalers.  Plaintiffs confirmed in June 2006 that "all" wholesaler documents produced in the MDL had been turned over to McKesson.  (*See id*. ¶ 8, Ex. 2 at 1.)  On August 9, 2006, plaintiffs reconfirmed that the wholesaler documents produced in the MDL "*have already been produced to McKesson.*"  (*Id.* ¶ 9, Ex. 4 at 2.) (emphasis added).  Contrary to these representations, plaintiffs informed McKesson for the first time last week that these documents were not included in the May 2006 production.  (*Id.* ¶ 10, Ex. 5.)  Indeed, as of the date of this reply, plaintiffs have still not

produced the missing wholesaler documents, even though depositions of wholesalers are noticed to occur in just two weeks.  (*See id.* ¶ 12.)[2]

This incident is not the first omission in plaintiffs' production of MDL materials.  For example, in late March 2007, five months after the Court granted McKesson's motion to compel production of MDL discovery, plaintiffs belatedly produced MDL deposition transcripts of drug manufacturers that were called for by the Court's discovery order.  (Schechter Decl. ¶ 14.) Indeed, as late as last month, plaintiffs continued to produce MDL deposition transcripts of manufacturers.  (*Id.*)  These manufacturer materials are directly relevant to several issues, including the rebates paid by manufacturers that offset plaintiffs' alleged damages, as well as plaintiffs' allegations that manufacturers questioned First DataBank's increase of the WAC-AWP spreads.  (SAC ¶ 9.)

Beyond these production deficiencies, plaintiffs still refuse to adequately respond to interrogatories McKesson served in November 2006, seeking the basis for key allegations in the complaint.  Only on the eve of the hearing on McKesson's motion to compel did plaintiffs agree to respond, but not until April 24, 2007.  (Schechter Decl. ¶ 15.)  Then, less than six weeks before the discovery cutoff, plaintiffs served responses that have little information beyond references to allegations in their Complaint, potentially necessitating another motion to compel. (*Id.* ¶ 15, Ex. 7.)

### B.    Plaintiffs' Changes to the Class Schedule Also Justify a Modest Extension.

Plaintiffs' repeated requests to change the class schedule mean that the parties now face the prospect of completing merits discovery in the seven working days left after the class certification hearing.  In September 2006, plaintiffs requested that McKesson join plaintiffs' motion to change the class certification schedule because of the unavailability of plaintiffs' expert, Dr. Hartman.  (Joint Motion to Modify Case Schedule, Dkt. No. 109.)  Shortly afterward,

---

[2] While plaintiffs claimed to have produced these documents in electronic form on August 25, 2006, that production contained only 197 pages of wholesaler documents.  (Schechter Decl. ¶¶ 10-11.)

plaintiffs added a consumer class to their complaint, causing the Court to change the schedule again on November 9, 2006.  Because plaintiffs had already filed a class motion solely on behalf of a third-party payor class, McKesson sought to put the newly proposed consumer class on the same class certification schedule, and the Court agreed.  (Court Order, Dkt. No. 169.)  In February 2007, plaintiffs requested a three-week extension to file their class reply, again to accommodate their expert, Dr. Hartman, and again necessitating a change in the class certification hearing.  (Dkt. No. 198.)[3]  With the class hearing now scheduled just before the merits discovery cutoff, the parties will have no opportunity to frame the final rounds of merits discovery in accordance with the ruling on the class motion, in contrast to the Court's previous scheduling orders.

### C.     McKesson Has Diligently Responded to Plaintiffs' Deposition Requests.

Plaintiffs assert that McKesson has not been diligent in fulfilling its discovery obligations, but the main example they give does not support their claim.[4]  Plaintiffs claim that McKesson delayed in producing two witnesses for deposition — Jeff Herzfeld and David Silko. (*See* Berman Opp'n Decl. ¶ 3.)  Mr. Herzfeld and Mr. Silko each resigned from McKesson in 2005.  As former employees, McKesson needed additional time to contact them and determine when they were available.  Notwithstanding plaintiffs' suggestion to the contrary, McKesson has diligently arranged for depositions of its personnel and has endeavored to schedule them on dates that would be convenient for plaintiffs.  (Schechter Decl. ¶ 17.)  With the exception of these two former employees, and one current employee, all nine other McKesson witnesses have been or will be produced on dates proposed by plaintiffs.  (*Id.*)

---

[3] McKesson subsequently requested a three-week extension to file its surreply commensurate with the additional three weeks plaintiffs had to prepare their extensive reply submissions, but this extension necessitated no change in the class hearing schedule.

[4] To the contrary, McKesson began its document production in May 2006 and completed the bulk of its production in October 2006, after thousands of attorney hours were spent responding to plaintiffs' several sets of document requests.  (Schechter Decl. ¶ 16.)  Plaintiffs did not begin taking the depositions of McKesson witnesses until March 2007.

**III.     A MODEST EXTENSION OF THE DISCOVERY CUTOFF WOULD PROMOTE EFFICIENT CASE ADMINISTRATION.**

A 60-day extension of the discovery cutoff would also advance the Court's overarching interest in sound and efficient case administration.  As noted, several disputes have arisen recently that directly implicate the parties' ability to complete merits discovery on the current schedule.  For example, McKesson's ability to complete depositions relating to other wholesalers' involvement in the system for establishing AWPs is threatened by plaintiffs' failure to produce over 500,000 pages of relevant wholesaler documents from the MDL.  Without the extension sought by this motion, discovery motions arising from these and other matters are all but inevitable, and will likely require that discovery be reopened after these motions are ruled upon.  By contrast, a modest extension would give the parties time to resolve these matters informally and to complete discovery in an orderly way without the need for the Court's intervention.

Similarly, the Court has a strong interest in ensuring that it has the benefit of a fully developed factual record on which to decide whether any claims or issues can be resolved on summary judgment.  *See, e.g.*, *Payless Shoesource Worldwide, Inc. v. Target Corp.*, 237 F.R.D. 666, 670 (D. Kan 2006).  A modest extension to permit both sides to develop and test the evidence relating to the parties' claims and defenses will promote the interests of justice by enhancing the Court's ability to dispose of issues or claims through those motions.  *See* Manual for Complex Litig. § 11.34 (4th ed. 2004) ("more extensive discovery" is necessary in complex cases to create an adequate record for summary judgment).

Finally, the 60-day extension sought by McKesson will not impact the schedule for the ultimate disposition of this case.  No trial date has been set.  Pretrial deadlines have already been extended to accommodate plaintiffs' counsels' and their expert's trial commitments in the related AWP MDL litigation.  Additional trials in the related MDL are likely to precede any trial that ultimately may occur in this case.

## CONCLUSION

It is time to stop pointing fingers and assigning blame and turn instead to the real issue presented by McKesson's motion — whether a modest extension of the discovery cutoff is necessary to promote the orderly and efficient completion of fact discovery. There are ample grounds for such relief. An already full deposition and motion calendar during May, the current challenges of obtaining documents and depositions from third parties, and unresolved disputes over party-related discovery strongly favor granting the modest continuance sought by this motion. Plaintiffs have articulated no prejudice that would result from a short extension. This Court should accordingly extend the fact discovery deadline to July 31, 2007, and set a case management conference to discuss the remaining schedule.

McKesson Corporation
By its attorneys:

/s/ Lori A. Schechter

| | |
|---|---|
| Melvin R. Goldman (*pro hac vice*) | John Kiernan |
| Lori A. Schechter (*pro hac vice*) | Nicole Johnson |
| Paul Flum (*pro hac vice*) | Bonner Kiernan Trebach & Crociata |
| Tiffany Cheung (*pro hac vice*) | One Liberty Square |
| Morrison & Foerster LLP | Boston, MA 02109 |
| 425 Market Street | Telephone: (617) 426-3900 |
| San Francisco, CA 94105-2482 | Facsimile: (617) 426-0380 |
| Telephone: (415) 268-7000 | |
| Facsimile: (415) 268-7522 | |

Dated: May 3, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 3, 2007.

