UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>          Plaintiffs,<br><br>    v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>          Defendants. | C.A. No. 1:05-CV-11148-PBS |

## PLAINTIFFS' UNOPPOSED MOTION TO FILE A SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR A 60-DAY EXTENSION OF DISCOVERY DEADLINE

Plaintiffs move to file the attached surreply in opposition of McKesson's motion for a 60-day extension of the discovery deadline.[1]  In its reply brief McKesson claims that it has been prejudiced by the late production of certain Cardinal documents and other matters, but fails to establish a nexus between these occurrences and its requested extension.  McKesson further reveals that its primary purpose in seeking the extension is to take more than 20 depositions and seeks leave of Court for an expansion of the deposition limit, which has nothing to do with the Cardinal documents.  As addressed in Plaintiffs' surreply, McKesson has not demonstrated good cause to justify a departure from the Court's scheduling order, nor has it provided a

---

[1] Plaintiffs' surreply and supporting declaration are attached as Exhibits 1 and 2 to this motion.

particularized showing of need for additional depositions to satisfy the standard of Federal Rules

of Civil Procedure 26(b)(2) and 30(a)(2)(A).

DATED:  May 9, 2007                    By_____/s/ Steve W. Berman_____
                                           Steve W. Berman
                                           Barbara A. Mahoney
                                       Hagens Berman Sobol Shapiro LLP
                                       1301 Fifth Avenue, Suite 2900
                                       Seattle, WA  98101
                                       Telephone: (206) 623-7292
                                       Facsimile: (206) 623-0594

                                       Thomas M. Sobol (BBO#471770)
                                       Hagens Berman Sobol Shapiro LLP
                                       One Main Street, 4th Floor
                                       Cambridge, MA  02142
                                       Telephone: (617) 482-3700
                                       Facsimile: (617) 482-3003

                                       Jeffrey Kodroff
                                       John Macoretta
                                       Spector, Roseman & Kodroff, P.C.
                                       1818 Market Street, Suite 2500
                                       Philadelphia, PA  19103
                                       Telephone: (215) 496-0300
                                       Facsimile: (215) 496-6611

                                       Marc H. Edelson
                                       Hoffman & Associates
                                       45 West Court Street
                                       Doylestown, PA  18901
                                       Telephone: (215) 230-8043
                                       Facsimile: (215) 230-8735

                                       Kenneth A. Wexler
                                       Jennifer Fountain Connolly
                                       Wexler Toriseva Wallace LLP
                                       One North LaSalle Street, Suite 2000
                                       Chicago, IL  60602
                                       Telephone: (312) 346-2222
                                       Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for Plaintiffs conferred with counsel for Defendant who do not oppose Plaintiffs' motion.

/s/ Steve W. Berman
Steve W. Berman

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 9, 2007.

/s/ Steve W. Berman
Steve W. Berman

001821-13  170644 V1

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER, | C.A. No. 1:05-CV-11148-PBS |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR A 60-DAY EXTENSION OF DISCOVERY DEADLINE**

## I.       INTRODUCTION

McKesson has not demonstrated good cause to justify a departure from the Court's scheduling order, nor has it provided a particularized showing of need for additional depositions to satisfy the standard of Fed. R. Civ. P. 26(b)(2).  Plaintiffs have made every effort to provide McKesson with the materials produced in *AWP*, and all inadvertent omissions have been timely corrected.[1]  McKesson has not shown how the late-produced Cardinal documents prejudice their ability to prepare for the deposition of Cardinal employee, Jody Taylor, nor have they asserted

---

[1] *See* Declaration of Steve Berman in Support of Plaintiffs' Surreply in Opposition to an Extension of Discovery ("Berman Decl."), Exhibit A (letter from Jennifer Connolly to Tiffany Chung regarding the missing Cardinal documents).

any nexus between the alleged deficiencies in Plaintiffs' response to McKesson's contention

interrogatories and its desire for additional discovery.  In the same vein, McKesson seeks to

expand the number of depositions it is entitled to take before it has even exhausted its available

depositions or otherwise addressed the criteria set forth in Rules 26(b)(2) and 30(a)(2)(A) to

show why they are necessary.

