UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>                         Plaintiffs,<br><br>            v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                         Defendants. | C.A. No. 1:05-CV-11148-PBS |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL MCKESSON'S 30(B)(6) WITNESS AND TO PROVIDE MORE SPECIFIC RESPONSES TO PLAINTIFFS' THIRD SET OF INTERROGATORIES**

## I.   INTRODUCTION

Plaintiffs previously moved to compel McKesson to make its 30(b)(6) witness available last January.  The Court referred the matter to Judge Collings.  On April 9, Judge Collings directed Plaintiffs to amend and re-serve their 30(b)(6) notice upon McKesson to set forth more specifically the areas of inquiry in which information is sought in light of what has been produced to date and ordered McKesson to make available a 30(b)(6) witness competent to testify on the subject matter of Plaintiffs' amended notice.  On May 8, McKesson provided its 30(b)(6) designee, Michelle Glasco.  Because Ms. Glasco had virtually no knowledge about the

topics of Plaintifs' deposition notice, Plaintiffs again move to compel McKesson to meet its Rule 30(b)(6) obligations and seek sanctions because McKesson failed to comply with the Court's April 9 order.

Plaintiffs also move to compel more specific responses to subparts 3, 5-9, 11, 13 and 14 of their Interrogatory No. 1, Third Set of Interrogatories.  Plaintiffs' Interrogatory No. 1 asked McKesson to state the basis for its affirmative defenses, including providing a list of supporting witnesses and documents.  McKesson's responses (one per affirmative defense) identified such a large number of witnesses and documents as to render them meaningless.

## II.   FACTS

**A. McKesson failed to provide a knowledgeable witness in response to the Court's order compelling it to provide a 30(b)(6) witness**

At the Court's direction, Plaintiffs amended and re-served their request for a 30(b)(6) witness, specifying the information they sought from McKesson.  Plaintiffs requested a witness knowledgeable (i) to provide basic information about the persons identified on McKesson's source log as custodians of record and to provide information about how the production was organized to ensure that all responsive non-privileged documents were produced:

> PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6), the undersigned counsel will take the deposition of the representative of McKesson Corporation (hereafter "McKesson" or "You" or "Your") who is knowledgeable about the custodians of record of documents You have produced or were requested to produce in this litigation, including their titles and what department(s) or division(s) they belonged to from 2000 through the present; whether they are still employed by McKesson and if not, their last known address; how the production of their records is organized, including which of their files were searched to ensure that all responsive, non-privileged documents were produced; and how, if at all, the

> organization of Your production by custodian is reflected in the source log You have provided in this litigation.[1]

Plaintiffs reasonably expected McKesson to produce a witness who was either involved in the search for the production of documents and the compilation of McKesson's source log or who had informed herself about all relevant aspects of McKesson's response to Plaintiffs' documents requests. More specifically, Plaintiffs reasonably anticipated that McKesson's witness would have known how McKesson arrived at its determination of which departments or divisions and which individuals would be most likely that have responsive documents; how each department, division or individual stored their documents and what McKesson's document retention and storage policies and practices were. McKesson's human resources manager and 30(b)(6) designee, Michelle Glasco, did not meet any of these expectations.

At her deposition Ms. Glasco presented Plaintiffs' counsel with a chart, identifying the custodians of record by title and department or division and identifying the location of the documents.[2] McKesson's counsel represented that the "document was prepared by counsel at counsel's direction."[3] Ms. Glasco candidly admitted that her participation in the creation of this document was minimal:

> I didn't have anything to do with obtaining the documents. The only thing that I did was run a report that showed the current titles and departments and hire dates for the employees.[4]

> I could only provide documentation for pharmaceutical employees, if there's anyone on here that was not a pharmaceutical employee, I don't have access to those employees.[5]

---

[1] Attached at Ex. 1 to Declaration of Steve Berman in support of Plaintiffs' motion to compel.
[2] Berman Decl., Ex. 2.
[3] *Id.*, Ex. 3 (Deposition of Michelle Glasco at 14:24 – 15:5).
[4] *Id.* at 10:24 – 11:2.
[5] *Id.* at 16:24 – 17:2.

