**PATTON BOGGS** LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

June 19, 2007

David J. Farber
202-457-6516
DFarber@pattonboggs.com

**VIA FEDERAL EXPRESS**

Honorable Patti B. Saris
United States District Court for the
 District of Massachusetts
1 Courthouse Way
Boston, Massachusetts

> Re: *New England Carpenters Health Benefits Fund, et al. v. First Databank, Inc., et al.* (C.A. No. 05-11148-PBS); *District Council 37 Health and Security Plan vs. Medi-Span* (C.A. No. 07-cv-10988)

Dear Judge Saris:

    We represent DeVille Pharmacies, Inc. ("DeVille"), the American Society of Consultant Pharmacists ("ASCP") and the Long Term Care Pharmacy Alliance ("LTCPA"), representatives of a major segment of the healthcare industry that would be directly and adversely affected by (i) the proposed settlement between defendant First Databank, Inc. ("FDB") and the purported class in the first above-referenced action (the "FDB Settlement"), preliminarily approved by the Court in orders dated November 14, 2006, November 22, 2006 and June 6, 2007, and (ii) the parallel settlement between Medi-Span and the same purported class submitted to the Court on May 25, 2007, currently scheduled for a preliminary approval hearing on June 21, 2007 (together with the FDB Settlement, the "Proposed Settlements").[1]

---

[1] DeVille, ASCP and LTCPA represent the interests of members of the long-term care pharmacy industry whose contractual rights vis-a-vis their customers would be negatively impacted by the arbitrary and unilateral reduction of Average Wholesale Price ("AWP") by FDB and Medi-Span that is contemplated by the Proposed Settlements. Long-term care pharmacies provide pharmaceutical products and value-added services to long-term care facilities like nursing homes for the benefit of their predominantly elderly and infirm residents. The pricing for those products and services, both from governmental payors such as state Medicaid programs and under contracts with private parties, such as Medicare Part D plans, other health insurers and private nursing homes, is typically based upon a discount to reported AWP. The long-term care pharmacy industry is noticeably absent from the list of affected nonparties with whom the

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Patti B. Saris
June 19, 2007
Page 2

      At a hearing on May 22, 2007, at which the Court was advised of the Medi-Span settlement, Your Honor inquired as to whether there are any objectors to the FDB Settlement other than the seven state attorneys general who had previously expressed their concerns to the Court in a letter dated January 23, 2007. In light of the Court's inquiry, we write to advise the Court that DeVille, ASCP and LTCPA intend, and expressly reserve their right, to intervene to oppose and/or to object to final approval of the Proposed Settlements at the appropriate time, and to briefly preview for the Court certain fundamental and, we believe, fatal deficiencies -- inextricably related to the "vermillion flag" identified by the Court in its November 14, 2006 order regarding preliminary approval of the FDB Settlement but completely unaddressed by the parties in their submissions to the Court to date -- that render the Proposed Settlements collusive and patently unreasonable when viewed in the proper context.[2]

      The premise of the Proposed Settlements is fundamentally flawed. The Court described their essence in its November 14, 2006 order:

> Of significance, the third-party payors and consumers will receive no money damages under the settlement.
>
> * * *
>
> Essentially, plaintiffs seek to extinguish the rights of past class members in exchange for providing benefits to future class members, particularly third-party payors.

(Nov. 14 Or. at 2-3).[3] While this is, as the Court recognized, problematic in its own right, it becomes exponentially so when viewed in light of the fact that those future "benefits" would in fact be provided not by the settling parties, but by nonparty pharmacies.[4] Indeed, in exchange

---

settling parties purport to have consulted regarding the impact of the Proposed Settlements during their negotiation.

[2] In its November 14, 2006 order, the Court stated that "[o]ne vermillion flag is that the [FDB] settlement provides no monetary damages" (at 4).

[3] The Court reiterated these concerns at the May 22, 2007 hearing, observing that "not one cent crosses hands [in the Proposed Settlements]. It's basically shifting from one class of people who may have been injured to a future class, the benefits, and so it's very unusual, and I'm still not sure what I'm going to do with it ultimately."

[4] The fact that the Proposed Settlements have no monetary relief component whatsoever and provide literally *nothing* to class members in connection with past pharmaceutical purchases is evidence of their collusive nature. The fact that all of the purported relief is prospective means that it will be paid for not by FDB and Medi-Span, but by nonparty pharmacies (via a forced reduction in the bargained-for pricing terms of their contracts with customers).

