UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ ) | |
| NEW ENGLAND CARPENTERS HEALTH ) | C.A. No. 1:05-CV-11148-PBS |
| BENEFITS FUND; PIRELLI ARMSTRONG ) | |
| RETIREE MEDICAL BENEFITS TRUST; ) | |
| TEAMSTERS HEALTH & WELFARE FUND ) | |
| OF PHILADELPHIA AND VICINITY; ) | |
| PHILADELPHIA FEDERATION OF ) | |
| TEACHERS HEALTH AND WELFARE ) | |
| FUND; DISTRICT COUNCIL 37; AFSCME - ) | |
| HEALTH & SECURITY PLAN; JUNE ) | |
| SWAN; MAUREEN COWIE and BERNARD ) | |
| GORTER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| FIRST DATABANK, INC., a Missouri ) | |
| corporation; and McKESSON ) | |
| CORPORATION, a Delaware corporation, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**PLAINTIFFS' SECOND SUPPLEMENT
OF CLASS CERTIFICATION RECORD**

**A.     There is no foundation for ESI's claim regarding the number of clients it notified of the 2002 WAC-AWP mark-up increase**

- ESI's witness who testified that hundreds, if not thousands, of clients received the ETI communication had no foundation for his statement, especially because he was in the Public Sector Division at the time the communication went out.  *See* Ex. 1 (hereinafter "Kiefer Dep.") at 53:11-55:9 ("I would assume . . . I could be wrong") and 188:21-21-189:3 ("I will tell you what I recall, and I will qualify this by saying I should probably go back and refresh my memory, not only because this is a long time ago, but also because it wasn't one of these processes that I was intimately involved with.").

- ESI's witness did, on the other hand, testify that clients had to sign up to receive ETI communications.  Kiefer Dep. at 54:4-15.  ESI testified that, although it had the ability to send communications to ***all*** of its clients (*id.* at 189:24-190:18), ESI used this channel because, at the time the notice was distributed, ESI considered the problem a "clinical" issue.  *Id.* at 183:4-15.

- ESI did not communicate the scheme to these clients.  Communicating a price increase as a part of a business charge is far different than telling TPPs of a fraud.  TPPs have testified if they had been alerted of a fraud they would have sought recoupment.

**B.     TPP "Discovery" of the 2002-2007 WAC-AWP mark-up increases was isolated to a few out of 40,000 TPP class members**

- ESI's witness knew virtually nothing about the clients who purportedly contacted ESI before its ETI communication and testified that his knowledge of alleged pre-ETI communications was restricted to reviewing the documents ESI produced in this case.  *See* Kiefer Dep. at 60:8-12, 61:7-20, and 184:18-185:24.  Those documents do not show knowledge before its ETI communication in April 2002.

- McKesson offers no evidence that the mark-up was communicated to TPPs by the 47 other PBMs and no evidence any PBM communicated the scheme itself, a far different matter than learning of a price increase.

- McKesson states that Blue Shield of California (BS of CA) learned of the price increases and "met with other large TPPS who had independently made the same observation" (Second Supplement at 1).  In fact, BS of CA did not recall sharing its discovery of the price increase with a single other member of the vast Blue Shield/Blue Cross empire across the entire nation (Ex. 3, Stalker Dep. at 74:18-21), nor did it notify any of its employee plans of the increase (*id.* at 78:24-79:3).

- BS of CA also says it never heard a peep from ESI about the price increase.  *Id.* at 216:7-10.

**C.**    **The only "evidence" of full recoupment is an analysis of SIX OR SEVEN clients that ESI is withholding on the grounds that it is protected by the attorney-client privilege**

- McKesson grossly misrepresents ESI's analysis of purported "recoupment," which was restricted to looking at *six o***r** *seven* clients.  Kiefer Dep. at 87:9-10.  Notably, ***ESI refused to produce the analysis on the grounds that it was protected by the attorney-client privilege***.  *Id*. at 90:2-6; 137:22-138:9**.**  Given this refusal, and especially because this so-called "analysis," which ESI's designee did not even do himself is not reflected in a single document produced by ESI (*id.* at 216:14-219:23), the Court should disregard this testimony.  Indeed this improperly withheld analysis conflicts with ESI documents telling clients of the impact and with Blue Cross of California's analysis in 2004 that by switching to RedBook it could mitigate the impact.  *See* Plaintiffs' Supplemental Submission.

