UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, and DISTRICT 37 HEALTH AND SECURITY FUND, | C.A. No. 1:05-CV-11148-PBS |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |
| DISTRICT COUNCIL 37 HEALTH AND SECURITY PLAN, on behalf of itself and all others similarly situated, | |
| Plaintiff, | |
| v. | Civil Action No. 07-CV-10988 |
| MEDI-SPAN, a division of WOLTERS KLUWER HEALTH, INC. | |
| Defendant. | |

**MOTION AND MEMORANDUM TO APPROVE
JOINT FDB/MEDI-SPAN NOTICE**

On November 1, 2006, Class Plaintiffs and FDB filed a Joint Motion for

Preliminary Approval of Settlement that included an FDB only notice program. The

Court issued several prior orders dated November 14 and 22, 2006, relating to the FDB

only settlement. Then on May 25, 2007, Class Plaintiffs and Medi-Span filed their Joint

Motion for Preliminary Approval of Settlement. Recognizing that it would be more

efficient and to the benefit of the classes, Class Plaintiffs and Medi-Span submitted a

Joint FDB/Medi-Span Settlement Notice Program ("Joint Notice") that would be used for

both the FDB and Medi-Span settlements.  Also, in May 2007, Class Plaintiffs and FDB

submitted a proposed Updated Preliminary Approval Order which also sought approval

of the Joint Notice for the FDB settlement.

On June 6, 2007, this Court issued an Order relating to the FDB settlement only

wherein it approved the originally submitted Joint Notice and set up dates for issuing the

Joint Notice, deadlines for objections and opt-outs, as well as for the final settlement

hearing for the FDB settlement.  Subsequent to this June 6, 2007, FDB-only Order, the

Court raised questions regarding the original Joint Notice as part of the Medi-Span

preliminary approval process.

On July 25, 2007, this Court held a hearing to discuss the Joint FDB/Medi-Span

Settlement Notice Program.  In response to the issues discussed, Kinsella/Novak

Communications, LLC revised the Joint Notice in several ways to increase its overall

effectiveness.  See Exhibit A, Declaration of Katherine Kinsella and accompanying

exhibits.  The new Joint Notice makes several changes to the notice program to make it

more noticeable and understandable for all class members, especially consumers.  The

revisions to the new Joint Notice program include modifying which print publications are

used, utilizing internet advertisement, adding links from defendants' web sites to the

settlement web site, increasing the size of national newspaper notices, using several

techniques, including use of color, to make notices more visible, readable and

understandable to all class members and having direct mailing to consumer groups.

Class Plaintiffs, FDB and Medi-Span seek approval of this new Joint Notice program. To this end the parties submit two proposed orders: (1) as to FDB, a proposed Order updating the prior June 6, 2007 Order which approves the current version of the Joint Notice as well as revising the dates for issuance of the Joint Notice, due dates for objections and opt-outs and setting a final hearing date (see Exhibit B); and (2) as to Medi-Span, a proposed Order preliminarily approving the settlement, certifying the class, approving the class representative and its counsel, approving the current Joint Notice and setting dates for the Final Settlement Fairness hearing (see Exhibit C). Both proposed orders ensure that the Joint Notice will be issued on the same dates and suggest scheduling both the FDB and Medi-Span final approval hearings for the same date.

For all the above-stated reasons, it is respectfully requested that the Court: (a) approve the Joint Notice; (b) grant the Updated Order Directing Notice for the FDB Settlement which directs that notice be provided to the Class in accordance with the Joint Notice, schedules a final Fairness Hearing and establishes all related deadlines; and (c) grant the Medi-Span Preliminary Approval of the Settlement which certifies the Settlement Class, appoints the class representative and Class counsel, schedules a final Fairness Hearing and establishing all related deadlines.

DATED: August 14, 2007                    By:  __/s/ Thomas M. Sobol_____
                                               Thomas M. Sobol (BBO#471770)
                                               Hagens Berman Sobol Shapiro LLP
                                               One Main Street, 4th Floor
                                               Cambridge, MA 02142
                                               Telephone: (617) 482-3700
                                               Facsimile: (617) 482-3003

Steve W. Berman, Esq.
Sean R. Matt, Esq.
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan, Esq.
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL 60301
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

Jeffrey Kodroff, Esq.
John Macoretta, Esq.
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson, Esq.
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler, Esq.
Amber Nesbitt, Esq.
Jennifer Fountain Connolly, Esq.
The Wexler Firm LLP
55 West Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that I caused a true and correct copy of the foregoing document(s) to be served in the manner indicated upon all the parties listed below on this 14th day of August, 2007.

## <u>VIA OVERNIGHT MAIL</u>

Kevin E. Sharkey
KENNA, JOHNSTON & SHARKEY
69 Bay Street
Manchester, NH 03104
Tel: 603 622-3222
Fax: 603-669-6574
Email: ke.sharkey@verizon.net

Sheldon T. Zenner
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe St.
Chicago, Ill. 60661-3693
Tel: 312-902-5476
Fax: 312-577-8995 (fax)
Email: sheldon.zenner@kattenlaw.com

*Counsel for Medi-Span, a division of Wolters Kluwer Health, Inc.*

Mark Redman
Office of General Counsel
THE HEARST CORPORATION
959 Eighth Avenue
New York, NY 10019-3737

*Counsel for First Databank, Inc.*

Lori A. Schechter
Tiffany Cheung
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105-2482

*Counsel for McKesson Corporation*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| D.C. 37 HEALTH & SECURITY PLAN, on behalf of itself and all others similarly situated, | No. 07-cv-10988-PBS |
| Plaintiffs | |
| v. | |
| MEDI-SPAN, a division of WOLTERS KLUWER HEALTH, INC. AND WOLTERS KLUWER NV, | |
| Defendants. | |
| and | |
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, | No. 1:05-CV-11148-PBS |
| Plaintiffs | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

DECLARATION OF KATHERINE KINSELLA REGARDING CHANGES TO
THE JOINT NOTICE PROGRAM

I, Katherine Kinsella, declare as follows:

1.      I am President of Kinsella/Novak Communications, LLC ("KNC"), an advertising

and legal notification consulting firm in Washington, D.C. specializing in the design and

1

implementation of class action and bankruptcy notification programs.  My business address is 2120 L Street, NW, Suite 205, Washington, D.C. 20037.  My telephone number is (202) 686-4111.

2.       I submit this declaration in connection with *D.C. 37 Health & Security Plan v. Medi-Span* and *New England Carpenters Health Benefits Fund v. First DataBank, Inc.* both pending in the United States District Court for the District of Massachusetts.

3.       This declaration is based upon my personal knowledge and upon information provided by Plaintiffs' Counsel, my associates and staff.  The information is of a type reasonably relied upon in the fields of advertising, media and communications.

4.       This affidavit is submitted following a Hearing with Judge Patti Saris on July 25, 2007.  It outlines the changes to the Joint Notice Program previously submitted to the Court on May 25, 2007.

5.       In sum, the currently proposed Notice Program:

- Revises the print publications previously selected;
- Adds Internet advertising, links to the Settlement Web site from Defendant Web sites and Search Engine Optimization;
- Increases the size of the national newspaper notices;
- Uses color to enhance the Notice in a number of the magazines;
- Includes direct notice to consumer advocacy groups; and
- Simplifies the Notices directed to consumers.

2

6.      As a result of these changes, the overall reach of the Notice Program increased, as explained below in Paragraph 17.  It is my opinion that the changes have enhanced the Notice Program directed to the Class and are consistent with the intention of Judge Saris and the Settling Parties to provide the "best notice practicable under the circumstances."

## Revised Print Notice Program

7.      In revising the Notice Program, KNC examined the efficiency of using Internet advertising and print advertising in combination.  To do this cost-effectively, adjustments were made to the previously selected print publications in order to re-allocate a portion of the Notice Plan budget to Internet advertising.  Specifically:

- The number of insertions in *US News & World Report*, *Parade* and *USA Weekend* were reduced by one each;
- One insertion was added to *Newsweek;*
- *Family Circle* magazine was eliminated; and
- *The New York Times* was substituted for *USA Today*.

8.      All ad sizes were kept the same with the exception that the Notices in *The New York Times* and *The Wall Street Journal* were increased to one-half page ads from one-sixth page ads rendering them more dominant on the page.

