UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; MAUREEN COWIE and BERNARD GORTER,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | Civil Action: 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**DECLARATION OF DARRELL PHILPOT OF IMS HEALTH INCORPORATED**

## DECLARATION OF DARRELL PHILPOT, OF IMS HEALTH INCORPORATED

I, Darrell Philpot, of full age, do hereby certify and say:

  1. I am a Senior Director, Advanced Analytics for IMS Health Incorporated ("IMS"). I have been employed by IMS for more than thirteen years.

  2. I have personal knowledge of the information provided herein.

IMS BACKGROUND

  3. IMS is the world's leading provider of information, research and analysis to the health care industry, with data collection and reporting activities in more than 100 countries and a strong 50-year reputation for the responsible handling of sensitive health and commercial information. IMS tracks and analyzes information relating to all phases of the pharmaceutical product life cycle, helping companies within the pharmaceutical industry with activities ranging from drug development to product management.

  4. In the United States, IMS provides many services, including its National Prescription Audit (NPA). NPA is a service that measures the dispensing of prescriptions by retail, mail service, and/or long term care pharmacies in the United States.  A sample panel of stores among chain pharmacies, independent pharmacies, mass merchandise and discount houses, food store pharmacies, mail service, and long term care pharmacies supply the prescription data to IMS. From this panel, IMS collects information on every new and refilled prescription, including dosage strength, for every day of the month.  Based on the information provided to IMS, the dispensing of prescriptions by the universe of pharmacies is then projected from the sample.  IMS uses this data to measure the number and costs of those products.

  5. NPA includes a field for estimates of the prices at which pharmacies are reimbursed for dispensing drugs to consumers.  These estimates are derived from prices reported by the pharmacy panel.  The pharmacy panel is asked to report the amounts they directly receive from

consumers and public and private payors for dispensing prescription drugs. For transactions where the pharmacy receives reimbursement from a PBM, the pharmacy reports what the pharmacy received from the PBM, and IMS records this amount as a payment from a private payor. IMS data does not capture any information on the amounts paid by a third party payor to a PBM, and these payments are not reflected in data provided through the NPA or any other service offered by IMS.

6.    Over the course of analyzing the data reported by pharmacies, IMS has discovered that at least since 2001 or 2002, approximately 30% of responders reported to IMS undiscounted AWPs (or some price other than what was requested) for the drugs dispensed, rather than the actual reimbursements they were paid. The pharmacy payments included in IMS's syndicated products and services, including NPA, are based on the data reported by the pharmacy panel.

7.    IMS does not support the use of its data in litigation. Using IMS's syndicated information services in litigation is problematic because IMS information applies sampling, editing, bridging, projection and production techniques that are susceptible to error and variance that cannot be easily quantified, while the data overall and in the aggregate are very valuable and useful when used for its intended purpose (e.g., marketing, research).

I certify that the foregoing statements made by me are true. I understand that if they are willfully false, I am subject to punishment.

**Darrell Philpot**
October 15, 2007

Commonwealth of Pennsylvania    )
County of Montgomery            )

On this the 15-th day of October, 2007, before me a notary public, the undersigned officer, personally appeared Darrell Philpot, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.
In witness whereof, I hereunto set my hand and official seal.

NOTARIAL SEAL
KRISTEN J FURTAK
Notary Public
PLYMOUTH TWP. MONTGOMERY COUNTY
My Commission Expires Jan 22, 2011

2