UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN, | Civil Action: 1:05-CV-11148-PBS |
| | Judge Patti B. Saris |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF McKESSON CORPORATION'S
MOTION TO DISMISS THE RICO CLAIM OF THE PROPOSED U&C CLASS AND
MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

THE NEW ALLEGATIONS ..................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

I.  PLAINTIFFS DO NOT ALLEGE THAT THE RICO VIOLATION CAUSED THE INJURY ALLEGEDLY INCURRED BY THE U&C CLASS. ................................ 5

    A.  Plaintiffs Have Not Pleaded With Particularity That Defendants Were The "But For" Cause Of The U&C Class's Injuries. ...................................................... 6

    B.  Plaintiffs Have Not Pleaded Proximate Cause. ....................................................... 8

        1.  The U&C Class Does Not Meet The RICO Proximate Cause Requirement Because Plaintiffs Do Not Allege That The Class Was Injured By Its Claimed RICO Violation. ............................................. 8

        2.  The *Holmes* Factors Further Confirm That Any Injury To The U&C Class Was Not Directly Caused By The Predicate Acts Alleged. ................................................................................................ 13

II.  PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A RICO CLAIM ON BEHALF OF ANY OF THE THREE CLASSES BECAUSE THEY DO NOT ALLEGE THAT PLAINTIFFS RELIED ON FDB'S ALLEGED MISREPRESENTATIONS OF ITS STATED METHODOLOGY. ............................... 16

    A.  In *Systems Management,* The First Circuit Did Not Resolve The Issue Of Whether Individual Reliance Is Required In Fraud-Based RICO Claims. ........... 16

    B.  Plaintiffs Must Plead Facts Showing Individual Reliance On The Alleged Misrepresentations. ............................................................................................. 17

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Allstate Ins. Co. v. Seigel*,
  312 F. Supp. 2d 260 (D. Conn. 2004) ........................................................................... 12

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
  374 F.3d 23 (1st Cir. 2004) .......................................................................................... 4

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451, 126 S. Ct. 1991 (2006) ................................................................. *passim*

*Appletree Square I Ltd. P'ship v. W.R. Grace & Co.*,
  29 F.3d 1283 (8th Cir. 1994) ...................................................................................... 19

*Burke v. Dowling*,
  944 F. Supp. 1036 (E.D.N.Y. 1995) ......................................................................... 4, 6

*Chisolm v. TranSouth Fin. Corp.*,
  95 F.3d 331 (4th Cir. 1996) .................................................................................. 17, 19

*Class v. Puerto Rico*,
  309 F. Supp. 2d 235 (D.P.R. 2004) ............................................................................. 4

*Doyle v. Hasbro, Inc.*,
  103 F.3d 186 (1st Cir. 1996) ....................................................................................... 6

*FTC v. Mylan Lab., Inc.*,
  62 F. Supp. 2d 25 (D.D.C. 1999) .............................................................................. 13

*Field v. Mans*,
  516 U.S. 59 (1995) ..................................................................................................... 18

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994) ............................................................................... 4, 6, 7, 8

*Globe Wholesale Tobacco Dist., Inc. v. Worldwide Wholesale Trading, Inc.*,
  No. 06 civ. 2865, 2007 U.S. Dist. LEXIS 72656 (S.D.N.Y. Sept. 28, 2007) ........... 11, 12

*Gross v. New Balance Athletic Shoe, Inc.*,
  955 F. Supp. 242 (S.D.N.Y. 1997) ......................................................................... 12, 13

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,
  187 F.3d 941 (8th Cir. 1999) ...................................................................................... 11

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) .................................................................................................. 14

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992) ........................................................................................... *passim*

*In re GMC Anti-Lock Brake Prods. Liab. Litig.*,
   966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd*, 172 F.3d 623 (8th Cir. 1999)........................ 19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   307 F. Supp. 2d 190 (D. Mass. 2004) ........................................................................... 15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005) ..................................................................................... 16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   MDL No. 1456, 2007 U.S. Dist. LEXIS 26242 (D. Mass. Apr. 2, 2007)......................... 8

*In re Vitamins Antitrust Litig.*,
   Misc. No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 12114
   (D.D.C. June 29, 2001) ................................................................................................. 14

*James Cape & Sons Co. v. PCC Constr. Co.*,
   453 F.3d 396 (7th Cir. 2006)........................................................................................ 15

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003) .......................................................................................... 5

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) .......................................................................................... 5

*Longmont United Hosp. v. St. Barnabas Corp.*,
   No. 06-2802 (DMC), 2007 U.S. Dist. LEXIS 48187 (D.N.J. June 22, 2007) ................ 14

*Medgar Evers Houses Tenants Ass'n v. Medgar Evers Houses Assocs., L.P.*,
   25 F. Supp. 2d 116 (E.D.N.Y. 1998).......................................................................... 11

*Meng v. Schwartz*,
   116 F. Supp. 2d 92 (D.D.C. 2000) .............................................................................. 11

*Municipality of San Juan v. Rullan*,
   318 F.3d 26 (1st Cir. 2003) ........................................................................................ 16

*Munoz-Mendoza v. Pierce*,
   711 F.2d 421 (1st Cir. 1983) ........................................................................................ 7

*Neder v. United States*,
    527 U.S. 1 (U.S. 1999) .................................................................................................. 17

*Pasquantino v. United States*,
    544 U.S. 349 (2005) ..................................................................................................... 18

*Pelletier v. Zweifel*,
    921 F.2d 1465 (11th Cir. 1991) ................................................................................... 17

*Petroleum Prods. Antitrust Litig.*,
    691 F.2d 1335 (9th Cir. 1982) ..................................................................................... 12

*Pillsbury, Madison & Sutro v. Lerner*,
    31 F.3d 924 (9th Cir. 1994) ......................................................................................... 14

*R.I. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
    99 F. Supp. 2d 174 (D.R.I. 1999) ............................................................................... 15

*Schnell v. Conseco, Inc.*,
    43 F. Supp. 2d 438 (S.D.N.Y. 1999) ........................................................................... 6

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ................................................................................................. 8, 18

*Sikes v. Teleline, Inc.*,
    281 F.3d 1350 (11th Cir. 2002) ............................................................................. 11, 18

