UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 DEC 21  P 4: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

NEW ENGLAND CARPENTERS HEALTH )
BENEFITS FUND; PIRELLI ARMSTRONG RETIREE )
MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH )
& WELFARE FUND OF PHILADELPHIA AND )
VICINITY; PHILADELPHIA FEDERATION OF )
TEACHERS HEALTH AND WELFARE FUND; )
DISTRICT COUNCIL 37, AFSCME-HEALTH & )
SECURITY PLAN; JUNE SWAN; BERNARD GORTER, )
SHELLY CAMPBELL and CONSTANCE JORDAN, )
)
Plaintiffs, )
)
v. )  CIVIL ACTION
)  NO. 1:05 – CV-11148-PBS
)
FIRST DATABANK, INC., a Missouri Corporation; and )
McKESSON CORPORATION, a Delaware Corporation )
)
Defendants. )

## DECLARATION OF V. THOMAS DEVILLE

I hereby declare, pursuant to 28 U.S.C. § 1746, the following:

1. My name is V. Thomas "Tom" DeVille, and I am President and CEO of DeVille Pharmacies, Inc. ("DeVille").

2. I have been licensed to practice pharmacy in Indiana since 1962. I am certified in both Senior Care Pharmacy and Diabetes Care by the National Institute on Pharmacy Care (NIPCO) and I am a Fellow of the American Society of Consultant Pharmacists ("ASCP").

3. I have owned and operated DeVille in Dillsboro, Indiana since 1978. Dillsboro, Indiana is a community of approximately 1,400 located in southeast Indiana. While DeVille

1

maintains a small community pharmacy in Dillsboro, its primary operations involve the provision of pharmacy services and the dispensing of prescription medications to residents of long term care ("LTC") facilities. Over the past year, DeVille provided LTC pharmacy services and dispensed prescription medications to patients at four nursing homes and 22 "group homes" for the mentally handicapped that are located within ten counties in southeast Indiana. Moreover, DeVille purchases some of the drugs it dispenses at the Average Wholesale Price ("AWP") term at issue in this case. DeVille is either the primary or sole LTC pharmacy provider in many of these largely rural counties.

**DEVILLE'S LONG TERM CARE PHARMACY OPERATION**

4. DeVille operates a specialized LTC pharmacy serving only nursing homes and group homes that cannot afford to own and operate a comprehensive in-house pharmacy. Instead, these LTC facilities contract with pharmacies like DeVille that are specifically set up to deal with the intensive needs of their elderly or disabled patients.

5. Because our patient population lives in LTC residential facilities and are overwhelmingly elderly, vulnerable, and infirm, DeVille provides specialized pharmacy services that are essential to their daily care and well-being. DeVille's specialized services include critical error reduction systems such as "unit dose" packaging where medications are delivered in labeled and bar coded plastic blister packs to ensure that the correct patient receives the correct dose on the correct day. This packaging system also enables nursing home staff to easily keep track of the multiple medications that each patient requires. DeVille also provides 24/7 "on demand" formulary and delivery services to fill the needs of patients being admitted during off-hours or facing acute and emergent needs. These 24-hour services are very important for patients who require the prompt initiation of a therapy like intravenous ("IV") medication. If LTC pharmacies like Deville could not prepare and deliver IVs on demand, nursing home residents would have to be sent to the hospital for IV administration, resulting in discomfort and delay for the patient, and significant increased

costs for the health care facility. DeVille pharmacists also interact frequently with prescribers and other care providers and engage in a variety of other activities, including drug regimen review, to ensure that our patients are receiving appropriate drug therapy.

6. The scope of services that are provided by DeVille's LTC operations differ markedly from the scope of services provided by a typical retail pharmacy. DeVille receives no special or supplemental payment for the provision of these specialized services, which greatly improve the quality of life and care for our patients. The sole compensation that Deville receives for both these specialized services and the dispensing of prescription medications is derived from the payment of the formula based drug reimbursement sum plus dispensing fees that are specified in the pharmacy provider contracts we have with third party payors ("TPPs").

**DEVILLE REIMBURSEMENT CONTRACTS**

7. Prior to January 1, 2006, about two thirds of my pharmacy's LTC patients were Medicaid beneficiaries whose prescription drugs were paid for by the Indiana Medicaid program.

