UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2007 DEC 21  P 4: 38
U.S. DISTRICT COURT
DISTRICT OF MASS.

NEW ENGLAND CARPENTERS HEALTH )
BENEFITS FUND; PIRELLI ARMSTRONG RETIREE )
MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH )
& WELFARE FUND OF PHILADELPHIA AND )
VICINITY; PHILADELPHIA FEDERATION OF )
TEACHERS HEALTH AND WELFARE FUND; )
DISTRICT COUNCIL 37, AFSCME-HEALTH & )
SECURITY PLAN; JUNE SWAN; BERNARD GORTER, )
SHELLY CAMPBELL and CONSTANCE JORDAN, )

Plaintiffs,

v.

CIVIL ACTION
NO. 1:05 – CV-11148-PBS

FIRST DATABANK, INC., a Missouri Corporation; and
McKESSON CORPORATION, a Delaware Corporation,

Defendants.

### DECLARATION OF DARRELL MCKIGNEY

I hereby declare, pursuant to 28 U.S.C. § 1746, the following:

1. I am over 21 years of age and I am competent to make this Declaration.

2. I make this Declaration based on personal knowledge, except as to matters stated to be on information and belief.

3. I am currently the Executive Director of the Long Term Care Pharmacy Alliance ("LTCPA"), one of the proposed intervenors in this action. Prior to becoming Executive Director, I served as LTCPA's Director of Government Affairs. I am submitting this Declaration in support

of the Motion to Intervene and Oppose the Proposed Settlements made by LTCPA, along with ASCP and DeVille Pharmacies.

4. LTCPA's core mission is to protect and promote the profession and practice of long-term care pharmacy by advocating on issues that are critical to the member pharmacy companies. LTCPA represents the interests of the major national long-term care pharmacies that serve the vast majority of long-term care facility residents nationwide.

5. Up until 2006, a substantial amount of the total volume of prescriptions dispensed by LTCPA member pharmacies were reimbursed by state Medicaid programs, relying almost exclusively on a formula discounting a certain pre-set percentage off of AWP, or "AWP-x%" plus a nominal dispensing fee intended to cover a portion of the specialized dispensing services that long term care pharmacies are required by law to provide. During the class period specified in the Proposed Settlements, Medicaid programs, most of which operated under "AWP-x%" reimbursement formulae, were by far the single largest group of payors for nursing home patient prescription drug benefits.

6. Beginning on January 1, 2006, virtually all of the frail and elderly patients that had previously received prescription medication coverage through Medicaid were shifted out of the Medicaid program into the newly created Medicare Part D program. In turn, the pharmacies were reimbursed by a whole new class of private entities - known as Prescription Drug Plans, or "PDPs" – authorized to administer the new Medicare Part D prescription drug program. Through the process of arms-length contract negotiations, long term care pharmacies entered into reimbursement agreements with each PDP providing benefits to patients residing in long term care facilities they served. Many of these PDP contracts regularly provided for reimbursement based upon a discount off of the FDB-reported AWP price (AWP-x%), plus a dispensing fee. The reimbursement prices agreed to in PDP contracts provide a significant discount to consumers.

4923584

7.  The AWP-based contracts between PDPs and long term care pharmacies are largely fixed and multi-year contracts that have reimbursement rates locked in. As I understand the Proposed Settlements, their implementation would result in a unilateral across-the-board reduction in reimbursements provided under these contracts, wiping out the arms-length agreements achieved by market-driven negotiations.

I hereby declare under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge.

Dated December 20, 2007                              */s/ Darrell McKigney*

4923584