UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW ENGLAND CARPENTERS      :
HEALTH BENEFITS FUND, et al.,

                            :

               Plaintiffs,    :    Civil Action
      v.                    :    No. 05-11148-PBS

FIRST DATABANK, INC., a Missouri   :
Corporation; and MCKESSON
CORPORATION, a Delaware Corporation, :   **ORAL ARGUMENT REQUESTED**

              Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT FIRST DATABANK, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE BY DEVILLE PHARMACIES, LONG TERM CARE PHARMACY
ALLIANCE AND THE AMERICAN SOCIETY OF CONSULTANT PHARMACISTS**

Matthew J. Matule
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Sheila L. Birnbaum (*pro hac vice*)
Thomas E. Fox (*pro hac vice*)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Dated: January 14, 2008         Counsel for Defendant First Databank, Inc.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................2

ARGUMENT ...................................................................................................4

I.     MOVANTS HAVE NO RIGHT TO INTERVENE PURSUANT TO RULE 24(a)...........4

      A.     Movants' Motion Is Untimely And Should Be Denied For That Reason Alone .....5

            1.     Movants Waited For More Than
                 One Year Before Seeking To Intervene.......................................................5

            2.     Movants Will Not Be Prejudiced If They Cannot Intervene .......................7

            3.     The Circumstances Of This Litigation
                 Do Not Militate In Favor Of Intervention....................................................8

      B.     Movants Do Not Have The Requisite Direct And
            Substantial Interest In The Subject Matter Of The Litigation,
            And Any Such Interest Will Not Be Impaired By This Court's Rulings ...............8

      C.     Movants' Attenuated Interest In The AWP
            Figures Is Not Redressable In This Suit, And Any Objections
            They Seek To Raise Are Adequately Represented In The Existing Record..........11

II.    MOVANTS HAVE NOT DEMONSTRATED ANY ENTITLEMENT TO
      PERMISSIVE INTERVENTION PURSUANT TO RULE 24(b) ...................................12

      A.     Movants Have Not Met Rule 24(b)'s
            Requirements For Permissive Intervention............................................................12

      B.     Permissively Intervention Is Unwarranted Because The Interests
            Movants Seek To Advance Are Not At Issue At The Fairness Hearing ...............13

III.   DESPITE MOVANTS' OBJECTIONS, THE SETTLEMENT MEETS THE
      REQUIREMENTS OF RULE 23 AND APPLICABLE LAW .........................................15

CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE**

B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541 (1st Cir. 2006) ............10, 11, 12

Banco Popular de P.R. v. Greenblatt, 964 F.2d 1227 (1st Cir. 1992) ............................................12

Barden v. Harpercollins Publishers, Inc., 863 F. Supp. 41 (D. Mass. 1994) ................................16

Black Fire Fighters Ass'n of Dallas v. City of Dallas, 805 F. Supp. 426 (N.D. Tex. 1992),
    aff'd, 19 F.3d 992 (5th Cir. 1994) ...................................................................................14

Conservation Law Found. of New. Eng., Inc. v. Mosbacher,
    966 F.2d 39 (1st Cir. 1992)......................................................................................8, 12

Daniel v. Dow Jones & Co., 520 N.Y.S.2d 334 (Civ. Ct. 1987) ...................................................16

Fed. Trade Comm'n v. Med Resorts Int'l, Inc., 199 F.R.D. 601 (N.D. Ill. 2001) ...........................5

In re Cmty. Bank of N. Va., 418 F.3d 277 (3d Cir. 2005).........................................................6, 7

In re Lupron® Mktg. & Sales Practices Litig., 228 F.R.D. 75 (D. Mass. 2005) ...........................13

In re Masters Mates & Pilots Pension Plan & Irap Litig., 957 F.2d 1020 (2d Cir. 1992) ............14

In re Relafen Antitrust Litig., 231 F.R.D. 52 (D. Mass. 2005).................................................14, 15

In re Sonus Networks Inc. Sec. Litig., 229 F.R.D. 339 (D. Mass. 2005) ............................5, 9, 12

Mass. Food Ass'n v. Sullivan, 184 F.R.D. 217 (D. Mass. 1999), aff'd sub nom.
    Mass. Food. Ass'n v. Mass. Alcoholic Beverages Control Comm'n,
    197 F.3d 560 (1st Cir. 1999) ...................................................................................8, 13

N.Y. Pub. Interest Research Group, Inc. v. Regents of the Univ. of the State of N.Y.,
    516 F.2d 350 (2d Cir. 1975)..................................................................................................11

NYNEX Corp. v. Fed. Commc'ns Comm'n, 153 F.R.D. 1 (D. Me. 1994) ...................................12

Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197 (1st Cir. 1998)..............................................10, 11

Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370 (1987)........................................12

Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810 (9th Cir. 2001) ......................................10

United Nuclear Corp. v. Cannon, 696 F.2d 141 (1st Cir. 1982)........................................................6

United States v. Metro. Dist. Comm'n, 147 F.R.D. 1 (D. Mass. 1993) ...................................9, 14

United States v. Nanlo, Inc. (Southbridge Evening News), 519 F. Supp. 723 (D. Mass. 1981) ...13

Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111 (10th Cir. 2002) ...................11

Watters v. TSR, Inc., 715 F. Supp. 819 (W.D. Ky. 1989), aff'd, 904 F.2d 978 (6th Cir. 1990)....17

