UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, and DISTRICT 37 HEALTH AND SECURITY FUND,<br><br>                          Plaintiffs,<br><br>        v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                          Defendants. | CIVIL ACTION: 1:05-CV-11148-PBS |

## DECLARATION OF ARTHUR STEINBERG, ADMINISTRATOR OF THE PHILADELPHIA FEDERALATION OF TEACHERS HEALTH AND WELFARE FUND, IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Arthur Steinberg, declare under penalty of perjury under the laws of the United States of America that:

1. I am currently the Administrator for the Philadelphia Federation of Teachers Health and Welfare Fund, located at 1816 Chestnut Street, Philadelphia, PA 19103. ("PFTHWF"). I have been the Administrator for PFTHWF since July 1, 1996.

2. PFTHWF is a non-ERISA welfare plan that provides health and welfare benefits to the members of The Philadelphia Federation of Teachers (the "Union"). The Union represents over 14,000 employees and is the largest public-employee labor union in Philadelphia. Types of

1

employees covered include teachers, secretaries, NTA's, paraprofessionals, food service, Head Start Employees, professional technical employees, supportive service employees, and Comprehensive Early Learning Center employees.

3. PFTHWF provides prescription drug benefits to nearly 40,000 members of the Union, including dependants and retirees. PFTHWF beneficiaries reside in numerous states in the United States.

4. I am aware of the allegations in this case and have been deposed as a representative of PFTHWF on various issues related to this litigation.

5. I understand that Plaintiffs claim that McKesson and First Data Bank ("FDB"), beginning in 2002, conspired to artificially increase the WAC-AWP ratio from 20% to 25% on hundreds of brand name drugs. I further understand that this increase did not reflect any change in the actual price of the drugs but was done solely to benefit McKesson and FDB.

6. Neither I, nor to my knowledge anyone else at PFTHWF, was aware of the conspiracy to artificially increase the WAC-AWP ratio until the late summer or early fall of 2005.

7. While we were aware of an increase in the overall expenditures for prescription drugs by PFTHWF, we were unaware of an increase in the WAC-AWP ratio in 2002. No one at PFTHWF had access to the FDB database that reflects FDB's published AWPs. No one at PFTHWF has access to AWP and/or WAC information on a drug-by-drug basis for the drugs that are included in PFTHWF's prescription drug benefit. Thus, there was no way that PFTHWF could have learned of the conspiracy on its own investigation.

8. If PFTHWF had known that the increase it observed in the overall expenditures for prescription drugs was due, at least in part, to the increase in the WAC-AWP ratio, *i.e.*, the

001821-13 157759 V1

scheme, PFTHWF would have demanded that our reimbursement for pharmaceuticals provided to members of the Union be reduced accordingly. Any negotiation with our PBM would have started by eliminating the resulting increase in reimbursement by PFTHWF that resulted from the scheme.

9. Paying the lowest price for prescription drugs has always been of utmost importance to the PFTHWF. PFTHWF requires that the reimbursement formula provide that in the event that there exists a usual and customary price that is less than the contractually mandated price, then that price is to be used for reimbursement. The PFTHWF tracks the usual and customary prices to insure that they are reimbursing prescription drug benefits at the lowest possible price.

10. Because PFTHWF was unaware of the scheme, it was not in a position to "protect" itself from the increase in reimbursement that resulted from the scheme. Prior to April 12, 2002, PFTHWF's PBM was National Prescription Administration, Inc. ("NPA"). NPA used Redbook as the source of AWP in its contracts. In April, 2002, NPA was acquired by Express Scripts, Inc. ("ESI") and ESI assumed the NPA contract with PFTHWF.

11. If we had known about the scheme we would have negotiated discounts to eliminate any increase in reimbursements that resulted from the scheme. The scheme, if revealed, would have been removed from the equation and any discounts sought after the effects of the scheme were eliminated would have been a reaction to true increases in prices caused by inflation and other factors independent of the scheme. Because the scheme was unknown to us we did not have the opportunity to eliminate its effects on PFTHWF's reimbursements.

12. As a result of the increase in the AWP by virtue of the scheme, PFTHWF paid more for the drugs at issue than we would have had the scheme not been implemented. The

financial inpact of escalating drug costs, due in part to the scheme, have resulted in increased costs to our members in the form of higher premiums and co-payments.

13. I am familiar with the general terms of Plaintiffs' settlement agreements with FDB and Medispan. I understand that the settlement agreements would rollback the artificial increases in the WAC-to-AWP ratio caused by the scheme and that both FDB and Medispan have agreed to stop publishing AWP within two (FDB) and three (Medispan) years of Court's approval of those settlement agreements.

14. We have not been contacted by ESI and have not been asked to proportion the risk of the rollback. We do not expect that the benefit of the settlement will be negotiated away from us.

15. Plaintiffs' settlements will help the PFTHWF save our members money. If our drug costs decrease, or at least do not increase, PFTHWF will be able to provide our members with a more comprehensive benefit package.

Signed under the pains and penalties of perjury this __16__ day of January, 2008.

*Arthur Steinberg*
Arthur Steinberg

## CERTIFICATE OF SERVICE

     I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on January 17, 2008.

                                                **/s/ Steve W. Berman**
                                                STEVE W. BERMAN