UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

**NOTICE OF FILING ON BEHALF OF CONSUMER ADVOCATE
_AMICI_ IN SUPPORT OF CLASS ACTION SETTLEMENT**


Consumer Advocate _Amici_ are aware that counsel are counsel for Plaintiffs in this

litigation and have asked counsel to file on their behalf the attached motion for leave to file and

brief in support of class action settlement and a corporate disclosure statement under Local Rule

7.3(A).

001821-13 218916 V1

DATED:  January 18, 2008

By_____/s/ Steve W. Berman_____
Steve W. Berman
Sean R. Matt
Nick Styant-Browne
Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol (BBO #471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone:  (615) 244-2202
Facsimile:  (615) 252-3798

001821-13  218916 V1

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on January 18, 2008.

<u>**/s/ Steve W. Berman**</u>
STEVE W. BERMAN

# **ATTACHMENT**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN<br><br>                                Plaintiffs,<br><br>        v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                                Defendants. | C.A. No. 1:05-CV-11148-PBS |

**JOINT MOTION OF *AMICI CURIAE* ALLIANCE FOR RETIRED AMERICANS, AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, THE ANNIE APPLESEED PROJECT, CALIFORNIA CITIZENS FOR HEALTH FREEDOM, CALPIRG, FLORIDA COMMUNITY HEALTH ACTION INFORMATION NETWORK, GOVERNMENT ACCOUNTABILITY PROJECT, HEALTH CARE FOR ALL, LONG ISLAND HEALTH ACCESS MONITORING PROJECT , MASSPIRG, MASSACHUSETTS SENIOR ACTION COUNCIL, MINNESOTA COACT, OSPIRG, PATIENTS NOT PATENTS, PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS, SOUTH CAROLINA APPLESEED LEGAL JUSTICE CENTER, TENNESSEE HEALTH CARE CAMPAIGN, UNITED HEALTH CARE ACTION NETWORK OHIO, AND UNITED SENIOR ACTION OF INDIANA, FOR LEAVE TO FILE A BRIEF IN SUPPORT OF CLASS ACTION SETTLEMENT**

The above-referenced organizations (collectively, the "Consumer Advocate *Amici*"), by

undersigned counsel, move for leave to file the attached brief as *amici curiae* in support of the

proposed settlement with First Databank, Inc.  The Consumer Advocate *Amici* wish to submit the

attached brief addressing the positive impact of the proposed settlement on consumer class

members.  These *Amici* will address why the terms of the settlement are fair, reasonable,

001821-13 218888 V1

adequate, and in the best interests of the class. Each of the *Amici* is an organization that works with and advocates on behalf of consumers, including numerous class members. Each is familiar with the impact that high drug prices has on consumers' health and financial well-being. Accordingly, the *Amici* believe that the facts and arguments contained in the enclosed brief will assist the Court in its review of the fairness of the proposed settlement.

Respectfully submitted,

Dated: January 18, 2008.

Alex Sugerman-Brozan (BBO #650980)
Prescription Access Litigation LLC
c/o Community Catalyst
30 Winter Street, 10th floor
Boston, Massachusetts 02108
617.275.2822

*Counsel for Amici Curiae Alliance for Retired Americans, American Federation of State County and Municipal Employees, The Annie Appleseed Project, California Citizens for Health Freedom, CALPIRG, Florida Community Health Action Information Network, Government Accountability Project, Health Care for All, Long Island Health Access Monitoring Project, MASSPIRG, Massachusetts Senior Action Council, Minnesota COACT, OSPIRG, Patients Not Patents, Pennsylvania Alliance for Retired Americans, South Carolina Appleseed Legal Justice Center, Tennessee Health Care Campaign, United Health Care Action Network Ohio, and United Senior Action of Indiana*

