UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME-HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri Corporation; and McKESSON CORPORATION, a Delaware Corporation,<br><br>Defendants. | CIVIL ACTION<br>NO. 05-CV-11148 PBS |
| DISTRICT COUNCIL 37 HEALTH AND SECURITY PLAN, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>MEDI-SPAN, a division of WOLTERS KLUWER HEALTH, INC.,<br><br>Defendant. | CIVIL ACTION<br>NO. 07-CV-10988-PBS |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO INTERVENE BY DEVILLE PHARMACIES, LTCPA, AND ASCP**

DeVille Pharmacies, Inc. ("DeVille"), the Long-Term Care Pharmacy Alliance ("LTCPA") and the American Society of Consultant Pharmacists ("ASCP") (together

A/72391164.1

"Movants"), by and through their undersigned counsel, respectfully submit this memorandum of law in further support of their Motion to Intervene for the limited purpose of opposing the proposed settlements between Plaintiffs and Defendants First DataBank, Inc. ("FDB") and Medi-Span (together the "Proposed Settlements").

As a threshold matter, FDB's opposition is irrelevant given that FDB concedes that DeVille is a class member, and does not contest that LTCPA and ASCP have representational standing on behalf of their members who would also be class members. Further, FDB's arguments rest upon the flawed perspective that FDB is simply making a few editorial changes to its publications, and the myopic view that the only parties affected by such "editorial changes" will be itself and the settling class (of which certain of Movants are members – a point that FDB often ignores). The reality is that FDB seeks Court approval for the Proposed Settlements based upon the purported $4 billion plus of savings to be paid for by *Movants*, and other similarly situated parties, in reduced reimbursement – not by the purported "settling parties." Having chosen to argue the "fairness" of the Proposed Settlements using this financial impact, FDB should not be allowed to run away from it. Thus, Movants' request for intervention is proper. In addition, due consideration should be given to the concerns raised in its submission.

I. **INTERVENTION AS OF RIGHT IS WARRANTED**

FDB ignores the First Circuit's urging that intervention be measured according to a "holistic rather than reductionist approach" and that the factors stated in Fed. R. Civ. P. 24(a) must be addressed "in keeping with a commonsense view of the overall litigation." *See Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998). As such, FDB's formalistic "timeliness" and "interest" arguments should readily be rejected. *See*

A/72391164.1

*Daggett v. Commission on Government Ethics and Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999); *Int'l Paper Co. v. Town of Jay*, 887 F.2d 338, 344 (1st Cir. 1989) (holding that factors regarding the right of intervention should be considered together and in the specific context in which they arise). Further, FDB's opposition is mistaken about the law and has mischaracterized Movants' genuine cognizable interest in the Proposed Settlements.

### A.     Movants' Motion to Intervene is Timely in this Case

FDB fails to acknowledge the opening sentence of Movants' initial brief: that this Motion to Intervene is "for the limited purpose of opposing the proposed settlements between Plaintiffs and Defendants . . . ." Movants' Mem. at 1. FDB erroneously suggests that by waiting too long to assert their right to intervene, there was some phase of this litigation in which Movants should have been participating prior to the submission of their objections. Indeed, FDB's arguments contradict what the Plaintiffs and FDB argued in this Court just prior to the first preliminary approval hearing in November 2006.

In their memorandum supporting their Joint Motion for Preliminary Approval of the Proposed Settlement, the settling parties (including FDB) stated that defendant McKesson's objection to preliminary approval was <u>premature</u> and that the "the Court should only hear . . . objections at the same time and in the same manner that it hears other objections – *i.e.*, at the fairness hearing. There simply is no justifiable reason to . . . permit [McKesson] to object in the context of the preliminary approval hearing, which is not the purpose of the preliminary approval hearing." *See* Docket No. 152 at 13. Further, the settling parties expressly anticipated applications to intervene and stated in open court that such applications should await the final fairness process:

> [T]his is only the beginning of a process, of course . . . . If there
> are parties who wish to intervene in these [sic] litigation, then they

3

>have obviously, <u>the rules available to themselves to file motions to intervene and participate in the final hearing process</u>.

