UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN, | Civil Action: 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation, | **[Leave to File Granted on January 24, 2008]** |
| Defendants. | |

**MCKESSON CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS THE RICO CLAIM OF THE PROPOSED U&C CLASS**

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiffs oppose McKesson's request for oral argument because they "do not believe McKesson's motion deserves such."  (Opp'n [Statement Regarding Oral Argument].)  However, "*Anza* makes clear that courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the RICO violations." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006).  This motion raises important issues that should be resolved based on a fully developed record, where each party has the opportunity to address the other's arguments and the Court's concerns.  Oral argument is particularly appropriate to permit the parties and the Court to address the significance of the Supreme Court's grant of *certiorari* in the *Phoenix Bond* case, a case that is scheduled to be decided by June 30, 2008.

## TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ...................................................................... i

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

I.    PLAINTIFFS DO NOT ALLEGE THAT THE RICO VIOLATION IS THE "BUT FOR" CAUSE OF ANY INJURY TO U&C CLASS PURCHASERS. ................. 2

    A.    Plaintiffs Fail To Plead "But For" Causation With the Particularity Required By Rule 9(b). ................................................................................. 2

    B.    Plaintiffs' Conclusory Allegations Regarding "But For" Causation Also Are Insufficient Under Rule 8. .............................................................. 3

II.    PLAINTIFFS HAVE NOT PLEADED PROXIMATE CAUSE AS REQUIRED BY *ANZA*. ...................................................................................................... 6

    A.    Plaintiffs Have Failed To Allege The Direct Injury Required By *Anza*. ............... 6

    B.    Plaintiffs' Arguments To Avoid *Anza* Are Baseless. ............................................. 8

        1.    Plaintiffs Cannot Distinguish *Anza* By Arguing That They Were "Targeted" By the Alleged Scheme. ................................................. 8

        2.    Plaintiffs Cannot Remedy Their Failure To Plead Proximate Cause By Recasting The Complaint As A Scheme To Fix Prices. ...................... 9

            a.    Plaintiffs' RICO Claims Are Based On Alleged Fraud, Not Price Fixing. .................................................................... 9

            b.    Price Fixing Is Not A Predicate Act Under RICO. ...................... 10

            c.    U&C Payors Were Not Directly Injured By The Alleged Price Fixing. .................................................................... 10

III.    PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A RICO CLAIM ON BEHALF OF ANY OF THE THREE CLASSES BECAUSE THEY DO NOT ALLEGE THAT PLAINTIFFS RELIED ON FDB'S ALLEGED MISREPRESENTATIONS. .............................................................................. 14

    A.    The First Circuit's Opinion In *Systems Management* Regarding Reliance Is Dicta. ............................................................................................ 15

    B.    Section 1964(c) Incorporates Proof of Detrimental Reliance By The Plaintiff. ............................................................................................... 16

    C.    *Systems Management* Cannot Be Squared With Supreme Court Precedent. ........ 18

    D.    The Fraud On The Market Theory Of Reliance Has No Application To The Instant Dispute. ..................................................................................... 19

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anza v. Ideal Steel Supply Corp.*,
    126 S. Ct. 1991 (2006) .................................................................................................*passim*

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ......................................................................................................... 8

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .................................................................................................. 19, 20

*Beck v. Prupis*,
    529 U.S. 494 (2000) ....................................................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) .................................................................................................... 4

*Brown v. Cassens Transp. Co.*,
    492 F.3d 640 (6th Cir. 2007) ........................................................................................ 19

*Daz-Rodrguez v. Pep Boys Corp.*,
    410 F.3d 56 (1st Cir. 2005) ........................................................................................... 15

*Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.*,
    972 F.2d 453 (1st Cir. 1992) ......................................................................................... 15

*DM Research, Inc. v. College of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) ............................................................................................. 5

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ....................................................................................................... 17

*Field v. Mans*,
    516 U.S. 59 (1995) ......................................................................................................... 17

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) .......................................................................................... 2, 5

*Grider v. Keystone Health Plan Centr., Inc.*,
    2006 U.S. Dist LEXIS 93085 (E.D. Pa. Dec. 21, 2006) ........................................... 19

*Gross v. New Balance Athletic Shoe, Inc.*,
   955 F. Supp. 242 (S.D.N.Y. 1997) ............................................................ 11, 12

*Hamm v. Rhone-Poulenc Rorer Pharms, Inc.*,
   187 F.3d 941 (8th Cir. 1999) .................................................................... 8, 9

*Hernandez v. Ciba-Geigy Corp. USA*,
   200 F.R.D. 285 (S.D. Tex. 2001) .............................................................. 2

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992) ............................................................................... 16, 18

*In re Commercial Tissue Prods.*,
   183 F.R.D. 589 (N.D. Fla. 1998) ............................................................. 12

*In re Industrial Diamonds Antitrust Litig.*,
   167 F.R.D. 374 (S.D.N.Y. 1996) ............................................................. 12

*In re Lupron Mktg. & Sales Practices Litig.*,
   295 F. Supp. 2d 148 (D. Mass. 2003) ...................................................... 14

*In re Vitamins Antitrust Litig.*,
   2001 U.S. Dist. LEXIS 12114 (D.D.C. June 29, 2001) ............................ 12

*Jennings v. Emry*,
   910 F.2d 1434 (7th Cir. 1990) ................................................................. 10

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) .................................................................... 14

*Longmont United Hospital v. Saint Barnabas*,
   2007 U.S. Dist. LEXIS 48187 (D.N.J. June 22, 2007) ............................. 13

*McConaghy v. Sequa Corporation*,
   294 F. Supp. 2d 151 (D. R.I. 2003) ......................................................... 15

*Medgar Evers Houses Tenant Ass'n v. Medgar Evers Houses Assocs., L.P.*,
   25 F. Supp. 2d 116 (E.D.N.Y. 1998) ........................................................ 8

*Morales-Vallellanes v. Potter*,
   339 F.3d 9 (1st Cir. 2003) ........................................................................ 4

*Munoz-Mendoza v. Pierce*,
   711 F.2d 421 (1st Cir. 1983) .................................................................... 4

*Neder v. United States,*
    527 U.S. 1 (1999) ............................................................................................ 16

