UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>     Plaintiffs,<br><br> v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>     Defendants. | Civil Action:  1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**DEFENDANT MCKESSON CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENAS TO NONPARTY RETAIL PHARMACIES**

**INTRODUCTION**

Defendant McKesson Corporation ("McKesson") seeks a protective order requiring plaintiffs to withdraw one of four document requests set forth in subpoenas that have been recently served on nonparty retail pharmacy chains. The disputed request violates the Court's January 2, 2008 Scheduling Order, which governs claims asserted by the recently added class of plaintiffs who bought drugs from pharmacies at "usual and customary" ("U&C") prices. That Order limits further discovery in this action to "new" issues raised by the U&C class. Request Number Four of the subpoenas, however, does not seek information bearing on any new issues raised by that class, but instead goes directly to matters on which discovery closed long ago. Plaintiffs' attempt to pursue this discovery now is squarely foreclosed by the Court's Scheduling Order.

**BACKGROUND**

In November 2006, plaintiffs filed a second amended complaint which asserted claims under the federal RICO statute and various state laws on behalf of two classes: (1) third party payors ("TPPs") that paid reimbursements for certain drugs ("Appendix A drugs") purchased by privately insured individuals based on published "average wholesale prices" (AWPs); and (2) privately insured consumers who made percentage co-payments for Appendix A drugs. Fact discovery on the issues raised by the TPP and co-payor classes closed on July 31, 2007.

On October 9, 2007, plaintiffs moved for leave to file a third amended complaint. (Declaration of Paul Flum in Support of McKesson Corporation's Motion for Protective Order ("Flum Decl.") ¶ 2.) Among other things, plaintiffs sought leave to add a new class of plaintiffs consisting of uninsured consumers who made purchases of drugs at the "usual and customary" cash price set by the pharmacy. (*Id*.)

The Court granted in part plaintiffs' motion on November 5, 2007, allowing plaintiffs to file an amended complaint adding the U&C class but advising that the claims of that class will "proceed on a different track" than the one followed by the original two plaintiff classes. (Flum

1

Decl. ¶ 3.) The Court also directed the parties to confer on a scheduling order for the newly-added U&C claims. (*Id.*)

Plaintiffs filed a third amended complaint on November 6, 2007. The complaint alleges that the new U&C class purchased drugs at prices that were "tied" to AWPs and were "usually set at a price above AWP." (Third Amended Complaint ("TAC") ¶ 81.) Plaintiffs also allege that AWPs are used by retail pharmacies "as a basis for pricing cash prescriptions." (*Id.* ¶ 115.) Plaintiffs contend that the U&C class was injured because "an artificial increase in the AWP uniformly impacts" that class. (*Id.* ¶ 81.)

Pursuant to the Court's November 5 Order, the parties conferred regarding a schedule for the new U&C claims. (Flum Decl. ¶ 4.) During the course of those discussions, *plaintiffs* emphasized that defendants should not attempt to use discovery on the U&C claims as a basis for obtaining material that could have been pursued during discovery on the TPP and co-payor claims. (*See, e.g.*, *id.* Ex. 1 at 2 ("we don't want you trying to backdoor stuff you didn't do in the current class case").) Defendants readily agreed that "there should be no back-dooring of discovery for non-U&C claims from any additional discovery done in this case or elsewhere." (*Id.* Ex. 1 at 1.) The Court entered a scheduling order for the U&C claims on January 2, 2008 ("U&C Scheduling Order"). Among other things, the U&C Scheduling Order explicitly states that "[e]xcept as otherwise ordered by the Court, discovery is allowed only as to new issues raised by the Usual & Customary Class in the Third Amended Complaint." (Flum Decl. Ex. 3 at 1.)

