UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN, | Civil Action: 1:05-CV-11148-PBS |
| | Judge Patti B. Saris |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation, | [Leave to File Granted on March 6, 2008] |
| Defendants. | |

**DEFENDANT MCKESSON CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENAS TO NONPARTY RETAIL PHARMACIES**

The Court's January 2, 2008 Scheduling Order expressly limits further discovery to new issues raised by the recent addition of a class of **_uninsured_** consumers who bought drugs at the "usual and customary" ("U&C") price. Plaintiffs concede that Request No. 4 of their subpoenas seeks claims data for drugs purchased by **_insured_** consumers from national chain pharmacies at contractually negotiated rates. (Opp'n 4.) On its face, Request No. 4 violates the plain language of the Scheduling Order.

Plaintiffs' opposition attempts to justify Request No. 4 by pointing to a software product called "Auto-Rx-Net." (Opp'n 2.) Relying on selective citations from the website of the company — Rx-Net[1] — that developed and sells the Auto-Rx-Net software, plaintiffs assert that Auto-Rx-Net establishes the required link between the insured claims sought by Request No. 4 and new issues raised by their U&C claims. Plaintiffs are wrong.

First, plaintiffs greatly exaggerate the role of Auto-Rx-Net in setting U&C prices. Auto-Rx-Net is a niche product marketed exclusively to independent pharmacies. It is not used by the national chains that plaintiffs have subpoenaed. As shown on the Rx-Net website, the Auto-Rx-Net client base consists of 266 small, independent pharmacies. (*See* http://www.rx-net-inc.com/scan.pdf (Auto-Rx-Net active customer list, dated Sept. 12, 2007).) There are approximately 59,000 retail pharmacies in the United States. (*See* http://www.pcmanet.org/newsroom/2007/Documents/SKA%20Research%20Consumer%20Access%20to%20Pharmacies%202007%205_1_07.pdf at 2.) The prescriptions sold by Auto-Rx-Net subscribers thus represent a fraction of a percent of the total number of transactions at issue in this case.

Second, plaintiffs point to a feature in Auto-Rx-Net that "allows pharmacies to set their U&C prices for each drug at 1% above the average third-party (AWP-based) reimbursement for the region." (Opp'n 3.) But the Rx-Net Website clearly states that the Auto Rx-Net product

---

[1] Plaintiffs' opposition brief attempts to create the false impression that Rx-Net is affiliated with McKesson. It is not. While the Auto-Rx-Net software uses as one of its inputs third-party pricing information collected by a business that McKesson acquired after this lawsuit was filed called Relay Health, neither McKesson nor Relay Health has any ownership interest in Rx-Net.

adjusts U&C pricing to reflect "median 3rd party pricing" **only** when the pharmacy's U&C price falls below the median third-party discount off AWP. (*See* http://www.rx-net-inc.com/html/info-mckesson.htm.) The complaint alleges that the U&C prices paid by uninsured customers are "usually set at a price ***above*** AWP…." (TAC ¶ 81; emphasis added.) Accordingly, the Auto Rx-Net repricing feature that plaintiffs claim justifies their sweeping subpoena of insured claims data would be triggered only in the "unusual" circumstance where a pharmacy's U&C price is below both AWP and median third-party reimbursements.

Third, the Auto Rx-Net product was not even introduced until 2005. (*See* http://www.rx-net-inc.com/autorxprofit.pdf (Fall 2005 brochure for Auto-Rx-Net indicating that it is a "new" service).) Thus, Auto-Rx-Net was not in use until long after the 2002-2003 timeframe when the bulk of the 5% AWP mark-up increases are alleged to have occurred. (*See* TAC ¶ 144.) Indeed, Auto Rx-Net was not introduced until after First DataBank's March 2005 discontinuance of wholesaler surveys (*id.* ¶ 159) and the freezing of AWP mark-ups.

Fourth, as explained in McKesson's opening brief, data concerning any "ties" between U&C prices and AWP is covered by the other requests in the subpoenas. (Mot. 5.) Plaintiffs do not contend otherwise. Nor do they dispute that data concerning AWP during the class period has already been produced. Accordingly, to the extent plaintiffs wish to demonstrate a "link" between AWP and the drug prices paid by uninsured consumers, plaintiffs either already have the relevant data or they have requested it through discovery that McKesson does not challenge.

Finally, plaintiffs argue that McKesson "has no cause to complain" about their end run around the Scheduling Order, so long as the subpoenaed retailers acquiesce. (Opp'n 4.) There is no question that McKesson has the right to seek compliance with the Court's orders. *See, e.g., Hartz Mountain Corp. v. Chanelle Pharm. Veterinary Prods. Mfg. Ltd.*, 235 F.R.D. 535, 536 (D. Me. 2006); *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 428 (M.D. Fla. 2005). Indeed, it is plaintiffs who have "no cause to complain" that McKesson objects to Request No. 4, given that they were the ones who repeatedly insisted (to both McKesson and the Court) that the Scheduling Order must prohibit discovery targeting the non-U&C claims.

McKesson Corporation
By its attorneys:

/s/ Paul Flum
Melvin R. Goldman (*pro hac vice*)
Lori A. Schechter (*pro hac vice*)
Paul Flum (*pro hac vice*)
Tiffany Cheung (*pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
PaulFlum@mofo.com

Dated: February 19, 2008

John Kiernan
Stephen E. Hughes
Bonner Kiernan Trebach & Crociata
200 Portland Street
Suite 400
Boston, MA 02114
Telephone: (617) 426-3900
Facsimile: (617) 426-0380

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 6, 2008.

/s/ Paul Flum
Paul Flum