UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST DATABANK, INC., a Missouri Corporation; and McKESSON CORPORATION, a Delaware Corporation, <br><br> Defendants | Civil Action No. 1:05-CV-11148-PBS |

## AMENDMENTS TO SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs and Defendant First Databank, Inc. ("FDB"), subject to the approval of the Settlement Court, agrees to the following amendments to the Agreement by interlineation, which taken together with the Agreement, now comprise the Agreement dated as of August 3, 2006 and amended as of May 22, 2007 and March 19, 2008.

1.      Section 4 of the Agreement (Motion for Preliminary Approval), is amended by annexing a revised form of a Preliminary Approval Order as Exhibit A hereto.

2.      The definition of the term "Settlement Notice" and Section 5 of the Agreement (Notice to Class), is amended by the following:

3.     <u>Notice to Class</u>.  In the event the Settlement Court preliminarily approves the settlement set forth in this Agreement and the Settlement Court directs that additional notice be provided to the Private Payor Class, Class Settlement Counsel shall seek the Settlement Court's approval of a joint notice program in connection with a proposed settlement with MediSpan.  In addition the parties shall seek an order permitting  the FDB/MediSpan joint notice to be sent with the notice of pendency sent with respect to the claims against McKesson.

4.     Section 6 of the Agreement (<u>Entry of Final Judgment</u>) is amended by annexing a revised form of a proposed Order and Final Judgment as <u>Exhibit B</u> hereto.

5.     Section 8 of the Agreement (<u>Termination</u>) is amended and restated in its entirety to read as follows:

"8.  <u>Termination</u>

(A)  REJECTION OR MATERIAL ALTERATION OF SETTLMENT TERMS. First DataBank and Class Settlement Counsel shall each have the right to terminate this Agreement by providing written notice of their election to do so ("Termination Notice") to each other within thirty (30) days of (1) the Settlement Court declining to enter the Preliminary Approval and Settlement Class Order substantially in the form annexed hereto as <u>Exhibit C</u> within five (5) days of the date on which the preliminary approval hearing is held or the Settlement Court's placing additional conditions on obtaining preliminary approval of this Agreement at such hearing; (2) the Settlement Court declining to enter the Order and Final Judgment substantially in the form annexed hereto as <u>Exhibit B</u>; (3) the date upon which the Order and Final Judgment is modified or

2

reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (4) the date upon which an Alternative Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.

(B)  TPP OPT OUTS.  If First DataBank, in its sole discretion, determines that the number or identity of the TPP Class Members who request exclusion from the class is unsatisfactory, First DataBank shall be entitled to terminate this Agreement.  The parameters under which First DataBank likely would exercise its discretion under this paragraph will be set forth in a Supplemental Agreement between the parties which will be filed under seal with the Settlement Court.

(C)  STATE ATTORNEYS GENERAL:  During the period between the filing of a proposed Order for Preliminary Approval and ten (10) days before the date set by the Court for a hearing on final approval of the settlement embodied by this Agreement , as amended (the "Fairness Hearing"), First DataBank, receives service of process, and/or learns of a current interest in the prosecution or filing of claims, based upon the allegations contained in the Class Action complaint or substantially in the form of the claims raised in the Class Action, from or by the U.S. Department of Justice and/or a State Attorney General, then First Databank shall have a right to terminate this Agreement.  If First DataBank elects to exercise the option to terminate as set forth in this paragraph, written notice of such election must be provided to Class Settlement Counsel so as to be received no later than 5:00 pm Eastern time on the tenth (10th) day prior to the date for the scheduled Fairness Hearing.  For purposes of the Settlement, the term State refers to the States of the United States, the District of Columbia, the territories, possessions, and commonwealths of the United States.

