UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 1:05-CV-11148-PBS |
| Plaintiffs, | ) ) |  |
| v. | ) ) ) |  |
| FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, | ) ) ) ) ) |  |
| Defendants. | ) |  |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED AMENDED SETTLEMENT AGREEMENT, APPROVING JOINT NOTICE PROGRAM, AND SCHEDULING A FINAL FAIRNESS HEARING**

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION .......................................................................................................1

II.     DESCRIPTION OF THE LITIGATION.................................................................4

III.    description of the Amended Settlement .................................................................4

        A.      The Amended Settlement.................................................................................4

        B.      The Release ......................................................................................................6

        C.      Termination ......................................................................................................6

IV.     ARGUMENT .............................................................................................................7

        A.      The Court Should Grant Preliminary Approval of the Amended Settlement ..........7

V.      CONCLUSION...........................................................................................................9

## I.    INTRODUCTION

Plaintiffs respectfully submit this memorandum of law in support of the joint motion for an Order preliminarily approving their proposed amended settlement agreement.[1]  By this motion, and pursuant to the terms of the Amended Settlement, Plaintiffs and defendant First DataBank, Inc. ("FDB") seek an Order preliminarily approving the Amended Settlement; (ii) approving a joint notice program as described herein; and (iii) scheduling a final fairness hearing.

On January 22, 2008, the Court held a final fairness hearing in connection with the settlement agreement as previously proposed by Plaintiffs and FDB.  During that hearing, the Court raised certain concerns about, and ultimately entered an Order declining final approval of, that agreement, without prejudice to amendment thereof.  In response to the concerns raised by the Court, Plaintiffs and FDB have conducted further arms-length negotiations and have agreed to amend the previously submitted settlement agreement in the following material respects:

    (i)    FDB will pay $1 million into the Settlement Fund for the benefit of the settlement class (Am. Settlement § 9(C)) (this will provide a source for recovery for those injured who won't benefit from the rollback) (On the related settlement with MediSpan, MediSpan will contribute $500,000);

    (ii)    FDB will adjust to 1.20 the wholesale average cost ("WAC") to average wholesale price ("AWP") markup for any of the 1356 pharmaceutical National Drug Codes ("NDCs") listed in Exhibit A to Plaintiffs' Third Amended Complaint (Docket No. 360) with a present markup factor higher than 1.20 (*id.* § 9(A)(1)) (this reduces the rollback to the drugs at issue); and

---

[1] Unless otherwise indicated, capitalized terms herein have the same meaning as defined in the Settlement Agreement And Release dated August 7, 2006, and initially filed with the Court on October 4, 2006 (Docket No. 120).  The Settlement Agreement and Release, as amended on May 22, 2007 (Docket No. 265) and on March 5, 2008, is hereinafter referred to as the "Amended Settlement," and is cited as "Am. Settlement § __."

> (iii)   FDB will pay certain third-party expenses, including
> $160,000 in expert fees and other costs incurred by Class
> Settlement Counsel in connection with negotiating the
> Amended Settlement, as well future third-party expenses
> related to implementation thereof, subject to the Court's
> approval (*id*. § 10).

In exchange, FDB will be released of all liability with the Released Claims as defined in the

Amended Settlement.  (*Id*. § 13.)

Notice of the settlement agreement has already been provided to putative class members

by direct mail and print and digital publication pursuant to the Court's preliminary approval of

the prior settlement terms.  Plaintiffs and FDB are in the process of developing a notice program

to apprise putative class members of the amended settlement terms, and will submit to the Court

a proposed plan and form of notice when they are completed.

In the interests of economy, Plaintiffs suggest, subject to the Court's approval, that such

notice should issue jointly in connection with a proposed settlement with MediSpan, and that

such joint notice should be sent with the notice of pendency with respect to the claims against

McKesson.

