UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

## [REDACTED] PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF MCKESSON'S RELAYHEALTH DATA

### I.     INTRODUCTION

In November 2007 Plaintiffs amended their complaint to add claims on behalf of a class of uninsured consumers. To prevail on these claims, Plaintiffs need to establish a correlation between the price uninsured consumers pay (the usual and customary or "U&C" price) and AWP, so that they can show that when AWPs were increased, the prices for uninsured consumers also increased. Plaintiffs can establish this either by showing that pharmacies set U&C prices using an AWP formula or by showing that U&C prices are set relative to third-parties' AWP-based reimbursement formula.

Pharmacy transactional data are key to demonstrating the correlation between U&C prices and AWP-based third-party reimbursement rates because they provide both price components. Third-party contracts generally include a clause providing that the pharmacy accept reimbursement at the lesser of the negotiated third-party reimbursement amount or the pharmacy's U&C price. To ensure that they get the benefit of this clause, payors require pharmacies to submit both their negotiated rate and their U&C price when they submit claims for payments. Claims data provide critical information to support Plaintiffs' claims because third-party reimbursement amounts are not publicly disclosed. They are a product of negotiation and may differ for the pharmacy, depending on the identity (*i.e* size) of the third-party payor, and for the third-party payor, depending on the type of pharmacy or the pharmacy's location. Actual claims data are therefore the best source of information about the correlation between third-party reimbursement rates and U&C prices because they provide very specific price information, not otherwise obtainable.

Even long before Plaintiffs amended their complaint to add claims on behalf of uninsured consumers, McKesson was sitting on a veritable mountain of pharmacy claims data that includes both the pharmacies' U&C prices and the third-party reimbursement amounts they charged. Specifically, McKesson's RelayHealth database includes transactions from as much as 90% or more of the pharmacies in the United States, including data from the start of the class period in August 2001.[1]

Not only did McKesson fail to disclose the existence of this database to Plaintiffs in the first instance, it now refuses to provide anything other than the U&C data contained within it – outright refusing to produce any data that would show AWPs or third-party reimbursement

---

[1] *See* Declaration of Barbara Mahoney in Support of Plaintiffs' Motion to Compel McKesson's Production of RelayHealth Data ("Mahoney Decl."), ¶ 6.

amounts. As this Court has already recognized in two separate rulings, this data is clearly

relevant to the case and should be provided to Plaintiffs immediately.

Additionally, McKesson's counsel falsely represented that McKesson is not in the

business of U&C pricing and that other than the RelayHealth database, counsel would not know

where to look for documents responsive to Plaintiffs' request for documents concerning U&C

prices. At a deposition McKesson noted for the retail pharmacy chain, ShopKo, the witness

testified ███████████████████████████████████████████████████████

███████████████████████████████████.[2]  Plaintiffs therefore also seek production

of all reports or services that RelayHealth provides concerning U&C prices.

Plaintiffs seek several forms of relief through this Motion. First, because McKesson does

not have a good faith basis for refusing to provide third-party reimbursement amounts in its

RelayHealth data and did not use due diligence to conduct a search for documents responsive to

Plaintiffs' request for documents concerning U&C prices, Plaintiffs ask that the Court enter an

order requiring McKesson to pay Plaintiffs' reasonable expenses in bringing this motion.

Second, in light of the considerable amount of time and money Plaintiffs have already wasted

searching for this data from third-parties, when McKesson had it all along, Plaintiffs also request

that McKesson bear the full cost of producing its data.

In order to facilitate their understanding of the fields within McKesson's RelayHealth

database, Plaintiffs therefore request that the Court enter an order compelling McKesson to

provide Plaintiffs a sample of all of the RelayHealth data fields for a single NDC (Lipitor 10

mg), subject to elimination of patients' individually identifiable medical information, so that

Plaintiffs' expert, Dr. Hartman, can review and determine which fields would be appropriate for

---

[2] Mahoney Decl., ¶ 4 and Ex. 3.

his analysis. Once Plaintiffs have made their selections, McKesson should then be required to provide its data, at McKesson's own cost, from each selected fields for all of the NDCs listed in the Third Amended Complaint, Appendix A.

