UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF THER MOTION TO COMPEL**

Plaintiffs seek leave to file a short reply to McKesson's opposition to Plaintiffs' Motion to Compel Production of RelayHealth Data. Plaintiffs believe that a reply would be helpful to the Court to address certain dubious assertions McKesson makes in its opposition brief.

First, McKesson claims that it has satisfied its discovery obligations even though it has gone to great lengths to avoid producing data containing third-party reimbursement information. As explained in the reply brief, this directly contradicts the Court's April 18 order, which held that AWP-based third-party reimbursement information is clearly relevant to Plaintiffs' central allegation "that the usual and customary prices are set by relation to the average wholesale price

(AWP), and any artificial increase in the AWP results in an increase in the usual and customary charge."[1]  Moreover, pharmacy claims data provide the best means to test this assertion, and it is both troubling and highly illuminating that McKesson has taken such pains to prevent Plaintiffs from testing their assertion.

Next, McKesson claims that discovery of third-party reimbursement information is limited to the December 2001-2003 period.  Plaintiffs' reply brief explains that this is not supported by any of the Court's orders, including the March 19 class certification order, which makes third-party reimbursement information relevant for the *whole* Class Period.  Moreover, the proposed Class Period for the U&C Class extends to the present time, establishing that McKesson cannot unilaterally limit the time period to which Plaintiffs are entitled to this data based on a contorted interpretation of this Court's class certification order for the TPP and Consumer Co-pay Classes.

Further, McKesson claims that it is contractually prohibited from producing additional data, but McKesson does not explain why it failed to move for a protective order, or why the current protective order is insufficient to protect pharmacies' confidentiality concerns.  Plaintiffs' reply brief addresses this issue and relates that several third parties, including Walgreens, have already produced such data.

Additionally, the reply brief addresses McKesson's fallacious argument that Plaintiffs demand the entire RelayHealth database, a contention (belied by the plain language of Plaintiffs' motion to compel) that provides the false premise for McKesson's exaggerated estimate of the cost and time needed to produce the remaining data.  As addressed in the reply brief, Plaintiffs anticipate requiring only a small number of additional fields, which, according to

---

[1] Court's Electronic Order (dated April 18, 2008).

001821-13 239679 V1

McKesson's own assertion that fewer fields reduce time and expense, should drastically reduce its burden.

Finally, McKesson concedes that it offers services to its pharmacy clients that allow them to track the percentage of third-party reimbursements made at the U&C price (*i.e.* alerts them when U&C prices are set below third-party reimbursement levels) as well as services that "generate average U&C prices by NDC within market segments." As explained in the reply brief, documents pertaining to these services easily fall within Plaintiffs' request for "documents concerning U&C prices" and should be produced.

Plaintiffs therefore respectfully request leave to file a reply brief to respond to these assertions, a copy of which is attached hereto as Exhibit 1.

| | |
|---|---|
| DATED:  May 16, 2008 | By  /s/ **Steve W. Berman**                   <br>    Steve W. Berman<br>    Sean R. Matt<br>    Nicholas Styant-Browne<br>    Barbara A. Mahoney<br>Hagens Berman Sobol Shapiro LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA  98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br><br>Thomas M. Sobol (BBO#471770)<br>Hagens Berman Sobol Shapiro LLP<br>One Main Street, 4th Floor<br>Cambridge, MA  02142<br>Telephone: (617) 482-3700<br>Facsimile: (617) 482-3003 |

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile:  (708) 776-5601

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Edelson & Assocsiates
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for Plaintiffs conferred with counsel for Defendant regarding the filing of this motion, who do not consent.

/s/ Steve W. Berman
Steve W. Berman

001821-13  239679 V1

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 16, 2008.

