UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation, <br><br> Defendants. | C.A. No. 1:05-CV-11148-PBS |

**DECLARATION OF BARBARA MAHONEY IN SUPPORT OF
PLAINTIFFS' MOTION TO MODIFY THE U&C SCHEDULE**

I, Barbara Mahoney, hereby declare that:

1.    I am an attorney with Hagens Berman Sobol Shapiro LLP, resident in its Seattle,

Washington, office, and I am one of counsel for the Plaintiffs in the above-captioned matter. I

submit this declaration in support of Plaintiffs' Motion to Modify the U&C Schedule.

2.    Plaintiffs' U&C claims depend on establishing a correlation between U&C prices

and AWP such that when the Scheme increased AWPs, it led to an increase in U&C prices.

Because pharmacy reimbursement contracts typically require pharmacies to accept the lesser of

the third-party AWP-based reimbursement rate or their U&C price, Plaintiffs sought pharmacy

claims data as a means of testing this correlation between price factors. Since the Court first issued its January 2, 2008 order, authorizing discovery concerning the U&C claims, Plaintiffs have made diligent efforts to obtain pharmacy claims data, only to have McKesson obstruct them in every respect.

3.     When they discovered that McKesson owns RelayHealth, a company that facilitates the transmission of pharmacies' electronic claims process, Plaintiffs sought claims data directly from McKesson. Plaintiffs served McKesson with a request for the RelayHealth database on January 22, 2008. McKesson refused. A copy of McKesson's responses and objections is attached to my declaration as Exhibit 1. Also in January Plaintiffs also served subpoenas on the ten largest pharmacies and requested claims data. McKesson objected to the request as far as it included third-party reimbursement amounts that would allow Plaintiffs to compare the pharmacies' U&C prices to third-party reimbursement rates and thereafter moved for a protective order. ***Thus, not only did McKesson decline to provide the requested data, it also sought to block Plaintiffs from obtaining the data from third-party pharmacies.***

4.     On March 3, my colleague, Nick Styant-Browne and I met with McKesson's counsel, Paul Flum, to try to resolve McKesson's objections to the production of RelayHealth data. Attached hereto as Exhibit 2 is a copy of an e-mail exchange between Mr. Flum and me, dated March 4, 2008, memorializing our discussion. Mr. Flum explained that RelayHealth is a "switch" and that the vast majority of its data comes from large chain pharmacies and the remainder consists of data from thousands of independent pharmacies. *Id.* He represented that the database was too large and McKesson had no intention of providing it in its entirety, but it would be willing to extract information from the database. He suggested that we confer with our expert to determine which fields we would require. *Id.* Although Mr. Flum proposed certain

- 2 -

fields he thought would be relevant, he agreed that McKesson would extract data from the

RelayHealth database based on the fields that Plaintiffs would select after consulting with their

expert. *Id.* The parties did not discuss which particular fields Plaintiffs would require, but

McKesson was fully cognizant that Plaintiffs needed both the U&C prices and the third-party

reimbursement rates to demonstrate the U&C third-party AWP-based reimbursement correlation

because Plaintiffs had made this argument both in their opposition to McKesson's motion to

dismiss, filed on January 15 (Dkt. No. 430) and in their opposition to McKesson's motion for a

protective order, filed February 13 (Dkt. No. 456).

     5.     On March 13, Mr. Flum provided a copy of the DATA DICTIONARY (National

Council for Prescription Drug Program 1999) for Plaintiffs' review. He represented that

RelayHealth's data fields closely resembles the fields described in the DATA DICTIONARY. *See*

March 13, 2008 e-mail from Paul Flum to Barbara Mahoney and Nick Styant-Browne (attached

hereto as Exhibit 3). After an exhaustive consultation with both of Plaintiffs' experts, Plaintiffs

concluded that it was too risky to request fields without knowing how they function. Plaintiffs

proposed that McKesson provide them with a small sample of each of their fields for a single

NDC (Lipitor 10 mg) over the period of 2001-2006 (subject to elimination of patients'

individually identifiable medical information). Plaintiffs' expert could then review the sample

and select the optimal fields for his analysis and review. A copy of my April 2, letter to Mr.

Flum, proposing this arrangement is attached hereto as Exhibit 4.

     6.     Mr. Flum responded by e-mail, which is attached hereto as Exhibit 5, declining

Plaintiffs' request. He also attached a sample of the data for Lipitor 10 mg for the 2001-2005

period, which included only the six fields that he had previously identified as relevant. He

concluded that, contrary to its earlier agreement, McKesson would not allow Plaintiffs to select

the fields they needed, but instead Plaintiffs would have to justify why the fields Mr. Flum had identified were insufficient. *Id.* Plaintiffs asked McKesson to reconsider; Plaintiffs argued that they were entitled to discovery pertaining to the third-party reimbursement amounts, which were not included in Mr. Flum's sample, and additionally that, there were gaps in the data that might be understood in connection with other fields. He again declined. This letter exchange is attached as Exhibit 6 (my letter to Mr. Flum) and Exhibit 7 (Mr. Flum's response).

