UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

**DECLARATION OF RAYMOND S. HARTMAN IN SUPPORT OF PLAINTIFFS'
MOTION TO MODIFY THE U&C SCHEDULING ORDER**

I, Raymond S. Hartman, hereby declare that:

1.  I am the Director and President of Greylock McKinnon Associates (GMA), an economic consulting and litigation support firm located in Cambridge, Massachusetts. I have been retained by Plaintiffs to provide an assessment of liability and damages for the proposed U&C Class.

2.  As previously stated in my November 28, 2007 report, IMS is capable of disaggregating its retail payment data into separate groups of TPP, cash and Medicaid payments. Report of Raymond S. Hartman Regarding the Reliability of IMS Data for Calculating

001821-13 238656 V1

Aggregate Class Damages, ¶¶ 6, 22.  This separation of the data will allow for a more precise calculation of damages for the TPP, Consumer Co-pay and U&C Classes.  It is also my intention to use the disaggregated cash payor data from IMS to demonstrate class-wide impact on the U&C Class.  I have further intended to augment this analysis with an analysis of retailer claims data.

3.  These data are crucial for my analysis of class-wide impact and my calculation of damages for the U&C Class.  For example, in the context of the TPP and Consumer Co-pay Classes, McKesson's expert, Dr. Willig, raised concerns about the reliability of aggregated IMS data.  In its March 19 Order, the Court recognized these concerns but relied upon my analysis of actual claims data from GE and CIGNA (at p. 16 of the Court's Order) as well as the prospect that I would obtain disaggregated claims data from IMS (at p. 17 of the Court's Order).  To provide the same such analysis to the Court in this matter, it will be necessary to analyze both the pharmacy level claims data as well as the disaggregated IMS data.

4.  Beginning around the close of 2007 and until last week, when the agreement was finalized, GMA has been diligently attempting to purchase a special order of IMS data relating to retail purchases of brand name drugs by cash payers.  This special request of IMS includes several parameters that require special, customized programming and modeling at IMS.  Numerous conference calls with IMS were required to arrive at the final data and analysis specifications.  In several cases, IMS had to confer internally to determine if the request was possible and if the company was willing to provide it to GMA for this litigation.  Furthermore, legal approval by IMS counsel was required before the order could proceed.  Price quotes for the order came from yet another office at IMS.  Given the special nature of this request, the volume

001821-13 238656 V1

and cost of the data, and the number of different people and offices involved at IMS, a considerable amount of time was necessary to arrive at the final order specifications.

5.  Earlier this month IMS was able to provide us with a mock-up sample of the data fields, which my staff reviewed to ensure that I will have all the necessary fields for my analyses. Once we were satisfied that we had all the necessary fields, Plaintiffs' counsel finalized the agreement with IMS. We were informed that IMS will require a minimum of three weeks to process and produce the data to us. We do not expect to have the data until the first part of June.

6.  We have also experienced unexpected delays in receipt of retail claims data. I have asked Plaintiffs' counsel to obtain retail claims data directly from selected retailers. I understand that retailers have generally not agreed to provide these data and that Plaintiffs' counsel have been told that these claims data are available through McKesson's RelayHealth. I understand that McKesson has not provided what we requested. Our intent was to identify and select the RelayHealth fields necessary for my analysis. At our request, Plaintiffs' counsel asked McKesson to provide a sample of its RelayHealth data fields. Until last week, McKesson had refused to provide us the sample. And even now we have encountered difficulties with the file they sent, which has further delayed our selection of the fields necessary for our analysis. I also understand that McKesson has refused to provide data fields involving third party reimbursement amounts and that Plaintiffs' counsel have moved to compel McKesson's production. Even if McKesson is ordered to produce the data with the additional fields necessary for my analysis, it will take an unknown amount of time for the data to be provided to us. Additionally, I will still require data from selected retailers in order to assess the accuracy and reliability of the RelayHealth data.

7.  I anticipate that there will continue to be additional delays associated with transferring and accessing the RelayHealth data. For example, when McKesson provided the limited subset of data fields, there were difficulties with the hard drives McKesson sent to Plaintiffs, stemming from McKesson's policy of providing data using an encryption program. The first hard drive was not properly encrypted with our encryption key and had to be returned to McKesson. The second hard drive, unlike the first, was protected with McKesson's passphrase, which had not been provided to us and caused additional delay. We only received this passphrase on May 20th.

8.  Finally, we need time to analyze the data. Once we receive all of the necessary data, in a useable form, we will need six weeks to review and analyze them.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of May, 2008.

_____
RAYMOND S. HARTMAN

**CERTIFICATE OF SERVICE**

     I, Steve W. Berman, hereby certify that a true and correct copy of the above document was served on the attorney of record for each party via the Court's electronic filing system this 27th day of May, 2007.

                                                /s/ Steve W. Berman
                                                    Steve W. Berman