UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri Corporation; and McKESSON CORPORATION, a Delaware Corporation,<br><br>　　　　　　Defendants | Civil Action No. 1:05-CV-11148-PBS |

## AMENDED AND RESTATED SETTLEMENT AGREEMENT AND RELEASE

　　　　This Settlement Agreement and Release (this "Agreement") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Settlement Court, this Agreement is entered into between and among (1) the Class Representatives on behalf of themselves and the Private Payor Class (the "Plaintiffs") and (2) Defendant First DataBank, Inc. ("First DataBank" or "FDB"), by and through their respective counsel.

　　　　WHEREAS, there is pending in the United States District Court for the District of Massachusetts a civil proceeding (the "Class Action") in which the Plaintiffs have alleged, *inter alia*, that Defendants, including

AMENDED AND RESTATED SETTLEMENT AGREEMENT

First DataBank, wrongfully increased the so-called WAC to AWP markup factor applied to numerous prescription pharmaceuticals through a scheme begun in late 2001 and 2002, thereby causing members of the proposed Private Payor Class, whose payments for pharmaceuticals are tied to the published AWP, to make substantial excess payments for those pharmaceuticals.

WHEREAS, First DataBank, a publisher of information that is not now, nor ever was, a manufacturer, supplier, wholesaler, distributor, or seller of prescription pharmaceuticals, asserts a number of legal and factual defenses to the claims by the Plaintiffs and denies any wrongdoing or liability whatsoever;

WHEREAS, Class Settlement Counsel have concluded, after discovery and investigation of the facts and after carefully considering the circumstances of the Class Action, including the claims asserted in the complaint filed in the Class Action and the possible legal and factual defenses thereto, that it would be in the best interests of the Plaintiffs to enter into this Agreement, which interests include the substantial prospective value to be derived by this Settlement and the interest in avoiding the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Plaintiffs; and, further, that Class Settlement Counsel consider the settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Plaintiffs and of the proposed Private Payor Class;

AMENDED AND RESTATED SETTLEMENT AGREEMENT

WHEREAS, the proposed Private Payor Class is comprised of (1) third-party payors, including, but not limited to, self-insured employers, health and welfare plans, private health insurers (including private plans that cover government employees and/or retirees by reason of their current or past governmental employment), and (2) individual consumers ("Consumers"), in the United States, who paid for all or part of the purchase price of certain prescription pharmaceuticals based in whole or in part upon the Average Wholesale Price ("AWP"), Blue Book AWP ("BBAWP") or similar data published or disseminated by First DataBank electronically or otherwise, during the Class Period.

WHEREAS, First DataBank, through their counsel, after vigorous, arms-length negotiations, have conditionally agreed (i) to pay certain sums in settlement for the benefit of the Class, and (ii) to adjust the WAC to AWP mark up on certain pharmaceuticals, all as provided in this Agreement, as amended;

WHEREAS, First DataBank, despite its belief that it has valid and complete defenses to the claims asserted against them in the Class Action, have nevertheless agreed to enter into this Agreement to reduce and avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to resolve this controversy;

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of First DataBank and the Plaintiffs that any and all claims

3

AMENDED AND RESTATED SETTLEMENT AGREEMENT

made or that could have been made against First DataBank by Plaintiffs in the Class Action be settled, compromised and dismissed on the merits and with prejudice and, except as hereafter provided, without costs as to Plaintiffs or First DataBank, subject to the approval of the Settlement Court, on the following terms and conditions:

1.    <u>Private Payor Class Definition</u>.  Subject to the Settlement Court's approval, and the conditions of Paragraph 15, the undersigned agree and consent to the certification pursuant to Fed. R. Civ. P. 23(b)(1) 23(b)(2) and 23(b)(3) of the following settlement class (the "Private Payor Class") in the Class Action:

> All individual persons or entities who, during the Class Period, made purchases and/or paid, whether directly, indirectly, or by reimbursement, for all or part of the purchase price of prescription pharmaceuticals, including, but not limited to, those pharmaceuticals listed in Appendix A to Plaintiffs' Third Amended Complaint (Docket Entry #360), where any or all of the purchase price, reimbursement or payment amount was based in any part on the Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, in whole or part, was based on a FDB wholesale survey, and includes but is not limited to any classes certified in the action entitled *New England Carpenters Health Benefits Fund et al. v. First Databank, Inc., et al.*, Civil Action No. 1:05-CV-11148 (D.Mass.).  Excluded from the class are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments; the States of the United States and their respective officers, agents, agencies and departments; and all

AMENDED AND RESTATED SETTLEMENT AGREEMENT

other local governments and their officers, agents, agencies and departments.

This is to clarify further that those entities that own or operate businesses referred to commonly as pharmacy benefit managers ("PBMs") and who as part of their business operation contract with ultimate Third Party Payors of a prescription pharmaceutical benefit to perform certain services in the administration and management of that prescription pharmaceutical benefit for those ultimate Third-Party Payors are not class members under the Private Payor Class definition of this settlement. The class includes the ultimate Third Party Payors providing the prescription pharmaceutical benefit and not the PBMs with which those Third Party Payors contract with to administer or manage that prescription benefit on behalf of the class members, unless such PBMs are the fiduciary of the Third Party Payors or by contract assumed, in whole or in part, the insurance risk of that prescription pharmaceutical benefit during the Class Period.

2.      General Definitions.  As used in this Agreement, the following terms shall have the indicated meanings:

"Class Period" means January 1, 2000 through the date the the Settlement Court enters a Final Order and Judgment pertaining to FDB in the Class Action.

"Consumer" means any person falling within the definition of the Private Payor Class who is a natural person or other legal entity and not a TPP. "Consumer" includes living persons as well as the executors, heirs, administrators, trustees, or other authorized representatives of deceased persons.

5

AMENDED AND RESTATED SETTLEMENT AGREEMENT

"Consumer Class Members" means Consumers who are not Class Opt-Outs.

"Court" or "Settlement Court" means the Honorable Patti B. Saris of the United States District Court for the District of Massachusetts, or if Judge Saris is not available, another judge from the United States District Court for the District of Massachusetts who will be designated by Judge Saris or who is appointed, or any subsequent court before which First DataBank's Counsel and Class Settlement Counsel agree to settle the claims of the Private Payor Class.

"Class Member" means any person or entity falling within the definition of the Private Payor Class set forth in Paragraph 1 other than any Class Opt-Outs.

"Class Settlement Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Spector Roseman & Kodroff, Wexler Toriseva Wallace LLP, and Edelson & Associates, LLC.

"Class Opt-Out" means any person or entity falling within the definition of the Private Payor Class set forth in Paragraph 1 who timely and validly submits a request for exclusion from the Private Payor Class in accordance with the procedures set forth in the Settlement Notice. A Class Opt-Out that is a Consumer is also referred to as a

AMENDED AND RESTATED SETTLEMENT AGREEMENT

"Consumer Opt-Out." A Class Opt-Out that is a TPP is also referred to as a "TPP Opt-Out."

"Class Representatives" means the named plaintiffs who have asserted claims on behalf of themselves and a putative class in the Class Action.

"FDB Data Room" means a facility or web-based site, maintained by First Databank at its own expense for a period of three (3) years from the Effective Date, for the purpose of facilitating reasonable access to discoverable material from FDB. "Discoverable Material" as used herein means any and all material created during the period January 1, 2000 to the date of the entry of the Final Order and Judgment, located pursuant to a reasonable search, which falls into any of the following categories:

(a)     all non-privileged materials previously produced by First DataBank as a party or non-party in other litigation or civil proceedings which relate to the price reporting and/or price data acquisition activities of FDB;

(b)     all transcripts of testimony of employees taken, and affidavits of employees filed, in any civil proceedings pertaining to the price reporting and/or price data acquisition activities of FDB;

(c)     all non-privileged documents or other materials evidencing all communications between FDB and any other persons (e.g., third party payors, pharmacy chains, independent pharmacies, pharmacy benefit managers, pharmaceutical price reporting entities, government entities) concerning the price reporting and/or price data acquisition activities of FDB.

