UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>            Plaintiffs,<br><br>  v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>            Defendants. | Civil Action:  1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**SURREPLY DECLARATION OF PAUL FLUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL RELAYHEALTH DATA**

I, Paul Flum, declare as follows:

1.  I am a partner of the law firm of Morrison & Foerster LLP and one of the attorneys of record for McKesson Corporation ("McKesson") in this action. I am familiar with discovery in this case. I submit this Surreply Declaration in Opposition to Plaintiffs' Motion to Compel RelayHealth Data.

2.  On April 21, 2008, plaintiffs moved for certification of the U&C class. In support of that motion, plaintiffs' damages expert, Dr. Hartman, submitted a declaration. Relevant portions of that declaration are attached to this declaration as Exhibit A.

3.  On May 12, 2008, I sent to plaintiffs' counsel an optical disk containing a sample from the RelayHealth database. The sample contained all data fields for over a million transactions for Lipitor 10 mg tablets. Plaintiffs had represented that they would be able to specify the additional data fields they wanted McKesson to produce within 7 days of getting a sample of all Lipitor fields. (*See* Docket No. 494-2, Proposed Order Granting Plaintiffs' Motion to Compel McKesson's RelayHealth Data.)

4.  By letter dated May 14, 2008, plaintiffs' counsel stated that the Lipitor data sample appeared to be corrupt. I responded by letter on May 16, 2008, explaining that the sample was not corrupt and that the Lipitor data was sent in the same format — the NCPDP Telecom format — used by the pharmacies and payers who transmitted claims data through RelayHealth. I further explained that this format is used throughout the pharmacy industry and would be familiar to any statistician or industry specialist who works with pharmacy claims data. After noting that plaintiffs' inability to use the data seemed to stem from a misunderstanding of the NCPDP format, I provided them with an overview of the data layout. Copies of the May 14 and 16 letters are attached to this declaration as Exhibits B and C, respectively.

5.  On May 23, 2008, having not received a response to my May 16 letter, I followed up with plaintiffs' counsel by asking them when they anticipated identifying further data fields that they wanted produced. I noted that McKesson wished to begin contacting retailers to obtain the necessary consent to disclosure of those data fields. In response, plaintiffs' counsel stated

1

that they were still having difficulties reviewing the data.  I advised plaintiffs that we were willing to help and reiterated my suggestion that they consult with a specialist with working knowledge of the NCPDP format, as it seemed evident that the individuals they were relying on to make sense of the data lacked such expertise.  On May 27, 2008, I advised plaintiffs that, to move the production process along, McKesson had identified seven data fields that would allow their damages expert to carry out his proposed analysis of insured reimbursement data.  I asked plaintiffs to tell me whether they agreed with McKesson's assessment, so that we could begin seeking the necessary retailer consent to production of that data.  A copy of my May 23-27 email exchange with plaintiffs' counsel is attached to this declaration as Exhibit D.

      6.      As of the date of this filing, plaintiffs have not responded to McKesson's May 27 proposal.

      7.      Plaintiffs have noticed a Rule 30(b)(6) deposition of RelayHealth.  McKesson has agreed to produce knowledgeable witnesses to provide the testimony sought by the notice and agreed that the depositions will take place on June 3.

      8.      On May 27, 2008, plaintiffs deposed Michael C. Cannata, the designated Rule 30(b)(6) representative of Rx-Net.  A copy of relevant excerpts from the transcript of that deposition is attached to this declaration as Exhibit E.

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

      Executed this 30th day of May, 2008, in San Francisco, California.

                                                      By:  /s/ Paul Flum
                                                                Paul Flum

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 30, 2008.

