UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>     Plaintiffs,<br><br> v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>     Defendants. | Civil Action: 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**DEFENDANT MCKESSON CORPORATION'S
OPPOSITION TO PLAINTIFFS' REQUEST FOR A 6-MONTH DELAY
IN THE U&C SCHEDULE**

## INTRODUCTION

McKesson has agreed that plaintiffs may take *six weeks* for their reply on their U&C class motion; the existing schedule contemplated just over two. Plaintiffs say they need more. Their motion asks for *over three months* to prepare a U&C reply brief; a nearly three month extension for their U&C expert report; and a delay in the scheduled U&C trial by *six months*. Plaintiffs' motion, however, fails to show why six weeks will not suffice, and why delays of three to six months are warranted.

Plaintiffs claim they need these extensions because they do not yet have certain IMS and *insured* third-party reimbursement data. This "missing data" either was necessary to carry their burden in plaintiffs' opening class certification papers, or it is necessary to reply to McKesson's opposition. Plaintiffs did not need the data to complete their opening papers; they filed their papers without it. Plaintiffs fail to show why this data is now needed for their reply. Nor could they. McKesson's expert did not use any IMS or insured reimbursement data in his report, but instead used the same U&C data fields from RelayHealth that plaintiffs already possess. McKesson's *six-week* proposal would give plaintiffs' expert *triple* the amount of time to analyze this U&C data than McKesson's expert, Dr. Willig, had in opposing plaintiffs' class motion.

Plaintiffs also fail to show why an extension of six or seven weeks would be insufficient for plaintiffs' expert report as well. According to plaintiffs, the new IMS data will be available in early June. Dr. Hartman can therefore apply this new data to the damages formulas he already set out when he described his methodology for proving class-wide impact and damages in his April declaration. This can surely be done by July 28, the extended date McKesson proposes for plaintiffs' expert report. Dr. Hartman's model for impact and damages to the U&C class did not, on the other hand, identify *any* need for insured reimbursement data. The absence of that data therefore provides no justification for further delay.

What's really at stake here is the insurmountable hurdle plaintiffs' class and U&C claims face in light of the overwhelming evidence McKesson presented against plaintiffs' U&C pricing theory. Delaying the class motion and trial will not change that.

1

# ARGUMENT

I.  **PLAINTIFFS FAIL TO JUSTIFY A SIGNIFICANT U&C SCHEDULE CHANGE.**

   A.  **Plaintiffs' Request for Three More Months to Prepare Their U&C Class Reply Papers Is Unwarranted.**

   1.  **The IMS Data Delay Does Not Necessitate a Three-Month Extension for the Reply Brief.**

Plaintiffs' failure to obtain new IMS data does not justify a change in the U&C class motion briefing schedule.  Plaintiffs claim that they have been diligently seeking this data since November 2007.  But the unavailability of this data did not preclude the filing of plaintiffs' opening class motion papers on April 21.  If plaintiffs really needed this data to meet their class certification burden, plaintiffs surely would have postponed the filing of the class motion until the data was available.  They made no such request, and instead waited until the day after McKesson filed its class certification opposition papers to raise the matter.

In his latest declaration, Dr. Hartman offers no explanation for why he needs IMS data to reply to McKesson's opposition, let alone why the missing IMS data requires a three month extension for the reply.  Dr. Willig, for example, did not use IMS data at all when he demonstrated that U&C prices are not, as plaintiffs claim, "formulaically tied" to AWP.  In any event, Dr. Hartman states that he will have the new IMS data by early June.  McKesson already offered to extend plaintiffs' reply brief deadline to July 2.  (*See* Exhibit A, hereto, McKesson's Proposed Order Modifying the January 2 U&C Scheduling Order.)  Under McKesson's proposed schedule, plaintiffs will have ample time to use the data if they have any basis to do so.[1]

   2.  **The Six-Week Reply Period McKesson Has Offered Provides Ample Time for Plaintiffs to Analyze U&C Data From RelayHealth.**

Plaintiffs also say they need a three-month extension of their reply brief deadline because they do not yet have necessary RelayHealth data from McKesson.[2]  This is not accurate.

