UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>               Plaintiffs,<br><br>   v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>               Defendants. | Civil Action: 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**DECLARATION OF PAUL FLUM IN SUPPORT OF MCKESSON'S OPPOSITION TO PLAINTIFFS' REQUEST FOR A 6-MONTH DELAY IN THE U&C SCHEDULE**

I, Paul Flum, declare as follows:

1. I am a partner in the law firm of Morrison & Foerster and one of the counsel of record for McKesson Corporation in this case. I have been actively involved in and am familiar with the discovery in this case. I am offering this Declaration in Support of McKesson's Opposition to Plaintiffs' Request for a 6-Month Delay in the U&C Schedule.

**McKesson Offered Months Ago to Produce U&C Pricing Data from RelayHealth**

2.  Plaintiffs had not sought production of any form of transaction-level claims data from McKesson or RelayHealth prior to the July 2007 fact discovery cutoff for Classes 1 and 2. On January 22, 2008, plaintiffs served a request for production of documents under Rule 34. Plaintiffs' January 22, 2008 request was the first time that plaintiffs sought production of any data from the RelayHealth database.

3.  In response, McKesson offered to produce mutually agreed upon U&C pricing data from the RelayHealth database, subject to several conditions, including agreement on the fields to be produced, resolution of objections interposed by the third parties that supplied the data, and agreement to share the cost of data extraction, processing, and certification for HIPAA compliance. A copy of McKesson's response and objections to plaintiffs' U&C Requests is attached as Exhibit B to my Declaration filed on May 13 in opposition to plaintiffs' motion to compel production of the RelayHealth database (Docket No. 499-4 [hereinafter the "Flum May 13 Declaration"]).

4.  I thereafter participated in a telephone call with plaintiffs' counsel on March 3, 2008, regarding the U&C Requests. During the call, I reiterated McKesson's offer to produce mutually agreed upon fields of U&C data (subject to the conditions noted in McKesson's formal written response). A copy of my March 4, 2008 email exchange with plaintiffs' counsel summarizing this call is attached as Exhibit C to the Flum May 13 Declaration.

5.  On March 10, 2008, plaintiffs' counsel sent me a follow-up email requesting a list of available NCPDP fields and field definitions. I responded on March 13, transmitting a copy of the NCPDP Data Dictionary, which contains over 100 pages of detailed explanations of each of the data fields reported through the RelayHealth switch. My March 13 email listed six NCPDP fields that McKesson had identified that "will permit calculation of reported U&C prices at the individual prescription level," and offered to extract and produce these fields. A copy of this exchange is attached as Exhibit D to the Flum May 13 Declaration.

**McKesson's Efforts to Obtain Retailer Consent to Produce U&C Pricing Data**

6. As I have consistently advised plaintiffs, McKesson's ability to produce and disclose claims data from the RelayHealth database in response to plaintiffs' U&C Requests is subject to contractual limitations, which among other things require RelayHealth to give prior notice to the retailers that subscribe to the switch service.

7. Beginning on March 14, 2008, and continuing for many weeks thereafter, I and others at my firm contacted counsel for the large retailers whose data was transmitted through the RelayHealth switch to notify them of the U&C Requests and to seek their consent to produce their de-identified claims data relating to U&C prices. This was a time-consuming process which took over a month to complete. None of the retailers we contacted would consent to wholesale production of their raw claims data, even on a de-identified basis. However, twenty-one of RelayHealth's largest subscribers consented to production on behalf of themselves and their affiliates of the six fields of U&C pricing data identified in my March 13 email.

**Plaintiffs Rejected McKesson's Offer to Produce U&C Pricing Data**

8. By letter dated April 2, 2008, plaintiffs' counsel rejected McKesson's offer to produce de-identified U&C pricing data from the RelayHealth database. Plaintiffs did not identify any additional fields or categories of claims data not noted in my March 13 email that they or their experts had identified as being necessary to their U&C pricing analysis. A copy of this letter is attached as Exhibit G to the Flum May 13 Declaration.

9. On April 8, 2008, I renewed McKesson's offer to produce U&C pricing data at the transaction-level for the six fields identified in my March 13 email, and attached a sample of that data to permit plaintiffs' expert to confirm that these fields are sufficient to conduct a transactional analysis of reported U&C prices. A copy of this email is attached as Exhibit H to the Flum May 13 Declaration.

10. Plaintiffs again rejected McKesson's offer on April 10. Plaintiffs did not identify any additional NCPDP fields that they wanted extracted from the RelayHealth database. A copy of this letter is attached as Exhibit I to the Flum May 13 Declaration.

11. On April 15, 2008, I again wrote plaintiffs' counsel to renew McKesson's offer to produce the specific U&C-related fields identified in my March 13 email. A copy of my letter is attached as Exhibit J to the Flum May 13 Declaration. Plaintiffs never responded to this letter.

