

WWW.NCPANET.ORG

June 26, 2008

The Honorable Patti B. Saris
United States District Court
  for the District of Massachusetts
Courtroom 19, 7th Floor
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re: *New England Carpenters Health Benefit Fund, et al. v. FirstData Bank, Inc., et al.*
    Civil Action No. 1:05-CV-11148-PBS

Dear Judge Saris:

We are writing on behalf of the National Community Pharmacists Association (NCPA) and the thousands of independent pharmacies and pharmacists it represents to express our serious concerns about the Amended and Restated Settlement Agreement and Release (Amended Settlement) filed on May 29, 2008 and to urge the Court to review the suitability of the Amended Settlement prior to issuing notice again.

Although the parties claim to have addressed the Court's concerns, the Amended Settlement contains many provisions that were questioned or rejected by the Court and, if approved, will be extremely harmful to independent pharmacies and consumers. The AWP rollback threatens the viability of numerous independent pharmacies since even the more limited list includes over 40% of all branded drugs, which represent 80% of all prescriptions being filled in independent pharmacies. The more limited list of 1356 NDCs is inaccurate in numerous respects. The 90-day renegotiation period is insufficient to readjust if the settlement takes effect. Finally, FirstData Bank's (FDB's) recently announced plans roll back Average Wholesale Price (AWP) for all National Drug Codes (NDCs), and completely eliminate AWP within two years merely reinstates the provisions of the earlier settlement rejected by this Court because of its harm to independent pharmacies and consumers.

First, the Amended Settlement attempts to address the Court's concerns by reducing the number of NDCs for AWP rollback to 1356, the number identified in the Third Amended Complaint. Based on our preliminary investigation of the list of NDCs we believe the list is inaccurate, over-inclusive, inconsistent, and arbitrary. Several of the NDCs no longer exist; NDCs not listed in the original complaint have been added; and, some NDCs no longer match the correct drug. Also, some NDCs no longer point to the correct package or dosage size. Even though the list of NDCs has been reduced, the Amended Settlement would still affect approximately 40% of retail-branded drugs.

(Settlement Hr'g Tr. 22:24 – 23:4, Jan. 22, 2008.) Approval of the Amended Settlement will have a severe and material impact on the quality of services and the continued viability of independent pharmacies.

Second, we are also concerned that the parties have submitted a settlement appearing to comply with the Court's recommendations, while arranging for results already disapproved by this Court. Almost simultaneously with the issuance of the proposed settlement, FDB announced on June 2, 2008 that it would reduce AWP for all 8,200 original NDCs, and subsequently eliminate AWP as a pricing mechanism. FirstData Bank, *Re: Update Regarding AWP Litigation*, June 2, 2008, *available at*: http://www.firstdatabank.com/support/rcs/communications/awp/Index.aspx. In rejecting the prior proposed settlement, this Court acknowledged that an AWP reduction for all 8,200 NDCs would cause serious harm to community pharmacies and to consumers. Nevertheless, Plaintiffs allege that they have reduced the number of affected NDCs and removed the AWP retirement provision "to meet comments made by the Court . . . ." (Pf's mem. 2, May 30, 2008.) While this may be facially responsive to the Court's concerns, in reality the parties have arranged a result already rejected by the Court.

This raises serious concerns over the integrity of the process of settling this litigation. Because of the extreme risk of harm to consumers and independent pharmacies, it would be inappropriate to approve this settlement without examination of the parties' independent actions. This could initially be accomplished by the Court's review of all settlement communications that occurred after the January settlement hearing, followed by deposition or other measures based upon the Court's findings. We urge the Court to examine the parties' settlement negotiations in its continued efforts to protect independent pharmacies from undue harm.

Third, we believe the 90-day window to facilitate contract changes is impractical, and will result in severe harm to consumers. It is impossible to renegotiate thousands of complex contracts in only 90 days. If renegotiations are not completed, prescriptions cannot be sold to consumers. Consumers and independent pharmacies should not bear the burden of the defendant's wrongdoing. Also, we believe that allowing the settlement to take effect within 90 days regardless of any appeals or further actions is a violation of the due process rights of the affected parties. Approval of this provision will not only cause unnecessary litigation for the Court, but will also throw the pharmacy industry into chaos, as thousands of pharmacies will be scrambling to attempt to renegotiate complex contracts with a only a few PBMs, who cannot possibly complete all negotiations within 90 days.

At the end of the day this settlement permits the sole wrongdoer, FDB to relieve itself of liability for a mere $1 million payment to the Settlement Fund, while placing the burden of any settlement on pharmacies and consumers. We urge the Court to not approve a settlement that creates more problems than it solves, and ultimately places the Court in a quasi-regulatory role. The difficulty with identifying an appropriate set of NDCs only highlights the need for the Court at a minimum to appoint an independent expert to review the issues we have discussed above.

Thank you for your time concerning this matter and please do not hesitate to contact Mr. Balto should he be able to assist the court further.

Respectfully,

*David A. Balto*  
David A. Balto  
Counsel of Record for NCPA

*John M. Rector*  
John M. Rector  
NCPA General Counsel