UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN<br><br>            Plaintiffs,<br><br>        v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>            Defendants. | C.A. No. 1:05-CV-11148-PBS |

## **PLAINTIFFS' REPORT FOR JULY 2 CONFERENCE**

### I.    INTRODUCTION AND RELIEF REQUESTED

1.    A trial date has not been set for the TPP and Consumer Co-pay Classes. Plaintiffs request that the Court set trial for a date in November or December and allow the parties to stipulate to all remaining intermediate deadlines.

2.    Plaintiffs also request that the Court address the scheduling issues raised in their prior motion to modify the schedule for the U&C Class (Docket No. 513), including the deadline to file their reply brief in support of their motion for class certification and serve their expert report to be filed in connection with that reply.

## II.    MCKESSON HAS EXHAUSTED ITS CHALLENGES TO CERTIFICATION

The parties have vigorously litigated certification over the last two years.  On March 19, 2008, the Court issued its final order, certifying both classes but shortening the damages period for the TPP Class.  The Court advised the parties that it was prepared to try the case this summer but postponed scheduling a trial date pending First Circuit review of McKesson's Rule 23(f) petition and the much anticipated Supreme Court decision in *Bridge v. Phoenix Bond & Indem. Co.*, __ U.S. __, 170 L. Ed. 2d 1012, 2008 U.S. Lexis 4703 (2008).  The First Circuit has rejected review, and the Supreme Court in *Phoenix Bond* unanimously held that reliance is not a required element of a RICO claim.  This matter is ripe for trial.

### A.    The First Circuit has Twice Denied Interlocutory Review of the Court's Certification Orders.

On May 16, the First Circuit denied McKesson's latest Rule 23(f) petition, finding "no indication that the District Court applied the wrong legal standard in its March 2008 order." *New England Carpenters v. First DataBank*, No. 08-8017, slip op. at 1 (1st Cir. May 16, 2008).

The First Circuit had also denied McKesson's previous 23(f) petition, in which McKesson argued that the Class should be decertified because the Court had not required Plaintiffs to prove reliance.  McKesson argued that, if reliance is a required element under RICO, it will require "individualized evidence, precluding certification of a class action."[1]  The Court of Appeals refused to consider the issue because McKesson had failed to present the argument to this Court, and, thus, the issue was not germane to the Court's class certification order.

To preserve the matter for appeal, McKesson then included a reliance argument in a motion for judgment on the pleadings.  McKesson argued that all three Classes should be

---

[1] Petition of McKesson to Appeal (September 11, 2007) at 9.

dismissed "because there are no facts pleaded that plaintiffs and class members relied on FDB's alleged misrepresentations that it was surveying all three wholesalers in calculating AWPs."[2] McKesson argued that individual reliance is a required element of RICO fraud claims, or at least necessary to establish proximate cause,[3] and insisted that any contrary authority was "patently suspect" in light of the Supreme Court's decision to review the *Phoenix Bond* case.[4] The Court denied the motion under established First Circuit precedent, ruling that McKesson's reliance argument was precluded by *Systems Mgmt., Inc. v. Loiselle*, 303 F.3d 100 (1st Cir. 2002). Nonetheless, the Court delayed setting a trial date until after the Supreme Court issued its opinion in the *Phoenix Bond* case.

**B.     The Supreme Court's *Phoenix Bond* Decision Obviates any Further Interlocutory Appeals of the Court's Class Certification Orders.**

The Supreme Court foreclosed McKesson's last hope for decertification when it affirmed the *Phoenix Bond* decision and held that first-person reliance is <u>not</u> required to prove RICO fraud claims or to establish proximate cause. *Phoenix Bond*, 170 L. Ed. 2d at 1022, 1027. Like the First Circuit in *Systems Mgmt., Inc. v. Loiselle*, 303 F.3d 100 (1st Cir. 2002), which this Court followed in rejecting McKesson's judgment on the pleadings, the Supreme Court recognized "that a fraudulent misrepresentation can proximately cause actionable injury even to those who do not rely on the misrepresentation." *Phoenix Bond*, 170 L. Ed. 2d at 1027 n.7; *see also Loiselle*, 303 F.3d at 104 ("Loiselle does not deny that a reasonably predictable consequence of his mailings was, by deceiving the college, to enable him to continue to underpay his workers. There is no good reason here to depart from RICO's literal language by importing a reliance

---

[2] Memorandum in Support of McKesson Corporation's Motion to Dismiss the RICO Claim of the Proposed U&C Class and Motion for Judgment on the Pleadings (Docket No. 392) at 17.

