**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

July 15, 2008

Writer's Direct Contact
415.268.7335
PaulFlum@mofo.com

**Via Electronic Court Filing**

The Honorable Robert B. Collings
United States District Court for the District of Massachusetts
1 Courthouse Way
Boston, MA  02210

Re:   *New England Carpenters Health Benefits Fund, et al. v. First DataBank, et al.*, Civ. No. 05-11148-PBS

Dear Judge Collings:

McKesson Corporation submits this response to plaintiffs' July 14, 2008 letter, and in advance of tomorrow's telephone hearing.

In response to the Court's questions on July 2, 2008, plaintiffs' counsel agreed that if the Court were to order production of RelayHealth claims data showing pharmacy reimbursements, the reimbursement data could be produced on a de-identified basis, so that particular reimbursements could not be traced back to the pharmacies that received them. Yesterday, plaintiffs wrote saying that any reimbursement data that the Court orders produced in response to their motion should include (1) the U&C price and (2) the pharmacy-ID for each reimbursement. Plaintiffs' request for production of the additional data discussed in their letter is not warranted and should be denied.

1. **There Is No Need to Identify Amounts Received by Specific Pharmacies to Respond to Dr. Willig's Report.**

Plaintiffs argue that reimbursement data needs to be produced on an identified basis so that they can "refute specific representations made by McKesson and its expert, Dr. Willig, regarding the U&C claims data already produced and relied on by Dr. Willig." But Dr. Willig did not use reimbursement data in his U&C class declaration. To the contrary, he worked with the same body of data that McKesson already provided to plaintiffs, which includes the U&C prices identified by pharmacy. Using the U&C prices reported to RelayHealth and publicly available AWP and WAC data, Dr. Willig showed that U&C prices at many pharmacies did not respond to FDB's markup increases. Thus, plaintiffs do not need reimbursement data to respond to Dr. Willig's declaration.

At the June 13 hearing, counsel for plaintiffs said that they also needed reimbursement data to "impeach" documents and testimony by pharmacies that denied a formulaic link between U&C and AWP. (Tr. 48:20-22.) Plaintiffs' do not need reimbursement data to challenge those statements. Plaintiffs can use the U&C pricing data already produced by RelayHealth to test whether, contrary to this testimony, specific pharmacies' cash prices went up with the

MORRISON | FOERSTER

Hon. Robert B. Collings
July 15, 2008
Page Two

spread increases.

### 2. Requiring RelayHealth to Produce the U&C Price Associated with Each Reimbursement Would Reveal The Pharmacies' Identities.

As a fallback, plaintiffs ask that if the Court orders productions of de-identified reimbursement data, that it be produced together with the *identified* U&C prices produced last May. If McKesson were now to produce the reimbursement amount associated with each of those U&C prices, dates, and quantities, plaintiffs could readily match each reimbursement with the dispensing pharmacy ID by running a simple data merge program. Granting plaintiffs' request accordingly would amount to an order requiring production of identified reimbursement data. That request should be denied.

### 3. Plaintiffs Have Not Submitted any Testimony from Their Expert Explaining Why U&C Prices Need to Be Produced Together with Reimbursement Data.

Under Rule 26(b)(2), the Court should order production of additional RelayHealth data only on a showing that the likely benefit to plaintiffs of obtaining additional data outweighs both the burden of producing the data as well as the contractual and other restrictions against such production. Plaintiffs bear the burden of making this showing. *See, e.g.*, *In re Independent Serv. Org. Antitrust Litig.*, 162 FRD 355, 358 (D. Kan. 1995) (noting failure to make a "particularized showing of substantial need" for the information sought by the motion).

Despite that burden, plaintiffs have offered no expert declaration or other evidence supporting their argument that reimbursement data needs to be produced together with the U&C prices. Instead, counsel's letter makes the unsupported assertion that these data need to be produced together so that plaintiffs can compare insurance reimbursements with reported U&C prices to support their claim of a formulaic linkage between the two.

Reimbursement and U&C pricing data do not need to be produced together to do that comparison. The comparison plaintiffs propose can be done using data that is not linked to U&C pricing data. Using *de-identified* reimbursement data, plaintiffs can calculate the average reimbursement per NDC and per dose on any given day. Using the U&C pricing data already produced, plaintiffs can also calculate the average U&C price for the same NDCs and doses on that date. From there, it is a simple matter to compare changes in the ratio between those two averages before and after the AWP mark-up increases (to the extent plaintiffs claim that such a comparison can establish a formulaic relationship between AWP and U&C prices).

Respectfully,

*Paul Flum*
Paul Flum