## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

New England Carpenters Health )
Benefits Fund, *et al.* )
          Plaintiffs, )
                        )
                        )
v. )
                        )
First DataBank, Inc., *et al.* )
          Defendants. )
                        )

CIVIL ACTION
NO. 05-11145-PBS

### MEMORANDUM OF LAW AND AUTHORITY OF *AMICUS CURIAE*
### THE NATIONAL ASSOCIATION OF CHAIN DRUG STORES, INC.

National Association of Chain Drug Stores, Inc. ("NACDS") files this amicus

brief (1) to inform the Court of the nature of confidential commercial data, owned by

non-party pharmacy members of NACDS, which Plaintiffs' seek through their Motion to

Compel Production of McKesson's RelayHealth Data, (2) to present to the Court

NACDS member objections and arguments against the disclosure of this data which

Plaintiffs have not overcome, and (3) respectfully to urge this Court to deny Plaintiffs'

Motion or, at a minimum, to ensure that any transaction data produced by RelayHealth

have the names of the participants in transaction removed prior to production.

### BACKGROUND

The National Association of Chain Drug Stores, Inc. consists of nearly 200 chain

community pharmacy companies whose community pharmacies fill over 71% of the

more than 3.2 billion prescriptions dispensed annually in the United States.

Plaintiffs' Motion seeks discovery of highly confidential pharmacy pricing and

reimbursement data concerning billions of transactions ("Pharmacy Data") involving

NACDS members, none of which are parties to this litigation. The Pharmacy Data is owned by non-party NACDS member pharmacies. After attempting to get this Pharmacy Data from the pharmacies directly and being rebuffed, Plaintiffs now seek the same information from Relay Health.

In January 2008, Plaintiffs issued subpoenas to several NACDS's members seeking production of, among other things, highly confidential Pharmacy Data. Regardless of any Plaintiffs' assertion otherwise, NACDS members who received the Plaintiffs' subpoenas objected to or resisted their requests. *See, e.g.*, Attachment A, Declaration of Michael Cantrell, Longs Drug Stores, June 6, 2008 ("Cantrell Decl."), ¶ 9 (describing Longs Drug Stores written objections to Plaintiffs' subpoenas for its Confidential Data). Plaintiffs next brought this Motion to Compel against a subsidiary of Defendant McKesson Corporation, RelayHealth (a pharmacy "switch" which contracts with pharmacies to process pharmacy transactions). In doing so, they seek production of a database including the Pharmacy Data for the vast majority of retail pharmacies in the country (including those NACDS members that Plaintiffs previously subpoenaed).

Consequently, the pharmacies not only have objected to the subpoenas issued by Plaintiffs, but in addition many pharmacies have also separately directed RelayHealth to preserve the confidentiality of the Pharmacy Data and have objected to any unauthorized release of the Pharmacy Data. See May 13, 2008 Flum Declaration, Filing No. 499, ¶ 34 ("To date, Walgreens, Target, Albertsons, CVS, Kmart, Wal-Mart, Safeway, Rite Aid, Hannaford, Hy-Vee, Costco and Giant Eagle have all advised us that they object to production of their data, even with the protective order in place."); Exhibit P to Flum Declaration, Filing No. 499-21, p. 4 & 5 ("Safeway vigorously opposes any release of

2

AWP-based reimbursement formulas and urges McKesson to do the same for the foregoing reasons." "Please be advised that Wal-Mart expects RelayHealth to comply fully and completely with its obligations to keep Wal-Mart's data confidential as provided for in the agreement between Wal-Mart and RelayHealth.") It is clear from this evidence and the affidavits attached hereto, that the pharmacies have vigorously opposed the disclosure of their trade secrets and confidential commercial information to Plaintiffs.

Because Plaintiffs have ignored the objections of the pharmacies who created and own the Pharmacy Data and no party to this dispute represents the pharmacies' interest, NACDS submits this *amicus* brief on their behalf.

<h3 style="text-align:center">ARGUMENT</h3>

Plaintiffs claim that the Pharmacy Data is relevant to demonstrate the alleged correlation between increases in AWP and U&C prices. However, Plaintiffs do not explain why the Pharmacy Data is needed from RelayHealth or the individual pharmacies, particularly, in light of Plaintiffs stated intention to base their damages analysis on IMS Health data. *See, infra*, at Section III (discussing the usefulness of and planned reliance on IMS Health data).

Plaintiffs offer no explanation as to why the Pharmacy Data is not cumulative of the IMS Health data. Plaintiffs have conceded the data is "non-public," *i.e.* confidential, but offer no compelling need to overcome those confidentiality concerns of non-party pharmacies. Plaintiffs also offer no explanation of a compelling need for individualized Pharmacy Data that identifies the parties to millions of pharmacy transactions over a period of many years, and Plaintiffs do not demonstrate why de-identified data would not meet any proffered need for the information.

3

As reflected in the attached affidavits, the disclosure of the Pharmacy Data poses

a competitive harm to pharmacies and may raise the potential for contract liability with

some of those who reimburse pharmacies for dispensing drugs. Further, the current

protective order falls short of providing the necessary protection to restrict further

disclosure or use of this non-party Pharmacy Data once disclosed. For all these reasons,

NACDS requests that the Court deny Plaintiffs Motion to Compel the Pharmacy Data

production.

## I.      The Pharmacy Data Sought Is Confidential and Proprietary
##         Commercial Information Owned by Non-Parties.

Plaintiffs' Motion does not seek RelayHealth's information, but rather

confidential pricing information owned by each pharmacy and pharmacy benefit manager

and other payors ("Payors") utilizing RelayHealth's services. Non-party pharmacies treat

information regarding reimbursement as confidential commercial information. *See*

Cantrell Decl, ¶¶ 5-6, 8 (describing contractual and internal efforts to protect such

information); Attachment B, Declaration of Millard A. Nance, Hannaford Bros., June 5,

2008 ("Nance Decl."), ¶¶ 4-6 (same); Attachment C, Declaration of John Luebker, Wal-

Mart Stores, Inc., June 9, 2008 ("Luebker Decl."), ¶¶ 4-6 (same). They utilized

RelayHealth's services as a switch only with strict confidentiality protections in place.

*See* Cantrell Decl., ¶ 4-5; Nance Decl., ¶ 4; Luebker Decl., ¶ 4. The pharmacies maintain

the Pharmacy Data highly confidential due to the potentially devastating result if such

information became known to their competitors or Payors, who include the Third Party

Payor Plaintiffs in this case. *See* Cantrell Decl., ¶¶ 7, 10 (raising concerns that disclosure

could undermine ability to negotiate with Payors); Nance Decl., ¶ 8; Luebker Decl., ¶ 9.

