UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>Defendants. | C.A. No. 1:05-CV-11148-PBS |

**PLAINTIFFS' PROPOSAL REGARDING THE U&C SCHEDULE**

## I.     INTRODUCTION AND RELIEF REQUESTED

At the July 2 status hearing, the Court asked the parties to submit their proposed

schedules for the U&C class after Judge Collings ruled on Plaintiffs' motion to compel

production of McKesson's RelayHealth data.  Judge Collings granted Plaintiffs' motion and

ordered McKesson to produce data on or before August 15, 2008 for an initial two-year period

with the understanding that Plaintiffs would be entitled to additional data if the data produced

supported Plaintiffs' claim.  McKesson has not yet produced the data and there are reasons to

believe such a production, even as ordered, is inadequate and that the parties will be before Judge

Collins yet again.  Until this data issue is resolved it would be fruitless to set a schedule because

- 1 -

Dr. Hartman needs six weeks from that point – and that point is currently unknown.  The

RelayHealth data "are crucial for [Dr. Hartman's] analysis of class-wide impact and [his]

calculation of damages for the U&C Class."[1]  Because Plaintiffs need all the data they are

entitled to before they can complete their expert report and submit their reply brief, Plaintiffs

propose that the Court vacate the current scheduling order and have the parties return with a

proposed schedule once that data issues are resolved.

 In an effort to pigeonhole the U&C Class to a schedule that would allow trial with those

claims going forward on December 1, 2008, pursuant to the recently approved class notice,

McKesson seeks to force Plaintiffs to submit a report and reply brief based on incomplete

information.  Such a procedure would be grossly unfair, given that McKesson has consistently

barred Plaintiffs from obtaining this information and would serve no practical purpose as there is

no way the U&C class issues can be resolved for those claims to be tried on December 1, 2008.

## II.   ARGUMENT

### A.   Plaintiffs Need Pharmacy Claims Data, Including Third-Party Reimbursement Information, to Complete Their Expert Report and File Their Reply Brief

 Plaintiffs allege that U&C prices are correlated with AWPs.  This is supported by the

evidence and common sense.  U&C purchases account for only a small percentage of

pharmacies' prescription drug sales; the bulk of their sales are based on third-party

reimbursement contracts, which uniformly set reimbursement rates at the ***lesser of*** the U&C

price or the negotiated AWP-based reimbursement rate.[2]  Pharmacies are economically

motivated to set U&C prices above third-party reimbursement rates or risk triggering the lesser

---

[1] Declaration of Ray Hartman in Support of Plaintiffs' Motion to Modify the Scheduling Order ("Hartman Decl. re Motion to Modify"), ¶ 3 (Docket No. 515).

[2] Declaration of Raymond S. Hartman in Support of Certification of the Class of Uninsured Cash Payers Paying U&C at n.8.

of clause of TPP reimbursement and having to accept reimbursement at below-contract prices. For this reason AWPs also drive the retail pricing of cash purchases of brand drugs and the scheme had a measurable impact on cash payors.

At the same time, pharmacies also engage in limited, regional competition for the same cash payors.[3]  Third-party reimbursement rates help to define U&C prices that are regionally competitive, yet do not place the pharmacy at risk for receiving reduced third-party reimbursements.[4]  Pharmacies' third-party reimbursement data are therefore key to understanding the relationship between AWP and U&C prices, which are both pharmacy specific and regionally based.

**B.    McKesson has Consistently Tried to Prevent Plaintiffs From Obtaining This Data to Complete Their Analysis**

Plaintiffs seek to prove the impact of the scheme on cash payors through an analysis of IMS data and pharmacy claims data.[5]  Over the course of discovery, it has become clear that McKesson, whose RelayHealth Division facilitated the electronic transfer of data between pharmacies and payors, has the data Plaintiffs need to analyze this correlation.  Yet McKesson has consistently tried to prevent Plaintiffs from obtaining claims data to prove this correlation. First, they filed a motion for a protective order to prevent Plaintiffs from obtaining third-party reimbursement information from third-party pharmacies, which the Court denied.[6]  Next, despite the Court's clear ruling that third-party reimbursement information is relevant, McKesson

---

[3] *Id.*, ¶ 15(e).

[4] *Id., see also* Plaintiffs' Mem. on Class Certification of the U&C Class at 10 (Docket No. 487).

[5] *See* Hartman Decl. re Motion to Modify, ¶ 3 (explaining why both data sources are critical to Plaintiffs' case).

[6] Court's Electronic Order, dated April 18, 2008.

- 3 -

refused to produce data fields that would include third-party reimbursement information.

Plaintiffs were forced to move to compel.

**C.    Judge Collings' Order does not Provide a Fixed Deadline for the Production of all the RelayHealth Data, to which Plaintiffs are Entitled**

Judge Collings granted in part Plaintiffs' motion to compel McKesson's production of the

third-party reimbursement for the 2001-03 period and ordered that McKesson provide the data

by August 15, 2008.  The Court limited the initial production of data to the two-year period

"with the understanding that the plaintiffs may seek additional RelayHealth data if the data

produced substantiate[] plaintiffs' claim."[7]  Additionally, McKesson asked to be able to produce

the data without disclosing the identities of the pharmacies.  Plaintiffs objected to de-

identification on several grounds, including the fact that it would prevent Plaintiffs from

rebutting the testimony of several pharmacies who claimed not to be basing their U&C prices on

AWP or AWP-based third-party reimbursement amounts.  Judge Collings allowed McKesson to

redact pharmacy information for the initial production but allowed Plaintiffs to revisit this issue

if the data substantiated their claims.[8]  So this process is still unfinished.  It could be months

before the issue is resubmitted to Judge Collings.

