UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>　　　　　　　　　　　Defendants. | C.A. No. 1:05-CV-11148-PBS |

**PLAINTIFFS' MOTION FOR CLARIFICATION OF THE COURT'S JULY 17TH MEMORANDUM AND ORDER ON MOTION TO COMPEL PRODUCTION OF MCKESSON'S RELAYHEALTH DATA**

### I.　　INTRODUCTION AND RELIEF REQUESTED

On July 17, 2008 this Court ordered McKesson "on or before the close of business on Friday, August 15, 2008, [to] produce the RelayHealth Data sought by plaintiffs for the years June 1, 2001 to May 31, 2003." While this Court held that "McKesson may redact the identity of the third parties who made reimbursements to the pharmacies and may redact the identity of the pharmacies," it also allowed Plaintiffs subsequently to seek the identity of those pharmacies and/or to expand the production, should the initial production of data substantiate Plaintiffs' claim about the relationship between U&C prices and third-party reimbursement amounts.

- 1 -

Plaintiffs are filing this Motion because McKesson has taken the position that this Court's order means that it does not have to provide *any way* for Plaintiffs to distinguish the pharmacies' data by company of origin  (*e.g.* Rite Aid, CVS, *etc.*) or store location.  Plaintiffs do not believe this is what the Court intended because (1) this Court specifically contemplated Plaintiffs being able to seek identification of pharmacy information after making a sufficient showing and (2) the data McKesson proposes to produce in response to this Court's July 17 order would be *meaningless* to Plaintiffs.  If Plaintiffs cannot tell, for example, whether prices are from Pharmacy A in Boston or Pharmacy B in San Francisco, they will not be able to track the relationship between U&C and third-party reimbursement amounts on a pharmacy-by-pharmacy basis as this Court has clearly allowed them to do.  Plaintiffs have proposed a way for McKesson to identify pharmacies by company of origin and store location pseudonymously.  However, McKesson has refused both Plaintiffs' suggestion as well as their offer to discuss other ways McKesson might produce this information pseudonymously.[1]

## II.   ARGUMENT

**A.    In order to substantiate their claims Plaintiffs need to know the pharmacy location and company origin.**

Plaintiffs have consistently represented to this Court that they need McKesson's RelayHealth data to examine the correlation between U&C prices and AWP-based third-party reimbursement amounts because the data provides cash pricing at the store level.  For example, when this Court asked Plaintiffs why IMS data would not be sufficient for their purposes, Plaintiffs explained that while IMS provides aggregate data, McKesson's RelayHealth data could show the relationship between U&C and third-party reimbursement amounts on a "transaction-

---

[1] Attached as Appendix A are Plaintiffs' July 17 letter to McKesson and the parties' subsequent e-mail exchange with respect to Plaintiffs' letter.

by-transaction" basis. McKesson's refusal to identify pharmacies in any way takes away this critical element of the data. The following charts below demonstrate the differences in the parties' respective proposals:

| McKesson's Proposal | |
|---|---|
| U&C amount | Third-party reimbursement |
| $5.75 | $5.00 |
| $6.50 | $6.00 |
| $15.95 | $14.00 |
| $8.15 | $7.50 |

| Plaintiffs' Proposal | | |
|---|---|---|
| Pharmacy Identification | U&C amount | Third-party reimbursement |
| [Pharmacy] A -02460-1 | $5.75 | $5.00 |
| [Pharmacy] A – 02460-2 | $6.50 | $6.00 |
| [Pharmacy] B – 60203 – 4 | $15.95 | $14.00 |
| [Pharmacy] C – 94561 - 2 | $8.15 | $7.50 |

While Plaintiffs would be able to compare U&C prices to third-party reimbursement amounts under McKesson's proposal, they would not know if they are comparing data from the same company of origin or the same pharmacy location. This is not consistent with Plaintiffs' need for transactional data.

