UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN,<br><br>               Plaintiffs,<br><br>   v.<br><br>FIRST DATABANK, INC., a Missouri corporation, and McKESSON CORPORATION, a Delaware corporation,<br><br>               Defendants. | Civil Action: 1:05-CV-11148-PBS<br><br>Judge Patti B. Saris |

**MCKESSON'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION**

## INTRODUCTION

On July 17, this Court issued its Order granting in part and denying in part plaintiffs' motion to compel RelayHealth data. In response to the confidentiality objections and contractual limitations raised by McKesson and amicus NACDS, the Court declined to order McKesson to produce the pharmacy reimbursement data sought by plaintiffs on an identified basis. Instead, the Order states that:

> McKesson shall, on or before the close of business on Friday, August 15, 2008, produce the RelayHealth Data sought by the plaintiffs for the years June 1, 2001 to May 31, 2003. [n.2: This involves two fields of data in addition to the six fields which McKesson produced earlier.] McKesson *may redact* the identity of the third parties who made reimbursements to the pharmacies and *may redact* the identity of the pharmacies.

(July 17, 2008 Order at 2-3; emphasis added.) The Order further states that plaintiffs need "to *substantiate their claims* . . . *before a decision is made* as to identifying the pharmacies and third party-payors." (*Id.* at 2; emphasis added.)

Plaintiffs have now filed a motion for "clarification," asking the Court to modify its Order to provide that, rather than redacting pharmacy names, McKesson must substitute a unique "pseudonym" for each of the tens of thousands of pharmacies whose data will be produced. Whether pharmacy reimbursement data should be produced on an identified basis was the subject of extensive briefing and argument. The Court concluded that only de-identified data should be produced "in the first instance." (*Id.* at 2.) Plaintiffs do not point to any new evidence or a change in the law that would alter the balance struck by the Court's July 17 Order. To the contrary, since pharmacy IDs can readily be extracted from coded data, the relief plaintiffs now seek amounts to ordering the production of identified reimbursement data — relief the Court rejected in adopting a staged approach to the production of RelayHealth data in its July 17 Order.

Plaintiffs have also moved to require McKesson "to produce all six fields together." (Pls.' Motion at 5 [Docket No. 569).] That portion of plaintiffs' motion is moot. The data that McKesson will be producing on August 15 will include the two new reimbursement fields, as well as the six fields produced earlier, with pharmacy IDs redacted as ordered by the Court.

# ARGUMENT

## I. PLAINTIFFS' MOTION IMPROPERLY SEEKS RECONSIDERATION OF THE JULY 17 ORDER.

Although plaintiffs try to cast it differently, their motion simply asks the Court to revise the Order it entered on July 17. It is thus a motion for reconsideration, which this Court allows *only* when the moving party shows:

> (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order. . . . "[A] motion for reconsideration is not a vehicle for giving an unhappy litigant an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court."

*Davis v. Lehane*, 89 F. Supp. 2d 142, 147-48 (D. Mass. 2000) (citations omitted).

The issues presented by plaintiffs' motion were addressed over three rounds of briefing (opening/opposition, reply/surreply, and post-hearing letter briefs), an amicus brief by the NACDS, and three hearings before the Court. Plaintiffs have presented no new evidence,[1] the law has not changed, and the Court did not err in its July 17 Order. For that reason alone, plaintiffs' motion should be denied.

## II. IDENTIFYING PHARMACIES ON A CODED BASIS IS TANTAMOUNT TO IDENTIFYING THEM BY NAME.

The briefs and declarations submitted by McKesson and amicus NACDS in opposition to plaintiffs' original motion lay out the serious confidentiality issues presented by plaintiffs' motion to compel production of pharmacy reimbursement data. The reimbursement data sought by plaintiffs' motion is proprietary to the pharmacies, is competitively sensitive, and may not be disclosed without the pharmacies' consent. All of the major pharmacy chains — with one exception — have objected to production of the reimbursement data sought by plaintiffs' motion.[2]

---

[1] Indeed, plaintiffs have still not submitted a declaration from their expert describing why he needs reimbursement data to be identified by specific chain or store.

[2] As stated in the Declaration of Paul Flum, Stop & Shop does not object to production of claims data so long as it is designated as highly confidential under the protective order. (Flum Decl.

(Footnote continues on next page.)

2

In light of these concerns, McKesson proposed at the June 13 hearing on plaintiffs' motion that if the Court orders production of reimbursement data, it should be produced on a de-identified basis that does not link the transactions to particular payors and pharmacies. (Hr'g Tr. 39.) In response to the Court's question as to how that would be done, McKesson explained that, rather than "putting a code in," it would produce "the field that shows the reimbursed amount," and "would not include the fields that would identify the payors or the pharmacies." (*Id.* at 40.) The problem with coding in this case is obvious — any coding scheme could be readily reverse-engineered and matched to the identified U&C pricing data that McKesson previously produced.

Plaintiffs never asserted before entry of the July 17 Order that McKesson should be required to produce pharmacy reimbursement data on a coded basis if the Court denied their motion to produce identified reimbursement data. While plaintiffs argued in their July 14 letter brief that they needed *identified* data to refute specific representations by McKesson's expert — a point that the Court rejected — neither in their letter brief nor during the July 16 telephone hearing did plaintiffs propose that some sort of coding scheme be used as an alternative.

