UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND, et al.,

Plaintiffs,

v.

FIRST DATABANK, INC. and McKESSON CORPORATION,

Defendants.

CIVIL ACTION NO. 05-11148-PBS

**MEMORANDUM AND ORDER APPROVING CLASS SETTLEMENT**
**AND AWARDING ATTORNEY'S FEES AND EXPENSES**

August 3, 2009

Saris, U.S.D.J.

After hearing on July 24, 2009, the Court allows the motion for final approval of the proposed nationwide class settlement of $350,000,000 as fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2).

As background, plaintiffs have asserted that defendants First DataBank, Inc. ("FDB"), a drug pricing publisher, and McKesson Corporation, a drug wholesaler, engaged in a racketeering enterprise to fraudulently increase the published "average wholesale price" ("AWP") of over four hundred branded drugs by five percent from late 2001 to 2005 in violation of 18 U.S.C. § 1962 and state law. The full factual background of the allegations are set forth in my Memorandum and Order, dated March

17, 2009 [Docket No. 720]. New England Carpenters Health Benefits Fund v. First Databank, Inc., 602 F. Supp. 2d 277 (D. Mass. 2009); see also New England Carpenters Health Benefits Fund v. First Databank, Inc., 244 F.R.D. 79 (D. Mass. 2007). Various objections were filed to the settlement. I find that the allocation among the cash, co-pay, and third-party classes is reasonable. I also find that notice to the classes was innovative, expansive and reasonable. I reject the objections to the allocation among the classes, the methodology for identification of class members, and notice for the reasons stated in court.

One remaining issue is the award of attorneys' fees and expenses. Class counsel seek an award of attorneys' fees and expenses in the amount of $84,000,000, which is 24 percent of the $350,000,000 settlement fund. The total lodestar accumulated by class counsel as of May 1, 2009 was in excess of $8,356,100. Plaintiffs report expenses accumulated in the amount of $4 million. If the lodestar of $8,356,100 (the attorneys' fees only) is divided into the requested fee award of $84 million, the multiplier is 10.05, which is at the highest end of multipliers imposed in comparable litigation. Objectors have challenged attorneys' fees and expenses as excessive and not supported by contemporaneous records.

In the First Circuit, "[t]he lodestar approach (reasonable hours spent times reasonable hourly rates, subject to a

multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage of funds fee, but is not required." In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 215-16 (D. Me. 2003); In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig, 56 F.3d 295, 307 (1st Cir. 1995); see also Manual for Complex Litigation (Fourth) § 14.122 (2004) ("the lodestar is . . . useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant. The total lodestar estimate is then divided into the proposed fee calculated under the percentage method. The resulting figure represents the lodestar multiplier to compare to multipliers in other cases.").

Several factors militate in favor of a significant multiplier. Plaintiffs point out that they successfully achieved a mega-amount of $350,000,000 plus future injunctive relief requiring First DataBank to roll back the prices of drugs subject to the conspiracy. There has been near-unanimous and "eye-popping" support for this settlement. (Aff. of Arthur R. Miller [Docket No. 794] ¶ 58.) Plaintiffs' counsel have been excellent in this complex, hard-fought litigation and innovative in its notice program and efforts to find class members. The expenses are included within the amount requested. Still, much of the

spade work in learning the arcane intricacies of drug pricing has been done in the related "Average Wholesale Price" litigation, which is separately compensated. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 92 (D. Mass. 2005). The major new hurdle plaintiffs mounted here was the contentious battle over class certification, which was continued in the First Circuit. Balancing all the factors under the cross-check approach, I award the amount of $70,000,000, which represents a multiplier of about 8.3 times lodestar, and about 20 percent of the common fund. See Conley v. Sears, Roebuck & Co., 222 B.R. 181, 182 (D. Mass. 1998) (approving attorneys' fees that would constitute a lodestar multiplier of 8.9); In re Rite Aid Corp. Sec. Litig., 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (concluding that, under the cross-check approach, a lodestar multiplier in the range of 4.5 to 8.5 was "unquestionably reasonable").

The Court allows compensation to the Named Consumer Representatives of $2,000 and the Third-Party Payor ("TPP") Plaintiffs for time spent on this case at $100 per hour. There were no objections to these amounts.

Finally, Skilstaf Inc., a TPP, has filed a motion for clarification of, or in the alternative, limited objection to the release by the class of the right to sue retailers separately. Specifically it objects to the release of "any other person" in Section 15 of the Settlement Agreement. McKesson argues that

this provision is important because it buys complete peace from having to contribute to judgments that might be entered against retailer pharmacies. This concern is hardly illusory. McKesson states that it has already received a demand letter for contribution in litigation filed in California by Skilstaf against retail pharmacies accused of being part of the price-rigging conspiracy. Mirabile dictu, class counsel (Hagens Berman) apparently is one of the law firms representing Skilstaf in that litigation. This was an issue which the parties did not flag to the Court during the preliminary approval proceedings or in the Notice, and the Court completely missed it. Confusingly, McKesson actually wrote Skilstaf an e-mail explaining that it did not intend the release to extend to claims against retail pharmacies. (Mot. for Clarification [Docket #779] Ex. B at 1.)

Because this is a proposed settlement, this Court would not have the authority to strike a material provision. At best it would be able to give a thumbs down to the entire agreement. To breach the impasse, McKesson has agreed to let Skilstaf opt out. While this approach raises some concerns that Skilstaf is being given special treatment, it is the pragmatic approach. No other TPP has objected to the provision, and indeed there has been no TPP objection to the settlement. Indeed, some TPPs filed a brief in support of the settlement. Moreover, any new suit against the pharmacies based on the allegations in this case is likely time barred. Accordingly, the Court declines to strike or clarify the

"any other person" language. Skilstaf has ten days from July 24, 2009 in which it may opt out of the settlement.

SO ORDERED.

**S/PATTI B. SARIS**
UNITED STATES DISTRICT JUDGE