UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND; PIRELLI ARMSTRONG RETIREE MEDICAL BENEFITS TRUST; TEAMSTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY; PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND; DISTRICT COUNCIL 37, AFSCME - HEALTH & SECURITY PLAN; JUNE SWAN; BERNARD GORTER; SHELLY CAMPBELL and CONSTANCE JORDAN,<br>     Plaintiffs,<br>v.<br><br>FIRST DATABANK, INC., a Missouri Corporation; and McKESSON CORPORATION, a Delaware Corporation,<br><br>     Defendants | C.A. No. 1:05-CV-11148-PBS |



## [PROPOSED] ORDER AND FINAL JUDGMENT

This Court, having considered: (a) the Settlement Agreement and Release, dated November 20, 2008, as amended by the Amended Settlement Agreement dated January 21, 2009, (the "Amended Settlement Agreement" or "Settlement"),[1] including all Exhibits thereto; (b) the Motion(s) for Approval of Class Settlement filed by the parties

---

[1] Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meaning in this Order.

and all of the supporting material submitted in conjunction with such motion(s); (c) plaintiffs' counsel's Motion for Approval of an Award of Attorneys' Fees and Memorandum in Support thereof; and (d) the objections to the settlement and all associated briefing and argument; and having held a Final Approval Hearing regarding the Settlement on July 23, 2009, and having considered the record of these proceedings, the representations, argument, and recommendation of counsel for the moving parties, and the requirements of law,

        **IT IS HEREBY <u>ORDERED</u>, <u>ADJUDGED</u> AND <u>DECREED</u> that:**

1. The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this district.

3. The Court finds that the Rule 23 factors are present and that certification of the following subclasses (referred to collectively as the "Private Payor Settlement Class") is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and hereby certifies the Private Payor Settlement Class for settlement purposes only and without prejudice to any other parties to the litigation.

   Class 1: Co-Pay Consumer Settlement Class: All individual persons who paid, or incurred a debt enforceable at the time of judgment in this case to pay, a percentage co-payment for any of the drugs listed in Appendix A to Plaintiffs' Third Amended Complaint, Docket Entry #360 ("Marked Up Drugs") during the period beginning August 1, 2001 and ending on March 15, 2005 (the "Class Period") based on AWP, pursuant to a plan, which in turn reimbursed the cost of brand-name pharmaceutical drugs based on AWP.

   Class 2: TPP Settlement Class: All Third Party Payors (1) the pharmaceutical payments of which were based on AWP during the Class Period; (2) that made reimbursements for drugs based on an AWP that was marked up from 20 to 25% during the term of its contract with its PBM or with another entity involved in drug reimbursement; and (3) that used First DataBank or Medispan for determining the AWP of Marked Up Drugs.

> Class 3: Cash Payor Settlement Class: All uninsured or underinsured individual persons who, during the period from August 1, 2001, through the date of the Settlement Court's preliminary approval of the Settlement, paid or incurred a debt enforceable at the time of judgment in this case for Marked Up Drugs.
>
> Excluded from the Private Payor Settlement Class are Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; the United States government, its officers, agents, agencies and departments; the States of the United States and their respective officers, agents, agencies and departments; and all other local governments and their officers, agents, agencies and departments.
>
> Those entities that own or operate businesses referred to commonly as pharmacy benefit managers ("PBMs") and who as part of their business operation contract with ultimate Third Party Payors of a prescription pharmaceutical benefit to perform certain services in the administration and management of that prescription pharmaceutical benefit for those ultimate Third Party Payors are not class members under the Private Payor Settlement Class definition of this Order. The class includes the ultimate Third Party Payors providing the prescription pharmaceutical benefit and not the PBMs with which those Third Party Payors contract to administer or manage that prescription benefit on behalf of the class members, unless such PBMs are the fiduciary of the Third Party Payors or by contract assumed, in whole or in part, the insurance risk of that prescription pharmaceutical benefit during the period from August 1, 2001, through March 15, 2005.

