UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| )<br>NEW ENGLAND CARPENTERS HEALTH )<br>BENEFITS FUND, PIRELLI ARMSTRONG )<br>RETIREE MEDICAL BENEFITS TRUST; )<br>TEAMSTERS HEALTH & WELFARE FUND )<br>OF PHILADELPHIA AND VICINITY; )<br>PHILADELPHIA FEDERATION OF )<br>TEACHERS HEALTH AND WELFARE )<br>FUND; DISTRICT COUNCIL 37, AFSCME - )<br>HEALTH & SECURITY PLAN; JUNE )<br>SWAN; BERNARD GORTER, SHELLY )<br>CAMPBELL and CONSTANCE JORDAN, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FIRST DATABANK, INC., a Missouri )<br>corporation; and McKESSON )<br>CORPORATION, a Delaware corporation, )<br>)<br>Defendants. ) | C.A. No. 1:05-CV-11148-PBS |

**CLASS PLAINTIFFS'**
**UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION**
**OF THE MCKESSON SETTLEMENT FUND TO THE REMAINING SUBCLASSES**

001821-13  423775 V1

## I.      INTRODUCTION

As set forth in the previously filed Motion for Approval of a Partial Distribution of the

McKesson Settlement Fund to the Cash Payor Class [Docket No. 883], the total amount available

for distribution is $276,954,624.16.  Declaration of Steve W. Berman in Support of Unopposed

Motion for Approval of Distribution of the Settlement to Cash Consumers [Docket No. 885],

Exhibit A.  The amount allocated to the Cash Payor Class has already been distributed to that

Subclass.  The Claims Administrators have completed their review and auditing of the remaining

TPP and Consumer Co-payor Classes.  The $228,432,174.01 allocated for distribution to the TPP

Class and the $16,534,191.06 allocated for distribution to the Co-payor Class are now ready for

distribution.

## II.      DISTRIBUTION TO THE CONSUMER CO-PAYOR CLASS

### A.      Claims Processing and Auditing Activities of Co-payor Class

Claims Administrator Rust provided a data file of the 4,564 Co-Pay Consumer claims to

Co-Claims Administrator, CASS, LLC, for inclusion in the calculation of the Co-pay Consumer

Settlement Fund.[1]  But by far the Claims Administrators' primary source of Co-payor

information was the TPP data.[2]  CASS received data files directly through a dedicated, secure

website and from data provided by TPPs to Rust through other secured means.[3]  By developing

programmed procedures to calculate certain ratios, CASS analyzed the consumer claims data

---

[1] Affidavit of Eric Miller Regarding Allocation and Distribution of the Net Settlement Fund to Third Party Payors, ¶ 22, filed concurrently with this motion; Affidavit of Bruce E. Ogle, ¶ 8, filed concurrently with Class Plaintiffs' Motion.  Note that Rust identified 4,563 claims, however CASS subsequently identified that one of the submissions contained two separate claims on one form.  *Id.*

[2] *See* Amended Preliminary Approval Order [Docket No. 719] at 9-10 (ordering TPP class members to provide, if feasible, sufficient data to identify claims on behalf of their clients with percentage co-payments).

[3] Ogle Affidavit, ¶ 6.

submitted by TPPs to identify eligible percentage co-payments versus ineligible, flat co-payment amounts.[4]  In total, CASS obtained claims data from ostensibly 4.4 million individual percentage co-payor consumers of Subject Drugs.[5]

CASS combined the data onto a segregated, secure CASS server in a manner compliant with HIPAA privacy and security requirements, and reformatted the data in order to allow the entries to be analyzed and compared.[6]  CASS then analyzed the data to eliminate multiple entries for the same consumers.[7]  Once this process was completed, there remained claims from 3.7 million consumers.[8]  CASS then followed with a de-duping process to eliminate duplicate payment data to ensure that no consumer would be reimbursed multiple times based on the same purchases.[9]  Additionally, CASS applied several cross references to ensure that it had the most up-to-date addresses available for the consumers identified in the data.[10]

**B.      Request for Approval of Late-Filed Co-payor Claims**

As part of the first phase of review of the Co-payor class, Rust reviewed the individually filed (paper) claims.  Based on its review and audit of these claims, Rust determined that 239 claims were postmarked after the filing deadline of July 9, 2009 (*i.e.*, "late claims"), but which would otherwise be eligible to participate in the distribution.[11]  Consistent with the Court's

---

[4] *Id.*, ¶ 7.