/s/ Lori A. Schechter
Lori A. Schechter

# Exhibit B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER, | Civil Action:  1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**DECLARATION OF LORI A. SCHECHTER IN SUPPORT OF DEFENDANT MCKESSON CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR A 60-DAY EXTENSION TO COMPLETE NON-EXPERT DISCOVERY**

I, Lori A. Schechter, declare as follows:

1.      I am a partner at the law firm of Morrison & Foerster LLP and one of the attorneys of record for McKesson Corporation ("McKesson") in this action.  I submit this declaration in support of McKesson's Reply in Support of its Motion for a 60-day Extension to Complete Non-Expert Discovery.

**Nineteen Depositions Are Already Noticed During May**

2.      Under the current schedule, the deadline for completing non-expert discovery is June 1, 2007.

1

3.      In the remaining 21 deposition days left in the discovery period, plaintiffs have noticed thirteen depositions, and McKesson has noticed six depositions to occur.  Some of these depositions are double or triple tracked.  Of the nineteen depositions noticed, seven third party deposition dates have not yet been confirmed.

4.      Both sides are currently awaiting the production of documents from third parties.  I expect that McKesson will pursue a limited number of additional depositions once these documents are produced.

**Plaintiffs' Late Productions of MDL Wholesaler Discovery**

5.      McKesson initially requested plaintiffs to produce all documents and testimony produced in the AWP MDL in December 2005, and in March 2006, McKesson served formal document requests for these materials.

6.      On April 10, 2006, plaintiffs served written responses to McKesson's first set of document requests.  In these responses, plaintiffs objected to providing McKesson with full access to the MDL discovery record, but agreed that documents produced in the MDL by other wholesalers were "relevant" and would be produced.  Attached as Exhibit 1 is a true and correct copy of Plaintiffs' Responses to McKesson's First Set of Document Requests, dated April 10, 2006.

7.      On May 11, 2006, plaintiffs' counsel informed McKesson's counsel that documents produced in the MDL by wholesalers, Cardinal Health and AmerisourceBergen, were available at Hagens Berman's Seattle office for inspection.  On May 16, 2006, McKesson's counsel traveled to Seattle and copied all available MDL documents produced by these wholesalers.

8.      On June 7, 2006, plaintiffs' counsel wrote a letter to McKesson stating that "all" wholesaler MDL documents have been turned over to McKesson.  Attached as Exhibit 2 is a true and correct copy of a letter from S. Berman to P. Flum, dated June 7, 2006.

9.      On August 8, 2006, McKesson's counsel asked plaintiffs' counsel to confirm that all documents produced by the wholesaler, Cardinal Health, had been produced to McKesson.  On August 9, 2006, plaintiffs' counsel responded by letter, stating that all MDL documents produced by Cardinal "have already been produced to McKesson."  Attached as Exhibits 3 and 4, respectively, are

2

true and correct copies of the correspondence between P. Flum and S. Berman, dated August 8 and August 9, 2006.

10.     Eight months later, on April 27, 2007, plaintiffs' counsel wrote an email in response to McKesson's inquiries about the wholesaler production of documents from the MDL.  Counsel's email stated for the first time that the wholesaler MDL documents had not been included in the materials made available to McKesson in Seattle in May 2006.  Plaintiffs' counsel stated that these wholesaler documents were included on a hard drive produced to McKesson by another plaintiffs' firm, Wexler Torisheva, and Wallace.  Attached as Exhibit 5 is a true and correct copy of an email from B. Mahoney to T. Cheung, dated April 27, 2007.

11.     The hard drive McKesson received from the Wexler firm on August 25, 2006 contained only 197 pages of wholesaler MDL documents.

12.     On April 25, 2007, plaintiffs disclosed that the wholesalers had produced over 662,000 bates-numbered pages or CDs in the MDL.  *See* Exhibit 5 (list from plaintiffs' counsel of the bates-ranges of the wholesaler documents produced in the MDL).  On April 30, 2007, McKesson renewed its request that plaintiffs produce a complete set of these wholesaler documents.  Attached as Exhibit 6 is a true and correct copy of the letter from T. Cheung to B. Mahoney, dated April 30, 2007.  To date, plaintiffs have not produced to McKesson over 500,000 of those bates-numbered pages or CDs.

**Plaintiffs' Late Production of Other MDL Discovery**

13.     After plaintiffs refused to provide McKesson with full access to the MDL record, McKesson moved to compel.  That motion was granted by Order dated October 3, 2006.  The Court's order noted that plaintiffs "had agreed to make available documents from the other litigation" in response to McKesson's motion, and ordered that all MDL depositions "in electronic form" were to be produced by close of business on October 17, 2006.

14.     While plaintiffs made a production of documents and deposition transcripts within the timeframe ordered by the court, that production was incomplete.  In response to McKesson's inquiries, plaintiffs produced additional MDL deposition transcripts and MDL documents between March 21 and April 9, 2007.  The March 2007 production included depositions of manufacturers taken in the MDL.

**Plaintiffs' Inadequate Interrogatory Responses**

15.    McKesson served interrogatories on plaintiffs on November 30, 2006, requesting plaintiffs to "state the basis" for several of the allegations made in their Second Amended Complaint. Plaintiffs objected to these interrogatories, and McKesson moved to compel responses. The day before the hearing on McKesson's motion to compel, plaintiffs agreed to respond to these interrogatories, but not until April 24, 2007. Plaintiffs served their responses on April 24, 2007, as agreed. Several of their responses provide little information beyond references to allegations in their Complaint. Attached as Exhibit 7 is a true and correct copy of plaintiffs' second amended responses and objections to McKesson's first set of interrogatories, dated April 24, 2007.

**McKesson's Responses to Plaintiffs' Document and Deposition Requests**

16.    McKesson began its document production in May 2006 and completed the bulk of its production in October 2006. McKesson has invested thousands of attorney hours reviewing hundreds of thousands of documents and has produced to plaintiffs over 100,000 pages of documents from the files of over 40 custodians located all around the country.

17.    As plaintiffs have requested depositions of McKesson witnesses, McKesson has endeavored to make these witnesses available on one of the dates proposed by plaintiffs. With the exception of former employees, Jeff Herzfeld and David Silko, and one current employee, all nine other McKesson witnesses have been or will be produced on dates proposed by plaintiffs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 3rd day of May, 2007, in San Francisco, California.

/s/ Lori A. Schechter
Lori A. Schechter

**CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 3, 2007.

                    /s/ Lori A. Schechter
                    Lori A. Schechter

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, | ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| FIRST DATABANK, INC., a Missouri Corporation; and McKESSON CORPORATION, a Delaware Corporation, | ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 1:05-CV-11148-PBS

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO MCKESSON'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

**GENERAL OBJECTIONS TO DEFINITIONS**

Plaintiffs object to the definition of "Funds" or "Fund" as overbroad and requiring the

production of documents from persons not within their control.

- 1 -

001821-11 99274 V1

## OBJECTIONS TO INSTRUCTIONS

Plaintiffs object to the time frame as overbroad.  This case arises from a price manipulation that occurred in 2000 and 2001.  The documents requested from 1991 forward are thus overbroad and unduly burdensome.

Plaintiffs do not object to instructions 6-14 so long as they are mutual instructions binding both parties.

## RESPONSES

1.      All documents concerning the MDL Litigation, including, without limitation, all documents produced pursuant to discovery requests, deposition transcripts, deposition videos, deposition exhibits, non-public pleadings, and transcripts of hearings before a Judge or Magistrate.

RESPONSE:  Plaintiffs object based on:  relevancy, time frame and overbreadth.  The MDL action covers 15 years, this case 5.  The MDL action covers some drugs not at issue in this case and issues not at issue in this case.  Plaintiffs can and will produce a subject of relevant material:  depositions and documents from FDB, McKesson, other wholesalers, and any other relevant categories identified by McKesson.