## II.     ARGUMENT

### A.     McKesson has not demonstrated that the late-produced Cardinal documents or Plaintiffs' responses to its contention interrogatories provide grounds for a two-month extension of discovery

McKesson's claim that it needs more time to review 500,000 pages of Cardinal

documents, which were inadvertently omitted from Plaintiffs' production last spring, is not a

sufficient justification for a two-month extension of discovery.  The only Cardinal witness noted

in this case is Jody Taylor.  At her March 3, 2005 deposition in *AWP*, Ms. Taylor testified that

Cardinal did not participate in First DataBank's wholesaler surveys of AWP:

> Q.   What is your understanding of how First Data Bank obtains its
> First Data Bank AWP?
>
> [Objections]
>
> A:  I know that they tell everyone that they survey the wholesalers.
> I've been in meetings where they're told everyone that before.
> Q.   Based on your testimony today, I would assume that you do
> not believe that to be the case.
>
> [Objections]
>
> A:  I know that's not the case, and I've even talked with FDB
> about that.
> Q:   What type of discussions have you had with FDB about that?
> A.   In our meeting after the presentation, where they've told
> everyone that they survey the wholesalers, I've said, well, you
> know that we don't provide information on AWP.  They've
> confirmed that yes, they know Cardinal doesn't supply AWP, but
> they didn't say all wholesalers.

Q.   So their response to you is that their representation is accurate because they do not say that they survey all wholesalers?
A.   Yes.[2]

McKesson claims that it needs additional time to prepare for the Taylor deposition because the late-produced documents might be directly related to Plaintiffs' allegation that First DataBank falsely claimed that it surveyed all three major wholesalers.  However, it is worth noting that none of the millions of documents Cardinal produced has ever been raised in *AWP* to contradict her testimony on this point.  In the unlikely event that the few hundred thousand pages McKesson has yet to review contains information to contradict Ms. Taylor's testimony, McKesson should bring a motion to allow it to re-depose her.  It should not be entitled to a blanket extension of discovery based on such a tenuous connection to the Cardinal documents.

McKesson also claims that it has been prejudiced by Plaintiffs' alleged deficient responses to contention interrogatories.  In its opening brief, McKesson suggested that it might need more time if Plaintiffs' responses revealed surprise witnesses.  However, Plaintiffs identified their potential witnesses and revealed no such surprises,[3] McKesson had to abandon that theory.  It now asserts without explanation that Plaintiffs' responses justify another two months of discovery.  Similarly, McKesson makes a cursory claim that it was prejudiced by delays in its receipt of certain *AWP* deposition transcripts but does not explain its own part in the delay or what information it has obtained from these depositions that would justify an extension of discovery.[4]

---

[2] Taylor Deposition at 35:11 – 36:19 (excerpts of Ms. Taylor's deposition are attached as Exhibit B to Berman Decl.).
[3] *See* Schechter Declaration, Exhibit 7.
[4] *See* Berman Decl., Exhibit C (March 20, 2007 letter to Paul Flum from Barbara Mahoney, responding to McKesson's March 14 request for additional deposition transcripts).

Finally, it is ironic that McKesson requests an extension on the ground that it is a "relative newcomer" to prescription drug pricing litigation. As a Fortune 16 corporation, McKesson is by far the biggest player in the pharmaceutical industry. Moreover, as a wholesaler, McKesson is uniquely placed in the industry to understand the nuances of drug pricing. Clearly, McKesson does not lack resources or understanding of the subject matter of this litigation, and while it may lack a feasible discovery plan to meet its obligations within the limits set by the Court, this is not ground for an extension. As stated by one court:

> CPI is currently faced with the same challenges that face every party in every civil case in the federal courts: planning wise use of its discovery tools. The fact that CPI is currently facing the problem of how best to use its remaining deposition hours is simply not good cause for modifying the [Pre-Trial Order] PTO.

*Medtronic, Inc. v. Guidant Corp.*, 2003 U.S. Dist. Lexis 26058, at *5 (D. Minn. May 9, 2003).

**B.    McKesson has not shown that additional depositions are reasonable or necessary**

McKesson concedes in its reply brief that it needs more time for discovery because it seeks leave to take more than 20 depositions. The Court should deny McKesson's request for additional depositions. Last August the parties agreed to a 20-person limit. Since then, Plaintiffs have conducted discovery with this limitation in mind and would be greatly prejudiced by this eleventh-hour expansion of discovery. Nor has McKesson met the particularized showing of need required to expand the deposition limit.