Ms. Glasco had no idea who had provided the information about the non-pharmaceutical employees.[6]  Even with respect to many of the pharmaceutical employees identified on the chart Ms. Glaxo did not know which city they were located in.  Although it was clearly relevant to McKesson's selection of custodians and its efforts to "ensure that all responsive, non-privileged documents were produced," Ms. Glasco did not even know what corporate functions the various divisions or departments identified on the chart served.[7]

Ms. Glasco had no involvement in obtaining the documents referred to in the source log;[8] no involvement in the compilation of the source log;[9] no knowledge of how the custodians' e-mails and other documents are organized;[10] no knowledge of McKesson's document retention policies;[11] and no knowledge of whether McKesson backs up its e-mails[12] or how long they are stored.[13]  Her only source of information about which files were searched or how the custodians organized their files was what she had been told by McKesson's counsel.[14]

Finally, if, as McKesson represents, its production of documents is organized by custodian of record, one would expect the source log to reveal an orderly sequence of names, arranged by department, geographic region or other logical grouping.  Instead names recur randomly and often multiple times throughout McKesson's source log.  McKesson's counsel attempted to avoid the consequences of its failure to prepare Ms. Glasco on this subject by

---

[6] *Id.* at 17:6-8.
[7] *Id.* at 17:13 – 18:5; 18:8-24; 19:2-7; 19:11-20; 26:3-5; 26:24 – 27:15.
[8] *Id.* at 10:21-25.
[9] *Id.* at 12:1-3.
[10] *Id.* at 13:9 – 14:17.
[11] *Id.* at 10:1-4.
[12] *Id.* at 10:11-15.
[13] *Id.* at 10:16-18.
[14] *Id.* at 13:9 – 14:17; 22:18-24.

referring her to counsel's chart, which purportedly explained this anomaly.[15] However, Ms. Glasco conceded the obviously circular nature of her answers to counsel's questions:

> Q.  Ms. Glasco, in the answers that you just gave to all of Mr. Flum's questions, is it the case that the source of your knowledge in giving all of those answers were what you were told by the attorneys?
>
> A.  Yes.
>
> Q.  And as far as you know, you have no independent knowledge of any of those matters that you just talked about?
>
> A.  No, I do not.[16]

On May 10, Plaintiffs wrote to McKesson, again requesting a ***knowledgeable*** 30(b)(6) witness and asked that McKesson pay Plaintiffs' costs and fees associated with the Glasco deposition.[17] When McKesson did not respond/refused, Plaintiffs brought this motion.

**B.    McKesson's response to Plaintiffs' contention interrogatories is non-responsive**

The parties each served the other with contention interrogatories in the last few months. Initially each took the position that responses would be premature prior to the close of discovery, but after meeting and conferring, the parties agreed that a response would avoid unfair surprise and arranged to exchange responses on April 24.[18] Plaintiffs' interrogatories consisted of a single interrogatory requiring McKesson to state the basis for its affirmative defenses. The parties agreed to treat the interrogatory as involving 25 subsets, i.e., one for each affirmative

---

[15] *Id.* at 37:6 – 39:2.
[16] *Id.* at 39:5-14.
[17] Berman Decl., Ex. 4 (May 10 letter from Barbara Mahoney to Tiffany Cheung).
[18] *See* Stipulation Regarding Interrogatories and Withdrawal of McKesson's Motion to Compel by McKesson Corporation, Docket No. 237. *See also* Memorandum in Support of McKesson's Motion to Compel Interrogatory Responses, Docket No. 209, at 1, stating that McKesson's reason for moving to compel on Plaintiffs' responses to contention interrogatories was to avoid undue surprise at trial. McKesson withdrew its motion when the parties' entered their stipulation.

- 5 -

defense and to require McKesson to respond to only the first fifteen defenses identified in its Answer to the Second Amended Complaint.

McKesson served Plaintiffs with a 134-page document with the bulk of its hefty response weighed down by non-responsive answers to subparts 3, 5-9, 11, 13 and 14.[19]  Specifically, McKesson identified:

> 180 witnesses and 170 documents to support its third defense that Plaintiffs lack standing;
>
> 340 witnesses and 194 documents to support its fifth defense of waiver or estoppel;
>
> 302 witnesses and 143 documents to support its sixth defense of laches;
>
> 274 witnesses and 162 documents to support its seventh defense of the statute of limitations;
>
> 66 witnesses and 249 documents to support its eighth defense that Plaintiffs failed to mitigate their damages;
>
> 136 witnesses and 102 documents to support ninth defense that McKesson was not the proximate cause of Plaintiffs' injuries;
>
> 153 witnesses and 168 documents to support its eleventh defense that Plaintiffs have suffered no injury;
>
> 52 witnesses and 52 documents to support its thirteenth defense that McKesson's actions were undertaken in good faith and in accordance with industry standards; and
>
> 136 witnesses and 81 documents to support its fourteenth defense that Plaintiffs' claims are barred by intervening or superseding conduct of others.