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Patti B. Saris
June 19, 2007
Page 3

for a complete release of liability on a nationwide class action basis, FDB and Medi-Span are giving up *nothing* (other than paying plaintiffs' attorneys' fees and certain notice and administrative costs). To the contrary, the entire economic burden of the Proposed Settlements would be borne by nonparties to the litigation (let alone the Proposed Settlements), to wit, pharmacies like DeVille, which will see an immediate and direct reduction in their reimbursement due to the reduction in reported AWP mandated by the Proposed Settlements.

Conversely, not a single penny of the purported $4 billion in annual savings to third-party payors that the Proposed Settlements claim to provide would come out of the coffers of FDB or Medi-Span. That is because FDB and Medi-Span are *publishers* of AWP; their profits are in no way tied to the *level* of AWP they report. Rather, they make their money based on the circulation of their respective publications.

Accordingly, virtually all of the purported "savings" to consumers from the Proposed Settlements will come out of the pockets of nonparties, including long-term care pharmacies, whose pricing is based on AWP. Indeed, while these settlements have been portrayed as benefiting consumers, the reality is that they do not – they only benefit third-party payers ("TPPs") that pay based upon AWP, particularly large health maintenance organizations and other private health insurers. Consumers whose prescriptions are paid for by TPPs generally pay a flat copayment for their drugs, such as $15 per prescription, and consequently would see no reduction in the prices they pay due to the proposed settlement. Indeed, while FDB has attempted to justify its failure to provide any monetary relief on the grounds that doing so could lead to its bankruptcy, the reduction in reimbursement that these settlements would mandate may very well put many smaller long-term care pharmacies out of business, reducing consumer choice and convenience. These pharmacies operate on razor-thin margins and are already reeling from the failure of numerous TPPs to make payments on a timely basis, particularly under the new Medicare Part D drug benefit.

Worse still, the adjustment to reported AWP that the Proposed Settlements contemplate is both *ultra vires* and arbitrary. FDB and Medi-Span deny the underlying allegations in these cases, *i.e.*, that they improperly manipulated reported AWP. If that is true, then, by definition, any lower AWP numbers reported by FDB and Medi-Span pursuant to the Proposed Settlements would themselves be *inaccurate*. Moreover, FDB maintains that it is merely "a reporter and publisher of drug related information that is collected from third parties" and that it "does not set drug prices." *See* http://www.firstdatabank.com/support/rcs/communications/awp. Thus, by its own admission, FDB has no legal basis, whether through agreement with this group of plaintiffs or otherwise, to set AWP for anyone, much less for the entire healthcare industry. This Court should not sanction such an arrangement. In effect, FDB, Medi-Span and the plaintiffs are attempting to settle this case, using "other people's money," by doing *exactly* what plaintiffs allege -- and FDB and Medi-Span deny -- FDB and Medi-Span were impermissibly doing in the first

**PATTON BOGGS** LLP
ATTORNEYS AT LAW

Honorable Patti B. Saris
June 19, 2007
Page 4

place -- artificially and arbitrarily *fixing* AWP. As the Court knows, this was one of the primary objections voiced by the seven state attorneys general in their January 27, 2007 letter (stating that "we take issue with the injunctive relief set forth in the settlement. The settlement agreement appears to sanction the publishing of a fictitious price ... ").

In sum, the settling parties, which do not have the legal authority to do what the Proposed Settlements contemplate, are effectively colluding to provide an unearned benefit to TPPs at the expense of unrepresented nonparties like DeVille and members of ASCP and/or LTCPA. FDB and Medi-Span clearly do not represent these nonparties' interests, and are only concerned with getting out of this litigation. Perversely, the Proposed Settlements would effectively allow the alleged wrongdoers in this case -- FDB and Medi-Span -- off the hook for any improper past conduct in these (and, given the classwide *res judicata* effect, in any subsequent) litigations *for free*. This is both legally untenable and fundamentally inequitable and should not be countenanced, much less given judicial imprimatur, by this Court.

Respectfully,

David J. Farber

cc:    Thomas Sobol, Hagens Berman Sobol Shapiro, LLP
       Sheldon Zenner, Katten Muchen Rosenman LLP
       Kevin E. Sharkey