- Importantly, contrary to McKesson's representation at the class certification hearing that the impact of the scheme would be "zero;" ESI's witness testified that he ***could not*** testify that was the case and that ESI did an extensive analysis of the increase because it believed its clients would be affected by it.  Kiefer Dep. at 197:21-198:12.  Indeed, it would have been impossible for ESI to testify that the impact was "zero" given that, when its clients requested them, it provided its clients with analyses that showed the difference in drug cost using the pre-scheme AWPs versus the post-scheme AWPs – thus showing the effect of the scheme on them.  *See* Ex. 2 (ESI-414-00004263-4264).  *See also* Kiefer Dep. at 245:3-247:20 (describing document).

- ESI likewise made clear that renegotiating mid-term was rare and, because of its anticipated impact on ESI budgeting, required multiple layers of management approval to accomplish.  Kiefer Dep. at 159:17-161:19. In fact, the witness testified that, at the time of the AWP increases, ESI emphatically did not invite all its clients to renegotiate their contracts.  *Id.* at 196:21-197:7.

- Medco's comments to its investors is hardly evidence to the contrary.  Medco is only representing its ***general*** ability to save its customers money, not its ability to recoup inflation caused by the scheme.  Medco did not produce ***a single document*** showing or claiming recoupment and its objections to McKesson's deposition notice, served yesterday, says that it cannot produce a deponent who would testify differently than the subject of those documents.  *See* Ex. 4.

**D.**    **ESI's testimony about its own difficulty in analyzing its own data is irrelevant to issues of manageability here**

- ESI's own testimony regarding its difficulty in analyzing recoupment is not relevant to manageability issues here.  The witness did not know (*see* Kiefer Dep. at 181:7-22) and, in fact, no one will ever know what fields were included in the

model ESI purportedly constructed since it has refused to produce it in this litigation.  *See* § C above.

**E.    Consumer injury is not derivative of TPP injury**

- This Court has never accepted, in this litigation or the AWP litigation, that consumer claims are "derivative" of TPP claims.  Therefore, McKesson's argument regarding BCBS California's testimony is irrelevant.

DATED:  August 2, 2007                    By  /s/ **Steve W. Berman**
                                              Steve W. Berman
                                              Nicholas Styant-Browne
                                              Barbara A. Mahoney
                                          Hagens Berman Sobol Shapiro LLP
                                          1301 Fifth Avenue, Suite 2900
                                          Seattle, WA  98101
                                          Telephone: (206) 623-7292
                                          Facsimile: (206) 623-0594

                                          Thomas M. Sobol (BBO #471770)
                                          Ed Notargiacomo (BBO #567636)
                                          Hagens Berman Sobol Shapiro LLP
                                          One Main Street, 4th Floor
                                          Cambridge, MA  02142
                                          Telephone: (617) 482-3700
                                          Facsimile: (617) 482-3003

                                          Elizabeth Fegan
                                          Hagens Berman Sobol Shapiro LLP
                                          820 N. Boulevard, Suite B
                                          Oak Park, IL  60302
                                          Telephone: (708) 776-5600
                                          Facsimile: (708) 776-5601

                                          Jeffrey Kodroff
                                          John Macoretta
                                          Spector, Roseman & Kodroff, P.C.
                                          1818 Market Street, Suite 2500
                                          Philadelphia, PA  19103
                                          Telephone: (215) 496-0300
                                          Facsimile: (215) 496-6611

- 3 -

Marc H. Edelson, Esq.
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

001821-13  188074 V1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on August 2, 2007.


  /s/ Steve W. Berman
Steve W. Berman

001821-13  188074 V1