9.      The print publications in the revised Notice Program are listed below with the number of insertions and the size of the Notices.

| PRINT MEDIA | | |
|---|---|---|
| **Consumer Magazines** | | |
| **Name** | **Unit Type** | **Insertions** |
| *Better Homes & Gardens* | 2/3 Pg* | 1 |
| *Ebony* | 2/3 Pg* | 1 |
| *Newsweek* | 2/3 Pg  B/W | 3 |
| *Parents* | 2/3 Pg B/W | 1 |
| *People* | Full Pg B/W | 3 |
| *US News & World Report* | 2/3 Pg* | 2 |
| | | |
| **Newspaper Supplement** | | |
| **Name** | **Unit Type** | **Insertions** |
| *Parade* | 2/5-pg B/W | 1 |
| *USA Weekend* | 2/5-pg* | 1 |
| *Vista* | Full Pg* | 1 |
| | | |
| **National Newspapers** | | |
| **Name** | **Unit Type** | **Insertions** |
| *Wall Street Journal* | 1/2 Pg B/W | 1 |
| *New York Times* | 1/2 Pg B/W | 1 |
| | | |
| **Trade Publications** | | |
| **Name** | **Unit Type** | **Insertions** |
| *HR Magazine* | Full Pg  B/W | 1 |
| *National Underwriter* | Full Pg B/W | 1 |

* "Spot Color" will be used in these publications as outlined in Paragraph 11.

**Enhancing the Readability and Visibility of Notices**

10.    Several steps were taken to make the Notices more visible, readable and understandable, especially for consumers.  The Consumer Publication Notice was greatly simplified in length, complexity and design.  It is known that advertisements with strong headlines, good subheads, significant white space and readable font sizes are more likely to be noticed than text-intensive advertisements printed in small font size.  I have adopted these techniques and believe the revised Consumer Publication Notice, attached as Exhibit 1, is eminently more noticeable, readable and understandable while still including the required elements mandated by F.R.C.P. Rule 23(c)(2)(B).  The reading level is below sixth grade as measured by the Flesch-Kincaid Grade Level formula[1].

11.    In addition to these textual and design changes, a second color was added to the black and white Notices for the magazines and newspaper supplements that provided reasonable costs for adding spot color.  Color will be used in Consumer Publication Notices placed in *Better Homes and Gardens*, *Ebony*, *US News and World Report* and *USA Weekend*.  Adding color to the other publications would have increased the media costs by several hundred thousand dollars and it is therefore not recommended.  To my knowledge, this is the first use of color in legal notification advertising.

12.    The Notice designed for *The New York Times* and *The Wall Street Journal* was also reworked and redesigned to increase visibility and attract attention.  It is longer in length and detail than the Consumer Publication Notice due to the expanded ad size and the fact that it is designed to provide a broader explanation of the Settlements to consumers, consumer advocacy organizations and interested industry stakeholders.  It also uses a very large and direct headline, prominent subheads and an overall layout conducive to reading.  It is attached as Exhibit 2.

---

[1] The Flesch-Kincaid Grade Level examines the number of words, syllables and sentences in a sample of writing.  The result is a numerical indication of the grade level required to read and understand the text.  Negative results are reported as zero, and numbers over twelve are reported as twelve.

**Internet Advertising**

13.     Banner ads will be placed on a wide range of Internet Web sites to supplement the reach of the print publications.    Approximately 200,000,000 *gross impressions*[2] will be purchased on Yahoo!, AOL and the 24/7 Network.   Impressions will be capped at 3 times per user or IP Address[3] to ensure the maximum audience distribution of the message.   This reduces the banners being seen repeatedly by the same users.   The 24/7 Network has over 900 Web sites and the banners will run across the Network.   The Yahoo! and AOL banners will be placed on the email landing page and on the news and health sites.   The banners will be approximately 728 x 90 pixels and 350 x 350 pixels (See Exhibit 3).

**Reach of Print and Internet Media**

14.     Print media can be measured for its reach of specific target audiences.   In this case, the primary targets are Adults 35+ and Adults 18+ who have used any branded or generic prescription drugs in the past 12 months ("Adults 35+ Rx Users"; "Adults 18+ Rx Users") as well as all Adults ("Adults 18+").   The Internet can only be measured against Adults 18+ and cannot be measured against the primary targets.   Therefore, KNC examined the reach of the print media against all three targets and the reach of the print media in combination with the Internet against Adults 18+ only.

15.     The reaches of the print media alone are as follows:

- 80% of Adults 35+ Rx Users will be reached with an average frequency of exposure of 2.5 times.

- 78.7% of Adults 18+ Rx Users will be reached with an average frequency of exposure of 2.6 times.

---

[2] A gross impression is the metric a site uses for measuring and reporting ad inventory. Gross impressions refer to the viewing of a page or viewing of an ad. This assumes that the page or ad images completely download and the user views the page or ads on the page.

[3] Internet Protocol Address or IP Address refers to the set of communications standards that control communications activity on the Internet. An IP address is the unique number assigned to any Internet-connected computer.

- 74.8% Adults 18+ will be reached with an average frequency of exposure of 2.5 times.

16.    The reach of the Internet and print media against the only target that is measurable indicates that:

- 84.8% of Adults 18+ will be reached with an average frequency of exposure of 2.7 times.

17.    Although the combined Internet and print reach of the primary targets is not specifically measured, it can be postulated with certainty that if the combined Internet and print reach of Adults 18+ increases, the reach of Adults 35+ Rx Users and Adults 18+ Rx Users will also increase.  This is because the primary targets are similar to Adults 18+ in their use of the Internet.  Therefore, although not calculable, it is certain that the Internet and print media are delivering higher reaches against the primary targets than the reach against Adults 18+ only.

## **Internet Notice**

18.    Tools are available on the Internet to increase the ability of Web users to find Web sites by name and content.  KNC will use "INeedHits.com" Search Engine Optimization ("SEO") services to promote the FDB/Medi-Span Settlements' informational Web site.  INeedHits.com has been a leader in the SEO industry for 10 years.  Their services will ensure that the FDB/Medi-Span Web address and content will be included in leading Web search engines and directories and that the content will be indexed for maximum effectiveness when users search for information about the Settlements.

The optimization plan includes:

- *Keyword analysis*

7

Analyzes the Web site for appropriate and effective keywords to enable Web users to easily find the Settlement URL. INeedHits.com analyzes the Web page content and picks out the best key words to direct users to the URL.

• *Code Optimization*

Provides optimized code for insertion into each Web page's unseen HTML headers for search engines to read and index. It allows the search engine to index the page, thereby providing more accurate search results.

• *Premium Submit*

The URL is manually submitted to the top search engines and automatically submitted to 300 other search engines and directories. This ensures that the Web site address is listed as quickly as possible in the search index.

• *Submit Ongoing*

The URL is periodically resubmitted to search engines for maximum ongoing exposure.

• *Paid Inclusion*

Currently, Yahoo! is the only engine that offers paid and guaranteed URL inclusion in their search index, usually within 4 days of submission by INeedHits.com. This paid inclusion guarantees that the URL will be added to Yahoo's index as quickly as possible. Yahoo's directory network includes AltaVista, Excite, alltheweb, and others.

## **Additional Enhancements**

19.     Links to the Settlement URL from the Defendants' Web sites will be added to

8

enable viewers of these sites to quickly find out information about the Settlements.

20.    Finally, Notice will be sent to national and state consumer organizations that advocate on behalf of consumers and issues that affect them. Notice will consist of a cover letter introducing the Settlements and a copy of the Consumer Long Form Notice. As of this date, 41 organizations have been identified. Additional research will be undertaken to expand this list, if possible (See Exhibit 4).

### Long Form Notices

21.    The original Long Form Notice was directed to both TPPs and consumers. KNC has since created individual Long Form Notices directed to each group. The Consumer Long Form Notice was greatly simplified to enable a better understanding of the Settlements. The TPP Long Form Notice was also reworked to simplify the opening explanation. Both Notices are attached as Exhibits 5 and 6. Both Long Form Notices are at the ninth grade reading level.

### Conclusion

22.    It is my opinion that the enhancements outlined above, particularly the addition of Internet advertising and the use of simplified and innovative Notices, has significantly strengthened the Joint Notice Program and will ensure a broader awareness and understanding of the Settlements.

I declare under penalty of perjury under the laws of the State of Massachusetts and the United States of America that the foregoing is true and correct.



Katherine Kinsella

Executed in Washington, D.C. this 6th day of August, 2007.

9



KINSELLA / NOVAK
COMMUNICATIONS, LLC

# First DataBank / Medi-Span Settlement Notice Program

## New England Carpenters Health Benefits Fund v. First DataBank, Inc.
### Case No. 1:05-CV-11148-PBS (D.Mass.)

## D.C. 37 Health & Security Plan v. Medi-Span
### Docket No. 07-cv-10988-PBS (D. Mass)

2120 L Street, NW | Suite 205 | Washington, DC 20037
Phone: 202.686.4111 | Fax: 202.293.6961 | Email: info@kinsella-novak.com | http://www.kinsella-novak.com

THE ART & SCIENCE OF LEGAL NOTIFICATION

# Table of Contents

|  | Page |
|---|---|
| Firm Overview | 1 |
| Relevant Case Experience | 2 |
| Technical Approach | 3 |
| Situation Analysis | 5 |
| Class Definition | 6 |
| Notice Plan Overview | 7 |
| Direct Notice | 8 |
| Paid Media Methodology | 10 |
| Target Audience | 11 |
| Demographics | 12 |
| Paid Media Program | 13 |
| Newspaper Supplements | 14 |
| Consumer Magazines | 16 |
| National Newspapers | 19 |
| Internet Advertising | 20 |
| Trade Publications | 22 |
| Print Readership | 23 |
| National Media Delivery | 24 |

© 2007 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

Notice Design                                                    25

Third-Party Notice                                               26

Earned Media                                                     27

Internet Notice                                                  28

Toll-Free Telephone Support                                      30


Exhibit 1 – Third-Party Payor Notice of Proposed Class Action Settlements

Exhibit 2 – Consumer Notice of Proposed Class Action Settlements

Exhibit 3 –Newspaper Supplements by Carrier Paper

Exhibit 4 – Internet Banner Advertisements

Exhibit 5 – 24/7 Network Site List

Exhibit 6 – Notice Schedule

Exhibit 7 – Consumer Publication Notice

Exhibit 8 – National Newspaper Publication Notice

Exhibit 9 – Third-Party Payor Publication Notice

Exhibit 10 – Consumer Groups

© 2007 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

# Firm Overview

Kinsella/Novak Communications ("KNC") provides nationally recognized expertise in the design of media-based legal notification programs for class actions and bankruptcies.