*Summit Props. Inc. v. Hoechst Celanese Corp.*,
    214 F.3d 556 (5th Cir. 2000) ....................................................................................... 18

*Systems Management, Inc. v. Loiselle*,
    303 F.3d 100 (1st Cir. 2002) ................................................................................. 16, 17

*United States v. Texas*,
    507 U.S. 529 (1993) ..................................................................................................... 18

*Vandenbroeck v. CommonPoint Mortgage Co.*,
    210 F.3d 696 (6th Cir. 2000) ................................................................................. 18, 19

*Walters v. First Tenn. Bank, N.A.*,
    855 F.2d 267 (6th Cir. 1988) ......................................................................................... 9

*Williams v. Mohawk Indus., Inc.*,
    465 F.3d 1277 (11th Cir. 2006) ..................................................................................... 5

**STATUTES**

18 U.S.C.
  § 1341 ............................................................................................................ 9, 17, 18
  § 1962(c) ....................................................................................................... 5
  § 1964(c) ....................................................................................................... 5, 12

Fed. R. Civ. P. 9(b)........................................................................................... 19

**OTHER**

David B. Smith & Terrance G. Reed,
  1 *Civil Rico* § 6.04 (2007) ............................................................................ 12

William L. Prosser & W. Page Keeton,
  *Prosser and Keeton on The Law of Torts* § 108 (5th ed. 1984) ...................... 18

## INTRODUCTION

Plaintiffs' Third Amended Complaint ("TAC") adds a class of consumers who purchased drugs at whatever "usual and customary" ("U&C") price had been set by the individual pharmacies that filled their prescriptions. The RICO claim of this "U&C Payors" class must be dismissed because even if all of the complaint's allegations are true, the injuries alleged did not arise "by reason of" the RICO violation that plaintiffs allege. The Supreme Court held in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S. Ct. 1991 (2006), that in a RICO action, a plaintiff's causation theory should be scrutinized at the pleading stage. Here, because plaintiffs' RICO action is predicated on mail fraud, plaintiffs must plead both "but for" and proximate cause with particularity under Rule 9(b). Plaintiffs have done neither.

Plaintiffs' complaint is centered on an allegedly fraudulent scheme that resulted in an increase in the AWP of prescription drugs. But plaintiffs have not pleaded any particularized facts to show how this increase in AWP was the "but for" cause of an increase in the U&C price. The U&C price is not determined by a formulaic calculation, and there is no uniform U&C price for any drug: U&C is simply the retail price at which an individual pharmacy chooses to sell a given drug on a given day. Plaintiffs' conclusory allegation that the U&C price is "tied to" AWP is not sufficiently particular to satisfy Rule 9(b).

Nor does the complaint satisfy the proximate cause requirement of *Anza*, because plaintiffs have not pleaded facts showing that the U&C class was directly injured by the conduct constituting the RICO violation. The false statements on which plaintiffs' mail fraud claim is predicated are alleged misrepresentations by First Databank ("FDB") that it was calculating AWP based on industry surveys when in reality it was only surveying McKesson. The U&C class cannot claim to have been injured by these alleged misrepresentations because plaintiffs do not allege that the representations were directed at the U&C class or that the class was even aware of them. Moreover, their injury is also not direct because it depends on the pricing decisions of individual independent retail pharmacies that are not alleged to have taken part in the alleged conspiracy.

1

The second reason the RICO claim of the U&C class must be dismissed — along with the claims of the other two classes — is because the TAC does not allege individual reliance on FDB's allegedly false representations regarding FDB's stated methodology for calculating AWP. The First Circuit's response to McKesson's recent Rule 23(f) petition strongly implies that it has not yet definitively ruled on the reliance issue. The majority of circuits that have done so have held that civil plaintiffs who allege fraud-based RICO claims must also plead reliance on the RICO defendant's misrepresentation. McKesson submits that the same pleading rule should be followed here, based on the well-supported reasoning of these majority decisions. Because plaintiffs' complaint does not allege that any of the three classes relied on FDB's alleged misrepresentations about its surveying methods, the claim on behalf of the U&C class should be dismissed, and the Court should grant McKesson's motion for judgment on the pleadings against the other two classes.

## THE NEW ALLEGATIONS

The basic allegations of this case are familiar to the Court. Plaintiffs allege that McKesson and its co-defendant FDB engaged in a fraudulent scheme with a common purpose of publishing "false and misleading" AWPs for prescription drugs, and "perpetuating use of AWPs as a benchmark for reimbursement in the pharmaceutical industry." (TAC ¶ 176(a), (d).)

The defendants are alleged to have carried out this scheme by engaging in "the transmission and publication of false and misleading information concerning AWPs." (*Id.* ¶ 187.) However, all of the alleged misrepresentations concerning AWPs boil down to essentially one misrepresentation of fact: "an alleged uniform misrepresentation by FDB, specifically the statement that its AWP information was obtained directly from drug manufacturers or based on a survey of major drug wholesalers." (Class Certification Order, Aug. 27, 2007 ("Class Order) 11-12 [Docket No. 317].) Plaintiffs allege that FDB was not in fact conducting true surveys and, between late 2001 and March 2005, in reality was only surveying McKesson. (TAC ¶¶ 6, 8, 108-11, 119-21.) Based on that theory, plaintiffs' previous

complaint sought damages on behalf of two classes: TPPs that paid reimbursements for certain drugs based on AWPs, and consumers who paid co-pays for those drugs that were also based on AWPs.

The Third Amended Complaint proposes to add a third class of plaintiffs to this case, one whose members paid for drugs based on a different quantum, the "usual and customary" price. (*Id*. ¶ 160.) There is no uniform U&C price for a drug, and none is alleged. U&C price is defined as "the retail price for a drug, . . . the price an individual without prescription drug coverage would pay at a retail pharmacy." (General Accountability Office's 2005 Report to Congress, *Prescription Drugs: Price Trends for Frequently Used Brand and Generic Drugs from 2000 through 2004* at 5 (Aug. 2005, GAO-05-779) ("2005 GAO Report"), submitted as Exhibit G to Decl. of Lori A. Schechter in Opp'n to Pls.' Mot. for Leave to File Third Am. Compl. [Docket No. 339-8] ("Schechter Decl."); s*ee also* TAC ¶ 81 (U&C class is comprised of people "who are uninsured or underinsured and who pay for drugs in cash").) Each pharmacy has the discretion to use its own methodology for determining U&C. "The U&C price includes the acquisition cost of the drug paid by the retail pharmacy and a markup charged *by the pharmacy*." (2005 GAO Report; Schechter Decl. Ex G at 5; emphasis added.) The TAC does not (and cannot) plead to the contrary.