8. Since January 1, 2006, pharmacy reimbursement for most of DeVille's LTC patients has come from one of three sources: (1) new Prescription Drug Plans ("PDPs") created by the Medicare Part D drug benefit; (2) state Medicaid programs; or (3) LTC facilities, by way of Medicare Part A funds. A relatively small number of the LTC patients are "private pay" patients who either pay for their care directly or through a private insurance program.

9. Currently, the vast majority of DeVille's LTC patients receive pharmacy services through the new privately run PDPs created by the Part D program. In order to serve patients enrolled in Part D PDPs, for Plan year (calendar year) 2006, DeVille entered into network pharmacy contracts during mid-to-late 2005 with all 32 PDPs in Indiana to provide drugs to nursing home residents enrolled in their plans. These contracts were predominantly offered to DeVille on a "take

it or leave it" basis with no opportunity afforded to DeVille to negotiate concerning payment or other term.

10. DeVille is reimbursed under its Part D PDP contracts at a rate that is based on AWP minus a significant percentage and is typically at rates that are lower than what a third party insurer would pay. All of our Part D PDP contracts are for fixed or multi-year terms and contain a provision fixing the drug reimbursement component at a discount from AWP, or "AWP minus x%." The drug reimbursement formula pricing terms in DeVille's Part D PDP contracts range from a high of AWP- 10 percent to a low of AWP – eighteen and one-half percent.

11. In addition to the AWP minus x% provision, all of DeVille's contracts with Part D PDPs include a dispensing fee to address the costs of the specialized services we provide, plus packaging, delivery, and administrative costs. In reality, the dispensing fee does not cover the costs of these additional services and we rely on the reimbursement payment for the prescription to cover the shortfall.

12. Because the contracted dispensing fees are inadequate to cover the costs of specialized LTC services we provide, DeVille agreed to the "AWP-x%" rates presently in its contracts with these additional uncovered costs in mind. A marginal reduction in the AWP-based reimbursement formula will have a significant impact on my pharmacy's specialized LTC operations and its overall financial well-being.

**THE HARMFUL EFFECT OF THE PROPOSED SETTLEMENT**

13. I understand that the proposed settlement would interfere with our PDP contracts by implementing a unilateral 4% reduction in the reimbursements we receive for approximately 8,000 branded drugs. DeVille already operates on single-digit margins. I understand from many of my peers at the ASCP that they, too, operate on single-digit margins. As such, the consequences of a

4

4% wholesale reduction in reimbursement on 8,000 branded drugs will have a devastating impact for DeVille and other similarly situated LTC pharmacies.

14.     While I have not determined how DeVille will respond to a 4% reduction in reimbursement in the event that the proposed settlement is approved, I do know that we will have to make significant cuts and that they will have a negative impact on the elderly and infirm patient population that DeVille's LTC operations serve.

15.     Options we are considering should the proposed settlement be approved include eliminating specialized services described above, which are not required by law, but that we currently provide to elderly, disadvantaged, and disabled nursing home and mentally handicapped patients in southeast Indiana. We are also considering the prospect of reducing personnel costs for staff and consultant pharmacists. Another option is to cut operating expenses for delivery services and the like by either limiting the frequency of deliveries or limiting the number of counties that we serve.

16.     As a health care professional for nearly forty years who has dedicated himself to the service of elderly and infirm patients' drug therapy needs, I am deeply troubled by the prospect of any cutbacks in their services or quality of care and by the manner in which the parties to this litigation seek to impose these costs on LTC pharmacies and their patients. I am also troubled by their failure to acknowledge these consequences in their Court submissions [I am aware of].

17. The penalty that would be imposed by the proposed settlement would force DeVille Pharmacies, Inc. and hundreds of other pharmacies like it throughout the United States, to face the genuine prospect of making severe cutbacks or closing their operations and the genuine threat of bankruptcy. From my experience in the LTC pharmacy field and in related trade association activities, I anticipate that if the Settlement goes into effect, the prospect that many smaller LTC pharmacies may have to eventually fold entirely is genuine, and I fear the consequences not only for

those pharmacies and pharmacists but also for their elderly and handicapped patients who, along with the health care system generally, will bear the burden of enduring with reduced or limited access to LTC pharmacy services.

I hereby declare, under penalty of perjury, that the foregoing is true and correct.

Dated December 20 2007

6