Williams v. Vukovich, 720 F.2d 909 (6th Cir. 1983) ...................................................................14

## **RULES**                                                                     **PAGE**

Fed. R. Civ. P. 23 ...........................................................................................................1, 7, 13

Fed. R. Civ. P. 24 ................................................................................................... passim

## **SECONDARY SOURCES**                                          **PAGE**

Manual for Complex Litigation § 21.62 (4th ed. 2004)................................................................14

Manual for Complex Litigation § 21.643 (4th ed. 2004)..............................................................14

## PRELIMINARY STATEMENT

This action was filed in June 2005, challenging the alleged "unlawful inflation of the 'markup' factor between the so-called wholesale acquisition cost (or 'WAC') and the so-called average wholesale price (or 'AWP') of a large number of prescription pharmaceutical products . . . ."  (Complaint (Docket 1) ¶ 25.)  First Databank ("FDB") vigorously denies plaintiffs' allegations.  Extensive discovery of the issues raised in this case has occurred in this action and in other AWP-related litigation.  Over many months, FDB and plaintiffs engaged in extensive, arms-length settlement negotiations in New York and Boston.

In early August 2006, the plaintiffs and FDB agreed on a settlement (the "Settlement").  In November 2006, the Court preliminarily approved the Settlement and a settlement class (the "Settlement Class"), which does not include pharmacies.  In June 2007, DeVille Pharmacies, Inc. ("DeVille"), the American Society of Consultant Pharmacists and Long Term Care Pharmacy Alliance (collectively, "Movants") notified the Court by letter that they objected to the Settlement (and the settlement of a related suit also being considered by the Court) and would seek to intervene "at the appropriate time."  (Docket 277 (Movants' letter), at 1-2.)

In August 2007, following further notice-related submissions, the Court directed that joint notice be distributed to the Settlement Class, scheduled the Rule 23(e) fairness hearing for January 22, 2008, and set December 21, 2007 as the deadline for Settlement Class members to opt out or object.  On December 21, 2007, the very last day of the opt-out period, Movants filed timely objections and a belated motion to intervene.  Movants ought not to be permitted to intervene at this late date for at least the following three reasons.

First, the law requires Movants to promptly seek to intervene and delays of seven months have been held to be too long.  Far from acting promptly, Movants chose instead to wait

more than one year to file their motion, until the eve of the fairness hearing and well after the extensive preliminary settlement approval proceedings.

Second, Movants lack a direct, redressable interest in the litigation. They are a group of pharmacies that are paid, pursuant to the terms of their contracts, a price allegedly based on the AWP. Their only "interest" is in the economic terms of their own contracts; they have no legally cognizable interest in how the AWP markup is calculated. Thus, Movants seek to intervene without asserting a single legally protectable right that can be addressed by their participation in the litigation.

Third, Movants do not add anything to this litigation by intervening. Those that have filed amicus briefs and objections have asserted the same broad and contradictory arguments that Movants now seek to assert. Movants' arguments are aimed at the effect the Settlement may have on pharmacies in general and not on the Settlement Class. The Court, when considering the fairness of the Settlement, is obligated to consider its fairness only to the Settlement Class.

**STATEMENT OF FACTS**

On June 2, 2005, plaintiffs filed a purported class action against defendants FDB and McKesson. The complaint alleges that FDB and McKesson wrongfully increased the spread between the published WAC -- the amount retailers pay for pharmaceuticals -- and the published AWP. (Complaint (Docket 1) ¶¶ 1-2.) The plaintiffs allege that consumers and the third parties who paid for their drugs paid more for the drugs than they should have as a result of FDB and McKesson's alleged conduct. (Id. ¶ 14.) FDB vigorously denies the plaintiffs' allegations. The parties have engaged in extensive discovery. (Declaration of Sheila L. Birnbaum, Esq. ("Birnbuam Decl.") (Exhibit A hereto) ¶ 4.) FDB has produced thousands of pages of

documents to plaintiffs' counsel and provided numerous depositions of employees and former

employees in this and other AWP-related litigation.  (Id.)

        FDB and the plaintiffs's counsel have held countless meetings and conference

calls in New York and Boston spanning in excess of one year, where both sides vigorously

advocated their positions.  (Id. ¶ 5.)  They exchanged numerous drafts of potential settlement

agreements before agreeing on the Settlement in early August 2006.  (Id.; see also Docket 156

(signed settlement agreement), at 36.)  Based on comments by the Court, the settlement was

modified.  On November 1, the parties requested that the Court preliminarily approve the

Settlement, certify a settlement class and schedule a final fairness hearing.  (See Docket 150 et

seq. (joint motion regarding settlement), at 1.)  By an electronic order dated November 22, the

Court preliminarily approved the Settlement and certified the Settlement Class.  The Settlement

basically provides, inter alia, that FDB will change the WAC to AWP markup to 1.20 in

reporting the AWP for certain NDC's and will cease publishing the AWP within two years in

exchange for a release of the claims against FDB.  (Docket 156, at 18-19.)  This Settlement

provides the Settlement Class with several of its litigation demands, e.g., injunctive relief,

without the attendant costs and risks of litigation or an ineffective claim process.  It is the result

of arms-length negotiation and it is fair, adequate and reasonable.  (See Birnbaum Decl. (Exhibit

A) ¶ 6.)