001821-13 218688 V1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————— )
NEW ENGLAND CARPENTERS HEALTH ) C.A. No. 1:05-CV-11148-PBS
BENEFITS FUND, PIRELLI ARMSTRONG )
RETIREE MEDICAL BENEFITS TRUST; ) AMICUS BRIEF
TEAMSTERS HEALTH & WELFARE FUND )
OF PHILADELPHIA AND VICINITY; )
PHILADELPHIA FEDERATION OF )
TEACHERS HEALTH AND WELFARE )
FUND; DISTRICT COUNCIL 37, AFSCME - )
HEALTH & SECURITY PLAN; JUNE )
SWAN; BERNARD GORTER, SHELLY )
CAMPBELL and CONSTANCE JORDAN )
                                          )
                          Plaintiffs,     )
                                          )
          v.                              )
                                          )
FIRST DATABANK, INC., a Missouri          )
corporation; and McKESSON                 )
CORPORATION, a Delaware corporation,      )
                                          )
                          Defendants.     )
—————————————————— )

**BRIEF FOR *AMICI CURIAE* ALLIANCE FOR RETIRED AMERICANS,
AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL
EMPLOYEES, THE ANNIE APPLESEED PROJECT, CALIFORNIA CITIZENS
FOR HEALTH FREEDOM, CALPIRG, FLORIDA COMMUNITY HEALTH
ACTION INFORMATION NETWORK, GOVERNMENT ACCOUNTABILITY
PROJECT, HEALTH CARE FOR ALL, LONG ISLAND HEALTH ACCESS
MONITORING PROJECT, MASSPIRG, MASSACHUSETTS SENIOR ACTION
COUNCIL, MINNESOTA COACT, OSPIRG, PATIENTS NOT PATENTS,
PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS, SOUTH CAROLINA
APPLESEED LEGAL JUSTICE CENTER, TENNESSEE HEALTH CARE CAMPAIGN,
UNITED HEALTH CARE ACTION NETWORK OHIO, AND UNITED SENIOR
ACTION OF INDIANA IN SUPPORT OF CLASS ACTION SETTLEMENT**

## I.     THE CONSUMER ADVOCATE *AMICI*

The following organizations represent and advocate on behalf of consumers, and each

includes numerous individual class members among its membership.  The Consumer Advocate

001821-13 218888 V1

Amici believe that the Settlements between the Plaintiffs and First Databank, Inc. ("FDB") and

Medispan ("the Settlements") are fair, reasonable and adequate, and in the best interests of the

class. The Amici support approval of the Settlement. The organizations are as follows:

- o  Alliance for Retired Americans
- o  American Federation of State, County and Municipal Employees (AFSCME)
- o  The Annie Appleseed Project
- o  California Citizens for Health Freedom
- o  CALPIRG
- o  Florida Community Health Action Information Network   ("Florida CHAIN")
- o  Government Accountability Project
- o  Health Care for All (MA)
- o  Long Island Health Access Monitoring Project
- o  MASSPIRG
- o  Massachusetts Senior Action Council
- o  Minnesota COACT (Citizens Organized Acting Together)
- o  OSPIRG
- o  Patients Not Patents
- o  Pennsylvania Alliance for Retired Americans
- o  South Carolina Appleseed Legal Justice Center
- o  Tennessee Health Care Campaign
- o  United Health Care Action Network (UHCAN) Ohio
- o  United Senior Action of Indiana

## II.    BACKGROUND AND INTEREST OF AMICI

Alliance for Retired Americans ("Alliance") is a 3.5 million member national

organization advocating for the interests of retirees and older Americans. A main goal of the

Alliance is the affordability of prescription drugs for its members and all Americans. The

practices at issue in this case are of great concern to the Alliance.

American Federation of State, County and Municipal Employees (AFSCME) is a labor

union representing approximately 1.4 million employees in the United States. A principle

activity of the Union is the negotiation and administration of collective bargaining agreements.

Prescription drug benefits are typically subject to bargaining and the explosion in prescription

drug costs has significantly affected the bargaining process as the Union and its employer

counterparts seek to manage the rising costs.

001821-13  218888 V1

The Annie Appleseed Project represents people with cancer. These people take many drugs for their co-morbidities as well as the drugs specific for cancer. The costs can be huge and terrible for so many. Even with excellent insurance coverage, and fewer and fewer Americans can say that have this, costs can exceed all expectations.

California Citizens for Health Freedom is a citizens organization dedicated to doing legislative advocacy on behalf of citizens to have access to all forms of medicine including prescription drugs. We support efforts to reduce the price of drugs.