*See* Transcript, Docket No. 158 (emphasis added). It is inappropriate for FDB to now argue that Movants should have filed their motion at least six months ago and perhaps even in November of 2006, at a time when FDB was arguing that intervention and objection should be considered in connection with the presently-pending final fairness determination. *See* Opp. at 5-6. Further, given the multiple changes and shifts throughout the settlement process (including at least five differing versions of the Proposed Settlements, and at least three amended complaints, *see, e.g.,* Docket Nos. 120, 147, 156, 174, 265 & 359 on the FDB docket), it is beyond peradventure that Movants' papers are timely.

More importantly, Movants' intervention will not prejudice any of the settling parties because the fairness hearing is the stage of this litigation expressly reserved for the consideration of interests that counsel against approval of the Proposed Settlements.[1] As such, the cases cited by FDB are simply not relevant to Movants' motion, as no litigation flow is being interrupted here. *Compare United Nuclear Corp. v. Cannan*, 696 F.2d 141, 142 (1st Cir. 1982) (denying intervention because it could prevent agreed-upon summary judgment schedule and re-open concluded negotiations). Far from attempting to "enter the fray" in an untimely manner so as to unfairly interfere with and "undo the work the parties have already done" in a phase of the case that should not be disturbed, Movants are attempting to participate in the approval process of the Proposed Settlements within the confines of, and pursuant to, the precise schedule set by this Court and the dictates of Fed.

---

[1] FDB also asserts that Movants will not be prejudiced by the Proposed Settlements' unilateral and over-inclusive reduction in AWP because Movants have the power to renegotiate contracts favorably to offset significant AWP adjustments. Opp. at 7. If that were in fact the case, FDB would effectively be conceding that the "bold" Proposed Settlements will not have the monumental financial benefits that the settling parties previously suggested to this Court.

4

R. Civ. P. 23. *See In re Accushnet River & New Bedford Harbor*, 712 F. Supp. 1019, 1025 (D. Mass. 1989).

Finally, FDB completely ignores the unique and unusual nature of the Proposed Settlements in incorrectly asserting that no circumstances "militate" in favor of intervention here. *Caterino v. Barry*, 922 F.2d 37, 40 (1st Cir. 1990). As set forth in Movants' opening brief, the Proposed Settlements purport to resolve past conduct that FDB strenuously denies occurred by settling the litigation with other parties' monies. And, contrary to FDB's protestations, this Court has repeatedly recognized the very unique nature of this settlement. *See, e.g.,* Docket No. 168 (noting the settlement raises a "vermillion flag" as "third-party payors and consumers will receive no money damages"); Transcript, Docket No. 264 (calling the Proposed Settlements "very unusual" and stating that "I'm still not sure what I'm going to do with it ultimately."). The Proposed Settlements are highly unusual and impact the interests of numerous third parties. As such, intervention by Movants is warranted to "prevent the original litigants from bargaining away its interests." *Atlantic Mut. Ins. Co. v. Northwest Airlines, Inc.*, 24 F.3d 958, 960 (7th Cir. 1994).

In sum, Movants seek intervention for a limited purpose and have timely filed both their motion and their objections, just three months after the final piece of the Proposed Settlements were preliminarily approved, and prior to the deadline that this Court established for all objectors. The timely filing of such a limited motion and objections regarding both settlements serves judicial economy and the efficiency of the fairness hearing process.

B. **Intervention is Proper as Movants' Interest is Significant and the Risk of Prejudice is Severe**

FDB further argues for the application of formalistic and bright-line rules to the intervention calculus by insisting that Movants' interest is not legally cognizable or sufficient to warrant intervention. Setting aside the fact that DeVille and other pharmacy owner members of ASCP purchased drugs at AWP during the class period, FDB's position is simply wrong and contrary to the law. *See Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989) ("There is no precise and authoritative definition of the interest required to sustain a right to intervene . . . .").