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    259 F.3d 154 (3d Cir. 2001) .......................................................................... 19

*O'Brien v. DiGrazia,*
    544 F.2d 543 (1st Cir. 1976) ........................................................................... 6

*Phoenix Bond & Indemnity Co. v. Bridge,*
    477 F.3d 928 (7th Cir. 2007)............................................................... 1, 14, 19

*Phoenix Bond & Indemnity Co. v. Bridge,*
    169 L. Ed. 2d 625 (2008) ................................................................................ 1

*Pillsbury, Madison & Sutro v. Lerner,*
    31 F.3d 924 (9th Cir. 1994)........................................................................... 13

*Poulos v. Caesars World, Inc.,*
    379 F.3d 654 (9th Cir. 2004).......................................................................... 19

*Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc.,*
    117 F. Supp. 2d 1357 (N.D. Ga. 2000) ......................................................... 10

*Rodi v. S. New Eng. Sch. of Law,*
    389 F.3d 5 (1st Cir. 2004) ......................................................................... 2, 3, 5

*Schnell v. Conseco, Inc.,*
    43 F. Supp. 2d 438 (S.D.N.Y. 1999)................................................................ 5

*Schoenbaum v. E.I. DuPont de Nemours & Co.,*
    517 F. Supp. 2d 1125 (E.D. Mo. 2007) ......................................................... 10

*Sikes v. Teleline, Inc.,*
    281 F.3d 1350 (11th Cir. 2002)...................................................................... 20

*Systems Management v. Loiselle,*
    303 F.3d 100 (1st Cir. 2002) ................................................................. *passim*

*Teachers' Ret. Sys. of La. v. Hunter,*
    477 F.3d 162 (4th Cir. 2007)............................................................................ 2

*Waste Management Holdings, Inc. v. Mowbray,*
    208 F.3d 288 (1st Cir. 2000) .......................................................................... 16

*Williams v. Mohawk Indus., Inc.*,
   465 F.3d 1277 (11th Cir. 2006)..................................................................................ii

## STATUTES

15 U.S.C.
   § 15 .......................................................................................................... 11

18 U.S.C.
   § 1961(1) ................................................................................................. 10
   § 1964(c) ............................................................................... 11, 16, 17, 18

## OTHER

17 C.F.R.
   § 240.10b-5 ............................................................................................. 19

Fed. R. Civ. P. 9(b)......................................................................... 2, 3, 4, 5

1 Joseph Story, Commentaries on Equity Jurisprudence § 203 .................................... 17

*Pierre N. Leval, Judging Under The Constitution: Dicta About Dicta,*
   81 N.Y.U. L. Rev. 1249 (2006)................................................................... 15

Restatement (Second) of Torts § 525.................................................... 17

Restatement (Second) of Torts § 533.................................................... 18

Restatement (Second) of Torts § 546.................................................... 17

W. Page Keeton *et al.*, *Prosser & Keeton on the Law of Torts* 728 (5th ed. 1984) ...................... 17

## INTRODUCTION

The critical underpinning of plaintiffs' U&C causation claim under RICO is that an artificial increase in published AWPs led directly to an increase in price to cash-paying retail customers.  But, as plaintiffs concede, the price charged by a retail pharmacist to cash-paying customers is solely within the retailer's discretion.  Claiming that "often" retailers raised cash prices in response to increased AWPs does not supply the "but for" or proximate causation required to plead a private cause of action under RICO.  And no amount of wordplay or hyperbole in plaintiffs' conclusory allegations can change that result, requiring dismissal of the U&C plaintiffs' RICO claim.

In addition, dismissal should also be granted as to the claims of all of the plaintiffs for failure to plead reliance.  To be sure, a First Circuit decision has stated that reliance is not a necessary element of RICO claims based upon mail and wire fraud.  Yet the opinion in that respect is *dicta*, and the First Circuit intimated as much when it recently observed that McKesson had not raised the merits of the reliance issue with this Court.  In urging the Court to follow the Appellate Court's earlier *dicta* regarding reliance, plaintiffs repeatedly cite to a Seventh Circuit decision that is at odds with the majority view, and argue that "the number of circuit courts requiring proof of reliance … may change in the future."  (Opp'n 17.)  But plaintiffs fail to advise this Court that the Supreme Court has already granted *certiorari* in *Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928 (7th Cir. 2007), *cert. granted*, No. 07-210, 169 L. Ed. 2d 625 (Jan. 4, 2008), to address the key proposition relied upon by plaintiffs here: "[w]hether reliance is a required element of a RICO claim predicated on mail fraud and, if it is, whether that reliance must be by the plaintiff."  169 L. Ed. 2d 625.

1

## I.     PLAINTIFFS DO NOT ALLEGE THAT THE RICO VIOLATION IS THE "BUT FOR" CAUSE OF ANY INJURY TO U&C CLASS PURCHASERS.

### A.     Plaintiffs Fail To Plead "But For" Causation With The Particularity Required By Rule 9(b).

Plaintiffs dispute that Rule 9(b) requires them to plead with particularity the causation element of a RICO claim predicated on fraud.  (Opp'n 3.)  Rule 9(b), however, creates no exception that would permit plaintiffs to plead causation generally.  Indeed, the only elements of a fraud claim that Rule 9(b) states may be alleged generally are "[m]alice, intent, knowledge, and other conditions of a person's mind."  Fed. R. Civ. P. 9(b).

Courts that have addressed the issue have followed the plain language of Rule 9, and required a plaintiff to plead particularized facts regarding causation.  For example, in *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285 (S.D. Tex. 2001), the court dismissed the plaintiffs' claims of fraud and conspiracy for failure to plead causation with particularity.  The plaintiffs alleged a scheme to expand published diagnostic criteria to increase drug sales.  *Id.* at 290.  The court dismissed the complaint because the "crucial causal allegation" — that the diagnosing physician used the published criteria in diagnosing the plaintiff and prescribing the drug — was missing.  *Id.* at 292-93; *see also Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007) (affirming dismissal of complaint because plaintiff failed to plead loss causation "with sufficient specificity to enable the court to evaluate whether the necessary causal link exists."); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) (affirming dismissal of RICO claims for failure to adequately plead causation and citing Rule 9(b)).