On January 30, January 31, and February 1, 2008, plaintiffs served notice of substantively identical document subpoenas to eight nonparty companies that provide retail pharmacy services: Longs Drugs, Safeway, Kmart, Wal-Mart, Supervalu, Target, Walgreen, and The Kroger Company. (Flum Decl. Exs. 4-11.) Request Number Four of each subpoena seeks all documents or data concerning payments by "Institutional Payors" for purchases of Appendix A drugs by individuals with private insurance coverage. (*Id.* Exs 4-11 at § IV ¶ 4.) The subpoenas define "Institutional Payors" to mean non-government entities that "reimburse[]

2

Providers for drugs or health care services," including health insurance companies and health plans. (*Id.* Exs 4-11 at § I ¶ 8.)[1]

On January 31, 2008, McKesson advised plaintiffs that Request Number Four seeks data regarding payments by the TPP class for drugs sold to individuals covered by private insurance. (*Id*. Ex. 12.) Accordingly, the request was outside the scope of discovery permitted under the Court's U&C Scheduling Order and should be withdrawn. (*Id.*) Plaintiffs declined to exclude that request from the subpoenas, arguing that the data "will show that UC prices are related to AWP." (*Id*.) McKesson advised plaintiffs that it would seek relief from the Court. (*Id*.)

## ARGUMENT

Under Rule 26(c) of the Federal Rules of Civil Procedure, a party may seek a protective order prohibiting discovery "for good cause" shown. Fed. R. Civ. P. 26(c). The moving party may seek such relief from "the court in which the action is pending." *Id*.; *see also Hartz Mountain Corp. v. Chanelle Pharm. Veterinary Prods. Mfg. Ltd*., 235 F.R.D. 535, 536 (D. Me.

---

[1] In its entirety, Request Number Four of each subpoena reads as follows:

"All documents or electronically stored information concerning payments by Institutional Payors for prescriptions for the brand drugs attached in Appendix A sold to individuals with private insurance coverage:

    a.    data should be provided in electronic format
    b.    data should include the following information:
        i.    date of sale;
        ii    drug name;
        iii.    drug NDC;
        iv.    number of pills dispensed;
        v.    pharmacy name and location;
        vi.    unique pharmacy number (National Council of Prescription Drug Programs (NDPCP) or National Association of Boards of Pharmacy (NABP);
        vii.    total amount requested and total amount received;
        viii.    ingredient cost;
        ix.    dispensing fee received;
        x.    coinsurance amount received;
        xi.    any other amount received or paid (as applicable, for example tax);
        xii.    AWP in place for that NDC on that date; and
        xiii.    name of Institutional Payor."

(*Id*. Exs 4-11 at § IV ¶ 4.)

2006) (where party moved to quash subpoena that violated trial court's scheduling order, court in which subpoena was issued directed moving party to seek protective order in trial court).

As discussed below, the Court should grant a protective order with respect to Request Number Four of the subpoenas because that request blatantly violates the Court's U&C Scheduling Order and because plaintiffs had ample opportunity to pursue the data sought by that Request before discovery closed on the TPP and co-payor claims.

I.  **REQUEST NUMBER FOUR VIOLATES THE COURT'S JANUARY 2, 2008 U&C SCHEDULING ORDER.**

Request Number Four is directly contrary to the U&C Scheduling Order, which limits further discovery in this action to "new issues" raised by the U&C claims. (Flum Decl. Ex. 3 at 1.) The only "new issue" raised by the U&C class relates to the purported relationship between AWP and the prices paid by the U&C plaintiffs for Appendix A drugs. (*See* TAC ¶¶ 81, 115.) As noted above, plaintiffs allege that AWP is "tied to" U&C pricing in some unspecified fashion. (*Id*. ¶ 81.) Apart from that issue, the allegations made in support of the claims asserted by the U&C are identical to those made in support of the TPP and co-payor claims.

The information sought by Request Number Four has no relevance whatsoever to U&C pricing. In contrast to the other three requests in the subpoenas, Request Number Four does not seek information relating to U&C pricing, the relationship between U&C pricing and AWP, or anything that might bear on prices paid for Appendix A drugs by uninsured individuals. Rather, contrary to plaintiffs' assertion that the data sought by Request Number Four might "show that U&C prices are related to AWP" (Flum Decl. Ex. 12), the Request only seeks information bearing on payments to retailers by "*Institutional Payors*" for drugs purchased by *privately insured* individuals. On its face, that Request is beyond the scope of issues (new or otherwise) relating to the U&C plaintiffs, who are (by plaintiffs' own definition) not covered by private insurance and whose drug purchases are not subject to reimbursement by Institutional Payors. (TAC ¶ 160.) Accordingly, the Request is beyond the permissible scope of discovery under the U&C Scheduling Order, providing good cause for a protective order excluding the Request from