3

(D) RETURN TO PRE-AGREEMENT STATUS. In the event any of the parties exercise the right of termination enumerated in this paragraph, the stipulation concerning the certification of the Private Payor Class as defined in Paragraph 1 shall be null and void, the rights and obligations of the parties shall be identical to those prior to the execution of this Agreement and the status of the Class Action shall be as it was prior to the execution of this Agreement. In the event either party exercises any right of termination, First DataBank will have a reasonable opportunity to conduct non-repetitive discovery and to raise and have heard any dispositive motions with respect to the claims against it. However, FDB, if it exercises a right of termination, will make every reasonable effort to adhere to the case schedule set by the Court in the Class Action."

6.   In Section 9 of the Agreement (<u>Settlement Consideration</u>), the provisions of Section 9(A)(1) only are amended to read as follows:

(A)   CHANGE IN PRICE REPORTING

(1) <u>ADJUSTMENT OF THE WAC TO AWP MARKUP</u>. On a date which is no later than ninety (90) days after the entry by the Settlement Court of the Final Order and Judgment in substantially the form attached hereto as Exhibit <u>B</u>, First DataBank shall adjust, i.e., change, the WAC to AWP Markup it utilizes for any prescription pharmaceutical that is listed in Appendix A to Plaintiffs' Third Amended Complaint (Docket Entry #360) and has a mark up factor basis from WAC to AWP in excess of 1.20, to 1.20. Subject to the provisions of paragraph (9)(A)(3) below, First DataBank will not at any time thereafter increase the WAC to AWP Markup of any of the pharmaceutical NDC numbers listed in Appendix A to Plaintiffs' Third Amended Complaint (Docket Entry #360) above 1.20 unless a different methodology for

4

determining WAC, AWP or mark ups is adopted as contemplated by paragraph 9 of this Agreement. The effect of this amendment is that the settlement's provision changing the WAC to AWP Mark-up apply to the drugs listed in Appendix A to the Third Amended Complaint.

7. In Section 9 of the Agreement (<u>Settlement Consideration</u>), the reference to the term "Effective Date of" in Section 9(A)(2) is replaced with the phrase "Final Order and Judgment approving."

8. In Section 9 of the Agreement (<u>Settlement Consideration</u>), the provisions of Sections 9(A)(4) and 9(A)(5) only are deleted.

9. In Section 9 of the Agreement (<u>Settlement Consideration</u>), the following provision of Section 9(C) is added to the Agreement as follows:

(C) <u>SETTLEMENT FUND FOR BENEFIT OF CLASS.</u>

(1) Within thirty (30) days following the Effective Date, FDB shall pay $1.0 million (the "Settlement Fund") to be deposited in an escrow account to be held by Class Counsel for the benefit of the Settlement Class ("Class Escrow Account"). Payment of the Settlement Fund into the Class Escrow Account by FDB shall completely fulfill its obligations under this Agreement to the Settlement Class.

(2) The Settlement Fund in the Class Escrow Account shall be held in an interest-bearing account that shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. Class Counsel, on behalf of the Class, shall be responsible for all administrative, accounting and tax

compliance activities in connection with the Class Escrow Account and the Settlement Fund deposited into the Class Escrow Account, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-1.  FDB shall provide to Class Counsel a W-9 or other documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Class Escrow Account pursuant to Treas. Reg. § 1.468B-1.

(3)  The manner and method of allocating the Settlement Fund among the Settlement Class shall be determined with the approval of the Court at or about the time the above referenced litigation against McKesson Corporation is concluded.  However, subject to the Court's agreement, the parties believe that it would be reasonable and fair to the Class if any resulting allocation formula were to give priority to identifiable Consumer Class Members who incurred damage during the class period due to the allegedly inflated AWP markup for those pharmaceuticals identified in Exhibit A to Plaintiffs' Third Amended Complaint and who would not have received a direct economic benefit from the adjustment of the WAC to AWP Markup at any time during the period from the implementation of the adjustment of the WAC to AWP Markup under this Agreement to the Effective Date of this Agreement.

(4)  Nothing herein precludes the Settlement Court from approving an allocation of the Settlement Funds in conjunction with any other distributions to be made to the Settlement Class.