Plaintiffs and Class Settlement Counsel believe that the Amended Settlement is fair,

reasonable, and adequate.  The Amended Settlement was reached after re-negotiation of key

aspects of the previous agreement, which, as the Court is aware, was itself the product of

extensive arms-length, intensely fought bargaining sessions spanning nearly one year.  In

addition, the proposed amendments are the direct result of the issues raised by the Court in

connection with its review of the prior settlement terms.  The amendments are designed and

intended to address certain of the Court's previous concerns.

Because FDB has comparatively little assets, any possible eventual litigation judgment against it – which is vigorously disputed by FDB – would net less than the relief provided by the Amended Settlement.

Plaintiffs rely on the following documents in connection with these proceedings:

(i)     Plaintiffs' And First DataBank, Inc.'s Joint Motion For An Order Granting Preliminary Approval Of Proposed Amended Settlement Agreement, Approving A Joint Notice Program, And Scheduling A Final Fairness Hearing;

(ii)    Plaintiffs' Memorandum Of Law In Support Of Joint Motion For An Order Granting Preliminary Approval Of Proposed Amended Settlement Agreement, Approving A Joint Notice Program, And Scheduling A Final Fairness Hearing;

(iii)   The Second Amended Settlement;

(iv)    Exhibit [A] to the Amended Settlement (listing the NDCs for pharmaceuticals subject to adjustment provisions);

(v)     Exhibit [B] to the Amended Settlement ("[Preliminary Approval and Settlement Class Order]");

(vi)    Exhibit [C] to the Amended Settlement ("[Final Order And Judgment Certifying The Class For Purpose Of Settlement, Approving Of Class Action Settlement, And Dismissing The Action With Prejudice]").

## II.    DESCRIPTION OF THE LITIGATION[2]

On June 2, 2005, Class Plaintiffs filed the Class Action Complaint (Docket No. 1),

alleging that defendants FDB and McKesson Corporation ("McKesson") wrongfully increased

the WAC to AWP markup factor of certain prescription pharmaceuticals in late 2001 and early

2002, thereby causing Class Plaintiffs to make excess payments for those drugs.[3]

FDB (and MediSpan in its actions) denies that it committed any violation of law or other

wrongdoing or faces any liability whatsoever in connection with the Class Action.

Plaintiffs continue to prosecute this action against McKesson, which was certified as a

class action pursuant to the Court's August 27, 2007 Order and are awaiting the Court's ruling as

to certification of aggregate damages.

## III.    DESCRIPTION OF THE AMENDED SETTLEMENT

### A.    The Amended Settlement

There are procedural and substantive aspects to the proposed settlement, which enhance

the benefits to be received by the class if approved.

The first procedural step is for the Court to conduct a preliminary approval hearing for

the purpose of determining whether to preliminarily approve the Amended Settlement, and

---

[2] The Court is aware of the extensive facts and claims alleged in this action, as well as Class Settlement Counsel's active prosecution of this case. Indeed, the Court has previously received papers filed in this case and is familiar with the issues raised therein. (*See, e.g.*, Docket Nos. 8, 390, 391.) The Court is also familiar with the history of the settlement negotiations between Plaintiffs and FDB and the benefits of the proposed resolution of this litigation as to FDB. To avoid further repetition, Plaintiffs incorporate by reference herein the history of the proposed settlement and analysis of the risks of litigation and benefits of settlement to the class as set forth in their Amended Memorandum Of Law In Support Of Joint Motion For Preliminary Approval Of Proposed First DataBank Class Settlement, Certification Of Settlement Class And Approval Of Notice Plan, filed November 1, 2006 (Docket No. 151).

[3] Plaintiffs filed amended complaints on three occasions, submitting a First Amended Class Action Complaint on July 21, 2006 (Docket No. 93), a Second Amended Class Action Complaint on November 30, 2006 (Docket No. 174), and a Third Amended Class Action Complaint on November 6, 2007 (Docket No. 359).

approve notice to the class of the amended settlement terms. Second, notice will issue as approved by the Court. Third, prior to the final fairness hearing date, FDB will make an election as set forth in the Amended Settlement and described *infra*, whether to proceed with the settlement or exercise its termination rights. Fourth, the Court would conduct a final fairness hearing to determine whether to enter an order and judgment approving the Amended Settlement and dismissing this action. Certain of FDB's settlement obligations would be triggered upon the Court's entry of such an order and judgment, with others prompted upon the effective date of the Amended Settlement, as defined therein.