## II.   FACTUAL BACKGROUND

### A.   RelayHealth Operates as a Switch

Pharmacy claims are handled electronically through a third-party "switch" that connects pharmacies and third-party payors ("TPPs") or their pharmacy benefits managers ("PBMs"). Because third-party contracts generally require pharmacies to provide drugs at the lesser of the negotiated AWP-based third-party reimbursement amount or the usual and customary ("U&C") amount, pharmacies are required to submit both amounts. Electronic transactions of claims handled by switches typically involve both price terms. Switches are therefore an invaluable repository of data relating to Plaintiffs' U&C claims.

RelayHealth (formerly Per Se/NDCHealth) is a switch that McKesson acquired in November 2006.[3] RelayHealth "operates the nation's largest electronic pharmacy network,"[4] connecting 90% of the country's pharmacies and processing over a billion financial transactions a year.[5] Its database includes claims data, *i.e.*, third-party reimbursement amounts and U&C prices that span the Class Period, including data from the largest chain pharmacies.

---

[3]

http://www.mckesson.com/en_us/McKesson.com/About%2BUs/Newsroom/Press%2BReleases/ 2006/McKesson%2Bto%2BAcquire%2BPer-Se%2BTechnologies%2Bfor%2B%25241.8%2BBillion.html.

[4] *Id.*

[5] https://www.relayhealth.com/rh/general/news/newsRecent/news105.aspx.

**B.    McKesson did not Disclose the Existence of Its RelayHealth Data at the Hearing on Class Certification of the TPP and Consumer Co-pay Classes**

At the time McKesson acquired RelayHealth, discovery was ongoing on behalf of the

TPP and Consumer Co-pay Classes. Plaintiffs were unaware that McKesson possessed claims

data that would have supported proof of class-wide impact and injury. In fact, when McKesson

challenged the accuracy of Plaintiffs' IMS data for the purposes of calculating aggregate impact

and damages for the TPP and Consumer Co-pay Classes, it claimed that the IMS data was not an

accurate measure of third-party reimbursement amounts because the IMS data contains

aggregates of reported transactions as opposed to actual claims data and includes some irrelevant

data.[6] In fact, based on these purported deficiencies with IMS data, McKesson insisted that the

Court hire an outside expert to assess the accuracy of the IMS data.[7] In making these arguments,

McKesson *did not tell the Court* or Plaintiffs that it possesses a vast quantity of actual claims

data that either would have proved the general accuracy of the IMS data or provided the

statistical adjustment necessary to render it more accurate.[8]

### III.    FACTS PERTAINING TO DISCOVERY

Earlier this year the Court authorized discovery of issues relating to the U&C claims. In

order to pursue this discovery, in January and February of this year both Plaintiffs and McKesson

subpoenaed over two dozen large pharmacy chains to obtain, among other things, their

---

[6] McKesson Corporation's Response to Dr. Hartman's September 14, 2007 Submission Regarding the Court's Class Certification Order [Dkt. No. 327] at 5; McKesson Corporation's Surreply in Response to Dr. Hartman's September 14, 2007 Submission Regarding the Court's Class Certification Order [Dkt. No. 363] at 3-8.

[7] McKesson Corporation's Response to the Court's Inquiries at the November 13, 2007 Hearing on Class Certification Issues [Dkt. No. 371] at 12-14.

[8] Relying on the GE Group Life Insurance and CIGNA claims data produced in the AWP-MDL litigation, which closely correlated with the IMS data, the Court concluded that the IMS data provide a reasonable proxy of TPP reimbursement for drugs. Memorandum and Order (dated March 19, 2008) at 16.

transactional data. Had McKesson disclosed the existence of the RelayHealth data in the first instance, Plaintiffs would not have spent – unnecessarily – significant time and money seeking from third-parties what should have been immediately available from McKesson.