                              /s/ Steve W. Berman
                              Steve W. Berman

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

### REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Plaintiffs' Motion to Compel established that McKesson is in possession of data that can prove Plaintiffs' theory that U&C prices are related to third-party reimbursement amounts. It likewise explained that, though McKesson has had this data since November 2006, it not only failed to disclose its existence, but sent Plaintiffs on a wild goose chase of sending subpoenas to third parties, only to learn, from their own investigation and from the third parties themselves, that the data Plaintiffs (and McKesson) had sought through those subpoenas was available from McKesson itself. And, all the while that McKesson vigorously attacked the purported deficiencies in IMS data utilized by Plaintiffs' expert on class certification and encouraged the

- 1 -

Court to hire an independent expert to evaluate the sufficiency of the IMS data, McKesson had its own data that, at a minimum, could have independently verified the accuracy of the IMS data.

In response to Plaintiffs' Motion, McKesson disregards its own gamesmanship and relegates its class certification opposition tactics to a footnote. Instead, it creates a series of straw men that Plaintiffs address herein. First, McKesson claims that its recent production of data allegedly containing U&C prices – but without any third-party reimbursement information – satisfies its discovery obligations. Indeed, coming on the heels of the Court's April 18 order, ruling that such information is clearly relevant to support Plaintiffs' allegation "that the usual and customary prices are set by relation to the average wholesale price (AWP), and any artificial increase in the AWP results in an increase in the usual and customary charge,"[1] this objection is clearly specious. Next, McKesson asserts that discovery of third-party reimbursement information is limited to the December 2001-2003 period. Neither the Court's discovery order, nor in its class certification order supports this assertion. Further, McKesson claims that it is contractually prohibited from producing additional data, but McKesson does not explain why it failed to move for a protective order, or why the protective order is insufficient to protect pharmacies' confidentiality concerns. Additionally, McKesson falsely claims that Plaintiffs demand the entire RelayHealth database, and then provides an exaggerated estimate of the cost and time needed to produce its data is based on this false premise. Finally, McKesson concedes that it offers services to its pharmacy clients that allow them to track the percentage of third-party reimbursements made at the U&C price as well as to "generate average U&C prices by NDC within market segments." Documents pertaining to those services clearly fall within Plaintiffs' request for "documents concerning U&C prices" and should be produced.

---

[1] Court's Electronic Order (dated April 18, 2008).

- 2 -

## I.    MCKESSON HAS NOT PRODUCED THE DATA PLAINTIFFS REQUESTED

McKesson claims that it satisfied its discovery obligations when it provided Plaintiffs with a hard drive this week, which purportedly contains U&C prices for 21 pharmacies but specifically *omits AWP-based third-party reimbursement information* that is vital to Plaintiffs' proof of a correlation between AWPs and U&C prices.[2]  This Court has already ruled that such data falls within the scope of allowable discovery in the U&C case.  Plaintiffs need this data to show that when McKesson raised AWPs, U&C prices followed.

Plaintiffs should not be limited to the small subset of data McKesson is willing to provide, especially since McKesson intentionally excluded third-party reimbursement rates. Plaintiffs did not select the fields for this subset and were prevented from doing so because McKesson refused to provide them a sample of its data fields.[3]

Given McKesson's vigorous efforts to prevent Plaintiffs from obtaining third-party reimbursement information, it is simply not credible that McKesson was unaware that Plaintiffs wished to obtain such information.[4]  Long before the March 3 discovery conference Plaintiffs argued to the Court that they could prove their case by drawing a correlation between pharmacies' AWP-based third-party reimbursement rates and U&C prices.  Plaintiffs asserted

---

[2] Plaintiffs have not been able to verify the contents because the data appear to be encrypted in a different encryption key than that which Plaintiffs provided to McKesson.  Plaintiffs have requested that McKesson correct the error and resend the data.

[3] This week McKesson finally provided Plaintiffs with a CD that allegedly contains the data sample Plaintiffs requested.  Plaintiffs have not been able to verify the contents because the data are corrupted. Plaintiffs have requested that McKesson correct the errors and resend the data.  In any event, unless McKesson agrees to produce the fields Plaintiffs select from their analysis of the data sample, it is a meaningless concession.