7.     Once the Court denied McKesson's motion for a protective order to bar discovery of third-party reimbursement information, Plaintiffs anticipated that McKesson would provide the RelayHealth data they requested. When that did not occur, Plaintiffs brought a motion to compel. Shortly before it filed its opposition brief, McKesson provided a hard drive with data from 21 pharmacies from the six fields Mr. Flum had previously identified, which provide U&C price information but not the corresponding third-party reimbursement amounts for comparison. Moreover, Plaintiffs experienced technical difficulties, stemming from McKesson's policy of encrypting the data, which added to the delay. Plaintiffs had to return the first hard drive because it was not encrypted with the encryption key Plaintiffs had provided McKesson. The second hard drive was protected with McKesson's passphrase, which McKesson initially failed to provide.

8.     McKesson also provided a CD with a sample of the RelayHealth fields, which Plaintiffs had requested five weeks earlier. Initially, upon review of the CD Plaintiffs believed that the file was corrupt because they were unable to see how the fields were limited. McKesson has provided some information about the formatting of the file. Plaintiffs hope that McKesson will continue to cooperate to resolve any remaining issues. Once these have been cleared up,

Plaintiffs expect to be able to come up with a final determination of the fields necessary for Dr. Hartman's review within a few days.

9.      Plaintiffs estimate that the earliest date they can provide Dr. Hartman's report is September 1, 2008. Plaintiffs arrive at this estimate based on the date of hearing on their motion to compel (June 13); their estimate of the time needed for McKesson to produce the data in useable form; and the six-week period that Dr. Hartman needs to analyze the data and complete his report.

10.      Plaintiffs conferred with Lori Schechter, counsel for McKesson, over the proposed schedule. Ms. Schechter proposed an alternate schedule, in which Plaintiffs would have six weeks to file their reply to McKesson's opposition brief, *i.e.* by July 2, and McKesson would have six weeks, *i.e.* until August 6, to file their surreply. Attached as Exhibit 8 is Ms. Schechter's response to my e-mail, proposing the schedule modification. McKesson's alternate proposal is not workable because Plaintiffs need six weeks from the time they receive all the data in a useable form. To date Plaintiffs do not have the data they requested from McKesson or from IMS.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of May, 2008.

_Barbara Mahoney_
BARBARA MAHONEY

001821-13 240395 V1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 27, 2008.

/s/ Steve W. Berman
Steve W. Berman

001821-13 240395 V1

# Exhibit 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN, | Civil Action: 1:05-CV-11148-PBS  Judge Patti B. Saris |
| Plaintiffs, | |
| v. | |
| FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation, | |
| Defendants. | |

**McKESSON CORPORATION'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS DATED JANUARY 22, 2008**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant

McKesson Corporation ("McKesson"), by its attorneys, Morrison & Foerster LLP, objects to and

responds to Plaintiffs' Request for Production of Documents to McKesson, dated January 22,

2008 (the "Eighth Request for Production" or the "Requests"), as follows:

**GENERAL OBJECTIONS**

McKesson asserts the following general objections and responses to the Eighth Request

for Production, which objections and responses are applicable to each document request and

incorporated therein. Any information provided in response to a request is made without waiver of, and subject to, these objections.

      1.    McKesson objects to each request to the extent it seeks documents that are outside the scope of discovery permitted under the Court's scheduling order regarding U&C claims, filed January 2, 2008 (the "Scheduling Order"). That Order explicitly states: "Except as otherwise ordered by the Court, discovery is allowed only as to new issues raised by the Usual & Customary Class in the Third Amended Complaint."

      2.    McKesson objects to the Definitions and Instructions to the extent they purport to broaden the definitions set forth in Local Rule 26.5(c), and to the extent they seek to create an obligation to provide information or documents in a manner not required by the Federal Rules of Civil Procedure, the Local Rules for the District of Massachusetts, or other applicable law.

      3.    McKesson objects to the definition of "Relevant Time Period" as overly broad and unduly burdensome to the extent it seeks information or documents for the time period prior to January 1, 2000.

      4.    McKesson objects to each request to the extent it requires the disclosure of information that would infringe upon the legitimate privacy rights and expectations of individuals who purchased prescription drugs, including rights arising under the Health Insurance Portability and Accountability Act ("HIPAA").

      5.    McKesson objects to each request to the extent it seeks the production of the proprietary information of third parties or of information that is subject to confidentiality or other contractual obligations to third parties that prohibit or restrict McKesson's disclosure of such information. McKesson further objects to each request to the extent it seeks proprietary, private business or personal information, or other confidential information, including information constituting or pertaining to trade secrets, personnel information, and/or competitively sensitive information. McKesson further objects to the production of any information or documents to the extent such production would be inconsistent with a confidentiality agreement, a protective order in another action or proceeding, or some other restriction on production.