AMENDED AND RESTATED SETTLEMENT AGREEMENT

    (d)    All non-privileged documents or other materials evidencing pharmaceutical price lists, price catalogues, and/or other price data acquisition efforts and materials.

First DataBank shall continue to supplement the FDB Data Room with relevant non-privileged material located up to the date of the Final Order and Judgment as provided herein.  As used herein the term "non-privileged materials" means all responsive materials not protected from disclosure by the attorney-client privilege, work-product immunity, trade secret or other confidentiality obligations, First Amendment, or other applicable privileges or immunities.  In the event of the assertion of a privilege or immunity, First DataBank shall maintain in its possession and make part of the material provided in the FDB Data Room a privilege log containing that information required by law to demonstrate the existence of any  privilege or immunity being asserted with respect to any documents created during the period from January 1, 2000 through December 31, 2003.

"FDB wholesale survey" means any actions taken by FDB, its employees or agents, to obtain from one or more drug wholesalers information relating to its catalogue or list pricing information for, or mark-up applied to, a manufacturer's line of products or a specific product by any means, either written or oral.

"First DataBank" means First DataBank, Inc.

AMENDED AND RESTATED SETTLEMENT AGREEMENT

"First DataBank's Counsel" means the Office of General Counsel, The Hearst Corporation.

"Effective Date" has the meaning ascribed in Paragraph 7 of this Agreement.

"Pharmaceutical Purchase" means payment or reimbursement, direct or indirect, for all or part of the cost of a pharmaceutical, including, but not limited to, those pharmaceuticals listed as part of Plaintiffs' Third Amended Complaint, prescribed, provided or administered in the United States; including, but not limited to, the AWP-based payment or partial payment for or reimbursement of the price or part of the price of a pharmaceutical to any doctor, medical practice, hospital, pharmacy or any other health care provider, or the payment of any AWP-based co-insurance, deductible or other amount that, in whole or in part, is based on or affected by the AWP or BBAWP for such pharmaceuticals pursuant to an insurance agreement or other health care plan  As stated, the term "Pharmaceutical Purchases" is limited to transactions where the cost, payment, reimbursement amount or price of the pharmaceutical was based, in whole or in part, on the Average Wholesale Price, the Blue Book AWP,  or similar data published or disseminated by First DataBank, Inc, electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc.,

AMENDED AND RESTATED SETTLEMENT AGREEMENT

electronically or otherwise, in whole or part, was based on a FDB wholesale survey.

"Plaintiffs" means the Class Representatives together with all putative members of the Private Payor Class.

"Publishing Competitor" means an entity that is not a subsidiary or affiliate of First DataBank that is engaged in the business of publishing or disseminating electronic integrateable drug information databases and has more than $5 million in annual revenue.

"Releasees" or "Released Entities" means First DataBank, Inc., its parent, subsidiaries, and affiliates and their (including First DataBank Inc.'s) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors, successors and assigns; provided, however, that Medispan, a division of Wolters Kluwer Health, Inc., its parent, subsidiaries, and affiliates and their (including Medispan's) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors and assigns (collectively referred to herein as "Medispan") are excluded from the term Releasees and Released Entities, except for (1) the period when Medispan was owned by First DataBank, and (2) the period from December 19, 2001 to and including October 2, 2004, when First DataBank was required to divest the Medispan business and provide related editorial and consulting services to Medispan, which during these

AMENDED AND RESTATED SETTLEMENT AGREEMENT

periods (1) and (2) above, Medispan is included in the term Releasees and Released Entities.

"Released Claims" means any and all known or unknown claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Releasor who has not timely excluded themselves from the Private Payor Class, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to the collection, calculation, formulas, mark-up, determination, dissemination, publication of, and representations concerning, the AWP or BBAWP or similar data published or disseminated by First DataBank, Inc. electronically or otherwise for any prescription pharmaceuticals, including but not limited to, the allegations contained in the action entitled *New England Carpenters Health Benefits Fund et al. v. First Databank, Inc., et al.*, Civil Action No. 1:05-CV-11148 (D.Mass.).

"Releasors" means any and all Class Members, as well as their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers,

AMENDED AND RESTATED SETTLEMENT AGREEMENT

agents, attorneys and any of their legal representatives, any future operating entities created and controlled by a Class Member (not including any successor of an Opt-Out), and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such, and any entities or persons on whose behalf the Class Member is authorized to act. All Released Claims are forever discharged, and such claims cannot be asserted by any of Releasors' future, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective future stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, or any successors, heirs, executors, trustees, administrators, or assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor

        "Settlement Notice" means that in the event the Settlement Court preliminarily approves the settlement set forth in this Agreement and the Settlement Court directs that additional notice be provided to the Private Payor Class, Class Settlement Counsel shall seek the Settlement Court's approval of a joint notice program in connection with a proposed settlement with MediSpan. In addition, in the event the currently pending Rule 23(f) petition by McKesson Corporation is denied, the parties shall seek an order permitting the FDB/MediSpan joint notice to be sent with the notice of pendency sent with respect to the claims

AMENDED AND RESTATED SETTLEMENT AGREEMENT

against McKesson Corporation.  The notice plan and forms of the Notice
of Pendency and Proposed Settlement of Class Action, and Settlement
Hearing shall be submitted to the Court for approval following the
determination of the currently pending Rule 23(f) petition filed by
McKesson Corporation.

    "States of the United States" refers to the fifty States of the
United States, the District of Columbia, and the territories, possessions,
and commonwealths of the United States.

    "Third-Party Payor" or "TPP" means any person or entity that
paid or was at risk by contract to pay all or part of the cost of
Pharmaceutical Purchases for individual or group beneficiaries of the
TPP's prescription drug or health coverage including, but not limited to,
self-insured employers, health and welfare plans, private health insurers.
Excluded are Defendants, their respective present and former, direct and
indirect, parents, subsidiaries, divisions, partners and affiliates; the
United States government, its officers, agents, agencies and departments,
the States of the United States and their respective officers, agents,
agencies and departments; and all other local governments and their
officers, agents, agencies and departments.

AMENDED AND RESTATED SETTLEMENT AGREEMENT

"TPP Class Members" means any person or entity falling within the definition of the Private Payor Class, excluding any Class Opt-Outs, who also fall within the definition of Third-Party Payor.

"United States" means the United States of America including the fifty States of the United States, the District of Columbia, and the territories, possessions, and commonwealths of the United States.

"WAC to AWP Markup" means the number applied by FDB to the Wholesale Acquisition Cost ("WAC"), or if the WAC is not available then to the direct price ("DIR") of a pharmaceutical as reported by the manufacturer, in order to determine the AWP or BBAWP to be used in First DataBank's publications.

3.    <u>Reasonable Best Efforts to Effectuate This Settlement</u>. Consistent with the terms of this Agreement and notwithstanding the rights of the parties to terminate this Agreement at certain times, the parties and their counsel agree to use their reasonable best efforts, including all steps and efforts contemplated by this Agreement and any other reasonable steps and efforts that may be necessary or appropriate, by order of the Settlement Court or otherwise, to carry out the terms of this Agreement.

AMENDED AND RESTATED SETTLEMENT AGREEMENT

4.    <u>Motion for Preliminary Approval</u>.  Concurrent with or shortly following the submission of this Agreement for consideration by the Settlement Court, Class Settlement Counsel shall submit to the Settlement Court a motion for preliminary approval of the settlement set forth in this Agreement, as amended, requesting entry of a Preliminary Approval Order substantially in the form annexed hereto as <u>Exhibit A</u>.