/s/ Paul Flum
Paul Flum

3

# Exhibit A

# Filed Under Seal

# Exhibit B

Case 1:05-cv-11148-PBS     Document 526-3     Filed 05/30/2008     Page 1 of 2



BARBARA A. MAHONEY
BARBARAM@HBSSLAW.COM

May 14, 2008

Paul Flum
Morrison Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

    Re:    <u>RelayHealth data</u>

Dear Paul:

    We have encountered multiple problems with the RelayHealth data you provided us.  We are unable to de-encrypt any of the files on the hard drive.  The PGP Desktop software indicates that the files were encrypted with an unknown key, *i.e.*, not with the public key we provided you.  We will return the hard drive to you and ask that you provide us a new one, using the key we provided.

    Although we were able to de-encrypt the Lipitor sample, the unzipped data file appears to be corrupt.  There does not seem to be a consistent delimiter being used and the data do not appear to be in a standard ASCII format.  We ask that you please resend the data in a standard tab-delimited text file format.  Also, the data did not include a list of fields or field lengths.  We ask that it be included when you send us the new version.

    Sincerely,

    HAGENS BERMAN SOBOL SHAPIRO LLP

    *[sent via electronic mail]*

    Barbara A. Mahoney
    Attorney

BAM:BM

ATTORNEYS AT LAW    SEATTLE  LOS ANGELES  BOSTON  PHOENIX  CHICAGO  SAN FRANCISCO
T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE - SUITE 2900 - SEATTLE, WASHINGTON 98101
www.hbsslaw.com

001821-13 239481 V1

# Exhibit C

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

May 16, 2008

Writer's Direct Contact
415.268.7335
PaulFlum@mofo.com

*By Email*

Barbara Mahoney
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:     *New England Carpenters v. First DataBank*

Dear Barbara:

In response to your May 14 letter, we are shipping for Saturday delivery a hard drive containing another encrypted copy of the U&C pricing data for consenting retailers that I sent last week.  My apologies for the problems you had with the first hard drive.  We used the same public key for the data on the hard drive that we used for the CD containing the Lipitor sample, which I understand you were able to unencrypt.  Let me know right away if you have problems unencrypting the data on the new hard drive.

As before, the data on the hard drive are designated as highly confidential under the protective order.  Due to the sensitive nature of the data, it should be encrypted before being transmitted to your co-counsel or experts.  Please return the hard drive after you've copied the data.

With respect to the Lipitor sample that I sent you on Monday, the file is not corrupt.  All fields have been produced to you as they appear in the RelayHealth database, which is what plaintiffs had requested, with certain identifying information blanked out.  The problems noted in your letter seem to reflect a misunderstanding about the data contained in the sample.  Hopefully, this letter will clear up that misunderstanding and facilitate your review of the sample.

The data in the sample includes all fields recorded in the RelayHealth database for Lipitor 10 mg pills.  RelayHealth records and stores this data in the same format in which it is transmitted by the pharmacies and payers — the standard NCPDP Telecom format.  This format should be familiar to any statistician or industry specialist who regularly works with NCPDP data.

sf-2516576

MORRISON | FOERSTER

Barbara Mahoney
May 16, 2008
Page Two

The NCPDP format, which is used universally in the pharmacy industry, is a space efficient, hierarchical, industry-specific format. It is comprised of both fixed and delimited segments (analogous to records), three different delimiters, optional fields, and segments which can occur in any order. In addition, the NCPDP has periodically enhanced the functionality of its format to meet its members' needs and governmental regulations. The changes are denoted by an NCPDP Telecom version number, which typically appears within the transmission. Detailed information on the NCPDP Telecom standard is available from the NCPDP web site at www.ncpdp.org.

RelayHealth relies on the pharmacies and payers for the formatting and accuracy of the data that they transmit. In RelayHealth's experience, entities that create NCPDP messages comply with the NCPDP standard at different levels. For example, some entities create messages with field width maximums exceeded, mandatory fields not provided, or some domain values populated that do not exist in the standard. RelayHealth does not enforce message standards for third parties; it merely records and passes along what the parties send it. No normalization or scrubbing is performed during the storage of the data in RelayHealth's repository, and RelayHealth does not endeavor to clean up the data after it is received by the switch.