---

[1] As previously indicated to plaintiffs, McKesson proposes five weeks for its surreply, to August 6, to ensure sufficient time to consider whatever new data plaintiffs use.  (*See* Exhibit A.)

[2] RelayHealth, a company acquired by McKesson in 2007, offers a "switch" service to process prescription drug claims between pharmacies and the PBMs and other payers who reimburse

(Footnote continues on next page.)

Plaintiffs already have from RelayHealth the *U&C pricing fields* for all retailers who consented to production of their data (approximately 80% of RelayHealth's subscriber base). (Flum Decl. ¶¶ 7, 15.)[3] This is a massive amount of data, representing over 2.8 billion individual transactions. (Picard Decl. ¶ 9.) These data fields are also the very data that Dr. Willig used in opposing plaintiffs' class motion. Moreover, McKesson offered these U&C data fields to plaintiffs *on the same day* it was provided to its own expert. (Flum Decl. ¶¶ 12-13; Willig Decl. ¶ 26.) Technical difficulties did arise, however, in plaintiffs' ability to read the data. As a result, McKesson agreed to adjust the class briefing scheduling to afford plaintiffs six weeks to file their reply. (Mahoney Decl. Ex. 8 [Docket No. 514].) Six weeks would give Dr. Hartman *a full month longer with the U&C data* than McKesson's own expert had in preparing his report in opposition to Dr. Hartman's U&C conclusions. Dr. Hartman's declaration does not state that six weeks with the U&C data fields are insufficient.

### 3. Plaintiffs Do Not Need Third Party Insured Data For Their Reply Brief.

What, then, do plaintiffs say requires a three-month extension? Plaintiffs now claim to need more and different data from RelayHealth showing reimbursements for *insured* transactions.[4] But it is doubtful whether plaintiffs need insured data for their U&C class motion.

---

(Footnote continued from previous page.)
pharmacies for dispensing prescription drugs to insured consumers. Pharmacies submit electronic claims to the switch, which then routes the data to the appropriate payer. The 33 terabytes of data submitted can be searched and retrieved, provided that RelayHealth has been authorized to do so by the pharmacy that submitted the data. (*See* Picard Decl. ¶¶ 3-6, submitted with McKesson's Opposition to the U&C Class Motion, Docket No. 512-8, Ex. 20.)

[3] McKesson, on its own initiative, obtained retailer consents to facilitate production of these data fields. Moreover, contrary to plaintiffs' misleading assertion, McKesson never objected to plaintiffs' efforts to subpoena U&C data from retailers. Rather, McKesson's protective order motion was limited to plaintiffs' attempt to subpoena insured claims data from retailers, which McKesson contended violated the Court's January 2, 2008 Scheduling Order. (*See* Docket No. 453 at 1, 4-5.)

[4] Plaintiffs assert that McKesson's behavior with respect to RelayHealth and third party reimbursement data was "obstreperous." (Pls.' Mot. 1.) [Docket No. 513.] The Flum Declaration demonstrates otherwise. McKesson was forthcoming from the very beginning regarding what was necessary for production of pharmacy-owned third party reimbursement data in the RelayHealth database, including after Magistrate Judge Collings held such discovery did not violate this Court's January 2 Scheduling Order. The necessary steps were (1) identification

(Footnote continues on next page.)

Tellingly, Dr. Hartman's U&C class declaration does not state that he needs insured third party reimbursement data to reach any of his conclusions. (Pls.' Mem. in Support of U&C Class Motion 18-19 [Docket No. 487].) In fact, *Dr. Hartman had third party reimbursement data for named plaintiffs Teachers and Teamsters, yet in his U&C report, he did not use it. Instead, he relied only upon the very same U&C data fields from these TPPs that RelayHealth already produced.*

Recent deposition testimony elicited by plaintiffs confirms that insured reimbursement data is not necessary. In response to plaintiffs' questioning, the developer of a software program that assists independent pharmacies in setting U&C prices testified that U&C prices are "rarely" related to insured reimbursements — at most, "5 percent or less" showed any such connection, based on a study he conducted. (Flum Decl. Ex. 3 at 44:21-45:15.) Thus, as with the new IMS data, third party reimbursement data was not necessary for plaintiffs' opening brief, and it is not necessary to respond to McKesson's opposition brief.