**McKesson's Production of U&C Pricing Data from the RelayHealth Database**

12. On May 6, 2008, McKesson provided its expert, Dr. Robert Willig, with the U&C pricing data fields from the RelayHealth database.

13. Also on May 6, 2008, I advised plaintiffs that the six fields of de-identified U&C pricing data from the RelayHealth database were available, and asked counsel to provide a public encryption key so the data could be securely delivered. Plaintiffs provided me with their public encryption key on May 8. A hard drive containing over 2.8 billion individual transactions was sent to plaintiffs' counsel on May 9 for next day delivery. Copies of my email exchange with plaintiffs' counsel regarding this production and the transmittal letter accompanying the hard drive are attached as Exhibits K and L, respectively, to the Flum May 13 Declaration.

14. On May 14, 2008, plaintiffs' counsel sent me a letter identifying technical problems accessing the information on the hard drive. On May 16, 2008, I sent plaintiffs' counsel a replacement hard drive containing another encrypted copy of the U&C pricing data for consenting retailers. On May 20, 2008, plaintiffs' counsel emailed me, requesting a password to open the hard drive. That same day, I provided plaintiffs' counsel with the password to access the data. Also on May 20, plaintiffs requested, for the first time, a deposition of the person most knowledgeable about the RelayHealth database. The deposition has been scheduled for June 3, 2008.

**The Lipitor Sample that McKesson Provided to Plaintiffs Was Not "Corrupted"**

15. On May 12, 2008, I provided plaintiffs' counsel with a de-identified sample containing all fields from the RelayHealth database for over 1 million transactions of Lipitor 10 mg prescriptions. Plaintiffs were unfamiliar with the layout of this data, and mistakenly advised me that the data was "corrupted." To facilitate review of the data by plaintiffs and their

4

expert, I responded by letter dated May 16, 2008, explaining the format and organization of the data on the sample. A copy of this letter is attached as Exhibit 1.

16. Plaintiffs' counsel had previously advised the Court that they would identify additional fields of RelayHealth data that they needed for their U&C claims within seven days of receiving the Lipitor sample. I accordingly emailed plaintiffs' counsel on May 23, 2008, to ask when we would be receiving the list of proposed fields. Counsel responded that they were unable to identify any additional fields and that their expert was "having difficult[y] understanding how the data fields line up." A copy of this email exchange is attached as Exhibit 2. As of the date of submission of the declaration, plaintiffs still had not identified any additional fields that they seek from the RelayHealth database.

## Deposition of Michael Cannata

17. Plaintiffs deposed the founder and president of Rx-Net, a firm that develops and sells software that assists pharmacies in setting U&C prices, on May 27, 2008. This is the only deposition that plaintiffs have taken as part of the discovery on their U&C claims. A true and correct copy of excerpts from the deposition of Michael Cannata is attached as Exhibit 3.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 30th day of May 2008, in San Francisco, CA.

/s/ Paul Flum
Paul Flum

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on May 30, 2008.

                                      /s/ Lori A. Schechter
                                      Lori A. Schechter

# Exhibit 1

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

May 16, 2008

Writer's Direct Contact
415.268.7335
PaulFlum@mofo.com

*By Email*

Barbara Mahoney
Hagens Berman Sobol & Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re:   *New England Carpenters v. First DataBank*

Dear Barbara:

In response to your May 14 letter, we are shipping for Saturday delivery a hard drive containing another encrypted copy of the U&C pricing data for consenting retailers that I sent last week.  My apologies for the problems you had with the first hard drive.  We used the same public key for the data on the hard drive that we used for the CD containing the Lipitor sample, which I understand you were able to unencrypt.  Let me know right away if you have problems unencrypting the data on the new hard drive.

As before, the data on the hard drive are designated as highly confidential under the protective order.  Due to the sensitive nature of the data, it should be encrypted before being transmitted to your co-counsel or experts.  Please return the hard drive after you've copied the data.

With respect to the Lipitor sample that I sent you on Monday, the file is not corrupt.  All fields have been produced to you as they appear in the RelayHealth database, which is what plaintiffs had requested, with certain identifying information blanked out.  The problems noted in your letter seem to reflect a misunderstanding about the data contained in the sample.  Hopefully, this letter will clear up that misunderstanding and facilitate your review of the sample.

The data in the sample includes all fields recorded in the RelayHealth database for Lipitor 10 mg pills.  RelayHealth records and stores this data in the same format in which it is transmitted by the pharmacies and payers — the standard NCPDP Telecom format.  This format should be familiar to any statistician or industry specialist who regularly works with NCPDP data.

sf-2516576

MORRISON | FOERSTER

Barbara Mahoney
May 16, 2008
Page Two


The NCPDP format, which is used universally in the pharmacy industry, is a space efficient, hierarchical, industry-specific format.  It is comprised of both fixed and delimited segments (analogous to records), three different delimiters, optional fields, and segments which can occur in any order.  In addition, the NCPDP has periodically enhanced the functionality of its format to meet its members' needs and governmental regulations.  The changes are denoted by an NCPDP Telecom version number, which typically appears within the transmission.  Detailed information on the NCPDP Telecom standard is available from the NCPDP web site at www.ncpdp.org.