[3] *Id*. at 18-19.

[4] McKesson Reply Brief (Docket No. 451) at 19.

requirement into RICO.")  Further, while the Court noted that some kind of reliance could likely be necessary to establish causation in certain circumstances, it declined to require it as an element of RICO fraud claims:

> [I]t may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must at least establish third-party reliance to prove causation.  "But the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as an element of causation, <u>does not transform reliance itself into an element of the cause of action</u>."

*Phoenix Bond*, 170 L. Ed. 2d at 1027 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 478 (2006)) (emphasis added).

Notwithstanding the foregoing, McKesson argues that the court in *Phoenix Bond* held that at least third party reliance must be shown establish a RICO claim.  McKesson Status Conference Statement (Dkt. No. 549) at 4-5.  This is simply untrue.  The Supreme Court expressly held that "there is no sound reason to conclude that [proof of reliance] is always necessary," that a lack of reliance is not dispositive on the issue of whether proximate cause exists, that *Holmes*'[5] flexible test for proximate cause still applies, *id.* at 1027-28, and that reliance is not a "back door" requisite to proving causation:

> Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim.  "Reliance is not a general limitation on civil recovery in tort; it 'is a specialized condition that happens to have grown up with common law fraud.'" *Anza*, 547 U.S. at 477 (Thomas, J., concurring in part and dissenting in part) (quoting *Systems Management*, 303 F.3d, at 104).  That "specialized condition," whether characterized as an element of the claim or as a prerequisite to establishing proximate causation, simply has no place in a remedial scheme keyed to the

---

[5] *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992).

- 4 -

>commission of mail fraud, a statutory offense that is distinct from
>common-law fraud and that does not require proof of reliance.

*Id.* at 1025-26.

Not only is reliance not required to prove causation in the RICO context, the Court's approving citation to *Systems Mgmt., Inc. v. Loiselle*, 303 F.3d 100 (1st Cir. 2002), demonstrates that the First Circuit's decision in *Systems Management*, upon which this Court relied in certifying the classes, retains vitality.  Accordingly, McKesson's statement that First Circuit law must now change in light of *Phoenix Bond*, McKesson Status Conference Statement at 5, is false.

McKesson once boldly predicted that the Supreme Court, in accepting *Phoenix Bond* for review, would institute a reliance requirement under RICO.  But in a stinging defeat for McKesson, the Supreme Court has now made clear that reliance is not a required element of proving a RICO claim and not a requirement to proving causation.  *Phoenix Bond* only serves to strengthen this Court's class certification order, and the Court should decline McKesson's invitation to redefine the Class.

### III. THE TPP & CONSUMER CO-PAY TRIAL SHOULD OCCUR THIS FALL

This case has been pending for three years, and McKesson has assiduously been avoiding a trial date via obstructionist discovery tactics, interlocutory appeals and repeated calls for delay. Now that McKesson has exhausted its pre-trial certification challenges, the time has come to set the trial date for the TPP and Consumer Co-pay Classes.  Plaintiffs propose that trial be scheduled in November or at the latest, December.

**A.     Class Notification Should be Completed before Halloween.**

If the Court approves Class notice by mid-July, publication will begin in September. Allowing for a 45-day opt-out period, the case will thus be ready for trial by <u>early November</u>.

Consistent with its many efforts to delay trial, McKesson proposes a drawn-out procedure for notice approval by the end of August. McKesson Status Conference Statement at 2-3. This is unnecessary. The Court is well-acquainted with common forms and manner of class notice and knows what works and what does not. If the parties cannot agree on the form and content of notice, the Court should be in a position to quickly decide the issue.

McKesson also invokes the pending proposed settlement against First DataBank as a reason to delay the trial, insisting that the FDB settlement must be finally approved before trial may commence and that McKesson itself be given a voice on the content of the notice going to the FDB class members. McKesson Status Conference Statement at 1-2. There is no reason why the trial of this case should be delayed pending final settlement with FDB, and McKesson advances no supporting argument for the proposition. Moreover, McKesson should be accorded no input on the content of the notice going to FDB class members. McKesson has a clear history in this case of deploying scorched earth tactics to delay. McKesson will undoubtedly interject these tactics full bore into the FDB settlement proceedings if given the opportunity. There is no link between the FDB settlement and the setting of the trial of the TPP and Consumer Co-pay Class claims in this case, and nothing relating to the FDB settlement should derail a November trial against McKesson.