4

As a result, the disclosure of the Pharmacy Data poses a serious competitive risk to
pharmacies and should not be permitted.

Plaintiffs have not disputed, nor could they, that the information they seek in the
RelayHealth database constitutes confidential commercial information of the pharmacies.
In fact, Plaintiffs concede the data is "non-public." ("…third party reimbursement
amounts are not publicly disclosed.") (Plaintiffs' Brief, at 2).

The courts protect this type of information. Federal Rule of Civil Procedure
26(c)(1)(G) provides, in part, that "for good cause shown", the court may prevent the
disclosure of, among other things, "confidential research, development, or commercial
information." This Court has also recognized it "must exercise its discretion in order to
avoid unnecessary disclosure of trade secrets or other confidential business information."
*Ares-Serono, Inc. v. Organon Intern. B.V.*, 151 F.R.D. 215, 219 (D. Mass. 1993).

This is even more so the case when the confidential data belongs to a non-party
like the pharmacies in this case. Accordingly, this Court has denied discovery from non-
parties when "'the information sought to be protected is highly confidential commercial
matter, [and] that disclosure would cause [the non-party] significant harm.'" *Bio-Vita,
Ltd. v. Biopure Corp.*, 138 F.R.D. 13, 17 (D. Mass. 1991) (citations omitted). Notably,
"[t]he case law provides nonparties . . . significant protection from . . . intrusive discovery
. . ." *See id.*, 138 F.R.D. at 17 (noting the limitations on non-party discovery versus party
discovery under the rules). "To obtain discovery from nonparties, a party must establish
that its need for discovery outweighs the nonparty's interest in non-disclosure." *Id.*
(internal citations omitted). "While discovery is a valuable right and should not be
unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is

the target of discovery. As one district court has noted, '[t]here appear to be quite strong considerations indicating that . . . discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.' " *Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir.1980) (internal citations omitted).

Here it seems that Plaintiffs have taken steps to undermine the above protections afforded to non-party pharmacies under the law. Therefore, their motion should be denied.

## II. The Pharmacy Data is Protected Under Confidentiality Agreements with Third-Party Payors.

The Pharmacy Data is confidential commercial information not only for the pharmacies but also for a large number of Payors. Many of the contracts between pharmacies and Payors include confidentiality provisions strictly limiting disclosure of the terms of the agreements, particularly information concerning reimbursement rates. *See* Cantrell Decl., ¶ 7 (noting contractual prohibition on sharing information on reimbursement rates with non-parties); Nance Decl., ¶ 7 (noting non-disclosure provisions in Payor contracts regarding terms); Luebker Decl., ¶ 7 (same). These rates are the result of significant negotiations between Payors and pharmacies and take into account numerous factors, including market size, market distribution, financial stability, marketing considerations and many others. If the reimbursement rates became known, the competitive positions of the pharmacies could be severely undermined in their ability to negotiate favorable reimbursement rates. *See* Cantrell Decl., ¶ 10; Nance Decl., ¶ 8 (concluding that disclosure would undermine Hannaford Bros. competitive position in the marketplace); Luebker Decl., ¶ 9 (concluding that disclosure would undermine Wal-

6

Mart's competitive position in the marketplace). Furthermore, disclosure of the Pharmacy Data by RelayHealth, may potentially create contract liability for the pharmacies who provided it to RelayHealth with the understanding that it would not be disclosed. *See* Cantrell Decl., ¶¶ 5, 7; Nance Decl., ¶ 7; Luebker Decl., ¶ 7.

As referenced by McKesson in its Opposition brief, and equally applicable to the NACDS members, federal courts have recognized that information covered by a confidentiality agreement with a non-party is entitled to additional protection from disclosure. *See Snowden v. Connaught Lab., Inc.*, 136 F.R.D. 694, 699-700 (D. Kan. 1991). For the above reasons, the Pharmacy Data's production should not be compelled.

### III.    Plaintiffs Have Not Demonstrated a Compelling Need For the Data Sufficient to Overcome Pharmacies Objections.

Although the parties to the litigation have debated whether Plaintiffs need the Pharmacy Data, Plaintiffs have not disputed that the Pharmacy Data are highly confidential and have made no showing of a compelling need for the Pharmacy Data that would overcomes the pharmacies' legitimate concerns about disclosure of their confidential and competitively sensitive commercial information. *See Bio-Vita, Ltd.*, 138 F.R.D. at 17.

Not only have Plaintiffs failed to demonstrate a compelling need for the Pharmacy Data, the record shows that the Pharmacy Data is cumulative of the IMS Data, which Plaintiffs have argued is sufficient, credible, and will be relied upon to calculate damages. Plaintiffs have already utilized IMS data to demonstrate the alleged relationship between AWP and third-party transactions for purposes of Classes 1 and 2. Plaintiffs' expert, Dr. Raymond Hartman, also has made numerous representations that the IMS data is reliable and sufficient to explain the alleged formulaic relationship between U&C and AWP. *See,*

*e.g.*, McKesson's Opposition to Plaintiffs' Request for a Six Month Delay in the U&C
Schedule, Filing 529 (5/30/2008), at 5 fn. 6 (quoting Dr. Raymond Hartman as saying the
information to calculate damages for the U&C Class is available from IMS).

Further, the Court has consistently found the IMS data reliable in this case. The
Court's March 19, 2008 Order states: "After a rigorous review of the expert analysis for
purposes of class certification, Plaintiffs have demonstrated that the IMS data is a
reasonable proxy for what TPPs paid at retail during the redefined class period. It is also
a reasonable proxy for assessing aggregate damages for the entire consumer class
period." Order Certifying the TPP Class (March 19, 2008), Filing No. 466, p.19
(emphasis added).

Plaintiffs have not demonstrated a compelling need for the Pharmacy Data, nor
have they disputed that the Pharmacy Data is highly confidential or that its disclosure
may cause significant harm to non-parties not before the Court. Absent such a showing,
discovery of the Pharmacy Data should not be had.

## IV.    Plaintiffs Have Not Demonstrated Any Need to Identify the Parties to the Transactions Within the Pharmacy Data.