Finally, Judge Collings' order left unresolved certain questions about the manner in

which the data would be produced to Plaintiffs.[9]  When McKesson previously produced its data

---

[7] Memorandum and Order on Motion to Compel Production of McKesson's RelayHealth Data, dated July 17, 2008 at 2 (Docket No. 560).

[8] *Id.* at 2, 3.

[9] Judge Collings allowed McKesson to redact pharmacy identification.  Plaintiffs have requested that the data be produced using pseudonyms so that Plaintiffs will be able to know the source of the data and the location of the pharmacy (albeit without actually knowing the name of the pharmacy).  Additionally, Plaintiffs have asked that McKesson produce the data fields together, rather than piecemeal so that Plaintiffs can avoid the errors likely to attend the merging of data, in which the pharmacies were identified with a subsequent production of data with the pharmacy names removed.

it did so in a format that was completely unreadable.  As part of their motion to compel Plaintiffs requested that McKesson take certain steps to ensure that the data would be useable as produced. Unfortunately, Judge Collings order did not address these issues.  Plaintiffs have tried to resolve them through discussions with McKesson but have not been successful and intend to file a motion for clarification of the Court's order.  Resolution of these issues may result in additional delays in McKesson's production.

Dr. Hartman has requested six weeks to analyze the data and complete his report and Plaintiffs propose submitting their reply brief at the same time as Dr. Hartman's report so that the Court will have the benefit of his completed analysis of impact and damages.  Because the August 15 date is merely the starting point of a production that is intended to proceed in stages, it is not a fixed date on which to base the remaining U&C deadlines.  It could take several months before these issues are fully litigated.  Of course, all of this could be avoided if McKesson simply produced the data – but this it has steadfastly refused to do.  Nor should Plaintiffs be forced, as McKesson has suggested, to complete their reports and submit their reply brief without the benefit of all of the data to which they are entitled, especially because McKesson's obstructionist conduct is the very reason Plaintiffs are missing the remaining data.

**D.    The U&C Class Cannot be Tried on December 1, 2008**

The parties could not reach an agreed schedule because McKesson asserted that the U&C schedule should be set so as to have one trial involving the U&C claims and the certified claims. The practical result would be to delay the December 1 trial until June 2009 or later.

The notice process has now commenced informing tens of millions of Americans and tens of thousands of TPPs that there will be a December 1, 2008 trial.

As noted, the earliest McKesson will produce a part of the critical data is August 15, 2008.  Assuming no other production issues occur, Dr. Hartman's report would be due on

- 5 -

October 1, 2008, and the Court might hear argument on class certification in November.  Before the Court on that motion will be another set of materials chock full of expert disputes and documents, which will involve another complex set of factual determinations.  Assuming the Court ruled by December 1, 2008, an aggressive assumption given the Court's calendar and its care in issuing class certification decisions, notice could not start until March 2009 due to publication buy in lead times.  Allowing for an opt out period would push the ***earliest*** date for a U&C trial to May 1, 2009.

More realistically, given the unresolved data issues described above, and a realistic time for the Court to resolve the U&C class motion, the U&C case would be ready for trial in July 2009.[10]  Thus, the basis for McKesson's proposed U&C schedule is fundamentally flawed unless the Court bumps the December 1 trial by 8-9 months (which McKesson would no doubt love), so that all cases could be tried at once. conclusion

Plaintiffs respectfully request that the Court vacate the current scheduling order for the U&C class and allow the parties to resubmit a realistic schedule once Plaintiffs have obtained from McKesson all of the RelayHealth data to which they are entitled.  Plaintiffs should not be forced to complete their briefing on class certification with an incomplete record, when Plaintiffs have maintained from the outset that the third-party reimbursement data are critical to their claim and McKesson has consistently tried to prevent Plaintiffs from obtaining this information.

---

[10] Even this date is optimistic as McKesson will file a 23(f) petition thereby delaying the notice and the trial to a likely start date of September 2009.

DATED:  July 29, 2008                    By_____/s/ Steve W. Berman____
                                         Steve W. Berman
                                         Sean Matt
                                         Nicholas Styant-Browne
                                         Barbara A. Mahoney
                                     Hagens Berman Sobol Shapiro LLP
                                     1301 Fifth Avenue, Suite 2900
                                     Seattle, WA  98101
                                     Telephone: (206) 623-7292
                                     Facsimile: (206) 623-0594

                                     Thomas M. Sobol (BBO #471770)
                                     Edward Notargiacomo (BBO #567636)
                                     Hagens Berman Sobol Shapiro LLP
                                     One Main Street, 4th Floor
                                     Cambridge, MA  02142
                                     Telephone: (617) 482-3700
                                     Facsimile: (617) 482-3003

                                     Jeffrey Kodroff
                                     John Macoretta
                                     Spector, Roseman & Kodroff, P.C.
                                     1818 Market Street, Suite 2500
                                     Philadelphia, PA  19103
                                     Telephone: (215) 496-0300
                                     Facsimile: (215) 496-6611

                                     Kenneth A. Wexler
                                     Jennifer Fountain Connolly
                                     Wexler Toriseva Wallace LLP
                                     55 W. Monroe, Suite 3300
                                     Chicago, IL  60603
                                     Telephone:  (312) 346-2222
                                     Facsimile:  (312) 346-0022

                                     Marc H. Edelson
                                     Edelson & Associates
                                     45 West Court Street
                                     Doylestown, PA  18901
                                     Telephone: (215) 230-8043
                                     Facsimile: (215) 230-8735

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 29, 2008.


<u>     /s/ Steve W. Berman     </u>
Steve W. Berman