- 3 -

**B.     McKesson refuses to distinguish between pharmacies based on location and company origin.**

Plaintiffs have attempted to resolve this issue with McKesson, but McKesson takes the position that it is not required to produce the data in such a way that would allow Plaintiffs to distinguish between pharmacies based on location and company origin.  As the second chart demonstrates, Plaintiffs' need for information and this Court's concerns about pharmacy identification could be resolved by identifying the pharmacies pseudonymously.  For example, if CVS were identified as "A," the CVS on Walnut Street in Newton (ZIP code= 02460) would be consistently identified as "A-02460-1," while the CVS on Chestnut Street in Newton (also ZIP code = 02460) would be identified as "A-02460-2," and so on.  Of course, this is not the *only* way Plaintiffs' concerns could be addressed, but McKesson has refused to accommodate Plaintiffs' proposal outright.

**C.     Plaintiffs will not be able to substantiate their claims unless the data fields are produced together.**

Additionally, Plaintiffs cannot compare U&C prices with third-party reimbursement rates unless all six data fields are produced together.  The U&C data that were previously produced include the name and location of the pharmacy, whereas McKesson is proposing to eliminate *all* pharmacy information in the data set produced pursuant to this Court's July 17 order.  It would be an enormous and virtually impossible task fraught with potential error to merge the thousands of separate data files representing the two-year period,[2] which contain pharmacy identification fields, with the new data, which McKesson states will have no pharmacy identification field

---

[2] McKesson produced the U&C data in 17,000 separate files, representing the daily transactions for each pharmacy.

whatsoever.[3] And even assuming Plaintiffs were able to accomplish this Herculean task, it would defeat the purpose of de-identification because merging the new data with the old would necessarily disclose the identity of the pharmacies.

### III.    CONCLUSION

Plaintiffs request that the Court clarify its July 17 order to address the remaining issues of the de-identification of pharmacies and the combined production of all six data fields.  Plaintiffs ask that the Court order McKesson to adopt Plaintiffs' pseudonymous identification scheme to preserve the information Plaintiffs need to substantiate their claims, while observing McKesson's concerns about pharmacy identification and that the Court order McKesson to produce all six fields together.

DATED:  July 29, 2008

By  /s/ Steve W. Berman
    Steve W. Berman
    Sean R. Matt
    Nicholas Styant-Browne
    Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol (BBO#471770)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

---

[3] The task would also be extremely difficult even if McKesson adopted Plaintiffs' proposed pseudonymous identification scheme because Plaintiffs would not know the identities behind the code behind the pseudonyms.

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
820 North Boulevard, Suite B
Oak Park, IL  60302
Telephone: (708) 776-5600
Facsimile:  (708) 776-5601

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Edelson & Associates
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

George E. Barrett
Edmund L. Carey, Jr.
Barret, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

- 7 -

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

      Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for Plaintiffs conferred with counsel for Defendant regarding the filing of this motion, who do not consent.

                                        /s/ Steve W. Berman
                                        Steve W. Berman

001821-13  253303 V1

- 8 -

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 29, 2008.

                                                      /s/ Steve W. Berman
                                                      Steve W. Berman

# APPENDIX A



BARBARA A. MAHONEY
BARBARAM@HBSSLAW.COM

July 17, 2008

Paul Flum
Morrison Foerster LLP
425 Market Street
San Francisco, CA  94105-2482

    Re:    <u>RelayHealth data</u>

Dear Paul:

    We have reviewed Judge Collings' order granting our motion to compel production of the RelayHealth data.  The order authorizes an initial production of two fields of data in addition to the six fields which McKesson produced earlier for the June 1, 2001-May 31, 2003 period, with leave to expand the production "if the data which is produced substantiates plaintiffs' claim."  The Court also allowed McKesson to de-identify the pharmacies at this stage.

    In order to perform our review and analyze the relationship between U&C prices and third party reimbursement rates we will not only need the data fields produced together, but we will also need to be able to distinguish pharmacies by location.  Without fully understanding how McKesson proposes to de-identify the data, we suggest that if, for example, CVS were identified as "A" the CVS on Walnut Street in Newton (ZIP code = 02460) be consistently identified as "A-02460-1," while the CVS on Chestnut Street in Newton (also ZIP code = 02460) be consistently identified as "A-02460-2," and so on.  Doing this would provide the equivalent of the information Plaintiffs requested when they asked for the pharmacy NABP field and would also make it easier for McKesson to "re-identify" the pharmacies should Plaintiffs, pursuant to Judge Collings' order, later request that it be done.  Additionally, we ask that you provide the fields in the same pipe delimited format as before, but that you also specify the names and lengths for each field, and that the data be provided in annual, as opposed to daily files.