Pharmacies' identities cannot be protected by the coding system plaintiffs have belatedly proposed — or by any other system involving a unique code for each location — because the data McKesson produced in May already includes the dispensing pharmacy's unique NABP identifier and ZIP code in addition to the NDC, the quantity, the dispensing date, and the U&C price at the transaction level. If McKesson now identified the individual pharmacy associated with each reimbursement on a coded basis, it would be a simple matter to line up (1) the NDCs and quantities dispensed from a coded location on a given day with (2) the corresponding NDCs and quantities dispensed from the corresponding identified pharmacy on that same day. For example, if on June 6, 2002, the CVS on Walnut Street in Newton (plaintiffs' code "A-02460-1") dispensed 29 prescriptions of Lipitor, 22 of Wellbutrin, 20 of Plavix, 13 of Actos, *etc.*, a

---

(Footnote continued from previous page.)

¶ 34 [Docket No. 499].) All the rest, including major national chains like Walgreens, CVS, Rite-Aid, Longs, and Wal-Mart — do object to production of their reimbursement data.

3

computerized merge program could search McKesson's earlier production to find out which previously identified pharmacy dispensed that same permutation of prescriptions on that same day. Having cracked the code, plaintiffs could reliably substitute actual pharmacy names and locations for the coded pseudonyms. Their brief recognizes as much, candidly acknowledging that "merging the new data with the old would necessarily disclose the identity of the pharmacies." (Motion at 5.)

Plaintiffs' motion to require McKesson to produce the pharmacy reimbursement data on a coded basis goes well beyond the relief set forth in the Court's July 17 Order and is tantamount to identifying the pharmacies by name. It should be denied.

### III.   MCKESSON'S AUGUST 15 PRODUCTION WILL INCLUDE BOTH THE NEW REIMBURSEMENT DATA AND THE U&C PRICING FIELDS PREVIOUSLY PRODUCED.

Plaintiffs' motion also asks the Court to revise its July 17 Order to require that "all six data fields [be] produced together" (Motion at 4), so that plaintiffs "may directly correlate a pharmacies' U&C prices with its reported third-party reimbursement amount for the same drug in the same time frame." (*Id.* at App. A, July 24 email from Mahoney to Flum.) McKesson was in the process of considering that request when plaintiffs filed this motion. (*Id.*, July 25 email from Flum to Mahoney.)[3] Had plaintiffs waited, they would have learned that McKesson will be producing two sets of data on August 15, both of which will permit a comparison of the new reimbursement data with the U&C prices previously produced, while conforming to the Court's Order that pharmacy data should be produced on a de-identified basis.

The first set will include the new reimbursement fields along with the NDC, quantity dispensed, and transaction date, as McKesson represented it would do at the June 13 hearing. This set will include all the same NDCs covered by the initial production last May, and will

---

[3] As McKesson stated: "We are taking another look at number 1 [plaintiffs' request to produce all fields together]. The issue is whether producing the data in this fashion would permit plaintiffs to identify pharmacies by merging the de-identified data with the identified data previously produced. I don't have an answer yet." (*Id.*)

4

allow plaintiffs to do a daily comparison of reported U&C prices and reimbursements. Using the de-identified reimbursement data, plaintiffs can calculate the average reimbursement per NDC and per dose on any given day. Using the U&C pricing data, plaintiffs can calculate the average U&C price for the same NDCs and doses on that date. From there, it is a simple matter to compare changes in the ratio between those two averages before and after the AWP mark-up increases (to the extent plaintiffs claim that such a comparison can establish a formulaic relationship between AWP and U&C prices).

In addition to this first data set, McKesson will be producing a second set of data that contains the same fields for the same NDCs *plus* the associated U&C price for each transaction, as plaintiffs requested. To reduce the risk of merging this new data with the previous production of identified data — and to protect the pharmacies' identities against reverse-engineering — the transaction dates for the second set will be reported by year and month, instead of by day.[4] Even though the transaction dates will be reported by month, *U&C prices and reimbursements will be separately reported and matched for each transaction.* Producing the data in this fashion satisfies plaintiffs' request for data in a form that will permit a direct comparison of U&C prices and pharmacy reimbursements on a transaction-by-transaction basis "for the same drug in the same time frame," while respecting pharmacies' interest in protecting the confidentiality of their proprietary reimbursement data.

Because McKesson's August 15 production will comply with all the requirements of the Court's Order, including the requirement that data be produced on a de-identified basis, plaintiffs' motion to require McKesson to produce all six fields together should be denied as moot. Production of any additional data should be ordered only if, after reviewing the August 15 production, plaintiffs can show that a comparison of reported U&C prices and reimbursement data "substantiates plaintiffs' claim."

---

[4] This is the same timeframe that Dr. Willig used for his U&C analysis. (Willig U&C Decl. n.26 (analysis looked at "weighted average monthly prices by NDC").)

5

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' Motion for Clarification of the Court's July 17th Order.

Respectfully submitted,

McKesson Corporation

By its attorneys:

/s/ Paul Flum
Melvin R. Goldman (*pro hac vice*)
Lori A. Schechter (*pro hac vice*)
Paul Flum (*pro hac vice*)
Tiffany Cheung (*pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
Email: paulflum@mofo.com
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

John Kiernan
Stephen E. Hughes
Bonner Kiernan Trebach & Crociata
200 Portland Street
Suite 400
Boston, MA 02114
Telephone: (617) 426-3900
Facsimile: (617) 426-0380

Dated: August 12, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on August 12, 2008.

/s/ Paul Flum
Paul Flum