4. Specifically, the Court finds that the Private Payor Settlement Class as defined in Paragraph 3 satisfies Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes:

    **Rule 23(a)**

    (1) Numerosity: Numerosity is established in that the size of the Private Payor Settlement Class is sufficiently large to make joinder impracticable, given the relevant circumstances. *In re Relafen Antitrust Litig.*, 22 F.R.D. 260, 267 (D. Mass. 2004). In this Settlement, the Private Payor Settlement Class encompasses thousands of third party payors (welfare funds, self-insured employers, for-profit and not-for-profit health insurers that provide prescription drug benefits) and millions of individuals that have

asserted claims or potential claims against the settling defendant. Thus, the Rule 23(a)(1) numerosity requirement has been met.

(2) <u>Commonality</u>: Generally, the commonality requirement is easily met, provided that at least one common question of law or fact exists. *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005). Here, the claims hinge on common questions and the elements of the claims would be established by common class-wide proof. The numerous common factual and legal questions to be decided include, but are not limited to: (a) whether the publication of AWP and Blue Book Average Wholesale Price ("BBAWP") data fields were common events upon which the claims of all members of the Private Payor Settlement Class rely; (b) whether McKesson Corporation ("McKesson") engaged in a course of conduct that improperly inflated the markup of AWP over the "Wholesale Acquisition Cost" of prescription drugs purchased or reimbursed by members of the Private Payor Settlement Class; (c) whether McKesson formed enterprises for the purpose of carrying out the scheme alleged in the complaint; and (d) whether McKesson used the U.S. mails and interstate wire facilities to carry out the scheme alleged in the complaint.

Accordingly, Rule 23(a)(2) is satisfied.

(3) <u>Typicality</u>: The claims of the class representatives of the Private Payor Settlement Class arise from the same course of conduct and share the same legal theory as the claims of the members of the proposed Private Payor Settlement Class. Furthermore, the class representatives will advance the interests of all class members. Accordingly, the class representatives' claims are typical of those of the Private Payor Settlement Class, satisfying Rule 23(a)(3).

(4) <u>Adequacy</u>: The class representatives of the Private Payor Settlement Class assert claims that are representative of the claims of the entire Private Payor Settlement Class with regard to pharmaceutical purchases. As such, even though the class representatives' claims may not be identical to every claim of every putative member of the Private Payor Settlement Class, the class representatives can adequately represent the proposed class.

The adequacy factor also considers Class Settlement Counsel. Class Settlement Counsel regularly engages in complex litigation similar to the present case and has dedicated substantial resources to the prosecution of this matter. The adequacy requirement under Rule 23(a)(4) is satisfied.

**Rule 23 (b)(3)**

(1) <u>Predominance of Common Issues:</u> The members of the Private Payor Settlement Class commonly assert that McKesson's policies and practices caused the AWPs for the drugs at issue in this action to be inflated, which in turn caused all members of the Private Payor Settlement Class pay inflated prices for those drugs. In the context of the Settlement, those issues predominate over any individual questions, favoring class treatment.

(2) <u>Superiority of the Class Action Mechanism:</u> The class action mechanism is ideally suited for treatment of the settlement of this action. Class certification promotes efficiency and uniformity of judgment, among other benefits, because the members of the Private Payor Settlement Class will not be forced to separately pursue claims or execute settlements in various courts around the country.

5. In the interest of clarity, the Court reiterates that it makes the findings set forth in paragraph 4 regarding certification of the Private Payor Settlement Class only for settlement purposes.

6. The Court finds that the relief provided through the Amended Settlement Agreement is enforceable and binding on the Releasers and satisfies the due process requirements of Rule 23(b)(3) because this Court, pursuant to its plenary powers under Rule 23(c)(2) and 23(d)(1), provided notice to the Releasers of the Settlement and of each Releaser's right to exclude itself from the classes certified in the Court's March 19, 2008 Order or the Cash Payor Settlement Class.