[5] *Id.*, ¶ 9.

[6] *Id.*

[7] *Id.*, ¶¶ 10-14.

[8] *Id.*, ¶ 14.

[9] *Id.*, ¶¶ 15-16.

[10] *Id.*, ¶ 18.

[11] Miller Affidavit, ¶ 22.

December 22, 2010 order to distribute settlement funds to the cash payor class, Class Plaintiffs request that the Court allow payment of late-filed, but other eligible individually filed claims.

## C.     Recommended Distribution Model for the Co-payor Class

Due to the vast number of Co-Payor claims derived from TPP data, a simple pro rata distribution of the fund to 3.7 million consumers would be inefficient and would not provide meaningful compensation.  Previously, the Court ordered $100 minimum payments to the Cash Payor Class.[12]  It has been Claims Administrator CASS' experience that checks of far less value, *e.g.* $10 are regularly cashed by consumers in settlement distributions.[13]  Unlike Cash Payors, who bore the entire burden of the loss, Co-payors were only required to pay a portion of the total fee, typically around 20- 25%.   Class Counsel therefore recommend $25 minimum payments to Co-payor class members.

Similar to the procedure adopted by the Court in its December 22, 2010 order, individually filed co-payor claims would receive the greater of their pro rata share or $25.  The remaining electronically derived claims would be paid on a pro rata basis except that only those claims that would result in a payment of at least $25 (*i.e.* the proposed minimum) would be eligible for distribution.[14]  Under this model, CASS estimates that 304,674 consumers will receive payments, averaging $54.27 per check.[15]

---

[12] ORDER entered December 22, 2010, granting Motion for Disbursement of Settlement Funds to the Cash Payor Subclass [Docket No. 887].

[13] Ogle Affidavit, ¶ 23.

[14] *Id.*, ¶ 20.

[15] *Id.*, ¶¶ 22-23.  In the absence of a $25 minimum, class members would receive on average a check in the amount of $4.47, which would significantly increase the cost of distribution.  *Id.*

## III.   DISTRIBUTION TO THE TPP CLASS

### A.   Claims Processing and Auditing Activities of TPP Class

As part of the Notice Plan, the Claims Administrator, Rust Consulting, mailed over 41,600 Notice Packets to potential TPP Class members.[16]  Rust received and processed 2,503 claims from TPP and third-party administrator ("TPA") claimants.[17]  Rust utilized various quality control methods, including double key entry, various audit reports, random sampling and verification by the Quality Assurance department.[18]  Certain claims were initially determined to be deficient for one or more of the following reasons:

- was not signed;

- was missing the total net amount paid for the Subject Drugs; or

- was missing the necessary supporting documentation as required in Section F of the TPP Claim Form.[19]

Rust sent 882 letters notifying each of these claimants that their claims were deficient and required supplementation.[20]  Rust also sent letters to 247 claimants to notify them of its determination of ineligibility and inviting response.[21]  On the basis of claimants' responses and Rust's further review and audit, it has now been determined that there are 2,210 valid claims,

---

[16] Miller Affidavit, ¶ 5.

[17] *Id.*, ¶ 6.

[18] *Id.*, ¶ 8.

[19] *Id.*, ¶ 9.

[20] *Id.*

[21] *Id.*, ¶ 11.