2.      All indexes that tabulate or list all or any part of the items listed in Request No. 1.

RESPONSE:  No meaningful "index" exists to the productions.  What indexes do exist are of materials not relevant.

3.      All communications between or among counsel regarding discovery in the MDL Litigation.

RESPONSE:  Plaintiffs object based on:  relevancy, time frame and overbreadth.  The MDL action covers 15 years, this case 5.  The MDL action covers some drugs not at issue in

- 2 -

this case and issues not at issue in this case. Plaintiffs can and will produce a subject of relevant material: depositions and documents from FDB, McKesson, other wholesalers, and any other relevant categories identified by McKesson.

4.      All documents concerning the billing for and payment for drugs referred to in paragraphs 19, 20, 21, and 22 of the Complaint.

RESPONSE:  During the relevant time frame 1999-present responsive documents will be produced.

5.      All documents concerning each Plaintiff's reimbursement for Subject Drugs "on the basis of the published AWPs (minus a fixed percentage)" where the AWPs are published by First DataBank, referred to in paragraphs 19, 20, 21, and 22 of the Complaint.

RESPONSE:  During the relevant time frame 1999-present responsive documents will be produced.

6.      All contracts between each plaintiff and any PBM concerning administration of plaintiff's drug program for its members, including all contracts between PMBT and ACS/Caremark or any other PBM, referred to in Paragraph 20 of the Complaint.

RESPONSE:  During the relevant time frame 1999-present responsive documents will be produced.

7.      For the period beginning January 1, 1991, all documents that refer to a manufacturer (or division thereof) as a "20% markup" company or a "25% markup" company as described in Paragraph 39 of the Complaint.

RESPONSE:  Plaintiffs object as to the time period.  Plaintiffs will produce any documents identified in the Complaint but otherwise object to the burden of searching through all MDL documents for such references.

- 3 -

8.      All documents concerning brand name drug reimbursement for retail pharmacy ingredient costs contained in "contracts between PBMs and plan sponsors, and PBMs [and] pharmacies" referred to in Paragraph 57 of the Complaint.

RESPONSE:  Plaintiffs will produce documents in their possession for the period 2000 to the present.

9.      All documents containing data from First DataBank or any other publisher concerning the Subject Drugs, AWP or manufacturers' suggested prices.

RESPONSE:  Plaintiffs object to the breadth of this request and object to McKesson's attempt to impose the burden on plaintiffs.  McKesson can obtain these documents from the publisher.

10.     Each of the "thousands of pharmaceutical contracts ... based on AWP minus a specified discount" referred to in Paragraph 63 of the Complaint.

RESPONSE:  Plaintiffs will produce contracts during the relevant time period.

11.     For the period beginning January 1, 1991, all documents concerning the accuracy of published AWPs.

RESPONSE:  Plaintiffs object on the grounds of vagueness, overbreadth, time frame and relevancy.

12.     For the period beginning January 1, 1991, all documents concerning the publication of AWPs by Red Book, Blue Book, Medi-Span, or any other publisher (other than First DataBank).

RESPONSE:  Plaintiffs object on the grounds of vagueness, overbreadth, time frame and relevancy.

13.    All documents concerning the merger of First DataBank and Medi-Span referred
to in the Complaint.

RESPONSE:  These documents are in the possession of McKesson and a search
by plaintiffs would be burdensome.

14.    All documents concerning any representation or other statement by First
DataBank concerning its business, including its publication of AWPs, information contained in
its field information, how it derive information for its database, how it determined markups, its
research of wholesalers, and its conduct of surveys.

RESPONSE:  Responsive documents are available from First Data.  Plaintiffs will
replicate portions of the First Data production in the MDL Litigation that plaintiffs selected.
Plaintiffs object to any burden beyond this.

15.    All documents from which the charts and graphics in Paragraphs 119, 120, 121,
and 126 of the Complaint were prepared.

RESPONSE:  Responsive documents will be produced.

16.    For the period beginning January 1, 1991, all documents concerning complaints
or other reactions by manufacturers to increases in AWPs published by First DataBank.

RESPONSE:  Documents referred to in the Complaint will be produced.

17.    All documents concerning any potential, prospective, or actual settlement
between any Plaintiffs and First DataBank, including all communications between Plaintiffs'
counsel and First DataBank or its counsel.

RESPONSE:  Plaintiffs object on the grounds of work product, privilege, and
relevancy.

- 5 -

18.    All documents upon which your expert relied for each affidavit or declaration used to support certification of a class or classes in the MDL Litigation.

RESPONSE:  Plaintiffs object on the grounds of relevancy, time frame and protective order issues.

19.    All documents concerning proposed or actual changes made or to be made in reimbursement rates to retail pharmacies for any Subject Drugs, including when the AWP for such drugs was increased in First DataBank's publication.

RESPONSE:  Plaintiffs object on the grounds that Request No. 19 is unintelligible as written.

20.    All documents concerning reimbursement of Plaintiffs by third parties for prescription drug expenditures made on behalf of Participants or Beneficiaries.

RESPONSE:  Plaintiffs object on the grounds of time period, relevancy, overbreadth and vagueness.

21.    All documents concerning the Medicare Modernization Act of 2003, or any like proposed federal legislation.

RESPONSE:  Plaintiffs object on the grounds of relevancy, burden and overbreadth.

22.    All documents concerning discontinuation of AWP as a basis or means for reimbursement.

RESPONSE:  Plaintiffs object on the grounds of relevancy and burden.

23.    All documents concerning damages you claim were sustained by You because of the alleged "5% scheme."

- 6 -

RESPONSE: Plaintiffs object as to the timeliness of this Request. Damages will be the subject of the expert testimony. Plaintiffs will produce transactional information on the drugs in question.

24.    All documents comparing AWPs published by First DataBank with AWPs published by other Publishers.

RESPONSE: Plaintiffs are unaware of such documents.

25.    All documents comparing AWPs published by First DataBank to manufacturer suggested wholesale prices.

RESPONSE: Plaintiffs are unaware of such documents.

26.    All documents concerning price offsets, discounts, rebates, or off-invoice incentive payments made by drug manufacturers to PBMs.

RESPONSE: Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

27.    For the period beginning January 1, 1991, all documents that describe the hospital, medical, or prescription drug benefits that You offer to Participants or Beneficiaries, including, without limitation, plan documents, summary plan descriptions, adoption agreements, and/or all amendments thereto, summaries of material modifications, riders, addenda, and co-payment schedules.

RESPONSE: Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

28.    For the period beginning January 1, 1991, all documents concerning consideration of potential changes to hospital, medical, or prescription drug benefits offered to Your Participants or Beneficiaries.

- 7 -

RESPONSE:  Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

29.    For the period beginning January 1, 1991, all minutes or other summaries of any meetings or conferences held by You, Your trustees, management or directors or Your Pharmaceutical and Therapeutic Committee concerning drug benefits under either hospital/medical or prescription drug coverage You provide Beneficiaries or Participants.

RESPONSE:  Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

30.    For the period beginning January 1, 1991, all documents concerning Your contractual relationships with Third Party Administrators, PBMs, Mail Order Pharmacies, Benefit Consultants, Auditors, Wholesalers, Manufacturers, Independent Practice Associations or Providers, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal, correspondence, all contracts between You and PBMs Caremark, Medco, Express Scripts, and Advance PCS.

RESPONSE:  Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

31.    For the period beginning January 1, 1991, all documents concerning the actual or potential negotiation, renewal or replacement of contractual relationships with Third Party Administrators, PBMs, Mail Order Pharmacies, Benefit Consultants, Auditors, Manufacturers or Providers, including documents sufficient to identify all persons involved in such negotiation.

RESPONSE:  Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

- 8 -

32.    For the period beginning January 1, 1991, all documents concerning AWPs for drugs, including without limitation, all documents concerning the accuracy of published AWPs.

RESPONSE: Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

33.    For the period beginning January 1, 1991, all documents concerning any definition or meaning of AWP or its use in the pharmaceutical marketplace.