**1.    Limits on the number of depositions are imposed to allow the Court a tighter rein on the extent of discovery and to minimize costs**

"The mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996). The Federal Rules of Civil Procedure presumptively limit the number of depositions that each side may conduct to ten. This number may be modified only by

Court order "to the extent consistent with the principles stated in Rule 26(b)(2)."[5]  Fed. R. Civ. P.

30(a)(2)(A).  In this case, the parties stipulated and the Court approved a 20-person limit.  The

purpose of imposing limits on the number of depositions is to "enable courts to maintain a

'tighter rein' on the extent of discovery and to minimize the potential cost of '[w]ide-ranging

discovery'. . . ." *Whittingham v. Amherst College*, 163 F.R.D. 170, 171-72 (D. Mass. 1995)

(citation omitted).  Additionally, deposition limits prevent harassment or undue delay.  *Gross v.

Bare Escentuals, Inc.*, 2006 U.S. Dist. Lexis 79320, at *2 (S.D.N.Y. Oct. 30, 2006).

>   **2.     A court has discretion to allow additional depositions only if the party who is
>   seeking discovery has demonstrated necessity**

A party seeking more than the designated limit of depositions "must overcome this

presumptive limit by demonstrating that the additional depositions are reasonable and

necessary."  *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2006 U.S. Dist. Lexis 59095, at *8

(D.N.J. Aug. 18, 2006); *see also* Fed. R. Civ. P. 26(b) Notes of Advisory Committee on 1993

Amendments ("Amendments to Rule[] 30 place presumptive limits on the number of depositions

and interrogatories, subject to leave of court to pursue additional discovery."); *Scanlan v. Potter*,

2006 U.S. Dist. Lexis 29181, at *4 (D. Vt. May 4, 2006) (ruling that the court would not grant

---

[5] Rule 26(b)(2) provides, in applicable part, that the number of depositions should not be expanded if the Court determines that:

>   (i) the discovery sought is unreasonably cumulative or duplicative,
>   or is obtainable from some other source that is more convenient,
>   less burdensome, or less expensive; (ii) the party seeking discovery
>   has had ample opportunity by discovery in the action to obtain the
>   information sought; or (iii) the burden or expense of the proposed
>   discovery outweighs its likely benefit, taking into account the
>   needs of the case, the amount in controversy, the parties'
>   resources, the importance of the issues at stake in the litigation,
>   and the importance of the proposed discovery in resolving the
>   issues.

- 5 -

leave "[w]ithout more information about the need for additional depositions, and without a showing that alternative means of discovery have been exhausted"); *see also Bell v. Fowler,* 99 F.3d 262, 271 (8th Cir. 1996) (district court did not abuse its discretion in denying plaintiff leave to take additional depositions when plaintiff, who was allowed to take 12 depositions, "presented no good reason why the additional depositions were necessary").

"In practical terms, a party seeking leave to take more depositions . . . than are contemplated by the Federal Rules or by the Court's Scheduling Order, must make a particularized showing of why the discovery is necessary." *Archer Daniels Midland Co. v. Aon Risk Servs.*, 187 F.R.D. 578, 586 (D. Minn. 1999); *Scanlan*, 2006 U.S. Dist. Lexis 29181, at *3 (quoting *Archer Daniels Midland Co.*). To meet this requirement of a particularized showing of need, the moving party must go beyond general assertions regarding the potential relevance of the proposed deponents' testimony to demonstrate that the probable testimony of each proposed deponent is essential to the moving party's case. *Alaska Elec. Pension Fund*, 2006 U.S. Dist. Lexis 59095, at *8.

### a.    McKesson has failed to exhaust its available depositions

To demonstrate need most district courts require that a party exhaust its available depositions before seeking leave for additional depositions. *See, e.g. Archer Daniels Midland Co.*, 187 F.R.D. at 587 (holding that "[a]t a minimum, [the defendant] should appropriately exhaust its current quota of depositions, in order to make an informed request for an opportunity to depose more witnesses, before seeking to depose a legion of others"); *General Elec. Co. v. Indemnity Ins. Co. of N. Am.*, 2006 WL 1525970, at *2 (D. Conn. May 25, 2006) (observing that "courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right"); *Mazur v. Lampert*, 2007 U.S. Dist. Lexis 13934, at *5 (S.D. Fla. Feb. 28, 2007) (requiring that "a party seeking more than ten

depositions in a case must justify the necessity of each deposition previously taken without leave of court" in order to allow the court to evaluate the Rule 26(b)(2) factors).