Additionally, McKesson fails to provide any address or business affiliation for dozens of its witnesses. For example, the first page of McKesson's response to subpart 3 identifies Aaron Krakow and C. Chin-Marshall as "unknown," while listing Alex Gorski, Andrew Price, Bob

---

[19] After serving their responses on April 24, the parties again held a discovery conference and attempted to work out differences. Each of the parties amended their responses; however, McKesson refused to address the deficiencies that are the subject of this motion.

Croft and Cathy McDougle without any address or affiliation. Other individuals have no obvious connection to this lawsuit, less still to McKesson's standing defense, e.g., Agnes Reitano (Defense Supply Center Philadelphia). With respect to documents, in addition to the hundreds of documents specifically identified, McKesson's responses to subparts 5-8 refer to the entire set of documents produced by third-party Argus Health.

Moreover, McKesson's response to its eleventh affirmative response asserts several allegations to support its defense that Plaintiffs suffered no damages, i.e., that class members allegedly renegotiated reimbursement contracts; received larger rebates; did not pay based on First DataBank's AWPs; and/or revised their benefits plans. However, McKesson's list of witnesses and documents identified in connection with this defense does not distinguish between these separate allegations, leaving Plaintiffs no way of knowing which of the 153 witnesses and 168 documents McKesson applies to which of the allegations.

**C.     Plaintiffs are entitled to a knowledgeable witness and for fees and costs associated with the taking of Ms. Glasco's deposition and bringing this motion**

**1.     The failure to provide a knowledgeable witness in response to a 30(b)(6) request is ground for sanctions**

It is black letter law that a corporation has an obligation under Rule 30(b)(6) to produce knowledgeable witnesses to speak on behalf of the corporation,:

> Rule 30(b) (6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one ….

*Berwind Prop. Group, Inc. v. Envtl. Mgmt. Group, Inc.*, 233 F.R.D. 62, 65 (D. Mass. 2005) (quoting *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass. 2001)). Where its witness lacks "first-hand information, it is defendant's responsibility to

prepare its Rule 30(b)(6) designee 'to the extent the matters are reasonably available, whether from documents, past employees, or other sources.'" *Id.* (quoting *Calzaturficio*, 201 F.R.D. at 37). "Even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." *Calzaturficio*, 201 F.R.D. at 37. This obligation to prepare its witness is clearly not met where the witness has no knowledge independent of what she had been told by her counsel.

"'Producing an unprepared witness is tantamount to a failure to appear at a deposition.'" *Id*. at 39 (quoting *Starlight Int'l v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999)). Rule 37 authorizes the court to sanction that failure:

> If a party or an officer, director, or managing agent of a party or person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to . . . provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . .

Fed. R. Civ. P. 37(b)(2).

### 2.  McKesson did not provide a knowledgeable witness

It is obvious that Ms. Glasco was not properly prepared to testify as a 30(b)(6) representative of McKesson. Ms. Glasco had first-hand knowledge only of the current titles and departmental affiliation of some of the persons identified as custodians of record. Nor did she prepare herself for the deposition by reviewing the necessary documents or interviewing the people identified as custodians or who were otherwise involved in McKesson's discovery response. Ms. Glasco knew nothing about the non-pharmaceutical custodians identified on McKesson's log, nothing about McKesson's compilation of its source log, nothing about the document search, nothing about the various departments or divisions from which the documents were obtained or how they or the individuals within those departments organized their files.

Further she knew nothing about McKesson's document retention policy, where McKesson stores its e-mails or how long they are stored.

McKesson's selection and inadequate preparation of Ms. Glasco is tantamount to a failure to appear and is ground for sanctions. *Calzaturficio*, 201 F.R.D. at 39.