The firm has designed, implemented or consulted on over 250 class actions and bankruptcies and specializes in the most complex and often precedent-setting notice efforts. National and statewide notification programs include asbestos, breast implants, consumer fraud, home siding products, infant formula, polybutylene plumbing, tobacco, antitrust securities and Holocaust claims. The firm has selected and placed over $160 million in paid legal advertising.

KNC develops advertisements, press materials, Web sites, and other notice materials bridging the gap between litigation complexities and the need for a clear and simple explanation of legal rights. In addition to designing and producing notices in "plain language," all KNC notice programs are fully compliant with Rule 23 of the Federal Rules of Civil Procedure and comparable state guidelines. The firm employs industry-recognized tools of media measurement to quantify the adequacy of the notice for the court.

# RELEVANT CASE EXPERIENCE

KNC has significant notification experience including consumer class actions involving pharmaceuticals.

## PHARMACEUTICAL CASES

➤ *State of Connecticut v. Mylan Laboratories, Inc.,*
  MDL 1290, Misc. No. 99-276 (TFH-JMF) (Lorazepam and Clorazepate)

➤ *In re Buspirone Antitrust Litigation,*
  MDL-1413 (S.D.N.Y.) (BuSpar)

➤ *In re Cardizem* CD *Antitrust Litigation,*
  99-MD-1278 (E.D. Mich.) (Cardizem)

➤ *State of Ohio v. Bristol-Myers Squibb, Co.,*
  1:02-cv-01080 (D.D.C.) (Taxol)

## OTHER SELECTED CASES

➤ *In re Nasdaq Market-Makers Antitrust Litigation,*
  No. M21-68 (RWS), 94 Civ. 3996 (RWS), MDL No. 1203 (S.D.N.Y.) (securities)

➤ *In re Compact Disc Minimum Advertised Price Antitrust Litigation,*
  MDL No. 1361 (D. Me.) (prerecorded music products)

➤ *In re Toys "R" Us Antitrust Litigation,*
  MDL No. 1211, Master File No. CV-97-5750 (E.D.N.Y.) (toys and other products)

➤ *Cox v. Shell Oil Co.,*
  No. 199,844 (Tenn. Ch. Ct., Obion County) (polybutylene pipe)

➤ *Naef v. Masonite,*
  No. CV-94-4033 (Ala. Cir. Ct., Mobile County) (hardboard siding)

➤ *In re Holocaust Victims Assets Litigation,*
  No. CV 96-4849 (Consolidated with CV-5161 and CV 97461) (E.D.N.Y.)

➤ *Ruff, et al. v. Parex, Inc.,*
  No. 96-CVS-0059 (N.C. Super. Ct., New Hanover County) (EIFS stucco)

➤ *Fettke v. McDonald's Corporation,*
  Case No. 044109 (Cal. Super. Ct., Marin County) (trans-fatty acids)

# Technical Approach

KNC's technical approach is based on its expertise as a leading provider of notice in class actions, knowledge of court-approved notice programs at the state and federal levels and years of experience in designing and implementing legal notification programs both nationally and internationally.

KNC begins by conducting detailed research on the claim that is the subject of the class action and how it is related to a population, its location and temporal characteristics. This information identifies the demographic characteristics of class members — such as age, gender, income, and education level — and the geographic distribution of potential class members. This research provides the parameters for identifying and locating class members and shapes the scope of the notice program.

Specifically, KNC:

➢ Reviews demographic and product information provided by the client or independently researched and establishes a demographic profile of the target audience. All media selections are based on this profile in order to ensure the highest reach of potential class members and frequency of message exposure.

➢ Evaluates the effectiveness of media vehicles -- consumer magazines, newspapers, specialty publications, broadcast television, radio and the Internet -- in reaching the target audience.

➢ Analyzes publications using syndicated data sources and tools, such as the Audit Bureau of Circulation (ABC) statements, which certify how many readers buy or obtain copies of publications, and MediaMark Research ("MRI") which measures how many people open or read publications.

➢ Estimates Internet reach with comScore, a leading Internet information provider.

➢ Examines the geographic distribution of potential class members at the level of detail necessary to determine effective geographic coverage.

➢ Selects media available during the established notice period ensuring timely notice to class members.

➢ Creates and implements all notice communications, including: published notice, print, audio and video news releases, television and radio spots, Internet advertising and Web sites.

➢ Ensures that published notices and long form notices are written in "plain language."

➤ Uses established advertising relationships to negotiate the deepest available discounts on national advertising and secure optimum placement with respect to the media habits of the target audience.

➤ Designs and implements an "earned media" program to further supplement the published notice through print, audio and video news releases and non-paid media outreach. Tracks and verifies all media placements and press stories developed through "earned media."

➤ Designs and maintains a Web site to enable class members to access all relevant information including long form notices, claim forms and court documents. Provides registration and email capabilities on the site.

➤ Integrates all aspects of the notification program with selected claims administrators.

➤ Provides advice, affidavits, depositions and court testimony with respect to the design and implementation of the notification program.

# SITUATION ANALYSIS

First DataBank ("FDB") and Medi-Span (a division of Wolters Kluwer Health, Inc.) are Defendant publishers. FDB reports certain pharmaceutical drug prices in printed and electronic databases including the Blue Book Average Wholesale Price ("BBAWP") of each pharmaceutical. Pharmaceutical manufacturers often report the Wholesale Acquisition Cost ("WAC") to FDB and Medi-Span. In some cases, FDB and Medi-Span then apply a mark up factor to the WAC to derive the AWP reported in their publications and electronic databases. From December 2001 through April 2004, Medi-Span then published the information provided by FDB in its databases. FDB and Medi-Span are not, nor have they ever been a manufacturer, supplier, wholesaler, distributor or seller of prescription drugs.

The published AWP of a drug is often used as a benchmark by pharmacies, insurance companies and other Third-Party Payors ("TPPs") to set the price of drugs for consumers who pay the full price of drugs at pharmacies and to determine what insurance companies and TPPs will reimburse for these drugs. Also, the co-payments made by certain consumers, those who pay a percentage of the cost of their prescription drugs rather than a flat co-payment, may also be determined based on the same AWP data.

FDB purports to have relied upon pharmaceutical manufacturers and wholesalers to provide information relating to their drug prices for purposes of publishing the BBAWP data field. Pharmaceutical manufacturers often reported what is known as the Wholesale Acquisition Cost ("WAC"), Direct Price ("DP") and Suggested Wholesale Price ("SWP") to FDB. FDB purports to have surveyed pharmaceutical wholesalers to determine the average mark-up applied to a drug, with the average mark up of the responding wholesalers applied against the WAC, DP or SWP with the resulting value determining the BBAWP data field.

Plaintiffs claim that in 2001 FBD and a large a pharmaceutical wholesaler, McKesson, wrongfully inflated the markup factor used to determine the BBAWP that applies to numerous prescription pharmaceuticals. Plaintiffs further claim that Medi-Span negligently published the data provided by FDB in its databases as well, subsequent to April 2004. This allegedly caused members of the Class (TPPs and some consumers), whose payments for pharmaceuticals are tied to the published AWP, to make substantial excess payments for those pharmaceuticals. Plaintiffs also claim that despite representations that it conducted surveys of wholesalers of pharmaceuticals to determine their average wholesale price, FDB either failed to conduct such surveys or failed to conduct adequate surveys.

FDB and Medi-Span deny any wrongdoing. The Proposed Settlement is not an admission of wrongdoing or an indication that any law was violated. FDB and Medi-Span have entered into the Proposed Settlement solely to avoid further expense, inconvenience,

# Class Definition

The Proposed Class Action Settlement Class, referred to as the "Private Payor Class" is defined as:

➤ All individual persons or entities who, during the Class Period, made purchases and/or paid, whether directly, indirectly, or by reimbursement, for all or part of the purchase price of prescription pharmaceuticals, including, but not limited to, those pharmaceuticals listed on the attached Exhibit A, where any or all of the purchase price, reimbursement or payment amount was based in any part on the Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc. or Medi-Span, electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc. or Medi-Span, electronically or otherwise, in whole or part, was based on a FDB wholesale survey. Excluded from the class are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments; the States of the United States and their respective officers, agents, agencies and departments; and all other local governments and their officers, agents, agencies and departments.