There are only two sentences in the new complaint that purport to describe the relationship between U&C pricing and the AWP prices that are the subject of the alleged fraud. Plaintiffs allege that U&C prices are "tied" to AWPs, and "are usually set at a price above AWP." (TAC ¶ 81.) Plaintiffs also allege that AWPs are used "by retail pharmacy as a basis for pricing cash prescriptions." (*Id*. ¶ 115.) The complaint does not allege that there is any kind of formulaic relationship between AWP and U&C, nor does it describe how pharmacies use AWPs in calculating U&Cs. Nonetheless, plaintiffs allege that the U&C class was injured because "an artificial increase in the AWP uniformly impacts such class members." (*Id*. ¶ 81.)

Significantly, the TAC does not allege that the alleged fraudulent misrepresentations by FDB were directed at the U&C class, that the U&C class was aware of the representations, or

that the class relied upon those representations. Similarly, as was the case with the previous complaints, plaintiffs do not allege that the other classes, the "Third-Party Payors" and the "Consumer Co-Payors," relied upon FDB's representations of its surveying methodology.

## ARGUMENT

In reviewing a motion to dismiss, the court must "take as true the factual averments contained in the complaint, but eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (internal citation and quotation marks omitted). Similarly, in evaluating a motion for judgment on the pleadings, "courts need not credit conclusory statements or merely subjective characterizations, but rather plaintiffs must set forth in their complaint specific, nonconclusory factual allegations regarding each material element necessary to sustain recovery." *Class v. Puerto Rico*, 309 F. Supp. 2d 235, 236 (D.P.R. 2004) (citations omitted).

McKesson brings these motions to dismiss on two grounds. First, as discussed in Section I below, the RICO claim should be dismissed as to the U&C class because plaintiffs have failed to allege particularized facts showing that the alleged RICO violation was the cause of the injuries alleged to have impacted that class. Because plaintiffs' alleged RICO violation is predicated on acts of mail or wire fraud, plaintiffs "must plead injury and causation with particularity, as required by Fed. R. Civ. P. 9(b)." *Burke v. Dowling*, 944 F. Supp. 1036, 1050 (E.D.N.Y. 1995) (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)). Plaintiffs have not alleged specific facts showing either "but for" or proximate cause, two of the requirements for pleading a civil RICO claim. Motions to dismiss are properly granted where the complaint does not plead causation as required under the RICO statute. *Anza*, 126 S. Ct. at 1995.

Second, as set forth in Section II, the Court should dismiss the RICO claim against the U&C class because plaintiffs have not alleged that plaintiffs and class members individually relied upon the alleged misrepresentations at issue, all of which relate to FDB's survey

methodology for AWP.  The Court should grant judgment on the pleadings on this ground as to the RICO claim against the TPP and Consumer Co-Payor classes as well, because plaintiffs have not pleaded that there was any individual reliance on the alleged misrepresentations by these two classes either.

## I.    PLAINTIFFS DO NOT ALLEGE THAT THE RICO VIOLATION CAUSED THE INJURY ALLEGEDLY INCURRED BY THE U&C CLASS.

The proposed U&C class fails to state a RICO claim because any injuries incurred by that class were not caused by the RICO violation plaintiffs allege.  A plaintiff can only state a RICO claim where he can establish an injury that was caused "by reason of a [RICO] violation."  18 U.S.C. § 1964(c).[1]  This "by reason of" language requires a showing of both but-for and proximate causation.  *Anza*, 126 S. Ct. at 1996.[2]

A RICO plaintiff's theory of causation is to be examined at the pleading stage, and a motion to dismiss should be granted where proper cause is lacking.  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006) ("*Anza* makes clear that courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations."); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 130 (2d Cir. 2003), *cert. denied*, 540 U.S. 1012 (2003).  McKesson's motion to dismiss should be granted with regard to the proposed U&C class because the TAC does not establish that the alleged RICO violation was the "but for" or proximate cause of the class's alleged injuries.

---

[1] Plaintiffs' RICO claim is brought pursuant to 18 U.S.C. section 1962(c).  (TAC ¶ 176.) As plaintiffs recognize, section 1964(c) governs the recovery of damages under that provision. (*Id.* ¶ 201.)

[2] The requirement that the injury be directly related to the alleged RICO violation is separate from common law foreseeability, which is also required.  *See Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 284 (2d Cir. 2006) (citations omitted).  This motion does not address this foreseeability requirement.

### A. Plaintiffs Have Not Pleaded With Particularity That Defendants Were The "But For" Cause Of The U&C Class's Injuries.

Plaintiffs have not met the requirements of Federal Rule 9(b) because they have not pleaded that the alleged RICO violation was the "but for" cause of the injuries of the U&C class with particularity as required by Rule 9(b). *See Burke*, 944 F. Supp. at 1036.

Specifically, all of plaintiffs' allegations center on a purported scheme by defendants relating to increasing AWP. (*See* TAC ¶¶ 172-201.) But this has nothing to do with U&C, which is simply the retail price that pharmacies charge their customers who do not have insurance coverage. (2005 GAO Report, Schechter Decl. Ex. G at 5.) Plaintiffs have not included any particularized allegations in the complaint demonstrating that the defendants' actions caused the U&C price to increase. To the contrary, plaintiffs devote only two sentences in their 95-page complaint to the relationship between the two pricing methodologies, and the only connection they offer is the bald statement that "U&C payments are tied to the reported AWPs, and are usually set at a price above AWP," and that AWPs are used "by retail pharmacy as a basis for pricing cash prescriptions." (*Id*. ¶¶ 81, 115.) These bare allegations stand in stark contrast to plaintiffs' more detailed claims that the increase in AWP caused harm to the TPP and Consumer Co-Payor classes. (*See id*. ¶ 42 ("AWP is a list price used for invoices between drug wholesalers and pharmacies . . . and is typically used as a benchmark for the reimbursement by End-Payors"); ¶ 68 ("AWP is the glue that binds the system of pharmaceutical reimbursement rates"); *see generally id.* ¶¶ 63-79.)