        At the May 22, 2007 status conference, the Court scheduled a preliminary

settlement approval hearing in District Counsel 37 Health & Security Plan v. Medi-Span, D.

Mass. Civ. A. No. 1:07-10988-PBS, for June 21.  On June 20, the day before that hearing,

Movants wrote to the Court about the proposed FDB and Medi-Span settlements.  "[W]e write to

advise the Court that DeVille, ASCP and LTCPA intend, and expressly reserve their right, to

intervene to oppose and/or object to final approval of the Proposed Settlements at the appropriate time . . . ."  (Docket 277 (letter from Movants), at 2.)  Movants claimed that they "would be directly and adversely affected by (i) the proposed settlement between defendant First Databank, Inc . . . and the purported class in [New England Carpenters Health Benefits Fund v. First Databank, Inc.], preliminary [sic] approved by the Court in orders dated November 14, 2006, November 22, 2006 and June 6, 2007, and (ii) the parallel settlement between [another defendant] and the same purported class . . . , currently scheduled for a preliminary approval hearing on June 21, 2007."  (Id. at 1.)  Despite Movants' assertions, the Court approved the parallel Medi-Span settlement on June 21.  (See electronic clerk's notes for June 21 proceedings in District Counsel 37 Health & Security Plan v. Medi-Span.)

Upon motion by the settling parties, on August 20, the Court scheduled the fairness hearing for January 22, 2008.  (Docket 314, at 3.)  Movants filed the instant motion to intervene along with ten pages of objections to the Settlement on December 21 -- just (i) one month prior to the fairness hearing, (ii) nearly six months after preliminary approval of the Medi-Span settlement, (iii) more than one year after the Court's preliminary approval of the Settlement, and (iv) right at the Court's deadline for class members to file their objections,

## **ARGUMENT**

## I.   **MOVANTS HAVE NO RIGHT TO INTERVENE PURSUANT TO RULE 24(a)**

Movants are seeking to intervene in this litigation pursuant to Rule 24(a) or Rule 24(b) of the Federal Rules of Civil Procedure, but have neither the right nor ought to receive permission to do so.  Rule 24(a) of the Federal Rules of Civil Procedure requires a (1) timely application (2) by an intervener with a "direct and substantial interest in the subject matter of the litigation" (3) whose ability to protect that interest would be "impair[ed] or impede[d]" by a disposition in the litigation and (4) whose "interest must be inadequately represented by existing

parties" before the Court may allow intervention by right pursuant to Rule 24(a).  In re Sonus

Networks Inc. Sec. Litig., 229 F.R.D. 339, 344 (D. Mass. 2005) (denying motion to intervene by

a substitute class representative who moved after a court-ordered deadline to do so).  The Court

must deny Movants' motion if they fail to meet any of these criteria.  Id. at 347.[1]

### A. Movants' Motion Is Untimely And Should Be Denied For That Reason Alone

The fundamental requirement of Rule 24(a) is that the motion must be timely.

FDB agrees with Movants that the appropriate factors to use in determining that Movants'

motion was untimely are:

> (i) the length of time the prospective interveners knew or reasonably should have
> known of their interest before they petitioned to intervene; (ii) the prejudice to
> existing parties due to the intervener's failure to petition for intervention promptly;
> (iii) the prejudice the prospective interveners would suffer if not allowed to
> intervene; and (iv) the existing of unusual circumstances militating for or against
> intervention.

Id. at 345.  Applying those factors, Movants' motion is grossly untimely by any measure.

### 1. Movants Waited For More Than One Year Before Seeking To Intervene

Movants admit in their memorandum that they knew in November 2006 that the

Court preliminarily approved the Settlement that Movants now wish to challenge.  (See Movants'

Brief (Docket 416), at 11.)  Despite informing the Court seven months later in June 2007 that

they would seek to intervene and the basis for their objections, Movants chose to wait for another

six months -- and more than a year in total -- before moving to intervene.

---

[1]     Further, Movants' failed to comply with the requirement that their motion "be
accompanied by a pleading that sets out the claim or defense for which intervention is sought."
Fed. R. Civ. P. 24(c).  This failure is a "total dereliction of the Rule" that independently
"warrants dismissal of the motion."  Fed. Trade Comm'n v. Med Resorts Int'l, Inc., 199 F.R.D.
601, 606 (N.D. Ill. 2001) (denying motion to intervene because one party who moved to
intervene "never filed a pleading, nor did they endeavor to adopt the [other party moving to
intervene's] pleading").

In <u>United Nuclear Corp. v. Cannon</u>, the First Circuit determined that intervention was properly denied to a movant who similarly acted in an untimely way to protect its interest. In that case, in August 1981, a decommissioned nuclear power plant's operator challenged the constitutionality of a Rhode Island statute that required the operator to post a sizable twenty-year bond to defray decontamination costs.  696 F.2d 141, 142 (1st Cir. 1982).  The operator and Rhode Island were unable to reach a settlement.  <u>Id.</u>  So, in March 1982, the operator and Rhode Island informed the district court that the litigation could be resolved with summary judgment cross-motions.  <u>Id.</u>  That same day, an environment group, CLF, informed the parties that it would seek to intervene, which it did in April -- more than seven months after the litigation began.  <u>Id.</u>  The district court denied CLF's motion to intervene, and CLF appealed.  <u>Id.</u>  The First Circuit affirmed the denial of the motion to intervene because, under the four-factor test of timeliness, CLF's seven-and-one-half-month delay was untimely:

> [T]he existence of the interest was obvious <u>from the time the suit was filed</u>.  . . . CLF's belated motion to intervene, if granted, could cause substantial delay.  CLF might well seek to reopen negotiations and discuss areas already covered by the parties or seek further discovery.  CLF might even seek to prevent the case from going to summary judgment.