CALPIRG is a statewide membership-based public interest group that stands up to powerful interests, working to win concrete results for Californians' health and well-being. Ensuring that prescription drugs are safe and fairly priced has for years been an important part of our consumer protection work.

Florida Community Health Action Information Network ("Florida CHAIN") is a statewide consumer health care advocacy network organization dedicated to improving the health of all Floridians by promoting sustainable access to affordable, effective health care. Florida CHAIN's *modus operandi* has been to identify barriers impacting access to or reducing the quality of health care for low-income Floridians who either lack adequate health insurance coverage or rely on the public health care safety net for coverage.

The Government Accountability Project ("GAP") is a 30-year old organization dedicated to protecting the public interest by advancing occupational free speech and institutional transparency. Through litigation, public education and legislative advocacy, GAP supports efforts to ensure that medicines are safe, effective and affordable.

Health Care For All is a Massachusetts consumer advocacy organization. We seek to create a consumer-centered health care system that provides comprehensive, affordable,

- 3 -

accessible, culturally competent, high quality care and consumer education for everyone, especially the most vulnerable.  Prescription drugs are central to basic health care today. Therefore, we believe that people do not have access to affordable and comprehensive health care without access to affordable drugs.

Long Island Health Access Monitoring Project's goal is to expand access to healthcare for the uninsured and underinsured population on Long Island. In keeping with this goal we believe it is vital to roll back drug prices to help increase accessibility.

MASSPIRG, founded in 1972, is a nonprofit, nonpartisan consumer advocacy organization with 50,000 members across the state.  MASSPIRG has a long history of advocating for low cost prescription drugs, including supporting the generic drug bill in Massachusetts first passed in 1976 and amended again in 1985.  Most recently, MASSPIRG has released numerous reports documenting the high cost of prescription drugs and calling for drug pricing reform.

Massachusetts Senior Action Council ("MSAC") was founded in 1981 to promote the rights, well-being, and dignity of all people, particularly vulnerable senior citizens.  MSAC was critical in the creation and defense of the Prescription Advantage program, a first-in-the-nation state-run comprehensive drug insurance plan.  The rising cost of prescription drugs is a priority for our members because as seniors they are forced to make choices every day between basic food and housing and their medications.

Minnesota COACT (Citizens Organized Acting Together), on behalf of its 12,000 members state-wide, is working for affordable health care for all Minnesotans, including controlling the costs of prescription drugs.

OSPIRG is an advocate for the public interest. When consumers are cheated, or our natural environment is threatened, or the voices of ordinary citizens are drowned out by special interest lobbyists, OSPIRG speaks up and takes action. OSPIRG has been and continues to be engaged in efforts to address the soaring costs and safety concerns of prescription drugs.

Patients Not Patents is committed to ensuring access to affordable healthcare through litigation, advocacy, and education. This case is of interest to Patients not Patents because it is likely to affect the cost of prescription drugs.

Pennsylvania Alliance for Retired Americans represents 300,000 Pennsylvania retirees, and is dedicated to ensuring social and economic justice for all of the citizens of our state so that they may enjoy lives of dignity with health and economic security for all. The lack of prescription drug price controls has added a huge financial burden to the Medicare system, jeopardizing the future of that successful program..

South Carolina Appleseed Legal Justice Center represents the needs of Medicaid consumers in our state. Our work includes working with our policy makers to ensure fair and appropriate expenditures are made for services to ensure that providers are not overcharging or taking advantage of limited resources intended to help Medicaid Beneficiaries. We believe the settlement will help bring the cost of prescription drugs to a level that is more fair for consumers.

Tennessee Health Care Campaign is a consumer health care advocacy not-for-profit organization working on affordable, continuous and quality health care for all Tennesseans. Since the cost for prescription drugs, particularly brand name drugs, is the principle reason for the rising costs of health care, and since life-saving prescription drugs are becoming more and more unaffordable, THCC's work for affordable health care is more important than ever before.

United Health Care Action Network ("UHCAN") Ohio is a statewide consumer advocacy organization working for high quality, affordable health care for all. High prescription drug prices lead to consumers going without needed medicines and are contributing to skyrocketing health care costs. This settlement represents a significant step forward toward curbing pharmaceutical manufacturers' price-gouging that is causing consumers to go without vital medications.