*First*, FDB tellingly mischaracterizes the gravity of Movants' interests by discussing them merely as "profit margins" related to contract terms that Movants themselves chose, rather than recognizing the direct relationship between AWP figures and thousands of contracts that are central to the provision of services in the Medicare Part D program[2] as well as overall operational capabilities of long-term care pharmacies. Opp. at 8-9. Indeed, this Court is well aware of the direct relationship the AWP benchmark plays in the reimbursement and drug pricing context. Further, FDB does not dispute that many of the smaller long-term care pharmacies already operate on razor-thin margins and have operational capacities that will be severely impacted by the AWP manipulation contemplated by the Proposed Settlements. *See* Clark Decl. ¶¶ 19-20; DeVille Decl. ¶ 19. *See also New York Public Interest Research Group v. Regents of the University of State of New York*, 516 F.2d 350, 351-352 (2d Cir. 1975) (intervention allowed when quality of pharmacy operations might be adversely impacted).

---

[2] Notwithstanding the complete absence of supporting legal authorities, FDB incorrectly asserts that cases involving public programs are not applicable to the analysis of Movants' motion. *See* Opp. at 8 & 11. FDB completely ignores the fact that the Proposed Settlements will directly affect the function and sufficiency of contracts and regulations governing both Medicare Part D and Medicaid pharmacy services.

A/72391164.1

Further, Movants' interests are sufficiently significant that this Court must consider the Proposed Settlements' effect on third parties and on public policy. While FDB argues that only the rights of members of the settlement class may be considered in determining whether to approve the Proposed Settlements, Opp. at 7, the law, as well as notions of equity and fairness, militates otherwise. *See Rolland v. Cellucci*, 191 F.R.D. 3, 13 (D. Mass. 2000) ("[C]ase law supports analyzing a settlement as it may pertain to third parties.")[3]; *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 582 (E.D. Pa. 2001) (rejecting proposed class action settlement because, among other things, it offended notions of public policy).

*Second*, FDB argues – quite incredibly – that Movants cannot possess a significant enough interest to intervene because there is nothing stopping FDB from exercising "editorial" discretion to change published AWP numbers with or without the Proposed Settlements. *See* Opp. at 11. This argument is utterly without merit. The basis of the entire litigation is that FDB and MediSpan exercised arbitrary "editorial" discretion in publishing AWP figures. Thus, while FDB may choose to make editorial changes (although allegations of precisely such arbitrary "editorial" changes in price (without underlying changes in reported numbers) are the basis of this litigation), the Court need not extend its blessings of fairness and approval through the settlement approval process to such changes if they are wrong, unfair, and collusive.

---

[3] *Rolland* also cites other cases for the propositions that the "court must assure that, 'if third parties will be affected,' the agreement 'will not be unreasonable or legally impermissible as to them'" and "[i]f the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed." *Id.* (citations omitted).

## CONCLUSION

FDB, at best, fundamentally misunderstands the true significance of Movants' very real, concrete, and immediate interest in this litigation. None of the parties currently slated to participate in the full extent of the fairness hearing can adequately represent Movants' interests and, contrary to FDB's bald assertions, the record does not adequately cover those interests either. Thus, Movants' Motion to Intervene should be granted.

Respectfully submitted,

                      DEVILLE PHARMACY, INC.,
                      AMERICAN SOCIETY OF
                      CONSULTANT PHARMACISTS, and
                      LONG-TERM CARE PHARMACY
                      ALLIANCE

                      By their attorneys,

                      _/s/ Daniel S. Savrin_
                      Daniel S. Savrin, BBO # 555434
                      Angela J. Neal, BBO # 661603
                      BINGHAM McCUTCHEN LLP
                      150 Federal Street
                      Boston, MA 02110
                      Tel: (617) 951-8000
                      Fax: (617) 951-8736
                      daniel.savrin@bingham.com
                      angela.neal@bingham.com

*Of Counsel*:

David J. Farber
Edward D. Gehres, III
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037

Dated: January 18, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by e-mail and first class mail on January 18, 2008, as follows:

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main St., 4th Floor
Cambridge, MA 02142

Jeffrey L. Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Sheldon T. Zenner, Esq.
Katten Muchin Roseman LLP
525 West Monroe Street
Chicago, IL 60661-3693

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Sheila L. Birnbaum
Skadden, Arps, Slate, Meagher, & Flom LLP
4 Times Square
New York, NY 10036

Dated: January 18, 2008

_____
Angela J. Neal