For a contrary position, plaintiffs rely solely on *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 14 (1st Cir. 2004), where the issue of whether causation must be pleaded with particularity under Rule 9(b) was not even present.  The plaintiff in *Rodi* pleaded, *inter alia*, that

2

he had enrolled in and attended defendant's law school in reliance on misrepresentations that the school would soon be accredited. *Id.* at 10. The defendants did not argue that the complaint failed adequately to allege causation. *Id.* at 11. Rather, the defendants argued that the alleged misrepresentations had not been pleaded with particularity. *Id.* The First Circuit rejected the defendants' misrepresentation argument (as to some of the alleged misrepresentations), without addressing the requirements for pleading causation under Rule 9(b). Moreover, plaintiffs' selective quotation from *Rodi* obscures that the First Circuit was paraphrasing Rule 9(b), which allows only "conditions of mind" to be pleaded generally. Fed. R. Civ. P. 9(b).

In sum, Rule 9(b) requires causation to be pleaded with particularity. Here, that means that consumer plaintiffs must allege that the cash price they paid to the retail pharmacies for drugs had been increased by the retailers in response to an increase in FDB's published AWP resulting from the alleged 5% scheme. If this were true, it would have been easy enough for plaintiffs to so allege. Of course, plaintiffs have made no such allegations here.

### B. Plaintiffs' Conclusory Allegations Regarding "But For" Causation Also Are Insufficient Under Rule 8.

Even if Rule 9(b) did not apply, plaintiffs' claims must still be dismissed because plaintiffs' conclusory allegations that the U&C or cash price charged by retail pharmacists is "tied to" AWP are insufficient to plead causation, even under the requirements of Rule 8.

In assessing the adequacy of plaintiffs' causation allegations, this Court need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, and outright vituperation." *Rodi*, 389 F.3d at 9 (citation and quotation omitted). Plaintiffs concede this point. (Opp'n 3.) Yet, bald assertions and conclusory allegations are all that plaintiffs provide. Thus, plaintiffs allege that the U&C charge is "tied to" AWP and that retail pharmacies use AWP "as a basis for pricing cash prescriptions." (TAC ¶¶ 81, 115.) These conclusory allegations are

unsupported by any facts in the complaint, and plaintiffs devote only a few sentences in their opposition brief to equally conclusory assertions that these allegations are "sufficient" or provide a "basis to support an inference of causation."  (Opp'n 6.)  Significantly, these conclusory allegations stand in stark contrast to plaintiffs' more-detailed allegations that PBMs, health plans, and governmental entities reimburse for drug costs based on AWP minus a stated percentage as set forth in formulas that are enshrined in written contracts, statutes, and regulations.  (TAC ¶¶ 64-79.)  Plaintiffs fail to allege any such contract, statute, or regulation applicable to U&C prices, or, indeed, to allege any other facts to support their bald assertion of a "tie" between U&C prices and AWP.  Without such allegations, plaintiffs' pleading does not make the required showing that the U&C price they paid to the retail pharmacies for drugs had been increased by the retailers because of an increase in FDB's published AWP due to the alleged 5% scheme.

Plaintiffs incorrectly argue that their complaint is sufficient "as long as relief is possible under any set of facts that could be established consistent with the allegations."  (Opp'n 3-4 (citing *Morales-Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003)).)  The Supreme Court squarely rejected this formulation of the pleading standard in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), noting that this language has been "questioned, criticized, and explained away long enough," and "after puzzling the profession for 50 years, this famous observation has earned it retirement."  *Id.* at 1969.  In addition to citing the wrong legal standard, plaintiffs also ignore the First Circuit case that McKesson cited in its brief, *Munoz-Mendoza v. Pierce*, 711 F.2d 421, 425 (1st Cir. 1983), where the First Circuit held that, even outside the Rule 9(b) context, "[w]here 'injury' and 'cause' are not obvious, the plaintiff must plead their existence . . . with a fair degree of specificity."  *Id.* at 425.

4

Not surprisingly, plaintiffs ask that they be allowed discovery to develop facts to support the assertion that "AWP is a benchmark for the prices that the uninsured customers paid …." (Opp'n 12-13.)  But as the First Circuit has held, "factual allegations must be specific enough to justify dragging a defendant past the pleading threshold."  *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55-58 (1st Cir. 1999) (affirming dismissal of complaint) (cited with approval in *Bell Atlantic*) (citations and quotations omitted).

Contrary to plaintiffs' argument, courts dismiss RICO complaints for failing to plead causation with sufficient specificity whether under Rule 9(b) or Rule 8, as McKesson's opening brief established.  (Opening Br. 6-8.)  There, McKesson cited in support *Schnell v. Conseco, Inc.*, 43 F. Supp. 2d 438, 447 (S.D.N.Y. 1999) , and *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994).  Plaintiffs attempt to distinguish these cases by arguing that they did not impose a Rule 9(b) requirement that causation be pleaded with particularity.  (Opp'n 4-5.)  But in each instance the court upheld dismissal of the plaintiff's complaint because of insufficient, conclusory allegations regarding the causation element of RICO claims predicated on fraud. *First Nationwide Bank*, 27 F.3d at 771-72; *Schnell*, 43 F. Supp. 2d at 447.  In *First Nationwide Bank* the plaintiff alleged that its "losses are not the result of any general decline in the real estate market."  27 F.3d at 771.  But the court found that the "absence of a factual basis" rendered this allegation conclusory and insufficient.  *Id.*  The case for dismissal here is even stronger. Plaintiffs have failed to allege nonconclusory facts that, if proven, could establish that higher U&C prices were caused by higher AWPs.[1]  Indeed, failure to provide any supporting facts calls

---

[1] Plaintiffs assert in their opposition brief that they have "evidence" that pharmacies "often" or "usually" use AWP in choosing their cash price.  (Opp'n 2, 7.)  But such "evidence" (which, not incidentally, appears nowhere in the complaint) cannot be considered on a motion under Rule 12(b)(6).  *Rodi*, 389 F.3d at 12.  This rule is particularly applicable where, as here, the cited documents are unauthenticated, lack any foundation, and are completely devoid of any context.