4

the subpoenas. *See, e.g., Odie v. General Motors Corp.*, 131 F.R.D. 365, 366-67 (D. Mass. 1990) (Collings, J.) (granting sanctions where plaintiff propounded discovery in violation of court's scheduling orders, forcing defendants to move for protective order); *Hosea v. Langley*, No. 04-0605-WS-C, 2005 U.S. Dist. LEXIS 40250, at *9-*10 (S.D. Ala. Nov. 23, 2005) (granting protective order where challenged discovery violated the court's scheduling order); *Delor v. Intercosmos Media Group, Inc.*, No. 04-3262, 2005 U.S. Dist. LEXIS 17683, at *7-*10 (E.D. La. Aug. 2, 2005) (same); *Internet Law Library, Inc. v. Carr*, Nos. 01-6600, 02-0138, 2003 U.S. Dist. LEXIS 11508, at *8-*14 (S.D.N.Y. July 8, 2003) (granting terminating sanctions where plaintiffs served discovery in violation of court's order).

Moreover, plaintiffs do not need the data sought by Request Number Four to determine whether there is a relationship between U&C pricing and AWP. AWP data is widely available and was produced by defendant First DataBank during discovery for the TPP and percentage co-payment classes. (Flum Decl. ¶ 6.) Information concerning U&C pricing (as well as its relationship, if any, with AWP) is covered by the first three subpoena requests, none of which McKesson challenges. For example, Request Number Two seeks all data concerning "the relation between Your U&C prices and the AWP." (*Id*. Exs 4-11 at § IV ¶ 2.) Similarly, Request Number Three seeks all data concerning "your U&C prices for the brand drugs attached in Appendix A, and the corresponding AWP for the time period." (*Id*. Exs. 4-11 at § IV ¶ 3.) If they so choose, plaintiffs can test the relationship between AWP and U&C pricing by comparing the U&C data produced pursuant to Request Number Three with the AWP data they already have. Under these circumstances, where Request Number Four flatly violates the Court's U&C Scheduling Order *and* plaintiffs do not need the data sought by that Request, the Court should order that Request to be withdrawn.

II.    **PLAINTIFFS HAVE ALREADY HAD AMPLE OPPORTUNITY TO PURSUE THE DATA SOUGHT BY REQUEST NUMBER FOUR.**

As noted above, Request Number Four seeks data relating to payments by "Institutional Payors" for drugs purchased by privately insured individuals. Plaintiffs could have propounded

5

discovery to retail pharmacies on that subject before ago.  Having chosen to not pursue discovery on insured claims before the discovery cut-off for the TPP and percentage co-payment classes, plaintiffs should not now be allowed to seek that data through the "back door" of U&C discovery.  Plaintiffs' tactics are especially brazen given that less than two months ago they urged the Court to forbid any further discovery that might allow the parties to "alter the available facts" in the non-U&C part of the case. (Flum Decl. Ex. 2 at 2.)   Having had "ample opportunity" to obtain the information sought by Request Number Four during the discovery phase of the TPP and co-payor claims, plaintiffs should not be allowed to unilaterally reopen discovery on those matters under the guise of U&C discovery.  Fed. R. Civ. P. 26(b)(2)(C).

## CONCLUSION

For the reasons set forth above, McKesson respectfully requests that the Court grant its motion for protective order and order that each of the subpoenas served to nonparty providers of retail pharmacy services be limited to the first three requests.

McKesson Corporation
By its attorneys:

/s/ Paul Flum
Melvin R. Goldman (*pro hac vice*)
Lori A. Schechter (*pro hac vice*)
Paul Flum (*pro hac vice*)
Tiffany Cheung (*pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco,  CA 94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
PaulFlum@mofo.com

John Kiernan
Stephen E. Hughes
Bonner Kiernan Trebach & Crociata
200 Portland Street
Suite 400
Boston, MA 02114
Telephone: (617) 426-3900
Facsimile: (617) 426-0380

Dated: February 8, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on February 8, 2008.

/s/ Paul Flum
Paul Flum