(5)  All taxes on income or interest generated by the Settlement Funds shall be the responsibility of the Settlement Funds.  Any costs of distribution of the Settlement Funds to the Settlement Class shall not be the responsibility to FDB.

10.    Section 10 of the Agreement (<u>Attorneys' Expenses and Fees and Fee Disputes</u>) is amended by adding the following provision:

Subject to approval by the Settlement Court, FDB further agrees to pay the following additional third-party expenses: (1) up to $160,000.00 in expert fees incurred to date by Class Counsel in connection with the overall negotiation of this Agreement and the motion practice that has occurred in connection with it to date, and (2) any future third-party expenses incurred only in connection with the hearings and implementation of this Agreement, as amended, and provided that FDB agrees in advance that such expenses are necessary and reasonable. FDB shall not be responsible for any other fees or expenses. No attorney fees, other than those previously part of the Agreement, shall be paid by FDB, nor sought by Class Counsel. FDB shall pay the expenses referred to above within twenty (20) days after the Effective Date, provided the Settlement Court has approved the third-party expenses.

11.    Section 12 of the Agreement, (<u>Payment of Expenses Related to Notice and Administration</u>) is amended by the following provisions:

First DataBank shall be liable for all reasonable expenses associated with the provision of notice to the members of the Private Payor Class and all reasonable costs associated with the processing of exclusion requests submitted and objections filed in connection with this Agreement, including the reasonable fees for professional services rendered by Kinsella/Novak Communications, Ltd., 2120 L Street NW, Suite 205, Washington, DC or, if not reasonably available, another firm agreed to by FDB and Class Counsel (the "Class Notice Consultant"). In addition to direct mail notice to TPPs, notice

7

to Class Members shall also be accomplished by a program of notice publication designed to achieve a reasonable reach and frequency commensurate with the reach and frequency sought in other pharmaceutical pricing litigation notice programs, as reasonably determined by the Class Notice Consultant. Notwithstanding the foregoing, in the event that a joint notice program is approved by the Settlement Court in connection with notice to the litigation class in the above captioned litigation, First DataBank shall be responsible for only 50% of expenses associated with the provision of notice.

12.     Except as expressly amended hereby, all other provisions of the Agreement shall remain in full force and effect. All references to "this Agreement" in the Agreement shall mean the Agreement as amended on May 22, 2007 and as amended hereby.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Amendment to the Agreement dated as of August 3, 2006 and previously amended as of May 22, 2007.

Dated: March 19, 2008

PLAINTIFFS                                        FIRST DATABANK, INC.


By: _____          By: _____
    Thomas M. Sobol, Esq.                    Eve Burton, its counsel
    Hagens Berman Sobol Shapiro LLP

By: _____
    Jeffrey Kodroff, Esq.
    Spector, Roseman & Kodroff, P.C

# Exhibit A – Preliminary Approval Order is not attached

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, | C.A. No. 1:05-CV-11148-PBS |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**FINAL ORDER AND JUDGMENT CERTIFYING THE CLASS FOR PURPOSES OF SETTLEMENT, APPROVING OF CLASS ACTION SETTLEMENT, AND DISMISSING THE ACTION WITH PREJUDICE**

Upon considering the Amended Joint Motion for Approval of Class Settlement (the "Joint Motion"), filed by plaintiffs and defendant First DataBank, Inc. ("FDB") on March 19, 2008, seeking approval of the Second Amended Proposed Settlement Agreement, originally dated as of August 3, 2006 and amended as of May 22, 2007 and March 5, 2008 (the "PSA" or the "Proposed Settlement,"), Class Plaintiffs Memorandum of Law in Support of Joint Motion for Preliminary Approval of Proposed First DataBank Class Settlement, Certification of Settlement Class and Approval of Notice Plan, a Joint Memorandum of Law in Support of the Joint Motion, additional memoranda filed by Class Plaintiffs' in further support of the settlement, all of the supporting material submitted in conjunction with the Joint Motion and Class Settlement, and Counsel's Motion for Approval of an Award of Attorneys' Fees and Memorandum in Sup-

port thereof, and on considering the record of these proceedings, the representations, argument, and recommendation of counsel for the moving parties, and the requirements of law,