The key provisions of the Amended Settlement are as follows. FDB will pay $1 million into the Settlement Fund for the benefit of the settlement class, and, subject to the Court's approval, will pay $160,000 in third-party fees and costs already incurred by Class Settlement Counsel as well as future third-party expenses in connection with implementing the Amended Settlement. (Am. Settlement §§ 9(C), 10.) The provisions in the earlier settlement agreement requiring FDB, subject to the Court's approval, to pay up to $950,000 in Class Settlement Counsel fees remain intact in the Amended Settlement, notwithstanding FDB's commitment to pay $1 million into the Settlement Fund. (*Id.* § 10.)

In addition to these financial obligations, FDB will adjust the markup factor in its database for the 1356 NDCs listed in Appendix A to the Third Amended Class Action Complaint (Docket No. 360). (*Id.* § 9(A)(1).) This will reduce the rollback from 8400 to 1400 NDCs. The obligation to effectuate the rollback would be triggered ninety days after the Court enters the Final Order and Judgment substantially in the form attached as Exhibit [C] to the Amended Settlement. (*Id.*) FDB's obligation to provide information through the maintenance of a data room remains intact, as set forth in the earlier settlement agreement. (*Id.* § 9(B).)

The Amended Settlement provides that FDB will pay all costs associated with Court-approved notice to the class, unless the Court approves of the joint notice program described herein, in which case FDB shall be responsible for up to 50% of the total expenses thereof. (*Id.* § 12.)

MediSpan has agreed to similar non-monetary provisions, and to contribute $500,000 into the Settlement Fund.

**B.    The Release**

As described fully in the Amended Settlement, all Class Members (consumers and TPPs that have paid based on FDD's published WAC, AWP, or BBAWP) have agreed to release FDB and its various subsidiaries, related entities, and personnel from all claims as set forth in the Amended Settlement. (Am. Settlement § 13.)

**C.    Termination**

FDB and Class Settlement Counsel each have the right to terminate the Amended Settlement if any of the following events occurs: (i) the Court declines to enter the Preliminary Approval Order substantially in the form attached as Exhibit [B] to the Amended Settlement within five days of the preliminary approval hearing held in connection with the Amended Settlement, or at that hearing places additional conditions on obtaining preliminary approval of the Amended Settlement; (ii) the Court declines to enter the Final Order and Judgment substantially in the form attached as Exhibit [C] to the Amended Settlement; (iii) the Final Order and Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (iv) an alternative judgment, agreed to by the parties, is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court. (Am. Settlement § 8(A).) The Amended Settlement also provides termination rights to FDB (i) in the event that the number or identity of the TPPs seeking to exclude themselves from the class is

- 6 -

unsatisfactory to FDB in its sole discretion, or (ii) in the event that FDB learns of a current

interest in the prosecution or filing of claims by the U.S. Department of Justice or a State

Attorney General based on the allegations or claims in the Class Action. (*Id.* §§ 8(B), (C).)

## IV.    ARGUMENT

### A.    The Court Should Grant Preliminary Approval of the Amended Settlement[4]

A class action cannot be compromised or settled without the approval of the Court. Fed.

R. Civ. P. 23(e). Plaintiffs respectfully submit, as they will demonstrate at the fairness hearing,

that: (i) the Amended Settlement is in all respects fair, reasonable, and adequate to the class;

(ii) Class Settlement Counsel have investigated the pertinent legal and factual issues;

(iii) continued litigation against FDB will consume additional resources of the parties without

offering a better resolution for the class; and (iv) there is no hint of collusion between or among

the parties in the settlement negotiations.