### A.    McKesson Moved for a Protective Order to Bar Plaintiffs from Obtaining Claims Data from Pharmacies

McKesson not only failed to disclose its possession of highly relevant data, it actively sought to bar Plaintiffs' discovery of such data from third-parties. And, when McKesson sought to preclude Plaintiffs from obtaining this data from third-parties, it again never told this Court about the existence of its RelayHealth data. Rather, Plaintiffs brought RelayHealth to the Court's attention. Plaintiffs served subpoenas on ten of the largest pharmacies, requesting their pricing policies and claims data sufficient to show the correlation between U&C prices and AWP or AWP-based third-party reimbursements. McKesson immediately moved for a protective order, claiming that Plaintiffs' subpoenas exceeded the scope of allowable discovery. This Court recently denied McKesson's motion, ruling that Plaintiffs' requests for data involving both U&C prices and AWP-based reimbursement amounts are relevant to Plaintiffs' allegation "that the usual and customary prices are set by relation to the average wholesale price (AWP), and any artificial increase in the AWP results in an increase in the usual and customary charge."[9]

### B.    McKesson Burdened Third-Parties Unnecessarily with Demands for Data that it Already Possesses

McKesson also served its own subpoenas on 27 pharmacies (including the ten Plaintiffs subpoenaed), demanding claims data that McKesson *already possesses*. Plaintiffs served duplicate subpoenas on each of the pharmacies McKesson served to ensure that they would be part of the discussion of what would actually be produced. As might reasonably be expected, the

---

[9] Court's Order, dated April 18, 2008 (Magistrate Judge Robert B. Collings).

pharmacies have declined to produce their transactional data and have instead referred Plaintiffs

to McKesson's RelayHealth for that data.[10]  Plaintiffs (as well as dozens of third-parties) could

have avoided considerable expense and time, had McKesson been more forthcoming about the

existence of its considerable database of claims data.

**C.     McKesson Refuses to Provide Data that this Court has Twice Ruled to be Relevant
        to the U&C Claims**

Nor will McKesson produce the requested data.   First, it refused outright to provide

Plaintiffs its RelayHealth database.[11]  After Plaintiffs' counsel met and conferred with

McKesson's counsel, McKesson agreed to extract data from fields, which Plaintiffs' experts

would select based on a set of field definitions that McKesson would provide.[12]  McKesson also

explained that roughly 90% of its claims data comes from the largest pharmacies chains, *i.e.* the

same chains on whom McKesson had served its subpoenas, and the remainder consisted of

"thousands" of independent pharmacies.  McKesson's counsel represented that it was required in

most cases to provide the pharmacies notice (but not prior consent[13]) before it would produce the

data, and that it was willing to notify the largest chain pharmacies, but not the thousands of

independents.  It would then provide Plaintiffs data from the major chains and any independents

for whom notice was not contractually required.  McKesson further represented that it expected

Plaintiffs to pay for the production and advised that the smaller the selection of fields, the less

expensive and time consuming the production would be.[14]

---

[10] Mahoney Decl., ¶ 8.

[11] *Id.*, Ex. 1.

[12] *Id.*, ¶ 2, Ex. 2.

[13] Counsel for McKesson emphasized that it was only required to provide notice, not
"negotiate" with the pharmacies to allow production of their data. *Id.*

[14] *Id.*, ¶¶ 2-3, Ex. 2.

McKesson provided Plaintiffs the DATA DICTIONARY from the NATIONAL COUNCIL FOR PRESCRIPTION DRUG PROGRAMS (dated September 1999) and represented that the fields closely correlated with the fields of the RelayHealth database.[15] After careful examination with their expert, Plaintiffs concluded that the field definitions were insufficiently defined and there were too many uncertainties involved to be able to select the fields without a better understanding of the database.[16] Plaintiffs therefore requested that McKesson provide a test sample of all the available fields (excluding any personal identifying medical information) for a single NDC (*i.e.* Lipitor 10 mg) for a period of 2001-2006. Plaintiffs explained that once their expert had the opportunity to examine the fields in context, he would be able to make an informed decision about the fields that would be necessary to conduct his analysis.[17]

McKesson refused but did not move for a protective order. Instead McKesson's counsel provided a sample with an extremely limited set of fields that carefully eliminated any third-party AWP-based reimbursement amounts or other AWP information.[18] Plaintiffs asked McKesson to reconsider, noting that the Court's order authorized discovery of issues related to the U&C claims and that the Court had already ruled on the relevance of AWP-based reimbursement amounts when it denied McKesson's motion to dismiss.[19] McKesson declined.[20]

---

[15] *Id.*, ¶ 5 and Ex. 4.