[4] *See* Declaration of Paul Flum, ¶ 14 (asserting that third-party reimbursement data was never discussed at the March 3 discovery conference).  No specifics were discussed because the parties agreed that Plaintiffs would select the data fields they wished to receive to conduct their analysis. It was clearly evident to McKesson by this time that Plaintiffs' proposed analysis included, indeed **highlighted**, the correlation between U&C prices and third-party reimbursement amounts.

- 3 -

this argument both in their opposition to McKesson's motion to dismiss, filed January 14, 2008 (Dkt. No. 429) and in their opposition to McKesson's motion for a protective order, filed February 13, 2008 (Dkt. No. 456). Thus, by the time McKesson's counsel conferred with Plaintiffs' counsel about their discovery request, they were fully cognizant that Plaintiffs sought both U&C pricing and third-party reimbursement data and that both types of information were necessary to test this correlation. Incredibly, even after the Court issued its April 18 order, expressly ruling that third-party reimbursement information is discoverable, McKesson still claims it has no obligation to produce it.

## II.    DISCOVERY IS NOT LIMITED TO THE 2001-03 PERIOD

McKesson's footnote 4 to the contrary, the Court has never limited discovery of third-party reimbursement information to the period of 2001 through 2003. While the Court's March 19 class certification order limits the *damages* period for the TPP Class to the end of December 2003, it also certifies the Consumer Co-Pay Class for damages and both classes for liability for the entire Class Period, rendering third-party reimbursement information relevant for the full Class Period. Moreover, Plaintiffs have asserted a longer Class Period on behalf of the U&C Plaintiffs, *i.e.* through the present, because there is no evidence the consumers could have discovered the scheme or taken steps to mitigate.[5] Thus, even the May 2005 end date of the Court's class certification order on the TPP and Consumer Co-pay Classes has no bearing on the discoverability of third-party reimbursement amounts through the present time to support U&C claims.[6]

---

[5] Third Amended Complaint, ¶ 161 (Dkt. No. 359).

[6] To the extent that McKesson seeks a bar order to prevent discovery of information that may have application in the TPP and Consumer Co-pay part of the case, it is foreclosed by the Court's January 2 discovery order. Although discovery in the main case is closed, the Court declined to enter an order prohibiting the use of evidence obtained in the U&C case to support claims or

### III. MCKESSON DID NOT MOVE FOR A PROTECTIVE ORDER

To the extent that McKesson is allegedly prohibited by contract from producing this information, it is not excused from production. McKesson had an obligation to inform Plaintiffs of its circumstances and to move for a protective order. It did neither. Instead it raises this argument for the first time 1) only a month before discovery closes, 2) after failing to disclose the existence of its own massive database of pharmacy claims data when it claimed that there was no relationship between U&C prices and AWP, 3) after sending Plaintiffs on a cross country goose chase to get claims data from dozens of pharmacies only to be told that they would not produce the data because it was available directly from McKesson, and 4) after McKesson falsely represented to Plaintiffs that it was not necessary to obtain pharmacies' consent. Unbelievably, McKesson even suggests that Plaintiffs were remiss in filing a motion to compel against McKesson instead of bringing 27 separate motions in nearly as many different jurisdictions to compel third-party pharmacies to produce the very data that McKesson, a party to the lawsuit, possesses.[7]

Nor is it clear that the pharmacies would object to a Court-ordered production of third-party reimbursement information. For example, while McKesson represents that Walgreens objects to the production of third-party reimbursement data, Walgreens has already produced such data in this case and in the related AWP-MDL matter.[8] Similarly, Costco's declaration

---

defenses pertaining to the TPP and Consumer Co-pay Classes. *See* Plaintiffs' Motion for the Setting of a Schedule for the U&C Claims (Dkt. No. 387), at 2 (requesting such an order) and the Court's Electronic Order entered January 3, 2008 (denying the request: "I don't agree with plaintiffs' position on the 'bar'"). The utility of such information in the main case is, however, limited at this stage, given that the Court has already ruled that Plaintiffs may rely on IMS data to prove aggregate impact and damages.

[7] Declaration of Paul Flum, ¶ 28.

[8] Walgreens produced data from 2003-2006. Plaintiffs seek data for the longer period of 2001-2008.