6.    McKesson objects to each request to the extent it seeks documents or information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, or by any constitutional, statutory, or regulatory proscription against disclosure. If any documents or information subject to a privilege, immunity, protection, or proscription are inadvertently disclosed by McKesson, such disclosure does not constitute a waiver of any privilege, immunity, protection, or proscription.

7.    McKesson objects to each request to the extent it seeks information and/or documents that are publicly available or readily available to Plaintiffs. McKesson further objects to each request to the extent it seeks information and/or documents already produced to Plaintiffs in the case, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL-1456.

8.    McKesson objects to the definition of "Third-Party Payor" as overly broad and vague and ambiguous in its use of the terms "Provider" and "program."

9.    In accordance with Fed. R. Civ. P. 26, McKesson is undertaking a reasonable search of its files where responsive information and documents, if any exist, are likely to be found. A response by McKesson that it will produce information and/or documents in response to a particular request is not a representation that any information or documents responsive to that request exist, but only that such information and/or documents will be produced if they are located after McKesson conducts a reasonable search of those files that are likely to contain responsive information and/or documents. Further, a response that McKesson will produce responsive information and/or documents (or the production of any information and/or documents in response to a particular request) is not a representation that McKesson adopts, accepts, affirms, or admits the assertions, contentions, or definitions used or made in connection with the definitions, instructions, or requests. McKesson's investigation is continuing, and it reserves the right to amend, modify, or supplement its responses. By responding and providing documents, McKesson does not concede the relevance or materiality of the request or of the subject to which such request refers. McKesson's response is made expressly subject to, and without in any way waiving or intending to waive, any objections as to the competence,

relevance, materiality, privilege or admissibility as evidence or for any other purpose, of any of the information referred to or produced or of the responses given herein, or of the subject matter thereof.

## RESPONSES

### DOCUMENT REQUEST NO. 1:

All documents concerning the business of RelayHealth or any other division or department of McKesson or McKesson entity that processes or otherwise facilitates pharmacy claims for Third-Party Reimbursement for prescription drugs, including documents to explain McKesson's ProviderPay and AWP resubmission services and its ProPBM application.

### RESPONSE TO DOCUMENT REQUEST NO. 1:

McKesson's general objections are incorporated by this reference. In addition, McKesson objects to this request as seeking discovery outside the scope of the Court's Scheduling Order, since it is not directed to "new issues raised by the Usual & Customary Class in the Third Amended Complaint." McKesson further objects to this request as overly broad and unduly burdensome to the extent it seeks the production of documents neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

### DOCUMENT REQUEST NO. 2:

All documents concerning pharmacy U&C prices for brand drugs, including without limitation, the RelayHealth database. This includes any documents analyzing or discussing how cash prices are set and/or the relationship between cash prices and U&C.

### RESPONSE TO DOCUMENT REQUEST NO. 2:

McKesson's general objections are incorporated by this reference. In addition, McKesson objects to this request to the extent that it purports to demand production of the "RelayHealth database," on the grounds that the request seeks discovery outside the scope of the Court's Scheduling Order, seeks information protected by HIPAA and other privacy rights, is overbroad and unduly burdensome, and seeks confidential and proprietary information that is governed by contracts between RelayHealth and the third parties that supplied the data that

restrict the use and disclosure of such data.  Subject to and without waiving these objections,

McKesson states that it will produce mutually agreed upon U&C pricing data from the

RelayHealth database, following contractually-required notice to the third parties that supplied

the data and resolution of any objections interjected by those third parties.  Any such production

will be further subject to and conditioned on an agreement with plaintiffs to share the expense of

data extraction, processing, and certification for HIPAA compliance.

**DOCUMENT REQUEST NO. 3:**

All documents concerning the business of Your Auto-Rx-Net service or any other
McKesson affiliated service, program or application that assists pharmacies in setting their U&C
prices.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

McKesson's general objections are incorporated by this reference.  In addition,

McKesson objects to this request as argumentative to the extent that it erroneously assumes that

McKesson owns the Auto-Rx-Net service.  McKesson further objects to this request as overly

broad and unduly burdensome to the extent that it seeks the production of documents neither

relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery

of admissible evidence.  McKesson further objects to this request as vague and ambiguous.

Subject to and without waiving these objections, McKesson states that it will produce non-

privileged documents that it identifies after a reasonably diligent search concerning the

functionality of the Auto-Rx-Net product sold by Rx-Net or the functionality of any software

product sold by McKesson to the extent that such product can be used by pharmacies in setting

U&C prices.

**DOCUMENT REQUEST NO. 4:**

All documents concerning the design; [sic] implementation or maintenance of Your
Auto-Rx-Net service, including all communications with Your partner Rx-Net, Inc. regarding the
same.

**RESPONSE TO DOCUMENT REQUEST NO. 4:**

McKesson's general objections are incorporated by this reference. In addition, McKesson objects to this request as argumentative to the extent that it erroneously assumes that McKesson owns the Auto-Rx-Net service. McKesson further objects to this request as overly broad and unduly burdensome to the extent that it seeks the production of documents neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, McKesson states that it will produce non-privileged documents that it identifies after a reasonably diligent search concerning communications with Rx-Net regarding the Auto-Rx-Net product.