5.    <u>Notice to Class</u>.  In the event the Settlement Court preliminarily approves the settlement set forth in this Agreement, Class Settlement Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order,  by mail, provide all those members of the Private Payor Class who can be identified by reasonable means with a copy of the detailed Settlement Notice.  Notice to members of the Private Payor Class shall also be given by publication in national print media of the Summary Notice, or as otherwise ordered by the Settlement Court, and by publication on the web site established by Class Settlement Counsel or the Notice Agent.  In addition, all members of the nationwide Private Payor Class shall be directed to review a copy of the detailed Settlement Notice which will be published on the web site and will be mailed to any nationwide Private Payor Class Member upon request.  All costs of Settlement Notice as well as the retention of a notice consultant to effectuate notice, shall be paid exclusively by First DataBank as further provided in this Agreement in

AMENDED AND RESTATED SETTLEMENT AGREEMENT

Paragraph 12.  In the event the Settlement Court preliminarily approves

the settlement set forth in this Agreement and the Settlement Court

directs that additional notice be provided to the Private Payor Class,

Class Settlement Counsel shall seek the Settlement Court's approval of a

joint notice program in connection with a proposed settlement with

MediSpan.  In addition the parties shall seek an order permitting  the

FDB/MediSpan joint notice to be sent with the notice of pendency sent

with respect to the claims against McKesson Corporation.

6.    Entry of Final Judgment.  If, after the settlement fairness

hearing scheduled by the Settlement Court in the Preliminary Approval

and Settlement Class Order, the Settlement Court preliminarily approves

this Agreement, then counsel for the parties shall request that the

Settlement Court enter an Order and Final Judgment substantially in the

form annexed hereto as Exhibit B.

7.    Effective Date of Settlement.  The settlement detailed in this

Class Agreement shall be effective on the first date after all of the

following events have occurred: (1) entry of the Preliminary Approval and

Settlement Class Order substantially in the form annexed hereto as

Exhibit A, or entry of a Preliminary Approval and Settlement Class Order

not substantially in the form annexed hereto with respect to which

neither First DataBank nor Class Settlement Counsel invoke their

termination rights within the period prescribed in Paragraph 8 below; (2)

16

AMENDED AND RESTATED SETTLEMENT AGREEMENT

final approval by the Settlement Court of this Agreement, following notice to the Private Payor Class and a fairness hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (3) entry by the Settlement Court of an Order and Final Judgment, substantially in the form set forth in Exhibit B annexed hereto; and, (4) the expiration of any time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Settlement Court enters an order and final judgment in a form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Class Agreement as permitted by Paragraph 8, the date that such Alternative Judgment becomes final and no longer subject to appeal or review; and 4) this Agreement is no longer subject to termination by any party as provided for in Paragraph 8.

8.    Termination

(A)  REJECTION OR MATERIAL ALTERATION OF SETTLMENT TERMS.  First DataBank and Class Settlement Counsel shall each have the right to terminate this Agreement by providing written notice of their election to do so ("Termination Notice") to each other within thirty (30) days of (1) the Settlement Court declining to enter the Preliminary Approval and Settlement Class Order substantially in the form annexed

17

AMENDED AND RESTATED SETTLEMENT AGREEMENT

hereto as Exhibit A within five (5) days of the date on which the preliminary approval hearing is held or the Settlement Court's placing additional conditions on obtaining preliminary approval of this Agreement at such hearing; (2) the Settlement Court declining to enter the Order and Final Judgment substantially in the form annexed hereto as Exhibit B; (3) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (4) the date upon which an Alternative Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.

(B)  TPP OPT OUTS.  If First DataBank, in its sole discretion, determines that the number or identity of the TPP Class Members who request exclusion from the class is unsatisfactory, First DataBank shall be entitled to terminate this Agreement.  The parameters under which First DataBank likely would exercise its discretion under this paragraph has been set forth in a Supplemental Agreement dated August 3, 2006 between the parties and filed under seal with the Settlement Court.

(C)  STATE ATTORNEYS GENERAL:  During the period between the filing of a proposed Order for Preliminary Approval and ten (10) days before the date set by the Court for a hearing on final approval of the settlement embodied by this Agreement , as amended (the "Fairness Hearing"), First DataBank, receives service of process, and/or learns of a

AMENDED AND RESTATED SETTLEMENT AGREEMENT

current interest in the prosecution or filing of claims, based upon the allegations contained in the Class Action complaint or substantially in the form of the claims raised in the Class Action, from or by the U.S. Department of Justice and/or a State Attorney General, then First Databank shall have a right to terminate this Agreement. If First DataBank elects to exercise the option to terminate as set forth in this paragraph, written notice of such election must be provided to Class Settlement Counsel so as to be received no later than 5:00 pm eastern time on the tenth (10th) day prior to the date for the scheduled Fairness Hearing. For purposes of the Settlement, the term State refers to the States of the United States.

(D) RETURN TO PRE-AGREEMENT STATUS. In the event any of the parties exercise the right of termination enumerated in this paragraph, the stipulation concerning the certification of the Private Payor Class as defined in Paragraph 1 shall be null and void, the rights and obligations of the parties shall be identical to those prior to the execution of this Agreement and the status of the Class Action shall be as it was prior to the execution of this Agreement. In the event either party exercises any right of termination, First DataBank will have a reasonable opportunity to conduct non-repetitive discovery and to raise and have heard any dispositive motions with respect to the claims against it. However, FDB, if it exercises a right of termination, will make

AMENDED AND RESTATED SETTLEMENT AGREEMENT

every reasonable effort to adhere to the case schedule set by the Court in the Class Action.

9.    <u>Settlement Consideration</u>.  Subject to the provisions hereof, and in full, complete and final settlement of all Released Claims as provided herein, First DataBank agrees to the following:

(A)  <u>ADJUSTMENT OF THE WAC TO AWP MARKUP</u>.  On a date which is no later than ninety (90) days after the entry by the Settlement Court of the Final Order and Judgment in substantially the form attached hereto as Exhibit B, First DataBank shall adjust, i.e., change, the WAC to AWP Markup it utilizes for any prescription pharmaceutical that is listed in Appendix A to Plaintiffs' Third Amended Complaint (Docket Entry #360) and has a mark up factor basis from WAC to AWP in excess of 1.20, to 1.20.  After the date the adjustment to the WAC to AWP Mark-up referred to in the preceding sentence is implemented, First DataBank will not increase the WAC to AWP Markup of any of the pharmaceutical NDC numbers listed in Appendix A to Plaintiffs' Third Amended Complaint (Docket Entry #360) above 1.20 unless a different methodology for determining WAC, AWP or mark ups is adopted.  The effect of this amendment is that the settlement's provision changing the WAC to AWP Mark-up apply to the drugs listed in Appendix A to the Third Amended Complaint that utilize a WAC to AWP Mark-up.  Nothing

AMENDED AND RESTATED SETTLEMENT AGREEMENT

herein shall restrict FDB's editorial discretion to discontinue publishing WAC, AWP, BBAWP, or any other pricing information.

    (B).   <u>ACCESS TO INFORMATION</u>

       (1) <u>FDB DATA ROOM</u>:  First DataBank shall establish and maintain for a period of three (3) years from the Effective Date, at its expense, an FDB Data Room and provide reasonable access to the FDB Data Room and its contents to all members of the Private Payor Class and Class Settlement Counsel in connection with any claim or potential claim brought or contemplated against other defendants in litigation involving pharmaceutical pricing and reimbursement, including, but not limited to, all plaintiffs with cases currently pending in *In Re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL 1456. Nothing herein shall constitute a representation by Class Settlement Counsel as to the scope, completeness, accuracy or integrity of the information provided by First DataBank to the FDB Data Room.  The scope, completeness, accuracy or integrity of the information is solely the responsibility of First DataBank.  The establishment and maintenance of the FDB Data Room does not constitute a waiver on the part of First DataBank of any attorney-client, work product, trade secret, or other confidentiality obligations, First Amendment, and/or other applicable privileges or immunities to discovery.  In the event of the assertion of a privilege or immunity,  First DataBank shall maintain in its possession and provide as part of the information maintained in the FDB Data Room

AMENDED AND RESTATED SETTLEMENT AGREEMENT

a privilege log containing that information required by law to demonstrate the existence of any privilege or immunity being asserted with respect to any documents created during the period from January 1, 2001 through December 31, 2003. Any dispute arising with respect to a claim of privilege or immunity shall be brought to the attention of and resolved by the court before which the action is pending in which the requested discovery is sought after the parties meet and confer in an attempt to resolve the dispute(s) in accordance with Local Rules. First DataBank shall cooperate with Class Settlement Counsel to establish that the documents produced by First DataBank in the Class Action as well as the documents and information included in the FDB Data Room, are authentic and business records maintained in the ordinary course of business.