To assist you and your expert in processing the data, the file has two columns, which are delimited by a tab character. Each record is terminated by a new-line character. The first column contains a "NCPDP Telecom Standard Formatted Request," as transmitted to RelayHealth from the pharmacy. The second column contains the corresponding "NCPDP Telecom Standard Formatted Response," as transmitted to RelayHealth from the payer or other processor for retransmission to the pharmacy that originated the request.

Please let me know if you have any additional questions.

Sincerely,

Paul Flum

sf-2516576

# Exhibit D

Case 1:05-cv-11148-PBS     Document 526-5     Filed 05/30/2008     Page 1 of 3

**From:** Flum, Paul
**Sent:** Tuesday, May 27, 2008 2:19 PM
**To:** 'Barbara Mahoney'
**Subject:** RE: New England Carpenters v. First DataBank

Barbara,

Since your experts appear to be unfamiliar with NCPDP data and data layouts, I thought it would help move this process forward if we identified the fields that we believe will permit Dr. Hartman to do the analysis of reimbursed claims that he suggests in connection with the U&C class. We believe that the following seven fields are sufficient for these purposes:

D7_product_service_id  407-D7
D1_date_of_service  401-D1
E7_quantity_dispensed  442-E7
F6_ingredient_cost_paid  506-F6
F7_dispensing_fee_paid  507-F7
Pharmacy ID
Pharmacy zip

Let me know if plaintiffs concur, so we can begin soliciting consents from RelayHealth's large retail subscriber

Paul

---

**From:** Flum, Paul
**Sent:** Friday, May 23, 2008 5:07 PM
**To:** Barbara Mahoney
**Subject:** RE: New England Carpenters v. First DataBank

We are willing to help, but for an exchange to be productive, the people on your end need to have experience working with NCPDP data feeds. Have you consulted with a statistician or industry specialist who regularly works with NCPDP data, as suggested in my May 16 letter? It sounds like the people in Hartman's office don't have the necessary background.

We've given you everything that you've said you needed so far to identify the additional fields that plaintiffs want produced. If you send me specific questions in a letter or email, I'll consult with RelayHealth about what else we can do to help.

---

**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** May 23, 2008 3:48 PM
**To:** Flum, Paul
**Subject:** RE: New England Carpenters v. First DataBank

I was referring collectively to the people in Ray Hartman's office.

---

**From:** Flum, Paul [mailto:PaulFlum@mofo.com]
**Sent:** Friday, May 23, 2008 3:46 PM
**To:** Barbara Mahoney
**Subject:** RE: New England Carpenters v. First DataBank

New England Carpenters v. First DataBank  Page 2
What experts are you using?

Case 1:05-cv-11148-PBS     Document 526-5     Filed 05/30/2008     Page 3 of 3

**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** May 23, 2008 3:46 PM
**To:** Flum, Paul
**Subject:** RE: New England Carpenters v. First DataBank

Paul,
I provided your explanation to our experts, but I understand that they are still having difficulties understanding how the data fields line up.  It is possible that these difficulties could be resolved by a conference call involving our expert and your IT people.  If that would be feasible, please let us know and we can make arrangements.

Barbara

---

**From:** Flum, Paul [mailto:PaulFlum@mofo.com]
**Sent:** Friday, May 23, 2008 3:40 PM
**To:** Barbara Mahoney
**Subject:** New England Carpenters v. First DataBank

Barbara,

I sent you a CD on May 12 containing a sample of all fields in the RelayHealth database for over a million Lipitor 10 mg transactions.  On May 16, in response to questions you raised about the sample, I sent you a letter explaining the data layout.

We would like to begin approaching the retailers that previously consented to production of their U&C pricing data, to ask whether they consent to production of any additional fields that plaintiffs are seeking.  When can we expect to receive the list of additional NCPDP field codes that plaintiffs are asking McKesson to produce?

Paul

==============================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

==============================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email @mofo.com, and delete the message.
==============================================================================

# Exhibit E

# Filed Under Seal