While plaintiffs may like to have many months more to determine how to respond to McKesson's opposition papers on plaintiffs' own class motion, plaintiffs have failed to come forward with an adequate basis for more than six weeks. If the Court adopts McKesson's six-week adjustment to the class briefing schedule, the Court will be able to hear plaintiffs' U&C class motion before its current clerks leave. Under plaintiffs' proposed modification of the schedule, on the other hand, class certification will not be heard until *December*. (*Compare* Plaintiffs' Proposed Order *with* Exhibit A.)

---

(Footnote continued from previous page.)
of specific data fields; and (2) contractually-required consent for production of those data fields from the pharmacies who owned the data. Plaintiffs to this date continue to refuse to specify what fields of data they need, despite McKesson's provision to plaintiffs of the data field dictionary, and a de-identified Lipitor sample containing *all* fields in the RelayHealth database. (Flum Decl. ¶¶ 5, 8-10, 15.)

4

**B.    Plaintiffs Fail to Justify Why Their U&C Expert Reports Must Be Delayed for Nearly Three Months.**

Plaintiffs also use the missing IMS and RelayHealth data to justify delaying their expert report from June 11 until September 1. Plaintiffs do not, however, offer any support for the lengthy delay. The new IMS data will be available in early June. At that point, Dr. Hartman can apply the IMS data to the damage formulas set forth in his April 21 declaration to calculate damages. Nowhere in Dr. Hartman's most recent declaration does he say he needs three months for this application. Accordingly, McKesson proposes that plaintiffs' U&C expert report be delayed only until July 28. This will give Dr. Hartman close to two months to run his numbers.

There is also no need to delay plaintiffs' expert report further for the so-called "missing" insured third party reimbursement data, whether from RelayHealth or the pharmacies themselves.[5] Dr. Hartman's declaration offers no explanation for why he needs this data for calculating damages. Indeed, the paragraphs of Dr. Hartman's Declaration cited in plaintiffs' motion speak only to the use of IMS data "for [his] analysis of class-wide impact and [his] calculation of damages for the U&C class." (Hartman Decl. ¶¶ 3-5.) [Docket No. 515.] Nor was use of this data mentioned in Dr. Hartman's April declaration when he set forth the class-wide impact and damages model he proposes for the U&C class claim. (Hartman U&C Decl. ¶ 40.)[6] If this data is not necessary to meet plaintiffs' class burden of identifying a methodology for proving class-wide impact and damages, it cannot be necessary for plaintiffs' expert report applying that methodology to the case. The nearly two-month extension McKesson has proposed for plaintiffs' expert report should therefore be sufficient.

---

[5] Plaintiffs claim that they have continued their efforts to obtain claims data from retail pharmacies (Pls.' Mot. 4), but there is no evidence (nor do they cite any) to support this assertion. Plaintiffs took *no* pharmacy depositions and filed *no* motions to compel such data from retail pharmacies after Magistrate Judge Collings ruled that such discovery could proceed.

[6] Dr. Hartman explains that the data required to implement his "damages calculations are available from IMS for uninsured cash purchases and/or a sample of cash transactions from large and small retail pharmacies." (*Id*.) ***The RelayHealth database plaintiffs seek, by contrast, does not contain uninsured cash transactions.*** (Picard Decl.¶ 3.)

### C. Plaintiffs Offer No Good Reason to Change the Summary Judgment and Scheduled Trial Now.

Plaintiffs have proposed postponing the U&C summary judgment schedule and U&C trial date *by six months* in light of the other delays they are seeking. McKesson suggests that those dates do not need to be addressed at this time. Based on the overwhelming pharmacy evidence in the record, it is highly unlikely that a U&C class will be certified. But if it is, it makes more sense to set the summary judgment and trial date after the Court issues its class certification ruling.