RelayHealth relies on the pharmacies and payers for the formatting and accuracy of the data that they transmit.  In RelayHealth's experience, entities that create NCPDP messages comply with the NCPDP standard at different levels.  For example, some entities create messages with field width maximums exceeded, mandatory fields not provided, or some domain values populated that do not exist in the standard.  RelayHealth does not enforce message standards for third parties; it merely records and passes along what the parties send it.  No normalization or scrubbing is performed during the storage of the data in RelayHealth's repository, and RelayHealth does not endeavor to clean up the data after it is received by the switch.

To assist you and your expert in processing the data, the file has two columns, which are delimited by a tab character.  Each record is terminated by a new-line character.  The first column contains a "NCPDP Telecom Standard Formatted Request," as transmitted to RelayHealth from the pharmacy.  The second column contains the corresponding "NCPDP Telecom Standard Formatted Response," as transmitted to RelayHealth from the payer or other processor for retransmission to the pharmacy that originated the request.

Please let me know if you have any additional questions.

Sincerely,

*Paul Flum* (signature)

Paul Flum

sf-2516576

# Exhibit 2

**From:** Flum, Paul
**Sent:** Tuesday, May 27, 2008 2:19 PM
**To:** 'Barbara Mahoney'
**Subject:** RE: New England Carpenters v. First DataBank

Barbara,

Since your experts appear to be unfamiliar with NCPDP data and data layouts, I thought it would help move this process forward if we identified the fields that we believe will permit Dr. Hartman to do the analysis of reimbursed claims that he suggests in connection with the U&C class.  We believe that the following seven fields are sufficient for these purposes:

D7_product_service_id  407-D7
D1_date_of_service  401-D1
E7_quantity_dispensed  442-E7
F6_ingredient_cost_paid  506-F6
F7_dispensing_fee_paid  507-F7
Pharmacy ID
Pharmacy zip

Let me know if plaintiffs concur, so we can begin soliciting consents from RelayHealth's large retail subscriber

Paul

---

**From:** Flum, Paul
**Sent:** Friday, May 23, 2008 5:07 PM
**To:** Barbara Mahoney
**Subject:** RE: New England Carpenters v. First DataBank

We are willing to help, but for an exchange to be productive, the people on your end need to have experience working with NCPDP data feeds.  Have you consulted with a statistician or industry specialist who regularly works with NCPDP data, as suggested in my May 16 letter?  It sounds like the people in Hartman's office don't have the necessary background.

We've given you everything that you've said you needed so far to identify the additional fields that plaintiffs want produced.  If you send me specific questions in a letter or email, I'll consult with RelayHealth about what else we can do to help.

---

**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** May 23, 2008 3:48 PM
**To:** Flum, Paul
**Subject:** RE: New England Carpenters v. First DataBank

I was referring collectively to the people in Ray Hartman's office.

---

**From:** Flum, Paul [mailto:PaulFlum@mofo.com]
**Sent:** Friday, May 23, 2008 3:46 PM
**To:** Barbara Mahoney
**Subject:** RE: New England Carpenters v. First DataBank

New England Carpenters v. First DataBank
What experts are you using?
Case 1:05-cv-11148-PBS    Document 530-3    Filed 05/30/2008    Page 3 of 3
Page 2

**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** May 23, 2008 3:46 PM
**To:** Flum, Paul
**Subject:** RE: New England Carpenters v. First DataBank

Paul,
I provided your explanation to our experts, but I understand that they are still having difficulties understanding how the data fields line up. It is possible that these difficulties could be resolved by a conference call involving our expert and your IT people. If that would be feasible, please let us know and we can make arrangements.

Barbara

---

**From:** Flum, Paul [mailto:PaulFlum@mofo.com]
**Sent:** Friday, May 23, 2008 3:40 PM
**To:** Barbara Mahoney
**Subject:** New England Carpenters v. First DataBank

Barbara,

I sent you a CD on May 12 containing a sample of all fields in the RelayHealth database for over a million Lipitor 10 mg transactions. On May 16, in response to questions you raised about the sample, I sent you a letter explaining the data layout.

We would like to begin approaching the retailers that previously consented to production of their U&C pricing data, to ask whether they consent to production of any additional fields that plaintiffs are seeking. When can we expect to receive the list of additional NCPDP field codes that plaintiffs are asking McKesson to produce?

Paul

==============================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

==============================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email @mofo.com, and delete the message.
==============================================================================

# Exhibit 3

# Filed Under Seal