**B.    A November Trial Date Provides Sufficient Time for all Remaining Reports.**

The Court ordered McKesson to serve its damages report 45 days after the Court issued its order on class certification.[6] Plaintiffs understand that McKesson has not done so because it interprets the Court's final certification order to require Dr. Hartman to revise his September 14, 2007 damages report, *i.e.* to adjust his damages calculation consistent with the shortened

---

[6] Transcript of the November 13, 2007 status hearing at 52:10-17.

damages period for the TPP Class and to recalculate damages based on the special-order IMS data. Plaintiffs suggest that all adjustments that Dr. Hartman may make can be handled at a post-trial hearing on damages if the Court finds that McKesson is liable. Alternatively, Plaintiffs could serve an amended final report by August 31, in which case the parties will have at least a month each to complete and serve McKesson's damages report and Dr. Hartman's rebuttal report. This schedule will still accommodate a November trial, and McKesson's proposal to have 90 day expert discovery period following the release of Dr. Hartman's revised damages report is unnecessary.

### C.    A November Trial Date Could Facilitate Mediation Efforts.

Mediation before Judge Infante is scheduled for September 16, 2008. A November trial will not only ensure that the parties have sufficient time to hold a fruitful mediation, it also bestows a measure of discipline on the mediation proceedings. As the Court is well aware, a looming trial date often lends urgency to mediation efforts and can facilitate a quicker resolution if a settlement is to be had.

### IV.    THE U&C TRIAL SHOULD TAKE PLACE NEXT SPRING

Plaintiffs' motion to modify the U&C schedule is still pending before the Court. Plaintiffs propose that the U&C trial take place the spring of 2009. McKesson has already conceded that the schedule should be modified to allow Plaintiffs additional time to file their reply brief in support of class certification and to serve their final expert report, but the issue remains whether the July 28 deadline McKesson proposes is adequate. Plaintiffs maintain that it is not.

To complete their report, Plaintiffs need pharmacy claims data to show the relationship between U&C prices and AWP-based reimbursement amounts. Plaintiffs have sought this data from both McKesson and third-party pharmacies. Magistrate Judge Collings previously denied

McKesson's motion for a protective order to prevent Plaintiffs from obtaining the data from third-party pharmacies.  McKesson has the same data in its possession because it operates a "switch" service that allows the pharmacies to transmit claims to payors electronically.  Notwithstanding Judge Colling's prior order, McKesson refuses to produce its data.  On June 13, 2008, Judge Collings held a hearing on Plaintiffs' motion to compel.  Assuming that Judge Collings grants Plaintiffs' motion and that McKesson is able to produce the remaining data within a reasonable amount of time, the earliest date Plaintiffs can complete their expert report is September 1.[7]  Allowing time for the remaining briefing and expert reports, the hearing on class certification, and a schedule for summary-judgment motions, trial cannot reasonably begin prior to the Spring of 2009.

This holds true even if the Court adopts McKesson's proposed deadline of July 28.  Presumably, McKesson erred when it suggested that the Court schedule McKesson's surreply nine days later on August 6.[8]  Consequently, McKesson's proposed deadline for the hearing on class certification would have to be adjusted by a few weeks.  Additionally, McKesson's proposed schedule eliminates the Court's summary-judgment calendar altogether.  Reinstating a summary-judgment timetable would add at least a couple months to the schedule.  With each of these adjustments it is simply not realistic to maintain a January trial date.

---

[7] Judge Collings is aware of this Court's July 2 status conference and is aware that Plaintiffs have informed the Court that one reason they have requested additional time on the U&C schedule is because of McKesson's refusal to produce third-party reimbursement data from its RelayHealth database.  Therefore, the parties anticipate that Judge Collings will issue his ruling forthwith.

[8] In its opposition to Plaintiffs' Motion for a Modification of the U&C Schedule, McKesson proposed that Plaintiffs be given until July 28 to serve their expert report and file their reply brief.  But in its proposed order setting forth its suggested schedule, McKesson only allowed Plaintiffs until July 2.  This error is probably the source of McKesson's August 6 miscalculation.

## V. CONCLUSION

Plaintiffs ask that the Court set a fall trial date for the TPP and Consumer Co-pay Classes and set the U&C trial for next spring. Once the trial dates are established, the parties should be able to confer with each other to set a mutually agreeable timetable for the intermediate deadlines.

DATED: July 1, 2008                 By /s/ Steve W. Berman
                                                                       Steve W. Berman
                                                                       Sean R. Matt
                                                                       Nicholas Styant-Browne
                                                                       Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol (BBO#471770)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile: (708) 776-5601

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

001821-13 244693 V1

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

- 11 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 1, 2008.

      /s/ Steve W. Berman
      Steve W. Berman