Not only have Plaintiffs failed to demonstrate a compelling need for the Pharmacy
Data, they also fail to show any reliance or need for the non-financial details identifying
the names of the specific entities who were parties to individual transactions recorded
within the Pharmacy Data (e.g., which pharmacy was paid by which payor on a specific
transaction). Such entity-identifying details are not even arguably relevant to Plaintiffs'
claims, and Plaintiffs offer no explanation for their request for the same. The Court
should in no event require nor allow production of the entity-identifying details in the
Pharmacy Data.

8

The Court is well within its authority to preclude disclosure of certain details in the Pharmacy Data. *In re Independent Service Organizations Antitrust Litigation*, 162 F.R.D. 355 (D. Kan. 1995), for example, the court granted a protective order allowing a party to "withhold only the identities of the suppliers, but ... disclose all other non-identifying information relative to its purchases of parts from the confidential sources ...." *Id.* at 357-58 (barring disclosure of supplier identities because "that disclosure, even under the present protective order, might be harmful."); *see also U.S. Commodity Futures Trading Com'n v. Whitney* 441 F.Supp.2d 61, 68 (D.D.C. 2006) (concluding that the CFTC "has not demonstrated that it needs to be able to identify the other companies by name in order to" enforce the law.) This reasoning applies to the entity-identifying information within the requested Pharmacy Data.

If the Court decides to grant Plaintiffs' Motion, at the very minimum, the Court should order the exclusion or removal of the identifying information. In *Jackson v. Harvard University*, 111 F.R.D. 472 (D. Mass. 1986), for example, the Court denied the plaintiff's motion to compel production of the identities of the faculty and peer reviewers involved in a tenure review process, ordering instead "that defendants produce copies of such files with the names redacted." *Id.* at 475; *see also CFTC v. Whitney, supra,* 441 F.Supp.2d at 68 (allowing responding party to "redact the names of any companies that appear on the spreadsheet," where requesting party's "need for unredacted spreadsheets does not go to the heart of the matters"). At a minimum, the Court should order that the entity-identifying information within the Pharmacy Data need not and should not be disclosed.

## V. **The Protective Order Cannot and Does Not Provide Sufficient Protection Against Misuse and Abuse of the Pharmacy Data.**

The Protective Order in this case, filed in April of 2006, falls short of providing full protection from unauthorized disclosure of even "Highly Confidential" information. Because the Protective Order does not sufficiently safeguard the interests of NACDS members' Pharmacy Data, it should not be ordered to be produced.

It is difficult for a non-party to police or ensure that those with access to the protected information abide by the terms of a protective order. *See, e.g. In re ANC Rental Corp.*, No. 02-148, 2002 U.S. Dist. LEXIS 12260, at *4-5 (E.D. Pa. June 20, 2002) (concluding that, even with a protective order in place, "a disclosing non-party . . . would be handicapped in shielding . . . . [its] information from being widely disseminated. It would not be continually present at the bankruptcy proceedings, and its interests would undoubtedly be subordinate to those of the parties who would be present. Furthermore, neither [receiving party] . . . would have any real incentive to protect the confidentiality of the finances of [disclosing non-party], a direct competitor.")

Non-party NACDS members would be similarly handicapped if the Pharmacy Data was produced subject to the Protective Order. If the Pharmacy Data were produced to Plaintiffs and their counsel (who are involved in multiple AWP cases and this expanding litigation), NACDS members would be forced to devote significant resources to ensure that their confidential information is not inadvertently disclosed in a pleading, is not used in any of the myriad other AWP litigations to which Plaintiffs' counsel serve as class counsel, or that newly-added parties or new related cases do not require further protection of various NACDS members' confidential information. Ordering production of the Pharmacy Data, even subject to the Protective Order, will require NACDS's

members to choose either to expend substantial resources to ensure that their confidential information remains confidential or to hope simply that someone else will keep watch on their behalf. Neither option is reasonable under the circumstances present here.

Moreover, the Protective Order contains no language to prevent disclosure for even Highly Confidential documents during a trial. *See* Protective Order, ¶ 1 (focusing on discovery); Luebker Decl., ¶ 10 (noting that Protective Order does not prohibit use of confidential information at trial and could lead to full disclosure to persons attending trial). Such silence fails to ensure pharmacies that their Pharmacy Data, if produced, would be adequately protected during the trial. Accordingly, the Court should not order this data produced even subject to the protective order.

### CONCLUSION

For the foregoing reasons, NACDS requests that the Court deny Plaintiffs Motion to Compel production of Pharmacy Data from RelayHealth.

Respectfully Submitted,

Philip G. Kircher

**COZEN O'CONNOR**
1900 Philadelphia Street
Philadelphia, PA 19103
(215) 665-2000

Counsel for the National Association
for Chain Drug Stores, Inc.

Dated: June **9**, 2008

11

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>            Plaintiffs,<br><br>    v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>            Defendants. | Civil Action:  1:05-CV-11148-PBS<br><br>Judge Patti B.  Saris |

## DECLARATION OF MICHAEL L. CANTRELL

I, Michael L. Cantrell, declare as follows:

1.     I am over the age of eighteen years and have personal knowledge of the facts stated herein. I am offering this declaration in the matter of *New England Carpenters v. First Databank*, Case No. 1:05-CV-11148-PBS, pending in the United States District Court for the District of Massachusetts. If called as a witness in that case, I could and would truthfully testify to the following.

2.     I am currently employed by Longs Drug Stores California, Inc ("Longs Drug Stores") as Vice President, Professional Services, and Chief Privacy Official. My employment duties include oversight of managed care contracting, government affairs, and pharmacy regulatory compliance, including compliance with HIPAA patient privacy obligations.

3.     I have personal knowledge of the following: The nature and commercial sensitivity of confidential information provided by Longs Drug Stores in connection with reimbursement claims submitted to third-party payors ("TPPs"); the terms of Longs Drug Stores' contracts with TPPs for reimbursement of name-brand prescription drugs; the terms of Longs Drug Stores' contract with RelayHealth; and the policies and practices of Longs Drug Stores for maintaining the confidentiality of pricing of name-brand prescription drugs sold by Longs Drug Stores and of reimbursement rates negotiated by Longs with TPPs.

4.     When Longs Drug Stores fills a prescription to which a prescription drug benefit is applicable, a claim is electronically submitted to the TPP that is contracted to provide the prescription drug benefit. Electronic prescription drug benefit claims data is processed between Longs Drug Stores and TPPs by RelayHealth pursuant to an agreement with Longs Drug Stores ("RelayHealth Agreement").