    Please let us know if you have any objections to our requests so that we can bring them to the prompt attention of the Court.

ATTORNEYS AT LAW    SEATTLE   LOS ANGELES   BOSTON   PHOENIX   CHICAGO   SAN FRANCISCO
T 206.623.7292   F 206.623.0594
1301 FIFTH AVENUE :: SUITE 2900 :: SEATTLE, WASHINGTON 98101
www.hbsslaw.com

001821-13  251329 V1

Paul Flum
July 17, 2008
Page 2

        Sincerely,

        HAGENS BERMAN SOBOL SHAPIRO LLP

        *[sent via electronic mail]*

        Barbara A. Mahoney
        Attorney

BAM:BM

### Carrie Flexer

**From:** Flum, Paul [PaulFlum@mofo.com]
**Sent:** Saturday, July 26, 2008 3:21 PM
**To:** Barbara Mahoney; Jennifer Connolly
**Subject:** RE: RelayHealth Data

Barbara,

It's not credible for you to assert that "Judge Collings authorized de-identification of the pharmacies but did not specify how this would be done." His Order is crystal clear:

"McKesson shall, on or before the close of business on Friday, August 15, 2008, produce the RelayHealth Data sought by plaintiffs for the years June 1, 2001 to May 31, 2003. [n.2: This involves two fields of data in addition to the six fields which McKesson produced earlier.] McKesson *may redact the identity* of the third parties who made reimbursements to the pharmacies and *may redact the identity* of the pharmacies." (Order at 2-3; emphasis added.)

We intend to follow the Order, which doesn't say anything about using codes to identify pharmacies. We will produce the fields with the identities redacted, as ordered by the Court. If there are any "unnecessary costs or delays," they will be entirely due to plaintiffs' insistence that the Order means something other than what it plainly says.

Paul

---

**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** July 25, 2008 4:32 PM
**To:** Flum, Paul; Jennifer Connolly
**Subject:** RE: RelayHealth Data

Paul,
With respect to the second point, it is our understanding that Judge Collings authorized de-identification of the pharmacies but did not specify how this would be done. It makes sense to work out a mutually agreeable system in advance of production to avoid unnecessary costs and delays. For that reason we would like to know what McKesson has in mind.

With respect to point three, our expert requested field length information because there was some difficulty determining when the fields ended with the last production. However, it may be that providing the field names will be sufficient to resolve this issue. We will seek further clarification from Dr. Hartman.

Barbara

---

**From:** Flum, Paul [mailto:PaulFlum@mofo.com]
**Sent:** Friday, July 25, 2008 3:56 PM
**To:** Barbara Mahoney; Jennifer Connolly
**Subject:** RE: RelayHealth Data

Barbara,

We are taking another look at number 1. The issue is whether producing the data in this fashion would permit plaintiffs to identify the pharmacies by merging the de-identified data with the identified data previously produced. I don't have an answer yet.

I've already responded to number 2. This is one of the issues that was litigated and that the Court addressed in ruling that pharmacy and payor identities could be redacted. I agree that we should be clear about our respective positions. To that end, what is plaintiffs' basis for contending that this issue was not resolved by the July 17 order?

I don't understand number 3. The question about field lengths seems to be directed to the NCPDP format. The data will not be produced in its native NCPDP format, but will be extracted and produced in a pipe-delimited format, as I've already confirmed. We will identify the fields. What else do you need to read the data?

Paul

---

**From:** Barbara Mahoney [mailto:barbaram@hbsslaw.com]
**Sent:** July 24, 2008 12:19 PM
**To:** Flum, Paul; Jennifer Connolly
**Subject:** RE: RelayHealth Data

Paul,
Before we involve Judge Collings, we would like to be clear about our respective positions. You have agreed to try to produce the data in annual files and in pipe-delimited format, but your response was not clear with respect to our other requests. Please let us know whether you agree as to each of the following requests:

1. Produce all six fields for the 2-year period ordered by J. Collings together so that plaintiffs may directly correlate a pharmacies' U&C prices with its reported third-party reimbursement amount for the same drug in the same time frame. We are not able to do this if the two additional fields are produced by themselves.