7. The Court reconfirms the appointment of the class representatives.

8. The Court approves the Amended Settlement Agreement, on file with the Court as Exhibit 1 to the Preliminary Approval Motion, as being fair, adequate, and reasonable and in the best interests of the Class, satisfying Rule 23(e) and the

fairness and adequacy requirements of this Circuit. In particular, the Court finds that:

**(a)** <u>**Fairness, Adequacy, and Reasonableness of the Settlement:**</u>

The Court finds that the Amended Settlement Agreement is fair, adequate, and reasonable. The facts and circumstances of the negotiations set forth in counsels' affidavits and papers demonstrate that there has been considerable arms length bargaining and discovery in this case. A proposed class action settlement is considered presumptively fair where, as here, sufficient discovery has been provided and the parties have engaged in arms length negotiations. *See City P'Ship Co. v. Atlantic Acquisition Ltd. P'Ship.*, 100 F.3d 1041, 1043 (1st Cir. 1996).

Although there is no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement, *see In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F. R. D. 197, 206 (D. Me. 2003), courts in the First Circuit consider factors indicating whether there has been arms length bargaining. *See City P'Ship,* 100 F.3d at 1043. Those factors include: (1) comparison of the Settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense, and duration. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003) (citations omitted).

1. <u>Comparison of Settlement With Likely Result of Litigation</u>:

Although plaintiffs' counsel have consistently asserted their confidence in the strength of their case, this is complex litigation for which the outcome is uncertain and unpredictable. In order to succeed on the merits, plaintiffs would need to prevail on several complex and hotly disputed legal and factual issues. The relief contemplated in the Amended Settlement Agreement is fair, adequate, and reasonable. This result, coupled with the uncertainty of protracted litigation and trial, weighs heavily in favor of approval of the Settlement.

2. <u>Reaction of Class Members to the Settlement</u>:

Those members of the TPP Settlement Class or the Co-Pay Consumer Settlement Class who had opted out of the classes certified by the Court on March 19, 2008, had until June 3, 2009, to revoke their opt-out decision. In addition, members of the TPP Settlement Class and the Co-Pay Consumer Settlement Class had until June 8, 2009, to object to the

- 6 -

Settlement. Members of the Cash Payor Settlement Class had until June 8, 2009, to opt out of the Private Payor Settlement Class, and had until June 8, 2009, to object to the Settlement.

As a result of the extensive Notice Program ordered by the Court, there have been only seven objections filed with the Court. Three of these objections were directly solely to the attorneys' fee request. One of the remaining four objections, by the Independently Represented TPPs, has previously been withdrawn. Objector Skilstaf has agreed to withdraw its objection contingent on the entry of a final judgment substantially in the form submitted by the parties on August 31, 2009. In addition, 10 members of the Cash Payor Settlement Class have opted out. No members of the TPP Settlement Class and one member of the Co-Pay Consumer Settlement Class have revoked previous requests to opt out. The overall reaction to the settlement has been positive. Given the size of the Private Payor Settlement Class, the number of objections and opt-outs is small.

3. State of the Litigation:

This litigation has been pending for over three years. During that time (and even well before the instant case was brought), Class Settlement Counsel engaged in extensive investigation and discovery, including the analysis of voluminous records of parties and non-parties, extensive data review with health care economists and interviews or depositions of witnesses. Fact discovery has been completed on both sides as to the claims of the TPP and Co-Pay Consumer Settlement Classes, which represent the bulk of the potential damages in this action, and the parties reached agreement on the Settlement on the eve of trial of those claims. Class Settlement Counsel has done sufficient work and generated sufficient information to permit an informed assessment of the prospects for success in this litigation. Although extensive discovery has been conducted to ensure that the settlement is fair, adequate, and reasonable, there would remain (absent settlement) substantial litigation ahead, including trial preparation and the trial itself, which would require millions of dollars in additional fees and expenses. Given that the parties have undertaken comprehensive discovery to ensure the fairness, reasonableness, and adequacy of the Settlement, expenditure of such resources would be wasteful and unnecessary. The state of the litigation therefore weighs in favor of approval of the Settlement.