- 4 -

representing Recognized Losses of $2,602,198,507.10 (*i.e.* 4% of the claimant's total

expenditures on the Subject Drugs).[22]

**B.      Request for Approval of Late-Filed TPP Claims**

   Included among the 2,210 eligible TPP claims are 121 claims which were postmarked

after the filing deadline of July 9, 2009 (*i.e.*, "late claims"), but which would otherwise be

eligible to participate in the distribution.[23]   Consistent with the Court's December 22, 2010 order,

Class Plaintiffs request that the Court allow payment of late-filed, but other eligible individually

filed TPP claims.

**C.      Recommended Distribution Model for the TPP Class**

   There are 2,210 eligible TPP claims collectively represent over $2.6 billion in recognized

losses (*i.e.* 4% of the claimant's total expenditures on the Subject Drugs).[24]   This exceeds the

funds available for distribution to the Class.   A strict pro rata distribution would result in

distributions representing $.0878 (8.78 cents) per dollar.[25]   Under this schema, some TPPs would

receive minimal checks, which may discourage their future participation in class settlements.   On

the other hand, a pro rata distribution, coupled with a check minimum would avoid this problem

and would still allow a reasonable distribution to the TPPs who were hardest hit.[26]   The Claims

Administrator estimates that if the Court adopts a $1,000 check minimum, an estimated 690

TPPs would receive an enhanced compensation, while the pro rate share of the remaining

members would be reduced by only one hundredth of a percent (*i.e.* from 8.78% to 8.77% of the

---

[22] *Id.*, ¶ 16.

[23] *Id.*

[24] *Id.*

[25] *Id.*, ¶ 19.

[26] *Id.*, ¶¶ 18-19.

Recognized Loss).[27]  Class Plaintiffs therefore recommend that the Court authorize a pro rata distribution with a $1,000 minimum per check.

Additionally, due to the vast volumes of data submitted in this case (for both the processing of the TPPs' claims and the Co-payor claims) and TPP Class members' unfamiliarity with the data-upload and disk-encryption methodology for supplying supporting documentation, which was instituted for the first time with this matter, there is a foreseeable risk that the Claims Administrator Rust may have been unable to identify one or more timely filed TPP claimants.[28] For example, a claimant may have uploaded its data but did not mail a hardcopy claim form to Rust.[29]  Because of the high distributions at stake, Class Counsel joins Rust in recommending that the Court order distribution to the TPP claimants subject to a 40-day delay to allow Rust sufficient time to 1) mail letters to all currently identified eligible TPP claimants to confirm receipt of their claim; and 2) advise TPPs claimants to contact Rust within twenty (20) days from the date the letters will be mailed if the claimant has not received the letter.[30]  This extra step will cause only a modest delay and will provide greater finality to the distribution process.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court enter an order approving distribution of the settlement fund.  Plaintiffs submit herewith a proposed order for the convenience of the Court.

---

[27] *Id.*, ¶ 19.

[28] *Id.*, ¶ 20.

[29] *Id.*

[30] *Id.*, ¶ 20-21.  A sample letter is attached as Exhibit 5 to the Miller Affidavit.

001821-13  423775 V1

DATED:  March 17, 2011

By:    /s/ Steve W. Berman
        Thomas M. Sobol (BBO#471770)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003


Steve W. Berman
Sean R. Matt
Nicholas Styant-Browne
Barbara A. Mahoney
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594


Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St. NW, Suite 300
Washington, D.C.  20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455


Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022


Jeffrey Kodroff
John Macoretta
Spector, Roseman, Kodroff & Willis, PC
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611


Marc H. Edelson
Edelson & Associates
45 W. Court Street
Doylestown, PA  18901
Telephone:  (215) 230-8043
Facsimile:  (215) 230-8735

George E. Barrett
Edmund L. Carey, Jr.
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN  37201
Telephone:  (615) 244-2202
Facsimile:  (615) 252-3798

***Counsel for Plaintiffs and the Classes***

001821-13  423775 V1

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for Plaintiffs conferred with counsel for Defendant regarding the filing of this motion, who do not oppose.

<u>/s/ Steve W. Berman</u>
Steve W. Berman

001821-13  423775 V1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 17, 2011.

      s/ Steve W. Berman      
Steve W. Berman

001821-13  423775 V1