RESPONSE: Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome.

34.    For the period beginning January 1, 1991, all documents concerning AWP, AMP, WAC, ASP or any other drug pricing or reimbursement information, including without limitation, documents concerning the WAC-AWP markup.

RESPONSE: Plaintiffs object on the grounds of time frame, relevancy, overbreadth and burdensome. Subject to the foregoing objections, plaintiffs will produce materials used in drafting the complaint.

35.    For the period beginning January 1, 1991, all documents concerning Your decision to rely on, reliance on, or use of drug pricing information published by any Publisher.

RESPONSE: Plaintiffs object to the time frame. During the relevant period responsive documents will be produced that are in the possession of plaintiffs.

36.    For the period beginning January 1, 1991, all documents created by or received from any Publisher, including but not limited to drug pricing information, and communications, memoranda, contracts or agreements between You and any Publisher.

RESPONSE: Plaintiffs object to the time frame. Subject to that objection, responsive documents in the possession of plaintiffs will be produced.

- 9 -

37.     For the period beginning January 1, 1991, all documents provided to, created by or received from CMS, United States Department of Health and Human Services, the Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal institution, agency, department, or office regarding the pricing of prescription drugs.

RESPONSE:  Plaintiffs object to the time frame and relevancy of this Request. Further, these reports are available to McKesson.

38.     For the period beginning January 1, 1991, all documents concerning any internal or external, formal or informal, assessments, studies, analyses, reviews, or audits regarding drug pricing or reimbursement amounts.

RESPONSE:  Plaintiffs object to the time frame and relevancy of this Request.

39.     For the period beginning January 1, 1991, all documents concerning the price of or reimbursement rate for any Subject Drug.

RESPONSE:  Plaintiffs object to the time frame and relevancy of this Request.

40.     For the period beginning January 1, 1991, all communications between You and any Third Party Administrator, Pharmaceutical Benefit Manager, Benefit Consultant, Auditor, Retailer, Mail Order Pharmacy, Independent Practice Association, Manufacturer, and/or Provider concerning Subject Drugs, including without limitation, communications concerning WAC-AWP spreads or ASP to AWP spreads.

RESPONSE:  Plaintiffs object to the time frame and relevancy of this Request.

41.     For the period beginning January 1, 1991, all documents concerning any Participant's or Beneficiary's payment for Subject Drugs, including, without limitation, any

- 10 -

co-payments made by any Participant or Beneficiary, and any alleged damages arising from such purchases.

RESPONSE:  Plaintiffs object to the time frame and relevancy of this Request.

42.    For the period beginning January 1, 1991, all documents concerning any requests by You for information concerning the pricing or reimbursement for Subject Drugs.

RESPONSE:  Plaintiffs object to the time frame and relevancy of this Request.

43.    All documents concerning any relationships with insurers insofar as they cover Subject Drugs, including, without limitation, base medical contracts, contracts for facilities or contracts with Providers.

RESPONSE:  Plaintiffs object to the time frame and relevancy of this Request.

44.    All documents concerning any subrogation rights that You may have relating to damages incurred by any of Your Participants or Beneficiaries.

RESPONSE:  Plaintiffs object to time frame and relevancy of this request.

45.    Your annual reports, state and federal tax filings, documents filed with federal or state agencies, articles of incorporation, by-laws, and charters.

RESPONSE:  Object on the grounds of relevancy, time frame and overbreadth.

46.    Documents sufficient to identify all of your employees and to show Your organizational structure during the time period for which You claim damages in the Complaint.

RESPONSE:  Responsive documents will be produced during the relevant time period.

47.    All communications with witnesses or potential witnesses in connection with this case, including, without limitation, expert witnesses and fact witnesses.

- 11 -

RESPONSE: Plaintiffs object on the grounds of work product, time frame and relevancy.

48.    All documents that support any claim asserted in the Complaint, as well as any other documents that You plan to offer in evidence in this case, to the extent not otherwise produced.

RESPONSE: Plaintiffs object to this request as it is impossible at this stage to produce all documents plaintiffs intend to introduce into evidence. Plaintiffs will produce documents used in preparing the complaint.

49.    All documents concerning the computation of damages for the claims set forth in the Complaint.

RESPONSE: Plaintiffs object on the grounds that this Request is repetitive and premature.

50.    All documents concerning any alleged misrepresentation or omission by any of the Defendants.

RESPONSE: Plaintiffs will produce responsive documents.

51.    All agreements, understandings, and fee or cost arrangements with Your counsel and/or with any other plaintiff or third party concerning this case.

RESPONSE: Plaintiffs object on the grounds of relevancy and privilege.

52.    All documents concerning communications to First DataBank or any Publisher regarding AWP, the WAC-AWP spread, the impact of changes in the WAC-AWP spread on WAC, or the impact of changes in the WAC-AWP spread on manufacturer or wholesaler discount schedules.

RESPONSE:  Plaintiffs object to Request Nos. 52-56 and 58 on the grounds they have been the subject of previous requests.

53.    All documents from manufacturers concerning the WAC-AWP spread, the impact of changes in the WAC-AWP spread on WAC, or the impact of changes in the WAC-AWP spread on manufacturer or wholesaler discount schedules.

RESPONSE:  Plaintiffs object to Request Nos. 52-56 and 58 on the grounds they have been the subject of numerous previous requests.

54.    All documents concerning First DataBank or its pricing or publication services.

RESPONSE:  Plaintiffs object to Request Nos. 52-56 and 58 on the grounds they have been the subject of numerous previous requests.

55.    All documents concerning the impacts of higher or lower WAC-AWP spreads on pharmacy reimbursement.

RESPONSE:  Plaintiffs object to Request Nos. 52-56 and 58 on the grounds they have been the subject of numerous previous requests.

56.    All documents concerning whether increasing or decreasing the WAC-AWP spread would affect retail pharmacies.

RESPONSE:  Plaintiffs object to 52-56, 58 on the grounds they have been the subject of numerous previous requests and are overbroad.

57.    All documents concerning AWP, including but not limited to:  (i) documents concerning Your use of AWP as a pricing term or pricing benchmark in any of Your contracts; (ii) documents discussing how You or others define AWP; (iii) documents discussing how AWP has been, or is currently, calculated; (iv) documents identifying the source that You use for

- 13 -

determining AWPs; (v) all communications between you and a plaintiff concerning AWP; and (vii) all communications between You and a PBM concerning AWP.

RESPONSE: Plaintiffs object to this Request on the grounds of time frame. Subject to that objection plaintiffs will produce relevant documents in their possession as opposed to that of MDL counsel.

58.    All documents concerning any pricing survey conducted by any Publication.

RESPONSE: Plaintiffs object to Request Nos. 52-56 and 58 on the grounds they have been called for numerous times in previous requests. Plaintiffs will produce responsive documents.

59.    All documents concerning each Plaintiff's pricing database, the database itself, and any codes to that database.

RESPONSE: Plaintiffs object to this Request on the grounds it is unintelligible.

60.    Documents reflecting ay communications with any trade group, lobbying organization, or trade association, regarding AWPs, the spread between AWP and WAC, and profit margins of pharmacies.

RESPONSE: Plaintiffs object to the Request on the grounds of relevancy.

61.    All documents produced by You, whether voluntarily or involuntarily, in any Governmental Investigation or inquiry concerning the use of AWP.

RESPONSE: Plaintiffs object as to time frame but believes that no responsive documents have been produced.

62.    All documents concerning any legal proceeding (by country, court, caption, case number, etc.) including, but not limited to, court hearings, legislative hearings, mediations or arbitrations, in which You were a party, regarding the use of AWP.

- 14 -

RESPONSE:  Plaintiffs object to this as overbroad, it would call for the entire MDL file.

63.    All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding the use of AWP.

RESPONSE:  Plaintiffs will produce such documents.

64.    All current and historical organizations charts for all of Your departments.

RESPONSE:  This is identical to Request No. 46 and is thus harassing.