Since last July McKesson has conducted 12 depositions, leaving eight more. Because McKesson has not exhausted its limit, it cannot demonstrate to the Court that the limit is unreasonable.

### b.     McKesson has failed to identify the persons it seeks to depose

A party seeking leave to take additional depositions must identify with specificity each person the party seeks to depose:

> [A] broad list of potential deponents does not provide a court with the information necessary to make a 26(b)(2) determination. . . . For the Court to grant a motion for leave to take additional depositions, the moving party must provide a concrete list of the individuals to be deposed; the Court will not grant a party free rein to add deponents at that party's discretion.

*Alaska Elec. Pension Fund*, 2006 U.S. Dist. Lexis 59095, at \*16. The District Court of Massachusetts has explained that, "[b]y speaking in terms of 'the person to be examined' and 'a proposed deposition,'[Federal Rule 30(a)(2)(A)] clearly contemplates that a party has in mind a specific individual whom he or she intends to depose." *Whittingham,* 163 F.R.D. at 171. Similarly, the determinations required by Fed. R. Civ. P. 26(b)(2)—whether the requested additional depositions are cumulative or duplicative, involve information previously obtainable through permitted discovery, or impose a burden that outweighs the likely benefit—require a court's knowledge of the identities of those to be deposed. *Id.*

McKesson has not identified any specific individuals it intends to depose beyond the 20-person limit. Without knowing whom McKesson intends to depose, the Court cannot possibly evaluate whether such depositions will be necessary, or merely cumulative or redundant, or whether the information McKesson seeks is available from other sources. Plaintiffs note, for

- 7 -

example, that several hundred witnesses were deposed in the *AWP* litigation and McKesson has

already relied on some of the *AWP* deposition transcripts in its opposition brief and may

reasonably be presumed to seek the admission of such testimony at trial.  In light of the wealth of

information available from *AWP*, McKesson's request for additional, non-specified depositions

seems especially gratuitous.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to deny McKesson's motion for an

extension of discovery and its request to increase the deposition limit.


DATED:  May 9, 2007                    By_____/s/ Steve W. Berman_____
                                           Steve W. Berman
                                           Barbara A. Mahoney
                                       Hagens Berman Sobol Shapiro LLP
                                       1301 Fifth Avenue, Suite 2900
                                       Seattle, WA  98101
                                       Telephone: (206) 623-7292
                                       Facsimile: (206) 623-0594

                                       Thomas M. Sobol (BBO#471770)
                                       Hagens Berman Sobol Shapiro LLP
                                       One Main Street, 4th Floor
                                       Cambridge, MA  02142
                                       Telephone: (617) 482-3700
                                       Facsimile: (617) 482-3003

                                       Jeffrey Kodroff
                                       John Macoretta
                                       Spector, Roseman & Kodroff, P.C.
                                       1818 Market Street, Suite 2500
                                       Philadelphia, PA  19103
                                       Telephone: (215) 496-0300
                                       Facsimile: (215) 496-6611

001821-13  170254 V1

Marc H. Edelson
Hoffman & Associates
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 9, 2007.

  /s/ Steve W. Berman
Steve W. Berman

001821-13 170254 V1

# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>                              Plaintiffs,<br><br>          v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                              Defendants. | C.A. No. 1:05-CV-11148-PBS |

**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF PLAINTIFFS' SURREPLY IN OPPOSITION TO MCKESSON'S MOTION TO EXTEND DISCOVERY**

I, Steve W. Berman, hereby declare that:

1.       I am a partner of Hagens Berman Sobol Shapiro LLP, resident in its Seattle, Washington, office, and I am one of counsel for the plaintiffs in the above-captioned matter.  I submit this declaration in support of Plaintiffs' Surreply in Opposition to McKesson's Motion to Extend Discovery.

2.       Attached to my declaration as Exhibit A is the May 9, 2007 letter from co-counsel Jennifer Connolly to McKesson attorney, Tiffany Cheung, regarding the inadvertent omission of some of the documents Cardinal produced in *AWP*.