### 3. McKesson cannot avoid its Rule 30(b)(6) obligation by substituting counsel's chart for live deposition testimony

Just as it had before, McKesson attempted to evade the Court's order by substituting live testimony with written information provided by its attorneys.[20] Courts generally recognize that written information is not an adequate response to a 30(b)(6) deposition request. *See, e.g., Empire Home Servs. v. Empire Iron Works, Inc.*, 2007 U.S. Dist. Lexis 29568, at *36-38 (E.D. Mich. Apr. 23, 2007). Like McKesson, the defendant in *Empire Home* failed to provide knowledgeable corporate officers who could answer questions about the topics of the plaintiff's 30(b)(6) notice. *Id.* at *36. When the plaintiff moved for sanctions, the defendant argued that they were unnecessary because the information sought was either available to the plaintiff before the depositions or provided later in written form. *Id.* The court rejected this defense:

> [T]his argument would make a mockery of requiring knowledgeable corporate officials at depositions. The essence of live depositions is the opportunity to pursue lines of inquiry through a give and take that is impossible to achieve solely through written communication. Further, depositions exist to test and verify the record evidence with sworn testimony. Written responses, however complete, do not have the effect of sanitizing the conduct of [the defendant] at the depositions.

*Id.* at *37. The court ordered the defendant to pay the reasonable expenses that plaintiffs incurred in taking both depositions and in filing its motion for sanctions. *Id.* at *38.

---

[20] This Court may recall, McKesson attempted to avoid Plaintiffs' initial request for a 30(b)(6) witness last January by providing Plaintiffs with a source log, which provided the names of its custodians of record. *See* Court's electronic order, dated February 25, 2007, asking Plaintiffs to respond to McKesson's contention that "the information sought from the 30(b)(6) deponent is the 'exact' information contained in the document source log which has already been produced."

- 9 -

McKesson's conduct is even more egregious that the defendant in *Empire Home* because the Court has already reprimanded McKesson for trying to evade its Rule 30(b)(6) obligation last January when it tried to force Plaintiffs to accept its source log in lieu of live testimony.  Not only did Plaintiffs have no means to test or verify the content of the chart, but the chart did not even address all of the topics raised by Plaintiffs' deposition notice.

**D.     Plaintiffs are entitled to a more specific response to their interrogatories**

The purpose of interrogatories is to facilitate trial preparation, provide facts, narrow the issues, and reduce the chance of surprise.  *Rickles, Inc. v. Frances Denney Corp.*, 508 F. Supp. 4, 7, unnumbered footnote (D. Mass. 1980).  "Narrowing the issues to either the most significant or the most viable enables the parties and the court to bring the lawsuit to a close, either through settlement or trial."  *Pac. Lumber Co v. Nat'l Union Fire Ins. Co*, 2005 U.S. Dist. Lexis 1773, at *6 (N.D. Cal. Jan. 5, 2005).  Like McKesson, the defendant in *Pac. Lumber* tried to avoid responding to interrogatories by dumping a "voluminous" load of information and burying its response within.  The court concluded that the responses were non-responsive because "[n]ot only do its responses not narrow the issues in the lawsuit, they actually manage to obscure, obfuscate and broaden the issues enough to render them virtually unrecognizable."  *Cf. Bercut-Vandervoort & Co. v. Maison Tarride Ledroit & Cie*, 2006 U.S. Dist. Lexis 93663, at *9-10 (N.D. Cal. Dec. 13, 2006) (rejecting interrogatory response, which referred the requesting party to "virtually all" the documents produced to date).

Here, the purpose of exchanging responses to contention interrogatories was to prevent surprise at trial.  Plaintiffs did their part.  In response to the interrogatories that were served on them, Plaintiffs clearly identified supporting documents and the persons likely to have knowledge of the subject allegations.  McKesson did not meet its obligation.  By burying the names of the witnesses McKesson intends to call at trial and the documents it intends to rely on

within the hundreds that are listed in its responses, McKesson's response is entirely useless. Plaintiffs are entitled to a more specific response that clearly identifies the evidence on which McKesson intends to rely.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court order McKesson to make a knowledgeable witness available for a further deposition and to award Plaintiffs reasonable fees and costs associated with Ms. Glasco's deposition and bringing this motion. In addition, Plaintiffs request an order requiring McKesson to provide a more specific response to subparts 3, 5-9, 11, 13 and 14 of their Interrogatory No. 1, Third Set of Interrogatories.

DATED: May 15, 2007

By  /s/ Steve W. Berman
    Steve W. Berman
    Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol (BBO#471770)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

001821-13 170732 V1

- 12 -

Marc H. Edelson
Hoffman & Associates
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

- 13 -

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 15, 2007.

                                      /s/ Steve W. Berman
                                      Steve W. Berman

001821-13 170732 V1