➤ This is to clarify further that those entities that own or operate businesses referred to commonly as pharmacy benefit managers ("PBMs") and who as part of their business operation contract with ultimate Third Party Payors of a prescription pharmaceutical benefit to perform certain services in the administration and management of that prescription pharmaceutical benefit for those ultimate Third-Party Payors are not class members under the Private Payor Class definition of this settlement. The class includes the ultimate Third Party Payors providing the prescription pharmaceutical benefit and not the PBMs with which those Third Party Payors contract with to administer or manage that prescription benefit on behalf of the class members, unless such PBMs are the fiduciary of the Third Party Payors or by contract assumed, in whole or in part, the insurance risk of that prescription pharmaceutical benefit during the Class Period.

# Notice Plan Overview

This plan is submitted by KNC in connection with *New England Carpenters Health Benefits Fund v. First DataBank, Inc.,* CA: 01-CV-11148-PBS and *D.C. 37 Health & Security Plan v. Medi-Span*, CA: 07-cv-10988-PBS in the District Court of Massachusetts. The plan outlines procedures to provide notice of the First DataBank and Medi-Span Proposed Class Action Settlements consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. The Notice Program is directed to all members of the Private Payor Classes.

Based upon information provided by Counsel, the results of research on Class Members and their response to media and the media habits of the target audiences, the following five-part notice program is recommended:

➢ Direct notice by first-class mail to:

- All Third-Party Payors whose names and addresses are readily identifiable.

- All callers to the toll-free information line who request a *Notice of Proposed Class Action Settlement* as a result of seeing the Publication Notice.

➢ Broad published notice through the use of paid media, including newspaper supplements, consumer magazines and national newspapers. Internet banner advertising will also be used to provide additional notice opportunities to Class Members. Trade publications will be used to supplement the direct notice to TPPs.

➢ Third-party notice by first-class mail to consumer associations and organizations.

➢ Earned media notice through a press release sent to major national print and electronic outlets and third-party organizations.

➢ Electronic notice through a dedicated Web site and optimization of keyword/phrase Internet searches.

# Direct Notice

## Third-Party Payors

Direct mail notice to TPPs will consist of mailing the *TPP Notice of Proposed Class Action Settlements* (Exhibit 1) to appropriate identifiable TPP Class Members informing them of their legal rights and how they may participate in or opt-out of the class action. The *TPP Notice of Proposed Class Action Settlements* will be sent to:

➢ Appropriate entities likely to be Class Members, in the proprietary TPP Database compiled by Complete Claim Solutions ("CCS"), the class administrator. The Database includes insurance companies, healthcare and welfare funds, employee benefit funds, third-party administrators, pharmacy benefit managers and other record keepers for noticing purposes in TPP class actions. The Database was compiled from contacting, researching and accessing the records of various databases and listings of affiliations, group insurance plans, self-insureds, ERISA funds, pharmacy benefit manager listings, etc. as follows:

- Pharmacy Benefit Management Institute;
- Benefits SourceBook;
- Managed Care Information Centers;
- Judy Diamond Associates;
- AM Best Company;
- Association of Managed Care Providers;
- Society of Professional Benefit Administrators;
- American's Health Insurance Plans;
- Self-Insurance Institute of America; and
- National Association of Insurance Commissioners.

Included in the Database are:

- Approximately 29,000 companies with 100 or more employees that have self-funded (fully or partially) plans, derived from Form 5500 filings;
- 1,356 Third-Party Claim Administrators; and
- 1,300 member companies of American Health Insurance Plans that provide or administer health insurance benefits to over 200 million Americans which represent 90 percent of the managed care market (HMOs, PPOs and POSs, etc.).

The Database is regularly updated with new entries from the above sources as well as TPPs identified through other class action litigations.

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*
*D.C. 37 Health & Security Plan v. Medi-Span*

## Callers to the Toll-free Number

All callers to a toll-free information line who request either the *Consumer Notice of Class Action Settlements* (See Exhibit 2) or the *TPP Notice of Proposed Class Action Settlements* will be mailed the requested Notice.  A toll-free number for this information line will prominently appear in the Publication Notice.  Class Members may also download the Long Form Notices, in PDF format, from the Notice Web site.

# Paid Media Methodology

KNC notice plans directed to unidentified class members (1) identify the demographics of class members and establish a target audience; (2) outline the methodology for selecting the media and other plan elements and how they relate to product usage or exposure; and (3) provide results that quantify for the court the adequacy of the notice based upon recognized tools of media measurement.

In the wake of the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993), and *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999), the reliability of a notice expert's testimony should be tested against the standards developed within the media industry for determining whether, to what degree and at what frequency a target audience has been reached. In assessing the expert's reliability, the court must determine whether the testifying expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," (526 U.S. at 152). That showing would likely require evidence that the expert's data and methodology are similar to that used by professionals in the relevant field.

In keeping with the *Daubert* and *Kumho* rulings, KNC employs the methodology and measurement tools used in the media planning and advertising industry for designing and measuring the adequacy of a paid media program to reach a particular audience.

Choosing a target audience encompassing the characteristics of Class Members is the first step in designing the paid media program. Media vehicles are chosen based on their ability to provide effective and cost efficient reach among the target audience. The selected media vehicles are then measured against the target audience to establish the *reach* of the media program and the *frequency* of exposure to the media vehicles. *Reach* and *frequency* estimates are two of the primary measurements used to quantify the media penetration of a target audience.

➤ *Reach* is the estimated percentage of a target audience reached one or more times through a specific media vehicle or combination of media vehicles within a given period.

➤ *Frequency* is the estimated average number of times an audience is exposed to an advertising vehicle carrying the message within a given period of time.

# Target Audiences

To develop a profile of the demographics and media habits of Class Members that used prescription drugs reported by FDB and Medi-Span, KNC analyzed syndicated data available from the 2006 Doublebase Survey[1] from MRI.

MRI is the leading U.S. supplier of multimedia audience research. As a nationally accredited research firm, it provides information to magazines, television, radio, Internet and other media, leading national advertisers and over 450 advertising agencies -- including 90 of the top 100 in the United States. MRI's nationally syndicated data are widely used by these companies as the basis for the majority of the media and marketing plans written for advertised brands in the United States.

Specifically, MRI provides data on audience size, composition and other relevant factors pertaining to major media vehicles. MRI presents a single-source measurement of major media, products, services and in-depth consumer demographic and lifestyle characteristics.

MRI provides data on both branded and generic prescription drug users. An examination of this data indicates that Adults 35 years of age and older represent 75% of prescription drug users and is the largest consumer segment of the Private Payor Class. Using MRI, KNC determined that the following two demographics are the best demographic targets against which to effectively select and measure media to reach the Private Payor Class:

➢ Adults 35 years or age and older who used branded or generic prescription drugs during the past twelve months "("Drug Consumers Adults 35+").

➢ Adults 18 years of age and older who used branded or generic prescription drugs during the past twelve months ("All Drug Consumers").

➢ Adults 18 years of age and older.

---

[1] The study, conducted since 1979, surveys persons 18 years of age and older in the contiguous 48 states. MRI conducts more than 26,000 personal interviews with consumers in two waves annually each lasting six months and consisting of 13,000 interviews. Produced annually by MRI, the Doublebase study consists of two full years of data drawn from over 50,000 respondents. Consumer information is recorded on 500 product/service categories, 6,000 brands and various lifestyle activities. Respondents are selected based on the ability to project their responses nationally.