As the First Circuit has held, "conclusional" allegations are not sufficient to state a RICO claim that is predicated on fraud. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (affirming dismissal of RICO claim for failure to satisfy Rule 9(b)'s particularity requirement). To satisfy Rule 9(b), a plaintiff must allege facts "with enough particularity to permit a determination whether the factual basis for a claim, if proven, could support an inference of proximate cause." *Schnell v. Conseco, Inc.*, 43 F. Supp. 2d 438, 447 (S.D.N.Y. 1999) (citing *First Nationwide Bank*, 27 F.3d at 770) (dismissing plaintiffs' RICO claim with prejudice

because complaint "contained no facts that, if proven, would establish a nexus" between the plaintiff's alleged loss and the defendant's conduct).

Plaintiffs have not alleged specific facts that would allow the Court to determine "whether the factual basis for a claim, if proven, could support an inference of proximate cause." *Id.* The TAC contains no specific facts describing the manner in which individual pharmacies' U&C prices are "tied" to AWP or factual allegations that describe how this could even be so. If this were true, it would be easy enough for plaintiffs to set forth their specific "but for" facts. Actually, there are compelling reasons to doubt that plaintiffs could ever set forth such a claim. Plaintiffs do not allege that there is any formulaic or uniform U&C price for any particular drug, nor could they.[3] The U&C class is defined as "uninsured or underinsured" individuals "who pay for drugs in cash." (TAC ¶ 81.) Pharmacies are free to charge whatever retail price they wish on any given day to compete with one another.

There is also no natural correlation between an increase in AWP and a corresponding increase in the U&C price, since increasing AWP does not affect the pharmacies' acquisition cost. As plaintiffs themselves allege, "whether the retail pharmacy is large or small, its purchase of prescription drugs is typically based using WAC as a benchmark," not AWP, and the actual cost each pharmacy pays "varies considerably." (*Id.* ¶¶ 57, 58.) Even outside of the 9(b) context, the First Circuit has held that "[w]here 'injury' and 'cause' are not obvious, the plaintiff must plead their existence in his complaint with a fair degree of specificity." *Munoz-Mendoza v. Pierce*, 711 F.2d 421, 425 (1st Cir. 1983). Because the other allegations in plaintiffs' complaint show that the relationship between injury and cause is not obvious, plaintiffs are required to include particular allegations setting forth the manner in which U&C price is affected by AWP.

---

[3] By way of example, to resolve the problem presented by the fact that there is no authoritative or uniform "U&C price" for a given drug, the GAO analysis resorted to using the "average monthly usual and customary (U&C) prices reported by retail pharmacies" to two states' elderly prescription drug assistance programs as a proxy. (2005 GAO Report, Schechter Decl. Ex. G at 16.)

*Compare In re Pharm. Indus. Average Wholesale Price Litig.* ("*In re AWP*"), MDL No. 1456, 2007 U.S. Dist. LEXIS 26242, at *125-26 (D. Mass. Apr. 2, 2007) (greater particularity not required to specify whether pricing fraud concerned each drug's AWP or its WAC, "given the formulaic relationship between WAC and AWP").

Since plaintiffs' conclusory statements do not meet Rule 9(b)'s requirements for pleading "but for" causation, the RICO claim of the U&C class should be dismissed. *See First Nationwide Bank*, 27 F.3d at 771 (granting motion to dismiss plaintiff's RICO claim because under "the stringent pleading requirements of Fed. R. Civ. P. 9(b) . . . [i]n the absence of a factual basis underlying [plaintiff's] causation claim, we cannot accept its allegation as fact.") (internal citations omitted).

### B.    Plaintiffs Have Not Pleaded Proximate Cause.

In addition to pleading "but for" causation, to establish a right to recovery, plaintiffs must allege facts establishing proximate cause as well.  As the Supreme Court has recognized, RICO is not "meant to allow all factually injured plaintiffs to recover."  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266 (1992).  Plaintiffs have not pleaded proximate cause because they do not allege that the U&C class was injured by the alleged fraud that constitutes the RICO violation.

### 1.    The U&C Class Does Not Meet The RICO Proximate Cause Requirement Because Plaintiffs Do Not Allege That The Class Was Injured By The Claimed RICO Violation.

At the heart of the RICO proximate cause analysis is "a demand for some direct relation between the injury asserted and the injurious conduct alleged." *Anza*, 126 S. Ct. 1996 (quoting *Holmes*, 503 U.S. at 268).  The injury under RICO is dependent on the bounds of the alleged scheme, because "the compensable injury flowing from a violation of [section 1962(c)] 'necessarily is the harm caused by predicate acts'" that constitute a pattern of racketeering.  *Id.* (quoting *Sedima*, *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)).  Thus, a plaintiff may recover under RICO only if "he has been injured in his business or property by the conduct constituting the violation."  *Sedima*, 473 U.S. at 496.

Plaintiffs' allegations do not meet the Supreme Court's requirements. Here, the general thrust of the fraud is a scheme to falsely report the source of FDB's AWP data to generate higher reimbursement payments for pharmacies from TPPs. As the complaint alleges, FDB "knew, of course, that the primary purposes of publication of the WAC and of the AWP . . . was to serve as an electronic basis for the mass-reimbursement of retail pharmacies for thousands of daily transactions and billions of yearly transactions." (TAC ¶ 107; s*ee also id.* ¶ 141 (McKesson and FDB operated the scheme to benefit pharmacies because "pharmacies are reimbursed by health plans and other pharmacy benefit providers based on AWP"); *see also*, *e.g.*, ¶¶ 5, 6, 13, 42, 64, 68, 105, 145, 184.)[4]