<u>Id.</u> at 143 (emphasis added).

Similarly, here, Movants knew of their alleged interest in the litigation, by their own admission, no later than November 22, 2006.  Like CLF, Movants informed the Court and the parties of their intent to intervene (here, on June 20, 2007), before actually moving to intervene.  Movants then waited six more months -- more than five months longer than CLF waited to finally move -- to actually seek to intervene.  Movants' motion is therefore untimely and should be denied for that reason alone.

Movants' only apparent defense is that they moved "within the time period . . . for objection and exclusion from the class," and rely upon <u>In re Community Bank of Northern</u>

<u>Virginia</u> to support that proposition.  (Movants' Brief, at 11-12.)  However, that court held only that "[t]he time frame in which a <u>class member</u> may file a motion to intervene challenging the <u>adequacy of class representation</u> must be at least as long as the time in which s/he may opt-out of the class."  418 F.3d 277, 314 (3d Cir. 2005) (emphasis added).  Put differently, the court did <u>not</u> hold, as Movants' brief suggests it did, that <u>any party</u> could seek to intervene during the period that <u>class members</u> could seek to opt-out.  After all, the point of class notice is to inform absent class members of three things:  (1) that a purported class action was filed on their behalf, (2) that they have a limited opportunity to opt-out -- two and a half months in <u>In re Community Bank</u>, <u>id.</u> at 287 -- and (3) that they have a right to enter an appearance through counsel.  <u>See</u> Fed. R. Civ. P. 23(c)(2).  Unlike an absent class member trying to intervene shortly after learning of his or her interest through court-authorized class notice, Movants have known of their purported interest for a long time and chose to delay and to seek to intervene at the last possible minute.

## 2.     <u>Movants Will Not Be Prejudiced If They Cannot Intervene</u>

As Movants themselves argue in their brief, Movants are paid a lower percentage of AWP than they used to be paid in prior years.  (<u>See</u> Movants' Brief, at 21).  Movants explain that their contracts were renegotiated to offset increases in AWP.  (<u>Id.</u> at 20.)  If this is true, then Movants can adequately protect themselves by insisting on renegotiating those same contracts to offset any decline in AWP.

Movants' argument is flawed for another reason:  whether the Court approves the Settlement resulting in a reduced AWP, or if FDB were to change its editorial policy, even in the absence of court approval of the Settlement, resulting in a reduced AWP, there is <u>the exact same effect</u> on Movants.  It is simply an editorial decision by a private publisher of data about the calculations performed on the data and the data reported.  The Settlement simply reflects that agreed-upon change, and Movants have no legal right to challenge such an action by FDB.

Likewise, if FDB chose to cease publishing AWP in another context, Movants would have no right to challenge it.

### 3. The Circumstances Of This Litigation Do Not Militate In Favor Of Intervention

The final factor this Court should consider before concluding that Movants' motion was untimely is if unusual circumstances militate for or against intervention. Significantly, there are no unusual circumstances at issue; Movants' motion is simply untimely. Additionally, <u>Movants have no right to be involved</u>. Movants have not demonstrated they have any legally enforceable interest that may be taken into consideration. Movants' claimed "unusual circumstance" -- they were excluded from the settlement discussions -- is illusory, and is not supported by any of the three affidavits submitted in connection with their motion.

### B. Movants Do Not Have The Requisite Direct And Substantial Interest In The Subject Matter Of The Litigation, And Any Such Interest Will Not Be Impaired By This Court's Rulings

Movants must also demonstrate that their asserted interest "bear[s] a sufficiently close relationship to the dispute between the original litigants" and "is direct, not contingent." <u>Mass. Food Ass'n v. Sullivan</u>, 184 F.R.D. 217, 220 (D. Mass. 1999) (denying motion to intervene), <u>aff'd sub nom.</u> <u>Mass. Food. Ass'n v. Mass. Alcoholic Beverages Control Comm'n</u>, 197 F.3d 560 (1st Cir. 1999).[2]

Here, at most, all that Movants have asserted are economic and contractual interests not in the litigation – *i.e.*, their profit margins based on their own contractually-set

---

[2]     The First Circuit has suggested that a more substantial interest is required where "individuals litigate private disputes" than "where public law disputes affecting federal regulatory programs are at issue."  <u>Conservation Law Found. of New Eng., Inc. v. Mosbacher</u>, 966 F.2d 39, 42-43 (1st Cir. 1993).

prices. (<u>See</u> Movants' Brief, at 14, 20.)  Those interests, such as they are, fail to meet the "direct

and substantial" test required by Rule 24(a).  <u>See</u> <u>In re Sonus</u>, 229 F.R.D. at 344.