United Senior Action of Indiana is a statewide Indiana senior citizens membership organization with approximately 13,000 dues-paying members. It has been clear to us for some time that inflated AWP prices in First Databank and Medispan publications have raised prices for consumers and government programs – which harm our members and affect their access to prescription medications they need.

Amici are heavily interested in the effects of prescription drug pricing on consumers (particularly vulnerable populations such as seniors, the disabled and chronically ill, low-income consumers and the uninsured), third-party payors (particularly smaller payers such as union benefit funds) and the health care system as a whole. Accordingly they have followed this litigation and settlement with much interest.

### III.    THE SETTLEMENTS ARE FAIR, REASONABLE, ADEQUATE AND IN THE BEST INTERESTS OF THE CLASS

From their review of the record, Amici conclude there is strong evidence to suggest that beginning in 2001, McKesson and FDB conspired to artificially increase the Wholesale Acquisition Cost ("WAC") – Average Wholesale Price ("AWP") ratio from 20% to 25% on hundreds of brand-name drugs, and that this increase did not reflect any change in the actual price of the drugs, but was done solely for reasons known to McKesson and FDB. Prior to their review of the evidence, Amici and their members were not aware of this alleged conspiracy, nor

are they aware of any consumer group that knew about defendants' alleged price fixing and racketeering activities prior to this lawsuit. Moreover, the effects of this price manipulation have not been alleviated. This is demonstrated by the letter of Express Scripts ("ESI"), stating that if the settlement is approved and the artificially inflated drug prices reset to their original ratios, Express Scripts will have to renegotiate its contracts to reverse the beneficial effects of the settlement agreement.

In our view, assertions like those of ESI and the other PBM-related entities highlight the continuing impact the scheme has had, and which the settlement addresses.

The proposed settlement agreement implements two important changes which may eradicate or at least reduce the ongoing impacts of the scheme at issue to consumers: (1) FDB will rollback artificial increases to their "pre-scheme" ratios of 20%; and (2) both FDB and Medi-Span will cease publishing AWP data within three years of the Court's approval of the settlement. Both of these provisions will correct a harmful flaw in the pharmaceutical reimbursement system, of which most consumers are not even aware.

The provisions of the Settlements will begin to redress the egregious conduct by FDB, Medispan and McKesson alleged in this case. The relief provided for by the Settlements will provide a far greater benefit to class members than would any minimal damages amount that FDB and Medispan would be able to pay. Additionally, early settlement should simplify plaintiffs' litigation for past damages against non-settling defendant McKesson, a Fortune 100 company with the means to satisfy the class' claims. The amici, therefore, urge the Court to approve the Settlement.

## A.     Consumer Class Members Were Significantly Harmed by the Conduct Alleged

As the complaint alleges and the evidence in the record to date backs up, both cash-paying and insured consumers are harmed by artificially inflated AWPs. Insured consumers who

paid a percentage coinsurance were forced to pay more for each prescription because of the AWP inflation.  Insured consumers with an annual or lifetime maximum drug benefit approached the limits of that benefit more quickly as a result of the AWP inflation.  Seniors with Medicare Part D plans reached the statutory gap in coverage (the so-called "donut hole") faster due to the inflation.  Uninsured consumers were hardest hit, being forced to cover the entire inflated costs of their medications.

It is well-documented that many consumers faced difficulty affording health care and paying for prescription drugs during the class period.  The alleged scheme only served to exacerbate these difficulties.  According to a Health Costs Survey conducted by the Kaiser Family Foundation in 2005 (www.kff.org/newsmedia/upload/7371.pdf) , among those who took prescription drugs daily, more than one-third said it was very (12%) or somewhat (22%) difficult to pay for these drugs.  Nearly one-quarter (24%) of Americans surveyed reported that they or someone in their household did not fill a prescription, cut pills or skipped doses in the past year because of the cost.