(Footnote continues on next page.)

into question whether any such facts exist. *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976) (affirming dismissal of complaint) ("when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.").[2]

## II.    PLAINTIFFS HAVE NOT PLEADED PROXIMATE CAUSE AS REQUIRED BY *ANZA*.

Plaintiffs' RICO claim on behalf of the U&C class should also be dismissed because plaintiffs have not alleged facts establishing proximate cause.  In particular, plaintiffs have not satisfied the Supreme Court's requirement of alleging facts showing a "direct relation between the injury asserted and the injurious conduct alleged."  *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1996 (2006) (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).)

### A.    Plaintiffs Have Failed To Allege The Direct Injury Required By *Anza*.

The Supreme Court's recent decision in *Anza* is directly on point in supporting dismissal of plaintiffs' complaint.  Plaintiffs' several arguments to escape the application of *Anza* are either misplaced or just flat wrong.

---

(Footnote continued from previous page.)
In all events, the so-called "evidence" on which plaintiffs rely actually serves to underscore plaintiffs' failure adequately to plead causation.  For, if pharmacies "often" use AWP in choosing their cash price it follows, of course, that sometimes they do not.

[2] As these cases show, plaintiffs' argument that for pleading purposes they are entitled to a "presumption that there is a correlation between the U&C and AWP" — for which they do not cite a single case — is plainly wrong.  (*See* Opp'n 12.)  At most, plaintiffs have alleged that some U&C prices rose during some part of the class period.  (TAC ¶ 11 (citing 2004 GAO Report).)  Neither the complaint nor the GAO report plaintiffs cite contains any facts establishing a "tie" between the U&C price and AWP, let alone a "correlation" between the two.  Indeed, a more-recent GAO report on the same subject shows the opposite — for 50 frequently used brand-name drugs, "AWPs *increased at a faster rate than . . . U&C prices*."  (General Accountability Office's 2005 Report to Congress, *Prescription Drugs:  Price Trends for Frequently Used Brand and Generic Drugs from 2000 through 2004* at 11  (Aug. 2005, GAO-05-779), (submitted as Exhibit G to Decl. of Lori A. Schechter in Opp'n to Pls.' Mot. for Leave to File Third Am. Compl. [Docket No. 339-8].)

In *Anza*, the plaintiff, Ideal Steel Supply Corporation ("Ideal"), was a competitor of National Steel Supply Inc. ("National"). 126 S. Ct. at 1994. Ideal claimed that National and its owners (the Anzas) had violated the federal mail and wire fraud statutes by submitting fraudulent sales tax returns to the state of New York. *Id.* Ideal alleged that these fraudulent misrepresentations allowed National to underpay its taxes and to use that financial benefit to reduce its prices and open a new retail location, allegedly resulting in a loss of business to Ideal. *Id.* at 1994-95. Ideal sued National under RICO to recover its business losses. *Id.* at 1995. The Supreme Court upheld the trial court's dismissal of Ideal's complaint on the ground that the alleged mail and wire fraud in furtherance of defendants' alleged racketeering enterprise was not alleged to be the "proximate cause" of Ideal's injury. *Id.* at 1998. Ideal had not shown how the predicate acts of misrepresentations made by National to the State of New York had caused injury to Ideal. *Id.* at 1997. Rather, it was National's lowering of prices and opening of a new location resulting from the tax fraud that injured Ideal. *Id.*

Here, plaintiffs allege misrepresentations were made by wire and mail regarding the manner in which FDB computed its published AWPs. (*See, e.g.*, TAC ¶¶ 129, 143, 155, 157-58, 195.) Plaintiffs allege that the TPPs were directly and immediately damaged by the alleged 5% scheme, by virtue of AWP-minus formulas written in their agreements with PBMs. (TAC ¶¶ 64-65.) That retail pharmacists at times chose to raise cash prices above those published AWPs is not a direct injury to cash purchasers, any more than National's lowering its prices to its customers was a direct injury to Ideal. As the Supreme Court observed in *Anza*, nothing in the alleged fraud by National required National to lower its prices. *See* 126 S. Ct. at 1997. By the same token, nothing in the RICO violation alleged here compelled retail pharmacists to raise

7

their cash prices either. The fact is, plaintiffs' complaint here presents an even stronger case for dismissal for failure to allege proximate cause than was present in *Anza*.

### B.    Plaintiffs' Arguments To Avoid *Anza* Are Baseless.

#### 1.    Plaintiffs Cannot Distinguish *Anza* By Arguing That They Were "Targeted" By The Alleged Scheme.

Plaintiffs contend that *Anza* is distinguishable because here they have alleged that the defendants had specifically "targeted" cash-paying customers as intended victims of their 5% scheme. (Opp'n 10; *see also id.* at 6 ("a purpose of the scheme was to increase the retail price of brand drugs").) Yet that is precisely what Ideal alleged in *Anza*. 126 S. Ct. at 1998**.** Specifically, Ideal alleged it was the victim of the defendants' tax fraud scheme because National was "engaged in an unlawful racketeering scheme aimed at 'gain[ing] sales and market share at Ideal's expense.'" *Anza*, 126 S. Ct. at 1994, 1998. Indeed, the Court of Appeals had relied on these pleadings to find proximate cause. *Id.* at 1998. But the Supreme Court held that such pleading did not satisfy the proximate cause requirement. *Id.* [3] Rather, the test is "whether the alleged violation led directly to the plaintiffs' injuries." *Anza*, 126 S. Ct. at 1998. Applied here, that test requires dismissal.[4]

---

[3] *See also Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 537 (1983) ("[t]he availability of the § 4 [of the Clayton Act] remedy to some person who claims its benefit is not a question of the specific intent of the conspirators.").

[4] Similarly, in *Medgar Evers Houses Tenant Ass'n v. Medgar Evers Houses Assocs., L.P.*, 25 F. Supp. 2d 116, 124 (E.D.N.Y. 1998), the court found plaintiff's claim that it was "the alleged targets of the racketeering enterprise" did not satisfy the direct injury requirement because the "compensable injury necessarily is the harm caused by the predicate acts." *Id.* (citations omitted). There was no proximate cause because, like the U&C class here, the plaintiff tenants were not the target of, or even aware of, the alleged *misrepresentations*, all of which were made to HUD. *Id.* at 123. *See also Hamm v. Rhone-Poulenc Rorer Pharms, Inc.*, 187 F.3d 941, 953 (8th Cir. 1999) ("The injurious acts, taken as alleged, were clearly wrong; however, appellant's injuries were not proximately caused by the employer's racketeering activity.").