**IT IS HEREBY <u>ORDERED</u>, <u>ADJUDGED</u> AND <u>DECREED</u> that:**

1.     The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

2.     Venue is proper in this district.

3.     The Court finds, that the Rule 23 factors are present and that certification of the proposed Class, as defined and set forth below, is appropriate under Fed. R. Civ. P. 23(b)(1) and 23(b)(2), and hereby certifies the following Class for settlement purposes only and without prejudice to any other parties to the litigation:

(a)        The "Private Payor Class":  All individual persons or entities who, during the Class Period, made purchases and/or paid, whether directly, indirectly, or by reimbursement, for all or part of the purchase price of prescription pharmaceuticals, including, but not limited to, those pharmaceuticals listed on the attached Exhibit A, where any or all of the purchase price, reimbursement or payment amount was based in any part on the Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, in whole or part, was based on a FDB wholesale survey.  Excluded from the class are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments; the States of the United States and their respective officers, agents, agencies and departments; and all other local governments and their officers, agents, agencies and departments.  This is to clarify further that those entities that own or operate businesses referred to commonly as pharmacy benefit managers ("PBMs") and who as part of their business operation contract with ultimate Third Party Payors of a prescription pharmaceutical benefit to perform certain services in the administration and management of that prescription pharmaceutical benefit for those ultimate Third-Party Payors are not class members under the Private Payor Class definition of this settlement.  The class includes the ultimate Third Party Payors providing the prescription pharmaceutical benefit and not the

2

PBMs with which those Third Party Payors contract with to administer or manage that prescription benefit on behalf of the class members, unless such PBMs are the fiduciary of the Third Party Payors or by contract assumed, in whole or in part, the insurance risk of that prescription pharmaceutical benefit during the Class Period.

4.  Specifically, the Court finds that the Class described above satisfies Fed. R. Civ. P. 23(a) and Rule 23 (b)(1) and 23(b)(2) for settlement purposes:

**Rule 23(a)**

(a)  <u>Numerosity</u>:  Numerosity is established in that the size of the proposed class, , is sufficiently large to joinder in practical, given the relevant circumstances.  *In re Relafen Antitrust Litig.,* 22 F.R.D. 260, 267 (D. Mass 2004)(Young, J.) In this settlement, the proposed class encompasses thousands of third party payors (welfare funds, self insured employers, for profit and not for profit health insurers which provide prescription drug benefits) that have asserted claims or potential claims against the settling defendant. Thus, the Rule 23(a)(1) numerosity requirement has been met.

(b)  <u>Commonality</u>:  Generally, the commonality requirement is easily met, provided that at least one common question of law or fact exists.  *In re AWP*, 230 F.R.D. at 78.  Therefore, claims all hinge on common questions.  These elements would be established by common class-wide proof.  They demonstrate common questions sufficient to satisfy Rule 23(a)(2).

The numerous common factual and legal issues to be decided include, but are not limited to, the following:

a.  The publication of AWP and BBAWP data fields as a common event upon which all of plaintiffs' and proposed Class members' claims rely;

b.  Whether Defendants engaged in a course of conduct that improperly inflated the WAC-to-AWP markup and the ultimate AWPs used by plaintiffs and Class members as the basis for reimbursement;

c.  Whether Defendants artificially inflated the published AWPs for the drugs that are the subject of this complaint;

d.  Whether Defendants engaged in a pattern and practice that caused Plaintiffs and Class members to make inflated payments for the AWPs;

e.  Whether Defendants engaged in a pattern of deceptive and/or fraudulent activity intended to defraud Plaintiffs and the Class members;

      f.      Whether Defendants formed enterprises for the purpose of carrying out the 5% Scheme;

      g.      Whether Defendants used the U.S. mails and interstate wire facilities to carry out the 5% Scheme;

      h.      Whether Defendants' conduct violated RICO and various California statutes and common law; and

      i.      Whether Defendants are liable to Plaintiffs and the Class members for damages for conduct actionable under the various state consumer protection statutes.