At the fairness hearing, the Court must undertake a detailed assessment of the terms of

the Amended Settlement, the interests of the Class Members as well as any third parties that

might be affected by the settlement, and the circumstances of the litigation and the Amended

Settlement. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 2, 7 (1st Cir. 1999);

*Durett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *Hawkins*, 2004

WL 166722, at *3. At this stage of the settlement process, the Court conducts only a preliminary

evaluation to determine whether the Amended Settlement is within the range of possible final

---

[4] The Court previously certified a settlement class in connection with its preliminary
approval of the prior settlement terms. (*See* Electronic Order entered November 22, 2006 ("I
allow the joint motion for preliminary approval of the proposed class, certify a settlement class
pursuant to Fed. R. Civ. P. 23(b)(2); order notice pursuant to Fed. R. Civ. P. 23(d)(2) which
gives an opportunity for an opt-out; and order the parties submit a revised final order with
appropriate dates.".) Accordingly, no further certification is required in connection with
addressing the Amended Settlement.

approval, and thus whether notice to the class of the terms and conditions of the proposed

settlement, and the scheduling of a formal fairness hearing, are appropriate. *White v. National*

*Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); *In re NASDAQ Market-Makers*

*Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Thus, the MANUAL FOR COMPLEX

LITIGATION, THIRD (cited as "MANUAL § ___") characterizes the preliminary approval inquiry as a

court's "initial assessment" of the fairness of the proposed settlement, made on the basis of

written submissions and informal presentation from the settling parties, and summarizes the

preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not
> disclose grounds to doubt its fairness or other obvious deficiencies,
> such as unduly preferential treatment of class representatives or of
> segments of the class, or excessive compensation for attorneys, and
> appears to fall within the range of possible approval, the court
> should direct that notice ... be given to the Class Members of a
> formal Fairness Hearing, at which arguments and evidence may be
> presented in support of and in opposition to the settlement.

MANUAL § 30.41; *see also* 2 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS

(cited as "NEWBERG § ___") § 1.25 (4th ed. 2002).

As detailed below, the Amended Settlement falls well within the range of reasonableness,

and thus merits preliminary approval.

Initially, Plaintiffs note that the law has long favored settlement of litigation. This is

particularly true in class actions and other complex cases where substantial resources can be

conserved by avoiding the time, cost, and rigors of prolonged litigation. In addition, there is an

overriding public interest in favor of settlement of complex class action suits, especially where

the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or

the social or economic policies to be established." *See, e.g., Donovan v. Estate of Fitzsimmons*,

778 F.2d 298, 307 (7th Cir. 1985). By supporting the settlement of complex, class action

disputes, the judicial system can help minimize litigation expenses on both sides, reduce the strain on scarce judicial resources, and avoid the risk of trial to both parties. MANUAL, §§ 23, 30.4.

These concerns apply with particular force in a case such as this, where thousands of consumers and TPPs throughout the country were allegedly subject to paying increased costs for prescription drugs as a result of the Defendants' purported unlawful increase of the spread between the WAC and AWP. The Amended Settlement provides very substantial price reductions to the entire class. Individual litigation would clog the courts of this and many other states and would take years to resolve. Furthermore, given the relatively modest amount of damages suffered by each individual consumer, individual litigation would likely be available only to consumers with sufficient wealth to retain their own attorneys. Accordingly, the Amended Settlement is the best and only vehicle to assure that all Class Members, regardless of their means, and whether they are consumers or TPPs, receive prompt and efficient relief.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Joint Motion be granted and the Court enter an Order: (i) preliminarily approving the Amended Settlement; (ii) approving a joint notice program; and (iii) scheduling a final fairness hearing.

Dated: March 19, 2008             By_____
                                      Thomas M. Sobol (BBO #471770)
                                      Edward Notargiacomo (BBO #567636)
                                      Hagens Berman Sobol Shapiro LLP
                                      One Main Street, 4th Floor
                                      Cambridge, MA 02142
                                      Telephone: (617) 482-3700
                                      Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL 60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each other party through the Court's electronic filing service on March 19, 2008.

_____
Thomas M. Sobol