[16] *Id.*, Ex. 5.

[17] *Id.* Such a "sampling" technique is common when parties are negotiating the production of electronic data. *See, e.g., Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309 (S.D.N.Y. 2003) (describing "test run" permitted on plaintiff's search terms).

[18] *Id.*, Ex. 6.

[19] *Id.*, Ex. 7. In their opposition to McKesson's motion to dismiss, Plaintiffs drew the Court's attention to the evidence that pharmacies (to ensure maximum rates under their third-party contracts that typically require pharmacies to sell at the negotiated rate or if less, the U&C price) set U&C prices above third-party reimbursement AWP-based rates and that increases in the AWP led to both increased third-party reimbursement rates and U&C prices. In an order, entered March 19, 2008, the Court denied McKesson's motion, ruling in relevant part:

Subsequently, the Court entered its order denying McKesson's motion for a protective order,

essentially reiterating the Court's earlier ruling that AWP-reimbursement amounts are relevant to

Plaintiffs' U&C claims.

Plaintiffs additionally advised McKesson that the fields were insufficient even for

determining U&C prices, *e.g.*, the absence of any fields stating whether the U&C prices include

any discounts.[21] McKesson sent a response, expressing its disagreement.[22] However, unless

Plaintiffs are able to examine the data fields for themselves they will not be able see for

themselves whether additional fields would resolve concerns about the accuracy of the U&C

prices.

**D.    McKesson has not Engaged in Good Faith Notification of Pharmacies whose Data
       are Included in the RelayHealth Database**

Recently, it has come to Plaintiffs' attention that McKesson has not engaged in good faith

when notifying the pharmacies whose claims data are available through its database of its intent

to produce the data. Rather than simply notifying the pharmacies of its intent to produce its

RelayHealth data, as McKesson represented to Plaintiffs that it would do, McKesson has instead

sought "consent" of the pharmacies (which it previously represented was unnecessary). And

McKesson has specifically asked third parties to limit their "consent" solely to U&C prices and

---

"Plaintiffs allege that retail pharmacies use AWP as a basis for pricing cash prescriptions and
that cash payers for drugs were directly and foreseeably injured by the RICO scheme. Pursuant
to Fed. R. Civ. P. 8, the complaint sufficiently alleges 'but for' and 'proximate causation.' *See
Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1998 (2006) (citing *Leatherman v. Tarrant
County Narc. Intell.*, 507 U.S. 163, 164 (1994))." In order words, the Court held that causation
could be established if a correlation between U&C prices and AWP-based reimbursement rates
could be shown, such that when AWPs increased, they caused U&C prices to increase as well.

[20] Mahoney Decl., Ex. 8.

[21] *Id.*, ¶ 7 and Ex 7.

[22] *Id.*, Ex 8.

not to include third-party reimbursement rates and AWP-related fields.[23]  This conduct is
inconsistent with McKesson's representations to Plaintiffs and with its discovery obligations.
McKesson is clearly seeking to create a false and unnecessary burden of having to seek
"consent" from these third-parties twice.  Notably, McKesson has not told any of these third-
parties that there are two court orders in this case holding that third-party reimbursement data is
relevant to Plaintiffs' U&C claims.