- 5 -

merely asserts that it expects McKesson to comply with its contractual obligations, not that it refuses to allow discovery of its data.

It is also worthy of note that none of the pharmacies has moved to intervene; and McKesson does not even argue that the current protective orders are insufficient to protect the pharmacies' confidentiality interests. Other than HIPAA privacy concerns – mooted by the parties' agreement to omit information that would raise HIPAA concerns as well as a special HIPAA protective order already entered in this case, and Safeway's concern about the disclosure of MAC information – mooted by the Plaintiffs' request only for brand drug information, the only remaining concern asserted by the pharmacies is their interest in maintaining the confidentiality of the terms of their reimbursement agreements. But there is a protective order in place governing confidential and proprietary information, and there is no reason to believe that third-party reimbursement rates would be made public, if McKesson produced the data. Indeed, large pharmacies, TPPs and PBMs have already produced numerous contracts specifying their reimbursement rates. Moreover, the pharmacies have already agreed to produce their proprietary U&C prices and many have produced documents describing their formulas for arriving at such prices. In addition, other third parties aside from Walgreens, *e.g.* GE and CIGNA, have produced claims data in this case and in the AWP-MDL litigation. These examples illustrate the effectiveness of protective orders already in place.

## IV.  PLAINTIFFS DO NOT DEMAND THE ENTIRE RELAYHEALTH DATABASE

Although originally Plaintiffs requested the RelayHealth database, McKesson declined to produce it because the database was too vast. Plaintiffs accepted McKesson's alternative proposal that Plaintiffs select the fields from which McKesson would extract data. McKesson's estimate of the cost of production and the time needed to complete production are based on the false premise that Plaintiffs will demand the entire database, or minimally all 160 fields typically

used in transactions. McKesson has already agreed to produce six fields and Plaintiffs anticipate they will only need a small number of additional fields.[9] Thus the time and expense required to produce the data will be greatly diminished once the number of fields is established.

### V.    PLAINTIFFS ARE ENTITLED TO ALL DOCUMENTS CONCERNING MCKESSON SERVICES RELATING TO U&C PRICES

Finally, with respect to Plaintiffs' request for "[a]ll documents concerning U&C prices," McKesson claims that it does not possess RelayHealth reports, such as those disclosed at the ShopKo deposition. However, McKesson concedes that the reports are generated by a service it offers to its pharmacy clients that allows them to track the percentage of third-party reimbursements that are made at the U&C rate. McKesson's service underscores the pharmacies' need to monitor U&C prices relative to AWP-based reimbursement amounts. Any documents pertaining to this service, including how McKesson markets the service to its customers, are highly relevant. Plaintiffs are entitled to such documents because they support Plaintiffs' theory that pharmacies set U&C prices at or above third-party reimbursement rates to prevent reimbursement from falling below the negotiated AWP-based reimbursement rate. Thus if McKesson's scheme raised third-party reimbursement rates, it would also cause pharmacies to raise their U&C prices to ensure that they get maximum reimbursement.

McKesson also concedes that it offers services that allow its clients to "generate average U&C prices by NDC within market segments," *i.e.* the Pharmacy Market Analyzer, Prescription Price Analyzer and the Prescription Price Reporter, described in the Declaration of Roger Pinsonneault, McKesson's Senior Director of Product Management for its RelayHealth Division.

---

[9] Plaintiffs hope to have a precise estimate of the fields they need by the time the Court sets a hearing on this motion. However, because the sample file McKesson provided this week was corrupt, Plaintiffs cannot say at this time which fields or how many they will require. *See supra* at 3 and n.3. Plaintiffs have requested that McKesson send them a new file with uncorrupted data.

Plaintiffs are also entitled to McKesson's documents concerning these services in so far as they concern "U&C prices."

DATED:  May 16, 2008                         By  /s/ Steve W. Berman
    Steve W. Berman
    Nicholas Styant-Browne
    Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol (BBO #471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

- 8 -

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 16, 2008.

/s/ **Steve W. Berman**
Steve W. Berman