**DOCUMENT REQUEST NO. 5:**

All documents concerning the correlation between U&C prices and AWP; [sic] wholesaler list prices and/or Third-Party Reimbursement amounts for brand drugs, including all communications with Your partner Rx-Net, Inc. regarding the same.

**RESPONSE TO DOCUMENT REQUEST NO. 5:**

McKesson's general objections are incorporated by this reference. In addition, McKesson objects to this request as vague, ambiguous, and unintelligible as written. McKesson further objects to this request as vague and ambiguous in its use of the word "correlation." McKesson further objects to this request as overly broad and unduly burdensome to the extent that it seeks the production of documents neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, McKesson states that it will produce non-privileged documents that it identifies after a reasonably diligent search concerning communications with Rx-Net regarding any relationship between U&C prices and AWP, wholesaler list prices, and/or Third-Party Reimbursements for brand name prescription drugs.

**DOCUMENT REQUEST NO. 6:**

All communications between McKesson and/or Morrison and Foerster regarding this litigation, and any third party or trade association.

**RESPONSE TO DOCUMENT REQUEST NO. 6:**

McKesson's general objections are incorporated by this reference. In addition,

McKesson objects to this request as unintelligible as written. McKesson further objects to this

request as seeking discovery outside the scope of the Court's Scheduling Order, since it is not

directed to "new issues raised by the Usual & Customary Class in the Third Amended

Complaint." McKesson further objects to this request to the extent it seeks the production of

communications between McKesson and its legal counsel that are protected by the attorney-

client privilege and the work product doctrine.

McKesson Corporation
By its attorneys:

/s/ Paul Flum
Paul Flum

Melvin R. Goldman (*pro hac vice*)          John Kiernan
Lori A. Schechter (*pro hac vice*)          Stephen E. Hughes
Paul Flum (*pro hac vice*)                  Bonner Kiernan Trebach & Crociata
Tiffany Cheung (*pro hac vice*)             200 Portland Street
Morrison & Foerster LLP                     Suite 400
425 Market Street                           Boston, MA 02114
San Francisco, CA 94105-2482                Telephone: (617) 426-3900
Telephone: (415) 268-7000                   Facsimile: (617) 426-0380
Facsimile: (415) 268-7522
PaulFlum@mofo.com

Dated: February 21, 2008

## CERTIFICATE OF SERVICE

I certify that a true copy of this document was served on February 21, 2008 as follows:

**Via E-mail**

| | |
|---|---|
| Steve W. Berman<br>Barbara Mahoney<br>Carrie Flexer<br>steve@hbsslaw.com<br>barbaram@hbsslaw.com<br>Carrie@hbsslaw.com | Sheila Birnbaum<br>Thomas Fox<br>John Kern<br>Matthew Matule<br>Mark Redman<br>sbirnbau@skadden.com<br>tfox@skadden.com<br>jkern@manatt.com<br>mmatule@skadden.com<br>mredman@hearst.com |
| *Counsel for Plaintiffs* | *Counsel for First DataBank* |

/s/ Paul Flum _____
Paul Flum

# Exhibit 2

**Barbara Mahoney**

| | |
|---|---|
| **From:** | Flum, Paul [PaulFlum@mofo.com] |
| **Sent:** | Tuesday, March 04, 2008 6:11 PM |
| **To:** | Barbara Mahoney |
| **Cc:** | Steve Berman; Nick Styant-Browne; Jon Soderlund; Calia, Kevin |
| **Subject:** | RE: discovery conference |

Barbara,

I have a few points of clarification regarding your summary of our call yesterday.

1. (Request No. 2)  Although RelayHealth subscribers submit data using standard NCPDP fields, I advised you that not all of the fields in the RelayHealth database are populated.  That is because not all fields are included in subscribers' submissions.  As as result, the RelayHealth database does not have "all of" the NCPDP fields, as stated in your email.  I will let you know if any of the fields you identify in response to our call are not populated in the database.

2. (Request No. 2)  Your email states that "McKesson is willing to negotiate" with the large retail pharmacies that are the source for approximately 90% of the pricing data in the RelayHealth database to allow McKesson to produce their data.  To be clear, I did not refer to a "negotiation." What I said was that McKesson would provide the notice that is required by contract to these large retail pharmacies, which is a necessary condition before the data can be produced.

3. (Request Nos. 3-5)  Your email states that I represented that I am not aware "of any part of McKesson's business that dealt with U&C pricing."  This is similar to what I said during our call, but, to avoid any ambiguity, I reiterate my comments from yesterday:  U&C pricing is not McKesson's business and I would not know where else to look for responsive documents beyond the documents that McKesson has agreed to produce (*i.e.*, communications with Rx-Net regarding the Auto-Rx-Net product and documents regarding the functionality of the Auto-Rx-Net product).  As your email correctly states, I told you that I am not aware of any other documents maintained by McKesson concerning a purported correlation between U&C prices and AWP, wholesaler list, or third party reimbursements.