In its sole discretion, First Databank may provide others with access to the FDB Data Room as well. As a condition to obtaining access to the FDB Data Room, First DataBank may require that one seeking access enter into reasonable confidentiality agreement and/or agree to be bound by any applicable protective orders.

As set forth in the proposed Final Order and Judgment, attached hereto as Exhibit B, no member of the Private Payor Class shall be permitted to serve FDB, its parents, subsidiaries, affiliates, directors, officers, or employees (past or present) in any action with any discovery

AMENDED AND RESTATED SETTLEMENT AGREEMENT

requests, requests to admit, or subpoenas seeking materials or deposition or trial testimony in connection with any claim or potential claims brought against other defendants in connection with litigation involving pharmaceutical pricing and reimbursements without (1) reviewing the materials placed in the FDB Data Room, and then (2) demonstrating by motion before the court before which the action is pending in which the requested discovery is sought that the requested discovery, testimony, or requests to admit are substantially non-repetitive and which they in good faith believe cannot be substantially obtained from the materials located in the FDB Data Room.

(2) <u>EMPLOYEE INTERVIEWS:</u>  In connection with litigation captioned *In Re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL 1456 ("AWP MDL"), FDB will cooperate with and facilitate the interview of certain FDB employees involved in the drug price reporting and price data acquisition activities of FDB.  FDB will use its reasonable best efforts to identify to Settlement Class Counsel the FDB employees, present and former, who have had such involvement.  The interviews shall be conducted by Class Settlement Counsel, or their designees, and may, at the election of Class Settlement Counsel, be given under oath and otherwise conducted in accordance with Fed.R.Civ.P. 30(c).  The individuals to be interviewed shall be those who Class Settlement Counsel reasonably, and in good faith, determine can provide non-repetitive factual information concerning the drug price reporting

AMENDED AND RESTATED SETTLEMENT AGREEMENT

and price data acquisition activities of FDB.  If transcripts are made, said transcripts shall be placed in the FDB Data Room and made available to all Class Members in accordance with Paragraph 9(B)(1).

(3)  <u>EMPLOYEE TRIAL TESTIMONY</u>:  First DataBank shall make reasonable efforts to make its employees and officers with relevant knowledge available for trial testimony in connection with (1) any trial of claims against the remaining defendant or defendants in the Class Action, (2) any trial in the AWP MDL, and (3) any trial of claims similar to those brought by Plaintiffs in the AWP MDL, brought by State Attorneys General.  First DataBank shall take reasonable steps to facilitate the service on such employees of subpoenas issued at the request of counsel compelling their attendance at trial as set forth above.  First DataBank shall also request that their former employees attend and testify at any such trial.

(C)  <u>SETTLEMENT FUND FOR BENEFIT OF CLASS.</u>

(1)  Within thirty (30) days following the Effective Date, FDB shall pay $1.0 million (the "Settlement Fund") to be deposited in an escrow account to be held by Class Counsel for the benefit of the Settlement Class ("Class Escrow Account").  Payment of the Settlement Fund into the Class Escrow Account by FDB shall completely fulfill its obligations under this Agreement to the Settlement Class.

24

AMENDED AND RESTATED SETTLEMENT AGREEMENT

(2)  The Settlement Fund in the Class Escrow Account shall be held in an interest-bearing account that shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.  Class Counsel, on behalf of the Class, shall be responsible for all administrative, accounting and tax compliance activities in connection with the Class Escrow Account and the Settlement Fund deposited into the Class Escrow Account, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-1.  FDB shall provide to Class Counsel a W-9 or other documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Class Escrow Account pursuant to Treas. Reg. § 1.468B-1.

(3)  The manner and method of allocating the Settlement Fund among the Settlement Class shall be determined with the approval of the Court at or about the time the above referenced litigation against McKesson Corporation is concluded.  However, subject to the Court's agreement, the parties believe that it would be reasonable and fair to the Class if any resulting allocation formula were to give priority to identifiable Consumer Class Members who incurred damage during the class period due to the allegedly inflated AWP markup for those pharmaceuticals identified in Appendix A to Plaintiffs' Third Amended Complaint and who would not have received a direct economic benefit from the adjustment of the WAC to AWP Markup at any time during the

25

AMENDED AND RESTATED SETTLEMENT AGREEMENT

period from the implementation of the adjustment of the WAC to AWP

Markup under this Agreement to the Effective Date of this Agreement.

(4) Nothing herein precludes the Settlement Court from

approving an allocation of the Settlement Funds in conjunction with any

other distributions to be made to the Settlement Class.

(5) All taxes on income or interest generated by the

Settlement Funds shall be the responsibility of the Settlement Funds.

Any costs relating to the distribution of the Settlement Funds to the

Settlement Class shall not be the responsibility of FDB.

10.    Attorneys' Expenses and Fees and Fee Disputes.  The

parties agree that an award of attorneys' fees in this action is a matter

committed to the sole discretion of the Settlement Court.  Settlement

Class Counsel shall, within twenty (20) days after the filing for

preliminary approval, submit an application for attorneys' fees and

expenses to the Settlement Court in an amount that shall not exceed (1)

$625,000.00 in fees, (2) $125,000 for the maintenance of the FDB Data

Room for a period of three (3) years from the Effective Date, and (3)

$200,000.00 in expenses exclusive of amounts expended by FDB

pursuant to Paragraph 12 below.  The Settlement Court shall determine

the appropriate amount of any attorneys fees and expenses to be paid to

Settlement Class Counsel.  Such fees and expenses approved by the

Settlement Court shall be paid exclusively by First DataBank up to the

26

AMENDED AND RESTATED SETTLEMENT AGREEMENT

amounts indicated above, exclusive of amounts expended by First

DataBank pursuant to Paragraph 12 below, within twenty (20) days after

the Effective Date.  Upon payment of the attorneys' fees and expenses as

awarded by the Settlement Court, Settlement Class Counsel shall release

and forever discharge any claims, demands, actions, suits, causes of

action, or other liabilities relating to any attorneys' fees or expenses

incurred in the Class Action.  Notwithstanding the above and subject to

approval by the Settlement Court, FDB further agrees to pay the

following additional third-party expenses:  (1) up to $160,000.00 in

expert fees incurred to date by Class Counsel in connection with the

overall negotiation of this Agreement and the motion practice that has

occurred in connection with it to date, and (2) any future third-party

expenses incurred only in connection with the hearings and

implementation of this Agreement, as amended, and provided that FDB

agrees in advance that such expenses are necessary and reasonable.

FDB shall not be responsible for any other fees or expenses.  No attorney

fees, other than those previously part of the Agreement, shall be paid by

FDB, nor sought by Class Counsel.  FDB shall pay the expenses referred

to above within twenty (20) days after the Effective Date, provided the

Settlement Court has approved the third-party expenses.  The parties

also agree that, subject to Court approval, FDB will enter into with Class

Counsel or with a designated consultant to Class Counsel, one standard

licensing agreement for access to FDB's NDDF database for the period of

AMENDED AND RESTATED SETTLEMENT AGREEMENT

three (3) years for compliance review purposes, subject to the following conditions: (i) both Class Counsel and the designated consultant, if any, will execute and be bound by the terms of FDB's standard licensing agreements used in connection with the subject database, (ii) only one license for access to the subject database will be provided, and (iii) Class Counsel and/or the designated consultant, if any, will be responsible for any and all hardware, software, system construction and maintenance, technical support and any and all costs associated with the above necessary to access and use the subject database, FDB is only providing a licensing agreement and is not responsible for any other costs or support.