## II. A SCHEDULE FOR THE EXPERT PHASE OF CLASSES 1 AND 2 ALSO NEEDS TO BE ADDRESSED.

In conjunction with plaintiffs' request to change the U&C schedule, McKesson proposed that the parties also seek a schedule for the remaining expert reports and discovery for Classes 1 and 2. (Mahoney Decl. Ex. 8.) The remaining reports include plaintiffs' revised damages report and McKesson's response thereto, as well as plaintiffs' response to McKesson's liability report, served January 28, 2008. At the March 19 status conference, both sides proposed nearly identical expert schedules for Classes 1 and 2, but plaintiffs have chosen not to abide by even the dates they proposed because, they say, the Court did not reduce those dates to a scheduling order. Nor would plaintiffs agree to address the expert schedule for Classes 1 and 2 in conjunction with their U&C schedule modification request. Accordingly, McKesson requests that this outstanding scheduling matter be addressed at the next status conference.

## CONCLUSION

As plaintiffs' own papers confirm, a six-week extension rather than delays of three to six months is sufficient for the U&C schedule. Plaintiffs' time would be better spent completing the expert reports and discovery still outstanding for Classes 1 and 2. Accordingly, McKesson respectfully requests that the Court enter the more modest schedule adjustment reflected in McKesson's proposed scheduling order, attached as Exhibit A.

McKesson Corporation
By its attorneys:

/s/ Lori A. Schechter
Melvin R. Goldman (*pro hac vice*)
Lori A. Schechter (*pro hac vice*)
Paul Flum (*pro hac vice)*
Tiffany Cheung (*pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
LSchechter@mofo.com

John Kiernan
Stephen E. Hughes
Bonner Kiernan Trebach & Crociata
200 Portland Street
Suite 400
Boston, MA 02114
Telephone: (617) 426-3900
Facsimile: (617) 426-0380

Dated: May 30, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 30, 2008.

/s/ Lori A. Schechter
Lori A. Schechter

# Exhibit A

Case 1:05-cv-11148-PBS    Document 529-2    Filed 05/30/2008    Page 1 of 4

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>     Plaintiffs,<br><br> v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>     Defendants. | Civil Action: 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**[PROPOSED] AMENDMENT TO JANUARY 2, 2008 SCHEDULING ORDER**

June ___, 2008

Saris, U.S.D.J.

  IT IS HEREBY ORDERED as follows:

  A. <u>Class Cert. Briefing</u>: the schedule for Class Certification Briefing on the Usual & Customary Class shall be amended as follows:

    1. Plaintiffs' Reply, previously due on June 9, 2008, shall now be due on July 2, 2008.

    2. McKesson's Surreply, previously due on June 30, 2008, shall now be due on August 6, 2008.

      3.     The Hearing on Class Certification for the Usual & Customary Class will be held on August ___, 2008 or September ___, 2008, at __:___.

B.     Expert Discovery:  the schedule for Expert Discovery for the Usual & Customary Class shall be amended as follows:

    1.     Plaintiffs' expert designations and reports, previously due on June 11, 2008, shall now be due on July 28, 2008.

    2.     McKesson's expert designations and reports, previously due on July 11, 2008, shall now be due on August 28, 2008.

    3.     Any rebuttal reports pursuant to FRCP 26(a)(2), previously due on July 25, 2008, shall now be due on September 11, 2008.

    4.     Expert depositions, previously scheduled to be completed by August 22, 2008, shall now be completed by October 31, 2008.

C.     Summary Judgment and Trial:  The Court may revisit the schedule for Summary Judgment and Trial based on the outcome of plaintiffs' motion to certify the Usual & Customary Class.

_____
Hon. Patti B. Saris
United States District Judge

2

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 30, 2008.

                                     /s/ Lori A. Schechter
                                     Lori A. Schechter