5.     Prescription drug benefit claims data processed and maintained by RelayHealth includes confidential prices and TPP reimbursement rates with respect to name-brand prescription drugs ("Confidential Data"). Under the RelayHealth Agreement, RelayHealth is granted limited access to Longs Drug Stores' Confidential Data for the sole purpose of processing Longs Drug Stores' prescription drug benefit claims. Pursuant to the RelayHealth Agreement, RelayHealth is obligated to protect the confidentiality of Longs Drug Stores' Confidential Data and to use the Confidential Data only as expressly authorized by the RelayHealth Agreement.

6.     The Confidential Data is highly confidential, competitively sensitive information belonging to Longs Drug Stores and/or the TPPs with which it contracts. TPP reimbursement rates are negotiated terms of confidential contracts between Longs Drug Stores and various

2

TPPs, and are maintained by Longs Drug Stores as highly confidential trade secrets. Disclosure of Confidential Data to Longs Drug Stores' competitors would place Longs Drug Stores at a substantial competitive disadvantage and cause Longs Drug Stores substantial economic harm.

7.     Many of Longs Drug Stores' contracts with TPPs contain provisions which obligate Longs Drug Stores to maintain the confidentiality of the terms of those contracts and expressly prohibit Longs Drug Stores from disclosing contractual reimbursement rates to any non-party. Any disclosure of the Confidential Data would potentially threaten Longs Drug Stores' relationship with those TPPs.

8.     For many years, Longs Drug Stores has consistently enforced policies and procedures designed to maintain the confidentiality of the Confidential Data. Pursuant to those policies and procedures, Longs Drug Stores maintains the Confidential Data on secure computer systems accessible only by passwords held by authorized personnel, and does not disclose its Confidential Data to third parties except pursuant to written agreements with nondisclosure provisions.

9.     I am aware that Longs Drug Stores has been served with subpoenas in this action seeking information about Longs Drug Stores' pharmacy business and pricing for name-brand prescription drugs. Longs Drug Stores has served written objections to each of the subpoenas. The subpoenas seek, among other documents and information: "Electronically stored data concerning Your Usual and Customary prices during the Relevant Time Period for the NDCs listed on the attached schedule" ("TPP Data"). TPP Data includes Confidential Data.

10.     I am informed that Plaintiffs have filed a motion before this Court to compel RelayHealth to produce Longs Drug Stores' TPP Data. Production of the TPP Data in response to plaintiffs' motion could cause significant competitive harm to Longs Drug Stores. Production of the TPP Data would result in disclosure of Longs Drug Stores' drug pricing and reimbursement rates to individuals involved in the pharmacy business, including Longs Drug Stores' competitors, and to individuals with business and other relationships with Longs Drug Stores' competitors. In addition, production to plaintiffs of the TPP Data could undermine

3

Longs Drug Stores' competitive position in the marketplace, and in negotiations with TPPs. Production of the TPP Data could harm Longs Drug Stores in other ways that are presently unforeseeable.

11.     Plaintiffs in this action do not need Longs Drug Stores' Confidential Data in order to establish a correlation between AWP and usual and customary prescription drug prices, if any such correlation exists. RelayHealth has already produced data disclosing Longs Drug Stores' usual and customary prices, and plaintiffs already possess AWP data for the corresponding period. Disclosure of Longs Drug Stores' Confidential Data would not enable plaintiffs to do anything they cannot already do with the data they have.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed June _6_. 2008 in Walnut Creek, California.

Michael L. Cantrell

4

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

New England Carpenters Health )
Benefits Fund, *et al.* )
         Plaintiffs, )
                )
                )
v. )
                )
First DataBank, Inc., *et al.* )
         Defendants. )
_____ )

CIVIL ACTION
NO. 05-11148-PBS

## DECLARATION OF HANNAFORD BROS. CO.
## IN SUPPORT OF THE *AMICUS* BRIEF OF
## THE NATIONAL ASSOCIATION OF CHAIN DRUG STORES, INC.

I, Millard A. Nance, in support of the *amicus* brief of the National Association of

Chain Drug Stores, Inc., do hereby declare and state as follows:

1.      I am over the age of eighteen and have personal knowledge of the facts set

forth herein. I am Vice President of Pharmacy for Hannaford Bros. Co. ("Hannaford").

In this capacity, I have personal knowledge of the policies and practices of Hannaford

with regard to maintaining the confidentiality of the pricing and reimbursement of

name-brand prescription drugs sold by Hannaford at its pharmacies, personal knowledge

of Hannaford's contracts with third-party payors ("TPPs") and pharmacy benefit

managers ("PBMs") for reimbursement of name-brand prescription drugs, as well as

Hannaford's agreement with a pharmacy "switch" company now called "RelayHealth."

2.      I am aware that Hannaford has received a subpoena in this matter

("Subpoena") seeking certain information about Hannaford's pharmacy business and

pricing for brand-name prescription drugs. In addition, I am aware that Hannaford received a verbal inquiry as to its willingness to share additional TPP data.

3.      I am aware that Plaintiffs have filed a Motion to Compel to compel RelayHealth to produce TPP data for many retailers, including Hannaford, which TPP data RelayHealth may have or have had access to as a result of its performance of its agreement with Hannaford ("RelayHealth Agreement").

4.      Under the RelayHealth Agreement, RelayHealth has some access or exposure to Hannaford's confidential pricing data but only for the purpose of processing Hannaford's claims. Under that Agreement RelayHealth has received access to Hannaford's proprietary and confidential data on the condition that RelayHealth protect the confidentiality of such data and limit its use of the data solely as authorized by the RelayHealth Agreement.

5.      The TPP data to which RelayHealth has had exposure or access is Hannaford's proprietary and confidential commercial information. As such, Hannaford has consistently and historically made significant efforts to keep such information confidential.

6.      Hannaford takes numerous steps internally to maintain the confidentiality of TPP data. Hannaford restricts which Hannaford employees may be permitted to view or access the TPP data. Hannaford maintains the TPP data on secure computer systems, accessible only by passwords and only by certain authorized employees or TPPs.

7.      In addition, the TPP data is confidential under many of Hannaford's contracts with TPPs and PBMs. At present, Hannaford has dozens of written contracts with TPPs and PBMs, and many of these contracts contain provisions which expressly

2

prohibit Hannaford from disclosing TPP data to any third party. Plaintiffs' Motion potentially threatens Hannaford's relationship with these TPPs for whom Hannaford has agreed to keep the terms of its contracts secret.