2. Adopt the de-identification system we suggested in our July 17 letter or describe the system you intend to employ so that we can determine in advance of production whether it will be sufficient to allow our expert to draw these correlations within a pharmacy (e.g. CVS) as well as by location (e.g. on Elm St. in Newton, Mass).

3. Specify the names and lengths for each field. This would make the data significantly more readable and save time and expense trying to decipher the data.

Barbara

---

**From:** Flum, Paul [mailto:PaulFlum@mofo.com]
**Sent:** Wednesday, July 23, 2008 3:17 PM
**To:** Jennifer Connolly; Barbara Mahoney
**Subject:** RE: RelayHealth Data

Jennifer,

Contrary to your email, Judge Collings specifically addressed "the manner in which McKesson would de-identify the pharmacy data." The July 17 Order states that McKesson "may *redact* the identity" of third party payors and pharmacies. That's what we intend to do. The other points mentioned by you and Barbara were raised in the parties' briefs and other submissions and were addressed over the course of three separate hearings. They were not adopted by the Court.

With respect to your question about the format of the new data, we're still working through the mechanics of the production, but I don't anticipate a problem producing the data in annual files using the same pipe-delimited format as before. Let me know if there are any other technical issues that plaintiffs would like to discuss.

Paul

---

**From:** Jennifer F. Connolly [mailto:JFC@wtwlaw.us]
**Sent:** July 23, 2008 2:14 PM
**To:** Flum, Paul; Barbara Mahoney
**Subject:** RE: RelayHealth Data

Paul:

We did not raise with Judge Collings the manner in which McKesson would de-identify the pharmacy data, which is what Barbara's letter addresses. Nor did we address whether McKesson would be producing the data in the format in which we've repeatedly requested it.

Please confirm that McKesson is unwilling to accommodate -- or even discuss - these technical issues with Plaintiffs prior to production so that we may seek relief from the Court.

Thanks -
Jennifer

---

**From:** Flum, Paul [mailto:PaulFlum@mofo.com]
**Sent:** Wednesday, July 23, 2008 4:07 PM
**To:** Barbara Mahoney
**Cc:** Jennifer F. Connolly
**Subject:** RelayHealth Data

Barbara,

I'm responding to your July 17 letter regarding RelayHealth data. The points raised in your letter were previously made to Judge Collings. I'm not going to reargue them here. McKesson stands on its objections to producing data identified by pharmacy and payor, which the Court acknowledged in granting "more limited discovery" than plaintiffs had sought. We intend to comply with the Court's order. We are currently working through the mechanics of the extraction process and production and expect that the additional data fields will be available by August 15.

Paul

========================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
========================================================================

7/29/2008

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER, SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>                Plaintiffs,<br><br>        v.<br><br>FIRST DATABANK, INC., a Missouri corporation; and McKESSON CORPORATION, a Delaware corporation,<br><br>                Defendants. | C.A. No. 1:05-CV-11148-PBS |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CLARIFICATION OF THE COURT'S MEMORANDUM AND ORDER ON MOTIONTO COMPEL PRODUCTION OF MCKESSON'S RELAYHEALTH DATA**

Plaintiffs have moved for a clarification of the Court's July 17, 2008 order compelling McKesson to produce its RelayHealth data. Having considered the submissions of the parties and the record in this case, IT IS HEREBY ORDERED as follows:

       1.      McKesson SHALL adopt Plaintiffs' pseudonymous identification scheme in its production of RelayHealth data; and

       2.      McKesson SHALL produce all six fields together.

001821-13 253522 V1

- 2 -

DONE this _____ day of _____, 2008.

_____
HONORABLE ROBERT B.COLLINGS
Magistrate, United States District Court

001821-13  253522 V1

- 3 -

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on July 29, 2008.

                                                            /s/ **Steve W. Berman**
                                                             Steve W. Berman