4. Quality of Counsel:

Class Settlement Counsel are very well-qualified and experienced. Class Settlement Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter. The experience and skill of all counsel involved weighs in favor of final approval of the Settlement.

> 5. <u>Conduct of Negotiations</u>:
>
> Class Settlement Counsel and McKesson's Counsel have engaged in extensive, arms length negotiations assisted by an experienced mediator, Retired Magistrate Judge Edward Infante. The complexity and duration of these negotiations weighs in favor of final approval of the Settlement.
>
> 6. <u>Case Prospects, Including Risk, Complexity, Expense, and Duration</u>:
>
> This case has the potential to impose enormous litigation costs on all the parties. Indeed, although the ultimate result of a trial cannot be foreseen, absent a settlement, an expensive, complex and time-consuming process is assured. In light of the high stakes involved, a lengthy and costly appeal is certain to follow any trial regardless of the outcome. Thus, the complexity, expense and likely duration of the litigation weigh heavily in favor of final approval of the Settlement.

9. As set forth in the Court's August 3, 2009, Memorandum and Order Approving Class Settlement and Awarding Attorney's Fees and Expenses (Doc. No. 810), which is fully incorporated herein, the Court overrules the objections that have been filed to the settlement.

10. The Court holds that the Settlement Notices and Notice Program as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held that the Settlement Notices and Notice Program are the best practicable method under the circumstances for providing notice to the Private Payor Settlement Class.

11. The Court holds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715 were complied with in this case.

12. The Court holds that the Class Escrow Account established to hold the Settlement Fund is approved in order that it may be a Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.

13. The Court reconfirms the appointment of Hagens Berman Sobol Shapiro LLP, Spector Roseman Kodroff & Willis, PC, Edelson & Associates LLC, and Wexler Wallace LLP as Class Settlement Counsel for the Private Payor Settlement Class.

14. Except as to the claims of any individuals and TPPs who have validly and timely requested exclusion from the Class (the names of whom are identified in Exhibit 1 hereto), the Released Claims, the Class Action, and all claims asserted or contained in the Class Action, are HEREBY DISMISSED WITH PREJUDICE against McKesson and all Released Parties. Plaintiffs and McKesson are to bear their own costs, except as otherwise provided in the Amended Settlement Agreement.

15. By operation of this Judgment (and regardless of whether they have signed and delivered a Proof of Claim and Release), the Releasers shall release all Released Claims, as set forth in Paragraph 15 of the Amended Settlement Agreement, which is incorporated by this reference. By operation of this Judgment, the Releasers are forever barred and enjoined from seeking to establish liability based in whole or in part on any of the Released Claims, as forth in Paragraph 15 of the Amended Settlement Agreement, which is incorporated by this reference, and are barred and enjoined from asserting any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims, including Unknown Claims, without regard to the subsequent discovery or existence of different or additional facts.

16. Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court, that threatens to undermine the settlement in this

case and this Final Order and Judgment. In addition, the Court reserves exclusive and continuing jurisdiction over the Class Action, the Class, and the Released Parties for the purposes of (a) supervising the implementation, enforcement, construction, and interpretation of the Amended Settlement Agreement, the Plan of Allocation, and this Judgment, and (b) supervising the distribution of the Settlement Fund.

17. As set forth in the Court's August 3, 2009, Memorandum and Order Approving Class Settlement and Awarding Attorney's Fees and Expenses (Doc. No. 810), the Court declines to strike or clarify the "any other person" language in Paragraph 15 of the Settlement Agreement as objector Skilstaf requested. To the extent otherwise permitted by law, nothing in the foregoing Order precludes Skilstaf from raising the same contentions before another court to determine the enforceability or applicability of the "any other person" language in Paragraph 15 of the Settlement Agreement.