65.    All documents sufficient to identify Your policy or practice of document retention, disposal, or preservation for each year during the Relevant Time Period.

RESPONSE:  Responsive documents will be produced.


DATED:  April 10, 2006

By_____
      Thomas M. Sobol (BBO#471770)
      Hagens Berman Sobol Shapiro LLP
      One Main Street, 4th Floor
      Cambridge, MA  02142
      Telephone: (617) 482-3700
      Facsimile: (617) 482-3003

      Steve W. Berman
      Sean R. Matt
      Hagens Berman Sobol Shapiro LLP
      1301 Fifth Avenue, Suite 2900
      Seattle, WA  98101
      Telephone: (206) 623-7292
      Facsimile: (206) 623-0594

      Elizabeth Fegan
      Hagens Berman Sobol Shapiro LLP
      60 W. Randolph Street, Suite 200
      Chicago, IL  60601
      Telephone: (312) 762-9235
      Facsimile: (312) 762-9286

- 15 -

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone:  (615) 244-2202
Facsimile:  (615) 252-3798

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2006, a true copy of the above-referenced document was served upon the attorney of record listed below by email and UPS Next Day Air.

Lori A. Schechter
Morrison & Foerster
425 Market Street
San Francisco, CA 94105-2482
415-268-7000
Fax: 415-268-7522
Email: lschechter@mofo.com

*Counsel for McKesson Corporation*

_____
Steve W. Berman

001821-11 99274 V1

# Exhibit 2



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

June 7, 2006

*<u>Via E-Mail</u>*

Paul Flum
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

   Re: *<u>New England Carpenters Health Benefit Fund v. FDB, et al.</u>*

Dear Paul:

   This is in response to your letter of June 2, 2006.

**A. Documents Concerning MDL Litigation Nos. 1 and 18**

   Your letter mischaracterizes our position regarding the full MDL review.  We do not concede that the MDL records you seek are probative.  We have suggested that if you truly wish to wade through millions of documents, go to the producing parties. You refuse to do so but instead seek to examine what plaintiffs selected.  Plaintiffs have turned over all documents produced by McKesson, FDB, other publishers and wholesalers.  We have also suggested that you obtain all depositions and exhibits from the court reporter.  You will thereby have what the parties have distilled as relevant to the much broader AWP case from the millions of largely useless documents produced.

**B. Documents Concerning Plaintiffs' Allegations or AWP**

   Your statement regarding No. 7 is not accurate.  Plaintiffs have agreed to produce or suggest you obtain all of the documents referred to above, which relate to these allegations and all documents that we believe are relevant using that term as broadly as possible from the productions of FDB, McKesson, Redbook, Medispan and any manufacturer.  What we have not done is to search in the documents rejected or culled out years ago on the slim chance something is out there.  Again, if you wish to do so, contact the producing parties.

ATTORNEYS AT LAW    SEATTLE LOS ANGELES CAMBRIDGE PHOENIX CHICAGO
T 206.623.7292  F 206.623.0594
1301 FIFTH AVENUE • SUITE 2900 • SEATTLE, WASHINGTON 98101
www.hagens-berman.com

001821-13  112534 V1

Paul Flum
June 7, 2006
Page 2

Nos. 8 and 16.  The statement that we continue to refuse to search for other responsive documents is not accurate.  We do not believe there are other responsive documents outside the source offered above.  Again, you are free to contact producing parties to conduct your own search on the slim chance there is something of relevance.

No. 17.  We do not agree we need to create a log of documents created in the settlement phase.  You can move for this material on a categorical basis.

Nos. 32, 33, 34, 36, 40, 52-56, 57, 60, 7-10, 12, 14, 16, 32-34, 40, 52-57, you have misstated the record as to our "refusal for the reasons stated above."  See above Sections A and B.

**C.     Documents Concerning Reimbursements**

No. 22.  Same as above.

Nos. 22, 35, 38, 39.  Same as above.

**D.     Documents Regarding Injury**

No. 26.  Same as above.

**E.     Documents Regarding the Class Representatives**

No. 62.  We don't understand your language regarding "standing on objections." I am unaware of other legal proceedings regarding AWP.

**F.     Documents in Support of Claims**

No. 23.  What I stated was that the request, in so far as it seeks damage calculation, is premature.  Same for No. 49.

**G.     Nos. 30, 31**

We are producing contracts with PBMs and the complete MDL production which includes many of the subcategories.

Paul Flum
June 7, 2006
Page 3


**H.     No. 41**

The request is overbroad and would violate patient confidentiality.


Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP


*[sent via electronic delivery]*

Steve W. Berman


cc:  Plaintiffs' Counsel

001821-13  112534 V1

# Exhibit 3

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

August 8, 2006

*By E-Mail*

Steve W. Berman
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Writer's Direct Contact

415.268.7335
PaulFlum@mofo.com

Re:     *New England Carpenters Health Benefit Fund, et al. v. First DataBank, et al.*,
        No. 1:05-CV-11148-PBS

Dear Steve:

Thank you for the list of AWP MDL documents maintained in Hagens Berman's Seattle office that you sent last Friday, and the list of AWP MDL documents maintained at the Wexler firm's Chicago office that you sent today.  Your August 4 cover letter states that you are waiting on inventories from other offices.  When will these be available?

We would like to inspect the hard copy documents maintained at your Seattle office listed on the index that we were not permitted to inspect on our last trip.  We would like to come this Thursday and Friday.  For purposes of prioritizing the production, we would like to start with the third-party and plaintiff documents, as well as the binders and redwelds of manufacturer documents listed on your index.

Based on the index that we received today of the Wexler firm's documents, we would like to arrange for copies of the PHSI's hard copy production.  We have no objection to your removal of the pre-1998 documents from the copy set.  Who should we contact to arrange for the copies?  We would also like to know whether the Cardinal, FDB, Red Book and MediSpan documents listed on the Wexler index have already been produced to McKesson.

We also note that the indices you provided include references to numerous document databases and other materials maintained in computer readable media.  We would like to obtain copies of all this material as soon as possible.  This would include copies of the CDs and hard drives listed on the indices and the databases for Aventis, Sicor, AstraZeneca, Abbott, Baxter, Bayer, CAN, Saad Antoun, Cambridge Pharma, Covance, Eidetics, MedeMedia, Paraxel, Pennside Partners, Sudler & Hennessy, TNS, Howard Tag, United Healthcare, Williams & Jensen, Pirelli, Sheet Metal Workers, and UFCW.  Who should our vendor contact to arrange to copy these materials?

sf-2175198

MORRISON | FOERSTER

Steve W. Berman
August 8, 2006
Page Two

Finally, your letter claims that plaintiffs did not agree to provide us with an index of the
AWP MDL discovery, even though you represented to the Court that plaintiffs would do
exactly that.  Opp'n to Motion to Compel at 8 ("Plaintiffs can provide the following
categories of information: which defendants produced documents and where those
documents are located; the approximate volume of documents; and the format in which they
exist (whether in hard copy or some digital format).")  Worse, you assert that McKesson has
held off requesting this material to "posture" for delay.  We first asked you for an index of
the AWP MDL document discovery over six months ago.  You responded on March 2 that
"plaintiffs do not have 'an index' nor is there an 'electronic database.'"  It now appears that
plaintiffs have both an index and extensive databases of MDL documents.  McKesson has
been working diligently to get access to the AWP MDL discovery record.  Plaintiffs have
resisted at every turn.  Should an adjustment to the current case schedule become necessary,
it will be a result of plaintiffs' delaying tactics, and not any lack of diligence by McKesson.

Sincerely,

Paul Flum

sf-2175198

# Exhibit 4



STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

August 9, 2006

**_Via E-Mail_**

Paul Flum
Morrison Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

      Re:     _New England Carpenters v. First Databank_

Dear Mr. Flum:

      This is in response to your letter of August 3, 2006.