3.     Attached to my declaration as Exhibit B are excerpts of the March 3, 2006 deposition of Cardinal employee, Jody Taylor, taken in the *AWP* litigation.

4.     Attached to my declaration as Exhibit C is the March 20, 2007 letter to McKesson attorney Paul Flum from my firm, responding to McKesson's March 14 request for additional deposition transcripts.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of May 2007.


                                                        **/s/ Steve W. Berman**
                                                        STEVE W. BERMAN




## CERTIFICATE OF SERVICE

I, Steve W. Berman, hereby certify that a true and correct copy of the above document was served on the attorney of record for each party via the Court's electronic filing system this 9th day of May, 2007.


By_____**/s/ Steve W. Berman**_____
      Steve W. Berman
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Fifth Avenue, Suite 2900
      Seattle, WA  98101
      (206) 623-7292

# W E X L E R | T O R I S E V A | W A L L A C E

Limited Liability Partnership
Chicago, IL • Wheeling, WV • Sacramento, CA

May 9, 2007

# EXHIBIT A

### *Via Electronic Mail*

Tiffany Cheung
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA 94105-2482

      Re:   *New England Carpenters, et al. v. First DataBank, et al.*
           Case No. 05-cv-11148 (D. Mass.)

Dear Tiffany:

I write to address your April 30, 2007 letter to Barbara Mahoney regarding Plaintiffs' production to McKesson of third party wholesaler documents originally produced in the AWP litigation.

During our investigation of the issues raised in your April 30th letter, we discovered that seven of the more than 100 wholesaler CDs we received in the AWP litigation had been misplaced. Accordingly, when we had our CDs copied for McKesson as part of this litigation, these documents were inadvertently omitted. As indicated below, these missing CDs comprise most of the missing Bates ranges you identified in your letter. At the same time, we also discovered that many of the documents you claim Plaintiffs did not produce were, in fact, made available to McKesson when you visited Hagens Berman Sobol Shapiro LLP's Seattle office.

We have taken the Bates ranges set forth in your April 30th letter and, to the best of our ability, have compiled the following chart indicating: whether they have already been made available to McKesson, whether they were inadvertently omitted, or whether Plaintiffs do not have such documents. Please note that this process was complicated somewhat by the fact that many of Cardinal's documents contained multiple Bates numbers on them.

| **Bates Range** | **Corresponding Bates Range** | **Comments** |
|---|---|---|
| ABC(AWP) 000001 - 001840 | NONE | Inadvertently Omitted |
| Car.Hlth/SLB 0000001 - 0103981 | Car.Suf.Co 0018138-35061 (corresponds to Car. Hlth/SLB 0087058- 00103981) | We do not have: Car. Hlth/SLB 0000001-0087057 or Car.Suf.Co. 0000001-0018137. Car. Hlth/SLB 0087058-00103981 (corresponding Bates numbers Car.Suf.Co 0018138-35061) was inadvertently omitted. |

Contact Information:    **Jennifer Fountain Connolly**    One N. LaSalle Street    (312) 346-2222
    **(312) 261-6195 Direct Dial**    Suite 2000    (312) 346-0022
    jfc@wtwlaw.us    Chicago, IL 60602    www.wtwlaw.us

# W E X L E R | T O R I S E V A | W A L L A C E

Tiffany Cheung
May 9, 2007
Page 2

| Bates Range | Corresponding Bates Range | Comments |
|---|---|---|
| Car.Hlth/SLB 0235135 - 0253975 | Car.Suf.Co 0166215-185055 | Inadvertently Omitted |
| Car.Hlth/SLB 0570733 - 0574540 | Car.Suf.Co 0501813-505620 | Inadvertently Omitted |
| Car.Hlth/SLB 0629417 | Car.Suf.Co 0629419 | We do not have this document |
| Car.Hlth/SLB 0686183 - 0687908 | Car.Suf.Co 0617264-618989 | Inadvertently Omitted |
| Car.Hlth/SLB 0697001 - 0715187 | Car.Suf.Co 0628082-0646268 | Inadvertently Omitted |
| Car.Hlth/SLB 0740461 - 0740657 | | We do not have these documents |
| Car.Suf.Co. 000001 - 0035061 | | We do not have these documents |
| Car.Suf.Co. 0567177 - 0618989 | | Documents Car.Suf.Co. 0567177-617263, were made available to McKesson at Hagens Berman.<br><br>Car.Suf.Co. 0617264-618989 was inadvertently omitted |
| Car.Suf.Co. 0671542 - 0671738 | | We do not have these documents |
| CH0000001-542212 | Car.Suf.Co 0018138-560490 | The CH Bates number appears on some of McKesson's documents, alongside Car.Suf.Co. and / or Car.Hlth/SLB. Therefore, aside from those documents specifically identified herein as having been omitted, you have all other CH documents. |
| CHP000001-141 | Car.Suf.Co. 0272142-272282 | Made available to McKesson at Hagens Berman |