# Demographics

The chart below outlines the overall demographics of the three target audiences:

| DEMOGRAPHICS | ADULTS 18+ | ALL DRUG CONSUMERS | DRUG CONSUMERS ADULTS 35+ |
|---|---|---|---|
| | | | |
| Male | 48.1% | 40.9% | 41.5% |
| Female | 51.9% | 59.1% | 58.5% |
| **Age** | | | |
| 18 - 24 | 12.9% | 9.6% | N/A |
| 25 - 34 | 18.3% | 14.5% | N/A |
| 35 - 44 | 20.3% | 18.8% | 24.7% |
| 45 - 54 | 19.1% | 20.6% | 27.1% |
| 55 - 64 | 13.2% | 16.4% | 21.6% |
| 65+ | 16.2% | 20.2% | 26.6% |
| **Education** | | | |
| Graduated/Attended College | 52.3% | 54.6% | 53.0% |
| Graduated High School | 31.8% | 31.9% | 33.1% |
| **Household Income** | | | |
| Under $10,000 | 6.1% | 5.6% | 5.1% |
| $10,000 - $29,999 | 21.4% | 20.4% | 21.4% |
| $30,000 - $49,999 | 20.4% | 20.1% | 19.2% |
| $50,000 - $74,999 | 20.0% | 19.9% | 19.3% |
| $75,000 + | 32.1% | 33.9% | 35.0% |
| **Ethnicity** | | | |
| Caucasian | 77.7% | 82.3% | 84.5% |
| African-American | 11.5% | 9.9% | 9.4% |
| Hispanic | 12.5% | 8.9% | 6.9% |
| Asian | 2.9% | 2.0% | 1.7% |
| **Location[2]** | | | |
| A & B Counties | 71.2% | 69.9% | 69.4% |
| C & D Counties | 28.8% | 30.1% | 30.6% |

---

[2] A Counties, as defined by A.C. Nielsen Company, are all counties belonging to the 25 largest metropolitan areas. These metro areas correspond to the MSA (Metropolitan Statistical Area) and include the largest cities and consolidated areas in the United States. B Counties, as defined by A.C. Nielsen Company, are all counties not included under A that are either over 150,000 population or in a metro area over 150,000 population according to the latest census. C Counties, as defined by A.C. Nielsen Company, are all counties not included under A or B that either have over 40,000 population or are in a metropolitan area of over 40,000 population according to the late census. D Counties are, essentially, rural counties in the Nielsen classification system of A, B, C, D counties.

# Paid Media Program

As indicated, direct notice will be provided to the identifiable TPPs who are members of Private Payor Class. To supplement the TPP direct notice, ad placements in trade publications directed to TPPs will be used.

To reach unidentifiable Class Members, KNC recommends the use of measurable paid media. Paid media advertising is guaranteed to appear, allowing for control of the content, timing and positioning of the message, making it an invaluable part of any notice campaign. Newspapers, consumer magazines, television, radio and the Internet, among other sources, offer paid media opportunities.

In considering which media to use for this case, KNC evaluated the cost-effectiveness, exposure opportunities and reach potential of each media type. Television was not selected due to its high cost. Radio is a frequency medium best used locally. Print media was selected because of its widespread use, and its value as a credible and tangible information source that allows for extended body copy. As Internet usage increases, banner advertising on appropriate sites can provide cost-effective additional Notice exposures to supplement other types of media.

In choosing which placements would be best for this case, KNC reviewed all available consumer publications for penetration of the target audience. Consumer magazines and newspaper supplements offer efficient and cost-effective vehicles for reaching all demographic segments of the population.

Given the broad scope of the Class in this notice program and the demographics and media habits of the target audiences, newspaper supplements, consumer magazines, national newspapers and the Internet are therefore recommended.

# Newspaper Supplements

*Parade* and *USA Weekend*, inserts known as newspaper supplements, are carried in weekend or weekly editions of 985 newspapers reaching every media major market in the country (eight newspapers carry more than one supplement). These magazines, published on newsprint, contain articles written for broad, general appeal and they encourage readership through brevity. Issues are typically less than 30 pages. For this Notice Program, newspaper supplements are recommended because of their broad geographic and demographic reach capability. They provide coverage in all 50 states and the District of Columbia. (See Exhibit 3.)

KNC recommends the following activity:



> ➢ A two-fifth-page black-and-white ad (5-5/8" x 7-1/4") will be placed once in *Parade*, with an estimated circulation of 32,400,000.

> ➢ *Parade* is carried in the Sunday edition of 382 daily newspapers and is the highest circulating magazine in the world. Carrier newspapers serve major urban and suburban markets in the U.S.

> ➢ The average issue of *Parade* is read by 41.4% of Drug Consumers Adult 35+ and 38.4% of All Drug Consumers.

---



> ➢ A "spot color" digest-page ad (5-5/8" x 7-3/8") will be placed once in *USA Weekend*, with an estimated circulation of 23,400,000.

> ➢ *USA Weekend* is inserted in the weekend edition of 611 daily newspapers in major markets complementing the U.S. markets served by *Parade*.

> ➢ The average issue of *USA Weekend* is read by 27.4% of Drug Consumers Adults 35+ and 25.6% of All Drug Consumers.

---



➢ A "spot color" full-page ad (8-3/4" X 10-1/2") will be placed once in *Vista*, with an estimated circulation of 1,000,000.
➢ *Vista* is a bi-lingual monthly magazine for Hispanics inserted in the weekday edition of 34 daily newspapers in major Hispanic markets.

# Consumer Magazines

Thousands of consumer magazines offer national advertising opportunities. Most adults read one or more magazines during an average month and nearly three out of five adults read or look into a magazine daily. Additionally, magazines published weekly quickly accumulate readership and provide timely and efficient notice to readers. The specific consumer magazines listed below were chosen because collectively they provide excellent reach of consumers.

KNC recommends the following activity:



➢ A "spot color" two-thirds-page ad (4-1/2" x 10") will be placed once in *Better Homes and Gardens,* with a circulation of 7,600,000.

➢ *Better Homes and Gardens* is published monthly and is the largest-circulation home service magazine, featuring a wide-range of home and family subjects such as food and decorating.

➢ The average issue of *Better Homes and Gardens* is read by 24.3% of Drug Consumers Adults 35+ and 22.2% of All Drug Consumers.

———————————————



➢ A "spot color" two-thirds-page ad (4-5/8" x 9-5/8") will be placed once in *Ebony* with a circulation of 1,450,000.

➢ *Ebony* is published monthly and is a African American-oriented, general interest magazine. Editorial content features education, history, politics, culture and business topics among others.

➢ Adult 35+ Drug Consumers make up 27.1% of all *Ebony* readers and 38.5% of *Ebony* readers are Drug Consumers 18+.

———————————————

© 2007 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*
*D.C. 37 Health & Security Plan v. Medi-Span*



➢ A two-thirds-page black-and-white ad (4-5/8" x 10") will be placed three times in *Newsweek*, with a circulation of 3,100,000.

➢ *Newsweek* is published weekly and edited to report on national and worldwide developments with news, commentary and analysis.

➢ Of *Newsweek's* total circulation, Adults 35+ Presciption Drug Users make up 35.7% while all adult Prescription Drug Users make up 44.7%.

––––––––––––––––––––



➢ A two-thirds-page black-and-white ad (4-3/4"" x 10") will be placed once in *Parents Magazine* with a circulation of 2,200,000.

➢ *Parents Magazine* is published monthly and has an editorial content providing guidance and information to mothers of young children.

➢ Of *Parents'* total circulation, Adults 35+ Presciption Drug Users make up 20.1% while all adult Prescription Drug Users make up 41.9%.

––––––––––––––––––––

➢ A full-page black-and-white ad (7" x 10") will be placed three times in *People*, with an estimated circulation of 3,450,000.

➢ *People* covers contemporary personalities in entertainment, politics, business and other current events.

➢ Approximately 71% of People readers are female and approximately 71% are age 18-49.

➢ The average issue of *People* is passed-along to 10.9 or more different people.

––––––––––––––––––––

_New England Carpenters Health Benefits Fund v. First DataBank, Inc._
_D.C. 37 Health & Security Plan v. Medi-Span_



➢ A "spot color" two-thirds-page ad (4-5/8" x 10") will be placed two times in _US News & World Report,_ with an estimated circulation of 2,000,000.

➢ _US News & World Report_ is a weekly news magazine covering national and international people, places, and events.

➢ Of _U.S. World & News Report's_ total circulation, Adults 35+ Prescription Drug Users make up 35% while all adult Prescription Drug Users make up 42.7%.

# National Newspapers

National newspapers serve as a timely source of news & information for readers throughout the country. *The Wall Street Journal* and *The New York Times* were selected to provide additional national reach.

KNC recommends the following activity:

**THE WALL STREET JOURNAL.**

➢ A one-half-page black-and-white ad (5.35" x 21") will be placed once in *The Wall Street Journal*, with an estimated circulation of 1,713,413.

➢ An estimated 1,370,000 of All Drug Consumers and 1,145,000 of Drug Consumers Adults 35 + read *The Wall Street Journal*.

———————————

# The New York Times

➢ A one-half-page black-and-white ad (6-7/16" x 21") will be placed once in *The New York Times*, with an estimated circulation of 1,087,000.

➢ An estimated 1,880,000 of All Drug Consumers and 1,436,000 of Drug Consumers Adults 35 + read *The New York Times*.

———————————

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*
*D.C. 37 Health & Security Plan v. Medi-Span*

# Internet Advertising

According to MRI, over 80% of Adults 18+ have access to the Internet whether at home, work, a library, school or other location. 65.3% of Adults 18+ Rx users accessed the Internet in the past 30 days and 55.4% access the Internet one or more times per day. Internet advertising delivers an immediate message and allows the viewer of an advertisement to instantly link to a Web site for further information.

Therefore, KNC recommends using Internet advertising to provide additional notice opportunities beyond the broad-reaching print program to Class Members. See Exhibit 4 for sample banner advertisements.