The predicate acts of misrepresentations by defendants that are alleged to have been made to carry out this scheme distill down to a single "alleged uniform misrepresentation by FDB, specifically the statement that its AWP information was obtained directly from drug manufacturers or based on a survey of major drug wholesalers." (Class Order 11-12.) Plaintiffs allege that the various statements that were made to this effect were misleading, because FDB was not conducting true surveys and, between late 2001 and March 2005, was only surveying McKesson. (*See* TAC ¶¶ 6, 8, 108-111, 119-21.) Without this alleged misrepresentation, there would be no purported fraud and no RICO claim. *See* 18 U.S.C. § 1341 (prohibiting "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises"); *Walters v. First Tenn. Bank, N.A.*, 855 F.2d 267, 272-73 (6th Cir. 1988), *cert. denied*, 489 U.S. 1067 (1989) (scheme to defraud must involve misrepresentations or omissions). The TAC does not claim that there is anything fraudulent in McKesson's

---

[4] Plaintiffs may argue that the TAC also alleged a motive to increase "other payments" to retailers apart from insurance reimbursement payments. However, as the Supreme Court noted in *Anza*, a RICO plaintiff "cannot circumvent the proximate-cause requirement" and overcome a motion to dismiss simply by alleging improper motive. 126 S. Ct. at 1998 (citing *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 537 (1983)). Rather, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.*

independent act of standardizing its own list prices at a 25% markup. Plaintiffs have not satisfied RICO's proximate cause requirement because there is no direct connection between the alleged misrepresentations regarding FDB's method of calculating AWP and the alleged injuries of the U&C class.

Directly on point is *Anza,* where the Supreme Court upheld dismissal of a civil RICO case for failing to plead proximate cause. There, as here, plaintiff had pleaded that the defendant had committed a fraud in violation of the mail and wire fraud statutes, in that case by filing false sales tax returns with the State of New York. 126 S. Ct. at 1994-95, 1997. It was further alleged that the effect of the fraud was to allow the defendant to lower its prices to customers, resulting in a loss of business to plaintiff, defendant's competitor. *Id.* at 1994-95.

In upholding dismissal, the Court held that the plaintiff's alleged loss of sales due to defendant's price decrease was not an injury proximately caused by the defendant's fraud on the State of New York. The Court held that, in assessing the "[]continuity between the RICO violation and the asserted injury," "[t]he proper referent of the proximate-cause analysis" was the alleged fraud on the tax authority, not the defendant's actions in lowering prices. *Id.* at 1997. The Court further held that "[t]he cause of [the plaintiff's] asserted harms . . . is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* The Court also noted that the defendant "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud." *Id.* Its lowering of prices "in no sense required it to defraud the state tax authority," and likewise, "the fact that a company commits tax fraud does not mean the company will lower its prices[.]" *Id.*

Anza's holding applies squarely here. The cause of the alleged injuries of the U&C class is the decision by individual pharmacies to raise their price, not the alleged fraudulent representations. If anything, the causal link is more attenuated here than in *Anza,* because in *Anza* it was the defendant itself that changed its pricing. Here it is the pharmacies, who are not alleged to have participated in the fraud and had full discretion to set their own pricing terms. As in *Anza,* the pharmacies could have raised their prices "for any number of reasons unconnected

to the asserted pattern of fraud." *Id.* Their raising of prices was not necessary to the alleged fraud, nor was the fraud required for their raising of prices. *Id.*

Courts routinely dismiss RICO claims for lack of causation where, as here, plaintiffs have not alleged that their injury was caused by the alleged RICO violation. In *Medgar Evers Houses Tenants Ass'n v. Medgar Evers Houses Assocs.*, *L.P.*, 25 F. Supp. 2d 116, 120 (E.D.N.Y. 1998), for example, a group of tenants brought a RICO claim against their landlords, claiming that the landlords misappropriated federal funds and were able to maintain a slumlord building by making false statements to HUD about housing conditions. The court granted the motion to dismiss, noting that "the various false and misleading statements that constitute the acts of racketeering activity were all made to HUD," not plaintiffs. *Id.* at 121. The court also found the causal link to be too remote, noting that a fact finder would have to determine whether the poor housing conditions "in fact resulted from the false statements to HUD, as opposed to . . . defendants' poor management of the housing project." *Id. See also Globe Wholesale Tobacco Dist., Inc. v. Worldwide Wholesale Trading, Inc.*, No. 06 civ. 2865, 2007 U.S. Dist. LEXIS 72656, at *12 (S.D.N.Y. Sept. 28, 2007) (granting motion to dismiss because "Plaintiff's alleged harm was caused by a set of actions (offering lower prices) distinct from the alleged RICO violation (transporting counterfeit tax stamps and distributing contraband cigarettes)").[5]

---

[5] Many courts have similarly found RICO claims to be insufficient where, like here, the plaintiff was not the "target" of the alleged violation. *See, e.g.*, *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360 (11th Cir. 2002) ("when a plaintiff brings a civil RICO case predicated upon mail or wire fraud, he must prove that he was a target of the scheme to defraud") (quotations omitted); *Hamm v. Rhone-Poulenc Rorer Pharms.*, *Inc.*, 187 F.3d 941, 952 (8th Cir. 1999) (noting that because the plaintiffs "were not the intended targets of the alleged racketeering activity, they did not have standing to bring a civil RICO suit."); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 96 (D.D.C. 2000) ("Since *American Express*, [39 F.3d 395, 400 (2d Cir 1994)] the 'intended target' requirement has been repeatedly endorsed.") (collecting cases). As the Supreme Court stated in *Holmes*, a RICO plaintiff is not entitled to recover for "harm flowing merely from the misfortunes visited upon a third person by the defendant's acts." 503 U.S. at 268.

Notably, in *Medger Evers* and *Globe Wholesale*, as in *Anza*, the courts were unwilling to find a sufficient connection, even where the injury was clearly caused by conduct of the defendants themselves, because the conduct that caused the injury was not the predicate act that constituted the RICO violation. The alleged connection here is even more tenuous, because U&C prices were allegedly increased by the individual independent pharmacies, not defendants.

In addition to RICO cases, the Court should also look to pleading cases decided under section 4 of the Clayton Act in determining whether plaintiffs have adequately pleaded proximate cause here. As the Supreme Court noted in *Anza*, "'Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act.'" 503 U.S. at 267 (quoting *Holmes*, 503 U.S. at 267). As a result, courts "frequently look" to cases decided under the antitrust laws in evaluating whether causation has been adequately pleaded under the RICO statute. *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 267 (D. Conn. 2004) (collecting cases); *see also* David B. Smith & Terrance G. Reed, 1 *Civil Rico* § 6.04 (2007).