       For example, in <u>United States v. Metropolitan District Commission</u>, MASPC

(which represented sewage disposal firms) sought to intervene in the ongoing litigation over the

Boston Harbor clean-up.  147 F.R.D. 1, 2 (D. Mass. 1993).  The court had previously ordered the

MWRA to "submit a plan for the management of septage and the control of septage

disposal . . . ."  <u>Id.</u>  Because of that order, MASPC sought to intervene to participate "in the

development of a proper septage disposal system."  <u>Id.</u> at 4.  The court denied the motion to

intervene and rejected MASPC's interest:

> MASPC also asserts an interest in the development of a proper septage disposal system.  . . .  To have an interest that justifies intervention, however, <u>that interest must be directly, not tangentially, related to the subject matter of the lawsuit</u>.  The central purpose of the present litigation is to ensure that the MWRA complies with the Clean Water Act.  Without doubt, there are constituent, environmental purposes, one of which is the implementation of an appropriate plan for septage disposal.  Nevertheless, <u>an interest must be measured in relation to the real focus of the litigation</u>.  Here, the focus is enhancing the quality of certain waters.  MASPC's interest . . . bears only an oblique relation to the present legal action.

<u>Id.</u> at 4-5 (emphasis added). [3]

       Here, to the extent Movants have any interest, it is limited to nothing more than

how they choose to use the AWP published figure in their own business dealings and not a

legally cognizable interest in how AWP is calculated or this litigation.  Therefore, Movants' so-

called interest "bears only an oblique relation to the present legal action."  <u>Id.</u> at 5.

---

[3]     MASPC also had asserted an interest in protecting its members' economic interests, because it claimed the plan could subject its members to liability.  The court rejected this interest because it "will not adversely affect the economic interests of MASPC's members."  <u>Id.</u> at 4 (citation omitted).

9

Additionally, Movants erroneously declare that there is a "well-settled rule" that a contractual or economic stake in the litigation is a sufficient interest for intervention under Rule 24(a).  There is no such rule in the First Circuit.  Indeed, far from a "well-settled rule," the First Circuit's statement that "[a]n intervenor has a sufficient interest in the subject of the litigation where the intervenor's contractual rights may be affected by a proposed remedy" is inapposite because, unlike here, that litigation expressly concerned a contract involving the proposed intervener.  B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543, 545 (1st Cir. 2006).  The court held that the intervener -- who claimed that it had been assigned that contract -- had sufficient interest to intervene because, had the demanded specific performance been enforced, it  "obviously would affect [the intervener's] contractual rights." Id. at 545.  This litigation is not over any contract, let alone one in which Movants have any legal interest.[4]

Further, Public Service Co. of New Hampshire v. Patch does not support Movants' alleged right to intervene based on an economic interest.  In Patch, the First Circuit affirmed the denial of a very large electricity customer's motion to intervene in litigation over deregulation of New Hampshire's electricity market.  136 F.3d at 201-03, 205.  The court declared that:  "It is settled beyond peradventure, however, that an undifferentiated, generalized interest in the outcome . . . is too porous a foundation on which to premise intervention . . . . [E]very electricity consumer in New Hampshire . . . yearns for lower electric rates." Id. at 205. Here, Movants' interest in the Settlement is the same as any entity paid based on the published

---

[4]    In Southwest Center for Biological Diversity v. Berg, cited by Movants, the Ninth Circuit determined that that the interveners asserted an interest "protectable under some law" with "a relationship between the legally protected interest and the claims at issue" and therefore had "sufficient legally protectable interests to support intervention as of right."  268 F.3d 810, 818, 820 (9th Cir. 2001).  Movants have not identified a legally protectable interest in the AWP.

AWP -- no matter how much of Movants' profits come from AWP-based income.  Movants

claim that the settlement will reduce their profits, but the customer in <u>Patch</u> made the same claim.

    The other flaw in Movants' claimed economic interest is that there is nothing

stopping FDB from unilaterally altering the editorial decisions that result in AWP.  The <u>Patch</u>

court noted that "numerous market variables will impact New Hampshire electric rates even

after" deregulation, "thus demonstrating the fatally contingent nature of the asserted economic

interest."  <u>Id.</u> at 206.  There is no reason that the outcome of the AWP calculation cannot change

-- either because of the changes in the underlying numbers or in the editorial calculus.[5]

    **C.**    **Movants' Attenuated Interest In The AWP**
             **Figures Is Not Redressable In This Suit, And Any Objections**
             <u>**They Seek To Raise Are Adequately Represented In The Existing Record**</u>

    The final requirement for intervention under Rule 24(a) is that the Movants must

demonstrate that their interests in the matter being litigated are not adequately represented by the

existing parties to the litigation.  Here, Movants do not assert a single protectable interest that is

placed at issue in the litigation; their only alleged interest is of their own creation and in their

own contracts, which they freely negotiated and which are not at issue in this suit.  That

"interest" should be disregarded for Rule 24 intervention purposes because it is not legally

protectable and represents relief to which Movants are not entitled.