**B.    Consumer Class Members were Unaware of, and Unable to Discover, the Alleged Fraud**

Although almost all Third-Party Payors ("TPPs") use AWP as their reimbursement benchmark in contracts with pharmacies and PBMs to pay for brand prescription drugs, almost no consumers know what the "Average Wholesale Price" (AWP) is, how their health plans reimburse pharmacies, or even how much drugs covered by insurance actually cost.  As the evidence shows, neither TPP nor consumer class members were aware of the alleged conspiracy between FDB and McKesson – but consumers were in an even more disadvantageous position than TPPs, being unfamiliar with AWP even as a concept, and in a position to do nothing about increases in AWPs.  The lack of transparency and accountability inherent in AWP thus hit

consumers particularly hard.  Accordingly, the settlement provisions that correct inaccuracies in the AWPs for the hundreds of drugs included in the settlement are particularly important for consumer class members, and the ceasing of AWP publishing going forward is also important for them as it increases transparency in the marketplace; the effects of which will accrue to consumers.

**C.    The Rollback will Produce Savings for Consumer Class Members**

The rollback of the WAC-to-AWP spreads of the drugs included in the Settlement from 25% to 20% will produce real and immediate savings for consumers.  Assume, for example, a consumer who pays 20% of their drug costs under their insurance and whose health plan contracts with a pharmacy to pay AWP-10% for drugs.  Prior to the rollback, that consumer would pay $18 for a drug with an AWP of $100 (AWP – 10% = $90.  20% of $90 = $18).  After the rollback, the AWP of that drug would be $96.  The consumer's cost would then drop to $17.08 (AWP – 10% = $85.40.  20% of $85.40 = $17.08).

While the market may over time adjust to the new AWP benchmarks as some of the non-party opponents suggest, such an adjustment will take time and will be counterbalanced by other forces and developments.  Even when it occurs, the consumer class members will have benefited significantly from it in the interim.  Further, these class members will enjoy a continued benefit going forward, from the Settlement provision requiring FDB and Medispan to cease publishing AWPs.

**D.    The Ceasing of AWP Publishing Will Benefit Consumer Class Members in the Future**

The provision requiring FDB and Medi-Span to cease publishing AWPs within two years and three years, respectively, of the Court's approval of the Settlement provides significant relief to consumer class members.  This measure will increase the movement already underway in the

- 9 -

marketplace to alternative benchmarks that are more transparent.  For example, there is much discussion in the industry press concerning the likely adoption by private TPPs of the revised Average Manufacturers Price ("AMP") created by the Deficit Reduction Act of 2007.  These Settlements will hasten the creation and adoption of new benchmarks.  Given that private and public TPPs are now alerted to the fraudulent potential of AWP, they will insist upon benchmarks that are not similarly susceptible to manipulation.  Whether AMP, WAC or some new benchmark becomes dominant in the marketplace, the change can only be an improvement.  Transparency will ensure that consumers pay a more accurate price for the prescription drugs.  Avoiding the unnecessary costs that they would have continued to pay under an AWP-based system are a very important and significant form of prospective relief.

**E.    The Equities Favor the Settlement**

Inherent in the protests of the PBM and pharmacy-related opponents is a concern that the rollback will harm them economically.  Even if true, this assertion is contradicted by the same entities' claims that the market has already adjusted to, mitigated and negated the benefits of the Settlement.  These arguments are not compatible:  if the Settlement harms them economically, then they have not mitigated its effects; and vice versa.  They cannot have it both ways.  Amici believe these groups have benefited significantly over the last six years from the retention of profits the scheme created for either PBMs or certain pharmacies (if not all).  However, the fact that a non-party was the downstream beneficiary of a fraudulent scheme does not argue in favor allowing the scheme or its effects to continue.  The extra profits that accrued to pharmacies and PBMs as a result of the scheme were a windfall.  Consumers received no benefit and were harmed.  The equities favor restoring the playing field back to where it would and should have been absent the unlawful conduct, even if that now reduces the profits of various entities that have come to rely on this windfall.

001821-13 218888 V1

**F.    Monetary Damages From the Settling Defendants Would not Have Adequately Compensated Consumer Class Members**

The plaintiffs have demonstrated that FDB and Medispan do not have the assets to pay a damages award of any significance.  Given that the claimed damages reach into the billions of dollars, a damages award that even bankrupted both settling defendants would not even constitute the proverbial drop in the bucket.  After apportioning damages between TPPs and consumers, and paying attorneys' fees and expenses, it is likely that an individual consumer's recovery under such a scenario would in many cases be less than the cost of printing and mailing a check to them.  Such a meager recovery would exacerbate a problem endemic to all consumer class actions:  the very low claims rate among consumers.  Moreover, it would do nothing to alleviate the ongoing harm incurred by current and future purchases based on the inflated AWPs.  By contrast, the rollback and termination of AWP publication will provide significant immediate and prospective benefit to the consumer class members.