2.       **Plaintiffs Cannot Remedy Their Failure To Plead Proximate Cause By Recasting The Complaint As A Scheme To Fix Prices.**

To escape the application of *Anza*, plaintiffs now take the position that the heart of their RICO claims is really price fixing and that FDB's misrepresentations regarding the method by which it published AWPs were merely "just part of a plan to hide McKesson's price fixing scheme." (Opp'n 9; *see also id.* at 8 ("the chief harm lies not in the dissembling by FDB, but in the price manipulation that occurred behind the scenes").) This argument should be rejected for a host of reasons.

a.       **Plaintiffs' RICO Claims Are Based On Alleged Fraud, Not Price Fixing.**

The core allegations of plaintiffs' complaint have always been that FDB misrepresented that it surveyed the national wholesalers to arrive at AWPs when, in fact, it only used McKesson's prices. (*See*, *e.g.*, TAC ¶¶ 6, 102-104, 108-112, 118-121, 129, 139, 143, 155, 157-58, 191, 195.) The plaintiff TPPs allegedly relied upon these FDB misrepresentations in agreeing to utilize FDB's published AWPs in their contracts with PBMs. (TAC ¶¶ 64-65.) The Court relied on this "alleged uniform misrepresentation by FDB, specifically the statement that its AWP information was obtained directly from drug manufacturers or based on a survey of major drug wholesalers," in its class certification order dated August 27, 2007. (Order 7, 11-12.) The Court also made clear that the alleged "scheme" is not the price increase, but the alleged misrepresentations about how FDB's published AWPs are calculated, finding that TPPs' knowledge of the price increase did not defeat class certification because the TPPs had no knowledge of that alleged scheme. (Order 15.) To now argue that FDB's alleged misrepresentations were only incidental requires ignoring the core of plaintiffs' RICO claim.

9

But whether or not plaintiffs' claim is based on price fixing, plaintiffs have not pleaded that their injury was proximately caused by any alleged RICO violation for the reasons discussed below.

### b.    Price Fixing Is Not A Predicate Act Under RICO.

Plaintiffs' complaint does not plead, nor could it, that price fixing is a predicate act in violation of the mail or wire fraud statutes upon which they rely.  Nor is price fixing "racketeering activity" as defined in 18 U.S.C. § 1961(1).  Consistently, courts hold that antitrust violations, including price fixing, do not constitute predicate acts in furtherance of a RICO claim. *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990) ("violation of antitrust law is not a predicate act under RICO"); *Schoenbaum v. E.I. DuPont de Nemours & Co.*, 517 F. Supp. 2d 1125, 1148 (E.D. Mo. 2007) (dismissing RICO claims and rejecting plaintiffs' attempt to reformulate antitrust claims of monopolization and price fixing as violations of the National Stolen Property Act to state a RICO claim); *Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc.*, 117 F. Supp. 2d 1357, 1363 (N.D. Ga. 2000) ("anticompetitive conduct," including vertical price fixing, "does not constitute a predicate act under the RICO statute").  Of course, if price fixing did constitute a RICO predicate act, virtually every antitrust claim could automatically be turned into a RICO claim.  As shown, this is not the law.[5]

### c.    U&C Payors Were Not Directly Injured By The Alleged Price Fixing.

Finally, even if price fixing were the basis for plaintiffs' RICO claim and qualified  as a predicate act under RICO, plaintiffs would still have failed to establish proximate cause under

---

[5] Plaintiffs claim that defendants fixed prices depends on their core allegation that FDB published "fraudulently inflated AWPs."  (Opp'n 9, n.5.)  What made the AWP prices "fraudulent," according to plaintiffs, is FDB's misrepresentation regarding how AWP prices were arrived at.  (*See*, *e.g.*, TAC ¶ 129.)  In other words, FDB's alleged misrepresentations regarding the AWP it published, far from being incidental, are at the center of plaintiffs' racketeering claim.

*Anza* because U&C cash payors are not alleged to be directly injured by the alleged price fixing. This is so because retail pharmacists were not required to raise cash prices in response to higher AWPs. Whether to do so at all, or whether to increase the price of any individual drug because AWPs increased, was solely within the discretion of each retail pharmacy. Plaintiffs do not allege otherwise. The result, as in *Anza*, is that the retailer's decision of whether or not to increase cash prices renders the plaintiffs' injury indirect.

This proposition is further supported by antitrust cases decided under section 4 of the Clayton Act, the section providing for a private remedy for antitrust violations. Under *Anza*, these antitrust cases are directly on point regarding the requirements for pleading proximate cause under RICO because the private remedy provisions of RICO, 18 U.S.C. § 1964(c), are directly modeled upon Clayton Act section 4, 15 U.S.C. § 15. *See Anza*, 126 S. Ct. at 1996.

Because, as plaintiffs concede, the U&C payors made their purchases from individual pharmacies not alleged to have been part of the conspiracy, their theory of liability is closely analogous to the "umbrella liability" theory that, as McKesson showed in its opening brief, has been repeatedly rejected in antitrust cases as not based upon proximate cause. Typical of these cases is *Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242, 245-46 (S.D.N.Y. 1997), where the court dismissed the claims of all plaintiffs who purchased from non-conspiring retailers, despite their allegation that price fixing by the defendants had "raised the price of [] all New Balance Shoes" by stifling competition. The U&C plaintiffs seek to distinguish *Gross* on the basis that here they have alleged that they "lost money as a result of purchasing drugs at a price fraudulently inflated by McKesson's scheme." (Opp'n 12 n.7.) But that is precisely the theory of liability rejected by *Gross* and the other umbrella pricing cases. There is no direct injury because "Plaintiffs' alleged injury was suffered, if at all, *only indirectly* as a result of a

11

general price increase which in turn resulted from the direct effects of the conspiracy." 955 F.

Supp. at 246-47 (emphasis added).