(c)    <u>Typicality</u>:  The proposed class representatives' claims arise from the same course of conduct and share the same legal theory, as do the claims of the putative Class members.  Furthermore, the proposed class representatives will advance the interests of all class members.  The proposed class representatives' claims are typical of those of the proposed Class and satisfy Rule 23(a)(3).

(d)    <u>Adequacy</u>:  The proposed class representatives assert claims representative of the claims of the entire class with regard to pharmaceutical purchases.  As such, even though the claims may not be identical to every claim of every putative Class member, the proposed class representatives can adequately represent the putative Class.

The adequacy factor also considers Class Counsel.  In this case, Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter.  The adequacy requirement is satisfied.

**Rule 23 (b)(1)**

By this Final Order and Judgment, the Court is hereby ordering FDB to fulfill the terms of the Settlement Agreement.  Specifically, consistent with the terms of the Settlement Agreement, FDB must adjust the WAC to AWP markup to 1.20, FDB is enjoined from publishing the BBAWP data field for any pharmaceutical consistent with the terms of the Settlement Agreement (except under certain circumstances as defined in the Settlement Agreement), and FDB must establish and maintain an FDA Data Room as defined in the Settlement Agreement and provide other access to information consistent with the terms of the Settlement Agreement.  In light of this injunctive relief, inconsistent adjudications with respect to individual members of the Class would establish incompatible standards of conduct for FDB.  Thus, certification under Rule 23(b)(1) is necessary and appropriate.

**Rule 23(b)(2)**

4

Plaintiffs in this case allege that FDB's policies and practices have caused them to pay inflated prices for certain pharmaceutical products. As such, plaintiffs allege that FDB has acted on grounds generally applicable to the class. Thus, Rule 23(b)(2) is satisfied.

5.      In the interest of clarity, the Court reiterates that it makes the above findings set forth in paragraph 4 regarding certification of the Class only for the purposes of settlement.

6.      In the further interest of clarity, the Court recognizes that as part of the Settlement Agreement the Class is forever releasing and discharging any claims for monetary damages of any type, whether compensatory, restitution, punitive or otherwise, as set forth in the Settlement Agreement and that the Class will be forever bound by this Final Order and Judgment including for the Released Claims as against the Released Entities. The Court finds that this relief is enforceable and binding on the Class and satisfies the right of due process under the provisions of Rule 23(b)(1) and 23(b)(2) because this Court provided to the Class notice of the proposed settlement and the right of Class Members to exclude themselves from the Class pursuant to the Court's plenary powers under Rule 23(d)(2) and 23(d)(5).

7.      The Court reconfirms the appointment of the class representatives.

8.      The Court approves the Second Amended Proposed Settlement Agreement, as amended on file with the Court as Exhibit A to the Amended Joint Motion for Preliminary Approval of Class Settlement, Class Notice and Related Matters dated March 5, 2008, as being fair, adequate, and reasonable and in the best interests of the Class, satisfying Rule

23(e) and the fairness and adequacy factors of this Circuit.  In particular, the Court finds

that:

(a)    **<u>Fairness, Adequacy, and Reasonableness of the Proposed Settlement</u>:**

The Court finds that the Proposed Settlement is fair, adequate, and reasonable. The facts and circumstances of the negotiations set forth in counsels' affidavits and papers demonstrate that there has been considerable arms' length bargaining and discovery in this case.  A proposed class action settlement is considered presumptively fair where, as here, sufficient discovery has been provided and the parties have engaged in arms' length negotiations.  *See City P'Ship*, 100 F.3d at 1043.