**E.    McKesson Denied the Existence of RelayHealth Documents Concerning U&C prices**

At the discovery conference to resolve disputes about McKesson's objections to
Plaintiffs' Requests for Documents, counsel for McKesson, Paul Flum, represented that "U&C
pricing is not McKesson's business."[24]  Mr. Flum stated that other than the RelayHealth database
and communications with Rx-Net,[25] he did not know where to look to find documents responsive
to Plaintiffs' requests for documents concerning U&C prices.  When pressed by Plaintiffs, he
agreed to produce documents sufficient to describe RelayHealth's function as a switch, if such
documents exist.[26]

Plaintiffs relied on McKesson's counsel representation that McKesson did not have any
other documents responsive to their requests for documents concerning U&C prices.  However,
at a deposition noted by McKesson, the witness for ShopKo testified ███████████████████

████████████████████████████████████████████████████████████████

---

[23] Declaration of Steve Meyer, General Counsel for Hy Vee, Inc., ¶ 3 (testifying that
McKesson specified fields that it was going to produce. These fields only include U&C price
information, not its relation to AWP or AWP-based third-party reimbursement amounts).

[24] Mahoney Decl., Ex. 2

[25] McKesson agreed to produce documents concerning communications between McKesson
and Rx-Net, Inc., a company through which McKesson provides its customers with an automated
pricing service.  *Id.*  McKesson's production of these documents is not at issue.

[26] *Id.*

███████████████████████.[27] ShopKo also testified ████████████

████████████████████████████████████.[28] Had

McKesson conducted its search for responsive documents with due diligence, it would have

produced these reports and any other documents concerning services McKesson provides related

to U&C prices. Plaintiffs are entitled to these documents, and any other documents from

RelayHealth that involve U&C pricing.

## IV.     ARGUMENT

### A.     Plaintiffs are Entitled to the RelayHealth Data, Reports or Documents Concerning any other Services it Provides Concerning U&C Prices

Federal Civil Procedure Rule 26(b) permits discovery of "any matter, not privileged, that

is relevant to the claim or defense of any party" subject to the limitation that otherwise

permissible discovery may nonetheless be limited where 1) it is "unreasonably cumulative or

duplicative" or can be obtained from a less burdensome source, 2) "the party seeking discovery

has had ample opportunity by discovery in the action to obtain the information sought" or 3) the

"burden or expense of proposed discovery outweighs its likely benefit." *Dusa Pharms., Inc. v.*

*New Eng. Compounding Pharm., Inc.*, 232 F.R.D. 153, 154 (D. Mass. 2005).

> [T]he word "relevant" encompasses "any matter that bears on, or
> that reasonably could lead to other matter that could bear on, any
> issue that is or may be in the case. . . . Discovery is not limited to
> issues raised by the pleadings, for discovery itself is designed to
> help define and clarify the issues. Nor is discovery limited to the
> merits of a case, for a variety of fact-oriented issues may arise
> during litigation that are not related to the merits."

*Klonoski v. Mahlab*, 156 F.3d 255, 267 (1st Cir. 1998) (quoting *Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 351 (1978)). This Court has twice held that AWP-based reimbursement

---

[27] Mahoney Decl., Ex. 3 (Deposition of Michael Bettiga (April 29, 2008) at 65:6-66:25; 86:18-25).

[28] *Id.* at 88:17-87:2.

amounts are relevant to Plaintiffs' U&C claims, most recently explicitly holding that pharmacies' claims data that include such amounts are discoverable. RelayHealth reports and services concerning U&C prices are also clearly relevant to show how U&C prices are set.

Further, none of the limitations to discovery apply:

### 1.    The data are not privileged

McKesson does not claim that the data are privileged, nor is there any reason to believe the reports or documents relating to RelayHealth's other U&C services are privileged. The parties have agreed to exclude any individual medical information.

### 2.    They are not cumulative or duplicative of other discovery

Nor are the data cumulative or duplicative of other discovery. Pharmacies have refused to provide the data, deferring to McKesson to provide it directly to Plaintiffs. Nor should Plaintiffs be forced to move to compel third-party production when it is clearly less burdensome for McKesson, a party to the litigation, to provide the data. Similarly, the reports and services McKesson provides to set U&C prices are unique to McKesson and are thus not duplicative of other discovery.