As to your question about timing, we will be in a better position to provide a time estimate after we agree on which fields will be extracted from the RelayHealth database.

Paul

---

**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** March 04, 2008 9:52 AM
**To:** Flum, Paul
**Cc:** Steve Berman; Nick Styant-Browne; Jon Soderlund
**Subject:** discovery conference

Paul,
As a result of our conference this afternoon we were able to resolve or at least clarify the concerns we had with your responses and objections to our discovery requests.  The following summarizes our understanding of the discussion and the points on which we were able to reach

agreement:

Regarding our Request No. 1, you agreed to produce documents describing the general nature of RelayHealth's switching business. We also asked for documents that explain how RelayHelath has U&C data. You represented that you did not believe that there such documents exist, but you would make a reasonable effort to verify this and produce them if they do exist.

With respect to Request No. 2, you represented that RelayHealth is the only switching business that McKesson owns and therefore your response would be limited to RelayHealth's database. You further represented that the RelayHealth database has all of the NCPDP fields and suggested that we confer with our expert to determine which fields would be most useful, e.g. NDC; pharmacy; date of dispensing; etc. You also advised us that the database is quite large and that the cost and the amount of time involved in producing this data would increase relative to the number of fields that we chose. You additionally stated that you would not be able to produce the RelayHealth database itself due to both the HIPPA requirements as well as the size of the database. Additionally, HIPPA requirements would also necessitate in some instances an aggregation of information, whenever it necessary to protect against disclosure of the identity of the patient based on the purchase information, e.g. in the case of a rarely dispensed NDC. In such cases it was your understanding that McKesson would protect the patient's identity by aggregating the data, for example, by the week or month or by zipcode, as needed. Additionally, you stated that the sources of 90% of RelayHealth's pricing data are from a few dozen of the top retail chains in the country. You represented that McKesson is willing to negotiate with these large chains to allow it to produce their data. However, the remaining 10% of the data comes from thousands of mostly independent pharmacies. In some instances RelayHealth's contract with these pharmacies does not require that it provide them with prior notice if it is producing their data. Where this is the case, you represented that McKesson would be able to provide this data. In other instances, where the pharmacies required prior notice, you represented that it would be too burdensome to negotiate with potentially hundreds or thousands of pharmacies and that you did not intend to include this data in your production.

With respect to Request Nos. 3-5, relating to the Auto-Rx service and documents correlating U&C prices to other prices. You represented that you will produce documents McKesson has pertaining to the Auto-Rx-servce, including communications with Rx-Net and documents pertaining to the function of the Auto-Rx service. You further represented that you were not aware of any part of McKesson's business that dealt with U&C pricing or that McKesson has any documents other than the above identified categories concerning the correlation between U&C prices and either AWP or wholesaler list prices or third-party reimbursement amounts.

With respect to Request No. 6, you objected that the request is not clearly stated and that to the extent that we requested communications with third parties or trade organizations about this litigation, it is outside the scope of the Court's order on U&C discovery.

Please let us know if your understanding of our discussion materially differs from this summary.

Finally, in light of the upcoming deadline to file our class cert brief, how soon would you be able to produce the documents?

Barbara

===================================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that,

if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

================================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
================================================================================

4/25/2008

# Exhibit 3

**Barbara Mahoney**

| | |
|---|---|
| **From:** | Flum, Paul [PaulFlum@mofo.com] |
| **Sent:** | Thursday, March 13, 2008 3:58 PM |
| **To:** | Barbara Mahoney |
| **Cc:** | Nick Styant-Browne |
| **Subject:** | RE: New England Carpenters v. FDB |

**Attachments:** NCPDP Data Dictionary.pdf



NCPDP Data
Dictionary.pdf (9 M..

Barbara,

I look forward to receiving the U&C plaintiffs' documents that you are aiming to produce
this week.  As I mentioned, we need to see the documents before our call on Monday, so
that we can evaluate the adequacy of plaintiffs' responses to interrogatory no. 1.

On the RelayHealth front, I've attached a list of the NCPDP field definitions that you
requested. Because the fields that RelayHealth receives vary depending on the reporting
requirements of the contracts between the pharmacies and the PBMs responsible for each
particular transaction, some NCPDP fields are not populated in the database at all, while
others are not populated on a consistent basis.

Given that variability, I'd like to make the following proposal.  We have identified six
fields that will give you reported U&C prices on a transaction level (and that do not
appear to involve protected health information under HIPAA, such as patient name, address,
date of birth, social security number, etc.).  I've also confirmed that these six fields
are populated in the RelayHealth database more than 98% of the time.  The six fields
are:

| | | |
|---|---|---|
| B1 | D1_date_of_service | 401-D1 |
| B1 | D7_product_service_id | 407-D7 |
| B1 | DQ_usual_and_customary_charge | 426-DQ |
| B1 | E7_quantity_dispensed | 442-E7 |
| | Pharmacy ID (derived NABP) | Generated by RelayHealth |
| | Pharmacy ZIP | Generated by RelayHealth |

We propose extracting and producing these six fields, which will permit calculation of
reported U&C prices at the individual prescription level.
While we expect that the vast majority of these data will be produced transaction by
transaction, it is possible that individual transactions for infrequently prescribed drugs
might need to be aggregated for HIPAA compliance purposes.