11.    <u>All Claims Satisfied</u>.  Each Private Payor Class Member shall look solely to the relief described in Paragraph 9 of this Agreement for settlement and satisfaction, as provided herein, of all Released Claims.

12.    <u>Payment of Expenses Related to Notice and Administration</u>. First DataBank shall be liable for all expenses associated with the provision of notice to the members of the Private Payor Class and all costs associated with the administration of the settlement embodied by this Agreement, including the fee for professional services rendered by Kinsella/Novak Communications, Ltd., 2120 L Street NW, Suite 205, Washington, DC or, if not reasonably available, another firm agreed to by FDB and Class Counsel (the "Class Notice Consultant").  In addition to

AMENDED AND RESTATED SETTLEMENT AGREEMENT

direct mail notice to TPPs, notice to Class Members shall also be accomplished by a program of notice publication designed to achieve a reasonable reach and frequency commensurate with the reach and frequency sought in other pharmaceutical pricing litigation notice programs, as reasonably determined by the Class Notice Consultant. Notwithstanding the foregoing, in the event that a joint notice program is approved by the Settlement Court in connection with notice to the litigation class in the above captioned litigation with McKesson, First DataBank shall be responsible for only 50% of expenses associated with the provision of notice.

13. <u>Releases</u>. Upon the Effective Date of this Class Agreement the Released Entities shall be released and forever discharged from any Released Claims that any Releasor who has not timely excluded themselves from the Private Payor Class. All Releasors covenant and agree that they shall not hereafter seek to establish liability against any Released Entity based, in whole or in part, on any of the Released Claims, and that upon the Effective Date, all Releasors will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against any Released Entity with respect to the Released Claims.

In addition, each Class Member hereby expressly waives and releases, upon this Agreement becoming effective, any and all provisions,

29

AMENDED AND RESTATED SETTLEMENT AGREEMENT

rights and benefits conferred by § 1542 of the California Civil Code,

which reads:

> Section 1542. <u>General Release; extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of

common law, which is similar, comparable or equivalent to § 1542 of the

California Civil Code. Each Class Member may hereafter discover facts

other than or different from those which he, she or it knows or believes to

be true with respect to the claims which are the subject matter of this

Agreement, but each Class Member hereby expressly waives and fully,

finally and forever settles and releases, upon this Agreement becoming

effective, any known or unknown, suspected or unsuspected, contingent

or non-contingent Released Claims with respect to the subject matter of

this Agreement whether or not concealed or hidden, without regard to

the subsequent discovery or existence of such different or additional

facts. Each Class Member also hereby expressly waives and fully, finally

and forever settles and releases any and all Released Claims it may have

against Released Entities under § 17200, *et seq.*, of the California

Business and Professions Code, which claims are expressly incorporated

into this Paragraph. Further, Releasors hereby agree to reduce any

judgment they might recover against any entity other than a Released

AMENDED AND RESTATED SETTLEMENT AGREEMENT

Entity by release and discharge in an amount, fraction, portion, or percentage necessary under applicable state or federal law to bar, eliminate, or satisfy claims against the Released Entities for contribution and/or indemnity to the fullest extent permitted by applicable state or federal law arising from any Released Claims, including any amount re-allocated by applicable state or federal statute or common law to Released Entities resulting from uncollectibility and/or insolvency of other persons or entities determined to be at fault. In addition, Releasors agree to indemnify the Released Entities herein and save and hold them harmless from any claims, demands, causes of action, subrogation claims, liens, and claims for contribution or indemnity, made by others so adjudged jointly liable or severally liable with the Released Entities arising from any of the Released Claims, whether such is alleged to arise by reason of judgment, settlement, reallocation of fault in the event of insolvency or uncollectibility of any award, or otherwise. A Releasor may satisfy such indemnity obligation by reducing any judgment recovered by such Releasor against a party other than a Released Entity by the amount, percentage, or share of such judgment necessary, under applicable law, to relieve the Released Entities of liability for contribution and/or indemnity. Releasors shall execute any additional documentation that may be required under applicable state or federal law in order to give effect to this provision.

AMENDED AND RESTATED SETTLEMENT AGREEMENT

14.    <u>Preservation of Rights</u>.  The parties hereto agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by First DataBank or of the truth of any of the claims or allegations contained in the complaint in the Class Action; and evidence thereof shall not be discoverable or used directly or indirectly by the Private Payor Class or any third party, in any way (except that the provisions of this Agreement may be used by the parties to enforce its terms), whether in the Class Action or in any other action or proceeding.  This Agreement and all of the terms herein constitute compromises and offers to compromise covered by Federal Rule of Evidence 408.  In the event that this Agreement is terminated pursuant to Paragraph 8, nothing in this Class Agreement or its negotiation may be used as evidence in any action between the parties hereto.  The parties expressly reserve all their rights and defenses if this Agreement does not become final and effective substantially in accordance with the terms of this Agreement.

15.    <u>Class Certification For Settlement Purposes Only</u>.  First DataBank stipulates to certification of the Private Payor Class as defined in Paragraph 1 for settlement purposes only, and for the sole purpose of creating the settlement class.  First DataBank's stipulation is contingent

AMENDED AND RESTATED SETTLEMENT AGREEMENT

upon the execution by the parties of this Agreement and that this Agreement is finally approved by the Settlement Court and is not terminated pursuant to the terms of this Agreement.  If the Agreement is for any reason not finally approved, or is otherwise terminated, First DataBank reserves the right to reassert all  objections and defenses to certification of any class for trial purposes, and Plaintiffs will not offer First DataBank's stipulation to certification as part of this Agreement as any evidence in support of a motion to certify any class for trial purposes.

16.    Consent to Jurisdiction.  First DataBank and Plaintiffs hereby irrevocably submit to the exclusive jurisdiction of the Settlement Court for purposes of any suit, action, proceeding or dispute arising out of, or relating to, this Agreement or the applicability of this Agreement, including any issues arising or regarding the establishment and maintenance of the FDB Data Room and the information and materials contained therein.

17.    Resolution of Disputes: Retention of Jurisdiction.  Any disputes between or among First DataBank and any Class Members concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Settlement Court for resolution.  The Settlement Court shall retain jurisdiction over the implementation and enforcement of this Agreement.

AMENDED AND RESTATED SETTLEMENT AGREEMENT

18.   Enforcement of Settlement.  Notwithstanding Paragraph 14 above, this Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used by any of the Released Entities for such defense and/or in support of injunctive relief against any such action, suit or other proceeding.

19.   Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

20.   Authorization to Enter Class Agreement.  The undersigned representatives of First DataBank represent that they are fully authorized to enter into and to execute this Agreement on behalf of First DataBank.  Class Settlement Counsel represent that they are fully authorized to conduct settlement negotiations with First DataBank's Counsel on behalf of the Plaintiffs and to enter into, and to execute, this Agreement on behalf of Plaintiffs, subject to Settlement Court approval pursuant to Fed. R. Civ. P. 23(e).

21.   No Party Is the Drafter.  None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

34

AMENDED AND RESTATED SETTLEMENT AGREEMENT

22. _Choice of Law._ All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

23. _Amendment or Waiver._ This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

24. _Execution in Counterparts._ This Agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Settlement Court.

25. _Integrated Agreement._ This Agreement, including the exhibits hereto, together with the Supplemental Agreement and any exhibits thereto, contain an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto, and supersede all prior oral or written agreements and contemporaneous oral agreements among the parties.