8.    Production of the TPP data in response to Plaintiffs' Motion could cause significant harm to Hannaford. Production of the TPP data to Plaintiffs would result in disclosure of Hannaford's reimbursement formulas and pricing to individuals involved in the pharmacy business, including Hannaford's competitors, and to individuals with relationships with Hannaford's competitors. In addition, production to Plaintiffs of the TPP data could undermine Hannaford's competitive position in the marketplace, and in negotiations with TPPs and PBMs. Production of the TPP data could harm Hannaford in other ways which cannot be foreseen.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June _05_, 2008 in Scarborough, Maine.

Millard A. Nance
Vice President

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

New England Carpenters Health )
Benefits Fund, *et al.* )
            Plaintiffs, )
                       )
                       )
v.                     )
                       )
First DataBank, Inc., *et al.* )
            Defendants. )
_____ )

CIVIL ACTION
NO. 05-11148-PBS

### DECLARATION OF JOHN LUEBKER
### IN SUPPORT OF THE *AMICUS* BRIEF OF
### THE NATIONAL ASSOCIATION OF CHAIN DRUG STORES, INC.

I, John Luebker, in support of the *amicus* brief of the National Association of

Chain Drug Stores, Inc., do hereby declare and state as follows:

1.     I am over the age of eighteen and have personal knowledge of the facts set

forth herein. I am employed by Wal-Mart Stores, Inc. ("Wal-Mart") as a National

Account Manager in the Pharmacy Division. In this capacity, I have personal knowledge

of the policies and practices of Wal-Mart for maintaining the confidentiality of the

pricing and reimbursement of name-brand prescription drugs sold by Wal-Mart, personal

knowledge of Wal-Mart's contracts with third-party payors and pharmacy benefit

managers "PBMs" for reimbursement of name-brand prescription drugs, as well as

Wal-Mart's contract with a pharmacy "switch" company now called "RelayHealth."

2.     I am aware that Wal-Mart has received subpoenas in this matter dated

January 31, 2008, February 6, 2008 and February 28, 2008 ("Subpoenas") seeking

various information about Wal-Mart's pharmacy business and pricing for brand-name

4836-6620-5954.3

prescription drugs. Wal-Mart has served written objections to each of the subpoenas. One subpoena, from Plaintiffs dated January 31, 2008 and issued in the United States District Court for the Western District of Arkansas, seeks confidential commercial pricing and reimbursement data ("Pharmacy Data") (Attached as Exhibit A is Wal-Mart's Objections to Plaintiffs' Subpoena dated February 28, 2008). Plaintiffs have not moved to enforce this Arkansas Subpoena.

     3.     After requesting the Pharmacy Data from Wal-Mart and receiving Wal-Mart's Objections, I am aware that Plaintiffs have filed a Motion to Compel to compel RelayHealth to produce Wal-Mart's Pharmacy Data, which is also held by RelayHealth pursuant to an agreement with Wal-Mart dated October 12, 1993 ("RelayHealth Agreement").

     4.     Under the RelayHealth Agreement, RelayHealth has limited access to Wal-Mart's confidential pricing data for the sole purpose of processing Wal-Mart's claims; under that Agreement, RelayHealth received access to Wal-Mart's proprietary and confidential data on the condition that RelayHealth protect the confidentiality of such data and limit its use of the data solely as authorized by the RelayHealth Agreement. The RelayHealth Agreement provides in part that "All information and data provided by WAL-MART to [RelayHealth] hereunder is considered private and confidential and is the property of WAL-MART. Such information/data is to be used only in the process of switching claims to designated third-party carriers for processing or for third party processing at [RelayHealth]. **No rights are given to [RelayHealth] under this Agreement to use this information/data in any way, individually, collectively, nor in**

**statistical summaries, nor to divulge or make public such information/data in any way without the express written consent of WAL-MART.**" (emphasis added).

     5.     The Pharmacy Data is Wal-Mart's proprietary and confidential commercial information. As such, Wal-Mart has consistently made significant efforts to keep such information confidential for many years.

     6.     Wal-Mart takes numerous steps internally to maintain the confidentiality of Pharmacy Data. As a matter of strictly-observed internal policy, Wal-Mart does not disclose its Pharmacy Data to third parties. Wal-Mart tightly restricts which Wal-Mart associates may be permitted to view or access the Pharmacy Data. All documents and electronic files containing the confidential third-party reimbursement information sought by Plaintiffs are accessible only to myself and a very few Wal-Mart associates on a need-to-know basis who assist me in negotiating and overseeing Wal-Mart's third-party reimbursement contracts. Wal-Mart maintains the Pharmacy Data on secure computer systems, accessible only by passwords.

     7.     In addition, the Pharmacy Data is confidential under many of Wal-Mart's contracts with third-party payors and PBM's. At present, Wal-Mart maintains over 600 written contracts with third-party payors and PBM's, and many of these contracts contain provisions which expressly prohibit Wal-Mart from disclosing Pharmacy Data to any third party. Plaintiffs' Motion potentially threatens Wal-Mart's relationship with these third-party payors with whom Wal-Mart has agreements requiring confidentiality.

     8.     In addition to Wal-Mart's initial written Objections to the Subpoenas, on May 13, 2008, Wal-Mart, through counsel, specifically directed in writing that

RelayHealth not disclose the Pharmacy Data to Plaintiffs or anyone else. (Attached as Exhibit B is a letter from Wal-Mart's counsel dated May 13, 2008).

9.      Production of the Pharmacy Data in response to Plaintiffs' Motion could cause significant harm to Wal-Mart. Production of the Pharmacy Data to Plaintiffs would result in disclosure of Wal-Mart's reimbursements and pricing for name-brand prescriptions to individuals involved in the pharmacy business, including Wal-Mart's competitors, and to individuals with relationships with Wal-Mart's competitors. Disclosure of such information could enable Plaintiffs to calculate formulas upon which Wal-Mart's third-party prices and reimbursements were based. Production to Plaintiffs of the Pharmacy Data in addition could undermine Wal-Mart's competitive position in the marketplace, and in negotiations with TPP's and PBM's. Production of the Pharmacy Data could harm Wal-Mart in other ways which cannot be foreseen.

10.     I am aware of the Protective Order dated April 10, 2006 entered in this case. That Protective Order would not fully address Wal-Mart's concerns about confidentiality, nor would it ensure that Wal-Mart would be protected from the harms described above. For example, the Protective Order does not prohibit use of even "Highly Confidential" information at trial, and thus could lead to full disclosure of such information to persons attending the trial.