18. The Court also finds, following an evaluation of Class Settlement Counsels' fee petition against the factors set forth in *In re Lupron Mktg. & Sales Practices Litig.*, that the fees sought by Class Settlement Counsel are reasonable and employ a reasonable percentage of the actual benefit of the class settlement to the Class and that Class Settlement Counsel's Motion for Approval of an Award of Attorneys' Fees is hereby approved. 2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug. 17, 2005) (citing *Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-56 (1985). As set forth in the Court's August 3, 2009, Memorandum and Order Approving Class Settlement and Awarding Attorney's Fees and Expenses (Doc. No. 810), Class Counsel's award is $70,000,000. With

respect to the *Lupron* factors most relevant here, the Court finds that Class Settlement Counsel have expended considerable time and labor in the negotiation and implementation of the Settlement, and that this work will be ongoing; that the efforts of Class Settlement Counsel have resulted in a resolution that confers substantial benefits on members of the Private Payor Settlement Class, and that those benefits are comparable to other similar settlements and were achieved sooner than most, if not all, similar settlements; that Class Settlement Counsel undertook this matter with no guarantee of payment and thus shouldered considerable risk; and that the attorneys' fees award in this case is not inconsistent with awards in similar cases. Reversal or modification on appeal of the Court's award of attorneys' fees and expenses to Class Settlement Counsel shall not affect the finality of this Judgment as it relates to McKesson and the Released Parties and shall not constitute grounds for cancellation or termination of the Settlement.

19. The Court allows compensation to the Named Consumer Representatives of $2,000 and the TPP Plaintiffs for time spent on this case at $100 per hour.

20. The Plan of Allocation submitted by Class Settlement Counsel and any orders entered regarding the Plan of Allocation shall be considered to be separate from this Judgment. Reversal or modification on appeal of the Plan of Allocation or any orders regarding the Plan of Allocation shall not affect the finality of this Judgment as it relates to McKesson and the Released Parties and shall not constitute grounds for cancellation or termination of the Settlement.

21. Neither the Amended Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or

evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.

22. FINAL JUDGMENT is hereby ENTERED directing McKesson Corporation, the Class Representatives, and the Members of the Private Payor Settlement Class to comply and perform in accordance with the terms of the Amended Settlement Agreement, and dismissing with prejudice all claims asserted against McKesson on behalf of the Private Payor Settlement Class.

DATED: This  31 , day of  August , 2009

                                                   *Patti B. Saris*
                                                 Honorable Patti B. Saris, Judge
                                                 United States District Court

# Exhibit 1

## Requests for Exclusion

**TPP Settlement Class**

1. Mitsubishi Heavy Industries Climate
2. Mock Woodworking Co.
3. Anadarko Petroleum Corporation
4. Personal Physicians Care Inc.
5. St. Petersburg Times
6. RLI Corp.
7. San Francisco Health Plan
8. Applied Systems Inc.
9. Hansen Corporation
10. Express Scripts
11. VWR International LLC
12. Columbus Physicians Association
13. State of Illinois
14. Caremark Rx LLC
15. Medco
16. McDonalds
17. AstraZeneca Pharmaceuticals LP
18. Davis Polk & Wardell

**Co-Pay Consumer Settlement Class**

1. Bonnie Rifkin
2. Edwin J. Mills
3. Murray Horowitz
4. Jimmie Lazenberry
5. Amherst S. Wilder

**Cash Payor Settlement Class**

1. Bonnie Rifkin
2. Edwin J. Mills
3. Gary D. Dickerson
4. Murray Horowitz
5. Jimmie Lazenberry
6. Wilma Mattern

7.  Helen R. Oken
8.  Anna Landers
9.  Janeth R. Nickerson
10. Gloria I. Holmes