      The premise of your letter, _i.e._, that there are significant gaps in the production by the plaintiffs is incorrect.  Your mistaken assumption arises from an apparent misunderstanding as to the size and sophistication of the plaintiff funds.

      For example, you charge that there are no contract negotiation documents, "audits" and many other categories.  If such documents existed they would be produced.  They simply don't exist.

      New England Carpenters – a small plan – has produced responsive documents other than claims data which is being gathered.

      Pirelli is likewise a small plan.  The fund itself does not use e-mail (so there are no electronic documents to search for) and has had a relationship with its third party administrator for many years (so there are not the types of contracting documents McKesson is looking for).  Moreover, Pirelli has produced the transcript of a deposition taken in the AWP case of a Pirelli trustee:  have you read the deposition?  In short, plaintiffs' counsel has had extensive discussions with your colleague, Tiffany Cheung, and has accommodated every request McKesson has made consistent with plaintiffs' overall positions regarding the permissible scope of McKesson's requests.  McKesson's repeated insistence that "there must be something more" does not mean that there is, in fact, more to produce.

ATTORNEYS AT LAW          SEATTLE    LOS ANGELES    CAMBRIDGE    PHOENIX    CHICAGO

T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE • SUITE 2900 • SEATTLE, WASHINGTON 98101
www.hagens-berman.com

001821-13  122917 V1

Paul Flum
August 9, 2006
Page 2

Teamsters.  Same as above.  The fact that members can e-mail does not mean those members' related e-mails have anything to do with this case.  Teamsters has again searched its email files and uncovered a few potentially responsive emails, these will be produced shortly.  Teamsters also expects to produce its electronic claims data, with patient identifying information removed, by next week.

Teamsters' designee, Fund Administrator Bill Einhorn, is tentatively available for deposition in Philadelphia on August 23 or Sept 8, 11 or 12.

As to 30(b)(6) witnesses, in most instances, these plans have been deposed in the MDL and that deposition provides a great deal of information.  None of the MDL plaintiffs are unable to proceed with merits depositions.

Regarding the documents available at Wexler Toriseva Wallace ("WTW"), you may contact Jennifer Connolly to arrange for copying of the PHSI production.  Please be advised that WTW is not in possession of the entire PHSI production, but instead only has the production related to certain AWP defendants.  The remaining PHSI production is available at HBSS' Chicago office.  You should contact Beth Fegan to arrange for copying of the remaining production there.  You are correct that the Cardinal, FDB, Reb Book and MediSpan documents at WTW's offices have already been produced to McKesson.

Regarding the additional documents you have requested (your list on page one from Aventis to UFCW), you should likewise contact Jennifer Connolly for those documents.  WTW can make them available in one of two ways.  One, they can simply provide you with the original media provided by the producing party.  However, when loading those documents plaintiffs discovered numerous loading problems that have since been fixed.  So, two, WTW can copy the images (and load files if you need them) that have been fixed.  However, this will take significant time to do.  Should McKesson decide to go this route, our vendor will reproduce that media for you at the rate of $95/hour.  McKesson would simply need to provide WTW with a 200-gigabyte hard drive on which the images could be saved.  Because of where those images reside, we will not allow McKesson's vendor to have access to those files.  The choice is yours.

Finally, you mistakenly claim that plaintiffs have had an index of AWP MDL discovery.  That is not the case.  The lists we have provided you were prepared after each co-lead firm comprehensively searched their files in order to provide you with the lists we have compiled.  There was no index in existence prior to our efforts to get this to you,

Paul Flum
August 9, 2006
Page 3

nor is there an electronic database where all documents produced to plaintiffs have been maintained. Thus, any delay to the current schedule is due to McKesson's delay tactics and fishing expedition of AWP documents that have no relevance whatsoever to this proceeding.

As for documents of HBSS that you wish to inspect, this is the second time you have demanded access to large groups of documents in less than 48 hours. Though we would like to accommodate you, we cannot do so until Monday. The bulk of this material is in storage so come prepared to get dirty. Contact Carrie Flexer.

Finally, many items in your letter, such as claiming that there is an "index" or that "audits" are missing and the like, are unsupported assertions ("UAS"). There is in this case a repeated pattern of the McKesson team in making UAS to which we waste time in responding. In the future, we will simply send back a letter: "Dear Paul: UAS." We will not incur the burden of continually responding in detail.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

*[sent via electronic delivery]*

Steve W. Berman

cc:     Plaintiffs' Counsel

# Exhibit 5

-----Original Message-----
**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** Friday, April 27, 2007 1:17 PM
**To:** Cheung, Tiffany
**Cc:** Amber Nesbitt; Jennifer Connolly; Carrie Flexer
**Subject:** RE: New England Carpenters v. First DataBank

Tiffany,
These documents are not housed in Seattle.  They were provided to you on a harddrive provided to you by the Wexler firm last fall.  If you have misplaced any of those documents between then and now, let us know and we will arrange for replacements.

Barbara

---

**From:** Cheung, Tiffany [mailto:TCheung@mofo.com]
**Sent:** Thursday, April 26, 2007 7:16 PM
**To:** Barbara Mahoney
**Cc:** Amber Nesbitt
**Subject:** RE: New England Carpenters v. First DataBank

Barbara,

The following bates-ranges of ABC and Cardinal documents from the list you provided below were not made available when I inspected documents at your Seattle office in May 2006:

- ABC(AWP) 000001 - 001840
- Car.Suf.Co. 056177 - 061889, 062082 - 064268
- Car.Hlth/SLB 0000001-6974
- CH0000001-542212
- CHP000001-141

Please produce all the materials identified above as soon as possible, particularly given that they should have been made available when we inspected documents in Seattle last May.  Additionally, we have identified the following gaps in the bates-ranges of the ABC and Cardinal documents that were made available to us:

- Car.Suf.Co. 0671542 - 0671738
- Car.Hlth/SLB 6975 - 0103981, 0235135 - 0253975, 0570733 - 0574540, 0629417, 0686183 - 0687908, 0697001 - 0715187, 0740461 - 0740657

Please also produce these documents if they exist. If plaintiffs did not receive any documents bearing these bates numbers, please let me know.

Regards,
Tiffany
-----Original Message-----
From: Barbara Mahoney [mailto:barbaram@hbsslaw.com]
Sent: Wednesday, April 25, 2007 3:12 PM
To: Cheung, Tiffany
Cc: Amber Nesbitt
Subject: RE: New England Carpenters v. First DataBank

Tiffany,
This is the bates range of the ABC and Cardinal docs that we have and were made available to you:

ABC(AWP)000001-2119;

Car.Suf.Co.0560509-0671541;

CARHLTHSLB0000001-6974;

CH0000001-542212;

CHP000001-141

Barbara

From: Cheung, Tiffany [mailto:TCheung@mofo.com]
Sent: Sunday, April 22, 2007 4:30 PM
To: Barbara Mahoney
Subject: New England Carpenters v. First DataBank

Barbara,
It has come to our attention that plaintiffs did not make available to McKesson all the documents produced to plaintiffs in the MDL by third parties, AmerisourceBergen and Cardinal.  For starters, can you please tell us the batesranges of all the documents produced by AmerisourceBergen and Cardinal in the MDL?

Tiffany
Tiffany Cheung
Morrison & Foerster LLP
425 Market St.
San Francisco, CA 94105
(415) 268-6848
tcheung@mofo.com
www.mofo.com
========================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose toanyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email @mofo.com, and delete the message.