W E X L E R │ T O R I S E V A │ W A L L A C E

Tiffany Cheung
May 9, 2007
Page 3


In short, McKesson's claims that Plaintiffs did not produce all documents produced to us in the MDL is false.  Rather, anything McKesson does not have is due to its own failures to examine documents made available at Hagens Berman Sobol Shapiro or a minor production mistake that, though McKesson now insists if of utmost importance, it did not itself discover even after having the hard drive from our firm for six months.  Notably, the seven inadvertently-omitted CDs constitute only 8.7% of the entire wholesaler production this firm provided to you – which of course does not include the hundreds of thousands of defendant documents provided to you, or the millions more pages other plaintiffs firms have given you.

I have enclosed disks containing the inadvertently-omitted documents as indicated in the chart. Should you have any additional questions or concerns, please feel free to contact us or Barbara Mahoney.

Very truly yours,

Jennifer Fountain Connolly

JFC/lmv
Enclosures (separately via overnight delivery)

cc:    Barbara Mahoney

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2           FOR THE DISTRICT OF MASSACHUSETTS

 3    - - - - - - - - - - - - - - - - x

 4   In re:  PHARMACEUTICAL          :MDL DOCKET NO.

 5   INDUSTRY AVERAGE WHOLESALE      :CIVIL ACTION NO.

 6   PRICE LITIGATION                :01CV12257-PBS

 7    - - - - - - - - - - - - - - - - x

 8                           Thursday, March 3, 2005

 9                           Washington, D.C.

10

11               HIGHLY CONFIDENTIAL

12               ATTORNEYS' EYES ONLY

13

14          Deposition of JODY TAYLOR, commencing at

15   11:11 a.m., held at the offices of Sonnenschein,

16   Nath & Rosenthal LLP, 1301 K Street, N.W., Third

17   Floor, Washington, D.C., before Keith Wilkerson, a

18   notary public in and for the District of Columbia.