The MRI studies indicate that email and news and information sties will have the best coverage of Rx Users through the Internet. In addition, Rx Users have a high propensity for visiting sites related to health and fitness. Therefore, Internet impressions will be directed to them through channels featuring those topics as well as across a wide range of Web sites enabling maximum exposure opportunities to reach the broad audience of Adults 18+. Delivery of Internet impressions to specific sites and categories within sites are subject to availability at time of buy.

KNC will manage impression delivery to maximize both reach and frequency within throughout the campaign.

KNC recommends the following Web properties:



➢ 24/7 Real Media is a network that represents over 900 Web sites including sites related to health, fitness and news and information, some of which are proprietary and confidential. A partial list of Web sites in the 24/7 Real Media Network is attached as Exhibit 5.

➢ Banner advertisements measuring 728 x 90 pixels and 350 x 350 pixels will appear, on a rotating basis, on Web sites that are part of the 24/7 Real Media Network delivering an estimated 76,000,000 gross impressions.[6]

➢ The banner advertisements will appear for a 30 day period, or until the gross impressions are delivered.

---

[6] Gross Impressions are the total number of times a media vehicle containing the notice is seen. This is a duplicated figure, as some viewers will see several media vehicles that contain the notice.

© 2007 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*
*D.C. 37 Health & Security Plan v. Medi-Span*



- ➤ AOL (America Online) Media Networks are a leading portfolio of Web sites attracting large and engaged audiences on the Web.

- ➤ Banner advertisements measuring 728 x 90 pixels and 350 x 350 pixels will appear, on a rotating basis, on Web sites that are part of the AOL health, fitness, personal finance and email network for a total estimated 103,500,000 gross impressions. [6]

- ➤ The banner advertisements will appear for a 3-week timeframe or until all gross impressions are delivered.

———————————————



- ➤ Yahoo! is a leading Internet brand and a global online network of integrated services providing users with entertainment and other quality content. Advertising will target Adults 18+

- ➤ Banner advertisements measuring 728 x 90 pixels and 350 x 350 pixels will appear, on a rotating basis, on various Yahoo! Email pages, for a total estimated 20,000,000 gross impressions. [6]

- ➤ The banner advertisements will appear for a 3-week period or until all gross impressions are delivered.

———————————————

———————————————

[6] Gross Impressions are the total number of times a media vehicle containing the notice is seen. This is a duplicated figure, as some viewers will see several media vehicles that contain the notice.

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*
*D.C. 37 Health & Security Plan v. Medi-Span*

# Trade Publications

Selected trade publications will be used to supplement the direct mail notice to TPPs as follows:



- ➢ A full-page black-and-white ad (7" x 10") placed once in *National Underwriter Life & Health*, with an estimated circulation of 50,195.

- ➢ With a pass-along rate of 1.7 readers per copy, approximately 85,333 agents and brokers read the publication weekly. This includes 20,700 insurance company executives.

- ➢ *National Underwriter Life & Health* is the only weekly magazine serving the life, health and financial services market. It contains news and feature articles to help agents better understand products and markets, and insurance company executives identify new business opportunities. Topics covered include agency management, taxes, legislation, executive benefits, retirement planning and profitable sales ideas.

———————————————

# HRMagazine

- ➢ A full-page black-and-white ad (8" x 10-7/8") placed once in *HR Magazine*, with an estimated circulation of 213,140, and a readership of 547,478.

- ➢ *HR Magazine* is the official publication of the Society for Human Resource Management. It is written for human resources professionals and executives and to further the professional aims of both the Society and the human resource management profession. The publication features new approaches and innovative best practices in all areas of HR management and informs on new models of ways of thinking. It is designed as a forum for trends and legal issues as well as new concepts used by human resources management professionals. It has the highest readership of any human resources publication.

© 2007 Kinsella/Novak Communications, LLC
Proprietary and Confidential.

# Print Readership

Readership includes both primary readers and pass-along readers. Primary readers purchased a publication or are members of a household where the publication was purchased. Pass-along readers are those who read the publication outside the home, in places such as a doctor's or a dentist's office. The table below indicates the number of readers in each of the target audiences of an average issue of the magazine:

| PUBLICATION | INSERTIONS | ADULTS 18+ | DRUG CONSUMERS ADULTS 35+ | ALL DRUG CONSUMERS |
|---|---|---|---|---|
| *Better Homes and* | 1 | 39,137,000 | 16,539,000 | 19,964,000 |
| *Ebony* | 1 | 10,876,000 | 2,946,000 | 4,189,000 |
| *Newsweek* | 3 | 19,624,000 | 7,012,000 | 8,764,000 |
| *New York Times* | 1 | 4,620,000 | 1,436,000 | 1,880,000 |
| *Parade Carrier* | 1 | 76,662,000 | 28,247,000 | 34,511,000 |
| *Parents* | 1 | 15,395,000 | 3,089,000 | 6,456,000 |
| *People* | 3 | 40,217,000 | 12,664,000 | 17,993,000 |
| *US News & World Report* | 2 | 11,130,000 | 3,890,000 | 4,749,000 |
| *USA Weekend Carrier* | 1 | 50,756,000 | 18,666,000 | 22,951,000 |
| *Vista** | 1 | n/a | n/a | n/a |
| *Wall Street Journal* | 1 | 3,260,000 | 1,145,000 | 1,370,000 |

**Vista* is not measured by MRI. Therefore, its contribution to the overall reach of the media is not calculated.

# National Media Delivery

Print media can be measured for its reach of specific target audiences.  In this case, the primary targets are Adults 35+ and Adults 18+ who have used any branded or generic prescription drugs in the past 12 months ("A35+ Rx Users"; "Adults 18+ RX Users") as well as all Adults ("Adults 18+").  The Internet can only be measured against Adults 18+ and cannot be measured against the primary targets.  Therefore, KNC examined the reach of the print media against all three targets and the reach of the print media in combination with the Internet against Adults 18+ only.

The reaches of the print media alone are as follows:

- 80% of Adult 35+ Rx Users will be reached with an average frequency of exposure of 2.5 times.

- 78.7% of Adults 18+ Rx Users will be reached with an average frequency of exposure of 2.6 times.

- 74.8% Adults 18+ will be reached with an average frequency of exposure of 2.5 times.

The reach of the Internet and print media against the only target that is measurable indicates that:

- 84.8% of Adults 18+ will be reached with an average frequency of exposure of 2.7 times.

Although the combined Internet and print reach of the primary targets is not specifically measured, it can be postulated with certainty that if the combined Internet and print reach of Adults 18+ increases, the reach of Adults 35+ Rx Users and Adults 18+Rx Users will also increase.  This is because the primary targets are similar to Adults 18+ in their use of the Internet.  Therefore, although not calculable, it is certain that the Internet and print media are delivering higher reaches against the primary targets than the reach against Adults 18+ only.

(The reach of Vista is not included in these estimates because it is not measured by MRI.)

The proposed Notice Program Schedule is attached as Exhibit 6.

# Notice Design

## Print Design

The plain language Publication Notices, specifically tailored to either the TPPs or consumer Class Members, have been designed to alert Class Members to the Proposed Class Action Settlement through the use of a bold headline.  This headline will enable Class Members to quickly determine if they are potentially affected by the Proposed Class Action Settlements.  Plain language text provides important information regarding the subject of the Proposed Class Action Settlement, the Class definitions and the legal rights available to Class Members.

Each advertisement will prominently feature a toll-free number, Web site and mailing addresses for Class Members to obtain the Long Form Notice and other information.  The design of the Publication Notice takes into account empirical research developed over the past 30 years about how people read and assimilate information.

Recent revisions to Rule 23(c)(2) of the Federal Rules of Civil Procedure require class action notices to be written in "plain, easily understood language."  KNC drafts and places plain language ads fully compliant with this revision.  The firm maintains a strong commitment to adhering to the plain language requirement while drawing on its experience and expertise to draft notices that effectively communicate with class members.

Full-page or two-thirds-page ads will run in the consumer magazines.  Two-fifths-page ads will be used in the newspaper supplements, half-page-ads will run in the newspapers and full-page ads will be used in the trade publications.

Additionally, "spot color" ads will be used in *Better Homes and Gardens*, *Ebony*, *US News & World Report* and *USA Weekend* to draw more attention to the Publication Notice.

The Publication Notices are attached as follows:
>    Exhibit 7 – Consumer Publication Notice
>    Exhibit 8 – National Newspaper Publication Notice
>    Exhibit 9 – Third-Party Payor Publication Notice

Furthermore, the Long Form Notice was revised to create both a TPP Long Form and a Consumer Long Form.  The TPP Long Form has been slightly modified for readability. The Consumer Long Form was completely revised to ensure that each section is simplified to allow the average consumer to understand all aspects of the Settlements. (See Exhibits 1 and 2.)

# Third-Party Notice

To reach FDB and Medi-Span Class Members, KNC will distribute notice materials to third-party consumer advocacy organizations.