The U&C plaintiffs' attempt to impose liability on defendants despite the fact that the pharmacies were the ones who set the price that allegedly harmed them is analogous to the theory of "umbrella liability" for price-fixing under § 4 of the Clayton Act, which has been repeatedly rejected by the courts in recent years. As here, plaintiffs seeking antitrust damages under the umbrella liability theory allege that the anti-competitive activities of one set of market participants increases prices throughout the market, thereby damaging even the customers of non-conspirators. *See, e.g.*, *Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982). For example, the plaintiffs in *Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242 (S.D.N.Y. 1997) alleged that the shoe company entered into a vertical conspiracy with some of its retailers to maintain artificially high retail prices for its shoes. *Id.* at 243. Plaintiffs, who had purchased shoes from retailers that were not part of the conspiracy, sued the alleged conspirators on the ground that the scheme had the effect of raising prices for all New Balance shoes, even those sold by non-conspiring retailers. *Id.* at 245. The court granted defendant's motion to dismiss because (1) plaintiffs' injury was caused "only indirectly as a result of a general price

12

increase which in turn resulted from the direct effects of the conspiracy," and (2) "the causal connection between the alleged injury and the conspiracy is attenuated by significant intervening causative factors (i.e., independent pricing decisions of non-conspiring retailers)."  *Id.* at 246-47.

The same analysis holds true here.  Plaintiffs allege that the alleged scheme caused harm to TPPs and consumer co-payors who paid reimbursement prices that were contractually bound to AWP.  But there is no equivalent formulaic relationship between AWP and U&C.  To the extent that U&C prices also increased "indirectly as a result of a general price increase" in AWP, this is not sufficiently direct to permit recovery.  *See id.*  Further, here, as in *Gross*, the causal connection is attenuated due to the "independent pricing decisions" of the non-conspiring pharmacists.  *Id.* at 247; *see also FTC v. Mylan Lab., Inc.*, 62 F. Supp. 2d 25, 39 (D.D.C. 1999) (plaintiffs who purchased drugs from non-conspiring competitors of defendant could not recover from defendant, even though competitors were alleged to have raised prices as a consequence of defendants' antitrust conspiracy.)

Because the plaintiffs have not shown that the alleged misrepresentations were the proximate cause of the alleged injuries of the U&C class, the TAC should be dismissed.

### 2.    The *Holmes* Factors Further Confirm That Any Injury To The U&C Class Was Not Directly Caused By The Predicate Acts Alleged.

Two additional factors identified by the Supreme Court in *Holmes* as "underlying" the proximate cause inquiry's "directness requirement" confirm that the connection between any injury to the U&C class and the alleged predicate acts of mail fraud is too attenuated to satisfy RICO's proximate cause requirement.  *See Anza*, 126 S. Ct. at 1997-98.

First, *Holmes* recognized that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors."  503 U.S. at 269.  This factor is crucial with regard to the U&C class's injury, because there is no way to ascertain what amount of U&C price increases was attributable to AWP increases, and what amount was attributable to the pharmacists' individual competitive pricing decisions.  Those decisions are based on numerous factors, not the least of which is the

increase in the WAC price (which plaintiffs acknowledge is the basis of pharmacies' acquisition cost) over this same period.  (*See* TAC ¶ 58, 2005 GAO Report, Schechter Decl. Ex. G at 12 (reporting that the relationship between "AMP" (WAC) and U&C remained stable between 2000 and 2004)).[6]

      Plaintiffs allege that pharmacies "usually set [U&C prices] at a price above AWP," but do not allege that pharmacies are in any way obligated to use AWPs when setting those prices. (TAC ¶¶ 81, 115.)  Thus, even if U&C prices are somehow "tied" to AWPs as plaintiffs allege, there is no way to separate defendants' responsibility from the pharmacists' responsibility.  The independent pricing discretion by the pharmacists prevents a finding of proximate cause.  *See Longmont United Hosp. v. St. Barnabas Corp.*, No. 06-2802 (DMC), 2007 U.S. Dist. LEXIS 48187, at *17-18 (D.N.J. June 22, 2007) ("Where, as here, the complained of harm flows through an intermediary that has the discretion to act in a certain way or not, there is no proximate cause sufficient to establish a RICO violation."); *In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 12114, at *29 (D.D.C. June 29, 2001) (finding no proximate cause where "[t]he causal connection between plaintiffs' injury and the alleged conspiracy was necessarily attenuated" due to "independent pricing decisions of the nonconspiring suppliers"); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928-29 (9th Cir. 1994) (subtentant Pillsbury could not recover from landlords under RICO for fraudulently inflating value of building and rents, despite the fact that Pillsbury occupied 50% of the building,

---

[6] The impossibility of reliably tracing a change in a single factor through to the eventual retail price has long been a concern that limits antitrust standing.  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 492-93 (1968) ("A wide range of factors influence a company's pricing policies.  Normally, the impact of a single change in the relevant conditions cannot be measured until after the fact; indeed, a businessman may be unable to state whether, had one fact been different (a single supply less expensive . . . or the labor market tighter, for example), he would have chosen a different price.").

because master tenant had direct claim and "direct cause" of injury was master tenant's inability to secure more favorable contract).[7]

A second factor listed in both *Holmes* and *Anza* concerns whether there are other plaintiffs who could accomplish the "general interest in deterring injurious conduct . . . without any of the problems attendant upon suits by plaintiffs injured more remotely." *Holmes*, 503 U.S. at 269-70; *Anza*, 126 S. Ct. at 1998. Here, the public interest in deterrence is more than satisfied by the direct claims asserted by the TPPs. *See Holmes*, 503 U.S. at 273 (denying standing to the indirect victims because the directly injured parties "have in fact sued in this case"); *see also R.I. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 99 F. Supp. 2d 174, 185 (D.R.I. 1999) (recognizing that "the focus of the direct injury requirement for RICO and antitrust standing is less on vindicating the kind of injury sustained and more on deterring the kind of misconduct that may lead to various injuries."). The Court in *Anza* noted the prominence of this factor, requiring that scrutiny of an indirect plaintiff's "direct causal connection is *especially warranted* where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." 126 S. Ct. at 1998 (emphasis added); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 404 (7th Cir. 2006).[8]

---

[7] The pharmacists' independent pricing discretion in setting cash prices is also the critical difference between this case and the direct causation arguments raised by the manufacturers in *In re AWP*, 307 F. Supp. 2d 190 (D. Mass. 2004). In that context, use of AWP as a pricing term was contractually compelled; there was no intervening and wholly independent pricing decision made by a third party, as there is here. *Id.* at 207-08.