    The First Circuit has held that if an interest is "thin and widely shared," then it

bears a heavier burden to show inadequate representation.  <u>B. Fernández</u>, 440 F.3d at 546.  Here,

not only have other pharmacy groups filed amicus briefs and seek to participate at the fairness

---

[5]    The four other cases Movants cite all involve challenges to government decisions, which
are not at issue here.  <u>See</u> <u>N.Y. Pub. Interest Research Group, Inc. v. Regents of the Univ. of the
State of N.Y.</u>, 516 F.2d 350, 352 (2d Cir. 1975) (per curium); <u>Utahns for Better Transp. v. U.S.
Dep't of Transp.</u>, 295 F.3d 1111, 1112-13, 1115-16 (10th Cir. 2002); <u>Conservation Law Found.</u>,
966 F.2d at 40; <u>NYNEX Corp. v. Fed. Commc'ns Comm'n</u>, 153 F.R.D. 1, 3 (D. Me. 1994).

hearing, but also Movants alleged interest is so thin. [6]  The only thing that matters is if the

Settlement is fair, adequate, and reasonable <u>to the Settlement Class</u>.[7]  Moreover, similar

objections have been made in the amicus briefs or in the record by others. The Court should not

be distracted by Movants' criticism of the composition of the settling parties.  <u>See</u> Movants' Brief,

at 16 ("the settling parties do not include . . .").  Movants do not have any legally protectable

interest; they have no interest that needs to be adequately represented.

## II.    MOVANTS HAVE NOT DEMONSTRATED ANY ENTITLEMENT TO PERMISSIVE INTERVENTION PURSUANT TO RULE 24(b)

Rule 24(b) of the Federal Rules of Civil Procedure permits intervention if they

have "a claim or defense that shares with the main action a common question of law or fact."

This Court has the discretion to deny intervention, and it ought to do so here.  <u>In re Sonus</u>, 229

F.R.D. at 345.

### A.    Movants Have Not Met Rule 24(b)'s Requirements For Permissive Intervention

Under Rule 24(b), Movants may only be allowed to intervene if their motion is

timely.  Fed. R. Civ. P. 24(b).  However, the First Circuit has explained that "the standards of

timeliness for a Rule 24(a) motion are less strict than for a Rule 24(b) motion because greater

interests are at stake in the former case."  <u>Banco Popular de P.R. v. Greenblatt</u>, 964 F.2d 1227,

1230 n.2 (1st Cir. 1992) (affirming denial of motion to intervene).  Stated differently, while both

---

[6]    Movants additionally argue that DeVille should be allowed to intervene as a class member.  However, to the extent DeVille is a member of the Settlement Class, it is adequately being represented and its objections will be given due consideration by the Court regardless of whether it intervenes.

[7]    Movants rely on <u>United States v. Stringfellow</u>, a vacated decision, to argue that the rights of third parties should be considered.  That decision was vacated because the district court's ruling was not subject to interlocutory appeal.  <u>See</u> <u>Stringfellow v. Concerned Neighbors in Action</u>, 480 U.S. 370, 380 (1987).

Rule 24(a) and Rule 24(b) motions must be timely, the Court should be less forgiving about delays in filing of Rule 24(b) motions.  Simply put, Movants waited too long to intervene.

The Court also should consider three other factors in determining that Movants should not be allowed to intervene permissively:

> (1) [whether] "the applicant's claim or defense and the main action have a question of law or fact in common;" (2) [whether] the applicant's interests are not adequately represented by an existing party; and (3) [whether] intervention would not result in undue delay or prejudice to the original parties.

Mass. Food, 184 F.R.D. at 224 (citations omitted).[8]

Here, Movants raise, as a question of law, whether the proposed settlement is unfair to them and the entities they represent.  This is not a common question with the question of law before the Court, which is whether the proposed settlement is unfair to the Settlement Class itself.  See Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."); In re Lupron® Mktg. & Sales Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005) ("[T]he court has a fiduciary duty to absent members of the class in light of the potential for conflicts of interest among class representatives and class counsel and the absent members.  'Rule 23(e) imposes on the trial judge the duty of protecting absentees . . . .'").

**B.     Permissively Intervention Is Unwarranted Because The Interests Movants Seek To Advance Are Not At Issue At The Fairness Hearing**

Even if Movants satisfy the requirements for permissive intervention under Rule 24(b) -- which FDB denies they do -- the Court should nonetheless exercise its discretion and

---

[8]     Movants suggest that, by challenging an order, they present a common question of law. (See Movants' Brief at 18.)  However, courts have denied permissive intervention in similar situations.  See, e.g., United States v. Nanlo, Inc. (Southbridge Evening News), 519 F. Supp. 723, 729 (D. Mass. 1981) (denying defendant's sole shareholder's motion to intervene to challenge judicial enforcement of an FTC order against defendant because there were no common issues).

deny intervention.  Movants have not -- and can not -- put forward any arguments <u>related to the</u> <u>Settlement Class</u> that have not already been argued.

At the fairness hearing, the Court should consider whether the settlement is fair to the <u>absent class members</u>, not to third parties who might be tangentially impacted by the settlement.  The <u>Manual for Complex Litigation</u> and <u>In re Relafen Antitrust Litigation</u> recommend that the Court consider fifteen factors -- but none of them include consideration of the effect on third parties.  <u>See</u> <u>In re Relafen Antitrust Litig.</u>, 231 F.R.D. 52, 71 (D. Mass. 2005) (approving class action settlement); <u>Manual for Complex Litigation</u> § 21.62 (4th ed. 2004).  The Court should analyze "the treatment of class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class."[9]  <u>Id.</u>  Movants -- with the exception of DeVille -- are not members of the Settlement Class and do not have similar claims as Settlement Class members.[10]

Further, it is within the Court's discretion to deny permissive intervention to avoid "open[ing] the floodgates to innumerable others" at the fairness hearing.  <u>Metro. Dist.</u>, 147 F.R.D. at 6 (denying permissive intervention by MASPC because "allow[ing] MASPC to intervene would open the floodgates to innumerable others with the potential for drowning the whole project in a sea of litigation").  Also, other pharmacy groups have filed amicus briefs.