Damages to consumers for past injuries can only be recovered through plaintiffs' ongoing litigation with McKesson.  Further, this is only possible if there is an aggregate damage remedy for these consumers – without an aggregate damages remedy, individual consumers will effectively deprived of compensation.  In the event there is eventually a verdict finding liability but not damages on a class-wide basis, it will not be possible for individual consumers to litigate their damages claims.  The amount of a given individual consumers' damages claim would pale in comparison to the cost of litigating such a claim by orders of magnitude.  It is precisely this factor that makes this a textbook case for class action treatment in the first place.

## IV.    CONCLUSION

The Consumer Advocate *Amici*, as organizations with extensive knowledge and familiarity with the issues affecting consumers in the health care marketplace, believe that the

terms of the proposed Settlements are fair, reasonable and adequate, and in the best interests of

the class. We encourage the Court to approve them and to overrule any objections to them.

Respectfully submitted,

Dated: January 18, 2008.

_____
Alex Sugerman-Brozan (BBO #650980)
Prescription Access Litigation LLC
c/o Community Catalyst
30 Winter Street, 10th floor
Boston, Massachusetts 02108
617.275.2822

*Counsel for Amici Curiae Alliance for Retired
Americans, American Federation of State County
and Municipal Employees, The Annie Appleseed
Project, California Citizens for Health Freedom,
CALPIRG, Florida Community Health Action
Information Network, Government Accountability
Project, Health Care for All, Long Island Health
Access Monitoring Project, MASSPIRG,
Massachusetts Senior Action Council, Minnesota
COACT, OSPIRG, Patients Not Patents,
Pennsylvania Alliance for Retired Americans, South
Carolina Appleseed Legal Justice Center,
Tennessee Health Care Campaign, United Health
Care Action Network Ohio, and United Senior
Action of Indiana*

- 12 -

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

## CORPORATE DISCLOSURE UNDER LOCAL RULE 7.3(A) OF *AMICI CURIAE* ALLIANCE FOR RETIRED AMERICANS, AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, THE ANNIE APPLESEED PROJECT, CALIFORNIA CITIZENS FOR HEALTH FREEDOM, CALPIRG, FLORIDA COMMUNITY HEALTH ACTION INFORMATION NETWORK, GOVERNMENT ACCOUNTABILITY PROJECT, HEALTH CARE FOR ALL, LONG ISLAND HEALTH ACCESS MONITORING PROJECT , MASSPIRG, MASSACHUSETTS SENIOR ACTION COUNCIL, MINNESOTA COACT, OSPIRG, PATIENTS NOT PATENTS, PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS, SOUTH CAROLINA APPLESEED LEGAL JUSTICE CENTER, TENNESSEE HEALTH CARE CAMPAIGN, UNITED HEALTH CARE ACTION NETWORK OHIO, AND UNITED SENIOR ACTION OF INDIANA

The above-referenced *amici curiae* affirm that none of them has any parent corporation

or any publicly held company that owns 10% or more of the organization's stock.

Respectfully submitted,

Dated: January 18, 2008.

Alex Sugerman-Brozan (BBO #650980)
Prescription Access Litigation LLC
c/o Community Catalyst
30 Winter Street, 10th floor
Boston, Massachusetts 02108
617.275.2822

*Counsel for Amici Curiae Alliance for Retired
Americans, American Federation of State County
and Municipal Employees, The Annie Appleseed
Project, California Citizens for Health Freedom,
CALPIRG, Florida Community Health Action
Information Network, Government Accountability
Project, Health Care for All, Long Island Health
Access Monitoring Project, MASSPIRG,
Massachusetts Senior Action Council, Minnesota
COACT, OSPIRG, Patients Not Patents,
Pennsylvania Alliance for Retired Americans, South
Carolina Appleseed Legal Justice Center,
Tennessee Health Care Campaign, United Health
Care Action Network Ohio, and United Senior
Action of Indiana*