To the same effect is *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 12114

(D.D.C. June 29, 2001). Plaintiffs attempt to distinguish this case based on the court's finding

that, "[r]egardless of how plaintiffs phrase it, they bought their pre-mix products from companies

other than the defendants in this case; therefore their relationship is, by definition, indirect."

(Opp'n 13 n.18 (quoting *In re Vitamins*, 2001 U.S. Dist. LEXIS 12114 at *20).) Of course, that

is exactly the U&C plaintiffs' situation here. They bought their drugs from retail pharmacies,

who have never been named as defendants.[6]

Plaintiffs also try to minimize the significance of the individual pharmacies' role in

setting cash prices by arguing that, "[i]t is immaterial that pharmacies set the actual price for

uninsured consumers as long as that price, like the price defined by the TPP reimbursement

contract, is tied to or influenced by inflated AWPs." (Opp'n 8.) But, as the cases recognize,

there is a world of difference between a formulaic relationship to AWP price such as that

contained in the TPP contracts with PBMs and a price that is allegedly "influenced by" AWP.

The pricing discretion of the independent pharmacies defeats the direct injury requirement of

proximate cause. *See Gross*, 955 F. Supp. at 246 ("the causal connection between the alleged

_____

[6] While virtually ignoring the umbrella liability cases cited by McKesson, plaintiffs point
instead to a series of class certification cases which they claim show their allegations here "are
sufficient to establish proximate cause based on a manipulation of benchmark prices." (Opp'n 6
& n.4.) Not so. In each case, there was no question of direct injury because the plaintiffs had
purchased the product ***directly*** from the colluding defendants. The only issue was whether there
was sufficient commonality for class certification because the plaintiffs had purchased the
product at various prices, all of which were based on the artificially inflated price. *See, e.g.*, *In
re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 383 (S.D.N.Y. 1996) (certifying class that
purchased diamonds directly from defendants based on artificially inflated list price); *In re
Commercial Tissue Prods.*, 183 F.R.D. 589, 595 (N.D. Fla. 1998) (certifying class that purchased
product directly from defendants based on negotiations from price that was artificially raised by
"collusive actions" of defendants).

injury and the conspiracy is attenuated by significant intervening causative factors (*i.e.*, independent pricing decisions of non-conspiring retailers)"); *In re Vitamins*, 2001 U.S. Dist. LEXIS at *29 ("The causal connection between plaintiff's injury and the alleged conspiracy is necessarily attenuated by significant intervening factors, such as independent pricing decisions of the nonconspiring suppliers").

This same principle taken from relevant antitrust cases was recognized by the court in a RICO case, *Longmont United Hospital v. Saint Barnabas Corp.*, 2007 U.S. Dist. LEXIS 48187 (D.N.J. June 22, 2007), where the court concluded that when "the complained of harm flows through an intermediary that has the discretion to act in a certain way or not, there is no proximate cause sufficient to establish a RICO violation." *Id.* at *18. Plaintiffs' claim that *Longmont* did not involve the issue of pricing discretion is false. (*See* Opp'n 13 n.8.) It was central to the court's decision, which focused on the lack of a precise formula linking plaintiffs' losses to the defendants' overcharging: "Without a formula, automatically relied upon by CMS, the injury to Plaintiff is too remote and damages too speculative." *Id.* at *17; *see also id.* at *13-*14 (noting that, while in practice CMS tended to use a reimbursement level set at 5.1% of charges, it had the discretion to set the reimbursement level at anywhere between 5 and 6%). Likewise, here, because there is no set "formula" linking U&C pricing to AWP, the U&C plaintiffs' claim should be dismissed.[7]

---

[7] Plaintiffs' claim that pricing discretion was not at issue in *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924 (9th Cir. 1994) is also wrong. (*See* Opp'n 13 n.8.) In *Pillsbury*, the court found that subtenant Pillsbury could not recover from the defendant landlord after Pillsbury's rent rose as a result of the landlord fraudulently inflating the value of the building. Pillsbury argued that the master tenant passed on the full value of the rent increase and was "simply a conduit through which the injury passed." *Id.* at 930. The court disagreed, noting that, "the complaint demonstrates that there is nothing 'automatic' about the sublease rent increase." *Id.*

Plaintiffs also argue that it is "sufficient to establish proximate cause" if they can establish that McKesson's conduct "had a foreseeable impact" on the U&C class. (*See* Opp'n 6-7.) This argument is also wrong. Foreseeability is a separate requirement from the requirement that an injury must flow directly from the alleged predicate act. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 284 (2d Cir. 2006). As stated in McKesson's opening brief, McKesson is not arguing the foreseeability issue in this motion, but rather "but for" causation and "proximate cause" under *Anza*. (*See* Opening Br. 5 & n.2.) The passage that plaintiffs cite from *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 175 (D. Mass. 2003), regarding foreseeability is, therefore, inapposite. (*See* Opp'n 7.)[8]

### III.   PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A RICO CLAIM ON BEHALF OF ANY OF THE THREE CLASSES BECAUSE THEY DO NOT ALLEGE THAT PLAINTIFFS RELIED ON FDB'S ALLEGED MISREPRESENTATIONS.

At the crux of plaintiffs' opposition is the First Circuit's decision in *Systems Management v. Loiselle*, 303 F.3d 100 (1st Cir. 2002), which plaintiffs claim precludes consideration of whether reliance is required in a civil RICO action predicated on mail or wire fraud. This Court is not bound by dicta in *Systems Management*, and should adopt the majority view, requiring plaintiffs to plead reliance on the alleged misrepresentations. Both the common law of torts and Supreme Court precedent support the majority position. Indeed, although not cited or acknowledged in plaintiffs' brief, the Supreme Court has recently granted *certiorari* in

---

[8] *Lupron* is also factually distinguishable. In *Lupron*, the defendant sought to dismiss the plaintiffs' RICO claim based on the alleged "intervening conduct" of industry journals and the federal government (who were alleged to be passive recipients of the AWP from the defendant), as well as physicians to whom the defendant had provided free samples with the encouragement to falsely bill Medicare. 295 F. Supp. 2d at 159-60, 175. None of these other actors exercised independent pricing discretion, or played a role in any way comparable to the individual retail pharmacies here.

the *Phoenix Bond* case to resolve this very issue. *Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928 (7th Cir. 2007), *cert. granted*, No. 07-210, 169 L. Ed. 2d 625 (Jan. 4, 2008).