Although there is no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement, *see In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003), the fairness factors concern whether there has been arms' length bargaining.  *See City P'Ship Co. v. Atlantic Acquisition Ltd. P'Ship.*, 100 F.3d 1041, 1043 (1st Cir. 1996).  Courts in this Circuit consider (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense, and duration.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003) (citations omitted).

1. <u>Comparison of Settlement With Likely Result of Litigation</u>:

Although Class Members have consistently asserted their confidence in the strength of their case, this is complex litigation for which the outcome is uncertain and unpredictable.  In order to succeed on the merits, Class Members would need to succeed on several complex and hotly disputed legal and factual issues.  The relief contemplated in the PSA is fair, adequate, and reasonable.  Indeed, injunctive relief is frequently an appropriate remedy where, as here, class action plaintiffs seek institutional reform.  The injunctive relief in this case will ensure that, in the future, the conduct of which plaintiffs have complained will cease.  This result, coupled with the uncertainty of protracted litigation and trial, weighs heavily in favor of approval of this settlement.

2. <u>Reaction of the Class to the Settlement</u>:

Class members had until _____ to opt-out of the Class and _____ to object.  As a result of the extensive Notice program ordered by the Court, there have been __ opt-outs and __ objections filed with the

Court.  The overall reaction to the settlement has been positive.  Given the size of the class, the number of objections and opt-outs from the class is small.

3.  State of the Litigation:

This litigation has been pending for about 3 years.  During that time (and indeed even well before the instant case was brought), Class Settlement Counsel engaged in extensive discovery and investigation, including the analysis of voluminous records if parties and non-parties, extensive data review with health care economists and the interviews or depositions of certified witnesses.  Class Settlement Counsel has been consistently and vigorously preparing for trial, and such work has generated significant information about the prospects for success in this litigation.  On the other hand, although extensive discovery has been conducted to ensure that the settlement is fair, adequate, and reasonable, there remains substantial litigation ahead, including extensive motion practice, trial preparation, and the trial itself.  Indeed, litigation of this complex case through trial would require to millions of dollars in expenses.  Given that the parties have undertaken sufficient discovery to ensure the fairness, reasonableness, and adequacy of the settlement, expenditure of these resources would be wasteful and unnecessary.  The state of the litigation therefore weighs in favor of approval of the settlement.  This is particularly the case here where the Court heard objections and voiced concerns at a prior fairness hearing on January 22, 2008 after extensive notice had been provided and the parties have negotiated amendments to the settlement to take into account many of the objections and concerns voiced at that time.

4.  Quality of Counsel:

Class Settlement Counsel are very well-qualified and experienced.  Class Settlement Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter.  The experience and skill of all counsel involved weighs in favor of final approval of this settlement.

5.  Conduct of Negotiations:

Class Settlement Counsel and Defense counsel have engaged in extensive, arms-length negotiations following extensive discovery.  Indeed, negotiations leading up to the Settlement spanned over one year and countless meetings, including extensive negotiations following the prior fairness hearing on January 22, 2008 to amend the agreement to address concersn addressed at that time.  The complexity and duration of these negotiations weighs in favor of final approval of this settlement.

6.  Case Prospects, Including Risk, Complexity, Expense, and Duration:

This case has the potential to impose enormous litigation costs on all of the parties.  Indeed, although the ultimate result of a trial cannot be foreseen, absent a settle-

7

ment, an expensive, complex and time-consuming process is assured.  In light of the high stakes involved, a lengthy and costly appeal is certain to follow regardless of the outcome at trial.  Thus, the complexity, expense and likely duration of the litigation weighs heavily in favor of final approval of this settlement.

9.     [DISCUSSION OF ANY OBJECTIONS]

10.    The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process.  This Court has previously held the Notice and notice plan to be the best practicable under the circumstances.  The Court ordered a re-noticing of the settlement class beyond the extensive notice program provided to the Class previously in the Fall of 2007.  [The re-noticing was by mail to identifiable Third-Party Payor Class Members and to consumer organizations, as well as the widespread publication of notice, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.]