### 3.    Plaintiffs have had no prior opportunities to obtain this information

Plaintiffs have not had any prior opportunities to obtain this information. This is evident in that both McKesson and Plaintiffs have sought this data from pharmacies. Pharmacy data provide specific information that make them an incomparable source of pricing information. The sheer volume of data and the range of pharmacies who use RelayHealth to submit their claims, make RelayHealth's data a particularly rich source of evidence with clear relevance to Plaintiffs' contention that they can prove on a class-wide basis that U&C prices are tied to and thus affected by AWP increases. Similarly, Plaintiffs have had no prior opportunities to obtain RelayHealth reports because they relied on McKesson's counsel representation that they did not exist.

- 12 -

### 4. The benefit outweighs the burden

Finally, McKesson cannot claim in good faith that the burden of producing its claims data outweighs the benefit. The parties agreed in advance that McKesson would only be required to make available the claims data from chain pharmacies and any independent pharmacies for whom prior notice was not contractually required. McKesson also agreed initially that Plaintiffs would be allowed to select the fields necessary for their review, and now refuses. Similarly, McKesson may not in good faith complain about the burden of producing the RelayHealth reports or document concerning other U&C pricing services, if any, when it initially denied their very existence.

### B. Plaintiffs are Entitled to Expenses

Plaintiffs also request that the Court order McKesson to pay Plaintiffs' expenses incurred in making this motion, including attorney's fees. Fed. Civ. Proc. Rule 37(a)(5). Plaintiffs requested discoverable non-privileged data from McKesson and negotiated in good faith to resolve any reasonable concerns. McKesson's refusal to allow Plaintiffs to review its data fields is not reasonable. If McKesson is not willing to provide Plaintiffs access to its database, it ought to provide them a sample of data with all its fields to let Plaintiffs select the fields they need to conduct their review. Nor is it reasonable for McKesson to exclude data identifying third-party reimbursement amounts, which the Court has already deemed to be discoverable. Finally, Plaintiffs reasonably relied on McKesson's false representation that it had no other documents responsive to Plaintiffs' request.

### C. McKesson Should Bear the Cost of Producing Its Own Data

Plaintiffs further request that the Court order McKesson to produce the data at its own expense. Although Plaintiffs had initially offered to share the cost of production to speed up the

process, McKesson has not conducted itself in good faith and has caused unnecessary delay and added expense, such that any shifting of cost is unwarranted.

"[T]he presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 358 (1978). The inquiry in a cost-shifting analysis is not necessarily whether the cost is substantial but whether it is "undue." *Id.*; *see also Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428-29 (S.D.N.Y 2002). To help determine whether an expense is "undue," courts have adopted a balancing test that considers the following factors:

> (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with the production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.

*Rowe Entm't*, 205 F.R.D. at 428-29. These factors do not favor shifting costs to Plaintiffs.

### 1.    Specificity

The discovery requests are specifically defined and require little review or discretionary judgment to determine what is needed to be produced.

### 2.    Likelihood of providing critical information

The data are highly likely to provide critical information because they will allow Plaintiffs to conduct an analysis from a large, representative sample of pharmacy prices over the

- 14 -

Class Period to see whether there is a correlation between U&C prices and AWP-based

reimbursement and whether U&C prices increased in line with AWPs.

### 3.    Availability from other sources

It is easier for McKesson to produce the data from its own database than to require each

of the non-party pharmacies to independently provide their own data.

### 4.    Purpose for maintaining discoverable material

McKesson operates as a switch.  It maintains this data as part of its business of providing

connectivity between pharmacies and payors.  It therefore has an interest in maintaining the

integrity of the data transmitted for the sake of both pharmacies and payors.

### 5.    Relative benefit

Both parties have requested claims data from pharmacies even though McKesson had this

data all along.  Therefore both parties recognize their value.