Assuming plaintiffs agree to this approach, we will also need to agree on the list of NDCs
to be included in the data pull.  Once we've worked out these details, I will have
RelayHealth generate a cost estimate for the data extraction.

Please let me know how you'd like to proceed.

Paul

---

From: Barbara Mahoney [mailto:barbaram@hbsslaw.com]
Sent: March 10, 2008 2:45 PM
To: Flum, Paul
Cc: Nick Styant-Browne
Subject: RE: New England Carpenters v. FDB

Paul,

We are working diligently with our clients to obtain responsive documents and aim to produce them this week.

With respect to the RelayHealth data could you please send a list of available fields and if possible, field definitions?  Our expert is generally familiar with the NCPDP fields but would need to know more specifics before making an informed decision.

Barbara

--------------------------------------

From: Flum, Paul [mailto:PaulFlum@mofo.com]
Sent: Monday, March 10, 2008 12:29 PM
To: Barbara Mahoney
Cc: Nick Styant-Browne
Subject: RE: New England Carpenters v. FDB


Let's do the call at 2 p.m., Monday, March 17.  We'll call you.

Also, since you are relying on FRCP 33(d) in your response to Interrogatory No. 1, we will need to see the documents that you assert contain the responsive information to be able to evaluate the adequacy of plaintiffs' response.  Please produce those documents this week.

Paul

--------------------------------------

From: Barbara Mahoney [mailto:barbaram@hbsslaw.com]
Sent: March 10, 2008 9:49 AM
To: Flum, Paul
Cc: Nick Styant-Browne
Subject: RE: New England Carpenters v. FDB


Paul,
We are available anytime next Monday or Tuesday (3.17 or 3.18).

Barbara

--------------------------------------

From: Flum, Paul [mailto:PaulFlum@mofo.com]
Sent: Friday, March 07, 2008 5:36 PM
To: Barbara Mahoney
Subject: New England Carpenters v. FDB


Barbara,

What days are you available next week to meet and confer about plaintiffs' interrogatory responses and responses to McKesson requests for production of documents?

Paul

==================================================================================
====

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the

Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

==========================================================================
====

This message contains information which may be confidential and
privileged. Unless you are the addressee (or authorized to receive for
the addressee), you may not use, copy or disclose to anyone the message
or any information contained in the message. If you have received the
message in error, please advise the sender by reply e-mail @mofo.com,
and delete the message.
==========================================================================
====

# Exhibit 4



HAGENS BERMAN
SOBOL SHAPIRO LLP

BARBARA A. MAHONEY
BARBARAM@HBSSLAW.COM

April 2, 2008

Paul Flum
Morrison Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

   Re: <u>RelayHealth</u>

Dear Paul:

  We have reviewed the NCPDP Data Dictionary you provided us with our experts and are not confident that the generic NCPDP field definitions give us sufficient information to accurately select RelayHealth fields for our analysis.  We propose instead that we be allowed to preview all of the subject fields (subject to elimination of patients' individually identifiable medical information) for a single NDC, i.e. 00071015523 (Lipitor 10 mg), for the 2001-2005 period.  Once we have had an opportunity to analyze this limited sample, we would then be in a position to identify each of the fields necessary to conduct our analysis of the correlation between the subject drugs and AWP.

  Please let us know your estimate of cost and when we can expect the data.

    Sincerely,

    HAGENS BERMAN SOBOL SHAPIRO LLP

    *[sent via electronic mail]*

    Barbara A. Mahoney
    Attorney

BAM:BM

ATTORNEYS AT LAW  SEATTLE  LOS ANGELES  BOSTON  PHOENIX  CHICAGO  SAN FRANCISCO
T 206.623.7292 F 206.623.0594
1301 FIFTH AVENUE   SUITE 2900   SEATTLE, WASHINGTON 98101
www.hbsslaw.com

001821-13 231821 V1

# Exhibit 5

## Barbara Mahoney

| | |
|---|---|
| **From:** | Flum, Paul [PaulFlum@mofo.com] |
| **Sent:** | Tuesday, April 08, 2008 5:25 PM |
| **To:** | Barbara Mahoney |
| **Subject:** | RelayHealth U&C Data |
| **Attachments:** | RelayHealth data sample - 1.XLS |

Barbara,

This is in response to your April 2 letter regarding RelayHealth data. Your letter asks that we produce a full data set that includes all fields for Lipitor 10 mg tabs for a five year period so that plaintiffs can "identify each of the fields necessary to conduct our analysis of the correlation between the subject drugs and AWP." That is not what we agreed to do.

The Court's January 2, 2008 scheduling order specifically limits discovery "to new issues raised by the Usual & Customary Class in the Third Amended Complaint." The "correlation between subject drugs and AWP" noted in your letter is not a new issue and goes well beyond the mutually agreed upon set of U&C pricing data that we agreed to produce (subject to certain conditions).