AMENDED AND RESTATED SETTLEMENT AGREEMENT

26.    Construction.  This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Released Entities.

27.    Notices.  All notices and other communications required or permitted under this Agreement shall be in writing and delivered in person, by overnight delivery service or by facsimile.  Any such notice shall be deemed given as of the date of receipt and shall be delivered to the parties as follows:

**If To Plaintiffs**:

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP,
One Main St., 4th Floor
Cambridge, MA 02142
Tel. 617-482-3700
Fax: 617-482-3003

Steve W. Berman
Hagens Berman Sobol Shapiro LLP,
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Tel. 206-623-7292
Fax: 206-623-0594

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Tel. 215-496-0300
Fax: 215-496-6611

AMENDED AND RESTATED SETTLEMENT AGREEMENT

**If To First DataBank:**

Eve Burton
Office of the General Counsel
The Hearst Corporation
1345 Avenue of the Americas
New York, NY 10019
Tel. 212-649-2045
Fax: 215-649-2041

28.    <u>Severability</u>.  In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision if First DataBank and Class Settlement Counsel mutually elect to proceed as if such invalid, illegal or unenforceable provision had never been included in the Agreement.

29.    <u>Headings</u>.  The headings to this Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

30.    <u>Public Statement</u>.   Class Settlement Counsel and First DataBank may, upon execution of this Agreement, each issue a public statement with respect to the settlement embodied by this Agreement. The content of the public statement is to be agreed upon by the parties prior to release.

AMENDED AND RESTATED SETTLEMENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Class Agreement as of the date first written below.

PLAINTIFFS

By: _____
   Thomas M. Sobol, Esq.
   Hagens Berman Sobol Shapiro LLP.

Dated: **5/28/08**


FIRST DATABANK, INC.

By: _____
   Eve Burton, Esq., its counsel

Dated **5/27/08**

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
NEW ENGLAND CARPENTERS                        )
HEALTH BENEFITS FUND; PIRELLI                 )
ARMSTRONG RETIREE                             )
MEDICAL BENEFITS TRUST;                       )
TEAMSTERS HEALTH & WELFARE                    )
FUND OF PHILADELPHIA AND                      )
VICINITY; and PHILADELPHIA                    )
FEDERATION OF TEACHERS HEALTH                 )
AND WELFARE FUND,                             )
                                              )     Civil Action No. 1:05-CV-11148-PBS
                  Plaintiffs,                 )
                                              )
v.                                            )
                                              )
FIRST DATABANK, INC., a Missouri              )
Corporation; and McKESSON                     )
CORPORATION, a Delaware Corporation,          )
                                              )
                  Defendants                  )
_____)

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF THE
FIRST DATABANK, INC. SETTLEMENT**

WHEREAS, this matter has come before the Court pursuant to a Joint Motion for

Preliminary Approval of Proposed Amended and Restated Settlement and Approval of

Form and Manner of Notice (the "Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of

the parties for purposes of settlement pursuant and that venue is proper in this district;

WHEREAS, this Court has conducted prior hearings with regard to a proposed

settlement between Class Plaintiffs and First DataBank, Inc., has previously certified the

EXHIBIT A

settlement class, and has previously refused to approve the settlement without changes made to its terms; and

WHEREAS, Class Plaintiffs and First DataBank, Inc. have filed an Amended and Restated Settlement Agreement on May 29, 2008 and this Court has conducted a preliminary approval hearing on _____, 2008 and is otherwise fully advised in the premises and on considering the record of these proceedings, the representations, argument, and recommendation of counsel for the moving parties, and the requirements of law:

**IT IS HEREBY ORDERED THAT**:

      **I.**    **Preliminary Approval of the Amended and Restated Settlement Agreement**

1.      The terms of the Amended and Restated Settlement Agreement and Release between plaintiffs and defendant First DataBank, Inc. ("FDB"), dated May 27, 2008, including all exhibits thereto (the "Proposed Settlement Agreement" or "Proposed Settlement" annexed hereto as Exhibit A) are preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below.  Unless otherwise provided herein, the terms defined in the Proposed Settlement Agreement shall have the same meaning in this Order.  The Proposed Settlement was entered into at arms-length by experienced counsel and only after extensive arms-length negotiations lasting many months.  The Proposed Settlement is not the result of collusion.  The Proposed Settlement bears a probable, reasonable relationship to the claims alleged by plaintiffs and the litigation risks of plaintiffs as well as FDB.  The Proposed Settlement is sufficiently within the range of reasonableness so that notice of the Proposed Settlement should be given as provided by this Order.

EXHIBIT A

## II.  **Approval of Joint Notice Program**

The Court directs that further Notice be provided to the Class.  Subject to submission and approval of the precise forms of Notice and the Notice Plan, the Court approves a joint notice program involving this settlement, the settlement with Medispan in a parallel lawsuit pending before this Court, and the notice to be provided to the litigation class in connection with the claims against McKesson Corporation.  The Court directs that the forms of Notice and Joint Notice Plan be submitted to the Court on or before June _____, 2008.

## III.  **Fairness Hearing**

The exact date and time of the Fairness Hearing will be determined by the Court when the forms of the Notice and Joint Notice Plan are before the Court for approval.

DATED: Boston, Massachusetts
This ____ day of _____, 2008

_____
Patti B. Saris, Judge
United States District Court

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; and PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND, | C.A. No. 1:05-CV-11148-PBS |

Plaintiffs,

v.

FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,

Defendants.

**[PROPOSED] FINAL ORDER AND JUDGMENT CERTIFYING THE CLASS FOR PURPOSES OF SETTLEMENT, APPROVING OF CLASS ACTION SETTLEMENT, AND DISMISSING THE ACTION WITH PREJUDICE**

Upon considering the Joint Motion for Approval of Class Settlement (the "Joint Motion"), filed by plaintiffs and defendant First DataBank, Inc. ("FDB") on May 29, 2008, seeking approval of the Amended and Restated Settlement Agreement, originally dated as of August 3, 2006 and amended as of May 22, 2007 and May 27, 2008 (the "PSA" or the "Proposed Settlement,"), Class Plaintiffs Memorandum of Law in Support of Joint Motion for Preliminary Approval of Proposed First DataBank Class Settlement, Certification of Settlement Class and Approval of Notice Plan, a Joint Memorandum of Law in Support of the Joint Motion, additional memoranda filed by Class Plaintiffs' in further support of the settlement, all of the supporting material submitted in conjunction with this Joint Motion and Class Settlement and the motions and supporting materials previously filed with the Court in connection with earlier versions of

EXHIBIT B

the proposed settlement, and Counsel's Motion for Approval of an Award of Attorneys' Fees and Memorandum in Support thereof, and on considering the record of these proceedings, the representations, argument, and recommendation of counsel for the moving parties, and the requirements of law,

### IT IS HEREBY <u>ORDERED</u>, <u>ADJUDGED</u> AND <u>DECREED</u> that:

1.   The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

2.   Venue is proper in this district.

3.   The Court finds, that the Rule 23 factors are present and that certification of the proposed Class, as defined and set forth below, is appropriate under Fed. R. Civ. P. 23(b)(1) and 23(b)(2), and hereby certifies the following Class for settlement purposes only and without prejudice to any other parties to the litigation:

(a)    The "Private Payor Class":  All individual persons or entities who, during the Class Period, made purchases and/or paid, whether directly, indirectly, or by reimbursement, for all or part of the purchase price of prescription pharmaceuticals, including, but not limited to, those pharmaceuticals listed on the attached Exhibit A, where any or all of the purchase price, reimbursement or payment amount was based in any part on the Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, and which such Average Wholesale Price, Blue Book Average Wholesale Price, or similar data published or disseminated by First DataBank, Inc., electronically or otherwise, in whole or part, was based on a FDB wholesale survey.  Excluded from the class are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments; the States of the United States and their respective officers, agents, agencies and departments; and all other local governments and their officers, agents, agencies and departments.  This is to clarify further that those entities that own or operate businesses referred to commonly as pharmacy benefit managers ("PBMs") and who as part of their business

2

EXHIBIT B

operation contract with ultimate Third Party Payors of a prescription pharmaceutical benefit to perform certain services in the administration and management of that prescription pharmaceutical benefit for those ultimate Third-Party Payors are not class members under the Private Payor Class definition of this settlement. The class includes the ultimate Third Party Payors providing the prescription pharmaceutical benefit and not the PBMs with which those Third Party Payors contract with to administer or manage that prescription benefit on behalf of the class members, unless such PBMs are the fiduciary of the Third Party Payors or by contract assumed, in whole or in part, the insurance risk of that prescription pharmaceutical benefit during the Class Period.