I declare under penalty of perjury that the foregoing is true and correct. Executed on June _9_, 2008 in Bentonville, Arkansas.

John Luebker

1   Michael R. Bond #2003114
    Kutak Rock LLP
2   The Three Sisters Building
    214 West Dickson Street
3   Fayetteville, AR 72701-5221
    Telephone:   (479) 973-4200
4   Facsimile:   (479) 973-0007

5   Attorney for Wal-Mart Stores, Inc.

6

7

8                          UNITED STATES DISTRICT COURT

9                          WESTERN DISTRICT OF ARKANSAS

10

11  NEW ENGLAND CARPENTERS              Case No. 05-cv-11148
    HEALTH BENEFITS FUND, et al,
12                                      NON-PARTY WAL-MART STORES,
              Plaintiff,                INC.'S RESPONSES AND OBJECTIONS
13                                      TO PLAINTIFF'S SUBPOENA
    v.
14
    FIRST DATABANK, et al,
15
              Defendant.
16

17

18        In response to New England Carpenters Health Benefits Fund, et al's ("Plaintiffs")

19  subpoena (the "Subpoena") to Wal-Mart Stores, Inc. ("WAL-MART"), and pursuant to Federal

20  Rule of Civil Procedure 45(c)(2)(B), WAL-MART, a non-party to the underlying litigation,

21  makes the following responses and objections:

22                              **GENERAL OBJECTIONS**

23        1.      WAL-MART objects to the Subpoena as overbroad, unduly burdensome and

24  oppressive in time and scope, particularly in light of Defendant McKesson Corporation's

25  ("McKesson") pending Motion for Protective Order regarding Subpoenas to Non-Party Retail

26  Pharmacies dated February 19, 2008 ("McKesson Motion"). As a non-party, WALMART also

27  should be spared from the burdens of discovery which could prove moot depending on the

28  outcome of the pending motion for protective order.

KUTAK ROCK LLP
ATTORNEYS AT LAW
OMAHA
                                                              RESPONSES AND OBJECTIONS TO
            4826-3969-7922.1             SUBPOENA 05-CV-11148

1    2.    WAL-MART objects to the Subpoena to the extent it purports to impose any
2    requirement or discovery obligation on WAL-MART other than those existing under applicable
3    law.

4    3.    WAL-MART objects to the Subpoena to the extent it seeks documents that are
5    protected by the attorney-client privilege, the work product privilege and/or any other applicable
6    privilege.

7    4.    WAL-MART objects to the Subpoena to the extent it seeks the disclosure of
8    proprietary or confidential business or financial information and/or trade secrets, or personal
9    health information of Wal-Mart customers.

10    5.    WAL-MART objects to the Subpoena to the extent it seeks information that is not
11    relevant to the litigation and/or not reasonably calculated to lead to the discovery of admissible
12    evidence.

13    6.    WAL-MART objects to the Subpoena as unduly burdensome and oppressive to the
14    extent it purports to require WAL-MART a non-party, to produce records for a period of nine
15    years, with respect to hundreds of specific products as set forth in the 17-page Exhibit to the
16    Subpoenas, and search facilities not reasonably likely to contain responsive documents and/or to
17    inquire of WAL-MART's employees who would not reasonably be expected to possess
18    responsive information.

19    7.    WAL-MART objects to the Subpoena to the extent it purports to require
20    WAL-MART to produce documents in violation of any legal or contractual obligation of
21    nondisclosure to a third party.

22    8.    WAL-MART objects to the Subpoena to the extent it is unclear, vague,
23    ambiguous, overly broad or unintelligible.

24    9.    WAL-MART expressly reserves all of its rights, objections and remedies in
25    connection with the Subpoena, including specifically its right to move or otherwise further
26    respond and object to the Subpoena.

27    10.    WAL-MART objects to the Subpoena in that it fails to allow a reasonable time for
28    compliance.

KUTAK ROCK LLP
ATTORNEY AT LAW
OMAHA

4826-3969-7922.1                        - 2 -                        RESPONSES AND OBJECTIONS TO
                                                                     SUBPOENA 05-CV-11148

1    11.    WAL-MART objects to the Subpoena in that compliance would subject
2  WAL-MART, a non-party, to significant expense.

3    12.    WAL-MART objects to the Subpoena to the extent the documents do not exist in
4  the form requested, and to the extent the form requested in the Subpoena would subject
5  WAL-MART to undue burden or exposure.

6  **SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS**

7    **REQUEST NO. 1.**    All documents and electronically stored information concerning
8  Your store policies and/or formulas to generate or determine Your U&C prices for brand drugs.

9    **RESPONSE TO REQUEST NO. 1.**    WAL-MART objects to this Request as
10  vague, ambiguous and unintelligible. WAL-MART also objects to this Request as overbroad,
11  unduly burdensome and oppressive in time and scope. Specifically, the Request seeks documents
12  beginning in January 1, 1998, more than three and one-half years before the class period began in
13  August 1, 2001. WAL-MART also objects to Plaintiffs' use of the term "policies and/or
14  formulas" because it is vague and ambiguous in this context.

15    WAL-MART further objects to this Request to the extent it seeks information or
16  documents protected by the attorney-client privilege and the attorney work product doctrine.
17  Moreover, WAL-MART objects to the Subpoena to the extent it seeks the disclosure of
18  proprietary or confidential business information and/or trade secrets. WAL-MART also objects
19  to the Subpoena to the extent it seeks information that is not relevant to the litigation and/or not
20  reasonably calculated to lead to the discovery of admissible evidence.

21    Subject to and without waiving the foregoing and the General Objections set forth
22  above—and subject to an appropriate protective order or confidentiality agreement limiting the
23  use and disclosure of WAL-MART's proprietary or confidential business information or trade
24  secrets—WAL-MART agrees to meet and confer with Plaintiffs in an attempt to narrow these
25  Requests and to discuss the potential production of a non-burdensome set of non-privileged,
26  responsive documents in its possession to the extent such documents exist.

27    **REQUEST NO. 2.**    All documents and electronically stored information concerning the
28  relationship between Your U&C prices and the AWP; wholesaler list prices and/or third party

KUTAK ROCK LLP
ATTORNEYS AT LAW
OMAHA

4826-3969-7922.1                            - 3 -                      RESPONSES AND OBJECTIONS TO
                                                                       SUBPOENA 05-CV-11148

1    reimbursement amounts for drugs.