========================================================================

========================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any

advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

===========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email @mofo.com, and delete the message.
===========================================================================

# Exhibit 6

**MORRISON** | **FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE:415.268.7000
FACSIMILE:415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

April 30, 2007

Writer's Direct Contact
415/268-6848
TCheung@mofo.com

*By E-Mail*

Barbara A. Mahoney
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:     *New England Carpenters Health Benefit Fund v. First DataBank*

Dear Barbara:

I write regarding plaintiffs' production of documents produced by Cardinal and
AmerisourceBergen ("Amerisource") in the AWP MDL. We have recently learned, after
issuing third party subpoenas to Cardinal and Amerisource, that plaintiffs did not produce all
the documents produced to them in the MDL by these wholesalers, despite plaintiffs' claim
in June 2006 that all of these documents had been turned over to McKesson. Plaintiffs'
misinformation regarding their production of wholesaler MDL documents has prejudiced
McKesson's ability to conduct necessary discovery. In particular, plaintiffs have noticed the
depositions of individuals at Cardinal and Amerisource to occur in two weeks, but have not
made available over half a million pages of documents produced by these wholesalers in the
MDL. These wholesaler documents should have been produced 11 months ago.

On May 11, 2006, plaintiffs' counsel informed us that "106 CDs containing Cardinal Health
documents" and a CD including Amerisource documents were available at Hagens Berman's
Seattle office for inspection. On May 16, 2006, we traveled to Seattle and copied all
available documents produced in the MDL by Cardinal or Amerisource.

After this inspection, on June 7, 2006, plaintiffs' counsel stated that plaintiffs had turned
over all documents produced in the MDL by wholesalers. On August 8, 2006, however, we
received an index of documents available at the Wexler firm, which listed Cardinal
documents. This Wexler index did not provide bates-numbers for the available Cardinal
documents. Because plaintiffs had indicated that all Cardinal MDL documents had
previously been made available in Seattle, we asked plaintiffs if the Cardinal documents
listed on the Wexler index had already been produced to McKesson. The next day,
plaintiffs' counsel confirmed in writing, stating: "You are correct that the Cardinal . . .
documents at WTW's offices have already been produced to McKesson."

sf-2313620

**MORRISON** | **FOERSTER**

Barbara Mahoney
April 30, 2007
Page Two

On August 30, 2006, we received a hard drive of documents from the Wexler firm. Contrary to plaintiffs' representations on June 7 and August 9, 2006, you stated for the first time on April 27, 2007 that the Cardinal and Amerisource MDL documents were produced to us on this Wexler hard drive. This most recent representation is also incorrect. The only wholesaler documents on the Wexler hard drive were Car.Hlth.SLB 0740461 - 0740657/Car.Suf.Co. 0671542 – 0671738. These 197 pages fall far short of the over 662,000 bates-numbers of documents that you said were produced to plaintiffs in the MDL by Cardinal. Moreover, no Amerisource documents are listed in the Wexler index of MDL documents, and no Amerisource documents were provided on the Wexler hard drive.

Plaintiffs have still not produced over half a million pages of Cardinal and Amerisource documents. Thus, we again request that plaintiffs immediately produce all the documents produced in the MDL by Cardinal or Amerisource. Based on the list of bates-numbers you provided me on April 25, 2007, plaintiffs have not produced to McKesson the following bates-ranges of documents that were produced to plaintiffs in the MDL:

- ABC(AWP) 000001 - 001840
- Car.Suf.Co. 0567177 - 0618989, 0628082 - 0646268, 0671542 - 0671738
- CARHLTHSLB 0000001-6974
- CH0000001-542212
- CHP000001-141

Additionally, we also noted the following gaps in the bates-ranges of Cardinal documents that plaintiffs made available to us:

- Car.Suf.Co. 000001 - 0035061, 0166215 - 0185055, 0501813 - 0505620, 0560497
- Car.Hlth/SLB 0000001 - 0103981, 0235135 - 0253975, 0570733 - 0574540, 0629417, 0686183 - 0687908, 0697001 - 0715187, 0740461 - 0740657

If plaintiffs did receive documents bearing these bates-numbers, please also produce these documents immediately.

Sincerely,

Tiffany Cheung

# Exhibit 7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

**PLAINTIFFS' SECOND AMENDED RESPONSES AND OBJECTIONS TO MCKESSON'S FIRST SET OF INTERROGATORIES**

Plaintiffs through their undersigned counsel, hereby respond pursuant to Fed. R. Civ. P. 33 to McKesson Corporation's First Set of Interrogatories.

**GENERAL OBJECTIONS**

1.      Plaintiffs object to the instructions and definitions purportedly made a part of the Interrogatories to the extent they are vague, indefinite, ambiguous, or to the extent they seek to impose duties and/or responsibilities beyond that which is required by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts.

2.      Plaintiffs object to the definition of "document" to the extent that it exceeds the meaning and scope of that term as it is defined by Local Rule 26.5(c)(2).

3.      Plaintiffs object to the definition of "Funds" to the extent it purports to require the furnishing of documents or information in the possession, custody, or control of persons or entities other than Plaintiffs.

4.      Plaintiffs object to the definition of "You" and "Yours" to the extent they purport to require the furnishing of documents or information in the possession, custody, or control of persons or entities other than Plaintiffs.

5.      Plaintiffs object to Instruction No. 6 to the extent that it imposes an obligation that exceeds the obligation imposed by Local Rule 33.1(e).

6.      Plaintiffs object to the Interrogatories to the extent that they seek information that is not within Plaintiffs' possession, custody or control.

7.      Plaintiffs object to the Interrogatories to the extent that they seek information that is publicly available or readily available to Defendant.

8.      Plaintiffs object to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege.  If any information subject to a privilege, immunity or protection is inadvertently disclosed by Plaintiffs, such disclosure does not constitute a waiver of any privilege, immunity or protection.

9.      Plaintiffs object to the Interrogatories to the extent they are premature in that Defendant seeks factual bases for assertions that go to the merits of Plaintiffs' claims and merits discovery is ongoing.

10. Plaintiffs object to the Interrogatories to the extent that they seek to impose unilaterally an obligation on Plaintiffs, which McKesson declined to recognize when it refused to respond to Plaintiffs' interrogatories about the basis for its opposition to class certification. Although Plaintiffs believe that they were entitled to McKesson's responses prior to the submission of its opposition brief, Plaintiffs are under no obligation to respond while fact discovery is ongoing.

11. Plaintiffs object to the Interrogatories to the extent that they are overbroad in that they require Plaintiffs to identify each and every document and each and every witness supporting their claims and allegations.

12. Plaintiffs object to the Interrogatories in that they place an undue burden on Plaintiffs at this time to collect the information sought while discovery is ongoing, especially in that Defendant seeks to impose a recurring obligation to amend and supplement Plaintiffs' response as additional evidence surfaces.

13. Plaintiffs reserve the right to supplement or amend these responses and objections as further investigation and discovery occur.

14. Plaintiffs reserve all objections regarding the competency, materiality, relevance and admissibility of any documents or information provided.

15. The preceding general objections are incorporated in response to each specific Interrogatory and any specific objection made below.

**SPECIFIC OBJECTIONS**

**Interrogatory No. 1**

State the basis for your allegation in paragraph 92 of the SAC that "beginning in or around 1998 and thereafter, virtually every participant in the pharmaceutical distribution chain

who used electronic database systems used and relied upon the accuracy of data from First

Data's NDDF and MDDF, including the published WAC and AWP price fields in undertaking

reimbursement transactions for billions of dollars of pharmaceutical products."

**<u>Response No. 1</u>**

Plaintiffs object to this interrogatory to the extent it seeks information protected by the

attorney-client privilege or the work-product doctrine.  Plaintiffs further object to this

interrogatory as it is overly broad and unduly burdensome at this stage of the litigation when

discovery is ongoing and reserve their right to amend their response accordingly.  Subject to and

without waiver of the foregoing general and specific objections, Plaintiffs answer as follows:

(a) Documents: FTC Press Release, dated December 14, 2001, available at

http://www.ftc.gov/opa/2001/12/hearst.shtm; FDB-AWP 028261-63; MCKAWP

0057415-19;  MCKAWP 0057171; MCKAWP 0080608-09.

(b) Communications:  *see id.*;

(c) Acts or omissions:  as stated in the allegation;

(d) Additional facts:  as detailed in SAC ¶¶ 83-93, NDDF and MDDF are drug databases

for FDB and Medi-Span respectively.  FDB merged with Medi-Span in January 1998,

making it the only comprehensive drug database available; and for years after the

divestiture in January 2002 it provided its pricing data to Medi-Span.   Kay Morgan

and Bob James are believed to be knowledgeable about this allegation.