19

20

21                                    EXHIBIT B

22
```

Page 34

1  doing anything like that, so it doesn't equate to
2  what we're doing with -- what we're doing with
3  reference price doesn't equate to an AWP.
4      Q.  Because you're not doing any type of
5  calculation.
6      A.  Exactly.
7      Q.  Have you ever had requests from Medispan
8  to have Cardinal provide AWP information to them?
9      A.  No.
10      Q.  Are you familiar with First Data Bank's
11  field called suggested wholesale price?
12      A.  Somewhat.  That was an FDB question,
13  right, not a Medispan question?
14      Q.  Yes.
15      A.  FDB has a large number of pricing fields
16  in the file that we get, and what populates the
17  database information is just a small portion of
18  those fields, and it's done automated.  I never
19  really get into looking at the data that's not
20  populated, so I'm not sure where the programmers
21  pull the data.  That was programmed before I
22  started.

Page 35

1      Q.  So you're not aware whether Cardinal uses
2  First Data Bank's suggested wholesale price field
3  for any reason?
4      A.  No.
5      Q.  What about a field called calculated
6  wholesale price?
7      A.  Again, there are so many pricing fields
8  that FDB gives us, and they were programmed before
9  1998, so I don't know which fields the programmers
10  were told to pick up.
11      Q.  What is your understanding of how First
12  Data Bank obtains its First Data Bank AWP?
13      MR. MORGENSTERN:  Object to the form of
14  the question.
15      MR. STEPHENS:  Objection.  Lack of
16  foundation.
17      THE WITNESS:  I know that they tell
18  everyone that they survey the wholesalers.  I've
19  been in meetings where they're told everyone that
20  before.
21      BY MS. CONNOLLY:
22      Q.  Based on your testimony today, I would

Page 36

1  assume that you do not believe that to be the case.
2      MR. MORGENSTERN:  Object to the form of
3  the question.
4      MR. STEPHENS:  Objection.
5      THE WITNESS:  I know that's not the case,
6  and I've even talked with FDB about that.
7      BY MS. CONNOLLY:
8      Q.  What type of discussions have you had
9  with FDB about that?
10      A.  In our meeting after the presentation,
11  where they've told everyone that they survey the
12  wholesalers, I've said, well, you know that we
13  don't provide information on AWP.  They've
14  confirmed that yes, they know Cardinal doesn't
15  supply AWP, but they didn't say all wholesalers.
16      Q.  So their response to you is that their
17  representation is accurate because they do not say
18  that they survey all wholesalers?
19      A.  Yes.
20      Q.  In what type of meetings were you at
21  where First Data Bank represented that it surveyed
22  wholesalers?

Page 37

1      A.  I was at the First Data Bank conference.
2  I think that was in 2001 that I attended.  That was
3  one of the break out sessions, AWP.
4      Q.  Is that the same thing as a curbside
5  consultation?
6      A.  No.  The curbsides are more of a one on
7  one consultation.  This was one of the main break
8  out meetings that they had.  They had a series of
9  meetings, and you can sign up for whichever
10  presentation/meeting you want to go to.  It's more
11  of a presentation and open discussion with a large
12  number of people.
13      Q.  And it was during this 2001 First Data
14  Bank conference that you heard them represent that?
15      A.  I'm not exactly sure of the date, but it
16  was during one of their conferences.
17      Q.  Had you ever heard prior to that
18  conference FDB's representation that it obtained
19  AWP by surveying the wholesalers?
20      A.  I hadn't heard it from them.  It was
21  someone else had told me that that's what they say.
22      Q.  Do you recall who told you that?

10 (Pages 34 to 37)



BARBARA A. MAHONEY
BARBARAM@HBSSLAW.COM

March 20, 2007

**VIA OVERNIGHT**

Paul Flum
Morrison Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

Re:    New England Carpenter Health Benefits Fund v. First DataBank

Dear Paul:

     This letter is in response to your letter of March 14 to Tom Sobol.  Last fall we sent you several installments of *AWP* transcripts, the last of which was sent on October 18.  As you know, the *AWP* case is very large and involved hundreds of depositions.  The Court order only required us to provide electronic copies of depositions in our possession.  When we sent the last installment we believed that we had complied with the Court's order.  You waited five months to tell us that you believed our production was incomplete.  We have now compared the list you sent us and located the following additional transcripts in our possession, which we are now sending to you on a CD:

Akscin, John F. (08/11/05)
Bush, Kyle (08/28/06)
Ehret, John (06/16/05)
Hauert, Jim (08/29/06)
Hawley, Patricia (05/16/06)
Hess, John R. (03/24/06)
Hiriak, Thomas (07/28/04)
Pearson, William C. (01/07/05) (03/28/06)
Robbins, James N. (08/18/05) (03/22/06)
Walsh, Michael (03/31/06)

     Additionally, although not technically required, we have contacted the court reporter to determine which transcripts Plaintiffs have ordered and have requested electronic copies.  We will provide an additional CD with those transcripts once we receive them.

**EXHIBIT C**

ATTORNEYS AT LAW                SEATTLE    LOS ANGELES    CAMBRIDGE    PHOENIX    CHICAGO

T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE ~ SUITE 2900 ~ SEATTLE, WASHINGTON 98101
www.hagens-berman.com

001821-13  160200 V1

Paul Flum
March 20, 2007
Page 2


Plaintiffs do not have the transcripts of Frank Arena, Robert Bettencourt, Brian Carter, Pam Koo, Melissa Macek, Kurt Miller, John Shannon, Royal Stewart or Charles Tabano. You are free to order them from the court reporter yourself.

Finally I note that your letter asserts that Plaintiffs' counsel noted each of the depositions you now seek. Based on our review of the record it appears that Plaintiffs noted only a handful of those depositions and that most were noted by co-defendants.


Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

*[sent via electronic mail]*


Barbara A. Mahoney
Attorney

BAM:BM
cc:     Plaintiffs' counsel