## Consumer Advocacy Organizations

Notice will be sent to national and state consumer organizations that advocate on behalf of consumers and issues that affect them.  Notice will consist of a cover letter introducing the Settlements and a copy of the Consumer Long Form Notice.  As of this date, 41 organizations have been identified.  Additional research will be undertaken to expand this list, if possible (See Exhibit 10).

# Earned Media

The thrust of the earned media program is to amplify the notice to Class Members through the use of free media. The earned media portion of this notice program will augment the paid media plan developed to reach the Class. The third-party endorsement from reliable sources such as the news media can add immeasurable value to outreach efforts.

Outreach to print and electronic media will focus primarily on key daily newspapers, wire services, newspaper bureaus nationally and major television and radio outlets. The earned media program will be:

> ➤ A press release will be distributed on US Newswire's Full National Circuit reaching over 2,000 media outlets. The press release will highlight the toll-free telephone number and Web site address that Class Members can call or visit for complete information.

# Internet Notice

The Internet will be used to notify Class Members of the Settlements in multiple ways. Internet notice serves to enhance the overall Notice Plan as it provides easy access by a large audience to the information about the Settlements.

## Informational Website

An informational interactive Web site is a critical component of the Notice campaign. The URL is a constant information source instantly accessible to millions. The informational Web site utilizes the Internet's ability to serve as a key distribution channel and customer service bureau. Combining clean site design, consistent site navigation clues and built-in flexibility, the Web site provides Class Members with easy access to the details of the Proposed Class Action Settlement.

### Clean Design

The site is designed for ease of use and comprehension. Web pages on the site are simple, containing words, icons, documents and images.

A directory located in a column on the left-hand side of the page provides links to the information available on the Web site. These can include "Court Documents," "Long Form Notice," and "Questions/Links." The Web site can also feature a "Frequently Asked Questions" section answering commonly asked questions. If necessary, it will also provide a toll-free number for individuals seeking additional information and the address or email of Class Counsel.

### Consistent Navigation Cues

Wherever the user goes from the homepage to another part of the site, links to the homepage and subsections remain on the left side of all pages, while the case title and cite remains fixed on top.

### Built-In Flexibility

Though simply designed, the Web site is not restrictive. The site's basic architecture enables updates and new features to be added quickly.

## Search Engine Optimization

Tools are available on the Internet to increase the ability of Web users to find Web sites by name and content. KNC will use "INeedHits.com" Search Engine Optimization ("SEO") services to promote the FDB/Medi-Span Settlements' informational Web site. INeedHits.com has been a leader in the SEO industry for 10 years. Their services will ensure that the FDB/Medi-Span Web address and content will be included in leading Web search engines and directories and indexed for maximum effectiveness when users search for information about the Settlements.

The optimization plan includes:

- *Keyword analysis*

  Analyzes the Web site for appropriate and effective keywords to enable Web users to easily find the Settlement URL.  INeedHits.com analyzes the Web page content and picks out the best key words to direct users to the URL.

- *Code Optimization*

  Provides optimized code for insertion into each Web page's unseen HTML headers for search engines to read and index.  It allows the search engine to index the page more directly providing more accurate search results.

- *Premium Submit*

  The URL is manually submitted to the top search engines and automatically submitted to 300 other search engines and directories.  This ensures that the Web site address is listed as quickly as possible in the search index.

- *Submit Ongoing*

  The URL is periodically resubmitted to search engines for maximum ongoing exposure.

- *Paid Inclusion*

  Currently, Yahoo! is the only engine that offers paid and guaranteed URL inclusion in their search index, usually within 4 days of submission by INeedHits.com.  This paid inclusion guarantees that the URL will be added to Yahoo's index as quickly as possible. Yahoo's directory network includes AltaVista, Excite, alltheweb, and others.

# Toll-Free Telephone Support

A toll-free interactive voice response system (IVR) will be established to service Class Members calling as a result of seeing the published notice. Callers requesting the *Notice of Proposed Class Action Settlement* will be prompted to input the telephone number of the residence where they would like to receive the Notice.

The system uses an address look-up database to locate the corresponding address of the resident. A portion of the address will be read back to the caller for address verification. For successful look-ups, the caller will be asked to speak the Class Member's full name and to spell the last name. If the look-up fails, is incorrect, or the call is placed from a rotary dial telephone, the caller will be prompted to speak the potential Class Member's name, address and telephone number.

The IVR system will provide an option for callers to speak to a live operator.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

NEW ENGLAND CARPENTERS HEALTH
BENEFITS FUND, PIRELLI ARMSTRONG
RETIREE MEDICAL BENEFITS TRUST;
TEAMSTERS HEALTH & WELFARE FUND
OF PHILADELPHIA AND VICINITY;
PHILADELPHIA FEDERATION OF
TEACHERS HEALTH AND WELFARE
FUND, and DISTRICT 37 HEALTH AND
SECURITY FUND,

C.A. No. 1:05-CV-11148-PBS

                    Plaintiffs,

    v.

FIRST DATABANK, INC., a Missouri
corporation; and McKESSON
CORPORATION, a Delaware corporation,

                    Defendants.

---

## [PROPOSED, UPDATED] ORDER DIRECTING NOTICE TO THE CLASS AND SCHEDULING A FAIRNESS HEARING

WHEREAS, this matter has come before the Court pursuant to Class Counsel and FDB's Joint Motion for Preliminary Approval of Proposed Settlement, Certification of Class for Purposes of Settlement Only, and Approval of Form and Manner of Notice filed November 1, 2006 (the "FDB Settlement Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of the parties for purposes of settlement and that venue is proper in this district; and

WHEREAS, this Court has issued prior orders dated November 14, 2006, November 22, 2006 and June 6, 2007 relating to FDB Settlement Motion:

**IT IS HEREBY ORDERED THAT**:

    **I.**      **Approval of Notice**

The Court finds that direct Notice to the members of the class that are consumers is not feasible given the number, lack of available lists, and the costs of such notice in relation to the nature and estimated range of amounts of the claims of class members who are consumers. Therefore, the Court directs that Notice be provided to the Class in accord with Rule 23(d)(2) and 23(d)(5) and the requirements of due process. Therefore, the Court approves the form and content of the Joint FDB/Medi-Span Settlement Notice Program for mailing and the abbreviated Notice for publication, substantially in the forms attached to the Declaration of Katherine Kinsella dated August 6, 2007, as satisfying the requirements of Rule 23 and due process for the entire putative class.

## II.    Approval of Notice Plan

The Court directs that Kinsella Communications be confirmed to act as the Notice Agent (as defined in the Settlement Agreement and Release) and directs the Notice Agent to disseminate the Notice as set forth in the Joint FDB/Medi-Span Settlement Notice Program, which is designed to achieve a reasonable reach and frequency commensurate with the reach and frequency sought in other pharmaceutical pricing litigation and which satisfies the requirements of Rule 23 and due process:

(a)    Publication of the Form of Notice for Publication on dates and in publications substantially as set forth in the Exhibits to the Declaration of Katherine Kinsella dated August 6, 2007, based on Court approval by August 15, 2007;

(b)    Distribution by direct mail of the Form of Notice for Mailing to all TPP Class Members that can be identified by reasonable means or who have requested a copy, which mailing shall be placed in the mail no later than September 10, 2007;

(c)    Distribution by direct mail of the Form of Notice for Mailing to the Attorney General of each State of the United States;

(d)   Development and management of a toll free number with an automated system providing information about the Proposed Settlement, with the ability to request copies of the Notice or the PSA, during the period from September 10, 2007 until the Final Approval; and

(e)   Development and management of a website to provide information and permit the review and downloading of the Notice, PSA and exhibits, during the period from September 10, 2007 until Final Approval.

### III.   <u>Fairness Hearing</u>

The Court directs that a hearing be scheduled for January 18, 2008, on final settlement approval (the "Fairness Hearing") before this Court, at the, United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to consider, *inter alia*, the following: (a) whether the Class should be certified, for settlement purposes only; and (b) the fairness, reasonableness and adequacy of the settlement. Objectors to the Proposed Settlement may be heard at the Fairness Hearing, however, no objector shall be heard and no papers or briefs submitted will be accepted or considered by the Court unless on or before December 21, 2007, any such objector: (1) has filed with the Clerk of the Court <u>in writing</u> a notice of any such objector's intention to appear personally, or, if such objector intends to appear by counsel, such counsel files a notice of appearance; (2) such objector personally or by counsel, to any of the applications before the Court, submits a written statement describing in full the basis for such objector's opposition, and attaches any supporting documentation and a list of any and all witnesses or experts whom such objector shall present to the Court; and (3) has served, on or before   December 21, 2007, copies of such notice(s), statement(s), documentation, and list(s) together with copies of any other papers or brief(s) that objector files with the Court or wishes the Court to consider at the Fairness Hearing, upon: (i) Thomas M. Sobol, Hagens Berman Sobol Shapiro LLP, One Main St., 4th

Floor, Cambridge, MA 02142, Class Counsel; (ii) Steve W. Berman, Hagens Berman

Sobol Shapiro LLP, 1301 Fifth Avenue, Suite 2900, Seattle, WA 98101, Class Counsel;

(iii) Jeffrey L. Kodroff, Spector, Roseman & Kodroff, P.C., 1818 Market Street, Suite

2500, Philadelphia, PA 19103, Class Counsel; and (iv) Sheila L. Birnbaum, Skadden,

Arps, Slate, Meagher, & Flom LLP, 4 Times Square, New York, NY 10036, Counsel for

First DataBank, Inc.