[8] *Holmes* identified a third consideration — the risk of multiple recoveries and the danger that extending standing to one indirectly injured party would open the door to other plaintiffs "removed at different levels of injury from the violative acts." 503 U.S. at 269. However, in *Anza*, the Supreme Court specifically held that the absence of a risk of multiple recovery is inconsequential where the other *Holmes* factors are satisfied. *Anza*, 126 S. Ct. at 1997.

**II.    PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A RICO CLAIM ON BEHALF OF ANY OF THE THREE CLASSES BECAUSE THEY DO NOT ALLEGE THAT PLAINTIFFS RELIED ON FDB'S ALLEGED MISREPRESENTATIONS OF ITS STATED METHODOLOGY.**

As described above, the fraud alleged by plaintiffs in this case is based on FDB's representation that its AWPs were based on input from manufacturers and surveys of wholesalers when in fact, between late 2001 and March 2005, FDB had "limited its purported 'surveys' to McKesson."  (TAC ¶ 129.)  But unless plaintiffs were aware of and relied upon these statements about FDB's surveying methodology, they cannot have been defrauded.  That essential allegation of individual reliance is absent from the Complaint.

**A.    In *Systems Management,* The First Circuit Did Not Resolve The Issue Of Whether Individual Reliance Is Required In Fraud-Based RICO Claims.**

The First Circuit has yet to definitely decide whether a civil RICO claim based on fraud can survive where no one is alleged to have relied on the misrepresentation.  While *Systems Management, Inc. v. Loiselle*, 303 F.3d 100 (1st Cir. 2002) indicated that RICO causation could be demonstrated by means other than reliance by the plaintiff, that portion of the opinion is dicta, not the holding of the case.  In *Systems Management*, the court held for the defendant because the predicate acts alleged were insufficient to establish a "pattern of racketeering activity."  *Id.* at 104-06.  Because the court's contemplation of the reliance issue is not essential to the holding of the case, it is not binding on this court.  *See Municipality of San Juan v. Rullan*, 318 F.3d 26, 28-29 n.3 (1st Cir. 2003) ("Dicta—as opposed to a court's holdings—have no binding effect in subsequent proceedings in the same (or any other) case.").

McKesson did not fully brief the reliance issue either in its original motion to dismiss or in its class certification papers in light of this Court's ruling in *In re AWP* that a showing of reliance was not required under civil RICO.  230 F.R.D. 61, 93 (D. Mass. 2005).  McKesson specifically sought to preserve the issue for appeal, however (McKesson's Mem. in Opp'n to Class Cert. 2-3 n.1) [Docket No. 205], and thereafter focused its Rule 23(f) petition to the First Circuit exclusively on the reliance issue.  Without addressing the merits of McKesson's

argument, or indicating that the issue was foreclosed by *Systems Management, Inc. v. Loiselle*, 303 F.3d 100 (1st Cir. 2002), the First Circuit denied McKesson's 23(f) petition solely on the ground that McKesson "***did not develop its reliance argument, either when it moved to dismiss the complaint or when it opposed class certification.***" (*See* Nov. 16, 2007 First Circuit Order, attached hereto as Exhibit 1 [Docket No. 367] (emphasis added).) In accordance with the First Circuit's order, McKesson now sets forth its reliance argument in detail before this Court.

The First Circuit's denial of McKesson's Rule 23(f) petition strongly implies that it recognized the non-binding nature of the dicta in *Systems Management*. The court did not deny the petition on the ground that plaintiffs advanced — that McKesson's reliance argument was foreclosed by *Systems Management*. (*See id.*) There would have been no reason for the court to deny the petition on the ground that McKesson "did not develop its reliance argument" before this Court, unless the court believed that the question of whether reliance is required for RICO claims based on fraud remains an open issue in this Circuit.

### B. Plaintiffs Must Plead Facts Showing Individual Reliance On The Alleged Misrepresentations.

The RICO claims of all classes should be dismissed because there are no facts pleaded that plaintiffs and class members relied on FDB's alleged misrepresentation that it was surveying all three wholesalers in calculating AWPs. Although reliance is not an element of the criminal violation of the mail fraud statute, 18 U.S.C. § 1341, the Supreme Court recognizes that the criminal statute is not coextensive with civil actions based on fraud.[9] As explained in *Pelletier v. Zweifel*, 921 F.2d 1465, 1500 (11th Cir. 1991), the reason why reliance is not required when the government prosecutes criminal mail fraud is that the purpose of the criminal statute is to punish

---

[9] *See Neder v. United States*, 527 U.S. 1, 24-25 (U.S. 1999) ("Civilly of course the [mail fraud statute] would fail without proof of damage, but that has no application to criminal liability.") (quoting *United States v. Rowe*, 56 F.2d 747, 749 (2d Cir. 1932) (Hand, J.) (alteration in original); *see also Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir. 1996) ("When we decided in *Brandenburg* to impose a reliance requirement in the civil RICO context, we were fully aware that no analogous rule existed in criminal RICO prosecutions involving mail fraud.")

wrongdoers who "devise any scheme or artifice to defraud." 18 U.S.C. § 1341. When a private plaintiff seeks to recover civil damages for mail fraud through RICO, on the other hand, he must prove damages, and he "can only recover to the extent that, he has been injured . . . by the conduct constituting the violation." *Sedima*, 473 U.S. at 496.