---

[9]     The <u>Manual</u> excludes non-parties from its list of possible objectors.  <u>See</u> <u>id.</u> § 21.643.

[10]     Movants' other cases involve consent decrees that (i) foreclose a non-settling party's rights or (ii) involve Title VII discrimination cases, which the Supreme Court has mandated require strict scrutiny.  <u>See</u> <u>In re Masters Mates & Pilots Pension Plan & Irap Litig.</u>, 957 F.2d 1020, 1026 (2d. Cir. 1992) (reversing approval of consent decree in class action that barred non-settling defendants' claims against settling defendants); <u>Williams v. Vukovich</u>, 720 F.2d 909, 921-22 (6th Cir. 1983) (remanding to district court consent decree in Title VII litigation); <u>Black Fire Fighters Ass'n of Dallas v. City of Dallas</u>, 805 F. Supp. 426 (N.D. Tex. 1992) (declining to enter consent decree because its required immediate promotions of twenty-eight black firefighters, which was not narrowly tailored), <u>aff'd</u>, 19 F.3d 992 (5th Cir. 1994).

## III.   DESPITE MOVANTS' OBJECTIONS, THE SETTLEMENT
##        MEETS THE REQUIREMENTS OF RULE 23 AND APPLICABLE LAW

Movants' objections to the Settlement fare no better than their request to intervene, and are completely without merit.[11]

**First**, the Settlement is not the result of collusion.  "When sufficient discovery has been provided an the parties have bargained at arms-length, there is a presumption in favor of the settlement."  In re Relafen, 231 F.R.D. at 71-72 (citation omitted).  Here, the parties undertook extensive discovery over many months.  (Birnbaum Decl. (Exhibit A) ¶¶ 5-6.)  FDB has provided thousands of pages of documents to plaintiffs' counsel and numerous depositions.  (Id.)  Following discovery in this and other AWP-related cases, the parties engaged in a laborious, arms-length negotiation, which included numerous meetings in New York and Boston as well as numerous conference calls.  (Id. ¶¶ 5-6.)  These often-contentious meetings resulted in numerous working drafts of the Settlement which were refined as both sides vigorously advocated their positions and were amended in response to issues raised by the Court.  (Id. ¶ 7.)

**Second**, Movants ignore the simple fact that they do not have an enforceable, legal right affected by the Settlement.  They claim that the Settlement would cause them "radical adverse consequences," (see Movants' Brief, at 25-26), but they fail to explain how a change in how FDB reports the AWP markup, which would result in a reduction in the published AWP, would impact any legal right.  They claim that it would be a "blow" to small, rural pharmacies with "limited reserves" and then explain elsewhere that market pressures have otherwise reduced their reimbursement rates.

---

[11]      To the extent that Deville is a member of the Settlement Class, the Court should only consider DeVille's objections that bear on the fairness of the Settlement to the Settlement Class and not to entities not within the Settlement Class.

Any interest Movants may have in AWP is their own creation.  It does not rise to the level of a legally protectable interest -- and certainly not as a legally protectable interest against FDB in the context of this litigation.  Further, the Court is not expected to consider the impact of the Settlement on Movants who are not members of the Settlement Class.  The point of the fairness hearing is for the Court to fulfill its fiduciary duty <u>to absent class members</u>, not non-parties who wish to avoid a small decrease in profits.

**<u>Third</u>**, the ultimate relief sought by the Movants – to impact how FDB publishes AWP and to force its continued publication. -- simply is unattainable under well-settled state law and the First Amendment.  As a publisher of information, FDB owes no general duty to Movants for issues arising out of its content, AWP.  <u>See, e.g.</u>, <u>Barden v. Harpercollins Publishers, Inc.</u>, 863 F. Supp. 41, 44-45 (D. Mass. 1994) (finding publisher had no cognizable duty to book buyer to check facts in book published thus dismissing negligent misrepresentation claim; and finding "any temptation for the Court to create such a duty is tempered by the 'gentle tug of the First Amendment' and the values embodied therein.") (quoting <u>Winter v. G.P Putnam's Sons</u>, 938 F.2d 1033, 1037 (9th Cir. 1991)).  FDB is not aware of any cognizable legal theory under which it would be beholden to Movants to publish its content in a certain way.

Indeed, to find that Movants had the ability to impact FDB's editorial decisions regarding its content would run contrary to the First Amendment.  <u>See, e.g.</u>, <u>Daniel v. Dow Jones & Co.</u>, 520 N.Y.S.2d 334, 335-38 (Civ. Ct. 1987) (holding that absent proof of knowing falsity or reckless disregard for the truth First Amendment bars liability against news service for the publication of allegedly false information).  The First Amendment "safeguards the freedom of individuals to express themselves . . .  and leaves to the individual receiving their message the

decision whether to accept or reject, emulate or ignore."  Watters v. TSR, Inc., 715 F. Supp. 819, 820-22 (W.D. Ky. 1989), aff'd, 904 F.2d 978 (6th Cir. 1990).

       **Fourth**, the editorial changes FDB agreed to in the Settlement are both fair and reasonable.  They are fair because the Settlement Class receives one of their litigation demands -- injunctive relief.  They are reasonable because they encourage judicial efficiency.  FDB's agreed editorial changes about how it reports the WAC to AWP markup will eliminate any future claims about the manner in which AWP was published.