      **A.**      **The First Circuit's Opinion In *Systems Management* Regarding Reliance Is Dicta.**

The First Circuit has explained that dicta are comments that are "'unnecessary to the decision in the case,'" *Díaz-Rodríguez v. Pep Boys Corp.*, 410 F.3d 56, 60 (1st Cir. 2005), and are not "the stuff of binding precedent," *Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 459 (1st Cir. 1992). This is the case even for "*orbiter dictum*" which are "observations relevant, but not essential, to the determination of the legal questions then before the court." *Dedham Water Co.*, 972 F.2d at 459; *see also* Pierre N. Leval, *Judging Under The Constitution: Dicta About Dicta*, 81 N.Y.U. L. REV. 1249, 1256 (2006) ("A dictum is an assertion in a court's opinion of a proposition of law which does not explain why the court's judgment goes in favor of the winner.")[9] A "proposition is dictum" if "turn[ing] the questioned proposition around to assert its opposite" does "not require a change in either the court's judgment or the reasoning that supports it." Leval, *supra*, at 1257.

In the instant case, plaintiffs cannot be more mistaken in their claim that "the reliance issue was central to the determination of the case" in *Systems Management*. (Opp'n 15.) In *Systems Management*, the First Circuit reversed a civil RICO judgment in favor of plaintiffs based upon the absence a "pattern of racketeering activity." *Systems Management*, 303 F.3d at 104-106. The court of appeals' reliance observations thus were unnecessary and immaterial to the ruling in that case, because any different resolution of the reliance issue would have had no effect on the judgment or reasoning supporting that judgment.

---

    [9] *McConaghy v. Sequa Corp.*, 294 F. Supp. 2d 151 (D. R.I. 2003), cited by plaintiffs (Opp'n 14), is in accord with these authorities, as that case supports the proposition that findings that are "immaterial" to a ruling are dicta. *Id.* at 161.

Had the First Circuit considered the reliance issue foreclosed by *Systems Management*, there would have been no need for the Court of Appeals to deny McKesson's Rule 23(f) petition on the grounds that McKesson "did not develop its reliance argument."  (*See* Nov. 16, 2007 First Circuit Order, attached as Exhibit 1 to McKesson's Opening Brief [Docket No. 367].) Instead, the court of appeals could have cited to *Systems Management* or even the court's Rule 23(f) precedent *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 291 (1st Cir. 2000), for the proposition that there is no unsettled legal issue important to certification.

### B.      Section 1964(c) Incorporates Proof Of Detrimental Reliance By The Plaintiff.

Other than the *Systems Management* dicta, plaintiffs' only argument in support of their no reliance argument is that it "make[s] sense."  (Opp'n 19.)  But logic dictates that a misrepresentation cannot cause an injury unless someone relies upon it.  Moreover, plaintiffs' assertion ignores the Supreme Court's well-settled constructions of 18 U.S.C. § 1964(c), which permits recovery only to a "person injured in his business or property *by reason of*" a violation of the RICO statute.  18 U.S.C. § 1964(c) (emphasis added).[10]

Both *Anza* and *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) construed 18 U.S.C. § 1964(c)'s "by reason of" requirement to require more than mere "but for" causation.  Instead, the Supreme Court held that a plaintiff seeking to demonstrate an injury must establish that the RICO violation was the injury's "proximate cause" — which is satisfied only if there is "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268; *see also Anza*, 126 S. Ct. at 1998 ("When a court evaluates a RICO

---

[10] Plaintiffs are wrong to suggest that McKesson claims that the criminal fraud statutes require reliance and proof of injury.  (Opp'n at 17.)  While criminal fraud does not require the government to prove injury or reliance, *Neder v. United States*, 527 U.S. 1, 25 (1999), because a defendant can violate the criminal law even if no one was even injured, section 1964(c) imposes additional burdens on private plaintiffs seeking treble damages.

claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). The Supreme Court reached this result after undertaking "a careful interpretation of § 1964(c)" which demonstrated that Congress intended to incorporate common law principles in civil RICO's damages provision. *Anza*, 126 S. Ct. at 1996; *see also Beck v. Prupis*, 529 U.S. 494, 500 (2000) (relying upon the common law to conclude that a civil RICO plaintiff must actually be injured by the racketeering activity).

The incorporation of common law principles unequivocally dictates that civil RICO actions predicated on fraud require a showing of reliance, because justifiable reliance is required in common law fraud based actions. The RESTATEMENT (SECOND) OF TORTS articulates that a defendant is "subject to liability" only if the plaintiff "justifiably relies upon the truth of the matter misrepresented …." RESTATEMENT (SECOND) OF TORTS § 546 (1977). The comments to section 546 of the RESTATEMENT further explain that "[f]or a misrepresentation to be a cause in fact of the pecuniary loss …, the plaintiff *must have relied upon* the misrepresentation in incurring the loss." *Id.* § 546 cmt. *b* (emphasis added); *see also id.* § 525 (liability for losses caused "by justifiable reliance upon the misrepresentation"). These sections in the RESTATEMENT (SECOND) OF TORTS constitute authoritative statements of the common law. *Field v. Mans*, 516 U.S. 59, 70 (1995) (describing RESTATEMENT as "the most widely accepted distillation of the common law of torts"). Indeed, citing to the RESTATEMENT, the Supreme Court has understood "common law" fraud to impose liability "'for pecuniary loss caused' to one who justifiably relies upon th[e] misrepresentation." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (quoting RESTATEMENT (SECOND) OF TORTS § 525).[11]

---

[11] Other learned treatises are in accord with the RESTATEMENT. *See*, *e.g.*, W. Page Keeton *et al.*, PROSSER & KEETON ON THE LAW OF TORTS 728 (5th ed. 1984) (common law fraud requires an "intention to induce the plaintiff to act or to refrain from action in reliance upon the

(Footnote continues on next page.)