11.    The Court holds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715 were complied with in this case.

12.    The Court reconfirms the appointment of Thomas M. Sobol and Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Jeffrey Kodroff of Spector Roseman & Kodroff, PC, Mark H. Edelson of Edelson & Associates LLC, and Kenneth Wexler of Wexler Toriseva Wallace LLP as Lead Class Settlement Counsel for the putative Class.

13.    The "Released Claims" (as defined below) of any and all Class Members are HEREBY DISMISSED WITH PREJUDICE against all "Released Entities" (as defined below):

Released Claims:  Any and all known or unknown  claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Releasor who has not timely excluded themselves from the Class, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to the collection, calculation, formulas, mark-up, determination, dissemination, publication of, and representations concerning, the AWP or BBAWP or similar data published or disseminated by First DataBank, Inc. electronically or otherwise for any prescription pharmaceuticals, including but not limited to, the allegations contained in the action entitled *New England Carpenters Health Benefits Fund et al. v. First Databank, Inc., et al.*, Civil Action No. 1:05-CV-11148 (D.Mass.).

"Released Entities" means First DataBank, Inc., its parent, subsidiaries, and affiliates and their (including First DataBank Inc.'s) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors, successors and assigns; provided, however, that Medispan, a division of Wolters Kluwer Health, Inc., its parent, subsidiaries, and affiliates and their (including Medispan's) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors and assigns (collectively referred to herein as "Medispan") are excluded from the term Releasees and Released Entities, except for (1) the period when Medispan was owned by First DataBank, and (2) the period from December 19, 2001 to and including October 2, 2004, when First DataBank was required to divest the Medispan business and provide related editorial and consulting services to Medispan, which during these periods (1) and (2) above, Medispan is included in the term Releasees and Released Entities.

14.    By entry of this Final Order and Judgment, each Class Member, and all other persons and entities claiming by, through, or on behalf of, a Class Member, are hereby forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against the Released Entities with respect to the Released Claims and forever discharge and hold harmless the Released Entities of and from any and all Released Claims which the Class Member has or may hereafter have.

15.    Pursuant to the All Writs Act, 28 U.S.C. §1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or

federal court, that threatens to undermine the settlement in this case and this Final Order and Judgment.

16. The Court also finds, following an evaluation of Class Counsels' fee petition against the factors set forth in *In re Lupron Mktg. & Sales Practices Litig*., that the Class Counsel fees are reasonable and employ a reasonable percentage of the actual benefit of the class settlement to the Class and that Class Counsel's Motion for Approval of an Award of Attorneys' Fees is hereby approved.  2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug. 17, 2005) (citing *Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-56 (1985).  With respect to the *Lupron* factors most relevant here, the Court finds that Class Counsel have expended considerable time and labor in the negotiation and implementation of the Proposed Settlement, and that this work will be on-going; that the efforts of Class Counsel have resulted in a resolution that confers substantial benefits on members of the Class, and that those benefits are comparable to other similar settlements and were achieved sooner than most, if not all, similar settlements; that Class Counsel undertook this matter with no guarantee of payment and thus shouldered considerable risk; and that the attorneys' fees award in this case is not inconsistent with awards in similar cases.

17. FINAL JUDGMENT is hereby ENTERED directing First DataBank, Inc. to comply with the terms of the Settlement Agreement as herein described.

18. FINAL JUDGMENT is hereby ENTERED dismissing with prejudice all Released Claims of the Class against all Released Entities as herein described.

10

19.     Pursuant to FRCP 54(b), the Court determines that there is no just cause for delay and

expressly DIRECTS the ENTRY OF JUDGMENT on all issues contained in this Order.


DATED: Boston,  Massachusetts
This _____, day of _____, 2008




_____
Honorable Patti B. Saris, Judge
United States District Court

**<u>Exhibits</u>**

Exhibit A                                        Settlement Agreement and Amendments