### 6.    Ability to control costs

McKesson was not forthcoming with the Court about the existence of the RelayHealth

data when it challenged Plaintiffs' IMS data, demanded an independent expert review of IMS

data, or sought a protective order to bar discovery of third-party reimbursement amounts from

non-party pharmacies.  Had McKesson acknowledged that it operated a switch, Plaintiffs would

have wasted no time seeking the data from non-party pharmacies.  McKesson's subterfuge has

caused Plaintiffs' counsel to expend unnecessary funds and waste valuable time seeking data

from non-party pharmacies when they could have gotten the data directly from McKesson.

### 7.    Relative resources

McKesson is ranked 18th among the Fortune 500 companies with annual revenues of

approximately $88 billion.  U&C Plaintiffs Campbell and Jordan are consumers of modest

- 15 -

means. Plaintiffs' counsel have already expended substantial sums in this litigation. All of these factors weigh in favor of McKesson shouldering its own costs of production.

## V.    CONCLUSION

For the foregoing reasons Plaintiffs request that the Court grant their motion to compel, award Plaintiffs their expenses and require McKesson to bear the cost of its production of data.

DATED: April 29, 2008

By____/s/ Steve W. Berman_____
   Steve W. Berman
   Nicholas Styant-Browne
   Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol (BBO #471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

- 17 -

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for Plaintiffs conferred with counsel for Defendant regarding the subject of this motion and were unable to resolve their dispute.

/s/ Steve W. Berman
Steve W. Berman

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on April 29, 2008.

<u>/s/ **Steve W. Berman**</u>

Steve W. Berman

001821-13 236738 V1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH ) | C.A. No. 1:05-CV-11148-PBS |
| BENEFITS FUND, PIRELLI ARMSTRONG ) | |
| RETIREE MEDICAL BENEFITS TRUST; ) | |
| TEAMSTERS HEALTH & WELFARE FUND ) | |
| OF PHILADELPHIA AND VICINITY; ) | |
| PHILADELPHIA FEDERATION OF ) | |
| TEACHERS HEALTH AND WELFARE ) | |
| FUND; DISTRICT COUNCIL 37, AFSCME - ) | |
| HEALTH & SECURITY PLAN; JUNE ) | |
| SWAN; BERNARD GORTER, SHELLY ) | |
| CAMPBELL and CONSTANCE JORDAN, ) | |

Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri
corporation; and McKESSON
CORPORATION, a Delaware corporation,

Defendants.

## [PROPOSED] ORDER GRANTING PLAINTIFFS'
## MOTION TO COMPEL PRODUCTION OF MCKESSON'S RELAYHEALTH DATA

Plaintiffs have moved, pursuant to Fed. R. Civ. Proc. 37, for an order to compel

production of RelayHealth data and for an award of expenses incurred in bringing this motion.

Having considered the submissions of the parties and the record in this case, IT IS HEREBY

ORDERED as follows:

1.       McKesson SHALL produce all RelayHealth reports and documents concerning

other services RelayHealth provides to assist pharmacies to set U&C prices.

- 1 -

2.      Within one week of entry of this Order, McKesson SHALL provide Plaintiffs with a sample of all of its fields for the NDC 00071015523 (Lipitor 10 mg) for the 2001-2005 period.

3.      Within one week Plaintiffs SHALL review this data sample and provide McKesson a list of desired fields.

4.      Within 30 days thereafter McKesson SHALL provide Plaintiffs at its own expense all data from all the requested fields, subject to redaction elimination of patients' individually identifiable medical information, for each of the NDCs identified in the Third Amended Complaint, Appendix A, for the period of August 2001 through the date of the entry of this Order.

5.      McKesson SHALL pay Plaintiffs their expenses, including reasonable attorney's fees, incurred as a result of bringing their motion to compel.

6.      Plaintiffs SHALL submit their expenses within one week of entry of this Order.

DONE this _____ day of _____, 2008.

_____
HONORABLE ROBERT B.COLLINGS
Magistrate, United States District Court

001821-13  236368 V1

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on April 29, 2008.

<u>/s/ Steve W. Berman</u>
Steve W. Berman

001821-13  236368 V1