I wrote you on March 13 and identified the RelayHealth fields that will permit plaintiffs to analyze reported U&C prices on a transactional level. Your April 2 letter does not explain why those fields are inadequate or identify any additional RelayHealth data fields that plaintiffs need to analyze "new" issues raised by the U&C class.

We continue to believe that we've identified the U&C data that responds to plaintiffs' document request. I'm attaching a sample of that data. This data is being produced pursuant to the Court's protective order and is designated as "Highly Confidential Attorneys' Eyes Only."

This sample should permit your expert to confirm that these fields are sufficient to conduct a transactional analysis of reported U&C prices. Once you've done that, we can work through the remaining points noted in my March 13 email.

Paul

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

# Exhibit 6



BARBARA A. MAHONEY
BARBARAM@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

April 10, 2008

Paul Flum
Morrison Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

      Re:   <u>RelayHealth data</u>

Dear Paul:

     We are frankly astonished that you would consider "the correlation between the subject drugs and AWP" to be outside of the scope of discovery authorized by the Court "as to new issues raised by the Usual and Customary Class in the Third Amended Complaint." In your own brief opposing our motion to amend the complaint, you acknowledge that "[t]he lynchpin of plaintiffs' proposed new U&C claim[s] is the allegation that prices charged by retailers to cash-paying customers are tied to the reported AWPs . . . .'" We are entitled to all discovery that pertains to the correlation between AWP and U&C prices, including, any correlation between U&C prices and AWP-based third party reimbursement prices, as we argued in our opposition to your motion to dismiss the U&C claims, which the Court recently denied. Your sample does not provide any fields from which we can determine third party reimbursement amounts.

     Even aside from its failure to provide third party reimbursement amounts, your data sample is inadequate in the following respects:

        1.    Some records have a QUANTITY_DISPENSED value of 0 (*see, e.g.*, the 53rd row of data). The data sample does not provide any fields that would illuminate why this field is zero. A per-unit U&C cannot be determined for these records, and therefore these records cannot be compared to AWP.

        2.    Similarly, some records have a QUANTITY_DISPENSED value that is blank (*see, e.g.*, the 128th row of data). The data sample does not provide any fields that would illuminate why this field is blank. A per-

ATTORNEYS AT LAW          SEATTLE   LOS ANGELES  BOSTON  PHOENIX  CHICAGO  SAN FRANCISCO

T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE · SUITE 2900 · SEATTLE, WASHINGTON 98101
www.hbsslaw.com

001821-13 233091 V1

Paul Flum
April 10, 2008
Page 2

unit U&C cannot be determined for these records, and
therefore these records cannot be compared to AWP.

3.      For a given pharmacy ID for a given month, the per-
unit U&C price appears to vary by quantity size.  This
suggests there are other numeric fields that are involved in the
calculation of U&C, such as dispensing fees, administrative
fees or other adjustments.  The sample does not provide any
fields to determine whether there are any such adjustments for
any given transaction.

4.      The data sample does not provide any fields that
explain the basis, methodology or inputs that were used to
calculate the U&C amount.

5.      The data sample does not provide any fields that might
identify whether the U&C amount includes a discount, such
as from a senior discount card.

6.      The data sample does not provide any fields that could
be used to determine whether any other payer paid for a
portion of the transaction.

Our request for a limited sample of data that includes all the available fields (subject
to elimination of patients' individually identifiable medical information) is reasonable.
As stated in our April 2 letter, without being able to examine the database fields our
expert is unable to determine which fields are appropriate for our analysis.  We ask that
you reconsider your position or we will take it up with the Court.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP


*[sent via electronic mail]*

Barbara A. Mahoney
Attorney

001821-13 233091 V1

Paul Flum
April 10, 2008
Page 3


BAM:BM

# Exhibit 7

MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

April 15, 2008

*By Email*

Barbara Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Writer's Direct Contact
415.268.7335
PaulFlum@mofo.com

Re:     *New England Carpenters v. First DataBank*

Dear Barbara:

Your April 10 letter fundamentally misapprehends what RelayHealth does and what data it has.

RelayHealth is a data "switch," pure and simple. As a switch, RelayHealth receives electronic claims data for insured claims from pharmacies that subscribe to its service and routes that data electronically, transaction by transaction, to the PBM or other payor that covers each particular claim. RelayHealth forwards the information that the pharmacy reports exactly as submitted.

The typical insured claim submission includes a U&C price as reported by the pharmacy (so that the PBM or other payor can administer the U&C price cap in its network contract with the pharmacy). That U&C data is included in the sample we provided last week. RelayHealth does not survey pharmacies' cash prices, does not verify the U&C prices submitted with insured claims, and does not calculate the U&C prices transmitted through the switch. RelayHealth simply records and transmits what the pharmacy reports.

The specific data issues raised in your letter either represent inherent limitations in the data itself or relate to insured claim reimbursements that have nothing to do with the U&C prices that pharmacies report to RelayHealth.