4.     Specifically, the Court finds that the Class described above satisfies Fed. R. Civ. P. 23(a) and Rule 23 (b)(1) and 23(b)(2) for settlement purposes:

### Rule 23(a)

(a)     <u>Numerosity</u>: Numerosity is established in that the size of the proposed class, , is sufficiently large to joinder in practical, given the relevant circumstances. *In re Relafen Antitrust Litig.,* 22 F.R.D. 260, 267 (D. Mass 2004)(Young, J.) In this settlement, the proposed class encompasses thousands of third party payors (welfare funds, self insured employers, for profit and not for profit health insurers which provide prescription drug benefits) that have asserted claims or potential claims against the settling defendant. Thus, the Rule 23(a)(1) numerosity requirement has been met.

(b)     <u>Commonality</u>: Generally, the commonality requirement is easily met, provided that at least one common question of law or fact exists. *In re AWP*, 230 F.R.D. at 78. Therefore, claims all hinge on common questions. These elements would be established by common class-wide proof. They demonstrate common questions sufficient to satisfy Rule 23(a)(2).

The numerous common factual and legal issues to be decided include, but are not limited to, the following:

a.     The publication of AWP and BBAWP data fields as a common event upon which all of plaintiffs' and proposed Class members' claims rely;

b.     Whether Defendants engaged in a course of conduct that improperly inflated the WAC-to-AWP markup and the ultimate AWPs used by plaintiffs and Class members as the basis for reimbursement;

c.     Whether Defendants artificially inflated the published AWPs for the drugs that are the subject of this complaint;

EXHIBIT B

      d.      Whether Defendants engaged in a pattern and practice that caused Plaintiffs and Class members to make inflated payments for the AWPs;

      e.      Whether Defendants engaged in a pattern of deceptive and/or fraudulent activity intended to defraud Plaintiffs and the Class members;

      f.      Whether Defendants formed enterprises for the purpose of carrying out the 5% Scheme;

      g.      Whether Defendants used the U.S. mails and interstate wire facilities to carry out the 5% Scheme;

      h.      Whether Defendants' conduct violated RICO and various California statutes and common law; and

      i.      Whether Defendants are liable to Plaintiffs and the Class members for damages for conduct actionable under the various state consumer protection statutes.

(c)      <u>Typicality</u>:  The proposed class representatives' claims arise from the same course of conduct and share the same legal theory, as do the claims of the putative Class members.  Furthermore, the proposed class representatives will advance the interests of all class members.  The proposed class representatives' claims are typical of those of the proposed Class and satisfy Rule 23(a)(3).

(d)      <u>Adequacy</u>:  The proposed class representatives assert claims representative of the claims of the entire class with regard to pharmaceutical purchases.  As such, even though the claims may not be identical to every claim of every putative Class member, the proposed class representatives can adequately represent the putative Class.

      The adequacy factor also considers Class Counsel.  In this case, Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter.  The adequacy requirement is satisfied.

## **Rule 23 (b)(1)**

      By this Final Order and Judgment, the Court is hereby ordering FDB to fulfill the terms of the Settlement Agreement.  Specifically, consistent with the terms of the Settlement Agreement, FDB must adjust the WAC to AWP markup to 1.20, FDB is enjoined from publishing the BBAWP data field for any pharmaceutical consistent with the terms of the Settlement Agreement (except under certain circumstances as defined in the Settlement Agreement), and FDB must establish and maintain an FDB Data Room as defined in the Settlement Agreement and provide other access to information consistent with the terms of the Settlement Agreement.

EXHIBIT B

In light of this injunctive relief, inconsistent adjudications with respect to individual members of the Class would establish incompatible standards of conduct for FDB. Thus, certification under Rule 23(b)(1) is necessary and appropriate.

**Rule 23(b)(2)**

Plaintiffs in this case allege that FDB's policies and practices have caused them to pay inflated prices for certain pharmaceutical products. As such, plaintiffs allege that FDB has acted on grounds generally applicable to the class. Thus, Rule 23(b)(2) is satisfied.

5.    In the interest of clarity, the Court reiterates that it makes the above findings set forth in paragraph 4 regarding certification of the Class only for the purposes of settlement.

6.    In the further interest of clarity, the Court recognizes that as part of the Amended and Restated Settlement Agreement, the Class is forever releasing and discharging any claims for monetary damages of any type, whether compensatory, restitution, punitive or otherwise, as set forth in the Amended and Restated Settlement Agreement and that the Class will be forever bound by this Final Order and Judgment including for the Released Claims as against the Released Entities. The Court finds that this relief is enforceable and binding on the Class and satisfies the right of due process under the provisions of Rule 23(b)(1) and 23(b)(2) because this Court provided to the Class notice of the proposed settlement and the right of Class Members to exclude themselves from the Class pursuant to the Court's plenary powers under Rule 23(d)(2) and 23(d)(5).

7.    The Court reconfirms the appointment of the class representatives.

5

EXHIBIT B

8.    The Court approves the Amended and Restated Settlement Agreement, on file with the

Court as Exhibit A to the Joint Motion for Preliminary Approval of Class Settlement,

Class Notice and Related Matters dated April 21, 2008, as being fair, adequate, and rea-

sonable and in the best interests of the Class, satisfying Rule 23(e) and the fairness and

adequacy factors of this Circuit.  In particular, the Court finds that:

(a)    **Fairness, Adequacy, and Reasonableness of the Proposed Settlement**:

The Court finds that the Amended and Restated Settlement Agreement is fair,
adequate, and reasonable.  The facts and circumstances set forth in counsels' affidavits and papers demonstrate that there has been consider-
able arms' length bargaining and discovery in this case.  A proposed class action
settlement is considered presumptively fair where, as here, sufficient discovery
has been provided and the parties have engaged in arms' length negotiations.  *See
City P'Ship*, 100 F.3d at 1043.

Although there is no single test in the First Circuit for determining the fairness,
reasonableness, and adequacy of a proposed class action settlement, *see In re
Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D.
Me. 2003), the fairness factors concern whether there has been arms' length bar-
gaining.  *See City P'Ship Co. v. Atlantic Acquisition Ltd. P'Ship.*, 100 F.3d 1041,
1043 (1st Cir. 1996).  Courts in this Circuit consider (1) comparison of the pro-
posed settlement with the likely result of litigation; (2) reaction of the class to the
settlement; (3) stage of the litigation and the amount of discovery completed; (4)
quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case,
including risk, complexity, expense, and duration.  *See In re Compact Disc Mini-
mum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003) (cita-
tions omitted).

1.  Comparison of Settlement With Likely Result of Litigation:

Although Class Members have consistently asserted their confidence in the
strength of their case, this is complex litigation for which the outcome is uncertain
and unpredictable.  In order to succeed on the merits, Class Members would need
to succeed on several complex and hotly disputed legal and factual issues.  The
relief contemplated in the Amended and Restated Settlement Agreement is fair,
adequate, and reasonable.  Indeed, injunctive relief is frequently an appropriate
remedy where, as here, class action plaintiffs seek institutional reform.  The in-
junctive relief in this case will ensure that, in the future, the conduct of which
plaintiffs have complained will cease.  This result, coupled with the uncertainty of

protracted litigation and trial, weighs heavily in favor of approval of this settlement.

2. Reaction of the Class to the Settlement:

Class members had until _____ to opt-out of the Class and _____ to object. As a result of the extensive Notice program ordered by the Court, there have been __ opt-outs and __ objections filed with the Court. The overall reaction to the settlement has been positive. Given the size of the class, the number of objections and opt-outs from the class is small.