2    **RESPONSE TO REQUEST NO. 2.**    WAL-MART objects to this Request as
3 vague, ambiguous and unintelligible. WAL-MART also objects to this Request as overbroad,
4 unduly burdensome and oppressive in time and scope. Specifically, the Request seeks documents
5 beginning in January 1, 1998, more than three and one-half years before the class period began in
6 August 1, 2001. WAL-MART also objects to Plaintiffs' use of the term "relationship" because it
7 is vague and ambiguous in this context.

8    WAL-MART further objects to this Request to the extent it seeks information or
9 documents protected by the attorney-client privilege and the attorney work product doctrine.
10 Moreover, WAL-MART objects to the Subpoena to the extent it seeks the disclosure of
11 proprietary or confidential business information and/or trade secrets. WAL-MART also objects
12 to the Subpoena to the extent it seeks information that is not relevant to the litigation and/or not
13 reasonably calculated to lead to the discovery of admissible evidence.

14    Subject to and without waiving the foregoing and the General Objections set forth
15 above—and subject to an appropriate protective order or confidentiality agreement limiting the
16 use and disclosure of WAL-MART's proprietary or confidential business information or trade
17 secrets—WAL-MART agrees to continue to meet and confer with Plaintiffs in an attempt to
18 narrow these Requests and to discuss the potential production of a non-burdensome set of non-
19 privileged, responsive documents in its possession to the extent such documents exist.

20    **REQUEST NO. 3.**    All documents and electronically stored information concerning
21 your U&C prices for the brand drugs attached in Appendix A, and the corresponding AWP for the
22 time period.

23     a.    data should be provided in electronic format
24     b.    data should include the following information
25       i.    date of sale;
26       ii.    drug name;
27       iii.    drug NDC;
28       iv.    number of pills dispensed;

KUTAK ROCK LLP
ATTORNEYS AT LAW
OMAHA

4826-3969-7922 1      - 4 -      RESPONSES AND OBJECTIONS TO
SUBPOENA 05-CV-11148

| | | |
|---|---|---|
| 1 | v. | pharmacy name and location; |
| 2 | vi. | unique pharmacy number (National Council of Prescription Drug Programs |
| 3 | | (NDPCP) or National Association of Boards of Pharmacy (NABP)); |
| 4 | vii. | U&C amount charged; |
| 5 | viii. | AWP in place for that NDC on that date; |
| 6 | ix. | any other reference data used in determining U&C on that date; and |
| 7 | x. | any discounts that may have affected the U&C price charged to a given |
| 8 | | individual (e.g., pharmacy discount cards; sales; etc). |

9   **RESPONSE TO REQUEST NO. 3.**    WAL-MART objects to this Request as
10  vague, ambiguous and unintelligible. WAL-MART also objects to this Request as overbroad,
11  unduly burdensome and oppressive in time and scope. Specifically, the Request seeks documents
12  beginning in January 1, 1998, more than three and one-half years before the class period began in
13  August 1, 2001. WAL-MART also objects to this Request to the extent the Request attempts to
14  impose a method of production contrary to that required by Rule 45(d)(1) of the Federal Rules of
15  Civil Procedure.

16  WAL-MART further objects to this Request to the extent it seeks information or
17  documents protected by the attorney-client privilege and the attorney work product doctrine.
18  Moreover, WAL-MART objects to the Subpoena to the extent it seeks the disclosure of
19  proprietary or confidential business information and/or trade secrets. WAL-MART also objects
20  to the Subpoena to the extent it seeks information that is not relevant to the litigation and/or not
21  reasonably calculated to lead to the discovery of admissible evidence.

22  Subject to and without waiving the foregoing and the General Objections set forth
23  above—and subject to an appropriate protective order or confidentiality agreement limiting the
24  use and disclosure of WAL-MART's proprietary or confidential business information or trade
25  secrets—WAL-MART agrees to continue to meet and confer with Plaintiffs in an attempt to
26  narrow these Requests and to discuss the potential production of a non-burdensome set of non-
27  privileged, responsive documents in its possession to the extent such documents exist.

28  **REQUEST NO. 4.**   All documents or electronically stored information concerning

1    payments by Institutional Payors for prescriptions for the brand drugs attached in Appendix A

2    sold to individuals with private insurance coverage:

3         a.        data should be provided in electronic format

4         b.        data should include the following information

5                   i.      date of sale

6                   ii.     drug name;

7                   iii.    drug NDC;

8                   iv.     number of pills dispensed;

9                   v.      pharmacy name and location;

10                  vi.     unique pharmacy number (National Council of Prescription Drug Programs

11                          (NDPCP) or National Association of Board of Pharmacy (NABP));

12                  vii.    total amount requested and total amount received;

13                  viii.   ingredient costs;

14                  ix.     dispensing fee received;

15                  x.      coinsurance amount received;

16                  xi.     any other amount received or paid (as applicable, for example tax);

17                  xii.    AWP in place for that NDC on that date; and

18                  xiii.   name of Institutional Payor.

19              **RESPONSE TO REQUEST NO. 4.**        WAL-MART objects to this Request as

20    vague, ambiguous and unintelligible.  WAL-MART also objects to this Request as overbroad,

21    unduly burdensome and oppressive in time and scope.  Specifically, the Request seeks documents

22    beginning in January 1, 1998 through the time of production, more than three and one-half years

23    before the class period began in August 1, 2001 and almost three years after the class period for

24    Institutional Payors closed in March 15, 2005.  WAL-MART also objects to this Request to the

25    extent the Request attempts to impose a method of production contrary to that required by Rule

26    45(d)(1) of the Federal Rules of Civil Procedure.

27              WAL-MART further objects to this Request to the extent it seeks information or

28    documents protected by the attorney-client privilege and the attorney work product doctrine.

1   Moreover, WAL-MART objects to the Subpoena to the extent it seeks the disclosure of

2   proprietary or confidential business information and/or trade secrets. WAL-MART also objects

3   to the Subpoena to the extent it seeks information that is not relevant to the litigation and/or not

4   reasonably calculated to lead to the discovery of admissible evidence.

5       WAL-MART further objects to this Request in light of McKesson's pending motion for

6   protective order arguing that this Request concerns a phase of discovery which was closed on July

7   31, 2007.