**Interrogatory No. 2**

State the basis for your allegation in paragraph 111 of the SAC that "McKesson knew . . . many of the AWPs, and the timing of the reported AWPs, provided by First Data's electronic files were often, albeit marginally higher than other publications."

**Response No. 2**

Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work-product doctrine.  Plaintiffs further object to this interrogatory as it is overly broad and unduly burdensome at this stage of the litigation when discovery is ongoing and reserve their right to amend their response accordingly.  Subject to and without waiver of the foregoing general and specific objections, Plaintiffs answer as follows:

(a)  Documents:  MCKAWP 0057171; MCKAWP 0071502; MCKAWP 0080608-09;

(b)  Communications:  *see id.*;

(c)  Acts or omissions:  n.a.

(d)  Additional facts:  n.a.; Bob James is knowledgeable about this allegation.

**Interrogatory No. 3**

State the basis for your allegation in paragraph 112 of the SAC that "[i]n and around 1999, national chains and retailers requested increased AWP spread for branded products and some of them engaged in practices in order to ensure that the increased markups would occur."

**Response No. 3**

Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work-product doctrine.  Plaintiffs further object to this interrogatory as it is overly broad and unduly burdensome at this stage of the litigation when

discovery is ongoing and reserve their right to amend their response accordingly.  Subject to and

without waiver of the foregoing general and specific objections, Plaintiffs answer as follows:

  (e)  Documents:  MDL-HCS 00282596-97;

  (f)  Communications:  see *id.*;

  (g)  Acts or omissions:  as stated in the allegation;

  (h)  Additional facts:  Kurt Barry (formerly of Janssen) is believed to be knowledgeable
       but his current whereabouts are unknown.

**Interrogatory No. 4**

State the basis for your allegation in paragraph 138 of the SAC that "at some point in

2002-2003, certain manufacturers and wholesalers who were angry at the bump in the WAC-to-

AWP spread, refused to provide First Data with pricing information."

**Response No. 4**

Plaintiffs object to this interrogatory to the extent it seeks information protected by the

attorney-client privilege or the work-product doctrine.  Plaintiffs further object to this

interrogatory as it is overly broad and unduly burdensome at this stage of the litigation when

discovery is ongoing and reserve their right to amend their response accordingly.  Subject to and

without waiver of the foregoing general and specific objections, Plaintiffs answer as follows:

  (a)  Documents: n.a.;

  (b)  Communications:  n.a.;

  (c)  Acts or omissions:  as stated in the allegation;

  (d)  Additional facts:  n.a.; Kay Morgan is believed to be knowledgeable about this claim.

**Interrogatory No. 5**

If You allege that the class definition set forth in paragraph 153 of the SAC includes consumers and TPPs who paid for brand-name pharmaceutical drugs based on AWPs disseminated by publishers other than First DataBank, identify all such publishers.

**Response No. 5**

Plaintiffs object to this interrogatory as it is unduly burdensome, including to the extent that it seeks information readily apparent from the allegations of Plaintiffs' Second Amended Complaint. Without waiving their objections, Plaintiffs respond as follows:

Medi-Span.

**Interrogatory No. 6**

State the basis for your allegation in paragraph 186 of the SAC that "[t]he Enterprise had a hierarchical decision-making structure headed by McKesson."

**Response No. 6**

Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work-product doctrine. Plaintiffs further object to this interrogatory as it is overly broad and unduly burdensome at this stage of the litigation when discovery is ongoing and reserve their right to amend their response accordingly. Subject to and without waiver of the foregoing general and specific objections, Plaintiffs answer as follows:

(a) Documents: MCKAWP 0069608; MCKAWP 0063070-71; MCKAWP 0065885; MCKAWP 0068599; MCKAWP 0068621; MCKAWP 0065895; MCKAWP 0081250; MCKAWP 0069586; MCKAWP 0069602; MCKAWP 0069609; MCKAWP 0042663; MCKAWP 0069615-16; MCKAWP 0069617-39; MCKAWP 0069669; MCKAWP 0069717; MCKAWP 0066191-92; MCKAWP 0071670-72;

MCKAWP 0070781; MCKAWP 001168-70; MCKAWP 0070784; MCKAWP

0070826; MCKAWP 0001188-89; MCKAWP 0070877; and MCKAWP 0070967.

(b) Communications:  *see id.*;

(c) Acts or omissions:  as stated in the allegation;

(d) Additional facts:  persons believed to have knowledge:  Kay Morgan; Bob James;

Greg Yonko; John Bonner; Jeff Herzfeld, Larrie Greco; Erlinda Thomas; Dan

Pantano; Phil Bolger; and Jeff Wallis.

## Interrogatory No. 7

State the basis for your allegation in paragraph 199 of the SAC that "McKesson was

aware of . . . [alleged false] representations by "First Data . . . as to the meaning of AWP and

how it was derived . . . ."

## Response No. 7

Plaintiffs object to this interrogatory to the extent it seeks information protected by the

attorney-client privilege or the work-product doctrine.  Plaintiffs further object to this

interrogatory as it is overly broad and unduly burdensome at this stage of the litigation when

discovery is ongoing and reserve their right to amend their response accordingly.  Subject to and

without waiver of the foregoing general and specific objections, Plaintiffs answer as follows:

(a) Documents:  MCKAWP 0069608; MCKAWP 0042663; MCKAWP 0065885; and

MCKAWP 0069615-16 (evidencing the existence of an agreement between

McKesson and FDB to change AWP markups) and, alternatively, *see* documents

identified in response to Interrogatory No. 6 (evidencing McKesson's undue

influence over FDB's decision to raise AWPs, from which it is sufficient to conclude

that McKesson knew that FDB's representations about the role of surveys in the

calculation of AWPs, detailed in ¶¶ 114-16, was false or misleading).

(b) Communications:  *see id.*;

(c) Acts or omissions:  as stated in the allegation;

(d) Additional facts/known witnesses:  *see* persons with knowledge identified in response

to Interrogatory No. 6.

DATED:  April 24, 2007                          By  **/s/ Steve W. Berman**
                                                   Steve W. Berman
                                                   Sean R. Matt
                                                   Barbara A. Mahoney
                                                Hagens Berman Sobol Shapiro LLP
                                                1301 Fifth Avenue, Suite 2900
                                                Seattle, WA  98101
                                                Telephone: (206) 623-7292
                                                Facsimile: (206) 623-0594

                                                Thomas M. Sobol (BBO #471770)
                                                Ed Notargiacomo (BBO #567636)
                                                Hagens Berman Sobol Shapiro LLP
                                                One Main Street, 4th Floor
                                                Cambridge, MA  02142
                                                Telephone: (617) 482-3700
                                                Facsimile: (617) 482-3003

                                                Elizabeth Fegan
                                                Hagens Berman Sobol Shapiro LLP
                                                60 W. Randolph Street, Suite 200
                                                Chicago, IL  60601
                                                Telephone: (312) 762-9235
                                                Facsimile: (312) 762-9286

                                                Jeffrey Kodroff
                                                John Macoretta
                                                Spector, Roseman & Kodroff, P.C.
                                                1818 Market Street, Suite 2500
                                                Philadelphia, PA  19103
                                                Telephone: (215) 496-0300
                                                Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above-referenced document was served upon the attorney of record listed below by electronic mail on April 24, 2007:

Mark Redmond
Office of General Counsel
The Hearst Corporation
959 Eighth Avenue
New York, NY 10019-3737

*Counsel for First Databank, Inc.*

Lori A. Schechter
Tiffany Cheung
Morrison & Foerster
425 Market Street
San Francisco, CA 94105-2482

*Counsel for McKesson Corporation*

                                                    /s/ Steve W. Berman
                                                    Steve W. Berman