### IV.    Request For Exclusion From the Class

The Court further directs that any putative Class member wishing to exclude himself,

herself or itself from the proposed Class, must sign a written request to be excluded

containing the information set forth in the Notice, and any such exclusion request must be

mailed to the Notice Agent at the following address FDB/Medi-Span Litigation

Administrator c/o Complete Claims Solutions LLC, West Palm Beach, Florida 33416 and

postmarked (no metered postmarks) on or before December 21, 2007.

**SO ORDERED**.

DATED: Boston, Massachusetts
This ___ day of _____, 2007

_____
Patti B. Saris, Judge
United States District Court

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DISTRICT COUNCIL 37 HEALTH AND
SECURITY PLAN, on behalf of itself and all
others similarly situated,

Plaintiff,

v.

MEDI-SPAN, a division of WOLTERS
KLUWER HEALTH, INC.

Defendant.

Civil Action No. 07-CV-10988

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF THE
MEDI-SPAN SETTLEMENT, CERTIFYING CLASS FOR PURPOSES OF
SETTLEMENT ONLY, DIRECTING NOTICE TO THE CLASS AND
SCHEDULING A FAIRNESS HEARING**

WHEREAS, this matter has come before the Court pursuant to Class Counsel and
Medi-Span's Joint Motion for Preliminary Approval of Proposed Settlement,
Certification of Class for Purposes of Settlement Only, and Approval of Form and
Manner of Notice filed May, 25, 2007 (the "Medi-Span Joint Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of
the parties for purposes of settlement pursuant and that venue is proper in this district:

**IT IS HEREBY ORDERED THAT**:

I.      **Preliminary Approval of the Settlement Agreement
        and Certification of Settlement Classes**

1.      The terms of the Settlement Agreement and Release between plaintiffs and
defendant Medi-Span, dated May 22, 2007, including all exhibits thereto as filed on May
25, 2007 (the "Proposed Settlement Agreement" or "Proposed Settlement") are

preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below.

2.          The Court finds, on a preliminary basis for settlement purposes only, that the Rule 23 factors are present and that certification of the Class, as defined and set forth below, is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) and 23(b)(2):

"Class" or "Private Payor Class" is defined as follows:

All individual persons or entities who, during the Class Period, made purchases and/or paid, whether directly, indirectly, or by reimbursement, for all or part of the purchase price of prescription pharmaceuticals, including, but not limited to, those pharmaceuticals listed on the attached Exhibit A, where any or all of the purchase price, reimbursement or payment amount was based in any part on the Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, in whole or part, was based on a FDB wholesale survey. Excluded from the class are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments; the States of the United States and their respective officers, agents, agencies and departments; and all other local governments and their officers, agents, agencies, and departments.

This is to clarify further that those entities that own or operate businesses referred to commonly as pharmacy benefit managers ("PBMs") and who as part of their business operation contract with ultimate Third Party Payors of a prescription pharmaceutical benefit to perform certain services in the administration and management of that prescription pharmaceutical benefit for those ultimate Third-Party Payors are not class members under the Private Payor Class definition of this settlement. The class includes the ultimate Third Party Payors providing the prescription pharmaceutical benefit and not the PBMs with which those Third Party Payors contract with to administer or manage that prescription benefit on behalf of the class members, unless such PBMs are the fiduciary of the Third Party Payors or by contract assumed, in whole or in part, the insurance risk of that prescription pharmaceutical benefit during the Class Period.

The Class Period is from December 19, 2001 through the date the Settlement Court enters a Final Order and Judgment in the Class Action.

## II       Class Representative

The Court preliminarily appoints the following as class representative:  District Council 37 Health and Security Plan.

## III.       Approval of Notice

The Court finds that direct Notice to the members of the class that are consumers is not feasible given the number, lack of available lists, and the costs of such notice in relation to the nature and estimated range of amounts of the claims of class members who are consumers.  Therefore, the Court directs that Notice be provided to the Class in accord with Rule 23(d)(2) and 23(d)(5) and the requirements of due process.  Therefore, the Court approves the form and content of the Joint FDB/Medi-Span Settlement Notice Program for mailing and the abbreviated Notice for publication, substantially in the forms attached to the Declaration of Katherine Kinsella dated August 6, 2007, as satisfying the requirements of Rule 23 and due process for the entire putative class.

## IV.       Approval of Notice Plan

The Court directs that Kinsella Communications be confirmed to act as the Notice Agent (as defined in the Settlement Agreement and Release) and directs the Notice Agent to disseminate the Notice as set forth in the Joint FDB/Medi-Span Settlement Notice Program, which is designed to achieve a reasonable reach and frequency commensurate with the reach and frequency sought in other pharmaceutical pricing litigation and which satisfies the requirements of Rule 23 and due process:

(a)     Publication of the Form of Notice for Publication on dates and in publications substantially as set forth in the Exhibits to the Declaration of Katherine Kinsella dated August 6, 2007 based on Court approval by August 15, 2007;

(b)     Distribution by direct mail of the Form of Notice for Mailing to all TPP Class Members that can be identified by reasonable means or who have requested a copy, which mailing shall be placed in the mail no later than September 10, 2007;

(c)     Distribution by direct mail of the Form of Notice for Mailing to the Attorney General of each State of the United States;

(d)     Development and management of a toll free number with an automated system providing information about the Proposed Settlement, with the ability to request copies of the Notice or the PSA, during the period from September 10, 2007 until the Final Approval; and

(e)     Development and management of a website to provide information and permit the review and downloading of the Notice, PSA and exhibits, during the period from September 10, 2007 until Final Approval.


**V.     Appointment of Class Counsel**

The Court preliminarily finds that the following counsel fairly and adequately represent

the interests of the putative Class and hereby appoints the following law firms as Class

Counsel pursuant to Rule 23(g): Hagens Berman Sobol Shapiro LLP; Spector Roseman

& Kodroff, P.C.; Wexler Toriseva Wallace LLP; and Edelson & Associates, LLC as

Class Counsel for the putative Class.


**VI.     Fairness Hearing**

The Court directs that a hearing be scheduled for January 18, 2008 on final settlement

approval (the "Fairness Hearing") before this Court, at the, United States District Court

for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to

consider, *inter alia*, the following: (a) whether the Class should be certified, for

settlement purposes only; and (b) the fairness, reasonableness and adequacy of the

4

settlement. Objectors to the Proposed Settlement may be heard at the Fairness Hearing, however, no objector shall be heard and no papers or briefs submitted will be accepted or considered by the Court unless on or before December 21, 2007, any such objector: (1) has filed with the Clerk of the Court in writing a notice of any such objector's intention to appear personally, or, if such objector intends to appear by counsel, such counsel files a notice of appearance; (2) such objector personally or by counsel, to any of the applications before the Court, submits a written statement describing in full the basis for such objector's opposition, and attaches any supporting documentation and a list of any and all witnesses or experts whom such objector shall present to the Court; and (3) has served, on or before December 21, 2007, copies of such notice(s), statement(s), documentation, and list(s) together with copies of any other papers or brief(s) that objector files with the Court or wishes the Court to consider at the Fairness Hearing, upon: (i) Thomas M. Sobol, Hagens Berman Sobol Shapiro LLP, One Main St., 4th Floor, Cambridge, MA 02142, Class Counsel, (ii) Steve W. Berman, Hagens Berman Sobol Shapiro LLP, 1301 Fifth Avenue, Suite 2900, Seattle, WA 98101, Class Counsel, (iii) Jeffrey L. Kodroff, Spector, Roseman & Kodroff, P.C., 1818 Market Street, Suite 2500, Philadelphia, PA 19103, Class Counsel, and (iv) Sheldon T. Zenner, Esq., Katten Muchin Roseman LLP, 525 West Monroe Street, Chicago, IL 60661-3693, Counsel for Medi-Span.

### VII.    Request For Exclusion From the Class

The Court further directs that any putative Class member wishing to exclude himself, herself or itself from the proposed Class, must sign a written request to be excluded containing the information set forth in the Notice, and any such exclusion request must be

mailed to the Notice Agent at the following address FDB/Medi-Span Litigation
Administrator c/o Complete Claims Solutions LLC, West Palm Beach, Florida 33416 and
postmarked (no metered postmarks) on or before December 21, 2007.

**SO ORDERED**.

DATED: Boston, Massachusetts
This ____ day of _____, 2007

_____
Patti B. Saris, Judge
United States District Court