In civil actions for fraud damages, individual reliance has always been required. *See*, *e.g.*, Restatement (Second) of Torts §§ 525, 537 (1977); William L. Prosser & W. Page Keeton, *Prosser and Keeton on The Law of Torts* § 108 (5th ed. 1984). As the Supreme Court observed in *Field v. Mans*, 516 U.S. 59, 72-75 (1995), at least 46 states specifically require reliance to make out a claim for fraud. The fact that the RICO statute does not specifically require reliance in no way diminishes this fundamental requirement of the common law. To the contrary, a longstanding canon of statutory construction mandates that statute-based claims should *preserve* common-law elements unless Congress specifically instructs otherwise. *United States v. Texas*, 507 U.S. 529, 534 (1993) ("[S]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident. In such cases, Congress does not write upon a clean slate. In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law.") (internal citations and quotations omitted); *see also Pasquantino v. United States*, 544 U.S. 349, 359 (2005) (holding that the language of the wire fraud statute does not abrogate the common law).

The majority of circuits to have announced a holding on the RICO reliance issue have required that the plaintiff demonstrate that she relied on the alleged misrepresentations that form the basis of fraud-based RICO claims. *See Sikes*, 281 F.3d at 1360-61 ("[W]hen a plaintiff brings a civil RICO case predicated upon mail or wire fraud, he must prove that . . . he relied to his detriment on misrepresentations made in furtherance of that scheme."); *Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 562 (5th Cir. 2000) ("In sum, when civil RICO damages are sought for injuries resulting from fraud, a general requirement of reliance by the plaintiff is a common sense liability limitation.") (citation and quotations omitted); *Vandenbroeck v.*

*CommonPoint Mortgage Co.*, 210 F.3d 696, 701 (6th Cir. 2000) (holding that plaintiffs must show that they "in fact relied upon [the defendant's] material misrepresentation"); *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir. 1996) ("[T]he plaintiff must have justifiably relied, to his detriment, on the defendant's material misrepresentation."); *Appletree Square I Ltd. P'ship v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1994) ("In order to establish injury to business or property 'by reason of' a predicate act of mail or wire fraud, a plaintiff must establish detrimental reliance on the alleged fraudulent acts.").

The First Circuit itself may choose to reconsider its dicta in *Systems Management*, in light of the Supreme Court's subsequent holding in *Anza*. Because the Supreme Court found that the plaintiff had not met its burden of pleading proximate cause in *Anza*, it had "no occasion to address the substantial question whether a showing of reliance [by the plaintiff] is required." 126 S. Ct. at 1998. In emphasizing the "common law foundations of the proximate cause requirement" and the fact that a RICO plaintiff "cannot circumvent" that requirement, *see id.* at 1996, 1998, the decision strongly suggests that a RICO plaintiff cannot establish a mail fraud claim without pleading individual reliance. A misrepresentation cannot cause — much less proximately cause — injury to a plaintiff unless the plaintiff relied upon it.

Here, the complaint does not allege that members of any of the three classes relied on the purported misrepresentations on which their claims are based — FDB's representations regarding its method of surveying wholesalers in calculating AWP. That is particularly true for the U&C class, which is not alleged to even known what AWP was. The RICO claim should accordingly be dismissed. *In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997) ("[P]laintiffs are required to allege facts supporting their claim of reliance, for where the complaint only states a conclusion that actual reliance existed and is void of any allegations that anyone actually read any of the misleading statements or knew of their existence, such an allegation fails the particularity requirement of Rule 9(b)") (internal quotations omitted), *aff'd*, 172 F.3d 623 (8th Cir. 1999); *see also* Fed. R. Civ. P. 9(b).

## CONCLUSION

For all of the above reasons, defendant McKesson requests that the Court dismiss the RICO claims of the three plaintiff classes, with prejudice.

Respectfully submitted,

McKesson Corporation
By its attorneys:

/s/ Lori A. Schechter

| | |
|---|---|
| Melvin R. Goldman (*pro hac vice*) | John Kiernan |
| Lori A. Schechter (*pro hac vice*) | Nicole Johnson |
| Paul Flum (*pro hac vice*) | Bonner Kiernan Trebach & Crociata |
| Tiffany Cheung (*pro hac vice*) | 200 Portland Street |
| Morrison & Foerster LLP | Suite 400 |
| 425 Market Street | Boston, MA 02114 |
| San Francisco, CA 94105-2482 | Telephone: (617) 426-3900 |
| Telephone:  (415) 268-7000 | Facsimile: (617) 426-0380 |
| Facsimile:  (415) 268-7522 | |

Dated:  December 13, 2007

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on December 13, 2007.

/s/ Lori A. Schechter
Lori A. Schechter

# Exhibit 1

# United States Court of Appeals
## For the First Circuit

No. 07-8030

NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, ET AL.,

Plaintiffs, Respondents,

v.

MCKESSON CORPORATION,

Defendant, Petitioner,

FIRST DATABANK, INC.,

Defendant.

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

JUDGMENT

Entered: November 16, 2007

The petition for leave to appeal is denied. We note that the petitioner did not develop its reliance argument, either when it moved to dismiss the complaint or when it opposed class certification. The certification order did not "turn on" any question of law preserved by the petitioner. Rule 23(f) advisory committee note.

The appeal is terminated.

By the Court:

Richard Cushing Donovan, Clerk.

I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY OF
THE ORIGINAL ON FILE IN MY OFFICE
AND IN MY LEGAL CUSTODY.

US CIRCUIT COURT OF APPEALS
BOSTON, MA
By _____ Date: 1/16/07

By:   **MARGARET CARTER**

       Chief Deputy Clerk.

[certified copies: Honorable Patti B. Saris,
Sarah A. Thornton, Clerk US Distict Court of Massachusetts]

[cc: Kenneth A. Wexler, Esq., Thomas M. Sobol, Esq. Edward
Notargiacomo, Esq., Timothy L. Miles, Esq., Gerald E. Martin,
Esq., Barbara Mahoney, Esq., John A Macoretta, Esq., Jeffrey L.
Kodroff, Esq., Jennifer F. Connolly, Esq., Edmund L. Carey, Esq.,
Steve W. Berman, Esq., George Barrett, Esq., Lori A. Schechter,
Esq., John A. Kiernan, Esq., Nicole L. Johnson, Esq., George C.
Harris, Esq., Melvin R. Goldman, Esq., Paul Flum, Esq., Tiffany
Cheung, Esq., Nathan R. Soucy, Esq., Matthew J. Matule, Esq.,
John P. Kern, Esq., Thomas E. Fox, Esq., Steven E. Bizar, Esq.,
Shiela L. Birnbaum, Esq., James P. Bennett, Esq.]