       **Fifth**, Movants -- like several of the entities who have filed amicus briefs -- advance inconsistent purported ramifications when discussing the editorial change to AWP that will be implemented after the approval of the Settlement.  The entities argue that they never benefited from any increase AWP because of quick adjustments in the market or because their reimbursement rates are calculated from AWP and other factors (in Movants' case, such as the premium disbursement fee that they receive and other pharmacies do not).  Yet, the entities inconsistently argue that a change in AWP for which they will have had almost two years notice prior to its implementation somehow will wreck their businesses.

       **Lastly**, as the record demonstrates, the Class Action Settlement is not the product of collusion but rather is consciously tailored to address all of the relevant factors required for approval pursuant to Fed. R. Civ. P. 23 and applicable law.

## CONCLUSION

       Movants have not acted timely; they waited for more than a year to seek to intervene, and such delay is fatal to both Rule 24(a) and Rule 24(b) intervention.  Further, they have no interest in the AWP calculation at the issue in this settlement; they only have an independent interest in their own contractual arrangements.  As such, they have no common question of law or fact with the litigation or the Settlement Class.  Accordingly, the Court should

deny their motion to intervene and, based on the entire record and all of the relevant factors,

overrule their objections to the Settlement.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), FDB respectfully requests oral argument and to be

heard on this motion.

Dated:  January 14, 2008                     Respectfully submitted,

                                              /s/ Matthew J. Matule
                                             Matthew J. Matule (BBO #632075)
                                             SKADDEN, ARPS, SLATE,
                                                MEAGHER & FLOM LLP
                                             One Beacon Street
                                             Boston, Massachusetts  02108
                                             (617) 573-4800
                                             mmatule@skadden.com

                                             Sheila L. Birnbaum (admitted *pro hac vice*)
                                             Thomas E. Fox (admitted *pro hac vice*)
                                             SKADDEN, ARPS, SLATE,
                                                MEAGHER & FLOM LLP
                                             Four Times Square
                                             New York, New York  10036
                                             (212) 735-3000

                                             Counsel for Defendant
                                             First Databank, Inc.


## CERTIFICATE OF SERVICE

I, Matthew J. Matule, hereby certify that the foregoing document filed through the
ECF system will be sent electronically to the registered participants as identified on the Notice of
Electronic Filing (NEF) and paper copies will be sent by overnight delivery to those indicated as
non-registered participants on January 14, 2008.

Dated:  January 14, 2008                      /s/ Matthew J. Matule
                                             Matthew J. Matule

18

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW ENGLAND CARPENTERS          :
HEALTH BENEFITS FUND, et al.,

                                :

              Plaintiffs,          Civil Action
    v.                          :    No. 05-11148-PBS

FIRST DATABANK, INC., a Missouri   :
Corporation; and MCKESSON
CORPORATION, a Delaware Corporation, :

                                :

              Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF SHEILA L. BIRNBAUM, ESQ.

I, SHEILA L. BIRNBAUM, hereby declare as follows:

1.      I am an attorney duly admitted to practice law in the State of New York, and am a partner in the law firm of Skadden, Arps, Slate, Meagher & Flom LLP.

2.      I have substantial experience in defending complex litigation. I also have substantial experience negotiating the resolution of such matters.

3.      I represent First Data Bank, Inc. ("FDB") in the above-captioned matter and was the lead outside negotiator for FDB of the Class Action Settlement now before the Court. Accordingly, I am personally familiar with the facts giving rise to this litigation, the facts surrounding the negotiation of its resolution, and the terms of the proposed settlement.

4.      The Class Action Settlement in this case is the product of hard-fought advocacy among highly experienced and skilled attorneys. The negotiations that led to the Class Action Settlement were conducted at arms' length and without collusion.

5.      In connection with this case -- as well as in connection with other AWP-related litigation to which FDB is not a party -- FDB produced many thousands of pages of

documents to Class Counsel for review.  Upon information and belief based on discussions with FDB and its California counsel, FDB has made available over 160,000 pages of documents as well as 12 years worth of pricing data for all National Drug Codes on FDB's database.

6.       In addition, upon information and belief based on discussions with FDB and its California counsel, numerous depositions of employees and former employees of FDB have occurred in this case and other AWP-related cases over the subject of this litigation to which Class Counsel was present for, had access to, or conducted; namely, 18 deposition and witness interview transcripts of FDB employees from other AWP matters and investigations have been made available in addition to the depositions conducted in this case of former employees Kay Morgan, formerly the manager of product knowledge-based services at FDB, and Alisha Nielsen, formerly an assistant to Ms. Morgan, which alone comprised over 14 hours of testimony.

7.       Defendants and Class Counsel engaged in numerous meetings and conference calls in New York and Boston spanning over a year.  During these often contentious sessions, both sides vigorously advocated their positions.  Following numerous drafts of potential settlement agreements, the parties arrived at the current Class Action Settlement, which was modified, *inter alia*, due to concerns raised by the Court in the Fall of 2006.

8.     These negotiation sessions were conducted at arm's-length and resulted in a Class Action Settlement agreement that is not the product of collusion but rather is consciously tailored to address all of the relevant factors required for approval pursuant to Fed. R. Civ. P. 23 and applicable law.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 14, 2008 in New York, New York.

Sheila L. Birnbaum, Esq.
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000