Because plaintiffs did not plead justifiable reliance for any of the three classes, their claims under 18 U.S.C. § 1964(c) must be dismissed both under McKesson's motion to dismiss and motion for judgment on the pleadings.[12]

### C.     *Systems Management* Cannot Be Squared With Supreme Court Precedent.

Nor should the dicta in *Systems Management* be adopted by this court.  Indeed, nowhere did the *Systems Management* court take into account the Supreme Court's decision in *Holmes*.[13] Rather, relying on its own reading of section 1964(c), the First Circuit concluded that civil RICO requires "nothing more than the criminal violation and resulting harm."  *Systems Management*, 303 F.3d at 104.  According to the court of appeals, the causation required "is largely a proxy for foreseeability."  *Ibid.*  Mere foreseeability, however, was the view adopted by the dissent, not the majority, in *Anza*.  126 S. Ct. at 2003-2004 (Thomas, J. dissenting).  And, as discussed above

---

(Footnote continued from previous page.)

misrepresentation"); 1 Joseph Story, COMMENTARIES ON EQUITY JURISPRUDENCE § 203, at 227 (13th ed. 1886) (Under the common law, civil fraud requires that a plaintiff "must have been misled to his prejudice or injury.").  Indeed, the First Circuit in *System Management* even acknowledged that a plaintiff at common law "could not (for lack of reliance) recover for fraud." *Systems Management*, 303 F.3d at 104.

[12] Third-party reliance does not satisfy the reliance required by the common law.  The RESTATEMENT permits recovery when a misrepresentation is made to a third party only where the misrepresentation is communicated by the third party to the plaintiff, the plaintiff relies upon the misrepresentation, and the defendant anticipated the plaintiff would receive and rely upon those misrepresentations.  RESTATEMENT (SECOND) OF TORTS § 533.  Plaintiffs have not made such allegations.

[13] Indeed, the court of appeals "assume[d]" that section 1964(c) requires proximate cause even though, in that court's view, "the statute says nothing specific on this point."  *Systems Management*, 303 F.3d at 104.  But no such assumption was necessary because the Supreme Court expressly held that section 1964(c) did require a showing of proximate cause ten years earlier in *Holmes*.  503 U.S. at 268.

and in McKesson's opening memorandum, *Anza* and *Holmes* require a direct relation between the racketeering activity and the injury alleged, not that the injury was foreseeable.[14]

Moreover, plaintiffs are mistaken when they argue that the courts of appeals are coalescing around the *Systems Management* dicta.[15]  To the contrary (Opp'n 19), the Ninth Circuit has never held that reliance is not required in a civil RICO action predicated on mail fraud.  Rather, that court concluded that it was "neither necessary nor prudent" to reach that issue and thus "decline[d] to do so" (ironically, because to do so would be dicta).  *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004).  Indeed, only one court (the Seventh Circuit in *Phoenix Bond*, upon which plaintiffs' also rely (Opp'n 18) has adopted a more limited view of reliance since *Systems Management*, and that decision is patently suspect now that the Supreme Court has granted *certiorari* to review that ruling.[16]  A decision in that case will be reached in the next five months, by June 2008.

### D. The Fraud On The Market Theory Of Reliance Has No Application To The Instant Dispute.

As a last resort, plaintiffs argue that reliance should be presumed.  (Opp'n 19-20.)  But the decision they cite — *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154

---

[14] Plaintiffs rely heavily on Justice Thomas's dissenting opinion in *Anza*.  But that opinion received the support from no other member of the Court, and it urged a far less stringent form of proximate cause than the Court adopted.  As such, the dissenting opinion provides no reliable guidance as to how the other Justices will resolve the reliance question.

[15] Plaintiffs' citation (Opp'n 18) to the district court decision in *Grider v. Keystone Health Plan Centr., Inc.*, 2006 U.S. Dist LEXIS 93085 (E.D. Pa. Dec. 21, 2006), does not demonstrate that the federal courts of appeals are shifting toward the view stated in the *Systems Management* dicta.  And plaintiffs proffer no response to the majority of the courts of appeals that have reached the opposite conclusion that a plaintiff must plead reliance.  (Opening Br. 18-19 (citing cases).)

[16] Plaintiffs also rely on a dissenting judge's recommendation for *en banc* review in *Brown v. Cassens Transp. Co.*, 492 F.3d 640 (6th Cir. 2007), but plaintiffs neglect to inform this court that the Sixth Circuit denied rehearing *en banc* on December 17, 2007.  (*See* Opp'n 18.)

(3d Cir. 2001) — is inapposite to the instant dispute.  That case, arising under securities laws

(Rule 10b-5, 17 C.F.R. § 240.10b-5), is based upon the "fraud-on-the-market" theory applicable

to securities laws as set forth by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224

(1988).  There, the Court presumed reliance due to the unique nature of our nation's securities

markets where millions of shares are constantly changing hands and the single market price for a

stock "is determined by the available material information regarding the company and its

business."  *Id.* at 241-42.  The Court reached this conclusion, in part, because "[a]ctions under

Rule 10b-5 are distinct from common-law deceit and misrepresentation claims, and are in part

designed to add to the protections provided investors under the common law."  *Id.* at 245 n.22.

(internal citations omitted).  As the Eleventh Circuit has explained:  "The securities market

presents a wholly different context than a consumer fraud case, and neither this circuit nor the

Supreme Court has extended a presumption of reliance outside the context of securities cases."

*Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1363 (11th Cir. 2002).

## CONCLUSION

For each of the foregoing reasons, plaintiffs' U&C claims should be dismissed for failure

to plead "but for" and proximate causation.  The claims of the U&C class as well as the TPP and

consumer classes also should be dismissed for failure to plead reliance.

Respectfully submitted,

McKesson Corporation
By its attorneys:

/s/ Lori A. Schechter
Melvin R. Goldman (*pro hac vice*)          John Kiernan
Lori A. Schechter (*pro hac vice*)          Stephen E. Hughes
Paul Flum (*pro hac vice*)                  Bonner Kiernan Trebach & Crociata
Tiffany Cheung (*pro hac vice*)             200 Portland Street
Morrison & Foerster LLP                     Suite 400
425 Market Street                           Boston, MA 02114
San Francisco, CA 94105-2482                Telephone: (617) 426-3900
Telephone:  (415) 268-7000                  Facsimile: (617) 426-0380
Facsimile:  (415) 268-7522

Dated:  January 29, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on January 29, 2008.

/s/ Lori A. Schechter

Lori A. Schechter