For instance, with respect to points 1 and 2 in your letter, if the field for the quantity dispensed is 0 or blank, it's because that's what the pharmacy submitted to RelayHealth. Additional data fields will not "illuminate why this field is zero," as your letter erroneously speculates. In any event, only a small percentage of the transactions in the sample (under 4%) show a 0 or blank quantity. You have everything you need to calculate per unit U&C prices for the other 96%.

Likewise, if the U&C price per unit in the sample varies by quantity size (your points 3 and 4), it's because that's what the pharmacy reported to RelayHealth. There are no calculations

sf-2499550

MORRISON | FOERSTER

Barbara Mahoney
April 15, 2008
Page Two

of U&C prices by RelayHealth based on dispensing fees, administrative fees, or other adjustments, as your letter incorrectly states.

Finally, RelayHealth does not have any data about cash discount programs or potential third party sources of reimbursement for cash transactions at U&C prices (your points 5 and 6).

As I've told you several times, we believe that the fields that we've identified and included in the sample we provided last week are sufficient for you and your expert to calculate U&C prices, as reported to RelayHealth, at the transaction level. I've also given you a list of the NCPDP data fields, along with detailed definitions, that pharmacies use to submit insured claims through the RelayHealth switch. You have not identified any other NCPDP fields that you need to analyze the U&C prices reported to RelayHealth.

When plaintiffs moved last October for leave to amend to add the U&C class, they represented to the Court that "[o]nly limited discovery will be required and such discovery can be completed rapidly." (Memo i/s/o Motion to File 3d AC at 4.) Six months later, it appears that your insistence on obtaining access to the entire RelayHealth database is either a delaying tactic or an expensive and time-consuming fishing expedition that is expressly prohibited by the Court's January scheduling order. Either way, we stand on our objections.

We remain willing to produce the specific U&C-related fields identified in my March 13 email (and included in the sample I sent you last week), subject to the conditions we discussed during our initial meet and confer call. Once you let me know whether that's acceptable, we can work out the remaining details necessary to begin extracting the data.

Sincerely,

Paul Flum

# Exhibit 8

| **From:** | Schechter, Lori A. [LSchechter@mofo.com] |
|---|---|
| **Sent:** | Friday, May 23, 2008 3:06 PM |
| **To:** | Barbara Mahoney |
| **Cc:** | Steve Berman |
| **Subject:** | RE: schedule modification |

Barbara,
We would agree to a change in the schedule to complete briefing on the U&C class certification motion, but we think that a 3-month extension on plaintiffs' reply and a 6-month extension on the trial schedule are unwarranted.

We propose that you get 6 weeks to reply to our opposition on plaintiffs' class motion, until July 2. We will depose Dr. Hartman after his reply submission instead of June 17. We also propose that the deadline for McKesson's surreply be extended to August 6. Expert reports and discovery can be extended accordingly.

This way, class certification can all be completed by August. We propose that the Court set a hearing on the U&C class motion during the second half of August or September.

We see no need to change the rest of the U&C case schedule now.

Finally, concurrently with any adjustment to the U&C class cert schedule, we should ask the Court to set a schedule to complete remaining expert discovery and expert depositions for Classes 1 and 2.

We propose the following deadlines for expert discovery for Classes 1 and 2:

June 16 — plaintiffs' response to Dr. Kalt's liability report

June 16 — Dr. Hartman's revised damages report

August 15 — McKesson's response to Dr. Hartman's revised damages report

September 15 — Dr. Hartman's rebuttal damages report

October 17 — completion of expert depositions

---

**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** Thursday, May 22, 2008 10:15 AM
**To:** Schechter, Lori A.
**Cc:** Steve Berman
**Subject:** schedule modification

Lori,
We intend to file a motion with the Court to modify the U&C schedule because of delays in receiving IMS data and in obtaining your RelayHealth data. Please let us know by the close of day tomorrow whether you would agree to a change in schedule. This is what we propose:

| Deadlines | Prior: | Proposed: |
|---|---|---|
| Plaintiffs' Reply Br | June 9, 2008 | September 1, 2008 |
| Plaintiffs' Expert Report | June 11, 2008 | September 1,2008 |
| McKesson's Surreply | June 30, 2008 | October 1, 2008 |

| McKesson's Expert Reports | July 11, 2008 | October 1, 2008 |
| Plaintiffs' Expert Rebuttal | July 25, 2008 | October 31, 2008 |
| Class Certification Hearing | none | December 2008 |
| Summary Judgment Motions | September 8, 2008 | January 29, 2008 |
| SJ Oppositions | September 29, 2008 | February 13, 2008 |
| SJ Replies | October 13, 2008 | February 27, 2009 |
| SJ Surreplies | October 27, 2008 | March 13, 2009 |
| MSJ Hearing | November 18, 2008 | April 2009 |
| Trial | January 26, 2009 | June 2009 |

Barbara

=================================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

=================================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

=================================================================================

5/27/2008