3. State of the Litigation:

This litigation has been pending for about 3 years. During that time (and indeed even well before the instant case was brought), Class Settlement Counsel engaged in extensive discovery and investigation, including the analysis of voluminous records of parties and non-parties, extensive data review with health care economists and the interviews or depositions of certified witnesses. Class Settlement Counsel has been consistently and vigorously preparing for trial, and such work has generated significant information about the prospects for success in this litigation. On the other hand, although extensive discovery has been conducted to ensure that the settlement is fair, adequate, and reasonable, there remains substantial litigation ahead, including extensive motion practice, trial preparation, and the trial itself. Indeed, litigation of this complex case through trial would require to millions of dollars in expenses. Given that the parties have undertaken sufficient discovery to ensure the fairness, reasonableness, and adequacy of the settlement, expenditure of these resources would be wasteful and unnecessary. The state of the litigation therefore weighs in favor of approval of the settlement. This is particularly the case here where the Court heard objections and voiced concerns at a prior fairness hearing on January 22, 2008 after extensive notice had been provided and the parties have negotiated amendments to the settlement to take into account many of the objections and concerns voiced at that time.

4. Quality of Counsel:

Class Settlement Counsel are very well-qualified and experienced. Class Settlement Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter. The experience and skill of all counsel involved weighs in favor of final approval of this settlement.

5. Conduct of Negotiations:

Class Settlement Counsel and Defense counsel have engaged in extensive, arms-length negotiations following extensive discovery. Indeed, negotiations leading up to the Settlement spanned over one year and countless meetings, including ex-

tensive negotiations following the prior fairness hearing on January 22, 2008 to amend the agreement to address concersn addressed at that time. The complexity and duration of these negotiations weighs in favor of final approval of this settlement.

6. <u>Case Prospects, Including Risk, Complexity, Expense, and Duration</u>:

This case has the potential to impose enormous litigation costs on all of the parties. Indeed, although the ultimate result of a trial cannot be foreseen, absent a settlement, an expensive, complex and time-consuming process is assured. In light of the high stakes involved, a lengthy and costly appeal is certain to follow regardless of the outcome at trial. Thus, the complexity, expense and likely duration of the litigation weighs heavily in favor of final approval of this settlement.

9.    [DISCUSSION OF ANY OBJECTIONS]

10.    The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and notice plan to be the best practicable under the circumstances. The Court ordered a re-noticing of the settlement class beyond the extensive notice program provided to the Class previously in the Fall of 2007. The re-noticing was by mail to identifiable Third-Party Payor Class Members and to consumer organizations, as well as the widespread publication of notice, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.

11.    The Court holds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715 were complied with in this case.

12.    The Court holds that the Class Escrow Account established to hold the Settlement Fund is approved in order that it may be a Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.

EXHIBIT B

13.     The Court reconfirms the appointment of Thomas M. Sobol and Steve W. Berman of

Hagens Berman Sobol Shapiro LLP, Jeffrey Kodroff of Spector Roseman & Kodroff, PC,

Mark H. Edelson of Edelson & Associates LLC, and Kenneth Wexler of Wexler Toriseva

Wallace LLP as Lead Class Settlement Counsel for the putative Class.

14.     The "Released Claims" (as defined below) of any and all Class Members are HEREBY

DISMISSED WITH PREJUDICE against all "Released Entities" (as defined below):

> Released Claims:  Any and all known or unknown claims, demands, actions, suits, causes of action, damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory whatsoever, including costs, expenses, penalties and attorneys' fees, in law or equity, that any Releasor who has not timely excluded themselves from the Class, whether or not they object to the settlement, ever had or now has, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to the collection, calculation, formulas, mark-up, determination, dissemination, publication of, and representations concerning, the AWP or BBAWP or similar data published or disseminated by First DataBank, Inc. electronically or otherwise for any prescription pharmaceuticals, including but not limited to, the allegations contained in the action entitled *New England Carpenters Health Benefits Fund et al. v. First Databank, Inc., et al.*, Civil Action No. 1:05-CV-11148 (D.Mass.).

> "Released Entities" means First DataBank, Inc., its parent, subsidiaries, and affiliates and their (including First DataBank Inc.'s) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors, successors and assigns; provided, however, that Medispan, a division of Wolters Kluwer Health, Inc., its parent, subsidiaries, and affiliates and their (including Medispan's) past, present and future officers, directors, trustees, employees, agents, attorneys, shareholders, predecessors and assigns (collectively referred to herein as "Medispan") are excluded from the term Releasees and Released Entities, except for (1) the period when Medispan was owned by First DataBank, and (2) the period from December 19, 2001 to and including October 2, 2004, when First DataBank was required to divest the Medispan business and provide related editorial and consulting services to Medispan, which during these periods (1) and (2) above, Medispan is included in the term Releasees and Released Entities.

EXHIBIT B

15.    By entry of this Final Order and Judgment, each Class Member, and all other persons and

entities claiming by, through, or on behalf of, a Class Member, are hereby forever barred

and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or

consenting to any action against the Released Entities with respect to the Released

Claims and forever discharge and hold harmless the Released Entities of and from any

and all Released Claims which the Class Member has or may hereafter have.  In addition,

no member of the Private Payor Class shall be permitted to serve FDB, its parents, sub-

sidiaries, affiliates, directors, officers, or employees (past or present) in any action with

any discovery requests, requests to admit, or subpoenas seeking materials or deposition or

trial testimony in connection with any claim or potential claims brought against other de-

fendants in connection with litigation involving pharmaceutical pricing and reimburse-

ments without (1) reviewing the materials placed in the FDB Data Room, and then (2)

demonstrating by motion before the court before which the action is pending in which the

requested discovery is sought that the requested discovery, testimony, or requests to ad-

mit are substantially non-repetitive and which they in good faith believe cannot be sub-

stantially obtained from the materials located in the FDB Data Room.

16.    Pursuant to the All Writs Act, 28 U.S.C. §1651, this Court shall retain the authority to

issue any order necessary to protect its jurisdiction from any action, whether in state or

federal court, that threatens to undermine the settlement in this case and this Final Order

17.    The Court also finds, following an evaluation of Class Counsels' fee petition against the

factors set forth in *In re Lupron Mktg. & Sales Practices Litig.*, that the Class Counsel

fees are reasonable and employ a reasonable percentage of the actual benefit of the class

EXHIBIT B

settlement to the Class and that Class Counsel's Motion for Approval of an Award of At-
torneys' Fees is hereby approved.  2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug.
17, 2005) (citing *Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D.
237, 255-56 (1985).  With respect to the *Lupron* factors most relevant here, the Court
finds that Class Counsel have expended considerable time and labor in the negotiation
and implementation of the Proposed Settlement, and that this work will be on-going; that
the efforts of Class Counsel have resulted in a resolution that confers substantial benefits
on members of the Class, and that those benefits are comparable to other similar settle-
ments and were achieved sooner than most, if not all, similar settlements; that Class
Counsel undertook this matter with no guarantee of payment and thus shouldered consid-
erable risk; and that the attorneys' fees award in this case is not inconsistent with awards
in similar cases.

18.    FINAL JUDGMENT is hereby ENTERED directing First DataBank, Inc. to comply with
the terms of the Settlement Agreement as herein described.

19.    FINAL JUDGMENT is hereby ENTERED dismissing with prejudice all Released Claims
of the Class against all Released Entities as herein described and dismissing First Data-
bank Inc. from this action.

EXHIBIT B

20.    Pursuant to FRCP 54(b), the Court determines that there is no just cause for delay and

expressly DIRECTS the ENTRY OF JUDGMENT on all issues contained in this Order.

DATED: Boston,  Massachusetts
This _____, day of _____, 2008

_____
Honorable Patti B. Saris, Judge
United States District Court

12

EXHIBIT B

## **Exhibit**

| | |
|---|---|
| Exhibit A | Amended and Restated Settlement Agreement and Exhibits |