8       Subject to and without waiving the foregoing and the General Objections set forth

9   above—and subject to an appropriate protective order or confidentiality agreement limiting the

10  use and disclosure of WAL-MART's proprietary or confidential business information or trade

11  secrets—WAL-MART agrees to continue to meet and confer with Plaintiffs in an attempt to

12  narrow these Requests and to discuss the potential production of a non-burdensome set of non-

13  privileged, responsive documents in its possession to the extent such documents exist.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KUTAK ROCK LLP
ATTORNEYS AT LAW
OMAHA

1    Dated: February 28th, 2008                          WAL-MART STORES, INC

2

3                                                By: _____

4                                                    Michael R. Bond #506958
                                                     Kutak Rock LLP
5                                                    The Three Sisters Building
                                                     214 West Dickson Street
6                                                    Fayetteville, AR 72701-5221
                                                     Telephone: (479) 973-4200
7                                                    Facsimile: (479) 973-0007
                                                     Attorney for Plaintiff

8
                                                     Thomas J. Kenny, NE # 20022
9                                                    Paul R. Gwilt, NE # 22660
                                                     Kutak Rock LLP
10                                                   The Omaha Building
                                                     1650 Farnam Street
11                                                   Omaha, NE 68102
                                                     Telephone: (402) 346-6000
12                                                   Facsimile: (402) 346-1148
                                                     Attorneys for Plaintiff
13

14

15

16                         **CERTIFICATE OF SERVICE**

17        The undersigned, an attorney, hereby certifies that he/she/they caused a copy of the
18   foregoing NON-PARTY WAL-MART STORES INC.'S RESPONSES AND OBJECTIONS TO
     NEW ENEGLAND CARPENTERS HEALTH BENEFITS FUND'S SUBPOENA to be served
19   on the following counsel of record via U.S. Mail, postage prepaid, before the hour of 5:00 pm,
     on the 28th day of February, 2008:
20
          Jennifer Fountain Connolly
21        Wexler Toriseva Wallace LLP
          55 W. Monroe Street
22        Suite 3300
          Chicago, IL 60603
23

24

25                                    _____
                                      Michael R. Bond ·
26

27

28

# KUTAK ROCK LLP

THE OMAHA BUILDING
1650 FARNAM STREET
OMAHA, NEBRASKA 68102-2186

402-346-6000
FACSIMILE 402-346-1148

www.kutakrock.com

ATLANTA
CHICAGO
DENVER
DES MOINES
FAYETTEVILLE
IRVINE
KANSAS CITY
LITTLE ROCK
LOS ANGELES
OKLAHOMA CITY
RICHMOND
SCOTTSDALE
WASHINGTON
WICHITA

May 13, 2008

## VIA ELECTRONIC MAIL AND FACSIMILE (415) 268-7522

Mark Poe, Esq.
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

> Re:  *New England Carpenters Health Benefits Fund, et al. vs. First DataBank, et al.,*
> No 05 cv. 11148 (D. Mass.).

As you know, we represent Wal-Mart Stores, Inc. ("Wal-Mart") in connection with certain subpoenas dated January 31, 2008, February 6, 2008, and February 28, 2008 ("Subpoenas") issued by the parties in the above-referenced litigation. Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B) Wal-Mart has served separate written objections on counsel for the parties concerning the information and data requested in the Subpoenas. Included within Wal-Mart's objections were specific objections to the parties' request for certain transactional data, specifically Request No. 8 in the February 6 and 28 subpoenas and Request No. 3 in the January 31 subpoena (hereinafter "U&C Data") and Request No. 4 in the January 31 subpoena ("Third-party Data"). Wal-Mart objected to these requests because, among other things, they seek disclosure of proprietary or confidential business information and/or trade secrets.

Wal-Mart has recently been made aware that Plaintiffs have moved to compel, from RelayHealth, Third-Party Data owned by Wal-Mart and held by RelayHealth. Plaintiffs apparently now seek to acquire Wal-Mart's proprietary data through RelayHealth, and seek to thereby avoid addressing Wal-Mart's legitimate and well-founded objections to the Plaintiffs' subpoenas, which were issued by the United States District Court for the Western District of Arkansas (attached is Wal-Mart's written objections to Plaintiffs' Subpoenas).

Please be advised that Wal-Mart expects RelayHealth to comply fully and completely with its obligations to keep Wal-Mart's data confidential as provided for in the agreement between Wal-Mart and RelayHealth dated October 12, 1993 (as amended) ("Agreement"). Moreover, please be further advised that Wal-Mart maintains agreements with numerous third-party payors, and these agreements require that Wal-Mart maintain the agreements themselves, as well as their Third-Party Data, strictly confidential.

4850-7214-5410 1

**EXHIBIT**

B

**KUTAK ROCK LLP**

Mr. Mark Poe
May 13, 2008
Page 2

As you know, under the Agreement, Wal-Mart has a longstanding contractual relationship with RelayHealth pursuant to which RelayHealth acts as a "switch" and thus has limited access to certain of Wal-Mart's confidential pricing data for the sole purpose of processing Wal-Mart's claims. Under the Agreement, RelayHealth received access to Wal-Mart's proprietary and confidential data on the condition that RelayHealth protect the confidentiality of such data and limit its use of the data solely to the uses specifically authorized by Wal-Mart. In particular, the Agreement provides that "All information and data provided by WAL-MART to [RelayHealth] hereunder is considered private and confidential and is the property of WAL-MART. Such information/data is to be used only in the process of switching claims to designated third-party carriers for processing or for third party processing at [RelayHealth]. **No rights are given to [RelayHealth] under this Agreement to use this information/data in any way, individually, collectively, nor in statistical summaries, nor to divulge or make public such information/data in any way without the express written consent of WAL-MART.**" (emphasis added).

On May 7, 2008, in response to the Subpoenas, Wal-Mart and RelayHealth agreed to amend the Agreement to permit McKesson to produce—pursuant to the Protective Order in the litigation—certain U&C data. As made clear in my e-mail to you dated May 9, 2008, and in the Amendment itself, Wal-Mart authorized production *only* of certain U&C Data and *only* under the circumstances set forth in the Amendment. Wal-Mart did not and does not authorize production of Third Party Data (or any other data) beyond that agreed to in the Amendment.

Disclosure of Wal-Mart's confidential data would constitute a breach of the Agreement, and an unauthorized use of Wal-Mart's proprietary data. Such disclosure would cause significant harm to Wal-Mart in the marketplace, among its competitors, and in other ways.

Please be advised that Wal-Mart demands that RelayHealth/McKesson comply with their obligations as set forth in the Agreement.

Sincerely,

Thomas J. Kenny /cco

Thomas J. Kenny

Enclosure

lml

cc:    Paul Gwilt, Esq.

4850-7214-5410.1